# EXHIBIT A

1  JEFF S. WESTERMAN (SBN 94559)
   MILBERG WEISS LLP
2  One California Plaza
   300 S. Grand Avenue, Suite 3900
3  Los Angeles, CA 90071-3149
   Telephone: (213) 617-1200
4  Facsimile: (213) 617-1975
   Email: jwesterman@milbergweiss.com
5

6  PETER SAFIRSTEIN
   ANDREW MORGANTI
7  MILBERG WEISS LLP
   One Pennsylvania Plaza
8  New York, New York 10119
   Telephone: (212) 594-5300
9  Facsimile: (212) 868-1229
   Email: psafirstein@milbergweiss.com
10    amorganti@milbergweiss.com

11  Attorneys for the Plaintiff and the Class

12            UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15  LORI BARRETT, individually and on behalf    )   Case No.
    of herself and all others similarly situated, )
16                                              )   **CLASS ACTION COMPLAINT**
                                                )
17                   Plaintiff,                 )
                                                )   COMPLAINT FOR VIOLATIONS OF
18           vs.                                )   THE SHERMAN ANTITRUST ACT 15
                                                )   U.S.C. § 1
19  QANTAS AIRWAYS LIMITED, AIR NEW             )
    ZEALAND LIMITED, and John Does 1 – 10,      )
20                                              )   **JURY TRIAL DEMANDED**
                                                )
21                   Defendants.                )
                                                )
22                                              )

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1
DOCS\427513v1

1    Pursuant to the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all
2 others similarly situated, hereby brings this action for treble damages and injunctive relief under
3 the federal antitrust laws of the United States, Section 1 of the Sherman Antitrust Act of 1890, 15
4 U.S.C. § 1 ("Sherman Act") and Sections 4 and 16 of the Clayton Antitrust Act of 1914, 15
5 U.S.C. §§ 15, 26 ("Clayton Act") against Defendants.  Plaintiff complains and alleges upon
6 information and belief except as to those paragraphs applicable to the named Plaintiff, which are
7 based on personal knowledge, as follows:

8                              **NATURE OF THE ACTION**

9    1.    This action arises from a conspiracy among certain airlines to fix, raise, maintain,
10 and/or stabilize prices for long haul passenger flights ("Passenger Air Transportation") and for
11 fixed fuel surcharges on this transportation ("Fuel Surcharges") between United States and
12 Australia and New Zealand.  Fuel surcharges are fees charged to passengers by airlines
13 purportedly to compensate the airlines for increased fuel costs.  As alleged herein, Defendants
14 agreed to subscribe to the same index to set fuel surcharges despite having different cost
15 structures, including different fuel hedging strategies.

16    2.    Plaintiff, on behalf of all persons and entities that purchased Passenger Air
17 Transportation, to and from the United States, from any of the Defendants and their co-
18 conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period
19 from May 17, 2004 to August 1, 2007 (the "Class Period"), brings this action to recover treble
20 damages and injunctive relief for violations of the United States antitrust laws.

21    3.    This action arises from Defendants colluding with each other to fix, raise,
22 maintain, and/or stabilize prices for passenger fuel surcharges associated with, at least, one
23 segment between the United States and the relevant market.

24    4.    Because of this unlawful conduct and conspiracy, Plaintiff and other members of
25 the Class paid artificially inflated prices for international Passenger Air Transportation and
26 passenger fuel surcharges.  Plaintiff and other members of the Classes purchased those services
27 from a Defendant and have been damaged thereby.

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 1 -
DOCS\427513v1

1    5.    Plaintiff brings this action to recover treble damages and injunctive relief for

2    violations of Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1 pursuant to

3    Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15, 26, and various

4    state consumer protection statutes.

5                                   **JURISDICTION AND VENUE**

6    6.    This Complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.

7    §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit,

8    including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff

9    and the members of the Class by reason of Defendants' violations of Section 1 of the Sherman

10   Act, 15 U.S.C. §§ 1. 6.

11   7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

12   1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

13   8.    This Court has *in personam* jurisdiction over each of the Defendants because each

14   was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused

15   injury to persons and entities residing in, located in, or doing business in the Northern District of

16   California and throughout the United States.

17   9.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 22 and 28 U.S.C.

