1   Michael P. Lehmann  (77152; mlehmann@hausfeldllp.com)
    Christopher L. Lebsock (184546; clebsock@hausfeldllp.com)
2   Jon T. King (205073; jking@hausfeldllp.com)
    **HAUSFELD LLP**
3   44 Montgomery Street, Suite 3400
    San Francisco, CA  94104
4   Telephone:  (415) 633-1949
    Facsimile:  (415) 358-4980
5
    Michael D. Hausfeld  (mhausfeld@hausfeldllp.com)
6   **HAUSFELD LLP**
    1700 K Street, NW, Suite 650
7   Washington, DC 20006
    Telephone:  (202) 540-7200
8   Facsimile:    (202) 540-7201

9   Joseph W. Cotchett  (36324; jcotchett@cpmlegal.com)
    Nanci E. Nishimura (152621; nnishimura@cpmlegal.com)
10  Steven N. Williams (175489; swilliams@cpmlegal.com)
    Matthew K. Edling (250940 medling@cpmlegal.com)
11  Stuart G. Gross (251019; sgross@cpmlegal.com)
    **COTCHETT, PITRE & MCCARTHY**
12  San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
13  Burlingame, CA 94010
    Telephone:  (650) 697-7000
14  Facsimile:    (650) 697-0577

15  *Interim Class Counsel For The Putative Class*

16              **UNITED STATES DISTRICT COURT**

17            **NORTHERN DISTRICT OF CALIFORNIA**

18  | IN RE TRANSPACIFIC PASSENGER | ) | No. 07-CV-5634-CRB |
    | **AIR TRANSPORTATION** | ) | |
19  | **ANTITRUST LITIGATION** | ) | MDL 1913 |
    | | ) | |
20  | | ) | <u>CLASS ACTION</u> |
    | | ) | |
21  | **This Document Relates to:** | ) | **PLAINTIFFS' REQUEST FOR JUDICIAL** |
    | | ) | **NOTICE IN OPPOSITION TO** |
22  | **ALL ACTIONS** | ) | **CONTINENTAL AIRLINES, INC.'S** |
    | | ) | **MOTION TO DISMISS CONSOLIDATED** |
23  | | ) | **CLASS ACTION COMPLAINT PURSUANT** |
    | | ) | **TO F.R.C.P. 12(B)(6)** |
24  | | ) | |
    | | ) | Date:  November 13, 2009 |
25  | | ) | Time:  10:00 a.m. |
    | | ) | Judge:  Hon. Charles R. Breyer |
26  | | ) | Courtroom:  No. 8, 19th Floor |

27

28
    PLAINTIFFS' REQUEST FOR JUDICIAL
    NOTICE IN OPPOSITION TO CONTINENTAL'S
    MOTION TO DISMISS CONSOLIDATED                    CASE NO. 07-CV-5634-CRB
    CLASS ACTION COMPLAINT

1

Plaintiffs respectfully request that the Court take judicial notice of the documents attached

2

as Exhibits 1-2 listed below.  Plaintiffs make this request pursuant to Federal Rule of Evidence

3

201.

4

Rule 201 of the Federal Rules of Evidence permits the Court to take judicial notice of

5

facts "not subject to reasonable dispute in that it is either (1) generally known within the

6

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

7

resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

8

Moreover, "[j]udicial notice may be taken of documents filed and orders or decisions

9

entered in any federal or state court[]" because they are not susceptible to reasonable dispute.  *See*

10

Robert E. Jones et al., Rutter Group Practice Guide: Federal Civil Trials and Evidence, § 8:875

11

(2007).  This includes records filed previously in the current litigation as well as in other

12

proceedings.  *See*, e.g., *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,

13

971 F. 2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both

14

within and without the federal judicial system, if those proceedings have a direct relation to

15

matters at issue.").

16

Exhibit 1:  *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1775 (E.D.N.Y.

17

Aug. 21, 2009) ("*Air Cargo*" Order").

18

Exhibit 2:  *In re Korean Air Lines Co., Ltd.*, No. 07-05107 (C.D. Cal.) ("Order Granting

19

In Part And Denying In Part Defendants' Motion To Dismiss," p. 4 (June 25, 2008)).

20

Dated: October 23, 2009                     Respectfully submitted,

21

22

By:  */s/Michael P. Lehmann*  _____
Michael P. Lehmann  (77152;
mlehmann@hausfeldllp.com)

23

Christopher L. Lebsock (184546;
clebsock@hausfeldllp.com.com)

24

Jon T. King (205073; jking@hausfeldllp.com)
**HAUSFELD LLP**

25

44 Montgomery Street, Suite 3400
San Francisco, CA  94104

26

Telephone:  (415) 633-1949
Facsimile:  (415) 358-4980

27

28

PLAINTIFFS' REQUEST FOR JUDICIAL
NOTICE OF OPPOSITION TO CONTINENTAL'S
MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT

-1-

CASE NO. 07-CV-5634-CRB

1

2

3

4

Michael D. Hausfeld  (mhausfeld@hausfeldllp.com)
**HAUSFELD LLP**
1700 K Street, NW,  Suite 650
Washington, DC 20006
Telephone:  (202) 540-7200
Facsimile:    (202) 540-7201

5

Dated:  October 23, 2009

Respectfully submitted,

6

7

By: _/s/ *Joseph W. Cotchett*_____
Joseph W. Cotchett  (36324; jcotchett@cpmlegal.com)
Nanci E. Nishimura (152621;
nnishimura@cpmlegal.com)
Steven N. Williams (175489; swilliams@cpmlegal.com)
Matthew K. Edling (250940; medling@cpmlegal.com);
Stuart G. Gross (251019;
sgross@cpmlegal.com)
**COTCHETT, PITRE & MCCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-7000
Facsimile:    (650) 697-0577

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                        :
IN RE:                                                  :
                                                        :
AIR CARGO SHIPPING SERVICES                             :          ORDER
ANTITRUST LITIGATION                                    :
                                                        :          06-MD-1775 (JG) (VVP)
MDL No. 1775                                            :
                                                        :
---------------------------------------------------------------X
                                                        :
THIS DOCUMENT RELATES TO:                               :
                                                        :
ALL CASES                                               :
                                                        :
---------------------------------------------------------------X

JOHN GLEESON, United States District Judge:

On September 26, 2008, Judge Viktor V. Pohorelsky filed a thorough, well-reasoned 86-page Report and Recommendation ("R&R") with respect to various motions to dismiss. Familiarity with the R&R is assumed. Various objections have been filed. In all respects but one, I find those objections without merit.

