Paul L. Yde (Dist. of Columbia Bar No. 449751)
Andrea Agathoklis (Dist. of Columbia Bar No. 476626)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Ave., NW, Suite 600
Washington, DC 20004
Telephone:    (202) 777-4500
Facsimile:    (202) 777-4555
Email:        paul.yde@freshfields.com
              andrea.agathoklis@freshfields.com

Admitted *Pro hac vice*

Patrick D. Robbins (State Bar No. 152288)
Mikael A. Abye (State Bar No. 233458)
SHEARMAN & STERLING LLP
525 Market Street, Suite 1500
San Francisco, CA 94105-2723
Telephone:  (415) 616-1100
Facsimile:  (415) 616-1199
Email:        probbins@shearman.com
              mabye@shearman.com

Attorneys for Defendant Continental Airlines, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | Master File No. C 07-05634-CRB |
| | MDL No. 1913 |
| | Assigned to Hon. Charles R. Breyer |
| | DEFENDANT CONTINENTAL AIRLINES, INC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT |
| | Date:  November 13, 2009<br>Time:  10:00 a.m.<br>Judge:  Honorable Charles R. Breyer<br>Courtroom:  No. 8,  19th Floor |
| This Document Relates to:  ALL ACTIONS | |

1

**TABLE OF CONTENTS**

2

Page

3

TABLE OF AUTHORITIES ................................................................................................ ii

4

I.      INTRODUCTION........................................................................................................ 1

5

II.     ARGUMENT ............................................................................................................... 1

6

A.      Plaintiffs Misapply the Post-*Twombly* Pleading Standards as to Defendant
        Continental ........................................................................................................ 1

7

8

B.      Plaintiffs' "Factual" Allegations Against Defendant Continental Do Not
        Establish Plausible Involvement in Any Alleged Antitrust Conspiracy ................. 3

9

1.      Plaintiffs Seek to Recast Their Allegations As to Continental By
                Now Minimizing the Role of the International Air Transport
                Association Tariff Conference ("IATATC") in Facilitating the

10

11

                Alleged Antitrust Conspiracy..................................................................... 3

2.      Plaintiffs' Attempt to List Their Continental-Related Allegations
                Only Highlights the Complaint's Deficiencies ........................................... 4

12

13

3.      Stray Mentions of Continental in a 111-Page Complaint Do Not
                "Nudge" the Allegations from Conceivable to Plausible as
                Required by *Twombly*................................................................................. 5

14

15

C.      The Court Should Deny Plaintiffs' Request to Replead ......................................... 8

16

III.    CONCLUSION ............................................................................................................. 9

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2
<u>Page</u>

3
<u>C</u>ASES

4
*Bell Atl. v. Twombly*, 550 U.S. 544 (2007)............................................................................. passim

5
*In re Citric Acid Litig.*, 996 F. Supp. 951 (N.D. Cal. 1998)........................................................ 7

6
*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........... 5

7
*In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .................... 1

8
*In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................ 2

9
*In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008) .............................................. 1

10
*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d. 1179 (N.D. Cal. 2009)............. 2, 3

11
*In re Travel Agent Comm'n Antitrust Litig.*, No. 07-4464,
2009 WL 3151315 (6th Cir. Oct. 2, 2009) ................................................................................ 5

12

13
*Jackson v. Bank of Haw.*, 902 F.2d 1385 (9th Cir. 1990) .............................................................. 8

14
*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ........................................................ 5

