1   JOSEPH W. COTCHETT (36324)
    jcotchett@cpmlegal.com
2   STEVEN N. WILLIAMS (175489)
    swilliams@cpmlegal.com
3   NANCI E. NISHIMURA (152621)
    nnishimura@cpmlegal.com
4   ARON K. LIANG (228936)
    aliang@cpmlegal.com
5   MATTHEW K. EDLING (250940)
    medling@cpmlegal.com
6   **COTCHETT PITRE & McCARTHY**
    840 Malcolm Road, Suite 200
7   Burlingame, CA 94010
    Tel: (650) 697-6000
8   Fax: (650) 697-0577

9   MICHAEL D. HAUSFELD                 MICHAEL P. LEHMANN (77152)
    mhausfeld@hausfeldllp.com           mlehmann@hausfeldllp.com
10  **HAUSFELD LLP**                    CHRISTOPHER L. LEBSOCK (184546)
    1700 K Street, N.W., Suite 650      clebsock@hausfeldllp.com
11  Washington, D.C. 20006             JON T. KING (205073)
    Tel: (202) 540-7200                jking@hausfeldllp.com
12  Fax: (202) 540-7201                **HAUSFELD LLP**
                                        44 Montgomery Street, Suite 3400
13                                      San Francisco CA  94104
                                        Tel: (415) 633-1903
14                                      Fax: (415) 358-4980

    Attorneys for Plaintiffs and the Class

15              **UNITED STATES DISTRICT COURT**

16          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17

18  In Re TRANSPACIFIC PASSENGER AIR )   Civil Case No. 3:07-cv-05634-CRB
    TRANSPORTATION ANTITRUST         )
19  LITIGATION                       )   MDL No. 1913
                                      )
20  _____  )   **PLAINTIFFS' OPPOSITION TO**
                                      )   **DEFENDANTS' MOTION TO DISMISS**
21  This Document Relates to:         )   **PLAINTIFFS' CONSOLIDATED CLASS**
                                      )   **ACTION COMPLAINT RE ISSUES**
            All Actions               )   **COMMON TO ALL NIPPON AIRWAYS CO.,**
22                                      )   **LTD., CHINA AIRLINES, LTD., AND THAI**
                                      )   **AIRWAYS INTERNATIONAL PUBLIC**
23                                      )   **COMPANY LIMITED**
                                      )
24                                      )   Date:      March 12, 2010
                                      )   Time:      10:00 a.m.
25                                      )   Ctrm:      8, 19th Floor
                                      )   Judge:     The Honorable Charles R. Breyer
26                                      )
                                      )
27  _____  )

28  **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
    **CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO**
    **ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

# TABLE OF CONTENTS

Page(s)

I.      STATEMENT OF ISSUES TO BE DECIDED ................................................1

II.     INTRODUCTION ................................................................................1

III.    ARGUMENT ....................................................................................1

    A.  The State Action Doctrine Does Not Immunize Defendants From
        Plaintiffs' Sherman Act Claims ....................................................1

        1.  No U.S. Court Has Ever Extended the State Action Doctrine to
            Conduct Authorized and Supervised By a Foreign Government................3

        2.  The Rationale Underlying the State Action Doctrine Does
            Not Support Its Extension to Conduct Authorized and
            Supervised By A Foreign Government .......................................4

        3.  The U.S.-Japan Air Services Agreement Is Not Dispositive
            of the Present Claims ......................................................5

        4.  In the Absence of Qualified State Action, Defendants'
            Immunity Claim Fails .....................................................7

        5.  Even If the State Action Doctrine Is Applied to Conduct
            Authorized and Supervised By a Foreign Government,
            It Does Not Immunize Defendants' Conduct................................8

    B.  The Japanese Regulatory Regime Does Not Impliedly Preempt
        the  Sherman Act.....................................................................9

        1.  The Complaint Does Not Allege Misconduct That "Lies
            Squarely Within An Area of Financial Market Activity"........................11

        2.  There Is No "Regulatory Authority To Supervise The
            Activities In Question" ....................................................12

        3.  There Has Been No "Continuously Exercised Regulatory
            Authority" ...............................................................14

        4.  The Proffered Laws, Regulations And Agreements Do Not
            Conflict With Plaintiffs' Antitrust Claims................................15

IV.     CONCLUSION..................................................................................18

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## CASES

4

*Axcan Scandipharm, Inc. v. Ethex Corp.*,
585 F. Supp. 2d 1067 (D. Minn. 2007)......................................................................17

5

6

*California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*,
445 U.S. 97 (1980)................................................................................2, 4, 7, 9

7

*Churchill Downs, Inc. v. Thoroughbred Horsemen's Group*,
605 F. Supp. 2d 870 (W.D. Ky. 2009)..................................................................12, 17

8

9

*Credit Suisse Securities (USA) LLC v. Billing*,
551 U.S. 264 (2007)............................................................................................. passim

10

*Dahl v. Bain Capital Partners, LLC*,
589 F.Supp.2d 112 (D. Mass. 2008)..................................................................13, 15

11

12

*Eagletech Comm'ns v. Citigroup*, Inc.,
No. 07-60668-CIV, 2008 U.S. Dist. LEXIS 49432 (S.D.Fla. June 27, 2008).............................15

13

*Energy Marketing Services, Inc. v. Columbia Gas Transmission Corp.*,
639 F. Supp. 2d 643 (D. W.Va. 2009)..................................................................12

14

*F.T.C. v. Ticor Title Ins. Co.*,
504 U.S. 621 (1992)................................................................................................3, 4

15

16

*Gordon v. New York Stock Exch., Inc.*,
422 U.S. 659 (1975)................................................................................................10

17

*Hartford Fire Insurance Co. v. California*,
509 U.S. 764 (1993)................................................................................................7, 8

18

19

*Helicopter Transport Services, Inc. v. Erickson Air-Crane, Inc.*,
2008 U.S. Dist. LEXIS 3466 (D. Or. Jan. 14, 2008) ..................................................18

20

*In re Short Sale Antitrust Litig.*,
527 F. Supp. 2d 259 ..............................................................................................14

21

*Laker Airways Limited v. Sabena, Belgian World Airlines*,
731 F.2d 909 (D.C. Cir. 1984)................................................................................5

22

23

*Outboard Marine Corp. v. Pezetel*,
461 F. Supp. 384 (D. Del. 1979)................................................................................3

24

*Parker v. Brown*,
317 U.S. 341 (1943)................................................................................................2, 4, 7

25

26

*Patrick v. Burget*,
486 U.S. 94 (1988)................................................................................................3

27

28

ii

*Pennsylvania Avenue Funds v. Borey,*
  569 F. Supp. 2d 1126 (W.D. Wash. 2008)............................................................................14, 15

*Sanders v. Brown,*
  504 F.3d 903 (9th Cir. 2007) ............................................................................................2

*Silver v. New York Stock Exchange,*
  373 U.S. 341 (1963)............................................................................................10

*Snake River Valley Elec. Ass'n v. PacifiCorp,*
  238 F.3d 1193 (9th Cir. 2001) ............................................................................................3

*Southern Motor Carriers Rate Conference, Inc. v. United States,*
  471 U.S. 48 (1985)............................................................................................2, 4, 5, 7

*U.S.-Japan Service Case,*
  1990 DOT Av. LEXIS 90 ............................................................................................9


## STATUTES

15 U.S.C.

  § 77q(a) ............................................................................................10

  § 78j(b)............................................................................................10

  § 3001-07 ............................................................................................12

  § 77k............................................................................................14

  § 78bb............................................................................................14

  § 78u-4 ............................................................................................14

49 U.S.C.

  § 41301 *et seq.* ............................................................................................6

  § 41308............................................................................................6

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 (2003) ............................................................................................10

iii

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

I.   **STATEMENT OF ISSUES TO BE DECIDED**

    (1)    Whether the state action doctrine implicitly precludes U.S. enforcement of its antitrust laws affecting U.S. commerce.

