Joseph W. Cotchett (36324)
Niall P. McCarthy (160175)
Paul N. "Pete" McCloskey (024541)
Steven N. Williams (175489)
Nanci E. Nishimura (152621)
Niki B. Okcu (229345)
Eric J. Buescher (271323)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  650-697-6000
Facsimile:    650-697-0577
jcotchett@cpmlegal.com
nmccarthy@cpmlegal.com
swilliams@cpmlegal.com
nnishimura@cpmlegal.com
nokcu@cpmlegal.com
ebuescher@cpmlegal.com

Michael D. Hausfeld
**HAUSFELD LLP**
1700 K Street, N.W., Suite 650
Washington, D.C. 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeldllp.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
**HAUSFELD LLP**
44 Montgomery Street, Suite 3400
San Francisco CA  94104
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeldllp.com
clebsock@hausfeldllp.com

*Interim Class Counsel for the Putative Class*

See signature page for complete list of Counsel

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>All Actions<br><br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913<br><br>**PLAINTIFFS' OPPOSITION TO CONTINENTAL AIRLINES, INC.'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:        September 30, 2011<br>Time:       8:30 a.m.<br>Location:  Courtroom 6, 17th Floor<br>Judge:      Hon. Charles R. Breyer |

1

## TABLE OF CONTENTS

2

**Page(s)**

3    I.     INTRODUCTION ...................................................................................................1

4    II.    PROCEDURAL BACKGROUND.........................................................................1

5    III.   ARGUMENT ..........................................................................................................4

6    IV.    CONCLUSION.......................................................................................................8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO CONTINENTAL'S MOTION TO DISMISS, CASE NO. 3:07-cv-05634 CRB

# TABLE OF AUTHORITIES

**Page(s)**

## CONSTITUTION

Article IV, Sec. 3 of the United States Constitution ........................................................................7


## CASES

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)...............................................................................................................3

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
  370 U.S. 690 (1962)...............................................................................................................5

*Dee-K Enters. Inc. v. Heveafil Sendirian Berhad,*
  299 F.3d 281 (4th Cir. 2002) ................................................................................................8

*F. Hoffman-LaRoche Ltd. v. Empagran, S.A.,*
  542 U.S. 155 (2004)...............................................................................................................8

*In re Rubber Chems. Antitrust Litig.,*
  504 F.Supp.2d 777 (N.D. Cal. 2007) ...................................................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  No. M 07-1827 SI, C 09-55609 SI, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ...................8

*Norman's On The Waterfront, Inc. v. Wheatley,*
  317 F.Supp. 247 (D.V.I., 1970) ...........................................................................................7


## STATUTES

15 U.S.C.

  §1 .........................................................................................................................................5

  §6a........................................................................................................................................1

Fed. R. Civ. P.

  Rule 12(b)(1).........................................................................................................................1

  Rule 56(f) ..............................................................................................................................4

1

## I.    **INTRODUCTION**

2        Defendant Continental Airlines, Inc. ("Continental") has filed a motion to dismiss portions

3   of Plaintiffs' "First Amended Consolidated Class Action Complaint" (July 14, 2011) (Dkt. No.

4   493) ("FAC") under Fed. R. Civ. P. 12(b)(1) based on the premise that the claims against it are

5   barred by the Foreign Trade Antitrust Improvement Act (15 U.S.C. §6a) ("FTAIA") as

6   interpreted by this Court in *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No.

7   C 07-05634 CRB, 2011 WL 1753738 (N.D. Cal. May 9, 2010) ("*TP*").[1] This second motion to

8   dismiss by Continental should be denied because the facts alleged in the FAC are sufficient to

9   link it to participation in a conspiracy that caused domestic, not foreign, injury to the proposed

10  class.

