1   Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
2   Jon T. King (205073)
**HAUSFELD LLP**
3   44 Montgomery Street, Suite 3400
San Francisco, CA 94104
4   Telephone: (415) 633-1908
Facsimile: (415) 358-4980
5   mlehmann@hausfeldllp.com
clebsock@hausfeldllp.com
6   jking@hausfeldllp.com

7   Michael D. Hausfeld
**HAUSFELD LLP**
8   1700 K Street, NW, Suite 650
Washington, DC 20006
9   Telephone: (202) 540-7200
Facsimile: (202) 540-7201
10   mhausfeld@hausfeldllp.com

11   Joseph W. Cotchett (36324)
Steven N. Williams (175489)
12   **COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
13   840 Malcolm Road, Suite 200
Burlingame, CA 94010
14   Telephone: (650) 697-6000
Facsimile: (650) 697-0577
15   jcotchett@cpmlegal.com
swilliams@cpmlegal.com
16

*Interim Class Counsel For The Putative Class*
17

See signature page for complete list of counsel
18

**UNITED STATES DISTRICT COURT**
19

**NORTHERN DISTRICT OF CALIFORNIA**
20

**SAN FRANCISCO DIVISION**
21

| | |
|---|---|
| 22  IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST 23  LITIGATION | **CASE NO. 07-CV-5634-CRB (DMR)** <br><br> MDL No. 1913 |
| 24 | CLASS ACTION |
| 25  **This Document Relates to:** **ALL ACTIONS** 26 27 | **STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |

28

# I.     PRODUCTION OF ELECTRONIC INFORMATION

A.  Definitions

a)  "Document(s)" means electronically stored information (ESI)
existing in any medium from which information can be obtained or
translated into reasonably usable form, including SMSs and text
messages and similar information which may be located on mobile
phones or personal digital assistants.

b)  "Native File(s)" means ESI in the file type for (or of) the
application in which such ESI is normally created, viewed and/or
modified.

c)  "Metadata" means: (i) information embedded in a Native File that
is not ordinarily viewable or printable from the application that
generated, edited, or modified such Native File; and (ii) information
generated automatically by the operation of a computer or other
information technology system when a Native File is created,
modified, transmitted, deleted or otherwise manipulated by a user
of such system.

d)  "Static Image(s)" means a representation of ESI produced by
converting a Native File into a standard image format capable of
being viewed and printed on standard computer systems.  A Tagged
Image File Format (TIFF) image is an example of a Static Image.

e)  "Load/Unitization file" means an electronic file containing
information identifying a set of paper-scanned images or processed
ESI and indicating where individual pages or files belong together

-1-

STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY
STORED INFORMATION;  Case No. 07-cv-05634-CRB

as documents, including attachments, and where each document

begins and ends. A Load/Unitization file will also contain data

relevant to the individual Documents, including extracted and user

created Metadata, coded data, as well as OCR or Extracted Text.

    f) "OCR" means the optical character recognition file which is created

by software used in conjunction with a scanner that is capable of

reading text-based documents and making such documents

searchable using appropriate software.

    g) "Extracted Text" means the text extracted from a Native File and

includes all header, footer and document body information.

B. Form and Format for the Production of ESI and Paper Documents Converted to Electronic Form

   1. Applicability

This stipulation does not constitute a waiver, by any party, of any objection

that the production of particular ESI is unduly burdensome or that any ESI is

not reasonably accessible. This stipulation does not apply to any other Order

of Court or other agreement between the producing party and the receiving

party to produce any documents previously produced in response to a subpoena

or document request outside of this litigation. Any document produced in

response to such an agreement or Order will be in the format and contain the

metadata that the original production contained.

   2. Electronic Production of Paper Documents

The parties will produce any paper Documents, including spreadsheets

maintained only in paper form, that have been scanned or otherwise converted

into electronic form as of the time the documents are first produced in this

litigation. The form of production shall be:

-2-

a)  TIFF images, consistent with the specifications in Section I.B.3.b.;

b)  The appropriate Load/Unitization files in accordance with Exhibit "A" and consistent with the specifications in Section I.B.6.; and

c)  Searchable OCR text of scanned paper Documents created by the producing party, if any, consistent with the specifications in Section I.B.5.

d)  This Stipulation creates no obligation upon the producing party to convert paper documents into electronic form.

e)  If, however, the producing party has converted paper documents into electronic form as of the time the documents are first produced in this litigation, the producing party shall produce those documents in accordance with this Stipulation.

