United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | No. C-07-05634 CRB (DMR) |
| This Document Relates to:<br>ALL ACTIONS | **ORDER GRANTING PLAINTIFFS' MOTION TO QUASH [DOCKET NO. 806]** |
| _____/ | |

  Before the court is a joint letter by Plaintiffs and defendant China Airlines, Ltd. ("CAL") in which Plaintiffs move to quash CAL's December 2, 2013 Rule 45 subpoena on third party Airline Tariff Publication Company ("ATPCO"). [Docket No. 806 (Joint Letter).] The court held a hearing on February 13, 2014. For the following reasons, the court hereby GRANTS Plaintiffs' motion to quash the subpoena.

**I. Background**

  This dispute centers around data and information held and controlled by ATPCO, which collects and archives historical pricing data, including the fares and surcharges at issue in this case. In January 2010, Plaintiffs served ATPCO with a subpoena seeking data concerning fare information for transpacific flights by Defendants. After serving the subpoena, Plaintiffs, ATPCO, and Defendants—including CAL—negotiated an agreement whereby ATPCO granted access to Plaintiffs' expert consultant, Robert Taylor, to query the ATPCO database directly for data

responsive to the subpoena. Plaintiffs also offered to collaborate with CAL and the other Defendants on "identifying relevant information, querying it from the system (*i.e.* formulating search strings), and downloading the results pursuant to a cost-sharing agreement." (Joint Letter 1.) According to Plaintiffs, CAL and the other Defendants chose not to collaborate and were instead "invited to retain their own consultant to run searches for their benefit." (Joint Letter 1.) In the meantime, at the behest of Plaintiffs' counsel, Plaintiffs' expert consultants, Robert Taylor and his successor, have accessed the database via a private password provided by ATPCO, formulated queries, and downloaded data at Plaintiffs' cost.

On December 2, 2013, CAL served a subpoena on ATPCO "to obtain the same information that ATPCO made available to Plaintiffs and that Plaintiffs downloaded from ATPCO's servers." (Joint Letter 6.) CAL seeks all documents and electronically stored information ("ESI") (1) obtained, collected or retrieved on behalf of Plaintiffs from any database maintained by ATPCO; (2) that describe, reflect, or constitute each Computer Search conducted on behalf of Plaintiffs of any ATPCO database, including search terms and parameters, whether or not any documents or ESI were obtained, collected, or retrieved by Plaintiffs as a result of such search; and (3) that constitute or reflect communications between any employee of ATPCO and Robert Taylor or any other person or entity acting on behalf of Plaintiffs in this litigation. (Joint Letter Attach. A (Subpoena).) Plaintiffs move to quash CAL's subpoena, asserting that its request violates the parties' 2010 stipulation regarding the scope of expert discovery in this case.

## II. Legal Standards

Under Federal Rule of Civil Procedure 45(c)(3)(A)(iii), a court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). The party asserting an applicable protection bears the initial burden of showing that the protection applies. *See United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985).

Federal Rule of Civil Procedure 29 permits the parties to modify "procedures governing or limiting discovery" by stipulation, unless the stipulation would "interfere with the time set for completing discovery, for hearing a motion, or for trial," or "[u]nless the court orders otherwise."

Fed. R. Civ. P. 29. "Normally a party is bound by his stipulations as a stipulation . . . is akin to a contract." *United States v. Morales*, 684 F.3d 749, 755 (8th Cir. 2012) (citing *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010). "Stipulations are enforceable 'absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement.'" *MDT Corp. v. New York Stock Exch., Inc.*, 858 F. Supp. 1028, 1034 (C.D. Cal. 1994) (quoting *United States v. McGregor*, 529 F.2d 928, 931 (9th Cir. 1976)); *see also CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999) (noting that stipulations serve both judicial economy and the convenience of the parties).

