**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE TRANSPACIFIC PASSENGER              No. C-07-05634 CRB (DMR)
     AIR TRANSPORTATION ANTITRUST
12   LITIGATION                                **ORDER GRANTING PLAINTIFFS'**
                                               **MOTION TO COMPEL DEPOSITION**
13   This Document Relates to:                 **[DOCKET NO. 816]**
     ALL ACTIONS
14

15
     _____/
16

17          Before the court is a joint letter by Plaintiffs and Defendant All Nippon Airways Co., Ltd.

18   ("ANA") regarding their dispute about whether Plaintiffs may depose Osamu Shinobe, ANA's Chief

19   Executive Officer.  [Docket No. 816 (Joint Letter).]  The court held a hearing on February 13, 2014.

20   For the reasons stated at the hearing and below, the court hereby denies ANA's motion for a

21   protective order and grants Plaintiffs' motion to compel the deposition of Osamu Shinobe.

22                                      **I. Background**

23          This action arises out of an alleged long-running international conspiracy by Defendant

24   airlines, including ANA.  Plaintiffs claim that Defendants conspired to fix, raise, maintain, and/or

25   stabilize air passenger travel, including associated fuel surcharges, for international flights involving

26   at least one flight segment between the United States and Asia/Oceania in violation of Section 1 of

27   the Sherman Antitrust Act, 15 U.S.C. § 1.  Japan Airlines International Co., Ltd ("JAL") revealed

28   the alleged conspiracy as part of its leniency application with the Department of Justice ("DOJ").

**United States District Court**
For the Northern District of California

1    Plaintiffs now seek to depose ANA's CEO, Osamu Shinobe.  According to Plaintiffs, JAL

2    produced documents and evidence proffers to the DOJ that identify Shinobe as a potential witness to

3    the alleged fuel surcharge conspiracy.  (Joint Letter 1-2.)  Plaintiffs allege that Shinobe, who became

4    ANA's CEO in April 2013, possesses relevant percipient information from before his tenure as

5    CEO, when he held other positions in ANA.  (Joint Letter 5, 7.)

6    ANA objects to producing Shinobe for deposition, explaining that as CEO, he is responsible

7    for running a company of over 13,000 employees.  ANA asserts that this is a particularly

8    challenging time for ANA due to a crisis caused by the grounding of ANA's Boeing 787

9    "Dreamliner" aircraft fleet for three months in 2013.  (Joint Letter 6.)  Prior to being appointed

10   CEO, Shinobe was ANA's Vice President in charge of the acquisition and launch of the aircraft.

11   ANA argues that Shinobe therefore plays a critical role in managing the consequences of that crisis.

12   In addition, ANA argues that Plaintiffs have not demonstrated that Shinobe has "unique, firsthand

13   knowledge that cannot be obtained from other witnesses."  (Joint Letter 7.)  As such, ANA seeks a

14   protective order pursuant to Federal Rule of Civil Procedure 26(c)(1).[1]

15                                   **II. Legal Standard**

16   Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause,

17   issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

18   burden or expense," including by prohibiting a deposition.  Fed. R. Civ. P. 26(c); *see also Serrano v.*

19   *Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012).  "For good cause to exist, the party seeking

20   protection bears the burden of showing specific prejudice or harm will result if no protective order is

21   granted."  *Phillips v. GMC*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002).

