Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Pete N. McCloskey (024541)
pmccloskey@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

Michael P. Lehmann (77152)
mlehmann@hausfeldllp.com
Christopher Lebsock (184546)
clebsock@hausfeldllp.com
**HAUSFELD LLP**
44 Montgomery Street
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile:  (415) 358-4980

Michael D. Hausfeld
mhausfeld@hausfeldllp.com
Seth R. Gassman
sgassman@hausfeldllp.com
**HAUSFELD LLP**
1700 K Street, Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** _____ **This Document Relates To:** **All Actions** | Civil Case No. 3:07-CV-05634-CRB MDL 1913 **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL COMPANY, LTD; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY, LTD; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD; AND MALAYSIAN AIRLINE SYSTEMS BERHAD; AND MEMORANDUM IN SUPPORT THEREOF** Hearing Date: Friday, August 8, 2014 Judge:         Hon. Charles R. Breyer Time:          10:00 a.m. Courtroom:   6, 17th Floor |

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Friday, August 8, 2014, 2014 at 10:00 a.m., before the Honorable Charles R. Breyer, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1. Granting preliminary approval of the settlement agreements ("Settlements") Plaintiffs have executed with Defendants (1) Japan Airlines International Company, Ltd.; (2) Societe Air France; (3) Vietnam Airlines Company Limited; (4) Thai Airways International Public Co., Ltd.; and (5) Malaysian Airline System Berhad;

2. Certifying the Settlement Classes;

3. Appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel and named Plaintiffs to serve as Class Reprsentatives on behalf of the Settlement Classes; and

4. Provisionally establishing a litigation expense fund in the amount of $3 million to reimburse Plaintiffs for litigation expenses incurred to date and pay for litigation expenses that will be incurred in the future.

The motion should be granted because the proposed Class Settlements are within the range of reasonableness. The motion is based on this (i) Notice of Motion and Motion, (ii) the supporting Memorandum and Points and Authorities, (iii) the accompanying Declaration of Christopher L. Lebsock, (iv) the Class Settlement Agreements with Defendants (a) Japan Airlines International Company, Ltd, (b)Societe Air France, (c) Vietnam Airlines Company Limited, (d) Thai Airways International Public Company, Ltd., (e) and Malaysian Airline System Berhad (the "Settlement Agreements"), (v) any further papers filed in support of this Motion, (vi) the argument of counsel, and (vii) all pleadings and records on file in this matter.

# <u>TABLE OF CONTENTS</u>

NOTICE ....................................................................................................................i

STATEMENT OF ISSUES TO BE DECIDED ........................................................vii

SUMMARY OF ARGUMENT ..............................................................................viii

MEMORANDUM AND POINTS AND AUTHORITIES...........................................1

I.     INTRODUCTION ..........................................................................................1

II.    SETTLEMENT NEGOTIATIONS ................................................................1

III.   THE SETTLEMENT AGREEMENTS ..........................................................2

    A.   The Settlement Classes .......................................................................2

    B.   Consideration Provided by the Settlement Agreements .....................3

    C.   Releases for the Settling Defendants ..................................................4

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS...........5

    A.   Class Action Settlement Procedure.....................................................5

    B.   Standards for Settlement Approval .....................................................5

    C.   The Proposed Settlements are Within Range of Reasonableness .........6

V.     THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASSES.................8

    A.   The Proposed Settlement Classes Satisfy Rule 23(a) .........................9

        1.   The Classes are so numerous that joinder is impracticable .......9

        2.   This case involves common questions of law and fact .............9

        3.   Representative Plaintiffs' claims are typical of the claims of the Classes...........................................................10

        4.   Representative Plaintiffs will fairly and adequately represent the interests of the Classes, and should be appointed as Class Representatives.................................11

B.    The Proposed Settlement Classes Satisfy the Requirements of Rule 23(b)(3).... 12

  1.    Common questions of law or fact predominate over individual
        questions ................................................................................................ 12

  2.    A class action is superior to other available methods for the fair
        and efficient adjudication of this case..................................................... 12

C.    The Court Should Appoint Plaintiffs' Interim Co-Lead Counsel as
      Settlement Class Counsel.................................................................................. 13

