Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Pete N. McCloskey (024541)
pmccloskey@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

Michael P. Lehmann (77152)          Michael D. Hausfeld
mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
Christopher Lebsock (184546)         Seth R. Gassman
clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
**HAUSFELD LLP**                     **HAUSFELD LLP**
44 Montgomery Street                 1700 K Street, Suite 650
San Francisco, CA 94111              Washington, D.C. 20006
Telephone: (415) 633-1908            Telephone: (202) 540-7200
Facsimile:  (415) 358-4980           Facsimile:  (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-CV-05634-CRB MDL 1913 **PLAINTIFFS' AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL COMPANY, LTD.; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY, LTD.; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD.; MALAYSIAN AIRLINE SYSTEMS BERHAD; AND CATHAY PACIFIC AIRWAYS, LIMITED; AND MEMORANDUM IN SUPPORT THEREOF** |
| **This Document Relates To:** **All Actions** | |
| | Hearing Date: Friday, August 8, 2014 Judge:      Hon. Charles R. Breyer Time:       10:00 a.m. Courtroom:  6, 17th Floor |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, August 8, 2014, 2014 at 10:00 a.m., before the Honorable Charles R. Breyer, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.  Granting preliminary approval of the settlement agreements ("Settlements") Plaintiffs have executed with Defendants (1) Japan Airlines International Company, Ltd.; (2) Societe Air France; (3) Vietnam Airlines Company Limited; (4) Thai Airways International Public Co., Ltd.; and (5) Malaysian Airline System Berhad; and (6) Cathay Pacific Airways, Limited.

2.  Certifying the Settlement Classes;

3.  Appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel and named Plaintiffs to serve as Class Reprsentatives on behalf of the Settlement Classes; and

4.  Provisionally establishing a litigation expense fund in the amount of $3 million to reimburse Plaintiffs for litigation expenses incurred to date and pay for litigation expenses that will be incurred in the future.

The motion should be granted because the proposed Class Settlements are within the range of reasonableness. The motion is based on this (i) Amended Notice of Motion and Motion, (ii) the supporting Memorandum and Points and Authorities, (iii) the accompanying Amended Declaration of Christopher L. Lebsock, (iv) the Class Settlement Agreements with Defendants (a) Japan Airlines International Company, Ltd, (b) Societe Air France, (c) Vietnam Airlines Company Limited, (d) Thai Airways International Public Company, Ltd., (e) Malaysian Airline System Berhad, (f) Cathay Pacific Airways, Ltd. (the "Settlement Agreements"), (v) any further papers filed in support of this Motion, (vi) the argument of counsel, and (vii) all pleadings and records on file in this matter.

# TABLE OF CONTENTS

NOTICE ......................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................ vi

SUMMARY OF ARGUMENT .............................................................................. vii

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.     INTRODUCTION ..................................................................................... 1

II.    SETTLEMENT NEGOTIATIONS ............................................................... 1

III.   THE SETTLEMENT AGREEMENTS .......................................................... 2

       A.    The Settlement Classes ................................................................. 2

       B.    Consideration Provided by the Settlement Agreements ................... 3

       C.    Releases for the Settling Defendants ............................................. 4

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS .......... 5

       A.    Class Action Settlement Procedure ................................................ 5

       B.    Standards for Settlement Approval ................................................ 5

       C.    The Proposed Settlements are Within the Range of Reasonableness ... 6

V.     THE COURT SHOULD PROVISIONALLY CERTIFY THE
       SETTLEMENT CLASSES .......................................................................... 8

       A.    The Proposed Settlement Classes Satisfy Rule 23(a) ...................... 9

             1.    The Classes are so numerous that joinder is impracticable ...... 9

             2.    This case involves common questions of law and fact ............. 9

             3.    Representative Plaintiffs' claims are typical of the claims of
                   the Classes ................................................................... 10

             4.    Representative Plaintiffs will fairly and adequately
                   represent the interests of the Classes, and should
                   be appointed as Class Representatives ................................ 11

B.    The Proposed Settlement Classes Satisfy the Requirements of Rule 23(b)(3) .... 12

    1.    Common questions of law or fact predominate over individual questions ....................................................................................... 12

    2.    A class action is superior to other available methods for the fair and efficient adjudication of this case ....................................... 12

C.    The Court Should Appoint Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel ........................................................................ 13

VI.    PROPOSED PLAN OF NOTICE AND PLAN OF ALLOCATION .............................. 14

VII.    NOTICE COSTS, LITIGATION EXPENSES, AND ATTORNEYS' FEES ................ 14

VIII.    CONCLUSION ............................................................................................. 15

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Agretti v. ANR Freight Sys., Inc.*,
4     982 F.2d 242 (7th Cir. 1992) .................................................................... 8

5

*Amchem Prods., Inc. v. Windsor*,
6     521 U.S. 591 (1997) ............................................................................. 8

7

*Armstrong v. Davis*,
      275 F.3d 849 (9th Cir. 2001) .................................................................. 10
8

