Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
Adam J. Zapala (245748)
azapala@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Michael P. Lehmann (77152)          Michael D. Hausfeld
mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
Christopher Lebsock (184546)        Seth R. Gassman
clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
**HAUSFELD LLP**                    **HAUSFELD LLP**
44 Montgomery Street                1700 K Street, Suite 650
San Francisco, CA 94111             Washington, D.C. 20006
Telephone: (415) 633-1908           Telephone: (202) 540-7200
Facsimile: (415) 358-4980           Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-CV-05634-CRB |
| | MDL 1913 |
| _____ | |
| **This Document Relates To:** | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS QANTAS AIRWAYS LIMITED AND SINGAPORE AIRLINES LIMITED; AND MEMORANDUM IN SUPPORT THEREOF** |
| **All Actions** | |
| | Hearing Date: Friday November 14, 2014 |
| | Judge:       Hon. Charles R. Breyer |
| | Time:        10:00 a.m. |
| | Courtroom:   6, 17th Floor |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday November 14, 2014 at 10:00 a.m., before the Honorable Charles R. Breyer, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1. Granting preliminary approval of the settlement agreements ("Class Settlements") with Defendants (1) Qantas Airways Limited and (2) Singapore Airlines Limited;

2. Certifying the Settlement Classes;

3. Appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel and named Plaintiffs to serve as Class Representatives on behalf of the Settlement Classes; and

4. Provisionally establishing a litigation expense fund in the amount of $3 million to reimburse Plaintiffs for litigation expenses that will be incurred prosecuting this action against Non-Settling Defendants after final approval of these Class Settlements.

The motion should be granted because the proposed Class Settlements are within the range of reasonableness. The motion is supported by: (i) this Notice of Motion and Motion, (ii) the supporting Memorandum of Points and Authorities, (iii) the accompanying Declaration of Christopher L. Lebsock, (iv) the Class Settlements with Defendants (a) Qantas Airways Limited and (b) Singapore Airlines Limited; (v) the Court's August 13, 2014 Order granting Plaintiffs' Amended Motion for Preliminary Approval of Settlements, *see* ECF Nos. 921, 924; (v) any further papers filed in support of this Motion, (vi) the argument of counsel, and (vii) all matters of record in this action.

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ..........................................................................vii

SUMMARY OF ARGUMENT ........................................................................................................viii

I.      INTRODUCTION ...............................................................................................................1

II.     SETTLEMENT NEGOTIATIONS ...................................................................................1

III.    THE SETTLEMENT AGREEMENTs.............................................................................2

       A.      The Settlement Classes ..........................................................................2

       B.      Consideration Provided by the Settlement Agreements .........................3

       C.      Releases for the Settling Defendants ......................................................4

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS...........4

       A.      Class Action Settlement Procedure.........................................................4

       B.      Standards for Settlement Approval.........................................................4

       C.      The Proposed Settlements are Within the Range of Reasonableness ....................5

V.     THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASSES ...........................................................................................................7

       A.      The Proposed Settlement Classes Satisfy Rule 23(a) ...........................8

             1.      The Classes are so numerous that joinder is impracticable ......................8

             2.      This case involves common questions of law and fact .............................8

             3.      Representative Plaintiffs' claims are typical of the claims of the Classes..........................................................................................................8

             4.      Representative Plaintiffs will fairly and adequately represent the interests of the Classes, and should be appointed as Class Representatives ...........9

       B.      The Proposed Settlement Classes Satisfy the Requirements of Rule 23(b)(3)....10

             1.      Common questions of law or fact predominate over individual questions ...................................................................................................10

             2.      A class action is superior to other available methods for the fair and efficient adjudication of this case. ..........................................................11

       C.      The Court Should Appoint Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel..........................................................................................................11

VI.    PROPOSED PLAN OF NOTICE AND PLAN OF ALLOCATION ..............................12

VII.   CONCLUSION ..............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ...................................................................................7

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................................7

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................................9

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................................7, 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................5

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................viii, 5

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..............................................................................................7

*Farley v. Baird, Patrick & Co., Inc.*,
   90 CIV. 2168 (MBM), 1992 WL 321632 (S.D.N.Y. Oct. 28, 1992)...................11

