1    JOSEPH W. COTCHETT (36324)
     STEVEN N. WILLIAMS (175489)
2    ADAM J. ZAPALA (245748)
     **COTCHETT, PITRE & McCARTHY, LLP**
3    San Francisco Airport Office Center
     840 Malcolm Road, Suite 200
4    Burlingame, CA 94010
     Telephone:  650-697-6000
5    Facsimile:   650-697-0577
     jcotchett@cpmlegal.com
6    swilliams@cpmlegal.com
     azapala@cpmlegal.com
7
     MICHAEL D. HAUSFELD                    MICHAEL P. LEHMANN (77152)
8    SETH R. GASSMAN                        CHRISTOPHER L. LEBSOCK (184546)
     **HAUSFELD LLP**                       **HAUSFELD LLP**
9    1700 K. Street, N.W., Suite 650        44 Montgomery Street, Suite 3400
     Washington, D.C. 20006                 San Francisco CA  94104
10   Tel: (202) 540-7200                    Tel: (415) 633-1908
     Fax: (202) 540-7201                    Fax: (415) 358-4980
11   mhausfeld@hausfeldllp.com              mlehmann@hausfeldllp.com
     sgassman@hausfeldllp.com               clebsock@hausfeldllp.com
12
13   *Interim Co-Lead Counsel for Plaintiffs*

14                  **UNITED STATES DISTRICT COURT**

15              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 17  **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB |
| 18 | **MDL No. 1913** |
| 19 | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF** |
| 20  **This Document Relates to:** | **ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CLASS** |
| 21        **All Actions** | **REPRESENTATIVE INCENTIVE AWARDS; MEMORANDUM OF POINTS AND** |
| 22 | **AUTHORITIES IN SUPPORT THEREOF** |
| 23 | **Date:    May 22, 2015** |
| 24 | **Time:    10:00 am** **Courtroom: 6, 17th Floor** |

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

     **PLEASE TAKE NOTICE** that at 10:00 am on May 22, 2015, in connection with a

4

hearing on final approval of the settlements, Plaintiffs and their counsel ("Class Counsel") will

5

move, and hereby do move, this Court before the Honorable Charles R. Breyer, United States

6

District Judge, at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 6 (17th

7

Floor), San Francisco, California, for an award of attorneys' fees of $13,154,166, totaling 33.3%

8

of the Settlement Fund, reimbursement of litigation expenses in the amount of $2,807,699.73,

9

final approval of the establishment of a litigation expense fund in the amount of $3,000,000 for

10

future expenses to be used in ongoing litigation against the non-Settling Defendants that was

11

provisionally approved on October 14, 2014 (ECF No. 951), and incentive payments to the Class

12

Representatives of $7,500 for their time and effort representing the Class throughout this

13

litigation.  This motion is brought pursuant to Fed. R. Civ. Proc. 23(h), 54(b) and 54(d)(2).

14

     The motion should be granted because (a) the requested attorneys' fees are fair and

15

reasonable in light of Class Counsel's extensive and longstanding efforts to create a Settlement

16

Fund of $39,502,000; (b) the requested fees comport with Ninth Circuit case law developed in

17

similar common fund litigation, (c) the expenses for which reimbursement is sought were

18

reasonably and necessarily incurred in connection with the prosecution of this Action; and (d) a

19

reasonable incentive payment of $7,500 to each Class Representative for their efforts on behalf of

20

the Class is warranted and appropriate.

21

     This motion is based upon this Memorandum of Points and Authorities; the Declarations

22

of Steven N. Williams and Christopher L. Lebsock; the Declarations of Supporting Class

23

Counsel; the [proposed] order submitted herewith; and such other records, pleadings, and papers

24

filed in this action; and upon such argument and further pleadings as may be presented to the

25

Court at the hearing on this motion.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................3

        A.      Litigation History ..................................................................................3

                1.      Pre-Complaint Investigation, Early Complaints, Service of Process, and the Judicial Panel on Multidistrict Litigation ("JPML").....................3

                2.      Appointment of Leadership ........................................................3

                3.      The Consolidated Complaints and Two Rounds of Motions to Dismiss.....3

                4.      The Discovery Process................................................................5

                5.      Summary Judgment Proceedings Regarding the Filed-Rate Doctrine .......8

        B.      Settlement History ..................................................................................8

III.   ARGUMENT ......................................................................................................9

        A.      The Ninth Circuit Recognizes the Common Fund Doctrine and a Percentage-of-the-Recovery as the Predominant Method for Determining Attorneys' Fees in Class Action Cases.................................................................................9

        B.      Application of the Pertinent Factors Demonstrates that an Upward Adjustment of the Benchmark is Justified................................................................10

                1.      Class Counsel Achieved an Excellent Recovery for the Class .................11

                2.      A High Level of Skill Was Required to Prosecute This Case .................12

                3.      The Risks of this Litigation........................................................12

                4.      Contingent Nature of the Fee .....................................................13

                5.      The High Quality of the Work Performed .................................13

                6.      The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee .......................................................................13

        C.      Class Counsel Are Entitled to Reimbursement of Their Reasonable Litigation Expenses ...............................................................................14

        D.      Payments to the Class Representatives Are Appropriate.......................14

IV.   CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arenson v. Board of Trade,*
  372 F. Supp. 1349 (N.D. Ill. 1974) .................................................................. 12