18   § 1391(b), (c), and (d) because during the Class Period many of the Defendants resided,

19   transacted business, were found, or had agents in this district, and because a substantial part of

20   the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected trade

21   and commerce described below has been carried out, in this district.

22                                          **PARTIES**

23   10.    Plaintiff Lori Barrett, a resident of Ontario, Canada, purchased Passenger Air

24   Transportation between United States and Australia directly from a defendant during the class

25   period and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

26   11.    Defendant Qantas Airways Limited ("Qantas") is an Australian company with its

27   principal place of business at Qantas Centre Level 9 Building A 203, Coward Street, Mascot,

28   Australia.  Qantas is engaged in the operation of international and domestic air transportation

1  services, and the provision of time definite freight services.  Qantas is also engaged in the sale of

2  international and domestic holiday tours, and associated support activities, including flight

3  training, catering, passenger and ground handling, and engineering and maintenance.

4      12.      **Defendant** Air New Zealand Limited ("Air New Zealand") is a New Zealand

5  corporation with its principle place of business at House 185 Fanshawe Street, Auckland, New

6  Zealand.  Air New Zealand provides air passenger and cargo transport services within New

7  Zealand, as well as to and from Australia, the South West Pacific, Asia, North America and the

8  United Kingdom. It encompasses business units providing engineering and ground handling

9  services. Subsidiaries extend to booking systems, travel wholesaling and retailing services.

10  **AGENTS**

11      13.      The acts alleged to have been done by Defendants were authorized, ordered or

12  done by their directors, officers, agents, employees, or representatives while actively engaged in

13  the management of each of the Defendants' affairs.

14  **THE GOVERNMENT INVESTIGATIONS &**
**QANTAS AIRWAYS LTD'S STRATEGIC**

15  **RELATIONSHIP WITH AN ADMITTED MEMBER OF A CARTEL**

16      14.      On February 14, 2006, Asian, European, and US antitrust authorities conducted

17  raids throughout the United States and the world at the offices of the various international

18  airlines.  The European Commission stated that "[t]he Commission has reason to believe that the

19  companies concerned may have violated (a European Union) treaty, which prohibits practices

20  such as price fixing."

21      15.      On February 14, 2006, the United States Department of Justice ("DOJ") stated

22  that they were coordinating with the European Commission on searching air carriers' offices and

23  confirmed that searches were carried out in New York, New York; Chicago, Illinois; Miami,

24  Florida; Boca Raton, Florida; San Francisco, California and Long Beach, California.  The DOJ

25  confirmed that "it was investigating the possibility of anti-competitive practices in the air cargo

26  industry."

27      16.      During May 2007, at the International Air Transportation Association ("IATA")

28  Cargo Network Service Conference, the United States Federal Bureau of Investigations served

1    subpoenas on various airlines.  FBI agents also interviewed various airline managers at their

2    hotel rooms.

3         17.     On August 1, 2007, the DOJ charged a member of the IATA of colluding with

4    rivals to fix passenger fuel surcharges for flights.  The DOJ also announced a $300 million

5    settlement with British Airways and it cited passenger transatlantic routes.

6         18.     In its news release, the DOJ said: "The Department also charged that between

7    August 2004 and February 2006, British Airways engaged in a conspiracy to suppress and

8    eliminate competition by fixing the Fuel Surcharge charged to passengers on long-haul

9    international flights, including flights between the United States and the United Kingdom."

10        19.     The DOJ also focused on transpacific flights to and from the United States, noting

11   that the investigation is "*ongoing.*"

12        20.     On August 13, 2007, Qantas Chief Executive Officer Geoff Dixon announced that

13   Qantas Airways would set aside $40 million to cover a potential fine in the United States as a

14   result of Fuel Surcharges and price fixing in its freight division. In a news release, Dixon was

15   quoted as saying:

16          On 1 August 2007, the U.S. Department of Justice announced that British
             Airways and Korean Air had agreed to plead guilty and pay separate US$300
17          million criminal fines for their roles in *conspiracies to fix prices of passenger
             and cargo flights*. British Airways subsequently announced that US$200
18          million of its fine related to cargo. Based on these developments, a decision
             has been made to make a US$40 million (A$47 million) provision in the
19          2006/07 Financial Accounts.