The one exception relates to Judge Pohorelsky's recommendation that the plaintiffs' Sherman Act claims be dismissed, with leave to replead, because they fail to allege "enough specifics to support a plausible conspiracy," R&R at 13, and "fail[] to give the defendants sufficient notice of the claims against them," *id.* at 20. I see no need to write extensively here about the Supreme Court's decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The effects of those decisions across the full spectrum of federal cases are still uncertain and the subject of considerable controversy and even pending legislation, but in the antitrust setting it is clear that the law now requires, before defendants are forced to bear the

potentially enormous expense of discovery, that plaintiffs allege facts that raise a reasonable expectation that discovery will reveal evidence of the alleged antitrust violation. I respectfully disagree with Judge Pohorelsky's application of that standard to the First Consolidated Amended Complaint. I conclude that the allegations summarized at pages 9-12 of the R&R establish plausible grounds to infer an agreement among the defendants to artificially inflate the prices of airfreight shipping services and give sufficient notice of the claims against them. The additional fact that numerous defendants have pled guilty to criminal charges of fixing prices on air cargo shipments further supports that conclusion. Indeed, in this regard, the facts have changed significantly since Judge Pohorelsky issued the R&R. In the intervening months, the number of defendants that have pled guilty has risen to 15, and three more have entered the Department of Justice's leniency program (and thus have no doubt admitted their involvement in price-fixing). The defendants do not object to the Court's consideration of these many admissions of guilt, but contend that they "do not *confirm* the existence" of the overarching conspiracy plaintiffs have alleged. Defendants' Response to Plaintiffs' Objections at 17 (emphasis added) (Docket Number 865). Maybe so, but the admissions of price-fixing by so many of the defendants certainly "are suggestive enough to render a § 1 conspiracy plausible." *Twombly*, 550 U.S. at 556.

As mentioned, in all other respects, I find the objections to the R&R to be without merit, and I cannot improve upon Judge Pohorelsky's skillful analyses of the issues. Accordingly, except as discussed above, the R&R is adopted. The motion to dismiss the claims under state antitrust statutes and common law, state consumer protection statutes and state unfair

competition statutes is granted, as is the motion to dismiss the claims arising under European antitrust law.  In all other respects the motions to dismiss are denied.

So ordered.

John Gleeson, U.S.D.J.

Dated:       August 21, 2009
             Brooklyn, New York

3

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION | MDL No. 07-01891 |
| | Master File No. CV 07-05107 SJO (AGRx) |
| | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** [Docket Nos. 99 & 102] |

This matter is before the Court on Defendants Korean Airlines Co., Ltd.'s ("Korean Air") and Asiana Airlines, Inc.'s ("Asiana") Motions to Dismiss, both filed April 4, 2008. Plaintiffs Laura Albee, Joon Chung, Jason Lee, Timothy Murphy, Sungshic Park, Yoon Park, Howard Ree, Leon Song, and Edward Yoo (collectively, "Plaintiffs") filed a single Opposition, to which Korean Air and Asiana (collectively, "Defendants") each replied. The Court heard oral argument on June 9, 2008. Having considered the arguments made in the briefs and at the hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions for the reasons stated below.[1]

---

[1] Following oral argument, Korean Air and Plaintiffs filed requests for judicial notice of court records in the recently-settled case *In re International Air Transportation Surcharge Antitrust Litigation*, MDL No. 1793, Case No. M: 06-cv-01793-CRB. (*See* Docket Nos. 149, 152, & 153.) The requests are GRANTED. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case).
    Prior to oral argument, Korean Air also filed a request for judicial notice of airfares posted on its website. (Docket No. 143.) For reasons explained later in this Order, the request is DENIED.

I.     UNDERLINE BACKGROUND

Korean Air and Asiana are primary competitors in the air passenger market between the United States ("U.S.") and the Republic of Korea ("Korea"). (Second Am. Consol. Class Action Compl. ("SAC") ¶ 23.) On August 1, 2007, the U.S. Department of Justice ("DOJ") charged Korean Air with conspiring with an unnamed co-conspirator from January 2000 to July 16, 2006, to fix prices on passenger flights from the U.S. to Korea. (SAC ¶ 36.) Korean Air pled guilty to the charges and paid a $300 million fine.[2] (SAC ¶¶ 37, 39.)

After the plea, numerous class-action lawsuits were filed against Korean Air and Asiana. These lawsuits were transferred to this Court for pretrial purposes, where they were divided into two consolidated actions: one for direct purchasers and one for indirect purchasers. Plaintiffs filed their SAC on February 29, 2008, on behalf of the direct purchasers, alleging that, from January 1, 2000 to August 1, 2007 (the "Class Period"), Defendants conspired to fix prices on passenger flights between the U.S. and Korea in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.[3]

Defendants now move to dismiss the SAC, or portions thereof, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: (1) Plaintiffs fail to allege sufficient facts showing that they are direct purchasers and thus have standing to pursue Sherman Act claims; (2) Plaintiffs' Korea-purchase claims – i.e., those claims based on purchases of tickets for air travel originating in Korea – are barred by the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a; (3) Plaintiffs' Korea-purchase claims fail for want of antitrust standing; (4) Plaintiffs fail to allege sufficient facts showing that Asiana is Korean Air's unnamed coconspirator and showing that the alleged conspiracy extends to all flight segments between the

---

[2]  The plea, and corresponding fine, also encompassed criminal antitrust violations for Korean Air's involvement in a price-fixing conspiracy concerning air cargo transportation. (SAC ¶ 39.)

[3]  Section 1 of the Sherman Act provides, in part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

1  U.S. and Korea; and (5) Plaintiffs fail to sufficiently plead fraudulent concealment so as to toll the
2  four-year statute of limitations for Sherman Act claims.