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Plaintiffs' Opposition to Continental Airlines, Inc.'s Motion to Dismiss Consolidated Class Action Complaint Pursuant to F.R.C.P. 12(b)(6) ("the Opposition") offers a highly selective tour through the landscape of post-*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), pleading standards under Federal Rule 8.  Regrettably for Plaintiffs, this tour only highlights why Continental Airlines, Inc. ("Continental") should be dismissed from this action.  Plaintiffs' Consolidated Class Action Complaint ("Complaint") is and remains deficient when considered in light of the pleading standards articulated by the United States Supreme Court in *Twombly* and its progeny.  The Complaint's effort to sweep Continental into an anticompetitive conspiracy by offering labels and legal conclusions – without alleging even one affirmative act of anticompetitive conduct committed by Continental itself – is exactly the sort of implausible claim the Supreme Court sought to halt when it issued its *Twombly* opinion.  Defendant Continental's Motion to Dismiss Consolidated Class Action Complaint Pursuant to F.R.C.P. 12(b)(6) ("MTD") should be granted with prejudice and without leave to amend.

## II.   ARGUMENT

### A.   Plaintiffs Misapply the Post-*Twombly* Pleading Standards as to Defendant Continental

Plaintiffs fail to make plausible factual allegations that Continental participated in the alleged conspiracy as required by *Twombly* and its progeny.  Plaintiffs quote a footnote in a district court slip opinion stating that "allegations of antitrust conspiracy need not be detailed on a 'defendant by defendant' basis."  Opposition at 6 (citing *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2009 WL 1096602, *5 n.7 (N.D. Cal. 2009)).  Relevant cases go on to say that plaintiffs "need to make allegations that plausibly suggest that **each** Defendant participated in the alleged conspiracy."  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (emphasis added); *see also, e.g.*, *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) (holding that "the plaintiff must allege that **each individual** defendant joined the conspiracy and played some role in it." (emphasis added)).  Consistent with these rulings, a fair reading of the Complaint here reveals

1   that Plaintiffs have not provided Continental with fair notice as required under Rule 8 because

2   Plaintiffs simply lump Continental in with the other defendants without alleging a plausible

3   connection between the alleged conspiracy and Continental.

4        Indeed, Plaintiffs' very first, and presumably best, argument is that "the airline industry is

5   structured in a way that facilitates price-fixing conspiracies and that there is a culture of

6   coordination and cooperation within the industry . . . ." Opposition at 1.  Even prior to *Twombly*,

7   courts have held that the fair notice requirements of Rule 8 cannot be satisfied by pleading so

8   generally.  *See, e.g.*, *In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal.

9   2003).  Plaintiffs here offer nothing more than that Continental is an air carrier with routes to

10  Asia, and that other carriers in Asia have engaged in anticompetitive conduct.   This is

11  insufficient.   *See id.* at 1094-95 (holding that a "complaint that lumps together thirteen

12  'individual defendants,' where only three of the individuals was [sic] alleged to have been

13  present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of

14  the claim to those defendants").   Instead, Plaintiffs must make plausible allegations of a

15  defendant's role in the alleged conspiracy.  *Twombly*, 550 U.S. at 555, 570 (holding that to state a

16  claim, an antitrust complaint must "raise a right to relief above the speculative level," avoid

17  relying on "labels and conclusions" and instead, offer facts sufficient to nudge the plaintiff's

18  "claims across the line from conceivable to plausible").

19       Plaintiffs that although *Twombly* requires that "a plaintiff must allege that each defendant

20  joined the conspiracy and played some part in it, that requirement posed no onerous burden."

21  Opposition at 7 (citation omitted).  However, in considering the facts of *In re TFT-LCD (Flat*

22  *Panel) Antitrust Litigation*, 599 F. Supp. 2d. 1179 (N.D. Cal. 2009) ("*TFT-LCD II*"), upon which

23  Plaintiffs rely to demonstrate that burden, it is clear that the *TFT-LCD II* court had far more

24  evidence of "**each** defendant's participation and role in the alleged conspiracy," compared to the

25  bare assertions of Continental's involvement in the conspiracy alleged by Plaintiffs.  *TFT-LCD*

26  *II*, 599 F. Supp. 2d. at 1184 (emphasis added).   For example, the plaintiffs' amended complaint

27  in *TFT-LCD II* provided "detail about numerous illicit conspiratorial communications between

28  and among the defendants . . . [and] specific information about the group and bilateral meetings

1   by which the alleged price-fixing conspiracy was effectuated." *Id.* No similar facts are alleged

2   **as to Continental** in this case. *TFT-LCD II* is inapposite.