    (2)    Whether this court should hold that a wholly foreign regulatory scheme impliedly preempt the Sherman Act pursuant to *Credit Suisse Securities (USA) LLC v. Billing*, 551 U.S. 264 (2007) ("*Credit Suisse*").

II.   **INTRODUCTION**

    Defendants All Nippon Airways Co., Ltd. ("ANA"), China Airlines, Ltd. and Thai Airways International Public Company Limited's (collectively, "Defendants") argument that the state action doctrine immunizes them from antitrust liability in this case fails because: (1) the state action doctrine does not apply to private parties' conduct authorized and supervised by a foreign government; and (2) even if the Court were inclined to extend the doctrine to such conduct, Defendants' conduct does not satisfy the elements of the test as set forth by the United States Supreme Court.

    Defendants' additional argument that Plaintiffs' claims are barred because the Japanese regulatory regime impliedly preempts the Sherman Act also fails because: (1) implied preemption is a disfavored principle, and has been held by some courts to be applicable only in the securities context; and (2) to the extent implied preemption is applicable outside the securities context, it does not apply here because there is no "clear repugnancy" between the regulatory regime in question and the antitrust complaint.

III.   **ARGUMENT**

    A.    **The State Action Doctrine Does Not Immunize Defendants From Plaintiffs' Sherman Act Claims**

    Defendants' argument that the Court should extend the state action doctrine to immunize them from antitrust liability fails because: (1) no U.S. court has ever extended the doctrine to apply to foreign companies' conduct authorized and supervised by a foreign government; (2) the doctrine is based on principles of federalism that do not support its extension to such conduct; and (3) even if the doctrine does apply to conduct authorized and supervised by a foreign government,

1

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    the doctrine does not immunize Defendants' conduct because Defendants have not shown that the

2    Japanese government actively supervises their conduct.

3           The state action doctrine protects most state laws and actions from scrutiny under the

4    Sherman Act. *Sanders v. Brown*, 504 F.3d 903, 915 (9th Cir. 2007) ("*Sanders*"). The doctrine

5    originated in *Parker v. Brown*, 317 U.S. 341, 350-52 (1943) ("*Parker*") (and is, therefore, also

6    known as "*Parker* immunity"). In *Parker*, the U.S. Supreme Court dismissed a Sherman Act

7    challenge to a California law that restricted competition among raisin manufacturers, holding that

8    nothing in the Sherman Act suggested that its purpose was to restrain a U.S. state or its officers or

9    agents from activities directed by its legislature. *Sanders*, 504 F.3d at 915, *citing Parker*, 317

10   U.S. at 350-51.

11          The test for whether the state action doctrine applies in a particular case depends on the

12   nature of the defendant. Whereas the doctrine immunized a U.S. state legislature from Sherman

13   Act liability in *Parker*, the doctrine immunizes a private party only if both: (1) the private party is

14   acting pursuant to a U.S. state's policy that the state articulated clearly and affirmatively to allow

15   the allegedly anticompetitive conduct; and (2) the state provides active supervision of the

16   allegedly anticompetitive conduct by the private actor. *California Retail Liquor Dealers Ass'n. v.*

17   *Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) ("*Midcal*"). *See Southern Motor Carriers Rate*

18   *Conference, Inc. v. United States*, 471 U.S. 48, 61 (1985) ("*Southern Motor Carriers*") ("we hold

19   *Midcal's* two-pronged test applicable to private parties' claims of state action immunity");

20   *Sanders*, 504 F.3d at 915-16 (this "two-part '*Midcal* test' is only needed to decide whether private

21   conduct pursuant to a state statute gets *Parker* immunity"). In *Midcal*, a California statute

22   authorized private wine producers to set and file prices, and California enforced the prices thus

23   established. 445 U.S. at 99, 105. The United States Supreme Court held that the system satisfied

24   the first part of the *Midcal* test but not the second because "[t]he State neither establishes prices

25   nor reviews the reasonableness of the price schedules[.]" *Id.*

26          "The second prong of the *Midcal* test requires that the state 'exercise ultimate control over

27   the challenged [private] anticompetitive conduct.'" *Snake River Valley Elec. Ass'n v. PacifiCorp*,

28   _____

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1  238 F.3d 1193 (9th Cir. 2001) *quoting F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621, 634 (1992)

2  ("*Ticor*"). "'The [active supervision] requirement is designed to ensure that the state action

3  doctrine will shelter only the particular anticompetitive acts of private parties that, in the

4  judgment of the [U.S.] State, actually further state regulatory policies.'" *Id.* at 634 *quoting*

5  *Patrick v. Burget*, 486 U.S. 94, 100-01 (1988). "Its purpose is to determine whether the [U.S.]

6  State has exercised sufficient independent judgment and control so that the details of the rates or

7  prices have been established as a product of deliberate state intervention, not simply by agreement

8  among private parties." 504 U.S. at 634-35.

9
### 1.  No U.S. Court Has Ever Extended the State Action Doctrine to Conduct Authorized and Supervised By a Foreign Government
10

11  Defendants do not and cannot cite a single case applying the state action doctrine to

12  immunize price-fixing by a private entity purportedly acting according to *foreign* government

13  policy. Defendants, however, claim,

14    Sovereign governments, such as Japan's, must be accorded at least the same
      respect for their treaties and regimes that U.S. courts give to the regulatory regimes
15    of the 50 U.S. states as they regulate their intrastate commerce, even where
      interstate commerce is affected.
16

17  Japan Regulatory Brief[1], p. 10.

      The relevant authority, however, is to the contrary. *Cf. Outboard Marine Corp. v. Pezetel*,
18
19  461 F. Supp. 384, 397 (D. Del. 1979) ("[d]efendant's motion to dismiss on grounds of state action

    finds no support in an antitrust law that expressly covers corporations organized under the laws of
20
    foreign states. To accept defendant's position would involve redefining 'person' or 'persons'
21
    under the antitrust laws to include 'corporations and associations existing under or authorized by .
22
23  . . the laws of any foreign country except those countries which control their economies.' The

    Court declines to rewrite the statute. Defendants' motion to dismiss on a theory of state action is
24
    denied") (footnotes omitted).
25

26  [1] Defendants designate the joint motion to dismiss filed by ANA, China Airlines and Thai
    Airways the "Japan Regulatory Brief". For the Court's convenience, Plaintiffs use the same
27  designation herein.