11

## II.    **PROCEDURAL BACKGROUND**

12       In October of 2009, Continental moved to dismiss "Plaintiffs' Consolidated Amended

13  Class Action Complaint" (Aug. 5, 2009) (Dkt. No. 200) ("CAC"). In that motion, it raised an

14  FTAIA defense as well as arguing that the CAC failed to allege a viable cause of action against it.

15  "Defendant Continental Airlines, Inc's Notice of Motion And Motion To Dismiss Consolidated

---

16  [1] At the outset, Plaintiffs dispute that a motion under Rule 12(b)(1) for alleged lack of jurisdiction
17  is proper. The FTAIA makes no reference to jurisdiction. *Animal Science Prods., Inc. v. Minmetals Corp.*, No. 10-2288, 2011 WL 3606995 at *4 (3d Cir. Aug. 17, 2011) ("*Animal*
18  *Science*"); *Boyd v. AWB Ltd.*, 544 F.Supp.2d 236, 243 n.6 (S.D.N.Y. 2008). In a 2006 decision,
19  the United States Supreme Court was highly critical of courts' "profligate" and "less than meticulous" use of the term "jurisdiction" in interpreting federal statutes. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510-11 (2006) ("*Arbaugh*"). Based on *Arbaugh*, the Third Circuit in *Animal*
20  *Science* ruled that motions to dismiss based on the FTAIA statutory limitations "must be decided
21  pursuant to the procedural framework that governs a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, rather than a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)." 2011 WL 3606995 at *5. In
22  doing so, the Third Circuit in *Animal Science* overruled a contrary interpretation of the FTAIA in its prior cases that antedated *Arbaugh*. *Id.* at *4. Exactly the same issue is now before the Seventh
23  Circuit in a pending appeal. *In re Potash Antitrust Litig.*, 667 F.Supp. 2d 907, 934 (N.D. Ill. 2009), *appeal pending*. In *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546
24  F.3d 981, 985 n. 3 (9th Cir. 2008), the Ninth Circuit noted that "[i]t is unclear, however, whether the FTAIA is more appropriately viewed as withdrawing jurisdiction from the federal courts
25  when a plaintiff fails to establish proximate cause or as simply establishing a limited cause of action requiring plaintiffs to prove proximate cause as an element of the claim." It declined to
26  resolve the issue, however. *Id.* Plaintiffs recognize that this Court has viewed the limitations imposed by the FTAIA as jurisdictional (*TP*, 2011 WL 1753738 at *3), but that reasoning may be
27  in doubt in light of *Animal Science* and *Arbaugh*. In any event, Plaintiffs believe that Continental's motion to dismiss should be denied, whether it is analyzed under Rule 12(b)(1) or
28  12(b)(6).

---

Amended Complaint; Memorandum of points And Authorities In Support Thereof," p. 4 n. 4 (Oct. 7, 2009) (Dkt. No. 243). Plaintiffs opposed this motion, pointing out:

- That Continental engaged in a conspiracy to fix the price of passenger air transportation between the United States and Asia/Oceania.  CAC  ¶¶316, 318.

- That Continental agreed to restrain trade in the market for passenger air transportation with other Defendants.  CAC ¶317.

- That Continental "illegally coordinated carrier fares with other carriers." CAC ¶173.

- That Continental's alliances and other agreements with its competitors provide it with access to the commercially sensitive information of its competitors, and that antitrust regulators have expressed concern about these alliances.  CAC ¶¶56, 60-61.

- That the United States Department of Justice ("DOJ") had objected to Continental's effort to jump from the SkyTeam alliance to the Star Alliance.  CAC ¶¶59, 64.

- That market insiders have described the airline industry as one in which there is a culture of price-fixing.  CAC ¶105.

- That Continental is a member of International Airline Transport Association ("IATA"), the express goal of which is to assist its members to "achieve an adequate level of profitability" and the CEO of which instructed the membership to limit seating capacity during the Class Period in order to achieve that result.  CAC ¶¶67, 69-70.

- That Continental imposed fuel surcharges for Hong Kong traffic that were identical to those of its long haul competitors during the Class Period, and that these surcharges were not static—they fluctuated, and did so in lockstep.  CAC ¶203.

- That Continental is a member of the Hong Kong Board of Airline Representatives ("BAR"), an airline organization that uploaded a new antitrust compliance policy to its website shortly after the first of the complaints in this multidistrict litigation was filed.  CAC ¶¶77, 205.

- That Hong Kong did not have an effective antitrust law during most of the Class Period.  CAC ¶76.

- That a participant in the alleged conspiracy, Cathay Pacific Airways, Ltd., has already apologized for anticompetitive conduct on routes between the United States and Hong Kong in the related market for air cargo.  CAC ¶¶275-76.