3.  Native Files to be Produced as Static Images

a)  Except as otherwise stated below, or by Order of the Court, Native Files will be produced to the requesting party as Static Images together with Load/Unitization files specified below.

b)  All Static Images will be produced as single page Black & White, Group 4 TIFF (.TIF or .TIFF) files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size; provided, however, if a color image is produced in black and white, the receiving party may request the producing party to produce the image in color, if necessary to ascertain the content of the document.

-3-

c) All Static Image file names shall match the Bates number assigned to the image.

4. Production of Native Files

a) The parties agree to produce Native Files of spreadsheet application files (e.g., MS Excel), presentation application files (e.g. MS PowerPoint), and multimedia audio/video files (e.g., .wav, .mpeg, .avi), subject to the right of the producing party to object to the native production of files where such production would result in the disclosure of information that is protected from disclosure by the attorney-client privilege or the work product doctrine and it is impossible to redact or otherwise produce the native production while maintaining such privilege or protection.  The parties shall meet and confer with respect to the form of production for audio and video files in non-standard formats, or any files included in this sub-paragraph for which a claim of privilege exists.

b) The parties agree to meet and confer informally regarding the production of database application files (e.g., MS Access, SQL, SAP) to determine the most reasonable form of production based on the specific circumstances at hand.  Notwithstanding the foregoing, a party may elect to produce Native Files of portable database application files (e.g., MS-Access) without the need to meet and confer regarding the form of production.  However, in the event a party makes this election responsive

-4-

STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION;  Case No. 07-cv-05634-CRB

data contained in such database application files should be produced in a report or export of such data to MS-Excel spreadsheets. Prior to generating such reports the producing party will explain the categories of data maintained in each database the categories that it intends and does not intend to produce, and the format in which the reports will be generated. The producing party will provide a sample page of each report to be produced in advance of its actual production. During the meet and confer process, the producing party shall provide sufficient information concerning the available database fields.

c) A receiving party may request that the producing party produce the Native File corresponding to a produced Static Image. The producing party does not hereby waive any objections to producing a Native File in response to such a request. The request for production of any specific Native Files(s) shall include the Bates numbers of the TIFF documents to identify the corresponding Native File.

d) Any produced Native File will include the Bates number of the first page of the Bates range that corresponds to the TIFF image, followed by a carat delimiter, which shall be appended as a prefix to the file name.

e) Through the pendency of the action, the producing party should exercise reasonable, good faith efforts to maintain all preserved and collected Native Files in a manner that does not materially

-5-

alter or modify the file or the Metadata.

    f)   No party may attach to any pleading or any correspondence addressed to the Court, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the document.

5.   Production of Searchable Text

    a)   ESI shall be produced with multi-page searchable Extracted Text. For ESI from which text cannot be extracted, OCR will be produced instead, but only to the extent the producing party has created OCR as of the time the documents are first produced in this litigation, consistent with Section B (1) of this agreement.

    b)   Any such Extracted Text or OCR will be produced on a document level as .TXT files, with the Text filename matching the Bates number applied to the first page of the corresponding image file followed by .TXT.  Text files will be located in a directory named "TEXT" that is separate from the TIFF image. Text files should be searchable for all text, including text in all foreign languages present in the subject ESI.  Foreign characters shall be accurately represented and included.  Text files containing foreign, non-English, must be converted to 8-bit Unicode Transformation Format (UTF-8) format by the producing party prior to production. Documents which in their original form include multiple languages

-6-

shall be produced in such form, as they are kept in the normal

course of business.