### III. Discussion

Plaintiffs argue that CAL's subpoena violates the expert stipulation entered into by the parties in 2010. (Joint Letter 2.) According to Plaintiffs, their experts "accessed the ATPCO database *after* entry of the expert stipulation." (Joint Letter 4 (emphasis in original).) The expert stipulation sets out the parties' agreement regarding the scope of expert discovery in this case, and Plaintiffs and CAL, along with the other named Defendants, entered into the stipulation. The Honorable Judge Charles R. Breyer entered the proposed order on the stipulation on July 20, 2010. [Docket No. 403 (Expert Stipulation).] The stipulation is in two parts. The first section governs the information and data the parties must produce when proffering an expert. (Expert Stipulation § 1.) The second section addresses the "types of information [that] shall *not* be the subject of discovery." (Expert Stipulation § 2 (emphasis in original).) Included in that list of items not subject to discovery are "notes, drafts, written communications or other records of preliminary work created by, or for, experts or non-testifying expert consultants." (Expert Stipulation § 2(b).)

CAL completely failed to address Plaintiffs' arguments that the expert stipulation applies here. CAL does not refer to the stipulation's requirements, nor is there evidence suggesting that CAL's assent to the expert stipulation with Plaintiffs was uninformed or involuntary. As CAL did not dispute that the expert stipulation applies to CAL's subpoena or otherwise address Plaintiffs' arguments that the expert stipulation is binding, the court deems CAL's silence as a waiver on the

1  subject.[1]  Thus, in considering the parties' dispute over CAL's subpoena, the court applies the
2  language and requirements of the stipulation, while keeping in mind that the party asserting an
3  applicable protection, even one specified by stipulation, bears the initial burden of showing that the
4  protection applies.  *See 22.80 Acres of Land*, 107 F.R.D. at  22; *U.S. E.E.O.C. v. ABM Indus. Inc.*,
5  261 F.R.D. 503, 506 (E.D. Cal. 2009) ("[t]he party who resists discovery has the burden to show that
6  discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its
7  objections.").  CAL's subpoena seeks three different categories of information, which the court
8  addresses in turn below.

### A. Documents and ESI Obtained, Collected, or Retrieved from ATPCO by Plaintiffs' Expert Consultants

The first category of information CAL seeks from ATPCO includes all documents and ESI obtained, collected, or retrieved from any ATPCO database by Robert Taylor or any other person or entity acting on behalf of Plaintiffs. (Subpoena, Attach. A.)  Plaintiffs contend that the information sought represents "records of preliminary work created by, or for," their expert consultants and that the expert stipulation provides that such information shall not be the subject of discovery. (Joint Letter 2.)  At the hearing, Plaintiffs' counsel confirmed that only Plaintiffs' expert consultants have accessed the ATPCO database.  These individuals plainly qualify as experts under the parties' expert stipulation, which applies to "experts or non-testifying expert consultants" (Expert Stipulation § 2(b)), and CAL has not argued that they would not qualify as experts or non-testifying expert consultants.  Thus, the issue is whether the documents and ESI CAL seeks are "records of preliminary work created by, or for" Taylor and his successor.

The court questioned Plaintiffs' counsel at the hearing about the process their expert consultants use to extract information from the ATPCO database.  Counsel explained that ATPCO provided Plaintiffs' expert consultants with a private password and means of accessing the database remotely.  ATPCO estimated that this database contains approximately 2.2 billion records responsive to Plaintiffs' original subpoena, involving data on flights by 26 airlines to 25 countries.

---

[1] CAL's arguments instead focus on work product issues and the parameters of Federal Rule of Civil Procedure 26(b)(3)(A).

4

(Joint Letter 9.) According to Plaintiffs' counsel, the ATPCO database is not a collection of static information, but rather is a series of databases that use code to associate information. In other words, ATPCO is not like a phone directory; users do not simply "look up" data they wish to obtain. In order to extract relevant information, a user needs to formulate queries that relate various pieces of data. Plaintiffs' expert consultants have created search strings to perform their queries and analysis of the data. The information Plaintiffs' expert consultants have gathered from ATPCO's website is a result of this process.