22                                   **III. Discussion**

23   As a threshold matter, ANA contends that Plaintiffs—the party requesting discovery—bear

24   the burden of demonstrating that Shinobe's deposition should be allowed.  However, courts have

25

26   ────────────────

         [1]  Neither party moved for relief under a particular Federal Rule of Civil Procedure.
27   Nevertheless, Rule 26(c) is typically the mechanism by which courts limit or deny such deposition
     requests.  *See, e.g., Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2013 WL 3884254, at
28   *1 (N.D. Cal. July 26, 2013); *Apple Inc. v. Samsung Elec. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal.
     2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**United States District Court**
For the Northern District of California

1   rejected burden-shifting for high level business executive or so-called "apex" depositions, holding

2   that "'[t]he burden under the apex principle is supplied by the general rule applicable to a party that

3   seeks to avoid discovery in general.'"  *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW,

4   2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013) (quoting *In Re Nat'l W. Life Ins. Deferred*

5   *Annuities Litig.*, No. 05-CV-1018-AJB WVG, 2011 WL 1304587, at *4 n.2 (S.D. Cal. Apr. 6, 2011)

6   (rejecting argument that party seeking discovery through an apex deposition bears the burden to

7   show good cause for the deposition)); *see also Mansourian v. Bd. of Regents of Univ. of Cal. at*

8   *Davis*, No. CIVS 03-2591 FCD EFB, 2007 WL 4557104, at *3 (E.D. Cal. Dec. 21, 2007) (noting

9   that there is "no binding Ninth Circuit or Supreme Court precedent requiring th[e] result" that the

10  burden be shifted to the party seeking discovery by deposition of a high level business executive).

11  In other words, the party opposing discovery—here, ANA—bears the burden of showing that the

12  deposition should not be allowed.  *See La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285

13  F.R.D. 481, 485 (N.D. Cal. 2012); *see also Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ,

14  2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) ("[a] party seeking to prevent a deposition carries a

15  heavy burden to show why discovery should be denied" (quoting *Affinity Labs of Texas v. Apple,*

16  *Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011))).

17          Nevertheless, courts have "observed that [an apex deposition] creates a tremendous potential

18  for abuse or harassment."  *Apple Inc. v. Samsung Elec. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal.

19  2012) (citing *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL

20  205067, at *3 (N.D. Cal. Jan. 25, 2007); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985));

21  *but see Serrano*, 699 F.3d at 901-02 (rejecting trial court's finding that "'harassment and abuse' are

22  'inherent' in depositions of high-level corporate officers").  Accordingly, given the potential for

23  abuse and harassment, while the "party seeking to prevent a deposition carries a heavy burden to

24  show why discovery should be denied, . . . courts are sometimes willing to protect high-level

25  corporate officers from depositions when the officer has no first hand knowledge of the facts of the

26  case or where the officer's testimony would be repetitive."  *Google Inc. v. Am. Blind & Wallpaper*

27  *Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006)

28  (internal quotation marks and citation omitted).

United States District Court

For the Northern District of California

Thus, "[u]nless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a redundant deposition of [a] highly-placed executive'[.]" *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (citation omitted).  But where a corporate officer has firsthand-knowledge of important, relevant, and material facts the deposition should be allowed.  *First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.*, No. 95-CV-2243 DLJ, 1995 WL 566026, at *2 (N.D. Cal. Sept. 19, 1995).  Indeed, "it is very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'"  *Apple*, 282 F.R.D. at 263 (quoting *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06CV408 WQH(AJB), 2007 WL 1120567, at *7 (S.D. Cal. Apr. 6, 2007)); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (finding district court erred in prohibiting deposition of newspaper publisher when plaintiff suggested possible information publisher might have that others did not, and noting that "[a] strong showing is required before a party will be denied entirely the right to take a deposition.").

As discussed above, for the court to grant a protective order precluding Shinobe's deposition pursuant to Rule 26(c), ANA must demonstrate good cause for its request.  *See Blankenship*, 519 F.2d at 429.  The court finds that ANA has failed to show good cause as to how specific prejudice or harm will result if no protective order is granted.  Although ANA explains that Shinobe is responsible for running a large organization with thousands of employees, Shinobe's position as CEO of ANA does not automatically shield his deposition.  *See Apple*, 282 F.R.D. at 264.  ANA also argues that Shinobe plays a critical role in managing the consequences of the grounding of part of its fleet last year; however, the fact that "the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery."  *WebSideStory, Inc.*, 2007 WL 1120567, at *2 (citing *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)); *see also Powertech*, 2013 WL 3884254, at *1 (citing *Serrano*, 699 F.3d at 901-02 (reiterating that under Rule 26(c), party seeking to avoid a deposition must show harm it would suffer by submitting to the deposition)).