VI.    PROPOSED PLAN OF NOTICE AND PLAN OF ALLOCATION ............................. 14

VII.   NOTICE COSTS, LITIGATION EXPENSES, AND ATTORNEYS' FEES................ 14

VIII.  CONCLUSION.............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) .................................................................... 8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 8

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................. 10

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .................................................................... 9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................... 5

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................... vii, 5

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................ 9

*Farley v. Baird, Patrick & Co., Inc.*,
   90 CIV. 2168 (MBM), 1992 WL 321632 (S.D.N.Y. Oct. 28, 1992) ...................... 13

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) .............................................................................. 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................... *passim*

*In re Auto Refinishing Paint Antitrust Litig.*,
   MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) .......................... 7

*In re Cal. Micro Devices Sec. Litig.*,
   965 F. Supp. 1327 (N.D. Cal. 1997) ...................................................... 15

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) .................................................... 10

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................. 14

*In re Citric Acid Antitrust Litig.*,
   No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ................................... 10, 12

*In re Corrugated Container Antitrust Litig.*,
   M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981),
   *aff'd*, 659 F.2d 1322 (5th Cir. 1981) ......................................................................... 7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ............................... vii, 8, 10, 12

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................................ 7

*In re Mid-Atl. Toyota Antirust Litig.*,
   564 F. Supp. 1379 (D. Md. 1983) .............................................................................. 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................ 6, 7

*In re Rubber Chemicals Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ...................................................................*passim*

*In re Static Random Access (SRAM) Antitrust Litig.*,
   C0701819CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) .................................. 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009) ....................................................................vii, 12, 13

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................... 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010)......................................................................*passim*

*In re Visa Check/Master Money Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..................................................................................... 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) .................................................................................. 13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 6, 7

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) .................................................................................. 14

*Or. Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris, Inc.*,
    188 F.R.D. 365 (D. Or. 1998) ....................................................................... 9

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ........................................................................ 5

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ....................................................... 6

## Rules

Fed. R. Civ. P. 23 ...................................................................................*passim*

## Other Authorities

C.A. Wright, A. R. Miller & M.K. Kane, *Federal Practice and Procedure:
    Civil Procedure* § 1781 (3d ed. 2004) ....................................................... 12

H.B. Newberg, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002) ....................... 5

*Manual for Complex Litigation*, Fourth, § 13.14 (2004) .............................. 6, 14

*Newberg* § 11.41 ........................................................................................... 6

*Newberg* § 18:4 ........................................................................................... 9

1

## STATEMENT OF ISSUES TO BE DECIDED

2      1.      Whether the proposed Settlement Agreements fall within the "range of possible

3  approval," and should, therefore, be preliminarily approved by the Court?

4      2.      Whether the proposed Settlement Classes meet the requirements of Federal Rule

5  of Civil Procedure 23(a) and (b), and should be provisionally certified for settlement purposes?

6      3.      Whether Plaintiffs' Interim Lead Counsel should be appointed as Settlement

7  Class Counsel and named Plaintiffs appointed as Class Representatives on behalf of the

8  Settlement Classes?

9      4.      Whether there is cause to provisionally establish a litigation expense fund and

10  the proper amount of such fund that should be provisionally established by the Court?

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## SUMMARY OF ARGUMENT

The Court should preliminarily approve the Settlements set forth more fully below because they are within the range of possible approval and justify giving notice to the Class members and holding a fairness hearing.  The Settlements are the result of informed and contested negotiations, and are fair, reasonable, and adequate.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The monetary recovery for the class is significant, and the cooperation agreements greatly strengthen Plaintiffs' case against the non-Settling Defendants.

Applying Rule 23 of the Federal Rules of Civil Procedure, the Court should certify the Classes for purposes of settlement.  Here, Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy are met.  *See e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300 (N.D. Cal. 2010); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005).  Likewise Rule 23(b) is satisfied because common questions predominate and a class action is superior to pursuing numerous individual cases. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006).

Finally, under Rule 23(g), class certification requires that the Court appoint class counsel. Based on their experience and vigorous prosecution of this action, Interim Co-Lead Counsel, Cotchett, Pitre & McCarthy and Hausfeld LLP, should be appointed as Settlement Class Counsel for purposes of these Settlements, and named Plaintiffs should be appointed as Class Representatives for the Settlement Classes.