9

*Blackie v. Barrack*,
      524 F.2d 891 (9th Cir. 1975) .................................................................... 9
10

11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
      361 F.3d 566 (9th Cir. 2004) .................................................................... 5
12

13

*Class Plaintiffs v. City of Seattle*,
      955 F.2d 1268 (9th Cir. 1992) .......................................................... vii, 5

14

15

*Eisen v. Carlisle & Jacquelin*,
      417 U.S. 156 (1974) ............................................................................. 9

16

*Farley v. Baird, Patrick & Co., Inc.*,
17     90 CIV. 2168 (MBM), 1992 WL 321632 (S.D.N.Y. Oct. 28, 1992)...................... 13

18

*Gen. Tel. Co. of the Sw. v. Falcon*,
19     457 U.S. 147 (1982) ............................................................................ 10

20

*Hanlon v. Chrysler Corp.*,
      150 F.3d 1011 (9th Cir. 1998) ..........................................................*passim*

21

*In re Auto Refinishing Paint Antitrust Litig.*,
22     MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ................................ 7

23

*In re Cal. Micro Devices Sec. Litig.*,
24     965 F. Supp. 1327 (N.D. Cal. 1997) ....................................................... 15

25

*In re Catfish Antitrust Litig.*,
26     826 F. Supp. 1019 (N.D. Miss. 1993)...................................................... 10

27

*In re Citric Acid Antitrust Litig.*,
      145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................................... 14
28

*In re Citric Acid Antitrust Litig.*,
No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ................................................ 10, 12

*In re Corrugated Container Antitrust Litig.*,
M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981),
*aff'd,* 659 F.2d 1322 (5th Cir. 1981) ................................................................................ 7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ............................... vii, 8, 10, 12

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................................. 7

*In re Mid-Atl. Toyota Antirust Litig.*,
564 F. Supp. 1379 (D. Md. 1983) ..................................................................................... 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................... 6, 7

*In re Rubber Chemicals Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ..............................................................................*passim*

*In re Static Random Access (SRAM) Antitrust Litig.*,
C0701819CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ............................................. 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)............................................................................. vii, 12, 13

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................. 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010)..............................................................................*passim*

*In re Visa Check/Master Money Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)............................................................................................ 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ......................................................................................... 13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 6, 7

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ......................................................................................... 14

*Or. Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris, Inc.*,
   188 F.R.D. 365 (D. Or. 1998) ................................................................... 9

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................... 5

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................... 6

## Rules

Fed. R. Civ. P. 23 ........................................................................... *passim*

## Other Authorities

C.A. Wright, A. R. Miller & M.K. Kane, *Federal Practice and Procedure:
   Civil Procedure* § 1781 (3d ed. 2004) ................................................. 12

H.B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002) ......................................... 5

*Manual for Complex Litigation*, Fourth, § 13.14 (2004) ............................................. 6, 14

*Newberg* § 11.41 ..................................................................................... 6

*Newberg* § 18:4 ...................................................................................... 9

PLAINTIFFS' AMENDED NOTICE AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENTS
        vii
        MASTER FILE NO. CV-07-5634-CRB

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed Settlement Agreements fall within the "range of possible approval," and should, therefore, be preliminarily approved by the Court?

2.      Whether the proposed Settlement Classes meet the requirements of Federal Rule of Civil Procedure 23(a) and (b), and should be provisionally certified for settlement purposes?

3.      Whether Plaintiffs' Interim Lead Counsel should be appointed as Settlement Class Counsel and named Plaintiffs appointed as Class Representatives on behalf of the Settlement Classes?

4.      Whether there is cause to provisionally establish a litigation expense fund and the proper amount of such fund that should be provisionally established by the Court?

1

## SUMMARY OF ARGUMENT

2

This amendment supplements Plaintiffs' pending Motion for Preliminary Approval of

3  Settlements to incorporate an additional settlement with Cathay Pacific Airways, Limited.[1] The

4  Court should preliminarily approve the Settlements set forth more fully below because they are

5  within the range of possible approval and justify giving notice to the Class members and holding

6  a fairness hearing.  The Settlements are the result of informed and contested negotiations, and are

7  fair, reasonable, and adequate.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

8  Cir. 1992).  The monetary recovery for the class is significant, and the cooperation agreements

9  greatly strengthen Plaintiffs' case against the non-Settling Defendants.

10

Applying Rule 23 of the Federal Rules of Civil Procedure, the Court should certify the

11  Classes for purposes of settlement.  Here, Rule 23(a)'s requirements of numerosity,

12  commonality, typicality, and adequacy are met.  *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d

13  1011, 1019 (9th Cir. 1998); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300

14  (N.D. Cal. 2010); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal.

15  2005).  Likewise Rule 23(b) is satisfied because common questions predominate and a class

16  action is superior to pursuing numerous individual cases. *See In re Static Random Access*

17  *Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009); *In re Dynamic Random*

18  *Access Memory (DRAM) Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5,

19  2006).