*Hanlon v. Chrysler Corp.*,
   150 F. 3d 1011 (9th Cir. 1998) ....................................................................viii, 8, 9, 11

*In re Auto. Refinishing Paint Antitrust Litig.*,
   MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ...................................6

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993).....................................................................9

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...............................................................12

*In re Citric Acid Antitrust Litig.*,
   No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) .................................9, 10

*In re Corrugated Container Antitrust Litig.*,
   M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981), *aff'd,* 659 F.2d 1322 (5th Cir.
   1981) .....................................................................................................................6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ........................viii, 7, 8, 9, 10

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................... 6

*In re Mid-Atl. Toyota Antirust Litig.*,
564 F. Supp. 1379 (D. Md. 1983) .................................................................... 6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................... 5, 6

*In re Rubber Chemicals Antitrust Litig.*,
232 F.R.D. 346, 350 (N.D. Cal. 2005)................................................viii, 7, 8, 10

*In re Static Random Access (SRAM) Antitrust Litig.*,
C0701819CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ............................ 7

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)..........................................................viii, 10, 11

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010)..........................................................viii, 7, 8, 9, 10

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ................................................................... 12

*In re Visa Check/Master Money Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)........................................................................... 10

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ........................................................................ 11

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 5, 6

*Or. Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris, Inc.*,
188 F.R.D. 365 (D. Or. 1998) ......................................................................... 8

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) .......................................................................... 5

*Vasquez v. Coast Valley Roofing, Inc.*,
670 F. Supp. 2d 1114 (E.D. Cal. 2009)............................................................ 5

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ 1, 7

Fed. R. Civ. P.  23(a) ............................................................................................. 7

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 8

Fed. R. Civ. P. 23(a)(2) ......................................................................................... 8

Fed. R. Civ. P.  23(a)(4) ........................................................................................ 10

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 7, 11

Fed. R. Civ. P.  23(c)(1)(B) .................................................................................. 11

Fed. R. Civ. P. 23(e) ............................................................................................. 4

Fed. R. Civ. P. 23(e)(1) ......................................................................................... 12

Fed. R. Civ. P.  23(g) ............................................................................................ 12

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................... 11

**OTHER AUTHORITIES**

A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002)
    ("Newberg") ............................................................................................... 4, 5, 8

*Manual for Complex Litigation*, Fourth, § 13.14 (2004) ........................................ 5

Wright, Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at
    254-55 (3d ed. 2004) ................................................................................... 11

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the proposed Class Settlements fall within the "range of possible approval," and should, therefore, be preliminarily approved by the Court?

2.     Whether the proposed Settlement Classes meet the requirements of Federal Rule of Civil Procedure 23(a) and (b), and should be provisionally certified for settlement purposes?

3.     Whether Plaintiffs' Interim Lead Counsel should be appointed as Settlement Class Counsel and named Plaintiffs appointed as Class Representatives on behalf of the Settlement Classes?

4.     Whether there is cause to provisionally establish a litigation expense fund and the proper amount of such fund that should be provisionally established by the Court?

1

## SUMMARY OF ARGUMENT

2

3       The Court should preliminarily approve the Class Settlements set forth more fully below

4    because they are within the range of possible approval and justify giving notice to the Class and

5    holding a fairness hearing. These Class Settlements, like those preliminarily approved by the

6    Court on August 11, 2014, *see* ECF Nos. 921, 924, are the result of informed and contested

7    negotiations, and are fair, reasonable, and adequate, *see generally* Declaration of Christopher L.

8    Lebsock, Sept. 2, 2014 ("Lebsock Decl."); *see also, e.g.*, *Class Plaintiffs v. City of Seattle*, 955

9    F.2d 1268, 1276 (9th Cir. 1992). The monetary recovery for the class is significant, and the

10   cooperation set forth in the agreements greatly strengthens Plaintiffs' alleged case against the

11   non-Settling Defendants.