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ........................................................................................... 9

*Central R.R. & Banking Co. v. Pettus,*
  113 U.S. 116 (1885) ........................................................................................... 9

*Hawaii v. Standard Oil Co.,*
  405 U.S. 251 (1972) ......................................................................................... 10

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ......................................................................................... 11

*In re Activision Sec. Litig.,*
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................ 11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ........................................... 10, 11

*In re Flash Memory Antitrust Litig.,*
  2010 WL 2332081 (N.D. Cal. June 9, 2010) .................................................. 13

*In re Graphics Processing Units Antitrust Litig.,*
  253 F.R.D. 478 (N.D. Cal. 2008) .................................................................... 13

*In re Heritage Bond Litig.,*
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................ 11

*In re King Res. Co. Sec. Litig.,*
  420 F. Supp. 610 (D. Colo. 1976) ................................................................... 12

*In re Linerboard Antitrust Litig.,*
  2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................... 12

*In re Lorazepam & Chlorazepate Antitrust Litig.,*
  205 F.R.D. 369 (D.D.C. 2002) ........................................................................ 14

*In re McKesson HBOC, Inc. ERISA Litig.,*
  391 F. Supp. 2d 844 (N.D. Cal. 2005) ............................................................ 14

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ........................................................................... 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................... 12

*In re Omnivision Tech., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 12, 14

*In re Online DVD-Rental Antitrust Litig.*,
2015 WL 846008 (9th Cir. Feb. 27, 2015) .................................................................... passim

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................................ 11

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................................................ 14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ....................................................................................... 13

*In re Sorbates Direct Purchaser Antitrust Litig.*,
2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) .............................................................. 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
Case No. 07-13-md-1819-CW (N.D. Cal. June 30, 2011) ............................................... 10

*In re Superior Beverage/Glass Container Consol. Pretrial*,
133 F.R.D. 119 (N.D. Ill. 1990) ..................................................................................... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ................................................................ 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 WL 149692 (N.D. Cal. Jan. 14, 2013) .............................................................. 10, 14

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
2014 U.S. Dist. LEXIS 134104 (N.D. Cal., Sept. 23, 2014) ........................................ 6, 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291(9th Cir. 1994) ..................................................................................... 9, 10, 13

*Mark v. Valley Ins. Co.*,
2004 WL 2260605 (D. Or. Oct. 6, 2004) ....................................................................... 12

*Meijer v. Abbott Laboratories*,
C-07-05985 (N.D. Cal. Aug. 11, 2011) .......................................................................... 10

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ......................................................................................................... 9

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
392 U.S. 134 (1968) ........................................................................................................ 10

*Pillsbury Co. v. Conboy*,
459 U.S. 248 (1983) ........................................................................................................ 10

*Presley v. Carter Hawley Hale Profit Sharing Plan*,
2000 WL 16437 (N.D. Cal. 2000) .................................................................................. 14

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) ........................................................................................................ 10

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................................................... 14

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993)............................................................................................11

*Vincent v. Hughes Air West,*
  557 F.2d 759 (9th Cir. 1977) .........................................................................................14

*Vizcaino v. Microsoft Corp.,*
  142 F. Supp. 2d 1299 (W.D. Wash. 2001)....................................................................12

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002)..........................................................................10, 11, 13

**Other Authorities**

1 Alba Conte, *Attorney Fee Awards*
  § 2.19 (3d ed. 2004) .......................................................................................................14

Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases,*
  42 U.S.F. L. Rev. 879 (2008)..........................................................................................11

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3
4
5
6
7

After over seven years of hard fought litigation, Plaintiffs have obtained settlements with eight[1] of the thirteen airlines named as Defendants in this case.  Class Counsel's efforts have resulted in $39,502,000 in settlements (the "Settlement Fund").  As reflected in the detailed declarations accompanying this Motion, Class Counsel have invested 98,364.36 hours in time and $2,807,699.73 in out-of-pocket expenses since this case began in 2007.

8
9
10
11
12

Through this Motion, Class Counsel seek an interim award of attorneys' fees in an amount equal to 33.3% of the Settlement Fund, reimbursement of their litigation expenses, and final approval of a litigation expense fund in the amount of $3,000,000 for future expenses to be used in ongoing litigation against the non-Settling Defendants.  Finally, Plaintiffs also seek incentive awards of $7,500 for the Class Representatives for their service in this case.

13
14
15
16
17
18

Class Counsel have prosecuted this case on a purely contingent basis.  The settlements have been achieved without the support of parallel criminal government investigations or guilty pleas for the vast majority of Plaintiffs' claims, and in the face of an immensely hard fought defense by some of the most sophisticated and respected defense firms in the country.  The fees Class Counsel seek are eminently fair in light of the extraordinary investment of time and money they have made and the substantial risks that the litigation presented.