20        21.     Up until recently, British Airways and Defendant Qantas were in a strategic

21   relationship whereby, amongst other things, British Airways owned millions of shares of Qantas.

22   As British Airways' stated in its regulatory filings to its shareholders:

23          Under the Joint Services Agreement (JSA) there is full strategic, tactical and
             operational co-operation on all of British Airways' and Qantas' flights that
24          serve markets between the United Kingdom/Continental Europe and Southeast
             Asia/Australia. This co-operation continues to strengthen and provides
25          customers with improved flight departure times, routings and value for money,
             offering the very best of customer service to all passengers… British Airways
26          and Qantas continue to co-ordinate sales and marketing activities worldwide
             and to share all costs and revenues on the JSA routes, giving both companies

27

28

1    an incentive to improve the joint business. (British Airways PLC Form 20-F,
2    July 26, 2005).

3    22.    On February 17, 2006, the New Zealand Commerce Commission notified
4    American Airlines, Inc., that it and its competitors (including British Airways) were under
5    investigation as to whether they entered into an agreement relating to fuel surcharges.

6    **QANTAS AIRWAYS' RELATED CRIMINAL GUILTY PLEA**

7    23.    On November 27, 2007, the DOJ disseminated an information statement lodging
8    an antitrust complaint against Qantas for restraining trade and suppressing competition within the
9    air cargo industry between January 1, 2000 and continuing until at least February 14, 2006, the
10   exact dates being unknown, in violation of Section 1 of the Sherman Act (15 U.S.C. §1).

11   24.    On January 14, 2008, the DOJ filed a Plea Agreement relating to the charges
12   against Qantas.  On that same day, Brett Stuart Johnson, general counsel of Qantas, on behalf of
13   Qantas, pled guilty to the charges that Qantas was acting as a member within a cartel to suppress
14   competition within the air cargo industry by fixing various charges.  (Qantas Plea Sentencing,
15   Case No. 07-0322, Tr.24:14 (January 14, 2008, D.D.C.)).

16   25.    In addition to pleading guilty, Qantas also agreed to cooperate with the United
17   States in the prosecution of the antitrust and related criminal laws involving the sale of
18   international air cargo transportation services, any other federal investigation resulting there
19   from, and any litigation or other proceeding arising or resulting from any such investigation to
20   which the United States is a party.  (Qantas Plea Agreement, at ¶12, and Qantas Plea Sentencing,
21   Tr.22-23:25-8).

22   **TRADE ASSOCIATIONS**

23   26.    The Association of Asia Pacific Airlines ("AAPA") is an association "to serve as
24   a common forum for the articulation of members' views on matters and issues of common
25   interest, to foster close cooperation and to bring about an atmosphere conducive to the
26   stimulation of the travel and tourism industry."

27   27.    AAPA member airlines include Air New Zealand, Nippon Airways, Asiana
28   Airlines, Cathay Pacific Airways, China Airlines, Dragonair, EVA Airways, Garuda Indonesia,

1  Japan Airlines, Korean Air, Malaysia Airlines, Philippine Airlines, Qantas Airway, Royal Brunei

2  Airlines, Singapore Airlines, Thai Airways International, and Vietnam Airlines.

3      28.     During AAPA conferences, member firms discussed the increasing costs of fuel,

4  passenger fuel surcharges, maintaining yields, and other issues relating to the conservation of

5  fuel.  On November 18, 2005, the AAPA also established a resolution between members to

6  address the same.