3  II.    DISCUSSION

4          A.    Motions to Dismiss for Lack of Subject Matter Jurisdiction

5          A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial
6  or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack,
7  the challenger asserts that the allegations contained in a complaint are insufficient on their face
8  to invoke federal jurisdiction." *Id.* Courts presume the plaintiff's allegations to be true and resolve
9  all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.
10 2004).

11         Defendants raise a facial attack on Plaintiffs' standing to seek *any* damages under the
12 Sherman Act because, Defendants argue, Plaintiffs fail to show that they are direct purchasers.[4]
13 Alternatively, Defendants raise a facial attack on Plaintiffs' ability to pursue their Korea-purchase
14 claims because, Defendants argue, these claims are barred by the FTAIA. Defendants also
15 challenge the antitrust standing of the Korea-purchase Plaintiffs.[5]

16

17

18

19

20         [4] Defendants do not specify whether this argument is to be considered under Rule 12(b)(1)
21 or Rule 12(b)(6). Because the Court does not have subject matter jurisdiction if Plaintiffs lack
   standing to assert their Sherman Act claim, *cf. Warren v. Fox Family Worldwide, Inc.*, 328 F.3d
22 1136, 1140 (9th Cir. 2003) ("[I]f Warren lacks standing to assert his federal copyright claims, the
   district court did not have subject matter jurisdiction and dismissal was appropriate."), the Court
23 addresses the issue under Rule 12(b)(1), *see In re Dixtropan XL Antitrust Litig.*, MDL No. 1761,
   2007 WL 2978329, at *1 (N.D. Cal. Oct. 11, 2007) (reviewing a challenge to the plaintiff's direct
24 purchaser status under Rule 12(b)(1)).

25         [5] The Court recognizes that a motion to dismiss for lack of antitrust standing is more
26 properly considered under Rule 12(b)(6). *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449-50 (6th
   Cir. 2007); *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir. 2002). However,
27 because the antitrust standing analysis follows from the FTAIA analysis, the Court includes its brief
   antitrust standing discussion in this section of the Order for purposes of organizational coherence
28 and clarity.

3

1.  **Plaintiffs Have Sufficiently Alleged That They Are Direct Purchasers**.

Private suits to enforce the Sherman Act are authorized by § 4 of the Clayton Act, 15 U.S.C. § 15(a). *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000). In *Illinois Brick Co. v. Illinois*, the Supreme Court held that, with limited exception, only persons purchasing a product or service *directly* from a defendant may recover damages under § 4 for price fixing in violation of the Sherman Act.[6] 431 U.S. 720, 728-29 (1977). According to Defendants, Plaintiffs fail to show that they are direct purchasers or otherwise entitled to proceed under *Illinois Brick*.

Plaintiffs must provide "a short and plain statement of the grounds for the court's jurisdiction . . . ." Fed. R. Civ. P. 8(a)(1). Plaintiffs allege that they "purchased passenger air transportation services between the U.S. and Korea *from one or both Defendants* during the Class Period." (SAC ¶¶ 7-15 (emphasis added).) This allegation is sufficient under Rule 8(a)(1) to invoke the Court's jurisdiction, as one can reasonably infer from it that Plaintiffs purchased tickets "[directly] from one or both Defendants." Plaintiffs need not detail the specifics of their respective purchases at this time.[7]

---

[6] The exceptions to this rule are: (1) where an indirect purchaser receives goods from the direct purchaser according to a preexisting cost-plus contract; or (2) where the direct purchaser is controlled or owned by another party, either by the seller or the indirect purchaser. *In re Ditropan*, 2007 WL 2978329, at *3 (citing *Illinois Brick*, 431 U.S. at 726 n.2, 736 n.16).

[7] Defendants contend that SAC's class definition "inevitably includes those who did not purchase directly and who do not come within either *Illinois Brick* exception." (Asiana Mot. 5.) While the class definition appears overbroad (*see* SAC ¶ 47), "[b]ecause no class has yet been certified in this putative class action, the Court must treat the action as an individual action by the named plaintiffs." *Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*, No. 03 Civ. 10312, 2005 WL 2207017, at *1 n.2 (S.D.N.Y. Sept. 8, 2005). As stated, the named Plaintiffs have sufficiently alleged that they are direct purchasers. The Court will address the class definition at the class certification stage.

2. <u>Plaintiffs Have Sufficiently Alleged That the Court Has Jurisdiction over Their Korea-Purchase Claims</u>.

"The [FTAIA] excludes from the Sherman Act's reach much anticompetitive conduct that causes only foreign injury." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004).[8] Specifically:

[The Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless -

(1) such conduct has a direct, substantial, and reasonably foreseeable effect -

    (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

    (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

(2) such effect gives rise to a claim under the provisions of [the Sherman Act], other than this section.

15 U.S.C. § 6a.

The Supreme Court has formulated a two-part test for employing the FTAIA's rather "technical language." *Empagran*, 542 U.S. at 162. First, the FTAIA "lays down a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach." *Id.* Second, "such conduct" is only subject to the Sherman Act if it "*both* (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *Id.*

---

[8] "Federal courts have struggled for decades to determine when United States courts have jurisdiction over allegations of foreign restraints of trade." *United States v. LSL Biotechnologies*, 379 F.3d 672, 677 (9th Cir. 2004). "In an effort to provide a single standard to determine whether American antitrust laws apply to a given extraterritorial transaction, Congress enacted the [FTAIA] in 1982." *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 451 (2d Cir. 1987); *see also LSL Biotechnologies*, 379 F.3d at 679 ("[T]he FTAIA provides the guiding standard for jurisdiction over foreign restraints of trade.").

1    Applying this test, the Court concludes that Plaintiffs' Korea-purchase claims are not on

2    their face barred by the FTAIA.[9]

3                          a.    Trade or Commerce (Other than Import Trade or Import Commerce)

4                                with Foreign Nations

5    The first part of the FTAIA inquiry focuses on Defendants' conduct alleged to constitute a

6    violation of the Sherman Act. *See Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 305 n.13 (3d

7    Cir. 2002). According to Plaintiffs, the relevant conduct is "a conspiracy to fix the prices charged

8    for the service of flying passengers between Korea and the U.S." (Opp'n 19; *see also* SAC ¶ 1.)