3          Plaintiffs next rely on the idea that "liability attaches to a defendant even in those cases

4   where only a slight connection to the conspiracy is demonstrated." Opposition at 8 (citing *United*

5   *States v. Cawley*, 630 F.2d 1345, 1350 (9th Cir. 1980), a case that involved a criminal conspiracy

6   to distribute heroin). However, as explained below and in Continental's MTD, Plaintiffs have

7   failed to show even a "slight" connection between Continental and the alleged conspiracy. The

8   fact that Continental offers transpacific flights is plainly insufficient to suggest Continental was

9   involved in an alleged antitrust conspiracy. To do so would create an untenable result: ensnaring

10  all airlines offering service to Asia/Oceania in years of costly litigation – precisely the result the

11  Supreme Court in *Twombly* sought to prevent. *See Twombly*, 550 U.S. at 558-59. As to

12  Continental, Plaintiffs' Complaint fails to nudge its "claims across the line from conceivable to

13  plausible" as required by *Twombly*. 550 U.S. at 570.

14          **B.      Plaintiffs' "Factual" Allegations Against Defendant Continental Do Not
                      Establish Plausible Involvement in Any Alleged Antitrust Conspiracy**

15

16          Plaintiffs maintain that Continental's detailed examination of each allegation in its MTD

17  is inappropriate. Opposition at 8-11. Given the way in which Plaintiffs chose to draft the

    Complaint, Continental found it imperative to explain thoroughly the ways in which Plaintiffs'

18  core allegations of improper conduct either (1) do not relate to Continental or (2) logically and

19  affirmatively exclude Continental. Appendix 1 to the MTD is the graphical representation of the

20  totality of Plaintiffs' allegations that relate specifically to Continental. Even assuming that

21  Plaintiffs' Opposition correctly identifies the legal standards governing this Court's responsibility

22  to consider the allegations in the Complaint as a whole, Continental submits that the Complaint

23  itself undermines Plaintiffs' conclusory assertions regarding Continental.

24          **1.      Plaintiffs Seek to Recast Their Allegations As to Continental By Now
                      Minimizing the Role of the International Air Transport Association
25                    Tariff Conference ("IATATC") in Facilitating the Alleged Antitrust
                      Conspiracy**
26

27          Plaintiffs' Opposition seeks to convey an air of substance with a barrage of conclusory

28  assertions of Continental's purported involvement in the alleged antitrust conspiracy. As

explained elsewhere, Plaintiffs fail in this task, but their near complete neglect of the IATATC in their Opposition is particularly telling.  Plaintiffs incorrectly asserted that Continental was a member of the IATATC in their Complaint, where the IATATC virtually dominates the allegations at ¶¶66-190.  In the Opposition, however, the Plaintiffs mention the IATATC just once in the narrative discussion.  Opposition at 9.  If, as the Complaint alleges, the IATATC was the primary locus of the alleged conspiracy, then Continental, a company that is not and has never been a member of the IATATC, cannot plausibly be part of the alleged conspiracy.

**2.      Plaintiffs' Attempt to List Their Continental-Related Allegations Only Highlights the Complaint's Deficiencies**

Plaintiffs' Opposition reaffirms the insufficiency of the allegations made in the Complaint as to Continental.  Plaintiffs provide a bullet-point list of the so-called "factual matter" giving rise to their allegations against Continental.  Opposition at 4-5.  The list, however, consists of legal conclusions masquerading as facts and attempts to draw inappropriate and illogical inferences from facts.  Plaintiffs begin their list with the following statement:  "That Continental engaged in a conspiracy to fix the price of passenger air transportation between the United States and Asia/Oceania.  CAC ¶¶316, 318."  Opposition at 4:5-6.  Yet this allegation and virtually all others in the Complaint are the barest type of allegations specifically condemned by *Twombly*: "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Other allegations in the Complaint and repeated in the Opposition are nothing more than generalized statements failing  to provide even the barest hint of how any antitrust conspiracy includes Continental.  As explained in *Twombly*, something more is necessary.  *Twombly*, 550 U.S. at 555 ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)).  As the Ninth Circuit has cautioned, the Complaint must answer "the basic questions:  who, did what, to whom

1    (or with whom), where, and when." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir.