28
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

2.   **The Rationale Underlying the State Action Doctrine Does Not Support Its Extension to Conduct Authorized and Supervised By A Foreign Government**

The state action doctrine is based on principles of federalism. "The *Parker* doctrine represents an attempt to resolve conflicts that may arise between principles of federalism and the goal of the antitrust laws, unfettered competition in the marketplace." *Southern Motor Carriers*, 471 U.S. at 61. "[I]n *Parker v. Brown*, . . . [o]ur decision was grounded in principles of federalism." *Ticor*, 504 U.S. at 633.

In *Parker*, California's law restricting competition "derived its authority and its efficacy from the legislative command of the state and was not intended to operate or become effective without that command." 317 U.S. at 350. "We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.* at 350-51. "In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Id.* at 351.

"The principle of freedom of action for the States, adopted to foster and preserve the federal system, explains the later evolution and application of the *Parker* doctrine in our decisions [including] *Midcal*[.]" *Ticor*, 504 U.S. at 633. "Immunity is conferred out of respect for ongoing regulation by the State, not out of respect for the economics of price restraint." *Id.*

Accordingly, the Court should reject Defendants' attempt to immunize their illegal conduct and should not extend the state action doctrine to price-fixing by private entities purportedly acting pursuant to *foreign* government policy because the state action doctrine is based on principles of federalism. As the U.S. Supreme Court explained in *Parker*, the U.S. has a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority. 317 U.S. at 351. Accordingly, the states *retain* the powers that they originally had unless such powers are taken from them,

4

1   pursuant to the Constitution. In *Parker*, the Court held that in enacting the Sherman Act,

2   Congress had not taken from the states the "ability to regulate their domestic commerce."

3   *Southern Motor Carriers*, 471 U.S. at 56. Foreign governments are not subject to the protection

4   accorded to states in the U.S. under the Tenth Amendment, and do not have any powers that,

5   under the Constitution, the U.S. government could either take from them or allow them to *retain*.

6   Thus, Defendants' argument that state action immunity should be *extended* to private parties'

7   actions allegedly sanctioned by a foreign government must fail.

8           3.      **The U.S.-Japan Air Services Agreement Is Not Dispositive
                    of the Present Claims**

9

10  Defendants' reliance on air services agreements between the U.S. and foreign

11  governments is also misplaced. The very documents proffered by Defendants to support their

12  claim that the Japanese government policy displaces competition, and thus provides Defendants

13  with immunity under the state action doctrine, expressly provide that they do not insulate

14  Japanese airlines from U.S. antitrust scrutiny. The "Memorandum of Understanding" Between

15  the United States and Japan (March 14, 1998) provides:

16      *Nothing in this 1998 MOU shall be construed to limit the rights of either Party to
        enforce its domestic competition laws* and other laws and regulations on such
17      issues as safety, security and environment against any airline operating services
        under this 1998 MOU or any of the prior agreements following an appropriate
18      proceeding, so long as such laws and regulations do not discriminate on the basis
        of nationality or any other improper or inappropriate basis.
19

20  (Exh. 5 to ANA's, China Airlines' and Thai Airways' Request for Judicial Notice, at p. 26, ¶

21  X.C.2, emphasis added). In *Laker Airways Limited v. Sabena, Belgian World Airlines*, 731 F.2d

22  909 (D.C. Cir. 1984) ("*Laker Airways*"), the court of appeal held that foreign air carriers are

23  subject to U.S. antitrust laws and are not immunized from liability simply by virtue of their

24  governments' entry into air transportation agreements like those here. The court held:

25      The landing rights granted to [KLM and Sabena] are permits to do business in this
        country. Foreign airlines fly in the United States on the prerequisite of obeying
26      United States law. They have offices and employees within the United States, and
        conduct substantial operations here. By engaging in this commercial business they
27      subject themselves to the in personam jurisdiction of the host country's courts.

                                                5

28  **PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
    DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
    ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

They waive either expressly or implicitly other objections that might otherwise be raised in defense.

*Id.* at 924-25, 932 ("KLM and Sabena have no claim to antitrust immunity under their air service treaties"); *see also Airline Pilots' Association, International v. TACA International Airlines,* 748 F.2d 965, 969 (5th Cir. 1984) ("[t]he express language of the Air Transportation Agreement reflects that the parties did not intend the agreement to replace relevant domestic labor law.").

In fact, Congress has specifically enacted legislation concerning the antitrust obligations of foreign air carriers that want to gain access to the U.S. market. 49 U.S.C. § 41301 *et seq.* establishes the framework in which foreign air carriers are able to obtain permits to operate in the United States. Within this overarching regulatory framework, 49 U.S.C. § 41308 provides a limited antitrust exemption for foreign air carriers "[w]hen the Secretary of Transportation determines that it is in the public interest . . . ."

The Defendants are well aware that the U.S. Department of Transportation ("DOT") rarely grants antitrust immunity:

> Board decisions have emphasized that a grant of immunity is extraordinary relief, appropriate only upon a strong showing by the proponents that it is necessary to permit the transaction to proceed or that it is required in the public interest. *Antitrust exposure is a normal risk of doing business in an unregulated competitive environment and is consistent with our policy of reliance on competition to the maximum extent possible.*

*Braniff South American Route-Transfer Case,* 1983 C.A.B. LEXIS 288 at \*28-29 (C.A.B.) (emphases added); *see also* S. Rep. 96-329, 1979 WL 10388, \*7 (Leg. history for Air Transportation Competition Act of 1979) ("The antitrust laws remain fully applicable to . . . foreign air transportation").

Similarly, the U.S. Department of Justice ("DOJ") does not recognize the existence of air transport agreements as a limitation on its ability to prosecute violations of the antitrust laws. *See* http://www.justice.gov/opa/pr/2009/April/09-at-324.html, RJN (P) (referencing guilty pleas of 15 foreign air carriers in the related air cargo/air passenger price-fixing investigation); CAC ¶ 293. Nor has the existence of air transport agreements affected the pleading motions in *In re Air Cargo*

6

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1  *Shipping Services Antitrust Litigation*, 2009 U.S. Dist. LEXIS 97365 (E.D.N.Y. Aug. 21, 2009),

2  *aff'g* in part, 2008 U.S. Dist. LEXIS 107882 (E.D.N.Y. Sept. 26, 2008).  In light of this strong,

3  consistent authority against immunizing foreign air carriers from antitrust immunity, Defendants'

4  argument that this Court should extend the state action doctrine to conduct of private parties

5  authorized and supervised by foreign countries cannot stand.

6           **4.     In the Absence of Qualified State Action, Defendants'
                       Immunity Claim Fails**

7

8           Because the state action doctrine does not apply to foreign governments, Defendants'

9  claim of immunity fails and can only be seen as an attempt to "cast[] a gauzy cloak of state

10  involvement over what is essentially a private price-fixing arrangement." *Midcal*, 445 U.S. at

11  106.  "As *Parker* teaches, 'a state does not give immunity to those who violate the Sherman Act

12  by authorizing them to violate it, or by declaring that their action is lawful . . . .'" *Id.; see also*

13  *Parker*, 314 U.S. at 351.  "Th[e] supervision requirement [of the *Midcal* test] prevents the State

14  from frustrating the [U.S.] national policy in favor of competition . . . ." *Southern Motor*

15  *Carriers*, 471 U.S. at 57.