- That a November 1, 2004 e-mail reflects that Continental told Defendant Japan Airlines International Co., Ltd. ("JAL") that it had imposed a surcharge for Transpacific flights and the amount of the surcharge.  CAC ¶218.

- That Continental and other Defendants own ATPCO, an organization that gathers and disseminates the fare information of competing airlines.  CAC ¶218.

- That a May 31, 2005 e-mail from JAL's Noboru Hirai (sometimes identified in the CAC as Hirai Noboru) ("Hirai e-mail") reflected a meeting between JAL and non-defendant named co-conspirator Northwest Airlines, Inc. ("Northwest") where Northwest expressed interest in a surcharge, but was "watch[ing] the trend in other American companies."  This same e-mail also referenced fare coordination between JAL and Northwest, with a final decision to be "made after CO [Continental]/JL [JAL] price coordination."  The e-mail concluded: "[t]he environment is such that continued price increases will be desired."  CAC ¶¶174, 233.

At the hearing held on November 13, 2009, the Court and counsel for Continental discussed the "e-mails" cited above.  Transcript of Hearing of November 13, 2009 at 6:19, 8:6, 8:17, 8:22. 8:23, 9:17, 10:18, 11:3 ("Tr.").  The Court denied the motion to dismiss, saying that the e-mail evidence, in conjunction with all of the other allegations, raised a plausible claim.  *Id.*, 7:16-8:1. Contrary to Continental's arguments, neither the hearing transcript  nor the order denying Continental's motion to dismiss support Continental's assertion that the CAC satisfied the requirements of  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)  "by the narrowest of margins."  "Defendant Continental Airlines, Inc's Notice of Motion and Motion To Dismiss Consolidated Amended Complaint; Memorandum of Points And Authorities In Support Thereof," pp. 4-7 (Aug. 15, 2011) (Dkt. No. 520) ("Continental Br.").  The Court invited Continental to engage in discovery and file a summary judgment motion, if it wished, but noted that any such

1   motion would likely be confronted with an affidavit filed pursuant to Fed. R. Civ. P. 56(f) seeking

2   to delay the motion until the completion of discovery.  *Tr. at* 11:4-19.

3       In February of 2010, Defendants made a motion to stay discovery in light of JAL's filing

4   for bankruptcy, a motion that Continental eventually joined. Dkt. Nos. 344, 370.  The parties

5   agreed that Defendants could defer their responses and objections to Plaintiffs' discovery requests

6   until 15 days after the Court ruled on the stay Motion. *See* Dkt. No. 436.  The Court denied the

7   stay at the November 1, 2010 hearing on the motions to dismiss the CAC.  *TP*, 2011 WL 1753738

8   at *1 n. 1.  Neither Continental nor any other defendant, other than Japan Air Lines, has made any

9   meaningful production of documents to Plaintiffs.

10      As noted above, the Court granted in part and denied in part the motions to dismiss on

11  May 9, 2011 and gave the Plaintiffs the opportunity to replead.  In the FAC, Plaintiffs limited

12  their class as follows in light of the Court's ruling on the FTAIA:

> All persons and entities that purchased passenger air transportation *in the United States* at rates that were not immunized by the United States Department of Transportation *for single or multi-segment travel between the United States and Asia or Oceania* from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the present.  Excluded from the class are purchases of passenger air transportation directly between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc..  Also excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

20  FAC ¶391 (emphases added). All of the allegations against Continental contained in the CAC are

21  found in the FAC. *Id.*, ¶¶25, 50-51, 55, 164-65, 193, 195, 208, 221 & Appx. A. Additional

22  fraudulent concealment claims were made that referenced Continental. *Id.*, ¶¶288, 299, 309.

23                    **III.   ARGUMENT**

24      A fundamental flaw in Continental's motion is its disregard for procedure.  This Court has

25  already held that Plaintiffs have stated a claim against Continental and that, having done so, they

26  are entitled to go forward with discovery concerning that claim.  Neither Continental nor any

27  other Defendant (aside from JAL) has made any meaningful production of documents of

28  information to Plaintiffs, yet Continental is making what is essentially a motion for summary

4

1    judgment by arguing that the Court should dismiss all claims against it with prejudice based upon

2    its view of the allegations of the FAC and without regard to what discovery may show.  This

3    argument has already been made--and lost--by Continental.  There is no reason for the Court to

4    reconsider its prior ruling in this regard.