6.  Production of Load/Unitization Files

a)  There will be two Load/Unitization files accompanying all

productions of ESI.  One will be a Metadata import file, in .dat

format, that contains the agreed- upon Metadata fields in UTF-8

encoding.  The second data file will be a cross-reference file that

contains the corresponding image information [IDX].  The

acceptable formats for the cross-reference files are .log, [.dii], .opt,

.lfp.  Image load files should indicate page breaks.  A path to the

corresponding .TXT file shall be included as a field in the Metadata

import file.

b)  The appropriate Metadata import file will contain the Metadata

fields detailed and described in Exhibit A to this stipulation and

incorporated herein by reference, associated with each electronic

document (or their equivalents), including the body of the

document, to the extent the fields exist as electronic Metadata

associated with the original electronic documents or are created as

part of the electronic data discovery process; provided, however,

that any manually coded fields by the producing party will not be

included as part of the Metadata import file.  The parties also agree

that any party-specific exceptions to the required fields in Exhibit A

will be memorialized in separate side letter agreements.  The

attached list of fields does not create any obligation to create or

manually code fields that are not automatically generated by the

processing of the ESI, or that do not exist as part of the original

Metadata of the document; provided however, the producing party

-7-

must populate the SOURCE and CUSTODIAN fields for all produced ESI, as well as paper Documents converted to electronic form as of the time the documents are first produced in this litigation, regardless of whether these fields would be generated during typical processing of such documents.  A producing party shall have no obligation to provide FILEPATH information for documents that a receiving party specifically requested and the producing party collected by document type.

c)  Any Native Files produced will be accompanied with a Metadata import file that shall contain (i) the full directory path and file names of the Native File(s) as contained in the produced media and (ii) a uniform hash calculation field.

7.  Processing Specifications

a)  The preferred time zone of processing ESI is GMT.  Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original Metadata of that ESI.  To the extent that a party has already processed ESI using a different time zone, the producing party will note the time zone used in its processing.  Parties shall consistently produce all ESI processed using the same time zone.

b)  When processing ESI for review and for production in TIFF format, the producing party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments.

8.  General

a)  The producing party shall use reasonable efforts to avoid producing system and application files.

-8-

STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION;  Case No. 07-cv-05634-CRB

b) If the producing party redacts all or any portion of a Static Image, redactions not clearly indicated on the Static Image shall be noted in a user-generated field specified in Exhibit "A", which the producing party shall provide in the appropriate Load/Unitization file.

c) The parties may de-duplicate identical ESI vertically, by custodian, or horizontally (i.e., globally).  If a producing party elects to de-duplicate horizontally, all custodians who were in possession of a de-duplicated Document must be identified in the CUSTODIAN_OTHER Metadata field specified in Exhibit "A", and all BCC recipients whose names would have been included in the BCC Metadata field but are excluded as the result of horizontal/global de-duplication, must be identified in the BCC_OTHER Metadata field specified in Exhibit "A".  In the event of a rolling production of documents or other ESI by a party, the producing party may provide a load file with the required "CUSTODIAN OTHER" and "BCC_OTHER" fields, consistent with this provision, within a reasonable amount of time after all documents have been produced.

d) Bates numbers and any confidentiality designation should be electronically branded on each produced TIFF image.  Any accidental or inadvertent failure to brand an image or series of images shall not be deemed an automatic failure to designate, but

-9-

STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION;  Case No. 07-cv-05634-CRB

shall be interpreted consistent with the Protective Order entered in this case.

## II.   TERM OF AGREEMENT

This Agreement shall continue in full force and effect until further order of the Court or until this litigation is terminated by a final judgment.

**IT IS SO STIPULATED.**

Dated:  February 1, 20122012             Respectfully submitted,

**HAUSFELD, LLP**
Michael D. Hausfeld
Michael P. Lehmann
Christopher Lebsock

By:  */s/ Michael P. Lehmann*
          Michael P. Lehmann
       *Interim Co-Lead Counsel for Plaintiffs*

**COTCHETT, PITRE & McCARTHY, LLP**
Joseph W. Cotchett
Steven N. Williams

By:  */s/ Steven N. Williams*
          Steven N. Williams
       *Interim Co-Lead Counsel for Plaintiffs*