The parties' expert stipulation includes "records of preliminary work created by, or for, experts or non-testifying expert consultants" as a "type[] of information [that] shall *not* be the subject of discovery." (Expert Stipulation 2 (section 2 and 2(b)) (emphasis in original).) The court is satisfied that the actions Plaintiffs' consultants took to develop successful search strings, perform queries on the databases, and then pull the relevant information from the databases qualifies as preliminary work, the records of which would not exist in their current form apart from the expert consultants' efforts. Given that the parties' expert stipulation broadly protects records of preliminary work done by expert consultants, "notwithstanding . . . the Federal Rules of Civil Procedure" (Expert Stipulation § 2(b)), the court finds that the documents and ESI CAL seeks in category 1 of its subpoena are shielded from discovery by this agreement.

### B. Documents and ESI Describing, Reflecting, or Constituting Each Computer Search of ATPCO's Databases by Plaintiffs' Expert Consultants

The second category listed in the subpoena seeks "all documents and ESI describing, reflecting, or constituting each Computer Search of any ATPCO database by Robert Taylor or other person or entity acting on behalf of Plaintiffs in the Litigation, whether or not any documents or ESI were obtained, collected, or retrieved as a result of that search." (Subpoena, Attach. A.) The subpoena defines the term "Computer Search" to mean "any term, character, symbol, word, phrase, or any combination of terms, characters, symbols, words, or phrases, or other defined parameters or instructions in whatever format, used to probe, query, examine, or investigate the contents of a database and/or to obtain, collect, or retrieve any set or subset of data or other information." (Subpoena, Attach. A.)

Plaintiffs again argue that the information sought represents "records of preliminary work created by, or for," their expert consultants, asserting that this provision of the expert stipulation encompasses "the searches done to find the relevant materials, and the documents that they . . . reviewed during the course of educating themselves about what was stored on the ATPCO database, how it could be accessed, what the best query methodologies were to obtain the data, and other preliminary matters . . . ." (Joint Letter 2.) Based on the plain language of the expert stipulation, the court agrees. Pursuant to the parties' expert stipulation, the information sought in the second category of CAL's subpoena is not discoverable.

### C. Documents and ESI Constituting or Reflecting Communications Between Any Employee of ATPCO and Plaintiffs' Expert Consultants

The third and final category of CAL's subpoena is "[a]ll documents and ESI constituting or reflecting communications between any employee of ATPCO and Robert Taylor or any other person or entity acting on behalf of Plaintiffs in this Litigation concerning the documents and ESI sought by Plaintiffs from ATPCO's database." (Subpoena, Attach. A.) The parties' expert stipulation directly addresses this request as it includes "*written communications* . . . created by, or for, experts or non-testifying expert consultants" as "information [that] shall not be the subject to discovery." (Expert Stipulation § 2(b) (emphasis added).) Although neither party directly addressed this part of CAL's subpoena, the court finds that to the extent that those documents reveal communications between ATPCO employees and Plaintiffs' expert consultants, the parties' expert stipulation unambiguously applies. The expert stipulation expressly excludes from discovery these written communications "created by or for" an expert consultant, and here the communications CAL seeks would be created either *by* Plaintiffs' expert consultants or by an ATPCO employee *for* Plaintiffs' expert consultants in responding to an inquiry or concerning some matter involving the expert's work in the ATPCO database.[2]

---

[2] As the court concludes that the expert stipulation bars the discovery of the information sought by CAL's subpoena to ATPCO, it need not reach the parties' arguments regarding Federal Rule of Civil Procedure 26(b)(3)'s work product protections nor Plaintiffs' contention that the subpoena violates Rule 26(b)(4)(D) (party may not discover facts or opinions held by a non-testifying expert who has been retained in anticipation of litigation).

6

**IV. Conclusion**

For the foregoing reasons, the court GRANTS Plaintiffs' motion to quash CAL's subpoena to third party ATPCO in its entirety.

IT IS SO ORDERED.

Dated: February 24, 2014



_____
DONNA M. RYU
United States Magistrate Judge

7