Despite ANA's failure to demonstrate that specific prejudice or harm would result from allowing Shinobe's deposition to go forward, there may be good cause to prevent the deposition if Shinobe has no unique, firsthand knowledge of the relevant facts.  *See In Re Nat'l W. Life Ins.*

4

*Deferred Annuities Litig.*, 2011 WL 1304587, at *1 (collecting cases).  If it appears unlikely that Shinobe has percipient knowledge of material facts, or if there are other witnesses who could testify to the those facts from a similar vantage point, there is more reason to question whether the deposition is being sought for abusive rather than appropriate fact-finding purposes.  However, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."  *In Re Nat'l W. Life Ins. Deferred Annuities Litig.*, 2011 WL 1304587, at *1 (citations omitted); *see also Anderson v. Air W., Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976) (upholding district court's order permitting plaintiffs to depose sole stockholder who "probably had some knowledge" regarding substance of plaintiffs' claims).

Here, Plaintiffs argue that Shinobe has unique percipient knowledge of relevant facts. Plaintiffs allege that years before Shinobe became CEO, he attended several key meetings between ANA and JAL that took place in November and December of 2004 when the companies allegedly began colluding on the introduction of a fuel surcharge for flights between Japan and the United States.  (Joint Letter 2.)  Plaintiffs assert that evidence from JAL's DOJ proffers shows that Shinobe attended at least one of those early meetings, along with Mr. Saito (JAL), another unnamed JAL employee, Katsuya Kato (ANA), and Mr. Inada (ANA):

> At the first meeting, Mr. Saito [JAL] and a representative of JAL's Japan Division [redacted], met with Mr. Yohei Ishida who worked for ANA's Revenue Management Division.  At the second meeting, Mr. Saito and another JAL employee [redacted] met with three individuals from ANA: *Mr. Osamu Shinobe, Managing Director*; Mr. Katsuya Kato [redacted], and Mr. [redacted] Inada, who was in charge of Management Planning.

(Joint Letter 2 (citing JLMDL1913_0009117) (emphasis added).)  Although the above does not provide Kato's position, Plaintiffs state that Kato was the head of ANA's Revenue Management department.  (Joint Letter 2.)  At the hearing, ANA's counsel confirmed that Revenue Management was the department in charge of implementing ANA's fuel surcharge.  At the time of these meetings, Shinobe was the Staff Vice President of the Marketing & Sales Division, a position he held from April 2004-March 2007.  (Joint Letter 2, 7.)  As such, Shinobe was responsible for overall supervision of the Division—including Revenue Management.  (Joint Letter 7 n.7.)

In addition, Plaintiffs highlight that JAL's production to the DOJ included Shinobe's business card bundled together with the cards of other ANA employees whom Plaintiffs allege are

United States District Court
For the Northern District of California

5

United States District Court

For the Northern District of California

1    implicated in the fuel charge conspiracy, including Ishida, Kato, Inada, and another ANA employee,

2    Atsushi Yabuki.  (Joint Letter 3.)  Plaintiffs assert that the collection of business cards suggests that

3    JAL employees met with these ANA employees to discuss the fuel surcharge.

4          ANA argues that the information set forth above does not show that Shinobe has unique,

5    firsthand knowledge about the facts of this case.  (Joint Letter 7-10.)  ANA asserts that previously-

6    deposed ANA and JAL employees, including Ishida (ANA), Yokoyama (ANA), Yabuki (ANA),

7    Nakano (ANA), and Yamasaki (JAL), provided no testimony that identified Shinobe as attending

8    their meetings.  However, the JAL proffers only identify Shinobe as attending the second meeting in

9    November-December 2004, and none of the deponents listed by ANA above were alleged to have

10   attended the second meeting.  Therefore, on the issue of Shinobe's knowledge, the JAL proffer about

11   the second meeting provides adequate evidence to show that Shinobe may have attended that

12   meeting and thus may have information about the fuel surcharge discussions.  *See Powertech*, 2013

13   WL 3884254, at *2 (party seeking the deposition "was not required to prove that [the proposed

14   deponent] certainly has such information; [the party] cannot be certain that he does or does not until

15   it has taken his deposition.").