1

## MEMORANDUM AND POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs hereby move this Court for an

4   order preliminarily approving class action Settlements reached with Defendants Japan Airlines

5   International Company, Ltd ("JAL"), Societe Air France ("Air France"), Vietnam Airlines

6   Company, Ltd ("VN"), Thai Airways International Public Company, Ltd ("Thai Airways"), and

7   Malaysian Airline System Berhad ("Malaysian Air") (collectively, "Settling Defendants").

8   Copies of the Settlement Agreements are attached to the Declaration of Christopher L. Lebsock

9   ("Lebsock Decl."), as Exhibits 1 through 5, respectively.  These Settlements resolve all claims

10   brought by Plaintiffs against Settling Defendants, who will pay a combined $22,252,000, and

11   have each agreed to cooperate with Plaintiffs' by providing information related to the existence,

12   scope, and implementation of the conspiracy alleged in the Second Amended Consolidated

13   Class Action Complaint ("SAC").  Lebsock Decl. ¶¶ 19, 20.[1]

14      These Settlements are within the range of possible approval and in the best interests of

15   all Class members.  Accordingly, Plaintiffs seek an order: preliminarily approving the

16   Settlement Agreements, provisionally certifying the Settlement Classes, and appointing

17   Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel and named plaintiffs as Class

18   Representatives.[2]  Plaintiffs also request creation of a litigation expense fund.

19

## II.   SETTLEMENT NEGOTIATIONS

20      Plaintiffs' Interim Co-Lead Counsel ("Class Counsel") and counsel for each Settling

21   Defendant engaged in extensive arm's length negotiations before reaching these Settlements.

22   *See* Lebsock Decl. ¶¶ 3-21 (describing negtotiation scope and details).  Class Counsel and

23   defense counsel, all experienced and skilled attorneys, vigorously advocated their respective

24   clients' positions.  Initial negotiations beginning in 2008 and continuing through 2013, were

25   conducted via telephone conferences, in-person meetings, and written correspondence.  Lebsock

26   Decl. ¶ 21.  The first Settlement, with JAL, was reached with the assistance of a mediator.  *Id.* ¶¶

27   
28

[1] Plaintiffs presently intend to move for preliminary approval of at least one additional settlement before seeking an order on notice.  The parties to this additional agreement are working as quickly as possible to have it finalized.
[2] Plaintiffs will submit a proposed notice plan to the Court in the near future.

3, 21.

Before each subsequent Settlement was reached, Plaintiffs spent significant time investigating the claims against each Settling Defendant, including through numerous proffer sessions with JAL.  Class Counsel thus had significant knowledge of Defendants' conspiratorial conduct and the strengths and weaknesses of Plaintiffs' claims and Defendants' asserted defenses.  Class Counsel used the extensive JAL proffer, as well as other discovery materials, to evaluate each Settling Defendant's position and negotiate a fair settlement.  *Id.* ¶¶ 6, 9, 12, 15, 18. Class Counsel believe these Settlements, including over $22 million in recovery and extensive cooperation obligations that will assist the proposed Classes in prosecuting this action, are fair, reasonable, and adequate to the Classes.  Plaintiffs respectfully submit that these Settlements are in the best interests of the Classes, and should be preliminarily approved by the Court.

## III.    THE SETTLEMENT AGREEMENTS

The proposed Settlement Agreements resolve all claims against Settling Defendants in the alleged conspiracy to fix or stabilize prices for air passenger travel, including associated surcharges, for international flights involving at least one flight segment between the United States and Asia/Oceania.  The Classes will receive $22,252,000 and significant cooperation. *See* Lebsock Decl. ¶¶ 19, 20, Exs. 1-5.  The terms of the Agreements are outlined below.

### A.    The Settlement Classes

The proposed Settlement Classes (collectively referred to as the Settlement Classes") are defined as follows:

JAL SETTLEMENT CLASS:
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchasers of passenger air transportation directly between the United States and the Republic of Korea purchased from Korea Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.[3]

---

[3] *See* Lebsock Decl., Ex. 1, ¶ 3 (Amended JAL Settlement Agreement).

**AIR FRANCE/VN SETTLEMENT CLASS:**
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and /or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.[4]

**THAI AIRWAYS SETTLEMENT CLASS:**
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date.[5]

**MALAYSIAN AIR SETTLEMENT CLASS:**
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia/Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date.[6]

Excluded from the Settlement Classes are governmental entities, Defendants, former Defendants, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.  The Settlement Classes (excepting the Thai Airways Settlement Class)[7] also exclude purchases of air passenger tickets between the United States and the Republic of South Korea purchased from either Korean Air Lines, Ltd, or Asiana Airlines, Inc.