20

Finally, under Rule 23(g), class certification requires that the Court appoint class counsel.

21  Based on their experience and vigorous prosecution of this action, Interim Co-Lead Counsel,

22  Cotchett, Pitre & McCarthy and Hausfeld LLP, should be appointed as Settlement Class Counsel

23  for purposes of these Settlements, and named Plaintiffs should be appointed as Class

24  Representatives for the Settlement Classes.

25

26

27

28

---

[1] Plaintiffs have settlements in principle with two additional defendants and are working to have executed settlement agreements within the next few days.  These will be presented to the Court expeditiously for preliminary approval.

1

## MEMORANDUM AND POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs hereby move this Court for an

4   order preliminarily approving class action Settlements reached with Defendants Japan Airlines

5   International Company, Ltd ("JAL"), Societe Air France ("Air France"), Vietnam Airlines

6   Company, Ltd ("VN"), Thai Airways International Public Company, Ltd ("Thai Airways"),

7   Malaysian Airline System Berhad ("Malaysian Air"), and Cathay Pacific Airways, Limited.

8   ("CX") (collectively, "Settling Defendants").  Copies of the Settlement Agreements are attached

9   to the Amended Declaration of Christopher L. Lebsock ("Lebsock Decl."), as Exhibits 1

10  through 6, respectively.  These Settlements resolve all claims brought by Plaintiffs against

11  Settling Defendants, who will pay a combined $29,752,000, and have each agreed to cooperate

12  with Plaintiffs' by providing information related to the existence, scope, and implementation of

13  the conspiracy alleged in the Second Amended Consolidated Class Action Complaint ("SAC").

14  Lebsock Decl. ¶¶ 23-24.

15        These Settlements are within the range of possible approval and in the best interests of

16  all Class members.  Accordingly, Plaintiffs seek an order: preliminarily approving the

17  Settlement Agreements, provisionally certifying the Settlement Classes, and appointing

18  Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel and named plaintiffs as Class

19  Representatives.[2]  Plaintiffs also request creation of a litigation expense fund.

20

## II.   SETTLEMENT NEGOTIATIONS

21        Plaintiffs' Interim Co-Lead Counsel ("Class Counsel") and counsel for each Settling

22  Defendant engaged in extensive arm's length negotiations before reaching these Settlements.

23  *See* Lebsock Decl. ¶¶ 3-27 (describing negotiation scope and details).  Class Counsel and

24  defense counsel, all experienced and skilled attorneys, vigorously advocated their respective

25  clients' positions.  Initial negotiations beginning in 2008 and continuing through 2014, were

26  conducted via telephone conferences, in-person meetings, and written correspondence.  Lebsock

27  Decl. ¶ 24.  The first Settlement, with JAL, was reached with the assistance of a mediator, as was

28

---

[2] Plaintiffs will submit a proposed notice plan to the Court in the near future.

1    the settlement with CX. *Id.* ¶¶ 3, 19.

2           Before each subsequent Settlement was reached, Plaintiffs spent significant time

3    investigating the claims against each Settling Defendant, including through numerous proffer

4    sessions with JAL. Class Counsel thus had significant knowledge of Defendants' conspiratorial

5    conduct and the strengths and weaknesses of Plaintiffs' claims and Defendants' asserted

6    defenses. Class Counsel used the extensive JAL proffer, as well as other discovery materials, to

7    evaluate each Settling Defendant's position and negotiate a fair settlement. *Id.* ¶¶ 6, 9, 12, 15, 18,

8    21. Class Counsel believe these Settlements, including over $29 million in recovery and

9    extensive cooperation obligations that will assist the proposed Classes in prosecuting this action,

10   are fair, reasonable, and adequate to the Classes. Plaintiffs respectfully submit that these

11   Settlements are in the best interests of the Classes, and should be preliminarily approved by the

12   Court.

13   **III.    THE SETTLEMENT AGREEMENTS**

14          The proposed Settlement Agreements resolve all claims against Settling Defendants in

15   the alleged conspiracy to fix or stabilize prices for air passenger travel, including associated

16   surcharges, for international flights involving at least one flight segment between the United

17   States and Asia/Oceania. The Classes will receive $29,752,000 and significant cooperation.

18   *See* Lebsock Decl. ¶¶ 22-23, Exs. 1-6. The terms of the Agreements are outlined below.

19          **A.      The Settlement Classes**

20   The proposed Settlement Classes are defined as follows:

21   JAL SETTLEMENT CLASS:

22   All persons and entities that purchased passenger air transportation that included
     at least one flight segment between the United States and Asia or Oceania from
23   Defendants, or any predecessor, subsidiary, or affiliate thereof, at any
     time between January 1, 2000 and the Effective Date. Excluded from the class are
24   purchasers of passenger air transportation directly between the United States and
     the Republic of Korea purchased from Korea Air Lines, Ltd. and/or Asiana
25   Airlines, Inc. Also excluded from the class are governmental entities, Defendants,
     any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors,
26   employees and immediate families.[3]

27

28   _____
     [3] *See* Lebsock Decl., Ex. 1, ¶ 3 (Amended JAL Settlement Agreement).