12       Additionally, Rule 23(a)'s requirements of numerosity, commonality, typicality, and

13   adequacy are met. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *In

14   re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300 (N.D. Cal. 2010); *In re Rubber

15   Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005). Likewise Rule 23(b) is

16   satisfied because common questions predominate and a class action is superior to pursuing

17   numerous individual cases. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust

18   Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009); *In re Dynamic Random Access Memory (DRAM)

19   Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006). And finally,

20   pursuant to Rule 23(g), and based on their experience and vigorous prosecution of this action,

21   Interim Co-Lead Counsel, Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP should be

22   appointed as Settlement Class Counsel for purposes of the Class Settlements, and named

23   Plaintiffs should be appointed as Class Representatives for the Settlement Classes.

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs hereby move this Court for an order preliminarily approving the Class Settlements reached with Defendants Qantas Airways Limited ("Qantas") and Singapore Airlines Limited ("SQ") (collectively, "Settling Defendants").  Copies of the Class Settlement are attached to the Lebsock Decl. filed herewith, as Exhibits 1 and 2, respectively. These Class Settlements resolve all claims brought by Plaintiffs against Settling Defendants.  The SQ Settlement Agreement provides for a payment to the Class defined therein of $9,200,000, and the Qantas Settlement Agreement provides for a payment to the Class defined therein of $550,000, plus an additional $100,000 towards the cost of class notice—bringing the total class recovery to $39,502,000 in this case. *See* Lebsock Decl. ¶¶ 4, 7, 9; *see also* ECF Nos. 921, 924. In addition, Settling Defendants have agreed to cooperate with Plaintiffs by providing information relating to the existence, scope, and implementation of the conspiracy alleged in the Second Amended Consolidated Class Action Complaint ("SAC"). *See* Lebsock Decl. ¶ 10.

These Class Settlements are within the range of possible approval and in the best interests of the Class. Accordingly, Plaintiffs seek an order: (1) preliminarily approving the Class Settlements; (2) preliminarily certifying the Settlement Classes; and (3) appointing Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel and Plaintiffs as Class Representatives.[1]

### II.   SETTLEMENT NEGOTIATIONS

Plaintiffs' Interim Co-Lead Counsel ("Class Counsel") and counsel for each Settling Defendant engaged in extensive arm's length negotiations before reaching these Class Settlements. *See* Lebsock Decl. ¶¶ 3-9 (describing negotiation scope and details).  Class Counsel and defense counsel, all experienced and skilled attorneys, vigorously advocated their respective clients' positions. Initial settlement negotiations in this case began in 2013 with counsel for

---

[1] Plaintiffs will submit a proposed notice plan and plan of allocation to the Court shortly. Plaintiffs' Counsel have retained Kinsella Media prepare the notice program.

Qantas and in 2014 with counsel for SQ, and continued through August 2014, and were conducted via telephone conferences, in-person meetings, and written correspondence. *See id.* ¶¶ 3-9, 11.

Plaintiffs spent significant time investigating the claims against each Settling Defendant. *See id.* ¶¶ 2-3, 6. Class Counsel had significant knowledge of Settling Defendants' alleged conspiratorial conduct, as well as the strengths and weaknesses of Plaintiffs' claims and Settling Defendants' asserted defenses. *See id.* ¶¶ 5, 8, 11. Class Counsel used extensive proffer sessions with Japan Airlines International Company in conjunction with voluminous document productions and numerous depositions to evaluate each Settling Defendant's position and negotiate settlements with each individual Defendant that were fair in light of their relevant circumstances. *See id.* ¶¶ 5, 8, 12. Class Counsel believe that these Class Settlements, which bring the Class's total recovery to over $39 million—and provide for further cooperation obligations from Settling Defendants that will assist Plaintiffs in prosecuting this action against the non-settling defendants—are fair, reasonable, and adequate to the Settlement Classes. *See id.* ¶¶ 3-9; *see also* ECF Nos. 921, 924.

## III.   THE SETTLEMENT AGREEMENTS

The proposed Class Settlements resolve certain claims against Settling Defendants in the alleged conspiracy to fix or stabilize prices for air passenger travel, including associated surcharges, for international flights involving at least one flight segment between the United States and Asia/Oceania. *See* Lebsock Decl. ¶¶ 3-9; *id.* Ex. 1 ¶ 3; *id.* Ex. 2 ¶ 3. The Classes will receive $9,750,000 in total from both settlements, as well as certain cooperation. *See id.* ¶¶ 5, 8, 10. The terms of the Agreements are outlined below.