19

To date, among many other services, Class Counsel have:

20
21
22

- Conducted an initial investigation to develop the theories of liability and the facts that formed the basis of the allegations against Defendants.  This research included a review of publicly available information regarding the Transpacific airline industry and consultation with industry experts and economists;

23

- Drafted two comprehensive consolidated amended complaints detailing Defendants' alleged violations of the antitrust laws, ECF Nos. 200, 493;

24
25

- Conducted exhaustive legal research regarding the Class's claims and the defenses thereto;

26
27
28

[1] Plaintiffs have reached settlements with Societe Air France ("Air France"), Cathay Pacific Airways Limited ("Cathay Pacific"), Japan Airlines International Company, Ltd. ("JAL"), Malaysian Airline System Berhad ("Malaysian Air"), Qantas Airways Limited ("Qantas"), Singapore Airlines Limited ("Singapore Airlines"), Thai Airways International Public Co., Ltd. ("Thai Airways") and Vietnam Airlines Corporation ("Vietnam Airlines").

- Defended and, on the whole, prevailed after two extensive rounds of hard-fought motions to dismiss, totaling 18 motions by Defendants with arguments covering such complex regulatory areas as the filed-rate doctrine, the act of state doctrine, the state action doctrine, implied preclusion, federal preemption and the sufficiency of the conspiracy allegations under *Twombly* and *Iqbal*, amongst several other attacks on the pleadings, ECF No. 467.  Defended and defeated attempts by some of the Defendants to appeal this Court's rulings on the aforementioned motions;

- Propounded several sets of discovery that – after extensive meet and confers and negotiations with Defendants, including significant motion practice before this Court and Magistrate Judge Ryu – resulted in the identification of over 374 document custodians and the production of almost seven million pages of documents, in addition to voluminous electronic transactional data.  Reviewed, searched and extensively coded and analyzed these documents – many of which were in foreign language and required translation;

- Engaged in extensive third-party discovery, including obtaining access to and reviewing the Airline Tariff Publishing Company's ("ATPCO") database for information concerning fares, itineraries and other data pertinent to this litigation;

- Organized and attended several proffer sessions with Settling Defendants to obtain cooperation and learn additional liability, class certification and damages information relevant to the non-settling Defendants;

- Propounded several sets of Interrogatories and Requests for Admission and issued Rule 30(b)(6) deposition notices;

- Answered several sets of discovery propounded by Defendants, including Requests for Production of Documents, Interrogatories and Requests for Admission, as well as answering extensive contention interrogatories concerning liability;

- Contended with near-constant discovery disputes and motions to compel;

- Prepared for and took the **depositions of 62 fact and 30(b)(6) witnesses** from Defendants and three third-party witnesses.  Prepared for and defended the depositions of all of the Class Representatives – totaling 15 depositions in all.  Prepared for and defended the depositions of three expert witnesses in relation to Defendants' summary judgment motions regarding the filed-rate doctrine;

- Engaged and consulted extensively with experts and economists on issues pertaining to electronic discovery, liability, summary judgment, class certification and damages throughout the course of the Action;

- Engaged in protracted settlement discussions and mediations with the Settling Defendants, *see, e.g.,* ECF Nos. 921-2 (Lebsock Decl. in Support of Motion for Preliminary Approval), 942-1 ("Lebsock Decl. in Support of Motion for Preliminary Approval);

- Prepared briefs for, and substantially prevailed on, Defendants' Motions for Summary Judgment Based on the Filed Rate Doctrine;

- Documented the settlements with the Settling Defendants, briefed motions for preliminary approval, and engaged experts noted in the field of class action notice for the purpose of developing a robust notice program to inform the Class

regarding the pending settlements.  *See* Declaration of Steven N. Williams in Support of Plaintiffs' Motion ¶¶ 7-8 ("Williams Decl.").

All along this seven-year timeline, as reflected in the Williams Declaration, Plaintiffs faced substantial risks.  *Id* ¶ 8.  In light of the foregoing and in this context, Plaintiffs' request for an interim fee award of 33.3% of the Settlement Fund is fair and reasonable.  While the benchmark for attorneys' fees in the Ninth Circuit is 25%; in practice, awards are generally much closer to 33.3%, when all factors are considered.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Litigation History

#### 1.    Pre-Complaint Investigation, Early Complaints, Service of Process, and the Judicial Panel on Multidistrict Litigation ("JPML")

The first complaint in this Action was filed by the law firm of Cotchett, Pitre & McCarthy, LLP on November 6, 2007 in the Northern District of California – nearly eight years ago.  ECF No. 1.  For seven of the initially-named Defendants, Plaintiffs were required to effectuate service through the Hague Convention.  *See* ECF Nos. 29-48.  Class Counsel also participated in proceedings before the JPML, arguing that all related actions should be transferred to the Northern District of California.  The JPML transferred all cases to this Court, finding centralization to be appropriate pursuant to 28 U.S.C. § 1407.  Williams Decl. ¶ 11.

#### 2.    Appointment of Leadership

On March 28, 2008, this Court appointed the law firms of Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP (through its predecessor firm) as interim Co-Lead Class Counsel on behalf of the putative class pursuant to Fed. R. Civ. Proc. 23(g).  ECF Nos. 130, 175.