7      29.     On August 21, 2007, Airline Business reported that several members of the

8  AAPA are currently being investigated for antitrust violations by the cartel authorities in United

9  States, Australia, Canada, South Africa, and New Zealand.

10  **TRADE AND COMMERCE**

11      30.     Throughout the Class Period, there was a continuous and uninterrupted flow of

12  Passenger Air Transportation in international commerce throughout the United States and

13  especially into and out of Chicago, Los Angeles, and New York.  Defendants' unlawful

14  activities, as described herein, took place within the flow of commerce to passenger flight

15  customers throughout the world, and had a direct, substantial and reasonably foreseeable effect

16  upon interstate and international commerce in the United States.

17      31.     As a direct, substantial, and reasonably foreseeable effect upon U.S. interstate and

18  international commerce, Defendants have reported in their regulator filings that over a million

19  passengers traveled on their on long-haul direct flights between United States and Australian-

20  New Zealand market destinations.

21      32.     On August 24, 2005, it was reported that Defendant Qantas was going to generate

22  an extra $400 million in extra revenue over the next two years as a result of its latest passenger

23  fuel surcharge adjustment to $75 per segment (up from $70) on long haul flights to North

24  American markets effective September 1, 2005. (*Qantas to rake in $400m from price hike*, Org.

25  Asia-Pacific New Agencies, August 24, 2005).

26  **CLASS ACTION ALLEGATIONS**

27      33.     Plaintiff brings this action on his own behalf and as a class action pursuant to

28  Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> All individuals or entities (excluding governmental entities, Defendants, and their parents, predecessors, subsidiaries, affiliates, and their co-conspirators) who purchased passenger air transportation, for long haul flights that included at least one flight segment between the United States and Australia or New Zealand and paid a fuel surcharge on their tickets directly from the Defendant and their co-conspirators or any predecessor, subsidiary, or affiliate or business partner of each, at any time during the period from May 17, 2004 to August 2007.

34.    Because such information is in the exclusive control of Defendants, Plaintiff does not know the exact number of members of the Class.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the hundreds-of-thousands and are sufficiently numerous and geographically dispersed throughout the United States and the world so that joinder of all Class members is impracticable.

35.    There are questions of law or fact common to the Class, which predominate over individual issues, including:

(a)    Whether Defendants engaged in a combination or conspiracy with their coconspirators to fix, raise, maintain, and/or stabilize Passenger Air Transportation and Fuel Surcharges on such flight segments;

(b)    The duration of the conspiracy alleged in this Complaint, and the nature and character of the acts performed by Defendants in furtherance of the conspiracies;

(c)    Whether Defendants violated Section 1 of the Sherman Act;

(d)    Whether Defendants were unjustly enriched;

(e)    The effect of Defendants' conspiracy caused injury to the businesses or property of Plaintiff and the members of the Class;

(f)    Whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

(g)    Whether damages can be shown on a class-wide basis; and

(h)    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

36.     Plaintiff will fairly and adequately protect the interests of the Class and her interests are coincident with and not antagonistic to those other members of the Class. Plaintiff is represented by counsel competent and experienced in the prosecution of complex litigation, including antitrust class action litigation.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

38.     The Class is readily definable and one for which records should exist in the files of Defendants.

### DEFENDANTS' DIFFERENT FUEL HEDGING STRATEGIES UNDERSCORES THEIR ANTICOMPETITIVE CONDUCT OF ADOPTING AND ADJUSTING FUEL SURCHARGES IN TANDEM

39.     As alleged herein, Defendants agreed to subscribe to the same index to set fuel surcharges despite having different cost structures, including different fuel hedging strategies.

40.     Each Defendant adopted its own fuel hedging strategies, yet, by adopting and adjusting their passenger fuel surcharges in tandem each acted consistent with a cartel-like agreement between them.

41.     During the Class Period, Defendants Qantas and Air New Zealand engaged different methods to hedge fuel costs and fuel consumption management techniques but adopted and adjusted their fuel surcharges and fares on long haul flights in tandem.

### DEFENDANTS' CONCERTED INCREASES TO FARES AND FUEL SURCHARGES

42.     Defendants were aware that their imposition of fuel surcharges and other surcharges would not be successful if their supposed competitors did not join them; otherwise, customers would be free to seek out lower prices. For this reason, Defendants entered into agreements to adopt and adjust passenger fuel surcharges at the same times and following the scale.