9    Defendants contend, however, that for purposes of the FTAIA inquiry, the relevant conduct is

10   "Defendants' alleged agreement to fix the price of airline tickets sold in Korea." (Korean Air Mot.

11   5; *see also* Asiana Mot. 8 "[T]his 12(b)(1) motion is limited to defendants' alleged agreement to

12   fix the prices as to tickets sold abroad . . . .").) The Court declines to adopt Defendants' definition.

13   First, the target of the alleged conspiracy is not the price of airline tickets, but air travel. A

14   "ticket" has no value to a customer separate and apart from the air travel. *See Spirit Airlines, Inc.

15   v. Nw. Airlines, Inc.*, 431 F.3d 917, 933 ("[A]t its most basic level, the unit of output of a passenger

16   airline is transportation of passengers between cities.") (internal quotation marks omitted). Second,

17   Defendants' attempt to divorce foreign from domestic conduct for purposes of the FTAIA analysis

18   is misplaced; it is not Defendants' conduct that is "split [and] analyzed for its separate domestic

19   and foreign components," but Plaintiffs' Sherman Act claim that arises from said conduct, *see In*

20

21

22

23

24

25

26   ―――――――――

27   [9] This decision is subject to change following discovery. *See Emrich v. Touche Ross & Co.*,
     846 F.2d 1190, 1194 n.2 (9th Cir. 1988) ("It is elementary that the subject matter jurisdiction of the
     district court is not a waivable matter and may be raised at anytime by one of the parties, by

28   motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court.").

6

1   *re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 784 (N.D. Cal. 2007).[10] As such, the Court

2   adopts Plaintiffs' articulation of Defendants' conduct for its FTAIA inquiry.

3     Having identified the "conduct" at issue, the Court now must determine whether this

4   conduct involves "trade or commerce with foreign nations" or "import trade or commerce with

5   foreign nations" or neither. *Turicentro*, 303 F.3d at 301 & n.7. Defendants' conduct plainly involves

6   trade or commerce with foreign nations; Defendants, foreign airlines, allegedly conspired to fix the

7   prices charged to Koreans for the service of flying them from Korea to the U.S. *See Empagran*,

8   542 U.S. at 163 (stating that the phrase "trade or commerce with foreign nations" includes

9   commerce that is "wholly foreign").[11] Whether Defendants' conduct involves "import trade or

10  commerce" is less obvious.

11    "While the FTAIA does not explicitly define the term 'import,' 'the term generally denotes

12  [that] a product (or perhaps a service) has been brought into the United States from abroad.'" *CSR*

13  *Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d 526, 539 (D.N.J. 2005) (quoting *Turicentro*, 303 F.3d at 303

14  (citing various dictionary definitions)). In determining whether conduct "involv[es]" import trade or

15  commerce under the FTAIA, courts take a narrow view:

16  ————————————————

17    [10] This approach is consistent with the Supreme Court's approach in *Empagran*. There, the

18  alleged conduct was "a price-fixing conspiracy, raising the price of vitamin products to customers
    in the United States and to customers in foreign countries." 542 U.S. at 158. The Court did not split

19  the conduct for purposes of the FTAIA inquiry. *See id.* at 164 ("The price-fixing conduct
    significantly and adversely affects both customers outside the United States and customers within

20  the United States . . . ."). However, the Court did split the plaintiffs' Sherman Act claim based on
    domestic versus foreign purchasers. *Id.* at 159. ("We conclude that, in this scenario, a purchaser

21  in the United States could bring a Sherman Act claim under the FTAIA based on domestic injury,
    but a purchaser in Ecuador could not bring a Sherman Act claim based on foreign harm."). Here,

22  Defendants do not dispute that claims based on travel originating in the U.S. are cognizable; thus,
    while the conduct is defined in a manner that encompasses the claims of both U.S. and Korean

23  purchasers, the Court only considers whether it has subject matter jurisdiction over the foreign

24  claims.

25    [11] Plaintiffs do not contest this point. Indeed, their argument regarding the applicability of
    the FTAIA assumes as much:

26     Plaintiffs appear to concede that their antitrust claims implicate foreign trade or
       commerce by arguing that the FTAIA does not apply because the alleged conduct

27     constitutes "import trade or import commerce." Such argument necessarily assumes
       that the conduct involves trade or commerce with foreign nations.

28  *CSR Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d 526, 539 (D.N.J. 2005).

[T]he FTAIA differentiates between conduct that "involves" [import trade or] commerce, and conduct that "directly, substantially, and foreseeably" affects such [trade or] commerce. To give the latter provision meaning, the former must be given a relatively strict construction.

*Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, 227 F.3d 62, 72 (3d Cir. 2000). In sum, the Court must determine whether "defendants . . . *directly* br[ought] items or services into the United States or *directly* increase[d] or decrease[d] United States imports." *CSR*, 405 F. Supp. 2d at 541.[12]

Plaintiffs contend that passengers traveling from Korea to the U.S. are "a type of 'import,'" and thus, "a price-fixing agreement targeting the costs of air travel into the U.S. involves 'import commerce.'" (Opp'n 19.) This argument is unconvincing. Air passengers are not products like the oriental rugs that were found to be the object of import commerce in *Carpet Group*, 227 F.3d at 72, and Plaintiffs have failed to make a strong case for why they should be treated as such, *see Smith v. Turner*, 48 U.S. (7 How.) 283, 325 (1849) ("No one thinks of calling men imports or exports or cargo, but passengers."). The sole authority offered in support of their position is strained and without context. According to Plaintiffs, "in *Empagran*, the Supreme Court stated that