2    2008).[1]

3          Instead, Plaintiffs' Complaint and Opposition inadvertently advance Continental's

4    arguments by explaining that all allegations in the Complaint "should also be considered in light

5    of the world-wide investigations into price-fixing of passenger and cargo fares and the substantial

6    number of guilty pleas that have already been obtained by the [US Department of Justice] and

7    other competition regulators.  See CAC ¶¶245-94."  Opposition at 5:24-26.  On this point,

8    Continental wholeheartedly agrees.  As Continental noted in its MTD, Plaintiffs concede in

9    Appendix G of their Complaint that Continental is not and has never been a defendant in any air

10   cargo or air passenger enforcement action in any country, nor has Continental pleaded guilty to

11   or been fined for any antitrust conspiracy charges anywhere in the world.  It is implausible to

12   draw any inference that Continental participated in this alleged antitrust conspiracy based on the

13   existence of other investigations or actions of which Continental has not had any part.

14                    **3.    Stray Mentions of Continental in a 111-Page Complaint Do Not
                              "Nudge" the Allegations from Conceivable to Plausible as Required
15                            by *Twombly***

16         Plaintiffs' Opposition reiterates a few disparate allegations conjured in their Complaint in

17   an attempt to link Continental to the alleged antitrust conspiracy.  To begin, Plaintiffs point to

18   language in the Complaint suggesting that "Continental imposed fuel surcharges for Hong Kong

19   traffic that were identical to those of its long haul competitors. . ."  Opposition at 4:22-24.  As

20   explained in *Twombly*, however, "[a] statement of parallel conduct, even conduct consciously

21   undertaken, needs some setting suggesting the agreement necessary to make out a §1 claim;

22   without that further circumstance pointing toward a meeting of the minds, an account of

23   defendant's commercial efforts stays in neutral territory."  *Twombly*, 550 U.S. at 557.  *See also In*

24   *re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007)

---

25   [1]    Plaintiffs also seek to tie Continental to the alleged antitrust conspiracy by vague references
     to opportunities Continental may have had to conspire through perfectly lawful activities, such as
26   Continental's co-ownership of ATPCO or Continental's participation in lawful codesharing,
     airline alliances, and industry groups.  The Sixth Circuit examined a similar issue in its recent *In*
27   *re Travel Agent Commission Antitrust Litigation*, holding that an opportunity to conspire does not
     necessarily support an inference of illegal agreement.  *In re Travel Agent Comm'n Antitrust*
28   *Litig.*, No. 07-4464, 2009 WL 3151315, at *7 (6th Cir. Oct. 2, 2009).

---

1   (holding "plaintiffs' allegations of parallel conduct are consistent with conspiracy but they are

2   equally consistent with lawful conduct.  Accordingly, under *Twombly*, plaintiffs have not pleaded

3   facts that would move their allegations from merely possible to plausible").  Plaintiffs can

4   provide no such context as to Continental.