16           In fact, in *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993) ("*Hartford*"),

17  an antitrust case that is closer factually to this case than any case that Defendants cite because it

18  involved foreign private party defendants who claimed their actions were consistent with *foreign*

19  law, the Supreme Court held that "[t]he fact that conduct is lawful in the [foreign] state in which

20  it took place will not, of itself, bar application of the United States antitrust laws, even where the

21  foreign state has a strong policy to permit or encourage such conduct." *Id* at 799.  Defendants

22  argue that *Hartford* is distinguishable because: (1) it turned on whether there was a *conflict*

23  between U.S. law and that of a foreign sovereign rather than, as here, a purported *tension* between

24  regulatory expectations; and (2) the *Hartford* defendants did not plead state action immunity.

25  Japan Regulatory Brief, p. 15.

26           In *Hartford*, plaintiffs, including nineteen U.S. states and many private plaintiffs, alleged

27  that defendants, including British reinsurers and brokers, conspired to only offer certain coverage

28
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1  in the U.S. and to withhold other types of coverage. *Hartford*, 509 U.S. at 770, 776-77. These

2  foreign defendants did not invoke the state action doctrine but instead argued that the court should

3  refrain from exercising its jurisdiction on the grounds of international comity. *Id.* at 797. The

4  U.S. Supreme Court ruled that comity could not defeat jurisdiction unless there was a true conflict

5  between domestic and foreign law. *Id.* at 798. The court held that no conflict exists where a

6  person subject to regulation by two countries could comply with the laws of both. *Id.* at 799. The

7  foreign defendants in *Hartford* did not argue that British law required them to act in some fashion

8  prohibited by the law of the U.S. or that compliance with the laws of both countries was

9  otherwise impossible. *Id.* The court concluded that there was no conflict with British law. *Id.*

10      Here, Defendants also admit that there is no conflict between U.S. and Japanese law.

11 Japan Regulatory Brief, p. 15. Instead, they claim that there is merely a tension between

12 regulatory expectations. *Id.* Rather than extending the state action doctrine to private parties who

13 claim they were acting in accordance with foreign government policy, which has never been done

14 before, the Court should follow *Hartford* and deny Defendants' motion to dismiss based on their

15 admission that there is no conflict between U.S. and Japanese law and that Defendants could

16 therefore have complied with both.

17
        **5.  Even If the State Action Doctrine Is Applied to Conduct Authorized
            and Supervised By a Foreign Government, It Does Not Immunize
18             Defendants' Conduct**

19      Finally, even if the Court were inclined to extend the state action doctrine to private

20 parties purportedly acting pursuant to foreign government policy, Defendants do not meet the

21 second part of the *Midcal* two-part test, which requires that the relevant government actively

22 supervise the allegedly anticompetitive conduct by the private actor. *Midcal*, 445 U.S. at 105. In

23 *Midcal*, a California statute authorized private wine producers to set and file prices. *Id.* The

24 United States Supreme Court held that while this satisfied the first part of the *Midcal* test, the

25 second part was not satisfied because "[t]he State neither establishes prices nor reviews the

26 reasonableness of the price schedules[.]" *Id.*

27

28
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    The DOT has held that "tariff filings, particularly ex-Japan, are often meaningless

2    because of heavy discounting and other features of the distribution system in Japan[.]"

3    *U.S.-Japan Service Case*, 1990 DOT Av. LEXIS 90 (D.O.T. 1990) at *159.  The DOT

4    held that "fares posted by the [Japanese] airlines are rarely the selling fares in the market"

5    and that the practice is to have "high posted prices and unposted selling fares." *Id.* at *28-

6    29.

7        Thus, the DOT has determined that the Japanese government does not actively supervise

8    the actual discounted prices that Japanese carriers charge, which constitute the majority of the

9    prices charged and which are different from the tariffs filed with the Japanese government.

10   Accordingly, because of the DOT's determination, as in *Midcal*, Defendants' conduct does not

11   satisfy the second part of the *Midcal* test, and, even if the Court is inclined to extend the state

12   action doctrine to conduct by foreign private parties that is authorized and supervised by a foreign

13   government, the doctrine does not immunize Defendants' conduct.

14        **B.    The Japanese Regulatory Regime Does Not Impliedly Preempt the
              Sherman Act**

15

16       Defendants argue that Japan's air services agreements with the United States and other

17   governments, and that country's aeronautic regulatory regime, implicitly preclude application of

18   the U.S. antitrust laws in this case, based on *Credit Suisse Securities (USA) LLC v. Billing*, 551

19   U.S. 264 (2007) ("*Credit Suisse*").

20       In *Credit Suisse*, a group of investors filed two antitrust class-action lawsuits against

21   several investment banks that "had acted as underwriters, forming syndicates that helped execute

22   the IPOs [initial public offerings] of several hundred technology-related companies." *Credit*

23   *Suisse*, 551 U.S. at 267.  The investors alleged that the underwriters (banks) had violated the

24   antitrust laws by conspiring to sell shares only to buyers who agreed to pay excessively high sales

25   commissions, to purchase other less desirable securities ("tying"), and to buy additional shares at

26   escalating prices ("laddering"). *Id.*  An extensive scheme of securities regulations governed the

27   IPO underwriting practices at issue. *See id.* at 277 ("[t]he law grants the SEC authority to

28
9
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    supervise all of the activities here in question"). "Indeed," the Court noted, "the SEC possesses

2    considerable power to forbid, permit, encourage, discourage, tolerate, limit, and otherwise

3    regulate virtually every aspect of the practices in which underwriters engage." *Id.* In particular,

4    the SEC prosecuted tying and laddering arrangements as "fraudulent and manipulative" practices

5    prohibited by section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Act of

6    1934 and SEC Rule 10b-5. *Id.* In stark contrast to the present case in which the misconduct

7    alleged is unlawful, the cooperation and communication among underwriters at issue in *Credit*

8    *Suisse* was necessary to the IPO market and was not only encouraged but *required* by the

9    securities laws.

10        The Supreme Court framed the issue presented in *Credit Suisse* as whether "there was a

11    'plain repugnancy' between the[] antitrust claims [alleged] and the federal securities law." *Credit*

12    *Suisse*, 551 U.S. at 272; *quoting Gordon v. New York Stock Exch., Inc.*, 422 U.S. 659, 682 (1975).

13    The Court began its analysis by restating principles from earlier decisions that specifically

14    address implied repeal in the securities context. First, the Court noted that, where possible, courts

15    should "reconcil[e] the operation of both [i.e., antitrust and securities] statutory schemes . . .

16    rather than holding one completely ousted." *Id. quoting Silver v. New York Stock Exchange*, 373

17    U.S. 341, 357 (1963). Second, the Court emphasized that "[r]epeal of the antitrust laws is to be

18    implied only as necessary to make the Securities Exchange Act work, and even then only to the

19    minimum extent necessary." *Id. quoting Silver*, 373 U.S. at 357. Third, the Court held,

20    preclusion of antitrust laws is to be found only where, "given context and likely consequences,

21    there is a 'clear repugnancy' between the securities law and the antitrust complaint -- or as we

22    shall subsequently describe the matter, whether the two are 'clearly incompatible.'" *Id*, at 275;

23    *quoting Gordon*, 422 U.S. at 682.