5          Continental contends that the Court's May 9, 2011 ruling now entitles it to seek dismissal.

6    That is simply not the case.  Continental argues that: (a) the Hirai e-mail deals solely with

7    Micronesian-Japanese traffic and does not involve domestic injury; (b) the FAC fails to establish

8    a violation of Section 1 of the Sherman Act (15 U.S.C. §1) because the Hirai e-mail deals with air

9    passenger traffic between Micronesia and Japan; and (c) the FAC presents "weak" evidence of a

10    conspiracy in light of the guilty plea of All Nippon Airways, Inc. ("ANA") and Asiana Airlines,

11    Inc. ("Asiana").  Continental Br., pp. 4-7.  It further contends that the other allegations against it

12    are too thin to pass muster. *Id.*, pp. 7-8.  It also contends that it will rely on the Hirai e-mail once

13    it is produced. *Id.*, pp.8-9.  As for the third point, Plaintiffs have no objection to Continental

14    relying on the Hirai e-mail once it is produced.

15          The second point ignores the precept that the Court has to view the FAC as a whole and

16    not dissect it into its constituent parts.  *See TP*, 2011 WL 1753738 at *10 (citing *Continental Ore*

17    *Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)).  Indeed, the codesharing

18    activities of Continental, its participation in IATA and the Hong Kong BAR, which are accused

19    of explicitly setting fuel surcharges, Continental's involvement in the information-sharing efforts

20    of ATPCO, its imposition of identical fuel surcharges along with other carriers and the November

21    1, 2004 JAL e-mail cited above, when viewed as a whole, amply support the conclusion that a

22    plausible conspiracy has been alleged, even if the Hirai e-mail is not considered.  The Court's

23    March 9 opinion relied on these types of evidence in determining that the CAC alleged a

24    plausible conspiracy.  *See TP*, 2011 WL 1753738 at *11-*12 (discussing codesharing alliances

25    and trade associations), *13 (describing November 1, 2004 e-mail and use of ATPCO, and

26    identical surcharges for United States-Hong Kong traffic as examples of plausible allegations of

27    fuel surcharge coordination).

28

5

1    As noted above, Continental also relies on the argument that the claims against it should

2  be dismissed because no governmental regulator has charged it with wrongdoing in connection

3  with Transpacific air traffic and that ANA and Asiana's guilty pleas do not mention it.  This is a

4  *non sequitur*.  For example, there are many antitrust cases with major verdicts or settlements

5  where the DOJ initiated no prosecutions or prosecuted claims that were narrower than those

6  successfully pursued in parallel civil litigation.[2]

7    As for the Hirai e-mail, it is important to start with what Continental's Transpacific

8  operations actually were during the Class Period.  At pages 5 and 7 of its 2009 Form 10-K filed

9  with the Securities & Exchange Commission (attached as Appendix A),[3] Continental described

10  these operations as follows:

11    We are the world's fifth largest airline as measured by the number of scheduled
12    miles flown by revenue passengers in 2009. Including our wholly-owned
    subsidiary, Continental Micronesia, Inc. ("CMI"), and regional flights operated
13    on our behalf under capacity purchase agreements with other carriers, we operate
    more than 2,000 daily departures. As of December 31, 2009, we flew to 118
14    domestic and 124 international destinations and offered additional connecting
    service through alliances with domestic and foreign carriers. We directly served
15    28 Trans-Atlantic destinations, 11 Canadian cities, seven South American cities
    and four Trans-Pacific destinations from the U.S. mainland as of December 31,
16    2009. In addition, we provide service to more destinations in Mexico and Central
    America than any other U.S. airline, serving 39 cities. Through our Guam hub,