**LATHAM & WATKINS LLP**
William R. Sherman
Ashley Bauer

By:  */s/ William R. Sherman*
          William R. Sherman
*Counsel for Defendant Singapore Airlines Ltd.*

-10-

STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION;  Case No. 07-cv-05634-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FRESHFIELDS BRUCKHAUS DERINGER
US LLP**
Paul L. Yde
Rich Snyder


By: */s/ Paul L. Yde*
_____
        Paul L. Yde
*Counsel for Defendant Continental Airlines, Inc.*

**CONDON & FORSYTH LLP**
Michael J. Holland
Scott Cunningham
Roderick Margo



By: */s/ Michael J. Holland*
_____
        Michael J. Holland
*Counsel for Defendant Air New Zealand*

**LINKLATERS LLP**
James R. Warnot, Jr.
Thomas A. McGrath


By: */s/ James R. Warnot, Jr.*
_____
        James R. Warnot, Jr.
*Counsel for Defendant Société Air France*

**JESSE W. MARKHAM, JR.**


By: */s/ Jesse W. Markham, Jr.*
_____
        Jesse W. Markham, Jr.
*Counsel for Defendant All Nippon Airways*

**CONSTANTINE CANNON LLP**
Douglas E. Rosenthal
Ankur Kapoor
Alysia Solow



By: */s/ Douglas E. Rosenthal*
_____
        Douglas E. Rosenthal
*Counsel for Defendant All Nippon Airways*

-11-
STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY
STORED INFORMATION;  Case No. 07-cv-05634-CRB

**DLA PIPER LLP**
David H. Bamberger
Deana L. Cairo


By:  */s/ David H. Bamberger*
　　　　　　　David H. Bamberger
*Counsel for Defendant Cathay Pacific Airways*

**SQUIRE SANDERS & DEMPSEY, LLP**
James V. Dick


By:  */s/ James V. Dick*
　　　　　　　James V. Dick
*Counsel for Defendant China Airlines*

**KIRKLAND & ELLIS LLP**
Christopher Casamassima


By:  */s/ Christopher Casamassima*
　　　　　　　Christopher Casamassima
*Counsel for Defendant EVA Airways*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Gary A. MacDonald
Anjali B. Patel


By:  */s/ Gary MacDonald*
　　　　　　　Gary MacDonald
*Counsel for Defendant KLM Royal Dutch Airlines*

**MCBREEN & SENIOR**
David A. Senior
Matthew L. Weston


By:  */s/ David A. Senior*
　　　　　　　David A. Senior
*Counsel for Defendant Malaysia Airlines*

-12-
STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY
STORED INFORMATION;  Case No. 07-cv-05634-CRB

1

**BAKER & MILLER PLLC**
W. Todd Miller
Kimberly N. Shaw

2

3

4

By:  */s/ W. Todd Miller*

5

W. Todd Miller
*Counsel for Defendant Qantas Airways*

6

**COVINGTON & BURLING LLP**
Anita Stork
Michael Fanelli

7

8

9

By:  */s/ Anita Stork*

10

Anita Stork
*Counsel for Defendant Philippine Airlines*

11

**CRAVATH, SWAINE & MOORE LLP**
Rowan D. Wilson
Kavita B. Ramakrishnan

12

13

14

By:  */s/ Rowan D. Wilson*

15

Rowan D. Wilson
*Counsel for Defendant Thai Airways International*

16

*Public Company Limited*

17

**HOGAN LOVELLS US LLP**
Robert Hawk
Megan Dixon

18

19

20

By:  */s/ Robert Hawk*

Robert Hawk

21

*Counsel for Defendant Vietnam Airlines Company*
*Limited*

22

23

**ORDER (Civ. L.R. 7-12)**

24

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

25

26

Dated:  February 7, 2012

27

The Honorable Donna M. Ryu
UNITED STATES MAGISTRATE JUDGE

28

-13-

STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY
STORED INFORMATION;  Case No. 07-cv-05634-CRB

1

## **GENERAL ORDER 45 ATTESTATION**

2

3        I, Steven N. Williams, hereby attest, pursuant to N.D. Cal. General Order No. 45, that

4    concurrence to the filing of this document has been obtained from each signatory hereto.