16         ANA also points to a JAL interrogatory response which ANA asserts did not identify

17   Shinobe as attending any of the JAL-ANA meetings.  (Joint Letter 8.)  This argument is also

18   unpersuasive.  Although ANA asserts that JAL did not identify Shinobe as a participant in any

19   communication, ANA did not provide JAL's actual response for the court's inspection.[2]  (Joint

20   Letter 9.)  Viewing the interrogatory alone, it is broadly worded and does not ask JAL to specifically

21   identify the attendees of these meetings.  Therefore, the court cannot conclude that this response

22   contradicts Plaintiffs' arguments about Shinobe's knowledge or JAL's earlier proffers.

23         Moreover, ANA conceded that at the time of the alleged conspiracy Shinobe was responsible

24   for overall supervision of several departments including Revenue Management—the department in

25   charge of implementing the fuel surcharge.  Thus, Shinobe's position as the supervisor in charge of

26   this department could provide unique, firsthand information relevant to Plaintiffs' claims.  *See*

27

28
_____

      [2]  While the court's standing order regarding discovery generally prohibits exhibits to joint
discovery letters, parties may move for permission to file exhibits.  (*See* Standing Order § 10 ("No . .
. exhibits shall be submitted without prior approval by the court.")  ANA did not seek leave to attach
an exhibit to the instant joint letter.

United States District Court

For the Northern District of California

*Apple*, 282 F.R.D. at 265 (evidence that potential deponent was head of a strategic shift in design at the time accused products were developed persuaded court that sought-after deponent may have engaged in "the type of hands-on action which demonstrates the unique personal knowledge required to compel a deposition of a CEO") (citations omitted).  Shinobe's potential testimony about his role and meetings with competitor JAL may provide Plaintiffs with important information about whether, how, and when the parties came to an agreement.[3]

ANA also objects that Plaintiffs have not exhausted other less intrusive methods of discovery, asserting that a showing of exhaustion is required before a court may allow an apex deposition.  In similar cases, courts have considered "whether the party seeking the deposition has exhausted other less intrusive discovery methods."  *Apple*, 282 F.R.D. at 263 (citations omitted); *see also Groupion*, 2012 WL 359699, at *2; *Affinity Labs*, 2011 WL 1753982, at *15.  The language indicating that "exhaustion" is part of the apex deposition analysis was first used in *WebSideStory*, 2007 WL 1120567, at *2, and has subsequently been adopted by other courts.  *WebSideStory* rested its analysis on two out-of-circuit cases, *Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir. 1979) (granting protective order for executive where plaintiff had sought to depose the president of the company before deposing lower level executives with more knowledge) and *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991) (granting protective order for Vice President of General Motors until plaintiff had first deposed lower level employees and where Vice President claimed he had no direct knowledge of the facts).  Of these two cases, only *Baine* refers to an "exhaustion" requirement, specifically noting that other discovery "avenues have not yet been exhausted *or even pursued.*"  *Id.* at 335 (emphasis added).  And *Salter* only required that lower level employees likely to have "more personal knowledge" of the relevant events be deposed before resorting to the deposition of the defendant's president.  *Salter*, 593 F.2d at 651.  *Salter* acknowledged that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."  *Id.*

---

[3]ANA notes that the DOJ proffers on which Plaintiffs rely to show that Shinobe attended at least one meeting with JAL also states that "Mr. Saito's recollection is that no agreements were reached at these meetings because ANA was opposed to the FSC [fuel surcharge]."  (Joint Letter 9.)  While Saito may have had that recollection, that does not necessarily mean Shinobe will agree, or that Shinobe's testimony about this meeting or others would not be relevant to Plaintiffs' claims.