**B.     Consideration Provided by the Settlement Agreements**

Together, the Settling Defendants agreed to pay $22,252,000, with JAL paying $10

---

[4] *See* Lebsock Decl. Ex. 2, ¶ 3(Amended Air France Settlement Agreement); Ex. 3, ¶ 3 (Amended VN Settlement Agreement) .
[5] *See* Lebsock Decl. Ex. 4, ¶ 3 (Thai Airways Settlement Agreement).
[6] *See* Lebsock Decl. Ex. 5 ¶ 3 (Malaysian Air Settlement Agreement).
[7] The Thai Airways settlement does not include purchases from Korean Air Lines, Ltd. or Asiana Airlines, Inc. in the class definition.  Thus, in practical effect, none of the settlements include purchases from these two airlines in the class definition.  Both airlines settled their antitrust exposure in a related proceeding pending in the Central District of California.

1   million, Air France paying $867,000, VN paying $735,000, Thai Airways paying $9,700,000

2   million, and Malaysian Air paying $950,000.  Lebsock Decl. ¶ 19.  The Settlements also confer

3   significant non-monetary benefits.  Each Settling Defendant has agreed to cooperate with

4   Plaintiffs in the prosecution of this action by providing information relating to Plaintiffs'

5   allegations, including through (1) attorney proffers; (2) interviews of persons with knowledge

6   regarding the conspiratorial conduct alleged in Plaintiffs' SAC; (3) the production of relevant

7   documents, including assistance in establishing the admissibility of the documents produced;

8   and (4) for all settlements other than with Malaysian Air, one or more witnesses to establish the

9   foundation of documents or data necessary for summary judgment and trial.  *Id.* ¶ 20.

10          For example, the JAL Settlement Agreement provides that JAL will make up to four

11   employees available to provide declarations concerning factual matters asserted in summary

12   judgment motions, and provide up to 40 hours of attorney proffer time – something Interim

13   Co-Lead Counsel has already availed itself of in prosecuting this action.  *See* Ex. 1 ¶ 13.1;

14   *see also* Ex. 2 ¶14.1 (two employees made available and up to three meetings for attorney

15   proffers); Ex. 3 ¶ 14.1 (same); Ex. 4 ¶15.1 (three employees made available and up to three

16   meetings for attorney proffers); and Ex. 5 ¶ 14.1 (two employees made available).  These

17   cooperation clauses are a substantial benefit to the Settlement Classes.

18          **C.      Releases for the Settling Defendants**

19          Plaintiffs agreed to release Malaysian Air, VN, Thai Airways, and Air France from all

20   claims arising from or relating to the pricing of passenger air transportation between the United

21   States and Asia/Oceania to the extent that the travel originated in the United States with respect

22   to the pricing of fuel surcharges or any other element or component of pricing that were or

23   could have been alleged in the Consolidated Class Action Complaints.  Ex. 2 ¶¶ 1.10, 9.1; Ex.

24   3 ¶¶ 1.10, 9.1; Ex 4 ¶¶1.16, 9.1; Ex. 5 ¶¶ 1.10, 9.1.  The release provided to JAL is broader in

25   that it is not limited to U.S. originating travel.  Ex. 1 ¶¶ 1.11, 2, 8.1.

26          The Settlement Agreements specifically preserve Settlement Class members' rights

27   against any co-conspirator or non-Settling Defendant.  Ex. 1 ¶ 9; Ex. 2 ¶ 10; Ex. 3 ¶ 10; Ex. 4

28   ¶ 10; Ex. 5 ¶ 10.  Furthermore, the sales of passenger air transportation by Settling

1   Defendants remain in the case as a potential basis for damage claims and shall be part of

2   any joint and several liability claims against the non-settling Defendants.

3   **IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS**

4        **A.     Class Action Settlement Procedure**

5        Proposed class action settlements must be approved by the Court.  Fed. R. Civ. P. 23(e).

6   Plaintiffs respectfully request that the Court certify the proposed Settlement Classes,

7   preliminarily approve the Settlements, and appoint Plaintiffs' Interim Co-Lead Counsel as

8   Settlement Class Counsel.  *See* A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, §

9   11.25 (4th ed. 2002) ("Newberg") (outlining the steps of preliminary approval and class

10  certification, notice, and a fairness hearing, which are required prior to final approval of a class

11  settlement and are designed to safeguard the rights of absent class members).