AIR FRANCE/VN SETTLEMENT CLASS:

All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and /or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.[4]

THAI AIRWAYS SETTLEMENT CLASS:

All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.[5]

MALAYSIAN AIR SETTLEMENT CLASS:

All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia/Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entties, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees or immediate families.[6]

CX SETTLEMENT CLASS:

All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date.  Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc.  Also excluded from the class are governmental entities,

---

[4] *See* Lebsock Decl. Ex. 2, ¶ 3(Amended Air France Settlement Agreement); Ex. 3, ¶ 3 (Amended VN Settlement Agreement) .
[5] *See* Lebsock Decl. Ex. 4, ¶ 3 (Thai Airways Settlement Agreement).
[6] *See* Lebsock Decl. Ex. 5 ¶ 3 (Malaysian Air Settlement Agreement).

Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.[7]

## B.    Consideration Provided by the Settlement Agreements

Together, the Settling Defendants agreed to pay $29,752,,000, with JAL paying $10 million, Air France paying $867,000, VN paying $735,000, Thai Airways paying $9,700,000 million, Malaysian Air paying $950,000, and CX paying $7,500,000.  Lebsock Decl. ¶ 22.  The Settlements also confer significant non-monetary benefits.  Each Settling Defendant has agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to Plaintiffs' allegations, including through (1) attorney proffers; (2) interviews of persons with knowledge regarding the conspiratorial conduct alleged in Plaintiffs' SAC; (3) the production of relevant documents, including assistance in establishing the admissibility of the documents produced; and (4) for all settlements one or more witnesses to establish the foundation of documents or data necessary for summary judgment and trial.  *Id.* ¶ 23.

For example, the JAL Settlement Agreement provides that JAL will make up to four employees available to provide declarations concerning factual matters asserted in summary judgment motions, and provide up to 40 hours of attorney proffer time – something Interim Co-Lead Counsel has already availed itself of in prosecuting this action.  *See* Ex. 1 ¶ 13.1; *see also* Ex. 2 ¶14.1 (two employees made available and up to three meetings for attorney proffers); Ex. 3 ¶ 14.1 (same); Ex. 4 ¶ 15.1 (three employees made available and up to three meetings for attorney proffers); Ex. 5 ¶ 14.1 (two employees made available); and Ex. 6 ¶ 14.1(two employees and three meetings for attorney proffers). These cooperation clauses are a substantial benefit to the Settlement Classes.

## C.    Releases for the Settling Defendants

Plaintiffs agreed to release Malaysian Air, VN, Thai Airways, Air France, and CX from all claims arising from or relating to the pricing of passenger air transportation between the United States and Asia/Oceania to the extent that the travel originated in the United States with respect to the pricing of fuel surcharges or any other element or component of pricing that were

---

[7]*See* Lebsock Decl. Ex. 6 ¶ 3 (CX Settlement Agreement).

1   or could have been alleged in the Consolidated Class Action Complaints.  Ex. 2 ¶¶ 1.10, 9.1;

2   Ex. 3 ¶¶ 1.10, 9.1; Ex 4 ¶¶1.16, 9.1; Ex. 5 ¶¶ 1.10, 9.1; and Ex. 6 ¶¶ 1.10, 9.1.  The release

3   provided to JAL is broader in that it is not limited to U.S. originating travel.  Ex. 1 ¶¶ 1.11, 2,

4   8.1.

5         The Settlement Agreements specifically preserve Settlement Class members' rights

6   against any co-conspirator or non-Settling Defendant.  Ex. 1 ¶ 9; Ex. 2 ¶ 10; Ex. 3 ¶ 10; Ex. 4

7   ¶ 10; Ex. 5 ¶ 10; Ex. 6 ¶ 10. Furthermore, the sales of passenger air transportation by

8   Settling Defendants remain in the case as a potential basis for damage claims and shall be

9   part of any joint and several liability claims against the non-settling Defendants.

10  **IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS**

11        **A.    Class Action Settlement Procedure**

12        Proposed class action settlements must be approved by the Court.  Fed. R. Civ. P. 23(e).

13  Plaintiffs respectfully request that the Court certify the proposed Settlement Classes,

14  preliminarily approve the Settlements, and appoint Plaintiffs' Interim Co-Lead Counsel as

15  Settlement Class Counsel.  *See* A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, §

16  11.25 (4th ed. 2002) ("Newberg") (outlining the steps of preliminary approval and class

17  certification, notice, and a fairness hearing, which are required prior to final approval of a class

18  settlement and are designed to safeguard the rights of absent class members).

19        **B.    Standards for Settlement Approval**

20        "[T]here is an overriding public interest in settling and quieting litigation . . .