### A.   The Settlement Classes

The proposed Settlement Classes are defined as follows:

QANTAS SETTLEMENT CLASS
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are

purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are government entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.[2]

SQ SETTLEMENT
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.[3]

**B.     Consideration Provided by the Settlement Agreements**

Together, the Settling Defendants agreed to pay $9,750,000, with SQ paying $9,200,000, and Qantas paying $550,000 plus an additional $100,000 towards the cost of providing class notice. Lebsock Decl. ¶¶ 5, 8. The Settlements also confer significant non-monetary benefits.  Settling Defendants have agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to Plaintiffs' allegations, including through (1) attorney proffers by Qantas's counsel and limited meetings with SQ's counsel upon request; (2) interviews of persons with knowledge regarding the allegations in Plaintiffs' SAC, to the extent any persons have such knowledge; and (3) assistance in establishing the authenticity and admissibility of the documents that have been produced.  *See id.* ¶ 10; *id.* Ex. 1 ¶ 14; *id.* Ex. 2 ¶ 14.

For example, the SQ Settlement Agreement provides that SQ will make up to two employees available to "provide information about Plaintiffs' substantive allegations," or will meet and confer with plaintiffs on making available up to two employees with knowledge of the factual matters asserted by any Defendant(s) seeking summary disposition of these Actions, to the extent that SQ has such knowledge, or "to authenticate documents"

---

[2] *See* Lebsock Decl. Ex. 1 ¶ 3 (Qantas Settlement Agreement).
[3] *See* Lebsock Decl. Ex. 2 ¶ 3 (SQ Settlement Agreement).

1  including at trial "in person, by deposition or by affidavit, whichever is legally required".

2  *Id.* Ex. 2 ¶ 14.1(e).  The Qantas Settlement Agreement provides that Qantas will make up to

3  two employees available for consultation with Plaintiffs. Ex. 1 ¶ 14.1(d).  The Qantas

4  agreement also provides for up to three meetings (totaling twelve hours) for attorney

5  proffers with Qantas' counsel. *Id.* Ex. 1 ¶ 14.1(c); *see also* Ex. 2 ¶ 14.1(d) (same for SQ).

6  These cooperation clauses are a substantial benefit to Plaintiffs.

7      **C.    Releases for the Settling Defendants**

8      Plaintiffs agreed to release Qantas and SQ from all claims arising from or relating to the

9  pricing of passenger air transportation between the United States and Asia/Oceania to the

10  extent that the travel originated in the United States with respect to the pricing of fuel

11  surcharges or any other element or component of pricing that were or could have been alleged

12  in the SAC. *See* Lebsock Decl. Ex. 1 ¶¶ 1.10, 9; Ex. 2 ¶¶ 1.10, 9. The Settlement Agreements

13  specifically preserve Settlement Class members' rights against any alleged co-conspirator or

14  non-Settling Defendant.  *See id.* Ex. 1 ¶ 9; Ex. 2 ¶ 10. Furthermore, Settling Defendants'

15  passenger air transportation commerce remain in the case as a potential basis for joint and

16  several liability damage claims against the non-settling Defendants. *See id.* ¶ 13.

17  **IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS**

18      **A.    Class Action Settlement Procedure**

19      Proposed class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e).

20  Plaintiffs respectfully request that the Court certify the proposed Settlement Classes,

21  preliminarily approve the Class Settlements, appoint Plaintiffs' Interim Co-Lead Counsel as

22  Settlement Class Counsel, and appoint Plaintiffs as Settlement Class Representatives.  *See* A.

23  Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002) ("Newberg")

24  (outlining the steps of preliminary approval and class certification, notice, and a fairness hearing,

25  which are required prior to final approval of a class settlement and are designed to safeguard the

26  rights of absent class members).