#### 3.    The Consolidated Complaints and Two Rounds of Motions to Dismiss

On August 6, 2009, Plaintiffs filed an 111-page, factually-detailed Consolidated Class Action Complaint ("CCAC").  ECF No. 200.  In response to the CCAC, Defendants filed 14 motions to dismiss, asserting a number of different attacks on the complaint.  *See, e.g.,* ECF Nos. 243, 287, 288, 290, 293, 294, 295, 299, 300, 303, 304, 310, 311, and 312.  Defendants, either collectively or individually (and, in some instances, both), argued (1) that Plaintiffs had failed to allege a plausible conspiracy under *Twombly* and *Iqbal*, (2) that the filed-rate doctrine barred

Plaintiffs' claims, (3) that the claims were preempted through the doctrine of implied preclusion, (4) that foreign treaties or "Air Services Agreements" among the various national governments provided the exclusive remedy and precluded Plaintiffs' claims, (5) that the Foreign Trade Antitrust Improvement Act ("FTAIA") barred the claims, (6) that the complaint failed to adequately allege fraudulent concealment for purposes of tolling the statute of limitations, (7) that the CCAC did not relate back to the filing of the original complaints, (8) that the federal aviation statutory scheme preempted Plaintiffs' claims, (9) that the state action doctrine barred the claims, and (10) that the act of state doctrine barred the claims, amongst other more nuanced arguments. *See id.*

On May 9, 2011, this Court issued a detailed, 47-page Order, which largely sustained Plaintiffs' allegations and rejected all of Defendants' arguments, except for two.  ECF No. 467. The Court found that the FTAIA barred flight segments originating in Asia/Oceania and found that Plaintiffs failed to adequately allege "fraudulent concealment."  *See generally*, Williams Decl. ¶¶ 13-22.

On July 14, 2011, Plaintiffs' filed their First Amended Consolidated Class Action Complaint ("1st CAC").  ECF No. 493.  The 1st CAC expanded to 149-pages and added significant detail regarding Defendants' concealment of the price-fixing scheme.  *See id.*  Another round of motions to dismiss ensued.  *See, e.g.,* ECF Nos. 516, 518, 519, 520.  On September 30, 2011, by minute order, this Court found that Plaintiffs had sufficiently tolled the statute of limitations.  ECF No. 553.

Plaintiffs were also forced to defend against several Defendants' attempts to appeal this Court's orders on the motions to dismiss.  ANA, China Airlines and the European Carriers[2] requested permission to appeal pursuant to 28 U.S.C. § 1292.  ECF Nos. 473, 496.  After opposition from Plaintiffs, this Court denied the requests.  ECF Nos. 488, 510.  Thai Airways and Vietnam Airlines also filed notices of appeal in response to this Court's orders.  ECF Nos. 479, 484.  Plaintiffs filed motions to dismiss these appeals in the Ninth Circuit, arguing that they were

---

[2] Air France, KLM and SAS.

1   procedurally improper.  On August 22, 2011, the Ninth Circuit agreed and dismissed the appeals.

2   ECF Nos. 524-25.

3         **4.**      **The Discovery Process**

4         Mirroring, and in fact in most cases surpassing, the vigorous litigation over the pleadings,

5   Plaintiffs have had to fight for every ounce of discovery that has been produced or that has

6   occurred in this case.  Williams Decl. ¶ 23.  As recounted in the Williams Declaration, Plaintiffs

7   propounded several sets of written discovery designed at eliciting information pertinent to this

8   complex case.  *Id.* ¶¶ 24, 26.  Subsequent to the service of this discovery and multiple rounds of

9   objections from Defendants, the parties held extensive meet and confer negotiations over the

10  scope of the requests, document custodians, a search term protocol, an ESI protocol, a discovery

11  limitations/plan protocol, interim deadlines for the production of documents, and a deposition

12  protocol.  In many cases, these negotiations required the intervention of Magistrate Judge Ryu

13  through motions to compel.  *Id.* ¶ 30.

14        On June 14, 2010, Plaintiffs filed a motion to compel the production of information

15  residing with third-party, ATPCO.  ECF No. 392.  Obtaining information from the ATPCO

16  database was critical to Plaintiffs' prosecution of the case.  *Id.* ¶ 31.  The motion resulted in an

17  extensive stipulation between all parties concerning the production of information residing on the

18  ATPCO database.  ECF No. 396.

19        On September 16, 2011, Plaintiffs filed a motion to compel ANA and China Airlines to

20  provide further documents and discovery responsive to conspiracy-related information and

21  transactional data.  ECF No. 546.  After proceedings before Magistrate Judge Ryu, the parties

22  reached an agreement for searching and producing relevant documents.  *See, e.g.,* ECF No. 583.

23  Plaintiffs similarly filed a motion to compel Defendants to produce documents related to the *Air*

24  *Cargo* litigation[3] (ECF No. 601), and thereafter filed a series of letter briefs and updates to the

25  Court, resulting in a protocol to provide Plaintiffs with access to Defendants' *Air Cargo*

26  productions.  *See* ECF No. 630-631.  Several Defendants also asserted that "foreign-blocking

27  ───────────────

28  [3] *See In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VVP)
    (E.D.N.Y.) ("*Air Cargo*")

1    statutes" prohibited them from providing otherwise responsive discovery.  Williams Decl. ¶¶ 31-

2    33.  Magistrate Judge Ryu issued orders largely sustaining Plaintiffs' motions.  ECF Nos. 642,

3    658, 655, 660.