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1      - 8 -
DOCS\427513v1

43.     For example, during October 2003, American Airlines adopted a $10 passenger fuel surcharge on its flights.  After no competitor followed-suit, American Airlines was forced to drop the passenger fuel surcharge.  Likewise, during May 2003, SA Airways, announced that it was forced to drop passenger fuel surcharges on flights between South Africa and the United Kingdom because British Airways, plc, a direct-competitor on that route, would not follow-suit.

44.     During IATA conferences, member firms discussed the increasing costs of fuel, passenger fuel surcharges, maintaining yields, and other issues relating to the conservation of fuel.

45.     After a March 17 and 18, 2003, IATA meeting in Geneva, Switzerland, where Defendants attended,  "IATA held talks …and decided to raise the regular fares of member airlines by 3 per cent in principle."

46.      During September 2003, the Australian Competition and Consumer Commission rejected Defendants Qantas and Air New Zealand's bid to form a strategic alliance, which included a purchase of 22.5% of Air New Zealand by Qantas.  Due to concerns relating to competition, Qantas was forced to sell its financial interests in New Zealand. (*Air Fares on the move*, Daily Telegraph, March 21, 2003).

47.     During April 2004, Continental Airways adopted passenger fuel surcharges on long haul flights.  During early May 2004, British Airways, which plead guilty to criminal charges of acting in a cartel to fix and artificially inflate air fare and passenger fuel surcharges, adopted passenger fuel surcharges. (*Flight International*, Briefing, May 18, 2004).

48.     On May 11, 2004, Qantas announced its intention to adopt a $15 passenger fuel surcharge per segment on long haul flights effective May 17, 2004.  It was reported that the last time Qantas' fuel surcharges were enforced previous to 2004 was in late November 2000 when jet fuel prices rose above $43 a barrel. (*Qantas to Introduce Fuel Surcharge*, Australian Co. News Bites, May 11, 2004).

49.     On May 12, 2004, Air New Zealand announced its intentions to follow Qantas' adoption of passenger fuel surcharge, but charged $20 per segment on long haul flights effective

1    May 17, 2004.   In addition, British Airways announced its intention to adopt passenger fuel
2    surcharges of $A12.85 per segment on long haul flights during this same week too.

3        50.    On June 6, 2004, BBC News reported that at the IATA Meeting, which
4    Defendants' representatives attended, participants recommended price increases on base fares for
5    international flights. (*Air passengers pay for oil hike*, BBC News, June 6, 2004).

6        51.    On August 20, 2004, Qantas announced its intention to adjust passenger fuel
7    surcharges to $22 per segment on long haul flights effective August 26, 2004.   On August 26,
8    2004, Air New Zealand announced its intentions to follow Qantas' adjusted passenger fuel
9    surcharge, but charged $26 per segment on long haul flights effective September 2, 2004.

10        52.    On March 21, 2005, Qantas announced that it and British Airways would jointly
11   offer new pricing schedules to their transpacific long-haul flights effective April 26, 2005.

12        53.    On April 8, 2005, following an April 4, 2005 IATA meeting in New York City
13   attended by Defendants, Qantas announced its intention to adjust passenger fuel surcharges to
14   $60 per segment on long haul flights effective April 20, 2005.   On April 6, 2005, Air New
15   Zealand announced its intentions to follow Qantas' adjusted passenger fuel surcharge to $N52
16   per segment (up from $N40) on long haul flights effective April 12, 2005.

17        54.    At the same time as Defendants Qantas and Air New Zealand announced their
18   intentions to adjust fuel surcharges for April 2005, British Airways and Virgin Atlantic also
19   announced the same.