---

[12]   Defendants argue that their conduct does not involve import trade or commerce "because the 'object of the conspiracy' is directed to [Korea] and the alleged injury (if any) would be felt abroad." (Asiana Mot. 9 (quoting *Kruman v. Christie's Int'l, PLC*, 284 F.3d 384, 395-96 (2d Cir. 2002), *abrogated on other grounds by Empagram*, 542 U.S. 155).) In other words, Defendants contend the Court need not even inquire as to whether the provision of passenger air service between Korea and the U.S. constitutes import trade or commerce. (*See* Korean Air Mot. 9 ("Other activities of Defendants – *e.g.*, flying airplanes to and from the U.S. – are irrelevant to the FTAIA analysis.").) This argument follows from Defendants' definition of the conduct at issue as the fixing of prices of airline tickets sold in Korea, which the Court rejected above. The three cases cited by Defendants in support of their argument – *Kruman*, *Turicentro*, and *CSR* – are thus readily distinguishable from the present case. In those cases, the service that was the object of the alleged conspiracies took place outside of domestic commerce, and to the extent that it took place in domestic commerce, it was a result of plaintiffs' conduct. As the court stated in *Turicentro*, "[n]o items or services were brought into the United States by [the defendants' conduct] alone." 303 F.3d at 304; *see also CSR*, 405 F. Supp. 2d at 542 ("N]o services were brought into the United States by Defendants' issuance of coverage alone."). That is not the situation here, where the relevant service *is* transport into the United States. By Defendants' conduct alone, purchasers of airline tickets were brought aboard airplanes into the United States. Whether such transit may properly be deemed *import* trade or commerce is thus the key question before the Court. As to this question, the Court, like Defendants, answers in the negative.

1  tourists traveling from the U.S. to the Dominican Republic were 'a kind of export.'" (Opp'n 19

2  (quoting 542 U.S. at 172).) The Court was merely describing what a district court had said in a

3  case decided prior to the enactment of the FTAIA. The Court ultimately concluded that the district

4  court opinion "[could not] be taken as significant support for application of the Sherman Act here."

5  *Empagran*, 542 U.S. at 172. Plaintiffs' largely unsupported assertion that air passengers are a type

6  of import is insufficient to establish subject matter jurisdiction.[13]

7                          b.      The FTAIA's "Domestic-Injury" Exception

8          As noted above, where price-fixing activity constitutes "conduct involving trade or

9  commerce . . . with foreign nations," such conduct "nonetheless [may fall] within a domestic-injury

10 exception to the general rule, an exception that applies (and makes the Sherman Act nonetheless

11 applicable) where the conduct (1) has a 'direct, substantial, and reasonably foreseeable effect' on

12 domestic commerce, and (2) 'such effect gives rise to a [Sherman Act] claim.'" *Empagran*, 542

13 U.S. at 158-59 (quoting 15 U.S.C. § 6a(1)(A), (2)).

14                          I.      Direct, Substantial, and Reasonably Foreseeable Effect

15         A conspiracy to fix the prices charged for the service of flying passengers between Korea

16 and the U.S. has a direct, substantial, and reasonably foreseeable effect on domestic commerce:

17 higher prices in the U.S. *See, e.g.*, *Empagran*, 542 U.S. at 175 (describing the "adverse domestic

18 effect" of an international price-fixing conspiracy as "higher prices in the United States"); *In re

19 Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 539-40 (8th Cir. 2007) (same); *Sun

20 Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1113 (N.D. Cal. 2007)

21 (same).[14]

22

23

---

24         [13]  Plaintiffs also state that, "[b]ecause Defendants' conduct involves a conspiracy to fix

25 prices for a service (passenger air travel) brought into the U.S. from abroad, the FTAIA is
   inapplicable under the 'import commerce' provision . . . ." (Opp'n 18.) Plaintiffs offer no authority

26 to support this far from self-evident argument. Accordingly, it is without merit.

27         [14]  According to Defendants, "Plaintiffs have not alleged, and cannot allege, any effect that

28 a ticket sale in Korea might have on U.S. domestic commerce . . . ." (Asiana Mot. 9.) Again, this
   argument is premised on Defendants' already-rejected definition of the conduct at issue.

ii.     Whether Such Effect Gives Rise to a Sherman Act Claim

Plaintiffs must show that the domestic effect in question – higher prices in the U.S. – gives rise to a Sherman Act claim for those Plaintiffs who purchased tickets for air travel originating in Korea.[15]

In *Empagran*, vitamin sellers around the world conspired to fix prices, leading to higher vitamin prices in the U.S. and abroad. The Supreme Court held that foreign purchasers could not bring a Sherman Act claim where the harm they suffered was independent of any adverse domestic effect (i.e., higher prices in the U.S.). 542 U.S. at 175 ("We have assumed that the anticompetitive conduct here independently caused foreign injury; that is, the conduct's domestic effects did not help bring about that foreign injury."); *id.* at 173 ("Congress would not have intended the FTAIA's exception to bring independently caused foreign injury within the Sherman Act."). However, the Court "expressly left open the question whether the Sherman Act may apply to foreign claims linked to domestic effects (i.e., claims in which the foreign injury is not independent of the domestic effect)." *Sun Microsystems*, 534 F. Supp. 2d at 1113. Accordingly, the matter was remanded for consideration of whether "the foreign injury was not independent," and sufficiently so "to bring the price-fixing conduct within the scope of the FTAIA's exception." *Empagran*, 542 U.S. at 175.

In *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.* ("*Empagran II*"), the D.C. Circuit held that a plaintiff must allege proximate cause to establish the requisite "nexus" between the domestic effect and the foreign injury. 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("The statutory language – 'gives rise to' – indicates a direct causal relationship, that is, proximate causation . . . ."). There, the plaintiffs asserted that, "[b]ecause the [defendants'] product (vitamins) was fungible and globally marketed, they were able to sustain super-competitive prices abroad only by maintaining super-competitive prices in the United States as well." *Id.* at 1270. The court rejected this argument: "While maintaining super-competitive prices in the United States may have facilitated

---

[15]  As already noted, it is uncontested that the effect of higher prices in the U.S. gives rise to a Sherman Act claim for Plaintiffs who purchased tickets for air travel originating in the U.S.

the appellees' scheme to charge comparable prices abroad, this fact demonstrates at most but-for causation." *Id.* at 1271; *see also, e.g.*, *Rubber Chems.*, 504 F. Supp. 2d at 786 ("[Plaintiffs'] allegations constitute no more than the indirect, but-for causation that *Empagran II* and its progeny have rejected.").