5       Plaintiffs ask this Court to infer the necessary context from two allegations:  first, that the

6   Hong Kong Board of Airline Representatives ("BAR") established an antitrust compliance policy

7   following initiation of this action (Complaint ¶¶77, 205 and Opposition at 4:25-27); and second,

8   "[t]hat Hong Kong did not have an effective antitrust law during most of the Class Period.  CAC

9   ¶76."  Opposition at 5:1-2.  Under *Twombly* and its progeny, drawing such implausible

10  inferences from these two allegations is improper.  The establishment (or not) of an antitrust

11  compliance policy by the Hong Kong BAR provides no support for a suggestion that illegal

12  conduct necessarily occurred in the past.  Plaintiffs ask the Court to select only the most

13  nefarious among many possible rationales for establishing an antitrust compliance policy.  To do

14  so would violate the essence of *Twombly*'s mandate that "the line from conceivable to plausible"

15  allegations of improper conduct must be crossed through specific allegations.  *Twombly*, 550

16  U.S. at 570.  In addition, Plaintiffs' allegation that "Hong Kong did not have an **effective**

17  antitrust law," Opposition at 5:1-2 (emphasis added), is a bold-faced legal conclusion, the likes of

18  which *Twombly* condemns.  *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986) (on a

19  motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual

20  allegation").  Plaintiffs' best efforts to connect Continental to any alleged antitrust conspiracy

21  associated with the Hong Kong BAR fail.[2]

22      Plaintiffs also allege that a November 1, 2004, e-mail from an employee of Japan Airlines

23  International Co., Ltd. ("JAL") describes communication among Continental and other

24  Defendants regarding imposition of fuel surcharges, and that this communication suggests an

25  unlawful antitrust conspiracy.  Complaint ¶218; Opposition at 5:6-8.  A careful reading of the

[2] Despite devoting considerable space to other BARs in the Complaint, Plaintiffs' Opposition makes no mention of any connection between Continental and the activities of the Thailand BAR, the Philippine BAR, or the Malaysian BAR.  Continental reiterates the complete dearth of any allegations linking Continental to any of these organizations for any allegedly illegal purposes and as such, these allegations cannot survive the plausibility test imposed by *Twombly*.

1  Plaintiffs' allegation, however, belies their interpretation.  A competitor's confirmation, through

2  the publicly available sources at ATPCO, that other fuel surcharges were imposed elsewhere in

3  the world, would be irrelevant.  Nowhere do Plaintiffs allege that the JAL employee received

4  confidential information that was not readily available to the public.  Indeed, as a pre-*Twombly*

5  case explained, "the exchange of publicly available information does not support an inference of

6  conspiracy."  *In re Citric Acid Litig.*, 996 F. Supp. 951, 959 (N.D. Cal. 1998).  Without more

7  than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of

8  action," these allegations do nothing to connect Continental to any alleged antitrust conspiracy.

9  *Twombly*, 550 U.S. at 555-56 (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND

10  PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)).

11  Plaintiffs' Complaint and Opposition therefore are reduced to a nine-word excerpt from a

12  single email (on which Continental was neither author nor recipient) as the basis for naming

13  Continental as a defendant in this massive, burdensome litigation.  Opposition at 5:12-19.  An

14  abbreviated and ambiguous reference to Continental in an excerpt of a single translated email that

15  has no connection to any Continental employee or agent simply does not, and cannot, "raise a

16  reasonable expectation that discovery will reveal evidence of illegal agreement" implicating

17  Continental.  *Twombly*, 550 U.S. at 556.

18  Plaintiffs add that the May 31 email allegation should be construed in light of the other

19  allegations made in their Complaint.  Opposition at 5:20-23.  Continental emphatically agrees

20  with that assertion, in this sense:  Plaintiffs' allegations in the Complaint fail to lend even the

21  barest inference of any allegedly improper conduct by Continental, and instead tend to exclude

22  Continental from any alleged antitrust conspiracy.  All that remains is an out-of-context reference

23  to "CO" in a demonstrably unreliable translation of a third-party email.[3]  In a 111-page

24

25  ---
[3] Plaintiffs did not correctly attribute the author of the email within the Complaint, alternatively
26  referring to the author as Hirai Noboru of JAL or Noboru Hirai of Northwest Airlines, and indeed
by splitting the identity of the author and parsing the language differently, attempted to suggest
27  that there were two emails rather than one email.  *Compare* Complaint ¶174 *with* ¶233.  Plaintiffs
now seek to clarify their confusion and allege that the "e-mail is strong evidence that Continental
28  joined its competitors in the [alleged] conspiracy[.]"  Opposition at 11:11-18.  The Complaint's
repetitious and confused use of this single email excerpt is discussed in Continental's MTD.