24        To determine clear incompatibility, the Court identified four factors it deemed critical for

25    repeal of the antitrust laws. These are: (1) "the possible conflict affected practices that lie

26    squarely within an area of financial market activity that the [regulatory] laws seek to regulate";

27    (2) "the existence of regulatory authority under the [relevant] laws to supervise the activities in

28

10

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1   question"; (3) "evidence that the responsible regulatory entities exercise that authority"; and (4)

2   "a resulting risk that the securities and antitrust laws, if both applicable, would produce

3   conflicting guidance, requirements, duties, privileges, or standards of conduct." *Credit Suisse*,

4   551 U.S. at 264.

5       Defendants fail with respect to each factor to demonstrate clear incompatibility between

6   Japan's laws and regulatory regime, and the United States' antitrust laws.

7
               **1.**    **The Complaint Does Not Allege Misconduct That "Lies Squarely Within An Area of Financial Market Activity"**
8

9       Defendants have not made a strong showing with respect to the first *Credit Suisse* factor.

10  Nor have they demonstrated why the *Credit Suisse* analysis applies in this case.

11      *Credit Suisse* dealt with the intersection of securities law and antitrust law. *Credit Suisse*,

12  551 at 276. While the Supreme Court suggested that the case shared some similarities with other

13  antitrust cases, it emphasized that the securities context – or, at a minimum, the facts of *Credit*

14  *Suisse* – presented a variety of "factors . . . [that] make mistakes unusually likely" and "the

15  securities-related costs of mistakes unusually high." *Id.* at 282. These concerns led the Court to

16  conclude:

17
      *[W]here conduct at the core of the marketing of new securities is at issue; where*
18  *securities regulators proceed with great care to distinguish the encouraged and*
      *permissible from the forbidden;* where the threat of antitrust lawsuits, through error
19  and disincentive, could seriously alter underwriter conduct in undesirable ways, *to*
      *allow an antitrust lawsuit would threaten serious harm to the efficient functioning*
20  *of the securities market.*

21  *Id.* (italics added).

22      The facts of this case do not place it within the *Credit Suisse* rubric.

23      Defendants fail to cite any case applying *Credit Suisse* outside of the securities context.

24  At least two courts, however, have declined to broadly apply *Credit Suisse* in cases that did not

25  arise under the U.S. securities laws. *See, e.g., Churchill Downs, Inc. v. Thoroughbred*

26  *Horsemen's Group*, 605 F. Supp. 2d 870, 881 (W.D. Ky. 2009) ("*Churchill Downs*") (addressing

27  Interstate Horseracing Act, 15 U.S.C. §3001-07) ("Because *Credit Suisse* dealt with a hedge fund

28
11
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1   and securities laws, it is not directly applicable here."); *Energy Marketing Services, Inc. v.*

2   *Columbia Gas Transmission Corp.*, 639 F. Supp. 2d 643 (D. W.Va. 2009) ("*EMS*") (addressing

3   Federal Energy Regulatory Commission consent decree approving long term energy contracts)

4   ("The Court makes no finding as to the scope of *Credit Suisse*, other than to say that the facts of

5   this case do not place it under *Credit Suisse*.")

6           **2.      There Is No "Regulatory Authority To Supervise The Activities In**
                       **Question"**

7

8           Assuming *Credit Suisse*'s potential applicability, Defendants also have failed to satisfy the

9   second *Credit Suisse* factor – the existence of a regulatory agency with the authority "to supervise

10  the activities alleged" in the Complaint.

11          In *Credit Suisse*, the Supreme Court looked to the role of the underwriters in the IPO

12  process as well as to the alleged laddering and tying arrangements to ascertain "the existence of

13  regulatory authority under the securities law to supervise the activities in question." *Credit*

14  *Suisse*, 551 U.S. at 275, 276-77. The Court determined that "the law grants the SEC authority to

15  supervise all of the activities here in question. Indeed, the SEC possesses considerable power to

16  forbid, permit, encourage, discourage, tolerate, limit and otherwise regulate virtually every aspect

17  of the practices in which the underwriters engage." *Id* at 276. The Court also cited regulations

18  that grant the SEC power to regulate "communications between underwriting participants and

19  their customers, including those that occur during road shows" – the very anticompetitive conduct

20  that was alleged in the complaint. *Id* at 277.

21          Defendants do not squarely address the question of whether regulators, in Japan or

22  elsewhere, have authority to oversee the international passenger air market, to supervise the

23  market for air passenger travel between the United States and Asia/Oceana, or to remedy the

24  industry-wide collusion alleged here. Defendants appear to suggest that such authority rests with

25  the domestic aviation laws of Japan, the country's aeronautic regulators, and its air service

26  agreements with other nations. *See* Japan Regulatory Brief, p. 3. Unlike *Credit Suisse*, however,

27  there is nothing in the Japanese Civil Aeronautics Act, the 1998 MOU, or the air service

28                                                      12
    **PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO**
    **DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO**
    **ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1  agreements proffered with Defendants' motion that specifically "grants [Japanese regulators]

2  authority to supervise all the activities here in question," or affords them "considerable power to

3  forbid, permit, encourage, discourage, tolerate, limit or otherwise regulate virtually every aspect

4  of the practices in which [Defendants] engage." *See Credit Suisse*, 551 U.S. at 276. None of

5  these addresses illegal agreements, understandings or conspiracies among market competitors to

6  set the prices of international air travel at supracompetitive levels or to share cost information.

7        Nor is the second factor of *Credit Suisse* satisfied by a mere showing that Defendants' air

8  passenger tariffs were filed with or approved by Japanese regulators. The opinion in *Dahl v. Bain*

9  *Capital Partners, LLC*, 589 F.Supp.2d 112 (D. Mass. 2008) ("*Dahl*") is instructive on this point.

10  In *Dahl*, the court held that the second *Credit Suisse* factor was not satisfied because, although the

11  SEC regulated leveraged buy-outs generally and regulated filings made in connection with

12  leveraged buy-outs, the SEC did not regulate the specific behavior in question, which was private

13  equity transactions in leveraged buyouts.

14        [Defendants] assert that the many filings that a Target Company must make in
       conjunction with an LBO represents regulation by the SEC. This argument is
15       unconvincing. *The SEC does not substantively regulate the PE Firms, it merely
       requires certain disclosures be filed as part of an LBO transaction. Requiring*
16       *disclosures is not* nearly as substantial and invasive as the regulations practiced in
       [*Credit Suisse*]. Indeed, [*Credit Suisse*] was decided as it was because of the
17       breadth of the SEC's jurisdiction over the activities in question. *Id. Therefore,
       seeing that the SEC only required certain disclosures here, and that it did not*
18       *substantively regulate the behavior in question, the second factor is not met.*

19  *Id.* at 116-17 (emphasis added). The same principle applies here. Although the proffered

20  regulations and agreements touch upon air passenger fairs and require disclosures in connection

21  therewith, the regulations do not specifically or substantively regulate the collusive misconduct

22  alleged in the Complaint.