17
18  [2] *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004), *cert. denied sub nom.*
    *PPG Indus., Inc. v. Nelson*, 544 U.S. 948 (2005) (DOJ investigation led to no indictments, but
19  court allowed claims of price-fixing of flat glass to go to trial; $120 million in total settlements
    were achieved); *In re High Fructose Corn Syrup Antitrust Litig.*, 259 F.3d 651 (7th Cir. 2002),
    *cert. denied sub nom. Archers-Daniels-Midland Co. v. Dellwood Farms, Inc.*, 537 U.S. 1188
20  (2003), *on remand*, 261 F.Supp.2d 1017 (C.D. Ill. 2003) (DOJ investigation led to no indictments,
    but courts allowed claims of price-fixing conspiracy with respect to high fructose corn syrup to go
21  to trial; $530 million in total settlements were achieved); *In re Linerboard Antitrust Litig.*, 296
    F.Supp.2d 568 (E.D. Pa. 2003) and 321 F.Supp.2d 619 (E.D. Pa. 2004) (nearly $200 million in
22  settlements achieved in a case where FTC sued only one of the twelve defendants named in the
    class action); *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2000 WL 1475705 at *18
23  (D.D.C,. May 9, 2000) (denying defendants' motion to sever based on the terms of their
    negotiated criminal pleas because "criminal guilty please do not establish boundaries for this civil
24  litigation"; the class obtained a jury verdict against certain choline chloride defendants that DOJ
    never pursued, ultimately settling for $53 million); *In re Plastics Additives Antitrust Litig.*, Civ.
25  No. 03-2038 (E.D. Pa.) (settlements achieved in a case where the DOJ investigation resulted in no
    indictments).

26  [3] The Court may take judicial notice of this filing. *Plevy v. Haggerty*, 38 F.Supp.2d 816, 821
27  (C.D. Cal. 1998); *Karpov v. Insight Enterprises, Inc.*, No. CV 09-856-PHX-SRB, 2010 WL
    2105448 at *2 (D. Ariz. April 30, 2010); *In re Network Assocs., Inc. II Securities Litig.*, No. C
28  00-CV-4849, 2003 WL 240-51280 at *1 n. 3 (N.D. Cal. March 23, 2003).

1
2

CMI provides extensive service in the western Pacific, including service to more
Japanese cities than any other U.S. carrier.

3

****

4

5

6

7

From its hub operations based on the island of Guam, as of December 31, 2009,
CMI provided service to nine cities in Japan, more than any other U.S. carrier, as
well as other Pacific rim destinations, including Manila, Philippines
and Cairns, Australia. CMI is the principal air carrier in the Micronesian Islands,
where it pioneered scheduled air service in 1968. CMI's route system is linked to
the U.S. mainland through Tokyo and Honolulu, each of which CMI
serves non-stop from Guam. CMI began service from Guam and Honolulu to
Nadi, Fiji in December 2009.

8

Thus, it is clear that Continental's Micronesian operations are based in Guam--a United States

9

territory-- and that Guam serves as a "hub" for its operations to the Western Pacific (in addition to

10

Continental's direct Transpacific flights from the United States mainland).  Also, clearly, one

11

could buy a Continental Transpacific passenger ticket in Honolulu, Hawaii or in the mainland

12

United States and fly via Micronesia (*i.e.*, Continental's Guam hub) to a Western Pacific

13

destination through Continental's wholly-owned subsidiary, CMI.  To the extent Continental

14

conspired with other Defendants to fix the base price of, or the fuel surcharge associated with,

15

that ticket, it is liable to the purchaser under Section 1 of the Sherman Act.[4]

16

Continental in its motion ignores what is domestic, as opposed to foreign, injury within the

17

meaning of the FTAIA.  That statute, by its terms, *does not apply* to federal antitrust claims based

18

on *domestic injury, a fact that numerous courts have recognized.  See F. Hoffman-LaRoche Ltd.*

19

*v. Empagran, S.A.*, 542 U.S. 155, 165 (2004) ("our courts have long held that application of our

20

antitrust laws to foreign anticompetitive conduct is nonetheless reasonable, and hence consistent

21

22

23

24

25

26

27

28

[4] Continental makes much of the fact that Plaintiffs have not raised claims under Section 3 of the
Sherman Act (15 U.S.C §3), which extends the provisions of Section 1 to United States
territories. But that section does not preclude civil claims under Section 1 involving an
international conspiracy that encompasses the United States and its territories especially where, as
Plaintiffs will show here, the evidence will show here, the decision by Continental to participate in the
claimed conspiracy emanated from or was ratified by management in the United States.  In fact,
Section 3 is more expansive than Section 1, as it arises from Article IV, Sec. 3 of the
Constitution, as opposed to the narrower Commerce Clause basis of Section 1.  *See Norman's On
The Waterfront, Inc. v. Wheatley*, 317 F.Supp. 247 (D.V.I., 1970) ("[u]nlike § 1 of the Sherman
Act, which applies to commerce among the states and with foreign nations, § 3 applies with
respect to local commerce in a territory as well as commerce having effect across the borders of
the territory.").  In any event, to the extent that a Section 3 claim needs to be advanced here,
Plaintiffs request additional leave of Court to make that modification to the FAC.