5                                                              */s/ Steven N. Williams*
                                                          STEVEN N. WILLIAMS
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                    -14-
STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY
STORED INFORMATION;  Case No. 07-cv-05634-CRB

EXHIBIT A

**Metadata Fields for Production**

NOTE: Metadata Field names may vary depending on the application which generate them.  For example, Microsoft Outlook creates different Metadata Field names than does Lotus Notes.  Accordingly, the chart below describes the Metadata Fields in generic, commonly used terms which the Producing Party is to adapt to the specific types of ESI it is producing, to the extent such Metadata Fields exist associated with the original electronic documents or are automatically generated as part of the electronic data discovery process. Any ambiguity about a Metadata Field is to be discussed with the Receiving Party prior to processing the subject ESI for production.

| | **Field** | **Definition** | **Doc Type** |
|---|---|---|---|
| 1 | SOURCE | Name of party producing the document | All |
| 2 | CUSTODIAN | Name of person from whose files the document is produced | All |
| 3 | BEGBATES | Beginning Bates Number (production number) | All |
| 4 | CUSTODIAN_OTHER | Name of person(s), in addition to the Custodian, from whose files the document would have been produced if it had not been de-duplicated. | All |
| 5 | ENDBATES | End Bates Number (production number) | All |
| 6 | PGCOUNT | Number of pages in the document | All |
| 7 | FILESIZE | File Size | All |
| 8 | FILEPATH | File source path for all electronically collected documents, which includes location, folder name, file name, and file source extension | All |
| 9 | NATIVEFILELINK | For documents provided in native format only | All |
| 10 | TEXTPATH | File path for OCR or Extracted Text files per paragraph (b) above | All |
| 11 | REDACTED | User-generated field that will indicated redactions made to Static Images, if such redactions are not clearly indicated on the Static Image | All |
| 12 | MSGID | Hash or SHA Value for Emails | Email |
| 13 | FROM | Sender | Email |
| 14 | TO | Recipient | Email |

-15-

STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION;  Case No. 07-cv-05634-CRB

| 15 | CC | Additional Recipients | Email |
|---|---|---|---|
| 16 | BCC | Blind Additional Recipients | Email |
| 17 | BCC_OTHER | Blind Additional Recipients who would have shown in the "BCC" field had the originally sent Native email not been de-duplicated. | Email |
| 18 | SUBJECT | Subject line of email | Email |
| 19 | PARENTBATES | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | Email |
| 20 | ATTACHBATES | Bates number from the first page of each attachment | Email |
| 21 | BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent email) | Email |
| 22 | ENDATTACH | Last Bates number of family range(i.e. Bates number of the last page of the last attachment) | Email |
| 23 | ATTACHCOUNT | Number of attachments to an email | Email |
| 24 | ATTACHNAME | Name of each individual attachment | Email |
| 25 | DATESENT (mm/dd/yyyy) | Date Sent | Email |
| 26 | TIMESENT | Time Sent | Email |
| 27 | DATERCVD | Date Received | Email |
| 28 | TIMERCVD | Time Received | Email |
| 29 | CAL_START | Calendar/ Appointment start date and time | Email, Various |
| 30 | Attendees/ Participants | Calendar/Appointment Attendees/Participants/Recipients | Email, Various |
| 31 | HASHVALUE | MD5 Hash or SHA Value for Edocs | Edocs |
| 32 | FILETYPE | Descriptive field created by the vendor processing software (e.g. email, edoc, image, attachment) | All |
| 33 | TITLE | Title field value extracted from the metadata of the native file. | Edocs |
| 34 | AUTHOR | Creator of a document | Edocs |
| 35 | DATECRTD (mm/dd/yyyy) | Creation Date | Edocs |
| 36 | TIMCRTD | Creation Time | Edocs |
| 37 | MODIFIED BY | Last Saved field contained in the metadata of the native file | Edocs |
| 38 | LASTMODD (mm/dd/yyyy) | Last Modified Date | Edocs |
| 39 | LASTMODT | Last Modified Time | Edocs |

-16-