United States District Court

For the Northern District of California

Requiring that a party exhaust other discovery sources before taking an apex deposition creates a burden-shifting analysis not mandated by the Federal Rules of Civil Procedure or the relevant case law. *WebSideStory* itself only refers to the "exhaustion" of other discovery routes as a consideration, not a requirement. *WebSideStory*, 2007 WL 1120567, at *2. But it is an important consideration nonetheless. The history of the propounding party's efforts to obtain the information through other discovery, or lack of such efforts, can shed considerable light on whether the party is seeking the apex deposition for appropriate purposes. Therefore, to safeguard against abuse, harassment, and undue burden, the court should consider whether and how the party seeking the deposition has attempted to use other less intrusive discovery methods, in addition to whether the deponent possesses unique, firsthand knowledge. *See In re Google Litig.*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (prohibiting apex deposition until party seeking deposition had used other discovery methods to determine whether proposed deponent had unique, firsthand knowledge of case's facts).

While here there is no evidence that Plaintiffs propounded interrogatories or requests for admissions specifically asking about Shinobe's role in this alleged conspiracy, ANA's description of its response to one of Plaintiffs' Requests for Admissions indicates that Plaintiffs did make an attempt to learn more about the November-December 2004 meetings before seeking to depose Shinobe. (*See* Joint Letter 8 (ANA's response to Plaintiff's Request for Admission No. 49[4]).) Plaintiffs also assert that they have deposed all of the other ANA individuals who were principally involved in the ANA-JAL fuel surcharge meetings. Plaintiffs do not appear to have deposed the other employees allegedly at the second meeting with Shinobe,[5] other than Kato. Nevertheless, Plaintiffs have shown that they attempted to get information about the substance of the early meetings between JAL and ANA through depositions of lower level employees. Those employees, by and large, testified that they do not recall the content of those conversations or who attended the JAL-ANA meetings. (Joint Letter 4.) Plaintiffs' efforts to depose lower employees have led them to this point. On balance, given the uncontradicted evidence about Shinobe's former position as the Vice President of the Marketing & Sales Division and the information from the JAL proffers, the

---

[4] ANA did not provide the request itself.

[5] Other attendees referenced in the JAL proffers include Saito (JAL) and Inada (ANA).

8

**United States District Court**
For the Northern District of California

court finds that Shinobe may possess unique, firsthand knowledge relevant to this case, and that Plaintiffs do not seek to depose Shinobe for purposes of abuse, harassment, or undue burden.

Accordingly, the court denies ANA's motion for a protective order and grants Plaintiffs' motion to compel Shinobe's deposition. Plaintiffs may depose Shinobe for no longer than two hours on the subjects discussed at the hearing. *See Google*, 2006 WL 2578277, at *3 (limiting time to three hours and scope to executive's knowledge and involvement in policy change); *Oracle Am., Inc. v. Google, Inc.*, Case No. 10-3561 WHA (DMR) (July 21, 2011 Order Granting in Part and Denying in Park Plaintiff's Request to Take Additional Depositions) (granting two-hour deposition of executive based on his unique knowledge of important negotiations and decision-making). Those subjects include Shinobe's attendance and recollection of any meetings concerning the alleged fuel-charge conspiracy and Shinobe's former position as the Vice President of Marketing & Sales. The deposition shall take place in Japan or by video, or at another location agreed upon by the parties.

### IV. Conclusion

For the foregoing reasons, ANA's motion for a protective order is DENIED, and Plaintiffs' motion to compel is GRANTED.

IT IS SO ORDERED.

Dated: March 6, 2014



DONNA M. RYU
United States Magistrate Judge