12       **B.     Standards for Settlement Approval**

13       "[T]here is an overriding public interest in settling and quieting litigation . . .

14  particularly . . . in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

15  Cir. 1976); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The district

16  court has substantial discretion in deciding to approve a class action settlement.  *See Churchill*

17  *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Preliminary approval requires

18  only that the terms of the proposed settlement fall within the "range of possible approval."  *See*

19  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009); *In re*

20  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Preliminary approval

21  is appropriate when the terms are "sufficient to warrant public notice and a hearing."  *See*

22  *Manual for Complex Litigation*, Fourth, § 13.14 (2004) ("*Manual*").

23       Preliminary approval should be granted "[w]here the proposed settlement appears to be

24  the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

25  not improperly grant preferential treatment to class representatives or segments of the class and

26  falls within the range of possible approval."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176

27  F.R.D. 99, 102 (S.D.N.Y. 1997).  Application of these factors here supports preliminary

28  approval of the Settlements.  As shown below, the proposed Settlements are fair, reasonable,

1   and adequate.  Therefore, the Court should allow notice of the Settlements to be disseminated

2   to the Settlement Classes.

3             **C.**     **The Proposed Settlements are Within the Range of Reasonableness**

4          The proposed Settlements are well within the reasonable range.  First, the Settlements

5   are entitled to "an initial presumption of fairness" because they resulted from arm's length

6   negotiations among experienced counsel.  *See Newberg* § 11.41.  These negotiations occurred

7   over a span of years and collectively involved telephonic and face to face meetings; substantial

8   correspondence; and the review of industry materials, documents produced by the Settling

9   Defendants, and transactional data produced in this litigation.  The negotiations were sharply

10  contested and conducted in good faith.  Lebsock Decl. ¶ 21.  "'Great weight' is given to the

11  recommendation of counsel, who are most closely acquainted with the facts of the underlying

12  litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528

13  (C.D. Cal. 2004).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant

14  to substitute its own judgment for that of counsel." *Id.* (internal citation omitted).  Plaintiffs'

15  counsel believes that these Settlements are in the best interests of the Classes.

16         Second, the total Settlement Amount of $22,252,000 is significant and compares

17  favorably to other antitrust settlements reached prior to the close of discovery.  *See, e.g., In re*

18  *Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (approving settlements with all defendants

19  totaling $9,940,000).  Moreover, the damages Plaintiffs suffered due to the Settling

20  Defendants' alleged conduct remain in the case, and, under joint and several liability, are

21  recoverable from other Defendants.  *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL

22  1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5, 2003) (preliminarily approving settlement

23  agreement because, *inter alia*, "this settlement does not affect the joint and several liability of

24  the remaining Defendants in this alleged conspiracy").

25         Third, the Settling Defendants must provide significant cooperation to Plaintiffs in

26  pursuing this case against the non-settling Defendants, including attorney proffers and

27  making witnesses available for interviews with personal knowledge relating to the

28  allegations of conspiratorial conduct in Plaintiffs' SAC.  *See* Section III.B, *supra*.  "The

provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation will save time, reduce costs, and provide access to information regarding the transpacific air passenger conspiracy that might otherwise not be available to Plaintiffs. *See In re Mid-Atl. Toyota Antirust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (finding a defendant's agreement not to contest provision of certain discovery "is an appropriate factor for a court to consider in approving a settlement"); *In re Corrugated Container Antitrust Litig.*, M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (finding that "[t]he cooperation clauses constituted a substantial benefit to the class.").

Finally, the Settlements will not adversely affect the remainder of the case. These Settlements preserve Plaintiffs' right to litigate against non-settling Defendants for the entire amount of Plaintiffs' damages based on joint and several liability. Lebsock Decl. ¶ 22. In fact, these Settlements may aid in the ultimate resolution of this case. "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (internal quotation omitted).

For these reasons, the proposed Settlements meet the judicially established criteria for class action settlements and warrant notice of their terms to the members of the Classes.