21  particularly . . . in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

22  Cir. 1976); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The district

23  court has substantial discretion in deciding to approve a class action settlement.  *See Churchill*

24  *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Preliminary approval requires

25  only that the terms of the proposed settlement fall within the "range of possible approval."  *See*

26  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009); *In re*

27  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Preliminary approval

28  is appropriate when the terms are "sufficient to warrant public notice and a hearing."  *See*

1   *Manual for Complex Litigation*, Fourth, § 13.14 (2004) ("*Manual*").

2         Preliminary approval should be granted "[w]here the proposed settlement appears to be

3   the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

4   not improperly grant preferential treatment to class representatives or segments of the class and

5   falls within the range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176

6   F.R.D. 99, 102 (S.D.N.Y. 1997).  Application of these factors here supports preliminary

7   approval of the Settlements.  As shown below, the proposed Settlements are fair, reasonable,

8   and adequate.  Therefore, the Court should allow notice of the Settlements to be disseminated

9   to the Settlement Classes.

10         **C.**     **The Proposed Settlements are Within the Range of Reasonableness**

11         The proposed Settlements are well within the reasonable range.  First, the Settlements

12   are entitled to "an initial presumption of fairness" because they resulted from arm's length

13   negotiations among experienced counsel.  *See Newberg* § 11.41.  These negotiations occurred

14   over a span of years and collectively involved telephonic and face to face meetings; substantial

15   correspondence; and the review of industry materials, documents produced by the Settling

16   Defendants, and transactional data produced in this litigation.  The negotiations were sharply

17   contested and conducted in good faith.  Lebsock Decl. ¶ 24.  "'Great weight' is given to the

18   recommendation of counsel, who are most closely acquainted with the facts of the underlying

19   litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528

20   (C.D. Cal. 2004).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant

21   to substitute its own judgment for that of counsel." *Id.* (internal citation omitted).  Plaintiffs'

22   counsel believes that these Settlements are in the best interests of the Classes.

23         Second, the total Settlement Amount of $29,752,000 is significant and compares

24   favorably to other antitrust settlements reached prior to the close of discovery.  *See, e.g.*, *In re*

25   *Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (approving settlements with all defendants

26   totaling $9,940,000).  Moreover, the damages Plaintiffs suffered due to the Settling

27   Defendants' alleged conduct remain in the case, and, under joint and several liability, are

28   recoverable from other Defendants.  *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL

1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5, 2003) (preliminarily approving settlement agreement because, *inter alia*, "this settlement does not affect the joint and several liability of the remaining Defendants in this alleged conspiracy").

Third, the Settling Defendants must provide significant cooperation to Plaintiffs in pursuing this case against the non-settling Defendants, including attorney proffers and making witnesses available for interviews with personal knowledge relating to the allegations of conspiratorial conduct in Plaintiffs' SAC. *See* Section III.B, *supra*. "The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation will save time, reduce costs, and provide access to information regarding the transpacific air passenger conspiracy that might otherwise not be available to Plaintiffs. *See In re Mid-Atl. Toyota Antirust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (finding a defendant's agreement not to contest provision of certain discovery "is an appropriate factor for a court to consider in approving a settlement"); *In re Corrugated Container Antitrust Litig.*, M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd,* 659 F.2d 1322 (5th Cir. 1981) (finding that "[t]he cooperation clauses constituted a substantial benefit to the class").

Finally, the Settlements will not adversely affect the remainder of the case. These Settlements preserve Plaintiffs' right to litigate against non-settling Defendants for the entire amount of Plaintiffs' damages based on joint and several liability. Lebsock Decl. ¶ 25. In fact, these Settlements may aid in the ultimate resolution of this case. "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (internal quotation omitted).

For these reasons, the proposed Settlements meet the judicially established criteria for class action settlements and warrant notice of their terms to the members of the Classes.

## V.  THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASSES

The Court should provisionally certify the Settlement Classes contemplated by the

1    Settlement Agreements.  It is well-established that price-fixing actions like this are appropriate

2    for class certification.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291

3    (N.D. Cal. 2010) ("*LCD*"); *In re Static Random Access (SRAM) Antitrust Litig.*, C0701819CW,

4    2008 WL 4447592 (N.D. Cal. Sept. 29, 2008); *In re Dynamic Random Access Memory (DRAM)*

5    *Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ("*DRAM*"); *In re*

6    *Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("*Rubber Chems.*").

7          Federal Rule of Civil Procedure 23 provides that a court should certify a class action

8    where, as here, Plaintiffs satisfy the prerequisites of Rule 23(a) (numerosity, commonality,

9    typicality, and adequacy) and 23(b) (predominance and superiority).[8]  This does not involve

10   determination of whether Plaintiffs will ultimately prevail on the substantive merits of their

11   claims.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also Blackie v. Barrack*,

12   524 F.2d 891, 901 (9th Cir. 1975) (finding that on class certification motion, plaintiffs'

13   substantive allegations are accepted as true); *Rubber Chems.*, 232 F.R.D. at 350 (same).  The

14   only issue is whether Plaintiffs satisfy the Rule 23 requirements.  *Eisen*, 417 U.S. at 178.