27      **B.    Standards for Settlement Approval**

28      "[T]here is an overriding public interest in settling and quieting litigation . . .

particularly . . . in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

Cir. 1976); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The district

court has substantial discretion in deciding to approve a class action settlement. *See Churchill*

*Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Preliminary approval requires

only that the terms of the proposed settlement fall within the "range of possible approval." *See*

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009); *In re*

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Preliminary approval

is appropriate when the terms are "sufficient to warrant public notice and a hearing." *See*

*Manual for Complex Litigation*, Fourth, § 13.14 (2004).

   Preliminary approval should be granted "[w]here the proposed settlement appears to be

the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

not improperly grant preferential treatment to class representatives or segments of the class and

falls within the range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176

F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here supports preliminary

approval of the Class Settlements; as shown below, the proposed Settlements are fair,

reasonable, and adequate. *See, e.g.*, ECF Nos. 921, 924. Therefore, the Court should allow

notice of the Class Settlements to be disseminated to the Settlement Classes.

### C.     The Proposed Settlements are Within the Range of Reasonableness

   The proposed Settlements are well within the range of reasonableness. First, the

Settlements are entitled to "an initial presumption of fairness" because they resulted from arm's

length negotiations among experienced counsel. *See* Newberg § 11.41; *see also* Lebsock Decl.

¶¶ 4, 7, 11. These negotiations occurred over a span of years and collectively involved

telephonic and face to face meetings; substantial correspondence; and the review of industry

materials, documents produced by the Settling Defendants, and transactional data produced in

this litigation. *See id.* The negotiations were sharply contested and conducted in good faith. *See*

*id.* "'Great weight' is given to the recommendation of counsel, who are most closely acquainted

with the facts of the underlying litigation." *Nat'l Rural Telecommunications Coop. v.*

*DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, "the trial judge, absent fraud,

1    collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

2    (internal citation omitted).  Plaintiffs' counsel believes that these Class Settlements are in the

3    best interests of the Settlement Classes. *See* Lebsock Decl. ¶¶ 4, 7.

4        Second, the Class Settlements bring the total recovery in this case to over $39 million; a

5    significant number that compares favorably to other antitrust settlements reached prior to the

6    close of discovery. *See, e.g.*, *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99

7    (approving settlements with all defendants totaling $9,940,000). Moreover, Settling

8    Defendants' commerce remains in the case and, under principles of joint and several liability,

9    can be used as a basis for damages claims against non-settling Defendants.  *See In re Auto.*

10   *Refinishing Paint Antitrust Litig.*, MDL 1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5,

11   2003) (preliminarily approving settlement agreement because, *inter alia*, "this settlement does

12   not affect the joint and several liability of the remaining Defendants in this alleged

13   conspiracy").

14       Third, the Settling Defendants must provide certain cooperation to Plaintiffs in pursuing

15   this case against the non-settling Defendants, including making witnesses available for

16   interviews.  *See* Section III.B, *supra*.  "The provision of such assistance is a substantial

17   benefit to the classes and strongly militates toward approval of the Settlement Agreement."

18   *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation

19   will save time, reduce costs, and provide access to information regarding the alleged

20   transpacific air passenger conspiracy that might otherwise not be available to Plaintiffs. *See*

21   *In re Mid-Atl. Toyota Antirust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (finding a

22   defendant's agreement not to contest provision of certain discovery "is an appropriate

23   factor for a court to consider in approving a settlement"); *In re Corrugated Container*

24   *Antitrust Litig.*, M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd,* 659 F.2d

25   1322 (5th Cir. 1981) (finding that "[t]he cooperation clauses constituted a substantial benefit to

26   the class").

27       Finally, the Class Settlements will not adversely affect the remainder of the case. These

28   Settlements preserve Plaintiffs' right to litigate against non-settling Defendants for the entire

amount of Plaintiffs' damages based on joint and several liability. Lebsock Decl. ¶ 12. In fact, these Settlements may aid in the ultimate resolution of this case. *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'") (internal quotation omitted).

For these reasons, the proposed Settlements meet the judicially established criteria for class action settlements and warrant notice of their terms to the members of the Classes.