4          Due to the difficulty in actually obtaining a substantive production from the Defendants,

5    Plaintiffs filed discovery letters with Magistrate Judge Ryu regarding interim discovery and

6    production deadlines.  ECF No. 668.  This process resulted in a Stipulated Order, requiring

7    Defendants to make substantial productions by dates certain.  *See* ECF No. 683.  This process also

8    resulted in a Stipulated Order concerning deposition limits.  *See* ECF No. 691.  On February 21,

9    2013, Plaintiffs submitted a discovery status report to Magistrate Judge Ryu, reporting on the

10   progress they had made with the various Defendants concerning search terms, custodians,

11   transactional data, and other discovery matters.  ECF No. 693.  On March 21, 2014, Plaintiffs and

12   ANA filed another joint letter brief concerning ANA's refusal to produce its CEO, Osamu

13   Shibobe for deposition.  ECF No. 881.  Magistrate Judge Ryu compelled Mr. Shinobe's

14   deposition.  ECF No. 867.  During the same proceeding, Magistrate Judge Ryu denied

15   Defendants' request that Plaintiffs produce their experts' searches in the ATPCO database.  ECF

16   No. 864.

17         In connection with Defendants' summary judgment motions regarding the filed-rate

18   doctrine, Plaintiffs were also forced to file motions to compel further discovery responses

19   demonstrating the level of supervision, or lack thereof, of the Department of Transportation over

20   Defendants' fares and fuel surcharges.  *See, e.g.,* ECF Nos. 819, 820.  Magistrate Judge Ryu

21   granted the motions.  ECF No. 862.  Defendants' answers to that discovery were cited by this

22   Court in denying Defendants' summary judgment motions based on the filed rate doctrine.  *See In*

23   *re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-cv-05634-CRB, 2014 U.S.

24   Dist. LEXIS 134104, *n4, *53, *59-60, *n34 (N.D. Cal., Sept. 23, 2014).

25         Despite the vigorous opposition of defense counsel, Plaintiffs obtained 1.7 million

26   documents, totaling almost 7 million pages.  Williams Decl. ¶ 37.  This documentary evidence

27   was thoroughly reviewed, analyzed, coded and organized by a team of lawyers through an

28   electronic review platform.  Through the use of targeted searches and other search devices and

1   protocols, counsel reviewed close to a million pages of documents.  This process identified the

2   important evidence in this case.  Foreign language documents required review by attorneys fluent

3   in those foreign languages, who then had to determine which documents were sufficiently

4   relevant to the litigation to require full English translations and, in certain cases, certified

5   translations for use in depositions.  Williams Decl. ¶ 37.

6        Class Counsel and Supporting Counsel also spent significant time preparing for and taking

7   the depositions of Defendants' employees and former employees.  All told, Plaintiffs took 62

8   depositions of Defendants' employees or former employees in either their Fed. R. Civ. Proc.

9   30(b)(1) or 30(b)(6) capacity.  *Id.* ¶¶ 44-48.  Of these 62 depositions, 36 required an interpreter,

10  thus substantially prolonging the length of the deposition.  Plaintiffs also took three third-party

11  depositions.  *Id.*  In many cases, Defendants refused to bring their deponents to the United States

12  for deposition, thus requiring several trips to foreign countries, such as Australia, Japan, Hong

13  Kong, Taiwan and Singapore.  *Id.*  Deponents in Japan are precluded from appearing voluntarily.

14  Class Counsel, therefore, was required to file motions with the Court, obtain deposition rooms at

15  the U.S. Consulate or Embassy, and procure a deposition visa after a diplomatic exchange

16  between the United States and Japan.  ECF Nos. 737, 889.  Additionally, some former employees

17  refused to appear voluntarily, thus requiring Plaintiffs to utilize the time-consuming and

18  inefficient Hague Process to compel their attendance at important depositions.  ECF Nos. 796,

19  803-805, 891.

20       In addition to the offensive discovery outlined above, Plaintiffs were required to respond

21  to discovery and to produce relevant documents.  Williams Decl. ¶ 43.  In addition to responding

22  to document requests and Interrogatories, Class Counsel prepared for and defended the

23  depositions of the Class Representatives – requiring a defense of a total of 15 such depositions.

24  *Id.* ¶ 48.  Similarly, in connection with Plaintiffs' Opposition to Defendants' summary judgment

25  motions regarding the filed-rate doctrine, Class Counsel had to prepare for and defend 3 expert

26  depositions.  *Id.*

27

28

---

1

       **5.**        **Summary Judgment Proceedings Regarding the Filed-Rate Doctrine**

2

       Between September 10, 2013 and December 17, 2013, ANA, Air New Zealand, Cathay

3

Pacific, China Airlines, EVA Airways, Philippine Airlines, Qantas, Singapore Airlines, and Thai

4

Airways filed summary judgment motions regarding the filed-rate doctrine.  In addition to

5

individual motions, these Defendants – with the exception of ANA – joined in a joint summary

6

judgment motion regarding the filed-rate doctrine.  *See* ECF Nos. 724, 725, 728, 731, 753, 763,

7

792.