20        55.    On August 17, 2005, Air New Zealand announced its intentions to adjust
21   passenger fuel surcharges to $92 per segment (up from $72) on long haul flights to North
22   American markets effective September 1, 2005.   Immediately after the announcement, Qantas
23   chief executive Geoff Dixon was reported by The Age as saying that Qantas would likely adjust
24   fuel surcharges too.   On August 23, 2005, Qantas announced its intentions to follow Air New
25   Zealand's lead and adjust passenger fuel surcharges to $75 per segment (up from $60) on long
26   haul flights to North American markets effective September 2, 2005. (*Australia's Qantas again*
27   *hikes fuel surcharge*, Agence France Presse English Wire, August 23, 2005).

28

56.    On August 29, 2005, Air New Zealand reported that for the year ending June 30, 2005, it realized gains of $103 million from hedging aviation fuel.

57.    On April 20, 2006, Air New Zealand announced its intention to adjust long haul flight base fares by 10% effective May 1, 2006.

58.    On April 26, 2006, Air New Zealand announced its intention to adjust passenger fuel surcharges per segment effective May 15, 2006.  On April 26, 2006, Qantas announced its intention to adjust passenger fuel surcharges to $98 per segment for long haul flights effective May 5, 2006.

59.    During a June 5, 2006 IATA meeting in Paris, France, IATA GEO Giovanni Bisignani, applauded the air carrier attendees for using passenger fuel surcharges to combat high oil prices. (*Concerns Over Industry Performance Grow at IATA AGM*, Aviation Daily, June 6, 2006).

60.    On August 18, 2006, Qantas announced its intention to adjust passenger fuel surcharges to $145 for long haul flights to North American markets effective August 31, 2006.

61.    On October 19, 2006, Qantas announced its intention to reduce passenger fuel surcharges to $133 on long haul flights to North American markets effective October 24, 2006.

62.    On August 1, 2007, Qantas announced its intention to adjust passenger fuel surcharges to $145 per segment (up from $133) on long haul flights effective August 9, 2007.

63.    But for Defendants' anti-competitive conduct, Defendants would have been unable to increase the prices of their fares and fuel surcharges to the extent they did so during the Class Period.

## **FRAUDULENT CONCEALMENT**

64.    Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and members of the Class.

65.    Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until August 2007.  Nor could Plaintiff and the members of the Class have discovered the violations earlier than that time because Defendants and their co-conspirators

1    conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

2    furtherance thereof, and fraudulently concealed their activities through various other means and

3    methods designed to avoid detection.  The conspiracy was by its nature self-concealing.

4        66.    Only on or about August 1, 2007, when the DOJ announced its antitrust charges

5    against British Airways and Korean Air regarding their membership of cartels for the purpose of

6    fixing the price of passenger fuel surcharges, was the existence of the fuel surcharge conspiracies

7    disclosed to the public.

8        67.    Plaintiff and the members of the Class could not have discovered the unlawful

9    conduct at an earlier date through the exercise of reasonable diligence because of Defendants'

10   active and purposeful concealment of its unlawful activities.

11       68.    Through her due diligence, Plaintiff has discovered that Defendants Qantas and

12   Air New Zealand's adoption and adjustments to fares and fuel surcharges were in tandem to

13   British Airways.  British Airways had pled guilty to criminal price-fixing charges for being a

14   member of a cartel to artificially inflate fares and fuel surcharges.

15       69.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

16   and the members of Class assert the tolling of any applicable statute of limitations affecting the

17   rights of action of Plaintiff and the other members of the Class.

18                              **COUNT I**
19                    **VIOLATIONS OF THE SHERMAN ACT**

20       70.    Plaintiff incorporates by reference as if fully set forth herein the allegations

21   contained in the preceding paragraphs of this Complaint.  During the relevant periods,

22   Defendants and their co-conspirators engaged in a continuing agreement, understanding, and

23   conspiracy in restraint of trade to implement, artificially raise, fix, maintain, and/or stabilize the

24   prices of fares and passenger fuel surcharges between May 14, 2004 and August 1, 2007, in

25   violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

26       71.    Pursuant to Sections 4 and 16 of the Clayton Act, Plaintiff and members of the

27   Class seek injunctive relief, and treble damages, and any such other relief that the Court deems

28   necessary and appropriate.

72.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of base fares and related passenger fuel surcharges.