According to Defendants, the instant case is analogous to *Empagran II*, in that "it is the foreign effect of the conspiracy – i.e., super-competitive prices charged in Korea – that gives rise to [Plaintiffs'] Korea-purchase claims." (Korean Air Mot. 14.) Plaintiffs counter that, "unlike in *Empagran II*, the inflated prices Defendants charge on the flight segment from Korea to the U.S. [are] 'inextricably bound up' with and dependent upon the inflated price charged on the segment from the U.S. to Korea; if this were not the case, Defendants could not charge artificially inflated prices on roundtrip airfare, a core component of their business." (Opp'n 23 (quoting *Empagran*, 542 U.S. at 171-72).)

The parties' disagreement stems mainly from differing conceptions of the relevant geographic market, or markets, here at issue. Under Defendants' theory, the price-fixing conspiracy is aimed at two wholly independent markets, the U.S. and Korea. If true, this case seems to fit within the *Empagran II* mold; the foreign effect of Defendants' conduct (higher prices in Korea) independently gives rise to the claims of foreign purchasers. Under Plaintiffs' theory, however, the relevant market is the Korea-U.S. route. If true, this case appears to be distinguishable from *Empagran II*; the foreign effect of Defendants' conduct (higher prices in Korea) may well be proximately related to the domestic effect of Defendants' conduct (higher prices in the U.S.), jointly giving rise to the claims of foreign and domestic purchasers alike.

In support of their argument, Defendants ask the Court to take judicial notice of airfares printed on their website. According to Defendants, the different fares for flights originating in Korea versus flights originating in the U.S. demonstrate the existence of two independent markets. The Court denies this request. Not only do the materials reference dates outside of the Class Period, but they also require "the Court to draw complicated inferences . . . without the benefit of any testimony to explain the meaning and significance of their contents." *See Darensburg v. Metro. Transp. Com'n*, No. C-05-01597, 2006 WL 167657, at *1 (N.D. Cal. Jan. 20, 2006). Further,

Defendants' argument seems at odds with authority suggesting that the relevant market should be understood as the Korea-U.S. route. *Cf. In re Nw. Airlines Corp. Antitrust Litig.*, 197 F. Supp. 2d 908, 915 (E.D. Mich. 2002) ("Regarding [the] use of 'city-pairs' as the relevant geographic markets in this case, Plaintiffs have produced a wealth of government reports, air travel data compilations, and statements by airline officials that use city-pairs as their frame of reference for discussing and evaluating various aspects of the air travel industry.").

On the present record, and construing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs' single market theory warrants further discovery, and does not now serve as a basis for dismissal of Plaintiffs' Korea-purchase claims.

> 3.   Plaintiffs Have Sufficiently Alleged That Korea-purchase Plaintiffs Have Antitrust Standing.

To establish standing to bring an antitrust claim, plaintiffs "must have suffered an injury the antitrust laws were intended to prevent, and the injury must flow from that which makes the defendants' acts unlawful." *Turicentro*, 303 F.3d at 307. "This analysis implicates many of the same jurisdictional issues under the FTAIA." *Rubber Chems.*, 504 F. Supp. 2d at 786 n.7; *see also Sun Microsystems*, 534 F. Supp. 2d at 1116 ("Whether or not plaintiffs have standing to bring claims on behalf of their subsidiaries and affiliates is related to the proximate cause inquiry.").

According to Defendants, "Korea-purchase plaintiffs' claims arise from alleged injuries suffered entirely outside of U.S. commerce - the payment of alleged super-competitive prices for airline tickets purchased in Korea. Accordingly, they cannot show antitrust injury and their claims must be dismissed for lack of antitrust standing." (Korean Air Mot. 18.) This argument mirrors Defendants' FTAIA argument. "[B]ecause [P]laintiffs' claims based on foreign injury may be cognizable under U.S. antitrust law as discussed above, [P]laintiffs may have standing to pursue those claims. . . . [T]he [C]ourt is of the view that discovery is necessary to completely evaluate this argument." *See Sun Microsystems*, 534 F. Supp. 2d at 1117.[16]

---

[16]   Defendants also argue that Plaintiffs lack antitrust standing because "'the more appropriate plaintiffs to bring suit against defendants are the consumers injured by defendants' actions in the United States.'" (Korean Air Mot. 19 (quoting *Galavan Supplements, Ltd. v. Archer*

B.    Motions to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Dismissal is proper if the complaint lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In pleading sufficient facts, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

Defendants move to dismiss the SAC for Plaintiffs' failure to plead sufficient facts to support their Sherman Act claim and to toll the applicable statute of limitations.

1.    Plaintiffs Satisfy the Pleading Standard for Their Sherman Act Claim.

a.    *Twombly* Does Not Create a Heightened Pleading Standard.

In *Twombly*, the Supreme Court clarified what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . . In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a

*Daniels Midland Co.*, No. C 97-3259, 1997 WL 732498, at *4 (N.D. Cal. Nov. 19, 1997)).) This argument depends on the assumption that the Korea-purchase Plaintiffs were not injured by Defendants' conduct in the U.S. The Court has elsewhere questioned this assumption. Accordingly, dismissal of the Korea-purchase claims is not now appropriate.

probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.

127 S. Ct. at 1964-66. The Ninth Circuit, in *Kendall v. Visa U.S.A., Inc.*, applied *Twombly* in the context of a § 1 claim, stating that, "[a]t least for the purposes of adequate pleading in antitrust cases, the Court specifically abrogated the usual 'notice pleading' rule, found in [Rule] 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957) . . . ." 518 F.3d 1042, 1047 n.5 (9th Cir. 2008). According to Defendants, *Twombly*, as interpreted in *Kendall*, imposes on Plaintiffs a more particularized pleading requirement than that found in Rule 8(a)(2). (*See* Asiana Mot. 11.) Plaintiffs disagree.