1   Complaint, this single, stray reference cannot be enough to push Plaintiffs' allegations as to

2   Continental "from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

3        Moreover, permitting Plaintiffs to proceed on this slim reed would result in exactly the

4   kind of needless discovery and litigation costs that *Twombly* sought to foreclose.  As Justice

5   Souter explained:

6        it is one thing to be cautious before dismissing an antitrust complaint in advance
         of discovery, [. . .] but quite another to forget that proceeding to antitrust
7        discovery can be expensive.  As we indicated over 20 years ago in *Associated
         Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n. 17, 103 S.Ct.
8        897, 74 L.Ed.2d 723 (1983), "a district court must retain the power to insist upon
         some specificity in pleading before allowing a potentially massive factual
9        controversy to proceed." See also *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d
         1101, 1106 (7th Cir. 1984) ("[T]he costs of modern federal antitrust litigation and
10       the increasing caseload of the federal courts counsel against sending the parties
         into discovery when there is no reasonable likelihood that the plaintiffs can
11       construct a claim from the events related in the complaint"); Note, *Modeling the
         Effect of One-Way Fee Shifting on Discovery Abuse in Private Antitrust
12       Litigation*, 78 N.Y.U. L. REV. 1887, 1898-1899 (2003) (discussing the unusually
         high cost of discovery in antitrust cases). . . .

13  *Twombly*, 550 U.S. at 558-59 (some internal citations omitted).

14       **C.    The Court Should Deny Plaintiffs' Request to Replead**

15       Plaintiffs have spent more than two years crafting the Complaint and arriving at a

16  decision to name Continental as a Defendant.  While Plaintiffs state that leave to amend under

17  Rule 15(a) should be granted with "extraordinary liberality," Opposition at 12:20-24, they

18  neglect to note that a court's determination is not automatic.  Courts may consider a range of

19  factors, including the futility of amendment.  *See generally Jackson v. Bank of Haw.*, 902 F.2d

20  1385 (9th Cir. 1990) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

21       Following two years of discovery, Plaintiffs would have been negligent in drafting the

22  Complaint without including each and every fact they have to connect an entirely new defendant,

23  Continental, to the alleged conspiracy.  The dearth of allegations implicating Continental

24  (directly or circumstantially) strongly suggests that Plaintiffs have gathered no facts to support a

25  plausible theory of liability.  Granting Plaintiffs leave to amend (yet again) would constitute an

26  exercise in futility and a waste of judicial resources.

27

28

1

**III.     CONCLUSION**

2
Plaintiffs' Complaint fails to allege sufficient facts to nudge the Plaintiffs' "claims across

3
the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  The Complaint further fails

4
to allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of

5
illegal agreement" involving Continental.  *Id.* at 556.  Accordingly, Continental has not been

6
provided fair notice of the claims against it and granting Continental's MTD is appropriate.

7
Based on the foregoing, Defendant Continental respectfully requests that the Court

8
dismiss the Complaint with prejudice and without leave to amend.

9

10
Dated:  October 30, 2009                          Respectfully submitted,

11
                                                  FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                                  Paul L. Yde
12
                                                  Andrea Agathoklis

13
                                                  SHEARMAN & STERLING LLP
                                                  Patrick D. Robbins
14
                                                  Mikael A. Abye

15
                                           By:    */s/ Paul L. Yde*
16
                                                  Paul L. Yde

17
                                                  Attorneys for Defendant Continental Airlines, Inc.

18

19

20

21

22

23

24

25

26

27

28