23        Furthermore, the regulations and other materials upon which Defendants rely do not

24  provide any means for those injured by Defendants' conduct to recover damages on their own

25  behalf. In *Credit Suisse*, the Court emphasized the fact that implied repeal of the antitrust laws

26  would not leave victims without a private remedy because "the [p]rivate individuals who suffer

27  harm as a result of a violation of pertinent statutes and regulations may also recover damages"

28
                                          13
       **PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
       DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
       ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    under the Securities Exchange Act. *Credit Suisse*, 551 U.S. at 277; (citing 15 U.S.C. §§ 78bb,

2    78u-4, 77k). The existence of a private remedy under the Securities and Exchange Act

3    "contributes to the unusual lack of need for antitrust suits in the securities context." *EMS*, 639 F.

4    Supp. 2d at 651. The absence of any remedy under the proffered regulations and agreements for

5    the conduct alleged here – either public or private – indicates that the Japanese regulatory

6    authorities lack supervisory authority over the conduct and that Japan's regulatory scheme would

7    not be compromised by antitrust claims brought by and on behalf of affected U.S. travelers.

8                    **3.    There Has Been No "Continuously Exercised Regulatory
                             Authority"**

9

10   The third *Credit Suisse* factor cannot be satisfied unless Defendants demonstrate that

11   Japanese authorities "continuously exercise their authority" to stem the collusive price-fixing

12   behavior alleged in the Complaint. Defendants do not present any argument to show that this

13   factor is satisfied here.

14   Moreover, as detailed above, Defendants also have not put forward any fact that would

15   support an argument that Japanese regulatory authorities have "continuously exercised [their]

16   legal authority to regulate conduct of the general kind now at issue." *Credit Suisse*, 551 U.S. at

17   277. In this regard, the present case is distinguishable from both *Credit Suisse* and *In re Short

18   Sale Antitrust Litig.*, 527 F. Supp. 2d 253, 259 (S.D.N.Y. 2007), where the SEC exercised legal

19   authority over precisely the same conduct at issue in those cases.

20   The holding in *Pennsylvania Avenue Funds v. Borey*, 569 F. Supp. 2d 1126, 1130-31

21   (W.D. Wash. 2008) ("*Borey*") further demonstrates why Defendants cannot show an implied

22   repeal of the antitrust laws under the third *Credit Suisse* factor. In *Borey*, all of the involved

23   parties conceded that the relevant regulatory agency had "sweeping power to regulate disclosure

24   of bidding agreements like the one" at issue in that case. *Id.* Despite this concession, the court

25   found no party:

26              put forth a compelling argument that the [agency] has authority to prevent bidders
                like [those involved in the case] from joining forces. If the [agency's] power is
27              limited to requiring disclosure, then the agency's exercise of that power does not

                                                        14

28   **PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
     DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
     ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1   conflict with antitrust law, under which disclosure is neither a remedy for anti-
2   competitive conduct nor a defense to the imposition of liability.

3   *Id.* The court held that the third *Credit Suisse* factor was not satisfied because there were no

4   provisions addressing defendants' precise conduct.

5   The court in *Borey* further distinguished the case before it from *Credit Suisse*, noting the

6   absence of:

7       regulatory authority or enforcement over efforts by competing bidders to join
        forces in a contest for corporate control.  More importantly, however, Defendants
8       have not convinced the court either that the [agency] possesses authority over the
        anticompetitive conduct that Plaintiff alleges, or that it exercised that authority.
9

10  *Id.*  In sum, when the substantive behavior at issue is not regulated, as is the case here, there can

11  be no implied repeal of the antitrust laws and *Credit Suisse* does not apply.  *Dahl*, 589 F. Supp.

12  2d at 117, n.4 (*citing Borey*, 569 F. Supp. 2d at 1130). *See also Eagletech Comm'ns v. Citigroup,*

13  *Inc.*, No. 07-60668-CIV, 2008 U.S. Dist. LEXIS 49432 at *32 n. 12 (S.D.Fla. June 27, 2008)

14  (finding that *Credit Suisse* would not apply to conduct alleged in the complaint, even though short

15  sales – which are regulated by the SEC – were at the base of that conduct because the conduct

16  involved something more than the typical short sale.)

17          **4.    The Proffered Laws, Regulations And Agreements Do Not Conflict
                    With Plaintiffs' Antitrust Claims**
18

19  Defendants' primary argument under *Credit Suisse* is directed to the fourth *Credit Suisse*

20  factor – whether Defendants are at risk of having to meet conflicting guidance, requirements,

21  duties, privileges or standards of conduct, should they be required to adhere to the laws and

22  aeronautic regulations of Japan, and U.S. antitrust law.  They suggest they are "caught between

23  potentially competing expectations of foreign [presumably, Japanese] regulation . . . and U.S.

24  antitrust law enforced by Federal courts."  Japan Regulatory Brief, p. 15.

25  Defendants' "conflict" argument is unavailing, however.  The question with respect to the

26  fourth element of the *Credit Suisse* test is whether the implicated regulatory scheme conflicts with

27

28
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1   the U.S. antitrust laws. There is no conflict here; in fact, the two schemes are designed to, and do,
2   complement each other.

3       Each of the Court's four considerations in *Credit Suisse* – (1) the inability to separate the
4   permissible from the impermissible if both areas of law were to apply; (2) the need for expertise
5   in the area of applicable regulatory laws; (3) the overlapping evidence from which reasonable, but
6   contradictory, inferences may be drawn; and (4) the risk of inconsistent court results – favor
7   Plaintiffs. *Credit Suisse*, 551 U.S. at 279-80.

8       *First*, the laws, regulations and air service agreements upon which Defendants rely do not
9   pose any difficulty in separating the permissible from the impermissible, were both to apply.
10   Indeed, a simple review of the materials supplied with Defendants' motion show that these laws
11   and agreements were prepared with the expressed intent of complementing, and furthering free
12   market competition, a core principle of the U.S. antitrust laws. For example, the 1998 MOU,
13   which serves as the foundational document "ensuring the implementation of the bilateral Civil Air
14   Transport Agreement . . . in a manner appropriate to the Japan-U.S. aviation relationship[,]"
15   underscores this point. Part VII of the 1998 MOU concerns Pricing and Distribution: it provides
16   that the airlines of each party are free to market their air transportation services directly to
17   consumers, and allows for competitive fare or rate pricing. (RJN, Ex. W, at p. 21). Part X of the
18   1998 MOU sets forth the procedures that apply to all services provided for under the MOU: it
19   expressly provides that "*[n]othing in this 1998 MOU shall be construed to limit the rights of*
20   *either Party to enforce its domestic competition laws . . . against any airline* operating services
21   under this 1998 MOU . . . ." *Id*, Ex. W, at p. 26 (bold italics supplied). Furthermore, the Air
22   Transport Agreement between the American Institute in Taiwan and the Taiwan Economic &
23   Cultural Office (RJN Exh. BB) and the Air Transport Agreements Between the Government of
24   the United States of America and the Government of the Kingdom of Thailand (*see* RJN Exh.
25   AA, Art. 12 (Pricing)) provide for the price of air transportation to be set by free market
26   competition.