7

1   with principles of prescriptive comity, insofar as they reflect a legislative effort to redress

2   domestic antitrust injury that foreign anticompetitive conduct has caused"); *Dee-K Enters. Inc. v.*

3   *Heveafil Sendirian Berhad*, 299 F.3d 281, 292 (4th Cir. 2002) ("in every case involving direct

4   sales to the United States in which our antitrust laws condemn an activity *per se*, however foreign

5   the conduct, United States courts would have jurisdiction without any showing whatsoever of an

6   effect on United States commerce"); *In re Rubber Chems. Antitrust Litig*., 504 F.Supp.2d 777,

7   790 (N.D. Cal. 2007) ("[p]laintiffs may proceed with their Sherman Act claims to the extent they

8   seek to recover damages for domestic injury, *i.e*., the purchase of rubber chemicals at allegedly

9   inflated prices in the domestic market or for use within the United States" ); *In re TFT-LCD (Flat*

10  *Panel) Antitrust Litig*., No. M 07-1827 SI, C 09-55609 SI, 2010 WL 2629728 at *3 (N.D. Cal.

11  June 29, 2010) ("[t]he Court finds that, as reframed in plaintiffs' opposition, plaintiffs' claims are

12  not barred by the FTAIA because plaintiffs are seeking damages only for domestic purchases and

13  purchases of products directly imported by defendants or their co-conspirators into the United

14  States").  In all of these cases, "domestic injury" was equated with *purchases in the United States*.

15  It is Plaintiffs' position that purchases within the United States for single or multi-segment travel

16  to Asia or Oceania establish domestic injury not within the ambit of the FTAIA and this position

17  is consistent with the Court's May 9 order.

18              **IV.    CONCLUSION**

19          For all the foregoing reasons, Continental's motion to dismiss should be denied.

20  Dated:  August 29, 2011              Respectfully submitted,

21                                       By:  */s/ Michael P. Lehmann*
                                         Michael P. Lehmann
22                                       Christopher L. Lebsock
                                         **HAUSFELD LLP**
23                                       44 Montgomery Street, Suite 3400
                                         San Francisco, CA  94104
24                                       Telephone:  (415) 633-1908
                                         Facsimile:  (415) 358-4980
25
                                         Michael D. Hausfeld
26                                       **HAUSFELD LLP**
                                         1700 K Street, NW, Suite 650
27                                       Washington, DC 20006
                                         Telephone:  (202) 540-7200
28                                       Facsimile:   (202) 540-7201

8

1

By: /s/ Steven N. Williams
Joseph W. Cotchett

2

Niall P. McCarthy
Paul N. "Pete" McCloskey

3

Steven N. Williams
Nanci E. Nishimura

4

Niki B. Okcu
Eric J. Buescher

5

**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center

6

840 Malcolm Road, Suite 200
Burlingame, CA 94010

7

Telephone:  650-697-6000
 Facsimile:    650-697-0577

8

***Interim Class Counsel for the Putative Class***

9

10

Daniel C. Girard
Elizabeth C. Pritzker

11

GIRARD GIBBS LLP
601 California Street, Suite 1400

12

San Francisco, CA 94108
Tel: 415-981-4800

13

Fax: 415-981-4846
dcg@girardgibbs.com

14

ecp@girardgibbs.com

15

Walter J. Lack
Elizabeth L. Crooke

16

Richard P. Kinnan
ENGSTROM, LIPSCOMB & LACK

17

10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067

18

Tel:  310-552-3800
Fax: 310-552-9434

19

wlack@elllaw.com
bcrooke@elllaw.com

20

rkinnan@elllaw.com

21

Guido Saveri
Richard Alexander Saveri

22

Cadio R. Zirpoli
SAVERI & SAVERI, INC.