## V.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASSES

The Court should provisionally certify the Settlement Classes contemplated by the Settlement Agreements. It is well-established that price-fixing actions like this are appropriate for class certification. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010) ("*LCD*"); *In re Static Random Access (SRAM) Antitrust Litig.*, C0701819CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ("*DRAM*"); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("*Rubber Chems.*").

Federal Rule of Civil Procedure 23 provides that a court should certify a class action

where, as here, Plaintiffs satisfy the prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and 23(b) (predominance and superiority).[8]  This does not involve determination of whether Plaintiffs will ultimately prevail on the substantive merits of their claims.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (finding that on class certification motion, plaintiffs' substantive allegations are accepted as true); *Rubber Chems.*, 232 F.R.D. at 350 (same).  The only issue is whether Plaintiffs satisfy the Rule 23 requirements.  *Eisen*, 417 U.S. at 178.

### A.  The Proposed Settlement Classes Satisfy Rule 23(a)

#### 1.  The Classes are so numerous that joinder is impracticable.

The first requirement for maintaining a class action is that its members are so numerous that joinder would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Courts have generally found that the numerosity requirement is satisfied when class members exceed forty.  *Newberg* § 18:4; *Or. Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372-73 (D. Or. 1998).  Geographic dispersal of plaintiffs may also support a finding that joinder is "impracticable."  *Rubber Chems.*, 232 F.R.D. at 350-51; *see also LCD*, 267 F.R.D. at 300 (stating that given the nature of the LCD market, "common sense dictates that joinder would be impracticable.").  Here, each Settlement Class consists of hundreds of thousands of members who purchased qualifying airfare involving at least one flight segment between the United States and Asia/Oceania.  The proposed Settlement Classes satisfy the numerosity requirement.

#### 2.  This case involves common questions of law and fact.

The second prerequisite to class certification is the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Commonality is satisfied by the existence of a single common issue.  *Blackie*, 524 F.2d at 901.  "Courts consistently have held that the very nature of a

---

[8] Rule 23(b)(3)'s "manageability" requirements need not be satisfied in order to certify a settlement class.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

conspiracy antitrust action compels a finding that common questions of law and fact exist." *Rubber Chems.*, 232 F.R.D. at 351 (internal citation omitted). Here, all class members share common questions of law and fact that revolve around the existence, scope, effectiveness, and implementation of Defendants' conspiracy, and that are central to each class members' claims. Similar questions have satisfied the commonality requirement in antitrust class actions in this District. *LCD*, 267 F.R.D. at 300 (stating "the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist") (citing *Rubber Chems.*, 232 F.R.D. at 351; *DRAM*, 2006 WL 1530166, at *3).

### 3. Representative Plaintiffs' claims are typical of the claims of the Classes.

"Under [Rule 23]'s permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Generally, the class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *LCD*, 267 F.R.D. at 300 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

Typicality is easily satisfied in horizontal price-fixing cases because "where[] it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993); *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996) ("*Citric Acid*"). As such, factual differences among individual transactions or in the amount of damages do not undermine typicality, so long as the damages suffered by Plaintiffs and the Classes arise from the purchase of products affected by the conspiracy. *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *DRAM*, 2006 WL 1530166, at *33. Here, Plaintiffs assert the same claims on behalf of themselves and the proposed Classes—that they purchased air passenger tickets from Defendants and were overcharged due to the antitrust conspiracy between the Settling Defendants and their co-conspirators. Therefore, Plaintiffs' claims are typical of the claims of the other class members, and certification is appropriate.

### 4. Representative Plaintiffs will fairly and adequately represent the interests

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**of the Classes, and should be appointed as Class Representatives.**

A representative plaintiff is an adequate representative of the class if he or she: (1) does not have any interests antagonistic to or in conflict with the interests of the class; and (2) is represented by qualified counsel who will vigorously prosecute the class's interests. *Hanlon*, 150 F.3d at 1020. Here, representative Plaintiffs satisfy both of these requirements. The interests of Plaintiffs and Class members are aligned because they all suffered similar injury in the form of higher airline ticket prices for travel from the United States to Asia/Oceania due to Defendants' conspiracy, and all seek the same relief. Plaintiffs understand the allegations in this case, and have reviewed pleadings, responded to discovery, and produced the documents requested. Lebsock Decl. ¶ 24. They have been, or soon will be, deposed. *Id.* By proving their own claims, Plaintiffs will necessarily prove the claims of their fellow Class members; as such they should be named as Class Representatives for the Settlement Classes.