15          A.      **The Proposed Settlement Classes Satisfy Rule 23(a)**

16                  1.   **The Classes are so numerous that joinder is impracticable.**

17          The first requirement for maintaining a class action is that its members are so numerous

18   that joinder would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Courts have generally found that

19   the numerosity requirement is satisfied when class members exceed forty.  *Newberg* § 18:4; *Or.*

20   *Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372-73

21   (D. Or. 1998).  Geographic dispersal of plaintiffs may also support a finding that joinder is

22   "impracticable."  *Rubber Chems.*, 232 F.R.D. at 350-51; *see also LCD*, 267 F.R.D. at 300

23   (stating that given the nature of the LCD market, "common sense dictates that joinder would be

24   impracticable").  Here, each Settlement Class consists of hundreds of thousands of members

25   who purchased qualifying airfare involving at least one flight segment between the United

26

27   [8] Rule 23(b)(3)'s "manageability" requirements need not be satisfied in order to certify a settlement class.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

28

1    States and Asia/Oceania.  The proposed Settlement Classes satisfy the numerosity requirement.

2                    **2.   This case involves common questions of law and fact.**

3          The second prerequisite to class certification is the existence of "questions of law or fact

4    common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has made clear that the

5    commonality requirement is to be "construed permissively." *Hanlon v. Chrysler Corp.*, 150

6    F.3d 1011, 1019 (9th Cir. 1998).  Commonality is satisfied by the existence of a single common

7    issue.  *Blackie*, 524 F.2d at 901.  "Courts consistently have held that the very nature of a

8    conspiracy antitrust action compels a finding that common questions of law and fact exist."

9    *Rubber Chems.*, 232 F.R.D. at 351 (internal citation omitted).  Here, all class members share

10   common questions of law and fact that revolve around the existence, scope, effectiveness, and

11   implementation of Defendants' conspiracy, and that are central to each class members' claims.

12   Similar questions have satisfied the commonality requirement in antitrust class actions in this

13   District.  *LCD*, 267 F.R.D. at 300 (stating "the very nature of a conspiracy antitrust action

14   compels a finding that common questions of law and fact exist") (citing *Rubber Chems.*, 232

15   F.R.D. at 351; *DRAM*, 2006 WL 1530166, at *3).

16                **3.   Representative Plaintiffs' claims are typical of the claims of the Classes.**

17         "Under [Rule 23]'s permissive standards, representative claims are 'typical' if they are

18   reasonably co-extensive with those of absent class members; they need not be substantially

19   identical."  *Hanlon*, 150 F.3d at 1020.  "Generally, the class representatives 'must be part of

20   the class and possess the same interest and suffer the same injury as the class members.'"

21   *LCD*, 267 F.R.D. at 300 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

22         Typicality is easily satisfied in horizontal price-fixing cases because "where[] it is

23   alleged that the defendants engaged in a common scheme relative to all members of the class,

24   there is a strong assumption that the claims of the representative parties will be typical of the

25   absent class members."  *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss.

26   1993);  *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct.

27   2, 1996) ("*Citric Acid*").  As such, factual differences among individual transactions or in the

28   amount of damages do not undermine typicality, so long as the damages suffered by Plaintiffs

1    and the Classes arise from the purchase of products affected by the conspiracy.  *See Armstrong*

2    *v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *DRAM*, 2006 WL 1530166, at *33.  Here,

3    Plaintiffs assert the same claims on behalf of themselves and the proposed Classes—that they

4    purchased air passenger tickets from Defendants and were overcharged due to the antitrust

5    conspiracy between the Settling Defendants and their co-conspirators.  Therefore, Plaintiffs'

6    claims are typical of the claims of the other class members, and certification is appropriate.

7            **4.    Representative Plaintiffs will fairly and adequately represent the interests**

8                    **of the Classes, and should be appointed as Class Representatives.**

9            A representative plaintiff is an adequate representative of the class if he or she: (1) does

10   not have any interests antagonistic to or in conflict with the interests of the class; and (2) is

11   represented by qualified counsel who will vigorously prosecute the class's interests.  *Hanlon*,

12   150 F.3d at 1020.  Here, representative Plaintiffs satisfy both of these requirements.  The

13   interests of Plaintiffs and Class members are aligned because they all suffered similar injury in

14   the form of higher airline ticket prices for travel from the United States to Asia/Oceania due to

15   Defendants' conspiracy, and all seek the same relief.  Plaintiffs understand the allegations in

16   this case, and have reviewed pleadings, responded to discovery, and produced the documents

17   requested. Lebsock Decl. ¶ 27.  They have been, or soon will be, deposed.  *Id.*   By proving

18   their own claims, Plaintiffs will necessarily prove the claims of their fellow Class members; as

19   such they should be named as Class Representatives for the Settlement Classes.