## V.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASSES

The Court should provisionally certify the Settlement Classes contemplated by the Settlement Agreements.  It is well-established that price-fixing actions like this are appropriate for class certification. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010) ("*LCD*"); *In re Static Random Access (SRAM) Antitrust Litig.*, C0701819CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ("*DRAM*"); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("*Rubber Chems.*").

Federal Rule of Civil Procedure 23 provides that a court should certify a class action where, as here, Plaintiffs satisfy the prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and 23(b) (predominance and superiority).[4] This does not involve determination of whether Plaintiffs will ultimately prevail on the substantive merits of their claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (finding that on class certification motion, plaintiffs' substantive allegations are accepted as true); *Rubber Chems.*, 232 F.R.D. at 350 (same). The only issue is whether Plaintiffs satisfy the Rule 23 requirements. *Eisen*, 417 U.S. at 178.

---

[4] Rule 23(b)(3)'s "manageability" requirements need not be satisfied in order to certify a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

1      **A.**    **The Proposed Settlement Classes Satisfy Rule 23(a)**

2        **1.**  **The Classes are so numerous that joinder is impracticable**

3      The first requirement for maintaining a class action is that its members are so numerous

4  that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found that

5  the numerosity requirement is satisfied when class members exceed forty.  Newberg § 18:4; *Or.*

6  *Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372-73

7  (D. Or. 1998). Geographic dispersal of plaintiffs may also support a finding that joinder is

8  "impracticable." *Rubber Chems.*, 232 F.R.D. at 350-51; *see also LCD*, 267 F.R.D. at 300

9  (stating that given the nature of the LCD market, "common sense dictates that joinder would be

10  impracticable"). Here, each Settlement Class consists of hundreds of thousands of members

11  who purchased qualifying airfare involving at least one flight segment between the United

12  States and Asia/Oceania. The proposed Settlement Classes satisfy the numerosity requirement.

13        **2.**  **This case involves common questions of law and fact**

14      The second prerequisite to class certification is the existence of "questions of law or fact

15  common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made clear that the

16  commonality requirement is to be "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.

17  3d 1011, 1019 (9th Cir. 1998). Commonality is satisfied by the existence of a single common

18  issue. *Blackie*, 524 F. 2d at 901. "Courts consistently have held that the very nature of a

19  conspiracy antitrust action compels a finding that common questions of law and fact exist."

20  *Rubber Chems.*, 232 F.R.D. at 351 (internal citation omitted).  Here, all class members share

21  common questions of law and fact that revolve around the existence, scope, effectiveness, and

22  implementation of Defendants' alleged conspiracy, and that are central to each class members'

23  claims.  Similar questions have satisfied the commonality requirement in antitrust class actions

24  in this District. *LCD*, 267 F.R.D. at 300 (stating "the very nature of a conspiracy antitrust action

25  compels a finding that common questions of law and fact exist") (citing *Rubber Chems.*, 232

26  F.R.D. at 351; *DRAM*, 2006 WL 1530166, at *3).

27        **3.**  **Representative Plaintiffs' claims are typical of the claims of the Classes**

28      "Under [Rule 23]'s permissive standards, representative claims are 'typical' if they are

reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Generally, the class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *LCD*, 267 F.R.D. at 300 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

Typicality is easily satisfied in horizontal price-fixing cases because "where[] it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993);  *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996). As such, factual differences among individual transactions or in the amount of damages do not undermine typicality, so long as the damages suffered by Plaintiffs and the Classes arise from the purchase of products affected by the conspiracy. *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *DRAM*, 2006 WL 1530166, at *33. Here, Plaintiffs assert the same claims on behalf of themselves and the proposed Settlement Classes—that they purchased air passenger tickets from Defendants and were overcharged due to the alleged antitrust conspiracy between the Defendants and their co-conspirators.  Therefore, Plaintiffs' claims are typical of the claims of the other class members, and certification is appropriate.