8

       As noted previously, in anticipation of these motions, Plaintiffs engaged in extensive

9

discovery and motion practice before Magistrate Judge Ryu, which was resolved in favor of

10

Plaintiffs.  Williams Decl. ¶ 50.  In opposing the summary judgment motions, Plaintiffs

11

exhaustively researched the filed-rate doctrine and federal preemption case law, as well as the

12

statutory and regulatory underpinnings of United States' aviation law and policy.  In support of its

13

Opposition, Plaintiffs also retained three experts to provide expert testimony.  *See* ECF Nos. 872,

14

873, 874; Williams Decl. ¶ 48.  In response to Defendants' motions, Class Counsel submitted one

15

omnibus Opposition – totaling 60-pages.  ECF No. 869.  On September 23, 2014, the Court

16

granted in part and denied in part Defendants' motions, keeping the vast majority of the claims in

17

the case against Defendants.  *See In re Transpacific Passenger Air Transportation Antitrust Litig.*,

18

No. 07-cv-05634-CRB, 2014 U.S. Dist. LEXIS 134104 (N.D. Cal. Sept. 23, 2014); Williams

19

Decl. ¶ 55.

20

    **B.**     **Settlement History**

21

       Commencing in late 2008, Class Counsel and JAL began settlement discussions.  These

22

discussions continued and the parties were close to reaching a tentative agreement when JAL filed

23

for bankruptcy protection under the laws of Japan and sought and was granted a stay of this

24

litigation against it.  In mid-2010, while bankruptcy proceedings were still pending, JAL and

25

Plaintiffs executed a settlement agreement that reflected the financial condition of JAL.  In

26

addition to providing substantial cooperation to the Class, the JAL settlement agreement provided

27

a payment of $10 million.

28

1    In or around mid-2012, Class Counsel began settlement negotiations with counsel for Air

2    France.  These negotiations resulted in cooperation and a payment of $876,000 to the Class.  Also

3    in or around mid-2012, Class Counsel began settlement discussions with Malaysian Air that

4    resulted in cooperation and a payment of $950,000 to the Class.

5    In or around mid-2013, Class Counsel began settlement discussions with Vietnam Airlines

6    that resulted in cooperation and a payment of $735,000 to the Class.  Class Counsel engaged in

7    settlement discussions with Thai Airways resulting in cooperation and a payment of $9.7 million.

8    In or around mid-2014, while the summary judgment motions were pending, Class

9    Counsel and Cathay Pacific participated in a mediation before the Honorable Judge James

10   Robertson, Ret., United States District Court for the District of Columbia, resulting in cooperation

11   and a payment of $7,500,000 to the Class.  Similarly, Class Counsel and Qantas engaged in

12   settlement discussions that culminated in cooperation and a payment of $550,000, plus an

13   additional $100,000 towards the cost of class notice.  Finally, Class Counsel and Singapore

14   Airlines executed a settlement agreement on August 13, 2014, providing for cooperation and a

15   payment of $9,200,000 to the Class.  Williams Decl. ¶ 56-65.

16   This Court preliminarily approved the first round of settlements with JAL, Air France,

17   Malaysian Air, Vietnam Airlines, Thai Airways, and Cathay Pacific on August 11, 2014.  ECF

18   No. 924.  The Court preliminarily approved the second round of settlements with Singapore

19   Airlines and Qantas Airways on October 14, 2014.  ECF No. 951.

20   **III.    ARGUMENT**

21          **A.    The Ninth Circuit Recognizes the Common Fund Doctrine and a Percentage-
22                  of-the-Recovery as the Predominant Method for Determining Attorneys' Fees
                    in Class Action Cases**

23   As the Supreme Court has explained, "this Court has recognized consistently that a litigant

24   or a lawyer who recovers a common fund for the benefit of persons other than himself or his client

25   is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444

26   U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392–93 (1970); *Central R.R. &*

27   *Banking Co. v. Pettus,* 113 U.S. 116, 123 (1885); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,

28   19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

1   The Supreme Court has repeatedly recognized that private antitrust litigation is essential to

2 the effective enforcement of the antitrust laws. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248,

3 262–63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co.*,

4 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139

5 (1968); *WPPSS*, 19 F.3d at 1296.  The district court has discretion in a common fund case to

6 choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees.  *Vizcaino*

7 *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("*Vizcaino II*"); *In re Online DVD-Rental*

8 *Antitrust Litig.*, No. 12-15705, 2015 WL 846008, at *9 (9th Cir. Feb. 27, 2015) ("*Online DVD*").

9 Most district courts in the Ninth Circuit have exhibited a clear preference for the percentage-of-

10 the-fund method. Virtually all of the major recent antitrust class actions in the Northern District of

11 California have applied the percentage-of-the-fund approach.  *See, e.g., In re TFT-LCD (Flat*

12 *Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 7575003, at *1–2 (N.D. Cal. Dec. 27, 2011)

13 ("*LCD I*") (30%); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL

14 149692, at *1–2 (N.D. Cal. Jan. 14, 2013) ("*LCD II*") (30%); *In re TFT-LCD (Flat Panel)*

15 *Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *7–8 (N.D. Cal. Apr. 3, 2013) ("*LCD*

16 *III*") (28.6%); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, Case No. 07-13-md-

17 1819-CW (N.D. Cal. June 30, 2011) (ECF No. 1370) ("*SRAM*") (30%); *Meijer v. Abbott*

18 *Laboratories*, C-07-05985 (N.D. Cal. Aug. 11, 2011) (ECF No. 514) ("*Meijer*") (33⅓%); *In re*

19 *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M-02-1486, 2007 WL 2416513 (N.D.