73.    During the Class Periods, Plaintiff and members of the Class purchased base fares and related passenger fuel surcharges directly from Defendants and their co-conspirators (or their respective agents, predecessors, subsidiaries, affiliates, and/or business partners).

74.    The illegal combination and conspiracy alleged herein had the following effects, among others:

(a)    price competition in the pricing of base fares and related passenger fuel surcharges, and, consequently, the prices of which has been restrained, suppressed, and/or eliminated;

(b)    prices charged by Defendants for base fares and related passenger fuel surcharges were fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

(c)    prices paid by Plaintiff and members of the Class for base fares and related passenger fuel surcharges charged by Defendants have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels by the fixing of prices of base fares and passenger fuel surcharges; and

(d)    Defendants refused to engage in price competition for passenger fuel surcharges.

75.    Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

76.    During the Class Periods, Defendants sold base fares for travel between United States and Japan in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such services across state boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States.

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1         - 13 -
DOCS\427513v1

1      77.     Pursuant to Sections 4 and 16 of the Clayton Act, Plaintiff and members of the

2  Class seek injunctive relief, and treble damages, and any such other relief that the Court deems

3  necessary and appropriate.

4      78.     Plaintiff and members of the Class have been required to pay more for base fares

5  and related passenger fuel surcharges in the United States than they would have paid in a

6  competitive marketplace absent Defendants' price-fixing cartel.

7      79.     During the Class Periods, Defendants' base fares and related passenger fuel

8  surcharges conspiracy as described herein caused Plaintiff and the members of the Class to pay

9  artificially inflated prices. As a result, Plaintiff and the members of the Class have been injured

10 and damaged in their business and property in an amount to be determined according to proof.

11     80.     As a direct and proximate result of Defendants' illegal conspiracy, Plaintiff and

12 the members of the Class have been injured and financially damaged in their respective

13 businesses and property, in that they have paid artificially inflated prices during the Class Period

14 that they would not have paid in the absence of the illegal conspiracy.

15     **WHEREFORE**, Plaintiff and the Class request as follows:

16     A.     The Court determine that this action may be maintained as a class action under

17 Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

18     B.     The Court adjudge and decree that the contract, combination and conspiracy

19 alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman

20 Act;

21     C.     Judgment be entered against Defendants, jointly and severally, and in favor of

22 Plaintiff and the Class for damages as allowed by law as determined to have been sustained by

23 them;

24     D.     Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates and

25 transferees, and their respective officers, directors, agents and employees, and all other persons

26 acting or claiming to act on behalf of Defendants or in concert with them, be permanently

27 enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or

28 renewing the combinations, conspiracy, agreement, understanding or concert of action, or

1  adopting any practice, plan, program or design having a similar purpose or effect in restraining

2  competition;

3      E.      The Court award Plaintiff and the Class attorneys' fees and costs, and pre-

4  judgment and post-judgment interest as permitted by law; and

5      F.      The Court award Plaintiff and the Class such other and further relief as may be

6  necessary and appropriate.

<b><u>JURY TRIAL DEMAND</u></b>

7      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

8  of the claims asserted in this Complaint so triable.

9  DATED: February 26, 2008                MILBERG WEISS LLP

10                                         JEFF S. WESTERMAN

11

12                                         _____

13                                         JEFF S. WESTERMAN

14                                         One California Plaza
                                           300 S. Grand Avenue, Suite 3900

15                                         Los Angeles, CA 90071-3149
                                           Telephone: (213) 617-1200

16                                         Facsimile:  (213) 617-1975
                                           Email: jwesterman@milbergweiss.com

17                                         MILBERG WEISS LLP

18                                         PETER SAFIRSTEIN
                                           ANDREW MORGANTI

19                                         One Pennsylvania Plaza
                                           New York, NY  10119-0165

20                                         Telephone: (212) 594-5300
                                           Facsimile:  (212) 868-1229

21                                         Email:  psafirstein@milbergweiss.com
                                               amorganti@milbergweiss.com

22                                         Attorneys for the Plaintiff and the Class

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1        - 15 -
DOCS\427513v1