While *Kendall's* footnote 5 seems to suggest that Rule 8(a)(2) is inapplicable in the context of a § 1 claim, the Court does not read the footnote as holding so broadly. *Twombly* is quite explicit in its retention of Rule 8(a)(2)'s pleading standard, *see, e.g.*, 127 S. Ct. at 1966 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 1973 n.14 ("In reaching this conclusion, we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9 . . . ."), and *Kendall* does not recognize any disagreement with *Twombly*, *see* 518 F.3d at 1047 (citing *Twombly* with approval). What *Twombly* does abrogate, however, is the Rule 8(a)(2) standard *as articulated in Conley* "'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *see Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46); *id.* at 1968-69 (stating that Conley's "construing [of] Rule 8" has "earned its retirement"). On this basis, footnote 5 is more properly read as only adopting *Twombly's* abrogation of *Conley's* "no set of facts" language. More recent Ninth Circuit authority supports this limited interpretation. *See Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.8 (9th Cir. 2008) (referencing *Twombly's* "recent 'retirement' of the 'no set of facts' standard . . . and its adoption of a new 'plausibility' standard" but making no independent mention of Rule 8(a)(2)).

Accordingly, the question here is simply whether Plaintiffs have pled allegations that "reach the level suggesting conspiracy" – i.e., that demonstrate a "reasonably founded hope that the [discovery] process will reveal relevant evidence to support [their] § 1 claim." *Twombly*, 127 S. Ct. at 1967 (internal quotation marks omitted). As stated in *Kendall*:

> To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.

518 F.3d at 1047.

b.  Plaintiffs Have Plausibly Alleged that Asiana Participated in the Price-Fixing Conspiracy with Korean Air.

Defendants argue that the SAC is insufficiently particularized to support the existence of a conspiracy between Korean Air and Asiana. In addition to Korean Air's plea that it conspired to fix prices for flights from the U.S. to Korea with a competitor trans-Pacific passenger air carrier, Plaintiffs allege the following facts in their SAC:

(1)  As Korea's only two carriers, Korean Air and Asiana are primary competitors in the air transportation market for travel between the U.S. and Korea. (SAC ¶ 23.) Together, they serve a substantial majority of all passengers flying between the U.S. and Korea. (SAC ¶ 23.)

(2)  Defendants "have a history of collusive and anticompetitive behavior in other markets." (SAC ¶ 29.) Specifically, in 2001, the Korean Fair Trade Commission ("KFTC") fined Defendants for conspiring to set domestic passenger air transportation prices in Korea. (SAC ¶ 29.)

(3)  In April 2004, Defendants applied to the Korean Ministry of Construction and Transportation to collect fuel surcharges for their international passenger transportation, which request was denied. (SAC ¶ 30.) Subsequently, in March 2005 and in April 2005, Defendants

adopted passenger fuel surcharges on flights inbound to Korea in identical amounts, and agreed to review and, if necessary, adjust their fuel surcharges at the middle of each following month. (SAC ¶¶ 31-32.) Defendants did adjust their fuel surcharges at approximately the same times and in the same amounts, using the same complex adjustment method. (SAC ¶¶ 32-33.)

(4)  In February 2006, the KFTC raided Defendants' offices as part of an investigation into fuel surcharges relating to investigations in Europe and the U.S. (SAC ¶ 35.)

(5)  Attendant to Korean Air's guilty plea, Asiana has supplied requested information to U.S. authorities and, as of August 2, 2007, "is waiting for a ruling" from the DOJ. (SAC ¶ 38.)

(6)  Defendants are members of the Association of Asia Pacific Airlines ("AAPA"), a trade association, which "facilitated the exchange of information about pricing and market conditions between [Defendants]." (SAC ¶ 40.) During the Class Period, key topics at AAPA meetings included fuel costs, cost containment, and effects of profitability. (SAC ¶ 40.)

These allegations "nudge[ Plaintiffs'] claims across the line from conceivable to plausible . . . ." *See Twombly*, 127 S. Ct. at 1974. Unlike in *Twombly* and *Kendall*, where mere parallel conduct was insufficient to support the existence of a price-fixing conspiracy, the existence of such a conspiracy is beyond doubt in the present case given Korean Air's guilty plea. "Although Plaintiffs will need to provide evidence of [Asiana's] participation in [the] conspiracy, they now only need to make allegations that plausibly suggest that [Asiana] participated in the alleged conspiracy." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. M:07-cv-01819, 2008 WL 426522, at *6 (N.D. Cal. Feb. 14, 2008). Plaintiffs have done so. While the above allegations, standing alone, may not suffice to establish a conspiracy, taken together, against the backdrop of Korean Air's guilty plea, they render Plaintiffs' allegation of a price-fixing conspiracy between Defendants plausible.

      c.    **Plaintiffs Have Plausibly Alleged That the Price-Fixing Conspiracy Encompasses Travel from Korea to the U.S. but Have Not Plausibly Alleged That the Price-fixing Conspiracy Encompasses Travel That Includes a U.S.-Korea Flight Segment but Where the Original Departure or Ultimate Arrival Country Is Not Korea or the U.S.**

Plaintiffs' claims cover "routes that included a *flight segment* between the United States and the Republic of Korea on the airlines of Defendants . . . ." (SAC ¶ 47 (emphasis added).) Defendants argue that the SAC should be dismissed to the extent that Plaintiffs allege a conspiracy to fix the prices of tickets for travel other than travel, one-way or round-trip, from the U.S. to Korea.[17] According to Defendants, Korean Air's plea was limited to travel from the U.S. to Korea, and Plaintiffs have alleged no facts plausibly suggesting a broader conspiracy.

The Court finds that Plaintiffs have alleged sufficient facts to support claims based on travel, one-way or round-trip, from Korea to the U.S. On any given flight between the U.S. and Korea, there are passengers whose travel originated in the U.S. and passengers whose travel originated in Korea. As to the former, Defendants do not appear to contest that Plaintiffs have adequately pled claims based on one-way as well as round-trip travel. Given the potentially interrelated nature of Plaintiffs' U.S.- and Korea-purchase claims, the Court finds that, to the extent Plaintiffs have adequately alleged a conspiracy to fix prices for travel to Korea originating in the U.S. – which they have – Plaintiffs have adequately alleged a conspiracy to fix prices for travel to the U.S. originating in Korea.[18]

---

[17] Such travel would include: (a) travel from Korea to the U.S.; (b) travel from Korea through the U.S.; (c) travel from the U.S. through Korea; (d) travel to Korea that does not originate in the U.S. but that includes a U.S. to Korea segment; (e) travel to the U.S. that does not originate in Korea but that includes a Korea to U.S. segment; and (f) travel that does not originate or terminate in the U.S. or Korea but that includes a U.S.-Korea segment.