27

28
        16
**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    Thus, contrary to Defendants' assertion, there is no risk that Defendants will be caught

2    between potentially competing foreign regulation and U.S. antitrust law. As shown above, the

3    1998 MOU and each airline service agreements allow for enforcement of antitrust violations.

4    There is no conflict here.

5    *Second*, although Defendants' collusive pricing schemes are extensive, this case does not

6    require unusual or special expertise beyond the experience required in any antitrust case.

7    *Third*, there are no contradictory inferences drawn from overlapping evidence. Because

8    the 1998 MOU and the airline transport agreements require competitive pricing arrangements,

9    any evidence of collusive or anticompetitive behavior by Defendants presents similar inferences

10   under these agreements, the Japanese regulatory scheme and U.S. antitrust laws.

11   *Fourth*, there hardly could be inconsistent court rulings. This action is being prosecuted

12   in a single court pursuant to transfer by the Judicial Panel for Multi-District Litigation. The case

13   will proceed through pre-trial proceedings and to a trial in one court, before one judge or jury.

14   There is no risk of competing lawsuits or inconsistent court rulings.

15   In sum, this case presents no conflict and certainly does not involve "clear repugnancy"

16   between the laws of Japan, the Japanese regulatory scheme and the airline service agreements, on

17   the one hand, and U.S. antitrust law, on the other, required for preclusion. *Credit Suisse*, 551

18   U.S. at 275. Even if Defendants could show *incompatibility* – which they have not – they would

19   still miss the mark:

20   *Mere incompatibility, as opposed to clear repugnancy, seems insufficient to find

21   implied immunity.* Immunity is only appropriate where the legislature's
     subsequent legislation would be so contradictory to antitrust legislation, or where
     attempting to follow both sets of legislation would be so confusing, that the

22   legislature must have intended to repeal the antitrust laws in certain circumstances
     despite having failed to explicitly say so . . . . The Court finds no such clear

23   repugnancy between the IHA and the antitrust laws here.

24   *Churchill Downs*, 605 F. Supp. 2d at 886; *citing Credit Suisse*, 551 U.S. at 275. (italics added).

25   *See also Axcan Scandipharm, Inc. v. Ethex Corp.*, 585 F. Supp. 1067, 1076 (D. Minn. 2007)

26   (no *Credit Suisse* preclusion because there was no "serious conflict" between the Lanham Act

27   claim and FDA regulations); *Helicopter Transport Services, Inc. v. Erickson Air-Crane, Inc.*,

28   17

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1  2008 U.S. Dist. LEXIS 3466 at *14 (D. Or. Jan. 14, 2008) (under *Credit Suisse*, "implicit

2  preemption applies only if there is a 'plain repugnancy' between antitrust claims and federal

3  securities law . . . .").

4  **IV.   CONCLUSION**

5        Defendants' argument that the state action doctrine immunizes them from antitrust

6  liability fails because: (1) no court has ever extended the state action doctrine to private parties'

7  conduct authorized and supervised by a *foreign* government; and (2) even if the Court is inclined

8  to extend the doctrine to such conduct, Defendants' conduct does not satisfy the doctrine

9  established by the Supreme Court in *Midcal*, 445 U.S. at 105.

10        Defendants' argument that Plaintiffs' claims are barred because the Japanese regulatory

11  regime impliedly preempts the Sherman Act also fails because: (1) the Supreme Court has held

12  that repeal of the antitrust laws is to be implied rarely and to the minimum extent necessary

13  (*Credit Suisse*, 551 U.S. at 272); (2) Defendants cite no law extending the doctrine to conflicts

14  between U.S. and *foreign* law; and (3) even if the Court is willing to take that leap, Defendants

15  fail to satisfy the Supreme Court's four-factor test because there is no clear repugnancy between

16  the Japanese regulatory scheme and U.S. antitrust law.

17        Accordingly, the Court should deny Defendants' motion to dismiss.

18

19  Dated:  January 22, 2010                                  Respectfully submitted,

20                                              By:   */s/ Michael P. Lehmann*

21                                          Michael P. Lehmann
                  Christopher L. Lebsock
22                                          Jon T. King
                  **HAUSFELD LLP**
23                                          44 Montgomery Street, Suite 3400
                  San Francisco, CA  94104
24                                          Telephone:  (415) 633-1908
                  Facsimile:  (415) 358-4980
25

26

27

                                             18

28  **PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    Dated:  January 22, 2010                    Respectfully submitted,

2                                                By:   _/s/ Michael D. Hausfeld_

3                                                Michael D. Hausfeld
                                                 **HAUSFELD LLP**
4                                                1700 K Street, NW, Suite 650
                                                 Washington, DC 20006
5                                                Telephone:  (202) 540-7200
                                                 Facsimile:   (202) 540-7201
6
     Dated: January 22, 2010                     Respectfully submitted,
7
                                                 By:   _/s/ Joseph W. Cotchett_
8                                                Joseph W. Cotchett
                                                 Nanci E. Nishimura
9                                                Steven N. Williams
                                                 Aron K. Liang
10                                               Matthew K. Edling
                                                 **COTCHETT, PITRE & MCCARTHY**
11                                               San Francisco Airport Office Center
                                                 840 Malcolm Road, Suite 200
12                                               Burlingame, CA 94010
                                                 Telephone:  (650) 697-6000
13                                               Facsimile:   (650) 697-0577

14   Allan Steyer                                Daniel C. Girard
     Simon Goodfellow                            Aaron M. Sheanin
15   **STEYER LOWENTHAL**                        Elizabeth Cheryl Pritzker
     **BOODROOKAS ALVAREZ & SMITH**              **GIRARD GIBBS LLP**
16   **LLP**                                     601 California Street, Suite 1400
     One California Street, 3d Floor             San Francisco, CA 94108
17   San Francisco, CA 94111                     Telephone: 415-981-4800
     Telephone: (415) 421-3400                   Fax: 415-981-4846
18   Facsimile: (415) 421-2234                   E-mail: dcg@girardgibbs.com
     (On the Brief)                                      ams@girardgibbs.com
19                                                       ecp@girardgibbs.com
                                                 (On the Brief)
20
     Walter J. Lack                              Steven A. Kanner
21   Elizabeth Lane Crooke                       William H. London
     Richard Pollard Kinnan                      **FREED, KANNER, LONDON**
22   **ENGSTROM, LIPSCOMB & LACK**               **& MILLEN, LLC**
     10100 Santa Monica Boulevard, 12th Floor    2201 Waukegan Road, Suite 130
23   Los Angeles, CA 90067                        Bannockburn, IL  60015
     Telephone: 310-552-3800                      Telephone:     (224) 632-4500
24   Fax: 310-552-9434                            Facsimile:     (224) 632-4519
     E-mail: wlack@elllaw.com                     E-mail: kanner@fklmlaw.com
25   E-mail: bcrooke@elllaw.com
     E-mail: rkinnan@elllaw.com
26