23

706 Sansome Street
San Francisco, CA 94111

24

Tel:  415-217-6810
Fax: 415-217-6813

25

guido@saveri.com
rick@saveri.com

26

cadio@saveri.com

27

28

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Garrett D. Blanchfield, Jr.
Mark Reinhardt
REINHARDT WENDORF & BLANCHFIELD
East 1250 First National Bank Building
322 Minnesota Street
St. Paul, MN 55101
Tel: 651-287-2100
Fax: 651-287-2103
g.blanchfield@rwblawfirm.com
m.reinhardt@rwblawfirm.com

Thomas Girardi
Graham B.LippSmith
GIRARDI & KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554
tgirardi@girardikeese.com
glippsmith@girardikeese.com

Bruce L. Simon
Will Newsom
PEARSON SIMON WARSHAW & PENNY
44 Montgomery St, Suite 2450
San Francisco, CA 94104
Tel:  415-433-9000
Fax: 415-433-9008
bsimon@pswplaw.com
wnewsom@pswplaw.com

Jack Wing Lee
Brad Yamauchi
Sean Tamuro-Sato
Derek Howard
MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel:  415-788-9000
Fax: 415-398-3887
jlee@minamitamaki.com
byamauchi@minamitamaki.com
seant@minamitamaki.com
dhoward@minamitamaki.com

PLAINTIFFS' OPPOSITION TO CONTINENTAL's MOTION TO DISMISS, CASE NO. 3:07-cv-05634 CRB

Allan Steyer
D. Scott Macrae
Jayne A. Peeters
Dana Andreoli
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, 3d Floor
San Francisco, CA 94111
Tel: 415-421-3400
Fax: 415-421-2234
asteyer@steyerlaw.com
smacrae@steyerlaw.com
jpeeters@steyerlaw.com
dandreoli@steyerlaw.com

Brian S. Kabateck
Richard Kellner
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Tel:  213-217-5000
Fax:  213-217-5010
bsk@kbklawyers.com
rlk@kbklawyers.com

Rober Eisler
GRANT & EISENHOFER P.A.
1201 N. Market Street
Suite 2100
Wilmington, DE 19801
Tel:  302-622-7030
Fax:  302-622-7100
reisler@gelaw.com

Steven A. Kanner
Billy London
FREED, KANNER, LONDON
& MILLEN, LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Tel: 224-632-4500
Fax: 224-632-4519
skanner@fklmlaw.com
blondon@fklmlaw.com

Craig C. Corbitt
ZELLE HOFMANN VOELBEL
& MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Tel:  415-693-0700
Fax: 415-693-0770
ccorbitt@zelle.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeff S. Westerman
MILBERG LLP
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Tel:  213-617-1200
Fax: 213-617-1975
jwesterman@milberg.com

Peter G.A. Safirstein
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119-0165
Tel: 212-594-5300
Fax: 212-868-1229
psafirstein@milberg.com

Robert Kaplan
Laurence D. King
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street. Suite 400
San Francisco, CA 94104
Tel:  415-772-4700
Fax: 415-772-4707
rkaplan@kaplanfox.com
lking@kaplanfox.com

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel:  612-339-6900
Fax: 612-339-0981
wjbruckner@locklaw.com

Michael Buchman
J. Douglas Richards
POMERANTZ HAUDEK BLOCK
    GROSSMAN & GROSS
100 Park Avenue
New York, NY 10019
Tel: 212-661-1100
Fax: 212-661-8665
mbuchman@pomlaw.com
drichards@pomlaw.com

Eugene A. Spector
SPECTOR ROSEMAN
KODROFF & WILLIS PC
1818 Market Street, 25th Floor
Philadelphia, PA 19103
Tel:  215-496-0300
Fax: 215-496-6611
espector@srkw-law.com

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jennie Lee Anderson
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel: 415-986-1400
Fax: 415-986-1474
jennie@andrusanderson.com

***Additional Counsel for Plaintiffs***

PLAINTIFFS' OPPOSITION TO CONTINENTAL's MOTION TO DISMISS, CASE NO. 3:07-cv-05634 CRB