Further, Plaintiffs are represented by highly qualified counsel. Interim Co-Lead Counsel have successfully prosecuted numerous antitrust class actions throughout the United States, and are committed to vigorously prosecuting this action on behalf of the Classes. They have undertaken the responsibilities assigned by the Court and have directed the efforts of other Plaintiffs' counsel. Counsel's prosecution of this case, and indeed, these Settlements, amply demonstrate their diligence and competence. Therefore, the requirements of Rule 23(a)(4) are satisfied.

**B.     The Proposed Settlement Classes Satisfy the Requirements of Rule 23(b)(3)**

**1.   Common questions of law or fact predominate over individual questions.**

"Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members." *LCD*, 267 F.R.D. at 310. Courts have held that this issue alone is sufficient to satisfy the predominance requirement. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 612-614 (N.D. Cal. 2009) ("SRAM"); *Rubber Chems.*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8. Therefore, common issues relating to the existence

1   and effect of the alleged conspiracy on air passenger ticket prices for travel from the United

2   States to Asia/Oceania predominate over any questions arguably affecting individual class

3   members.  Proof of how Defendants implemented and enforced their conspiracy will also be

4   common to the Classes and predicated on establishing the existence of Defendants' antitrust

5   conspiracy.  These overriding issues satisfy the predominance requirement.[9]

6            **2.   A class action is superior to other available methods for the fair and**

7                  **efficient adjudication of this case.**

8    "[I]f common questions are found to predominate in an antitrust action, then courts

9   generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright,

10   Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed.

11   2004).  That is because in price-fixing cases, "the damages of individual indirect purchasers are

12   likely to be too small to justify litigation, but a class action would offer those with small claims

13   the opportunity for meaningful redress."  *SRAM*, 264 F.R.D. at 615.  Here, a class action is

14   superior to individual litigation because "[n]umerous individual actions would be expensive

15   and time-consuming and would create the danger of conflicting decisions as to persons

16   similarly situated."  *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978).

17       Further, requiring individual cases would deprive many class members of any practical

18   means of redress.  Because prosecution of an antitrust conspiracy against economically

19   powerful defendants is difficult and expensive, most class members would be effectively

20   foreclosed from pursuing their claims absent class certification.  *See Hanlon*, 150 F.3d at 1023

21   ("Many claims [that] could not be successfully asserted individually . . . would not only

22   unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."); *see*

23   *also SRAM*, 264 F.R.D. at 615.  Moreover, separate adjudication of claims creates a risk of

24   inconsistent rulings, which further favors class treatment.  Therefore, a class action is the

25   superior method of adjudicating the claims raised in this case.

---

[9] Potential individualized damages do not defeat predominance.  *See, e.g., In re Visa Check/Master Money Antitrust Litig*., 280 F.3d 124, 138 (2d Cir. 2001) (citing and discussing cases); *DRAM*, 2006 WL 1530166, at *47 (holding that courts may certify classes "regardless of whether some members of the class negotiated price individually, or whether—as here—differences among product type, customer class, and method of purchase existed.").

1

2

**C.     The Court Should Appoint Plaintiffs' Interim Co-Lead Counsel as**
**Settlement Class Counsel**

3     "An order certifying a class action . . . must appoint class counsel under Rule 23(g)."

4  Rule 23(c)(1)(B).  Courts must consider (i) counsels' work in identifying or investigating

5  claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's

6  knowledge of applicable law; and (iv) the resources counsel will commit to representing the

7  class.  Fed. R. Civ. P. 23(g)(1)(A).  After considering competing motions, the Court appointed

8  Cotchett, Pitre & McCarthy and Hausfeld LLP as Interim Co-Lead Class Counsel.  *See* Dkt.

9  Nos. 130, 175.  "Class counsel's competency is presumed absent specific proof to the contrary

10  by defendants."  *Farley v. Baird, Patrick & Co., Inc.*, 90 CIV. 2168 (MBM), 1992 WL 321632,

11  at *5 (S.D.N.Y. Oct. 28, 1992).  Interim Co-Lead Counsel are willing and able to vigorously

12  prosecute this action and to devote all necessary resources.  The work they have done since

13  their appointment provides substantial basis for the Court's earlier finding that they satisfy Rule

14  23(g)'s criteria.  Accordingly, Cotchett, Pitre & McCarthy and Hausfeld LLP should be

15  appointed as Settlement Class Counsel for purposes of these Settlements.