20           Further, Plaintiffs are represented by highly qualified counsel. Interim Co-Lead Counsel

21   have successfully prosecuted numerous antitrust class actions throughout the United States, and

22   are committed to vigorously prosecuting this action on behalf of the Classes.  They have

23   undertaken the responsibilities assigned by the Court and have directed the efforts of other

24   Plaintiffs' counsel.  Counsel's prosecution of this case, and indeed, these Settlements, amply

25   demonstrate their diligence and competence.  Therefore, the requirements of Rule 23(a)(4) are

26   satisfied.

27   ///

28   ///

**B.     The Proposed Settlement Classes Satisfy the Requirements of Rule 23(b)(3)**

**1.   Common questions of law or fact predominate over individual questions.**

"Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members." *LCD*, 267 F.R.D. at 310.  Courts have held that this issue alone is sufficient to satisfy the predominance requirement.  *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 612-614 (N.D. Cal. 2009) ("SRAM"); *Rubber Chems.*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8.  Therefore, common issues relating to the existence and effect of the alleged conspiracy on air passenger ticket prices for travel from the United States to Asia/Oceania predominate over any questions arguably affecting individual class members.  Proof of how Defendants implemented and enforced their conspiracy will also be common to the Classes and predicated on establishing the existence of Defendants' antitrust conspiracy.  These overriding issues satisfy the predominance requirement.[9]

**2.   A class action is superior to other available methods for the fair and efficient adjudication of this case.**

"[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright, Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004).  That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress."  *SRAM*, 264 F.R.D. at 615.  Here, a class action is superior to individual litigation because "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

---

[9] Potential individualized damages do not defeat predominance.  *See, e.g.*, *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (citing and discussing cases); *DRAM*, 2006 WL 1530166, at *47 (holding that courts may certify classes "regardless of whether some members of the class negotiated price individually, or whether—as here—differences among product type, customer class, and method of purchase existed.").

1    Further, requiring individual cases would deprive many class members of any practical

2    means of redress.  Because prosecution of an antitrust conspiracy against economically

3    powerful defendants is difficult and expensive, most class members would be effectively

4    foreclosed from pursuing their claims absent class certification.  *See Hanlon*, 150 F.3d at 1023

5    ("Many claims [that] could not be successfully asserted individually . . . would not only

6    unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."); *see*

7    *also SRAM*, 264 F.R.D. at 615.  Moreover, separate adjudication of claims creates a risk of

8    inconsistent rulings, which further favors class treatment.  Therefore, a class action is the

9    superior method of adjudicating the claims raised in this case.

10       **C.    The Court Should Appoint Plaintiffs' Interim Co-Lead Counsel as**

11               **Settlement Class Counsel**

12    "An order certifying a class action . . . must appoint class counsel under Rule 23(g)."

13    Rule 23(c)(1)(B).  Courts must consider (i) counsels' work in identifying or investigating

14    claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's

15    knowledge of applicable law; and (iv) the resources counsel will commit to representing the

16    class.  Fed. R. Civ. P. 23(g)(1)(A).  After considering competing motions, the Court appointed

17    Cotchett, Pitre & McCarthy and Hausfeld LLP as Interim Co-Lead Class Counsel.  *See* Dkt.

18    Nos. 130, 175.  "Class counsel's competency is presumed absent specific proof to the contrary

19    by defendants."  *Farley v. Baird, Patrick & Co., Inc.*, 90 CIV. 2168 (MBM), 1992 WL 321632,

20    at *5 (S.D.N.Y. Oct. 28, 1992).  Interim Co-Lead Counsel are willing and able to vigorously

21    prosecute this action and to devote all necessary resources.  The work they have done since

22    their appointment provides substantial basis for the Court's earlier finding that they satisfy Rule

23    23(g)'s criteria.  Accordingly, Cotchett, Pitre & McCarthy and Hausfeld LLP should be

24    appointed as Settlement Class Counsel for purposes of these Settlements.

25    **VI.   PROPOSED PLAN OF NOTICE AND PLAN OF ALLOCATION**

26    Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all

27    class members who would be bound by a proposed settlement, voluntary dismissal, or

28    compromise."  Plaintiffs' counsel will submit a notice plan to the Court in the near future.

1   Plaintiffs propose that distribution of Settlement funds be deferred until the termination of the

2   case, when there may be additional settlements from remaining Defendants to distribute, and

3   because piecemeal distribution is expensive, time-consuming, and likely to cause confusion to

4   members of the Classes.  Deferring allocation of settlement funds is a common practice in cases

5   where claims against other defendants remain.  *See Manual* § 21.651.  Although distribution

6   will be deferred, Plaintiffs propose notifying the Classes that distribution of funds will be made

7   on a *pro rata* basis.  A plan of allocation that compensates members based on the type and

8   extent of their injuries is generally considered reasonable.  *In re Citric Acid Antitrust Litig.*, 145

9   F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

10  **VII.   NOTICE COSTS, LITIGATION EXPENSES, AND ATTORNEYS' FEES**

11          Plaintiffs also move for the provisional creation of a litigation expense fund of up to $3

12  million for the reimbursement of out-of-pocket expenses incurred to date, and for payment of

13  current and  future out-of-pocket expenses that  will be incurred, with any unused funds being

14  disbursed to the Classes.  Such litigation funds have been approved in other class actions.  *See,*

15  *e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296, 303 (5th Cir. 2004) (affirming approval of class

16  settlement with $15 million of settlement proceeds going to a litigation expense fund); *In re*

17  *Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving a $1.5

18  million litigation fund "[b]ecause the remainder of the case appears to have potential value for

19  the class").  Plaintiffs' litigation fund request will be fully explained in the proposed notice

20  program.