### 4.   Representative Plaintiffs will fairly and adequately represent the interests of the Classes, and should be appointed as Class Representatives

A representative plaintiff is an adequate representative of the class if he or she: (1) does not have any interests antagonistic to or in conflict with the interests of the class; and (2) is represented by qualified counsel who will vigorously prosecute the class's interests. *Hanlon*, 150 F.3d at 1020. Here, representative Plaintiffs satisfy both of these requirements. The interests of Plaintiffs and Settlement Class members are aligned because they all suffered similar injury in the form of higher airline ticket prices for travel from the United States to Asia/Oceania due to Defendants' alleged conspiracy, and all seek the same relief. Plaintiffs understand the allegations in this case, and have reviewed pleadings, responded to discovery, and produced the documents requested. Lebsock Decl. ¶ 15. By proving their own claims,

Plaintiffs will necessarily prove the claims of their fellow Settlement Class members; as such they should be named as Class Representatives for the Settlement Classes.

Further, Plaintiffs are represented by highly qualified counsel. Interim Co-Lead Counsel have successfully prosecuted numerous antitrust class actions throughout the United States, and are committed to vigorously prosecuting this action on behalf of the Classes.  They have undertaken the responsibilities assigned by the Court and have directed the efforts of other Plaintiffs' counsel. Counsel's prosecution of this case, and indeed, these Settlements, amply demonstrate their diligence and competence. The requirements of Rule 23(a)(4) are satisfied.

**B.      The Proposed Settlement Classes Satisfy the Requirements of Rule 23(b)(3)**

**1.   Common questions of law or fact predominate over individual questions**

"Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members." *LCD*, 267 F.R.D. at 310. Courts have held that this issue alone is sufficient to satisfy the predominance requirement. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 612-614 (N.D. Cal. 2009) ("SRAM"); *Rubber Chems.*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8. Therefore, common issues relating to the existence and effect of the alleged conspiracy on air passenger ticket prices for travel from the United States to Asia/Oceania predominate over any questions arguably affecting individual class members. Proof of how Defendants implemented and enforced their alleged conspiracy will also be common to the Classes and predicated on establishing the existence of Defendants' antitrust conspiracy. These overriding issues satisfy the predominance requirement.[5]

---

[5] Potential individualized damages do not defeat predominance.  *See, e.g.*, *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (citing and discussing cases); *DRAM*, 2006 WL 1530166, at *47 (holding that courts may certify classes "regardless of whether some members of the class negotiated price individually, or whether—as here—differences among product type, customer class, and method of purchase existed.").

2.   **A class action is superior to other available methods for the fair and efficient adjudication of this case**

 "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright, Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004). That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *SRAM*, 264 F.R.D. at 615.  Here, a class action is superior to individual litigation because "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Further, requiring individual cases would deprive many class members of any practical means of redress. Because prosecution of an antitrust conspiracy against economically powerful defendants is difficult and expensive, most class members would be effectively foreclosed from pursuing their claims absent class certification. *See Hanlon*, 150 F.3d at 1023 ("Many claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."); *see also SRAM*, 264 F.R.D. at 615. Moreover, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class treatment.  Therefore, a class action is the superior method of adjudicating the claims raised in this case.

C.   **The Court Should Appoint Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel**

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(c)(1)(B).  Courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). After considering competing motions, the Court appointed Cotchett, Pitre & McCarthy and Hausfeld LLP as Interim Co-Lead Class Counsel.  *See* Dkt.

Nos. 130, 175. "Class counsel's competency is presumed absent specific proof to the contrary by defendants." *Farley v. Baird, Patrick & Co., Inc.*, 90 CIV. 2168 (MBM), 1992 WL 321632, at *5 (S.D.N.Y. Oct. 28, 1992). Interim Co-Lead Counsel are willing and able to vigorously prosecute this action and to devote all necessary resources. The work they have done since their appointment provides substantial basis for the Court's earlier finding that they satisfy Rule 23(g)'s criteria. Accordingly, Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP should be appointed as Settlement Class Counsel for purposes of these Class Settlements.