20 Cal. Aug. 16, 2007), at *1 ("*DRAM*") (25%); *Online DVD*, 2015 WL 846008, at *13.

21   Here, Class Counsel's efforts have created a common fund of $39,502,000. Under either a

22 "percentage-of-the-fund" or "lodestar" method, Class Counsel's requested fees are warranted in

23 light of the value of the extensive work performed, the difficulty and risk of the case, and the

24 results achieved.

25  **B.  Application of the Pertinent Factors Demonstrates that an Upward**
     **Adjustment of the Benchmark is Justified**

26

27   "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in

28 some cases." *Vizcaino II*, 290 F.3d at 1048.  *Vizcaino II* makes clear that it is not sufficient to

arbitrarily apply a percentage; rather the district court must show why that percentage and the ultimate award are appropriate based on the facts of the case. *Id.*; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  In considering whether an award of 33.3% is fair, several factors may be considered, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*Online DVD*, 2015 WL 846008, at *14 (citations omitted).  The Court may also consider the volume of work performed, counsel's skill and experience, the complexity of the issues faced, and the reaction of the class. *See, e.g.*, *In re Heritage Bond Litig.*, 02-ML-1475 DT, 2005 WL 1594403, at *18–23 (C.D. Cal. June 10, 2005) ("*Heritage Bond*").

As a practical matter, fee awards tend to be approximately 30% or higher. *See, In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("*Activision*") ("[T]his court finds that in most recent cases the benchmark is closer to 30%.").  A 2008 study of the effectiveness of private antitrust enforcement reviewed "forty of the largest recent successful private antitrust cases." Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L. Rev. 879 (2008). In cases with recoveries of less than $100 million, eleven of sixteen cases involved fee awards of at least 30%, with seven awards of 33.3%. *Id.* at 911 tbl.7A.  Finally, fee awards of less than 30%, unlike this case, often involve substantial multipliers.  *See, e.g.*, *DRAM*, 2007 WL 2416513 (multiplier of 2.3). By the same token, fees in excess of 30% often involve cases presenting substantial risk, as here. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("*Pac. Enters.*") (award of 33% justified because of complexity and risk).  Here, consideration of the *Vizcaino II* factors confirms the appropriateness of the fee requested.

### 1.    Class Counsel Achieved an Excellent Recovery for the Class

Courts emphasize that the recovery is an important factor to be considered in determining an appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983); *Vizcaino v.*

1  *Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001) *aff'd,* 290 F.3d 1043 (9th Cir.

2  2002) ("*Vizcaino I*"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)

3  ("*Omnivision*"). Here, Plaintiffs obtained settlements that confer a substantial benefit to Class

4  Members, especially in light of the many risks involved in the action.

### 2.     A High Level of Skill Was Required to Prosecute This Case

6        The skill and quality of legal counsel also support the requested fee award. *See Mark v.*

7  *Valley Ins. Co.*, Case No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004). Class

8  Counsel are among the nation's most experienced and skilled practitioners in the antitrust litigation

9  field, and each firm has successfully litigated these types of cases—including within this Circuit.

10       Courts have recognized that the novelty and difficulty of issues in a case are significant

11  factors to be considered in awarding fees. *See, e.g.*, *Vizcaino I*, 142 F. Supp. 2d at 1303, 1306.

12  Antitrust price-fixing conspiracy cases are notoriously complex and difficult to litigate. *See, e.g.*,

13  *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *10 (E.D. Pa. June 2,

14  2004). Not only did Class Counsel effectively manage the logistics of litigating such a complex

15  case, but as described in detail, they successfully tackled many difficult legal and factual issues

16  presented by this case.

17       The caliber of opposing counsel is another important factor in assessing the quality of Class

18  Counsel's work.  *Vizcaino I*, 142 F. Supp. 2d at 1303; *In re King Res. Co. Sec. Litig.*, 420 F. Supp.

19  610, 634 (D. Colo. 1976); *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).

20  Here, Plaintiffs were opposed by attorneys from some of the best and largest firms in the country

21  with near limitless resources at their disposal.

### 3.     The Risks of this Litigation

23       Risk is an important factor in determining a fair fee award. *Online DVD*, 2015 WL 846008,

24  at *14. Ninth Circuit courts have recognized that risk is a reason to increase a fee award above the

25  25% benchmark. *Vizcaino I*, 142 F. Supp. 2d at 1303–04.  Moreover, "[a]ntitrust litigation in

26  general, and class action litigation in particular, is unpredictable." *In re NASDAQ Mkt.-Makers*

27  *Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In re Superior Beverage/Glass Container*

28  *Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990).  There is always the risk that the law may

1    change in unfavorable ways.  Furthermore, given recent changes in the law, there is always a risk

2    that a class will not be certified. Several large antitrust class actions have been denied certification

3    in recent years. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 508

4    (N.D. Cal. 2008); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir.

5    2013); *In re Flash Memory Antitrust Litig.*, No. C 07-10 0086 SBA, 2010 WL 2332081, at *19

6    (N.D. Cal. June 9, 2010).