[18] Although the guilty plea appears limited to travel from the U.S. to Korea, such limitation is not fatal to Plaintiffs' claims, as it is not uncommon for civil allegations based on the same nucleus of facts underlying a defendant's guilty plea to be broader than said plea. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 159-60 (D. Mass. 2003).

As to all other claims – i.e., claims based on travel that includes a U.S.-Korea flight segment but where the original departure or ultimate arrival country is not Korea or the U.S. – the Court finds that Plaintiffs have not met their pleading burden. Notably, in their Opposition, Plaintiffs fail to offer any argument to support such claims. (*See* Opp'n 14.) When asked at oral argument whether they are seeking recovery for these so-called "pass-through" claims, Plaintiffs responded in the affirmative. Yet, Plaintiffs were unable to provide the Court with any facts, let alone the requisite "evidentiary facts," *see Kendall*, 518 F.3d at 1047, to support recovery on behalf of this class of claimants. In the absence thereof, the Court finds that Plaintiffs have failed to plausibly allege a price-fixing conspiracy for travel other than strictly between the U.S. and Korea. *See Shoulders v. Lovelace*, No. 3:07cv236, 2008 WL 872295, at *3 (S.D. Miss. Mar. 27, 2008). ("Based on the complete lack of evidence produced by plaintiff and his failure to respond to this issue in his opposition to the defendants' motions [to dismiss], the court will assume . . . that the plaintiff has waived [this issue] . . . .").

## 2.   Plaintiffs Sufficiently Plead Fraudulent Concealment.

Claims brought under the Sherman Act are subject to a four-year statute of limitations. 15 U.S.C. § 15b. The first case in this litigation was filed on August 2, 2007.[19] Thus, absent an applicable tolling doctrine, Plaintiffs' claims are limited to injuries suffered from ticket purchases on or after August 2, 2003.

In their SAC, Plaintiffs allege that Defendants fraudulently concealed their alleged conspiracy, tolling the statute of limitations until August 1, 2007, when the DOJ publicly announced Korean Air's plea. (SAC ¶ 46.) According to Defendants, Plaintiffs have failed to adequately plead fraudulent concealment, warranting dismissal of Plaintiffs' claims arising prior to August 2, 2003.

To plead fraudulent concealment, Plaintiffs must "plead facts showing that [Defendants] actively misled [them], [and] that [they] had neither actual nor constructive knowledge of the facts constituting [their] claim for relief despite [their] diligence in trying to discover the pertinent facts." *See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978).

---

[19]   *See Chung v. Korean Air Lines Co.*, No. C 07 3985 (N.D. Cal., filed Aug. 2, 2007).

"[B]ecause fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of [Rule] 9(b) applies."[20] *Rambus Inc. v. Samsung Elecs. Co.*, No. C-05-02298, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4, 2007). However, "Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). Furthermore, "[t]he requirement for diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person." *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 504 (9th Cir. 1988).

Plaintiffs allege that Defendants affirmatively concealed their conspiracy in several respects:

(1)   First, Plaintiffs claim that Defendants agreed amongst themselves, in secret meetings, conversations, and communications, not to discuss publicly or to reveal the nature of their illegal acts and communications. (SAC ¶ 45(a)-(b).) Specifically, Plaintiffs point to Korean Air's admission that it engaged in discussions and attended meetings with representatives of another trans-Pacific airline in furtherance of the conspiracy to fix the prices of passenger airfares. (SAC ¶ 39.)

(2)   Second, Plaintiffs claim that Defendants publicly gave false and pretextual reasons for their pricing and price increases (SAC ¶ 45(c).) Specifically, Plaintiffs point to a *Yonhap News* report that, during March 2005, Defendants submitted a report to the Korean Ministry of Construction and Transportation informing it of their intention to implement passenger fuel surcharges (SAC ¶ 31) and Defendants agreed to review and, if necessary, adjust their fuel surcharges at the middle of each month (SAC ¶ 32).

(3)   Third, Plaintiffs claim that Defendants denied any price-fixing of passenger airfares in their public statement. (SAC ¶ 45(d).)

---

[20]   "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

1   According to Plaintiffs, because of these affirmative acts of concealment, there was no inquiry

2   notice of their claims prior to August 1, 2007, preventing Plaintiffs from discovering Defendants'

3   conspiracy earlier through the exercise of due diligence.

4       "While it is true that the allegations of fraudulent concealment forwarded by [Plaintiffs] are

5   absent many specifics, it is similarly true that such details cannot be ascertained until discovery

6   is undertaken." *See In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *2

7   (N.D. Fla. Jan. 13, 1992). "As many courts have noted in the antitrust conspiracy context, it is

8   generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the

9   motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent

10  concealment is alleged to be largely in the hands of the alleged conspirators." *Rubber Chems.*,

11  504 F. Supp. 2d at 789. The instant case is thus unlike *Conerly v. Westinghouse Electric Corp.*,

12  cited by Defendants, in which the plaintiff unsuccessfully sought to toll the statute of limitations for

13  24 years following his allegedly discriminatory termination, given that he returned to work after his

14  layoff and could have readily observed that others with less seniority were advancing more quickly

15  than he. 623 F.2d 117, 120-21 (9th Cir. 1980). Here, the primary facts that might have suggested

16  the existence of a price-fixing conspiracy – namely, higher prices for tickets – are alleged to have

17  been explained away by Defendants as the product of changes in fuel prices, not a conspiracy to

18  fix prices.

19      Plaintiffs have sufficiently alleged fraudulent concealment.

20  III.   <u>RULING</u>

21      For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants'

22  Motions. Plaintiffs' claims based on travel that includes a U.S.-Korea flight segment but where the

23  original departure or ultimate arrival country is not Korea or the U.S. – the so-called "pass-through"

24  claims – are DISMISSED WITH PREJUDICE. The remainder of Plaintiffs' claims are now ripe for

25  discovery.

26      IT IS SO ORDERED.                              /S/ S. James Otero

27  June 25, 2008
    _____

28                                       S. JAMES OTERO
    UNITED STATES DISTRICT JUDGE