27
                                         19
28   **PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO**
     **DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO**
     **ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1   Derek G. Howard
    **MURRAY & HOWARD LLP**
2   900 Larkspur Landing Circle, Suite 900
    Larkspur, CA 94904
3   Telephone: 415-461-3200
    Fax: 415-461-3208
4   E-mail: dhoward@murrayhowardlaw.com

5

6   Jennie Lee Anderson
    **ANDRUS ANDERSON LLP**
    155 Montgomery Street, Suite 900
7   San Francisco, CA 94104
    Telephone: 415-986-1400
8   Fax: 415-986-1474
    E-mail: jennie@andrusanderson.com

9

10

11  Jeff S. Westerman
    Peter Safirstein
12  **MILBERG LLP**
    One California Plaza
13  300 S. Grand Avenue, Suite 3900
    Los Angeles, CA 90071
14  Telephone: 213-617-1200
    Fax: 213-617-1975
15  E-mail: jwesterman@milberg.com
            psafirstein@milberg.com
16

17  Marc M. Seltzer
    **SUSMAN GODFREY LLP**
18  1901 Avenue of the Stars, Suite 950
    Los Angeles, CA 90067-6029
19  Telephone: 310-789-3100
    Fax: 310-789-3150
20  E-mail: mseltzer@susmangodfrey.com

21

22

23  Terry Gross
    **GROSS & BELSKY LLP**
24  180 Montgomery Street, Suite 2200
    San Francisco, CA 94104
25  415-544-0200
    Fax: 415-544-0201
26  E-mail: terry@gba-law.com

Craig C. Corbitt
**ZELLE HOFMANN VOELBEL
& MASON LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: 415-693-0700
Fax: 415-693-0770
E-mail: ccorbitt@zelle.com

Mario Nunzio Alioto
Lauren Clare Russell
**TRUMP ALIOTO TRUMP
& PRESCOTT LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Fax: 415-346-0679
E-mail: malioto@tatp.com
E-mail: laurenrussell@tatp.com

Robert Kaplan
Laurence D. King
Jason A. Zweig
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street. Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Fax: 415-772-4707
E-mail: rkaplan@kaplanfox.com
        lking@kaplanfox.com
        jzweig@kaplanfox.com

Jack Wing Lee
Brad Yamauchi
Sean Tamura-Sato
**MINAMI TAMAKI LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone: 415/788-9000
Fax: 415-398-3887
E-mail: jlee@MinamiTamaki.com
        byamauchi@MinamiTamaki.com
        seant@MinamiTamaki.com

Susan Gilah Kupfer
**GLANCY BINKOW & GOLDBERG LLP**
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone: 415-972-8160
Fax: 415-972-8166
E-mail: skupfer@glancylaw.com

27

28

20

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

John G. Emerson
**EMERSON POYNTER LLP**
830 Apollo Lane
Houston, TX 77058
Telephone: 281-488-8854
Fax: 281-488-8867
E-mail: jemerson@emersonpoynter.com

Thomas Girardi
Graham Bruce LippSmith
**GIRARDI & KEESE**
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-977-0211
Fax: 213-481-1554
E-mail: tgirardi@girardikeese.com
        glippsmith@girardikeese.com

Stanley M. Grossman
Michael Buchman
Cheryl Hamer Mackell
**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: 415-241-1480
Fax: 800-211-7194
E-mail: smgrossman@pomlaw.com
        mbuchman@pomlaw.com
        chmackell@pomlaw.com

Christopher T. Heffelfinger
**BERMAN DE VALERIO**
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: 415-433-3200
Fax: 415-433-6382
E-mail: heffelfinger@bermandevalerio.com

Dianne M. Nast
**RODA & NAST PC**
801 Estelle Drive
Lancaster, PA 17601
Telephone: 717-892-3000
Fax: 717-892-1200
E-mail: dnast@rodanast.com

Lawrence D. McCabe
**MURRAY FRANK & SAILER LLP**
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: 212 682-1818
Facsimile: 212-682-1892
E-mail: lmccabe@murrayfrank.com

Brian Joseph Barry
**LAW OFFICES OF BRIAN BARRY**
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067
Telephone: 310-788-0831
Fax: 310-788-0841
E-mail: bribarry1@yahoo.com

Eugene A. Spector
William G. Caldes
**SPECTOR ROSEMAN KODROFF
& WILLIS PC**
1818 Market Street, 25th Floor
Philadelphia, PA 19103
Telephone: 215-496-0300
Fax: 215-496-6611
E-mail: espector@srkw-law.com
        wcaldes@srkw-law.com

Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: 612-333-8844
Fax: 612-339-6622
E-mail: dgustafson@gustafsongluek.com

W. Joseph Bruckner
**LOCKRIDGE GRINDAL
NAUEN PLLP**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Fax: 612-339-0981
E-mail: wjbruckner@locklaw.com

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO
ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**

1    Daniel Cohen
     **CUNEO GILBERT & LADUCA, LLP**
2    507 C Street NE
     Washington DC 20002
3    Telephone: 202-789-3960
     Fax: 202-789-1813
4    E-mail: danielc@cuneolaw.com

5    Vincent J. Esades
     **HEINS MILLS & OLSON, P.L.C.**
6    310 Clifton Avenue
     Minneapolis, MN 55403
7    Telephone: (612) 338-4605
     Fax: (612) 338-4692
8    E-mail: vesades@heinsmills.com

9

10

11   Guido Saveri
     Richard Alexander Saveri
12   Cadio R. Zirpoli
     William John Heye
13   **SAVERI & SAVERI, INC.**
     706 Sansome Street
14   San Francisco, CA 94111
     Telephone: 415-217-6810
15   Fax: 415-217-6813
     E-mail: guido@saveri.com
16   E-mail: rick@saveri.com
     E-mail: zirpoli@saveri.com
17   E-mail: william@saveri.com

18   Garrett D. Blanchfield
     Mark Reinhardt
19   **REINHARDT, WENDORF &**
     **BLANCHFIELD**
20   E-1250 First National Bank Bldg.
     332 Minnesota St.
21   St. Paul, MN 55101
     Telephone: 651-287-2100
22   Fax: 651-287-2103

Steven J. Greenfogel
**MEREDITH COHEN GREENFOGEL**
**& SKIRNICK, P.C.**
1521 Locust Street
8th Floor, Philadelphia, PA 19102
Telephone: 215-564-5182
Fax: 215-569-0958

Hollis L. Salzman
Bernard Persky
Gregory S. Asciolla
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
E-mail: hsalzman@labaton.com
        bpersky@labaton.com
        gasciolla@labaton.com

Bruce L. Simon
Esther Klisura
**PEARSON SIMON WARSHAW &**
**PENNY**
44 Montgomery St, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Fax:( 415) 433-9008
Email: bsimon@pswplaw.com
       eklisura@pswplaw.com

Pierce O'Donnell
Robert M Brava-Partain
**O'DONNELL & ASSOCIATES PC**
550 South Hope Street Suite 1000
Los Angeles, CA 90071
Tel: 213-347-0290
Fax: 213-347-0299
Email: pod@oslaw.com
       rpartain@oslaw.com

23

24

25

26

27

28

22

**PLAINTIFFS' MPA IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT RE ISSUES COMMON TO ALL NIPPON AIRWAYS, CHINA AIRLINES, AND THAI AIRWAYS**