16  **VI.     PROPOSED PLAN OF NOTICE AND PLAN OF ALLOCATION**

17     Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all

18  class members who would be bound by a proposed settlement, voluntary dismissal, or

19  compromise."  Plaintiffs' counsel will submit a notice plan to the Court in the near future.

20  Plaintiffs propose that distribution of Settlement funds be deferred until the termination of the

21  case, when there may be additional settlements from remaining Defendants to distribute, and

22  because piecemeal distribution is expensive, time-consuming, and likely to cause confusion to

23  members of the Classes.  Deferring allocation of settlement funds is a common practice in cases

24  where claims against other defendants remain.  *See Manual* § 21.651.  Although distribution

25  will be deferred, Plaintiffs propose notifying the Classes that distribution of funds will be made

26  on a *pro rata* basis.  A plan of allocation that compensates members based on the type and

27  extent of their injuries is generally considered reasonable.  *In re Citric Acid Antitrust Litig.*, 145

28  F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

## VII.   NOTICE COSTS, LITIGATION EXPENSES, AND ATTORNEYS' FEES

Plaintiffs also move for the provisional creation of a litigation expense fund of up to $3 million for the reimbursement of out-of-pocket expenses incurred to date, and for payment of current and future out-of-pocket expenses that will be incurred, with any unused funds being disbursed to the Classes. Such litigation funds have been approved in other class actions. *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 303 (5th Cir. 2004) (affirming approval of class settlement with $15 million of settlement proceeds going to a litigation expense fund); *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving a $1.5 million litigation fund "[b]ecause the remainder of the case appears to have potential value for the class"). Plaintiffs' litigation fund request will be fully explained in the proposed notice program.

Finally, Plaintiffs' counsel do not seek attorneys' fees at this time, but will seek a fee award in conjunction with the approval of future settlements or at some other later date. Plaintiffs' counsels' fee request will not exceed one-third of the amount of the Settlements.

## VIII.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreements; (2) certify the Settlement Classes; and (3) appoint Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel and named Plaintiffs as Class Representatives for the Settlement Classes.

Dated:  June 25, 2014

Respectfully submitted,

/s/*Steven N. Williams*
Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Pete N. McCloskey (SBN 024541)
pmccloskey@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

/s/*Christopher L. Lebsock*
Michael D. Hausfeld
mhausfeld@hausfeldllp.com
Seth R. Gassman
sgassman@hausfeldllp.com
**HAUSFELD LLP**
1700 K Street, Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201

Michael P. Lehmann (77152)

1

mlehmann@hausfeldllp.com
Christopher Lebsock (184546)
clebsock@hausfeldllp.com
**HAUSFELD LLP**
44 Montgomery Street
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile:  (415) 358-4980

2

3

4

5

*Interim Co-Lead Counsel for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, Christopher Lebsock, declare that I am over the age of eighteen (18) and not a party to

3

the entitled action.  I am a partner at the law firm of HAUSFELD LLP, and my office is located

4

at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

5

On  June 25, 2014 I caused to be served a true and correct copy of the following:

6

7

**1)  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL COMPANY, LTD; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY, LTD; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD; AND MALAYSIAN AIRLINE SYSTEMS BERHAD; AND MEMORANDUM IN SUPPORT THEREOF;**

8

9

10

11

**2)  DECLARATION OF CHRISTOPHER L. LEBSOCK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL COMPANY, LTD; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY, LTD; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD; AND MALAYSIAN AIRLINE SYSTEMS BERHAD;**

12

13

14

15

**3)  [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL COMPANY, LTD; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY, LTD; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD; AND MALAYSIAN AIRLINE SYSTEMS BERHAD;**

16

17

18

19

**4)  CERTIFICATE OF SERVICE**

20

with the Clerk of the Court using the Official Court Electronic Document Filing System which

21

served copies on all interested parties registered for electronic filing.

22

I declare under penalty of perjury, under the laws of the State of California, that the

23

foregoing is true and correct.

24

Executed on June 25, 2014 at San Francisco, California.

25

26

        _/s/ Christopher Lebsock_____
        Christopher Lebsock

27

28