21          Finally, Plaintiffs' counsel do not seek attorneys' fees at this time, but will seek a fee

22  award in conjunction with the approval of future settlements or at some other later date.

23  Plaintiffs' counsels' fee request will not exceed one-third of the amount of the Settlements.

24  **VIII.   CONCLUSION**

25          Based on the foregoing, Plaintiffs respectfully request that the Court:  (1) grant

26  preliminary approval of the Settlement Agreements; (2) certify the Settlement Classes; and (3)

27  appoint Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel and named Plaintiffs

28  as Class Representatives for the Settlement Classes.

1    Dated:  August 5, 2014                    Respectfully submitted,

2

3    /s/Steven N. Williams                     /s/Christopher L. Lebsock
     Joseph W. Cotchett (36324)                Michael D. Hausfeld
4    jcotchett@cpmlegal.com                    mhausfeld@hausfeldllp.com
     Pete N. McCloskey (SBN 024541)            Seth R. Gassman
5    pmccloskey@cpmlegal.com                   sgassman@hausfeldllp.com
     Steven N. Williams (175489)               **HAUSFELD LLP**
6    swilliams@cpmlegal.com                    1700 K Street, Suite 650
     **COTCHETT, PITRE & McCARTHY**            Washington, D.C. 20006
7    San Francisco Airport Office Center       Telephone: (202) 540-7200
     840 Malcolm Road, Suite 200               Facsimile:  (202) 540-7201
8    Burlingame, CA 94010
     Telephone: (650) 697-6000
9    Facsimile:  (650) 697-0577                Michael P. Lehmann (77152)
                                               mlehmann@hausfeldllp.com
10                                             Christopher Lebsock (184546)
                                               clebsock@hausfeldllp.com
11                                             **HAUSFELD LLP**
                                               44 Montgomery Street
12                                             San Francisco, CA 94111
                                               Telephone: (415) 633-1908
13                                             Facsimile:  (415) 358-4980

14                                             *Interim Co-Lead Counsel for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2
      I, Christopher Lebsock, declare that I am over the age of eighteen (18) and not a party to

3

the entitled action.  I am a partner at the law firm of HAUSFELD LLP, and my office is located

4

at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

5

6
      On August 5, 2014 I caused to be served a true and correct copy of the following:

7
   1)  **PLAINTIFFS' AMENDED NOTICE OF MOTION AND MOTION FOR
       PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS**

8      **JAPAN AIRLINES INTERNATIONAL COMPANY, LTD.; SOCIETE AIR
       FRANCE; VIETNAM AIRLINES COMPANY, LTD.; THAI AIRWAYS**

9      **INTERNATIONAL PUBLIC COMPANY, LTD.; MALAYSIAN AIRLINE
       SYSTEMS BERHAD; AND CATHAY PACIFIC AIRWAYS LIMITED;**

10     **MEMORANDUM IN SUPPORT THEREOF**

11
   2)  **AMENDED DECLARATION OF CHRISTOPHER L. LEBSOCK IN SUPPORT**

12     **OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
       SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL**

13     **COMPANY, LTD.; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY,
       LTD.; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD.;**

14     **MALAYSIAN AIRLINE SYSTEMS BERHAD; AND CATHAY PACIFIC
       AIRWAYS, LTD.**

15

16
   3)  **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF**

17     **SETTLEMENTS WITH DEFENDANTS JAPAN AIRLINES INTERNATIONAL
       COMPANY, LTD.; SOCIETE AIR FRANCE; VIETNAM AIRLINES COMPANY,**

18     **LTD.; THAI AIRWAYS INTERNATIONAL PUBLIC COMPANY, LTD.;
       MALAYSIAN AIRLINE SYSTEMS BERHAD; AND CATHAY PACIFIC**

19     **AIRWAYS, LIMITED**

20
   4)  **CERTIFICATE OF SERVICE**

21

22
with the Clerk of the Court using the Official Court Electronic Document Filing System which

23
served copies on all interested parties registered for electronic filing.

24
      I declare under penalty of perjury, under the laws of the State of California, that the

25
foregoing is true and correct.

26
      Executed on August 5, 2014 at San Francisco, California.

27
                                    */s/ Christopher Lebsock*

28                                  Christopher Lebsock