## VI.     PROPOSED PLAN OF NOTICE AND PLAN OF ALLOCATION

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Plaintiffs' counsel will submit a comprehensive notice and allocation plan to the Court in the near future.  Plaintiffs propose that distribution of Settlement funds be deferred until the termination of the case, when there may be additional settlements from remaining Defendants to distribute, and because piecemeal distribution is expensive, time-consuming, and likely to cause confusion to members of the Settlement Classes. A plan of allocation that compensates members based on the type and extent of their injuries is generally considered reasonable.  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

Plaintiffs will seek attorneys' fees and costs in conjunction with final approval of the class settlements, not to exceed one-third of the settlement amounts, and will post their motion for attorneys' fees and costs on the settlement website two weeks prior to the deadline for objections to the settlement. Plaintiffs' counsel also intend to seek incentive awards for those Plaintiffs appointed as Class Representatives, not to exceed $7,500 per representative. *See, e.g.*, *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) ("it is well-established that the court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation"). Finally, Plaintiffs intend to request $3 million in conjunction with final

1   approval of the settlements to cover the cost of prosecuting this action against the Non-Settling

2   Defendants.  These matters will be explained in the class notice.

3   **VII.   CONCLUSION**

4       Based on the foregoing, Plaintiffs respectfully request that the Court:  (1) grant

5   preliminary approval of the Settlement Agreements; (2) certify the Settlement Classes; and (3)

6   appoint Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel and named Plaintiffs

7   as Class Representatives for the Settlement Classes.

8   Dated:  September 16, 2014                                     Respectfully submitted,

9

10  /s/*Steven N. Williams*                                      /s/*Christopher L. Lebsock*
    Joseph W. Cotchett (36324)                          Michael D. Hausfeld
11  jcotchett@cpmlegal.com                              mhausfeld@hausfeldllp.com
    Steven N. Williams (175489)                         Seth R. Gassman
12  swilliams@cpmlegal.com                              sgassman@hausfeldllp.com
    Adam J. Zapala (245748)                             **HAUSFELD LLP**
13  azapala@cpmlegal.com                                1700 K Street, Suite 650
    **COTCHETT, PITRE & McCARTHY**          Washington, D.C. 20006
14  San Francisco Airport Office Center                 Telephone: (202) 540-7200
    840 Malcolm Road, Suite 200                         Facsimile:  (202) 540-7201
15  Burlingame, CA 94010
    Telephone: (650) 697-6000
16  Facsimile:  (650) 697-0577                          Michael P. Lehmann (77152)
                                                        mlehmann@hausfeldllp.com
17                                                      Christopher Lebsock (184546)
                                                        clebsock@hausfeldllp.com
18                                                      **HAUSFELD LLP**
                                                        44 Montgomery Street
19                                                      San Francisco, CA 94111
                                                        Telephone: (415) 633-1908
20                                                      Facsimile:  (415) 358-4980

21                                                      *Interim Co-Lead Counsel for Plaintiffs*

22

23

24

25

26

27

28

Plaintiffs' Notice of Motion & Motion for
Preliminary Approval of Settlements with
Defendants                                    13                    MASTER FILE NO. 3:07-CV-05634-CRB

1

**CERTIFICATE OF SERVICE**

2

I, Christopher Lebsock, declare that I am over the age of eighteen (18) and not a party to

3

the entitled action.  I am a partner at the law firm of HAUSFELD LLP, and my office is located

4

at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

5

6

On September 16, 2014, I caused to be served a true and correct copy of the following:

7

1)  **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS QANTAS AIRWAYS LIMITED AND SINGAPORE AIRLINES LIMITED; AND MEMORANDUM OF SUPPORT THEREOF**

8

9

10

2)  **DECLARATION OF CHRISTOPHER L. LEBSOCK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS QANTAS AIRWAYS LIMITED AND SINGAPORE AIRLINES LIMITED**

11

12

13

3)  **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS QANTAS AIRWAYS LIMITED AND SINGAPORE AIRLINES LIMITED**

14

15

4)  **CERTIFICATE OF SERVICE**

16

17

with the Clerk of the Court using the Official Court Electronic Document Filing System which

18

served copies on all interested parties registered for electronic filing.

19

I declare under penalty of perjury, under the laws of the State of California, that the

20

foregoing is true and correct.

21

Executed on September 16, 2014 at San Francisco, California.

22

23

_/s/ Christopher Lebsock_

Christopher Lebsock

24

25

26

27

28