7              **4.      Contingent Nature of the Fee**

8              The Ninth Circuit has confirmed that a fair fee award must include consideration of the

9    contingent nature of the fee. *See, e.g.*, *Vizcaino II*, 290 F.3d at 1050; *Online DVD*, 2015 WL

10   846008, at *14 & n.14. It is well-established that attorneys who take on the risk of a contingency

11   case should be compensated for the risk they take**.** *WPPSS*, 19 F.3d at 1299.  Class Counsel have

12   received no compensation during the over seven-years of litigation.  This factor strongly supports

13   the requested fee.

14             **5.      The High Quality of the Work Performed**

15             Finally, Class Counsel respectfully submit that the work they have performed has been of

16   the highest quality and has been of great benefit to the Class. The Court is familiar with the history

17   of this case, having presided over seven years of contentious litigation, represented by over 980

18   docket entries.

19             **6.      The Lodestar Cross-Check Confirms the Reasonableness of the**
20                       **Requested Fee**

21             Finally, a cross-check of the requested fee with Class Counsel's lodestar demonstrates that

22   the proposed fee is more than reasonable.  *See Online DVD*, 2015 WL 846008, at *15; *Vizcaino*

23   *II*, 290 F.3d at 1048-50.  As summarized in the Williams Declaration, Class Counsel have spent

24   98,364.36 hours prosecuting this Action.  All of this time was reasonable and necessary for the

25   prosecution of this Action.  *Online DVD*, 2015 WL 846008, at *9.  Class Counsel also took

26   meaningful steps to ensure that their work was efficient.  *See generally*, Williams Decl. ¶¶ 71-75.

27   Plaintiffs' fee request of $13,154,166 thus amounts to less than 35% of their lodestar of

28   $38,685,058.25.  This confirms its reasonableness beyond question.  *See Online DVD*, 2015 WL

846008, at *15(fact that fee sought is less than the lodestar suggests fairness of award); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007); *LCD II*, 2013 WL 149692, at *1.

**C.    Class Counsel Are Entitled to Reimbursement of Their Reasonable Litigation Expenses**

Class Counsel also request reimbursement of litigation costs and expenses they incurred on behalf of the Class in the amount of $2,807,699.73.  Williams Decl. ¶ 76-81.  Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary and directly related to the prosecution of the Action.  *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977); *OmniVision*, 559 F. Supp. 2d at 1048; *see also,* 1 Alba Conte, *Attorney Fee Awards* § 2.19 (3d ed. 2004).  Here, Class Counsel's expenses are detailed in the Williams Declaration and exhibits.  *Id.* ¶¶ 76-81.  These expenses were reasonable and necessary for the prosecution of this action and are customarily approved by courts as proper litigation expenses.

**D.    Payments to the Class Representatives Are Appropriate**

Courts often approve incentive awards to class representatives for their service to the Class. *Online DVD*, 2015 WL 846008, at *4, *8; *In re Lorazepam & Chlorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorneys general. *Rodriguez*, 563 F.3d at 958–59. Plaintiffs seek awards of $7,500 per Class Representative.  These modest awards would be well within the amounts Ninth Circuit courts find acceptable. *See, e.g.*, *Online DVD*, 2015 WL 846008, at *8; *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 99-358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002).

1   Here, the Class Representatives each expended substantial time and effort as named

2   plaintiffs. Among other things, they spent time reviewing and responding to multiple sets of

3   document requests and interrogatories, including collecting responsive documents; preparing for

4   and sitting for depositions; and consulting with Class Counsel regarding litigation strategy,

5   settlement negotiations, and other matters. Williams Decl. ¶¶ 82-84.  In light of the benefits

6   conferred by the settlements reached in this case, the important role of the class should be

7   acknowledged with a reasonable payment to compensate them for their time and expenses

8   associated with actively participating in this litigation.

9   **IV.    CONCLUSION**

10   For the foregoing reasons, this Court should award $13,154,166 in attorneys' fees or

11   33.3% of the Settlement Fund.  The Court should also permit the payment of litigation expenses

12   in the amount of $2,807,699.73, establish a litigation fund in the amount of $3,000,000 and

13   provide for incentive awards to the Class Representations in the amount of $7,500.00.

14   Dated:  April 7, 2015                            Respectfully submitted,

15                                                    */s/ Steven N. Williams*
                                                      Joseph W. Cotchett
16                                                    Steven N. Williams
                                                      Adam J. Zapala
17                                                    **COTCHETT, PITRE, McCARTHY, LLP**
                                                      Burlingame, CA 94010
18                                                    Tel: (650) 697-6000  /  Fax: (650) 697-0577

19   Dated:  April 7, 2015                            Respectfully submitted,

20                                                    */s/ Christopher L. Lebsock*
                                                      Michael P. Lehmann
21                                                    Christopher L. Lebsock
                                                      **HAUSFELD LLP**
22                                                    44 Montgomery Street, Suite 3400
                                                      San Francisco CA  94104
23                                                    Tel: (415) 633-1903  /  Fax: (415) 358-4980

24                                                    Michael D. Hausfeld
                                                      Seth R. Gassman
25                                                    **HAUSFELD LLP**
                                                      1700 K Street, N.W., Suite 650
26                                                    Washington, D.C. 20006
                                                      Tel: (202) 540-7200  /  Fax: (202) 540-7201

27
                                                      *Interim Co-Lead Class Counsel for Plaintiffs*
28