JOSEPH W. COTCHETT (36324)
STEVEN N. WILLIAMS (175489)
ADAM J. ZAPALA (245748)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  650-697-6000
Facsimile:   650-697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com

MICHAEL D. HAUSFELD            MICHAEL P. LEHMANN (77152)
SETH R. GASSMAN               CHRISTOPHER L. LEBSOCK (184546)
**HAUSFELD LLP**                  **HAUSFELD LLP**
1700 K. Street, N.W., Suite 650    44 Montgomery Street, Suite 3400
Washington, D.C. 20006            San Francisco CA  94104
Tel: (202) 540-7200              Tel: (415) 633-1908
Fax: (202) 540-7201              Fax: (415) 358-4980
mhausfeld@hausfeldllp.com        mlehmann@hausfeldllp.com
sgassman@hausfeldllp.com         clebsock@hausfeldllp.com

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | **Civil Case No. 3:07-cv-05634-CRB** |
| | **MDL No. 1913** |
| **This Document Relates to:** | **DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS** |
| **All Actions** | |
| | **Date:    May 22, 2015** |
| | **Time:    10:00 am** |
| | **Courtroom: 6, 17th Floor** |

I, Steven N. Williams, declare as follows:

1.   I am a partner at the law firm of Cotchett, Pitre & McCarthy, LLP ("CPM"), one of the law firms appointed by this Court to serve as Co-Lead Class Counsel in this litigation.  I make this declaration based on my personal knowledge.  I submit this declaration pursuant to 28 U.S.C. § 1746 in support of Plaintiffs' Notice of Motion and Motion for an Award of Attorneys' Fees; Reimbursement of Expenses and Class Representative Incentive Awards.

2.   I, or members of my law firm, have been involved in almost every aspect of this case since its inception.  I have personally overseen the vast majority of the work performed in this litigation on behalf of the Class.  This Court appointed CPM, along with Hausfeld LLP (and its predecessor firm), Co-Lead Class Counsel on March 28, 2008.  ECF Nos. 130, 175. The background and experience of the CPM firm and its attorneys and paralegals are summarized in the *curriculum vitae* attached hereto as **Exhibit 1**.

3.   Co-Lead Class Counsel has prosecuted this seven-year litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting the claims against Defendants.  While CPM has devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

4.   The purpose of this declaration is to summarize (a) the factual and procedural history of the litigation, (b) the work performed by Class Counsel and Supporting Counsel,[1] (c) the time expended in prosecuting this Action, (d) the costs and expenses for which Class Counsel seek reimbursement, (e) each firm's monetary contributions in assessments to the Litigation Fund, and (f) the steps Class Counsel employed to ensure the efficient management of this complex litigation.

## INTRODUCTION AND SUMMARY OF WORK PERFORMED

5.   During the course of this hard-fought, seven-year litigation, Class Counsel has

---

[1] "Supporting Counsel" refers to a number of attorneys and law firms that assisted Co-Lead Class Counsel in the prosecution of this litigation.  Declarations and exhibits attesting to the amount of time and expenses Supporting Counsel incurred can be found at Exhibits 6-43 to this Declaration.

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

supervised and directed the work performed by Supporting Counsel in an effort to ensure that the work they have performed has been accomplished effectively and efficiently.

6.   As this Court knows well from the over 980 docket entries, every aspect of this case has been vigorously contested by some of the most sophisticated defense counsel in the country.

7.   Class Counsel performed the following services:

- Conducted an initial investigation of this case to develop the theories of liability and the facts that formed the basis of the allegations against Defendants.  This research included a review of publicly available information regarding the Transpacific airline industry and consultation with industry experts and economists;

- Drafted two comprehensive consolidated amended complaints detailing Defendants' alleged violations of the antitrust laws, ECF Nos. 200, 493;

- Conducted exhaustive legal research regarding the Class's claims and the defenses thereto, particularly with respect to Defendants' multiple rounds of motions to dismiss and motions for summary judgment based on the filed-rate doctrine;

- Defended and, on the whole, prevailed after two extensive rounds of hard-fought motions to dismiss, totaling 18 motions by Defendants with arguments covering such complex regulatory areas as the filed-rate doctrine, the act of state doctrine, the state action doctrine, implied preclusion, federal preemption and the sufficiency of the conspiracy allegations under *Twombly* and *Iqbal*, amongst several other attacks on the pleadings, ECF No. 467.  Class Counsel also defended and defeated attempts by some of the Defendants to appeal this Court's rulings on the aforementioned motions;

- Propounded several sets of discovery that – after extensive meet and confers and negotiations with Defendants, including significant motion practice before this Court and Magistrate Judge Ryu – resulted in the identification of over 374 document custodians and the production of almost seven million pages of documents, in addition to voluminous electronic transactional data;

- Organized a team of lawyers that reviewed, searched and extensively coded and analyzed these documents – many of which were in foreign language and required translation;

- Engaged in extensive third-party discovery, including obtaining access to and reviewing the Airline Tariff Publishing Company's ("ATPCO") database for information concerning fares, itineraries and other data pertinent to this litigation;

- Organized and attended several proffer sessions with Settling Defendants to obtain cooperation and learn additional liability, class certification and damages information relevant to the non-settling Defendants;

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

- Propounded several sets of Interrogatories and Requests for Admission and issued Rule 30(b)(6) deposition notices;

- Answered several sets of discovery propounded by Defendants, including Requests for Production of Documents, Interrogatories and Requests for Admission, as well as answering extensive contention interrogatories concerning liability;

- Contended with near-constant discovery disputes and motions to compel;

- Prepared for and took the **depositions of 62 fact and 30(b)(6) witnesses** from Defendants and 3 third-party witnesses. Prepared for and defended the depositions of all of the Class Representatives – totaling 15 depositions in all. Prepared for and defended the depositions of 3 expert witnesses in relation to Defendants' summary judgment motions regarding the filed-rate doctrine;

- Engaged and consulted extensively with experts and economists on issues pertaining to electronic discovery, liability, summary judgment, class certification and damages throughout the course of the Action;

- Engaged in protracted settlement discussions and mediations with the Settling Defendants, *see, e.g.,* ECF Nos. 921-2 (Lebsock Decl. in Support of Motion for Preliminary Approval), 942-1 (Lebsock Decl. in Support of Motion for Preliminary Approval);

- Prepared briefs for, and substantially prevailed on, Defendants' Motions for Summary Judgment Based on the Filed-Rate Doctrine;

- Documented the settlements with the Settling Defendants, briefed motions for preliminary approval, and engaged experts noted in the field of class action notice for the purpose of developing a robust notice program to inform the Class regarding the pending settlements.

8. Throughout this near-eight-year litigation, Plaintiffs have faced significant risk since its inception. Plaintiffs have faced

- The risk of litigating against some of the largest and most sophisticated law firms in the world with seemingly limitless resources;

- The risk that the consolidated complaints would not withstand the extensive individual and joint motions to dismiss;

- The risk that even if Plaintiffs were able to obtain a favorable settlement or judgment, that the financial condition or bankruptcy of a Defendant would materially change or lessen the amount of the settlement;

- The risk that Defendants would, and in fact have, vehemently contested their participation in the alleged conspiracy;

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

3

- The risk that Defendants would prevail on their regulatory, preemption or filed-rate arguments at summary judgment or any other phase of this litigation;

- The risk that each Defendant would successfully argue that despite the existence of an antitrust conspiracy, Plaintiffs suffered no "antitrust impact" and no damages were caused as a result;

- The risk of not achieving class certification;

- The risk of trying this antitrust case when several courts have commented that such a task is "notoriously complex", *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989); and

- The changing landscape of the law with respect to civil antitrust actions, proving damages and class actions generally.

## PRE-COMPLAINT INVESTIGATION, SERVICE OF PROCESS AND THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION ("JPML")

9.     The first complaint in this Action was filed by the law firm of Cotchett, Pitre & McCarthy, LLP on November 6, 2007 in the Northern District of California – nearly eight years ago.  ECF No. 1.  This complaint was the product of many hours of investigation and research by CPM.  Thereafter, twenty-nine complaints alleging substantially similarly legal and factual allegations were filed in a number of federal district courts.

10.    For seven of the initially-named Defendants, Plaintiffs were required to effectuate service through the Hague Convention – a lengthy, time-consuming and expensive endeavor requiring the appointment of a special international process server and the filing and issuance of "Letters Rogatory." *See* ECF Nos. 29-48.

11.    Class Counsel also participated in proceedings before the JPML, arguing that all related actions should be transferred and centralized in the Northern District of California.  On February 19, 2008, the JPML transferred all cases to this Court, finding centralization to be appropriate pursuant to 28 U.S.C. § 1407.

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

**APPOINTMENT OF LEADERSHIP**

12.     On March 28, 2008, this Court appointed the law firms of Cotchett, Pitre & McCarthy, LLP. and Hausfeld LLP (and its predecessor firm) as interim co-lead Class Counsel on behalf of the putative class pursuant to Fed. R. Civ. Proc. 23(g).  ECF Nos. 130, 175.

**THE CONSOLIDATED COMPLAINTS AND TWO ROUNDS OF MOTIONS TO DISMISS**

13.     On August 6, 2009, Plaintiffs filed a 111-page, factually-detailed Consolidated Class Action Complaint ("CCAC").  ECF No. 200.  The CCAC initially named 18 Defendant airlines and outlined allegations concerning price-fixing conspiracies between the competing airlines on base fares, fuel surcharges and a certain subset of discount fares offered by JAL and All Nippon Airways Co., Ltd. ("ANA").  *Id.*

14.     In response to the CCAC, Defendants filed fourteen motions to dismiss, asserting a number of different attacks on the complaint.  *See, e.g.,* ECF Nos. 243 (Continental), 287 (Philippine Airlines, Inc. and Vietnam Airlines Corporation), 288 (Philippine Airlines, Inc.), 290 (Joint Motion), 293 (Joint Motion of the European Carriers), 294 (Vietnam Airlines Corporation), 295 (ANA), 299 (Vietnam Airlines Corporation) 300 (EVA Airways), 303 (Cathay Pacific Airways), 304 (ANA, China Airlines, Ltd., and Thai Airways), 310 (Malaysian Airline System Berhad), 311 (Malaysian Airline System Berhad and Air New Zealand), and 312 (Thai Airways).

15.     Defendants, either collectively or individually (and, in some instances, both), argued (1) that Plaintiffs had failed to allege a plausible conspiracy under *Twombly* and *Iqbal*, (2) that the filed-rate doctrine barred Plaintiffs' claims, (3) that the claims were preempted through the doctrine of implied preclusion, (4) that foreign treaties or "Air Services Agreements" among the various national governments provided the exclusive remedy and precluded Plaintiffs' claims, (5) that the Foreign Trade Antitrust Improvement Act ("FTAIA") completely barred the claims, (6) that the complaint failed to adequately allege fraudulent concealment for purposes of tolling the statute of limitations, (7) that the CCAC did not relate

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

5

back to the filing of the original complaints, (8) that the federal aviation statutory scheme preempted Plaintiffs' claims, (9) that the state action doctrine barred the claims, and (10) that the act of state doctrine barred the claims, amongst other more nuanced arguments. *See id.*

16.     On May 9, 2011, this Court issued a detailed, 47-page Order, which largely sustained Plaintiffs' allegations and rejected Defendants' motions.  ECF No. 467.  As to all Defendants, this Court found that Plaintiffs had alleged a detailed, specific and plausible conspiracy regarding price-fixing on base fares and fuel surcharges.  This Court also found that Defendants could not invoke the filed-rate doctrine to preclude Plaintiffs' claims at the motion to dismiss phrase, holding that "[s]everal factual matters that would guide this Court in assessing Defendants' arguments are currently undeveloped." *Id.* at 467.  The Court sustained Defendants' FTAIA arguments insofar as Plaintiffs' allegations pertained to fares that originated overseas, but held that flight segments originating in the United States and traveling to Asia/Oceania were not barred. *Id.* at 5-13.  Regarding the state action doctrine, the Court denied Defendants' claims, finding that the doctrine applied to actions authorized and supervised by the states, not to actions between foreign governments. *Id.* at 24-25.  The Court similarly rejected Defendants' implied preclusion argument. *Id.* at 25-26. The Court also rejected Thai Airways' and Vietnam Airways' argument that the act of state doctrine barred Plaintiffs' claims – even soliciting the views of the State Department. *Id.* at 27-29.  The Court also rejected arguments by several Defendants that the "Air Services Agreements" between foreign governments or between foreign governments and the United States provided the exclusive remedy and, therefore, barred the claims.  In so ruling, the Court found no evidence that those agreements intended to bar private litigants, as opposed to setting forth the rights and obligations of the various governments. *Id.* at 36-38; 39; 43-44; 44-45; 46-47.  The Court similarly rejected Philippine Airlines' argument that the *Noerr-Pennington* doctrine barred the claims. *Id.* at 45.  Finally, the Court sustained Defendants' arguments that Plaintiffs had not alleged "fraudulent concealment" sufficiently to toll the statute of limitations, but granted leave to amend to comply with its ruling. *Id.* at 29-33.

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

6

17.     On July 14, 2011, Plaintiffs' filed their First Amended Consolidated Class Action Complaint ("1st CAC").  ECF No. 493.  The 1st CAC expanded to 149-pages and added significant detail regarding Defendants' concealment of the price-fixing scheme.  *See id.* Another round of motions to dismiss ensued.  *See, e.g.,* ECF Nos. 516, 518, 519, 520.  The majority of the pleadings challenges focused on the supposed inadequacy of Plaintiffs' fraudulent concealment allegations.

18.     On September 30, 2011, by minute order, this Court rejected Defendants' fraudulent concealment arguments and found that Plaintiffs had sufficiently tolled the statute of limitations.  ECF No. 553.

19.     Plaintiffs were also forced to defend against several Defendants' attempts to appeal this Court's orders on the motions to dismiss.  ANA and China Airlines requested permission for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  ECF No. 473.  The European Carriers[2] similarly requested permission to appeal under Section 1292.  ECF No. 496.  After opposition from Plaintiffs, this Court denied the requests.  ECF Nos. 488, 510. Thai Airways and Vietnam Airlines also filed notices of appeal in response to this Court's orders on the motions to dismiss.  ECF Nos. 479, 484.  Plaintiffs' filed motions to dismiss these appeals in the Ninth Circuit, arguing that they were procedurally improper because the orders were not final, appealable orders.  On August 22, 2011, the Ninth Circuit agreed and dismissed the appeals.  ECF Nos. 524-25.

20.     Plaintiffs have also borne the risks caused by inevitable delays in this litigation not of their own making. Discovery was effectively stayed in the case pending resolution of the Defendants' motions to dismiss.  Defendants' filed their first round of motions to dismiss in the fall of 2009.  The motions were fully briefed by February 19, 2010.  ECF No. 367.

21.     On March 3, 2010, due to Japan Airlines, Ltd's ("JAL") bankruptcy filing in Japan, this Court held the motions to dismiss in abeyance to permit a determination on the

---

[2] Air France, KLM and SAS.

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

scope of the stay from the Bankruptcy Court.  ECF No. 372.  After oral argument by the

undersigned declarant, the Bankruptcy Court determined that JAL's bankruptcy filing did not

stay the case against the rest of the Defendants.

22.    On November 1st and 2nd, 2010 – nearly a year after the motions were filed –

oral argument was held on the motions to dismiss.  ECF Nos. 440-442.  On November 22,

2010, the case was again stayed as the Court solicited the views of the State Department, based

on Defendants' arguments concerning the act of state doctrine.  ECF No. 445, 455.  On May 9,

2011, this Court entered its 47-page order granting in part and denying in part the motions to

dismiss.  In September of 2011, after the submission of a Consolidated Amended Class Action

Complaint and another round of motions to dismiss, this Court found that Plaintiffs had

adequately alleged fraudulent concealment and discovery in the case could begin in earnest.

ECF No. 556.

## THE DISCOVERY PROCESS

23.    As reflected in the Court's docket, Plaintiffs were forced to fight for every

ounce of discovery that has been produced or that has occurred in this case.

### A.    Written Discovery

24.    On January 26, 2010, Plaintiffs served their First Request for Production of

Documents.  This RFP included 61 requests and asked for a comprehensive set of financial,

organizational, conspiracy-related and transactional documents.  *Id.*  Also on January 26, 2010,

Plaintiffs propounded their First Set of Interrogatories, requesting that Defendants identify

document custodians, employees that attended trade association events, inter-competitor

communications, preservation efforts and facts related to their affirmative defenses.

25.    On February 17, 2010, Plaintiffs served a comprehensive Fed. R. Civ. Proc.

30(b)(6) notice, encompassing seventeen (17) topics relevant to this litigation.  Instead of

having deponents sit for depositions on each of these topics, Defendants provided narrative

responses to the topics.

26.    On July 8, 2011, Plaintiffs propounded another set of RFPs, focusing more

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE
AWARDS

8

1  narrowly on specific conspiracy-related documents known to be in the files of some of the

2  Defendants.  *Id.*  Also on July 8, 2011, Plaintiffs served their Second Set of Interrogatories,

3  requesting additional inter-competitor communications concerning the allegations in the

4  complaint.  *Id.*

5      27.    On June 3, 2013, Plaintiffs propounded a Third Set of RFPs, requesting

6  Defendants' cost data.  On the same day, Plaintiffs served a Third Set of Interrogatories also

7  designed to obtain important information concerning Defendants' cost inputs.

8      28.    In the fall of 2013, Plaintiffs propounded a Fourth, Fifth, and Sixth RFP

9  designed at eliciting information relevant to Defendants' arguments concerning the filed-rate

10  doctrine.  During this period, Plaintiffs propounded a Fourth Set of Interrogatories also probing

11  Defendants' filed-rate doctrine arguments.

12      29.    As part of the discovery process, Class Counsel organized and attended several

13  proffer sessions where Settling Defendants provided Plaintiffs with information concerning the

14  alleged conspiracy and made their employees available for interviews and depositions.

15      **B.    The Meet and Confer Process and Motion Practice Before the Court**

16      30.    Subsequent to the service of the aforementioned discovery and multiple rounds

17  of objections from Defendants, the parties held extensive meet and confer negotiations over the

18  scope of the requests, document custodians, a search term protocol, an ESI protocol, a

19  discovery limitations/plan protocol, interim deadlines for the production of documents, and a

20  deposition protocol.  In many cases, these negotiations required the intervention of Magistrate

21  Judge Ryu through motions to compel.

22      31.    On June 14, 2010, Plaintiffs filed a motion to compel the production of

23  information residing with third-party, ATPCO.  ECF No. 392.  Obtaining information from the

24  ATPCO database was critical to Plaintiffs' prosecution of the case.  The motion resulted in an

25  extensive stipulation between all parties concerning the production of information residing on

26  the ATPCO database.  ECF No. 396.

27      32.    On September 16, 2011, Plaintiffs filed a motion to compel ANA and China

28

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE
AWARDS

Airlines to provide further documents and discovery responsive to conspiracy-related information and transactional data.  ECF No. 546.  After proceedings before Judge Ryu, the parties reached an agreement for searching and producing relevant documents.  *See, e.g.,* ECF No. 583.  Plaintiffs similarly filed a motion to compel Defendants to produce documents related to the *Air Cargo* litigation.[3]  ECF No. 601.  Thereafter, a series of letter briefs and updates were provided to the Court, resulting in a protocol to provide Plaintiffs with access to Defendants' *Air Cargo* productions.  *See* ECF No. 630-631.

33.     Several Defendants also asserted that "foreign-blocking statutes" prohibited them from providing otherwise responsive discovery.  Plaintiffs were thus similarly required to file motions to compel.  For example, on August 28, 2012, Plaintiffs and Philippine Airlines submitted a joint letter brief to the Court regarding an alleged Philippine blocking statute.  ECF No. 642, 658.  On September 14, 2012, Magistrate Judge Ryu issued an order largely sustaining Plaintiffs' motion.  ECF Nos. 655, 660.

34.     Due to the difficulty in actually obtaining a substantive production from the Defendants, Plaintiffs filed discovery letters with Magistrate Judge Ryu for the purpose of establishing interim discovery and production deadlines.  ECF No. 668.  Judge Ryu ordered the parties to provide subsequent notices, updating the court on the status of the negotiations.   This process resulted in a Stipulated Order, requiring Defendants to make substantial productions by dates certain.  *See* ECF No. 683.  This process also resulted in a Stipulated Order concerning deposition limits.  *See* ECF No. 691.  Over the objections of ANA, the Court entered an order concerning deposition limits applying to it. On February 21, 2013, Plaintiffs submitted a discovery status report to Magistrate Judge Ryu, reporting on the progress they had made with the various Defendants concerning search terms, custodians, transactional data, and other discovery matters.  ECF No. 693.

35.     On March 21, 2014, Plaintiffs and ANA filed another joint letter brief

---

[3] *See In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("*Air Cargo*")

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

concerning the deposition of its CEO, Osamu Shinobe.  ECF No. 881.  ANA refused to produce Mr. Shinobe for deposition.  Plaintiffs moved to compel, arguing that Mr. Shinobe's testimony was potentially relevant to the fuel surcharge price-fixing conspiracy.  Magistrate Judge Ryu agreed, and compelled ANA to produce Mr. Shinobe in Japan.  ECF No. 867.  During the same proceeding, Magistrate Judge Ryu denied Defendants' request that Plaintiffs produce their experts' searches in the ATPCO database.  ECF No. 864.

36.     In connection with Defendants' summary judgment motions regarding the filed-rate doctrine, Plaintiffs were also forced to file motions to compel further discovery responses demonstrating the level of supervision, or lack thereof, of the Department of Transportation over Defendants' fares and fuel surcharges.  *See, e.g.,* ECF Nos. 819, 820.  Magistrate Judge Ryu granted the motions.  ECF No. 862.  Defendants' answers to that discovery were cited by this Court in denying Defendants' summary judgment motions based on the filed-rate doctrine.  *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-cv-05634-CRB, 2014 U.S. Dist. LEXIS 134104, *n4, *53, *59-60, *n34 (N.D. Cal., Sept. 23, 2014).

**C.     Defendants' Document Productions and Plaintiffs' Review Efforts**

37.     Despite the vigorous opposition of defense counsel, Plaintiffs obtained 1.7 million documents, totaling almost 7 million pages.  Defendants produced documents from over 374 document custodians.

38.     This documentary evidence was thoroughly reviewed, analyzed, coded and organized by a team of lawyers through an electronic review platform.  Through the use of targeted searches and other search devices and protocols, counsel reviewed close to a million pages of documents.  This process identified the important evidence in this case.  The process was made all the more complex because many of the documents were provided in foreign languages.  These documents required review by attorneys fluent in those foreign languages, who then had to determine which documents were sufficiently relevant to the litigation to require full English translations and, in certain cases, certified translations for use in

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

11

1    depositions. Though expensive and time consuming, the online database and process

2    developed by Class Counsel permitted Plaintiffs to efficiently prioritize documents and

3    custodians.

4         39.    In order to contain costs and maintain resources for the benefit of the Class,

5    Co-Lead Class Counsel made the decision that no document reviewer could bill at a rate higher

6    than $300 per hour for initial document review. Foreign language document reviewers were

7    given a cap of $375 per hour.

8         40.    Co-Lead Class Counsel assigned attorneys from many of the Supporting

9    Counsel firms to assist in the document review process. Each reviewer was provided with a

10   detailed memorandum regarding the various theories in the case, the existing facts and

11   evidence supporting that theory, and materials required to assist them in the document review.

12   The attorneys were then trained on the software and how to manage the documents that were

13   reviewed and coded (*i.e.,* the workflow process).

14        41.    During the initial discovery phase and particularly in the deposition phase, the

15   document review required the daily commitment of at least one attorney or paralegal from the

16   CPM office. Because the document review platform was being managed at CPM's offices, the

17   process also involved significant communications with IT specialists to manage, load and assist

18   in the rolling document productions. Although the ESI protocols were negotiated and agreed to

19   by all parties, Class Counsel experienced numerous issues related to the loading of data onto

20   the database. While these issues were technical in nature, they required meet and confers with

21   the Defendants and significant time spent with Plaintiffs' own consulting ESI experts.

22        42.    Plaintiffs also propounded requests designed to elicit Defendants' transactional

23   data. Plaintiffs were required to participate in countless and protracted meet and confers with

24   Defendants in order to understand the data and provide it in a useful format for Plaintiffs'

25   experts. Follow-up meet and confers were needed when Plaintiffs' experts had additional

26   questions.

27        43.    In addition to the offensive discovery outlined above, Plaintiffs were required

28

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE
AWARDS

to respond to discovery and to produce relevant documents to Defendants. Plaintiffs made their first production of documents on August 24, 2011 and made subsequent productions on December 9, 2011, January 10, 2012, March 4, 2013, and March 15, 2013. Class Counsel spent significant time responding to Defendants' discovery requests and assisting Class Representatives in the search and production of relevant document. Plaintiffs also spent substantial time responding to Defendants' contention interrogatories.

### D. Depositions

44. Class Counsel and Supporting Counsel also spent significant time preparing for and taking the depositions of Defendants' employees and former employees. Conspiracy cases are document heavy and require a large number of depositions.

45. All told, Plaintiffs took 62 depositions of Defendants' employees or former employees in either their Fed. R. Civ. Proc. 30(b)(1) or 30(b)(6) capacity. Of these 62 depositions, 36 required an interpreter, thus substantially prolonging the length of the deposition. Plaintiffs also took 3 third-party depositions, for a total of 65 depositions.

46. In many cases, Defendants refused to bring their deponents to the United States for deposition, thus requiring several trips to foreign countries, such as Australia, Japan, Hong Kong, Taiwan and Singapore. Adding to the complexity, deponents in Japan are precluded from appearing voluntarily. Class Counsel, therefore, was required to file motions with the Court, obtain deposition rooms at the U.S. Consulate or Embassy, and procure a deposition visa after a diplomatic exchange between the United States and Japan. ECF Nos. 737, 889. Additionally, some former employees refused to appear voluntarily, thus requiring Plaintiffs to utilize the time-consuming and inefficient Hague Process to compel their attendance at important depositions. ECF Nos. 796, 803-805, 891.

47. In connection with Defendants' summary judgment motions regarding the filed-rate doctrine, Plaintiffs propounded additional discovery, took the depositions of the Defendants' fact declarants, and took a third-party deposition of Joanna Bryant, ATPCO's declarant in support of Defendants' motions.

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

48.     The above-numbers only apply to the taking of depositions.  But Plaintiffs were also required to defend numerous depositions.  Defendants deposed all of the present Class Representatives – requiring Plaintiffs to defend a total of 15 such depositions.  Similarly, in connection with Plaintiffs' Opposition to Defendants' summary judgment motions regarding the filed-rate doctrine, Class Counsel had to prepare for and defend 3 expert depositions.

**E.     Summary Judgment Proceedings Regarding the Filed Rate Doctrine**

49.     Between September 10, 2013 and December 17, 2013, ANA, Air New Zealand, Cathay Pacific, China Airlines, EVA Airways, Philippine Airlines, Qantas, Singapore Airlines, and Thai Airways all filed summary judgment motions regarding the filed-rate doctrine.  In addition to filing individual motions, all of these Defendants – with the exception of ANA – also joined in a joint summary judgment motion.  Each submission was supported by one and sometimes two fact declarants.  *See* ECF Nos. 724, 725, 728, 731, 753, 763, 792.  The joint summary judgment motion was supported by the declaration of Joanna Bryant – a declarant from ATPCO.

50.     As noted previously, in anticipation of these motions, Plaintiffs engaged in extensive discovery, some of which required motion practice before Magistrate Judge Ryu.  This motion practice was resolved in favor of Plaintiffs.  Class Counsel propounded two sets of requests for production, two sets of interrogatories, and one set of requests for admission in order to fully understand what role, if any, the Department of Transportation played in allegedly supervising Defendants' fares and to obtain crucial admissions from Defendants.  Class Counsel also engaged in the *Touhy*-process to determine whether Defendant had in fact solicited the views of the Department of Transportation, as requested by this Court.  *Id.*

51.     In opposing the motions, Plaintiffs exhaustively researched the filed-rate doctrine and federal preemption case law, as well as the statutory and regulatory underpinnings of United States' aviation law and policy.

52.     In support of its Opposition, Plaintiffs also consulted with and retained three experts to provide expert testimony through the submission of extensive declarations.  *See* ECF

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

14

1   Nos. 872, 873, 874.  As previously noted, Plaintiffs also prepared for and defended the

2   depositions of these three experts.

3        53.   In response to Defendants' motions, Class Counsel submitted one omnibus

4   Opposition – totaling 60-pages.  ECF No. 869.

5        54.   During the pendency of Defendant's motion for summary judgment, Plaintiffs

6   reached settlements with Cathay Pacific, Qantas Airways, Singapore Airlines Ltd., and Thai

7   Airways.  As a result, these Settling Defendants withdrew their summary judgment motions.

8   ECF Nos. 839, 920, 932, and 933.

9        55.   On September 23, 2014, the Court granted in part and denied in part

10  Defendants' motions, keeping the vast majority of the claims in the case against Defendants.

11  *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-cv-05634-CRB,

12  2014 U.S. Dist. LEXIS 134104 (N.D. Cal. Sept. 23, 2014).  All of the remaining Defendants

13  filed petitions for interlocutory review and the appeal is now pending in the Ninth Circuit Court

14  of Appeals.

15  **SETTLEMENT PROCESS**

16       56.   Commencing in late 2008, Class Counsel and JAL began settlement

17  discussions.   These discussions continued and the parties were close to reaching a tentative

18  agreement when JAL filed for bankruptcy protection under the laws of Japan and sought and was

19  granted a stay of this litigation against it.  In mid-2010, while bankruptcy proceedings were still

20  pending, JAL and Plaintiffs executed a settlement agreement that reflected the financial condition

21  of JAL.   In addition to providing substantial cooperation to the Class, the JAL settlement

22  agreement provided a payment of $10 million.  Additional motion practice was held before the

23  bankruptcy court.  ECF No. 326, 373, 379-80.

24       57.   In or around mid-2012, Class Counsel began settlement negotiations with

25  counsel for Air France.  These negotiations resulted in a November 15, 2012 settlement

26  agreement that provided for cooperation and a payment of $876,000 to the Class.

27       58.   Also in or around mid-2012, Class Counsel began settlement discussions with

28

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

15

Malaysian Air.  These settlement talks resulted in the execution of a settlement agreement on June 11, 2013, providing for cooperation and a payment of $950,000 to the Class.

59.     In or around mid-2013, Class Counsel began settlement discussions with Vietnam Airlines.  These settlement discussions resulted in the execution of a settlement agreement on July 1, 2013, providing for cooperation and a payment of $735,000 to the Class.

60.     Also in or around mid-2013, Class Counsel engaged in settlement discussions with Thai Airways.  These negotiations resulted in a settlement agreement with Thai Airways on December 23, 2013, providing for cooperation and a payment of $9.7 million.

61.     In or around mid-2014, while the summary judgment motions were pending, Class Counsel and Cathay Pacific participated in a mediation before the Honorable Judge James Robertson, Ret., United States District Court for the District of Columbia.  The mediation resulted in the execution of a settlement agreement on July 22, 2014, providing for cooperation and a payment of $7,500,000 to the Class.

62.     Similarly, in the summer of 2014 Class Counsel and Qantas engaged in settlement discussions that culminated in the execution of a settlement agreement on August 8, 2014, providing for cooperation and a payment of $550,000, plus an additional $100,000 towards the cost of class notice.

63.     Finally, Class Counsel and Singapore Airlines had discussed the possibility of settlement since early 2014.  Those discussions culminated in the execution of a settlement agreement on August 13, 2014, providing for cooperation and a payment of $9,200,000 to the Class.

64.     Each of the foregoing settlements was premised on the following considerations: (1) the financial health of the airline, particularly in the case of JAL, (2) the evidentiary record as of the date of the settlement agreement, (3) Defendants' agreement to provide cooperation to the Class, (4) the volume of air traffic for U.S. originating travel, except in the case with JAL where JAL's overall commerce to and from the United States was analyzed, and (5) the Settling Defendants' legal defenses.  The settlements reached with

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

1   Settling Defendants create a Settlement Fund of $39,502,000.

2       65.    This Court preliminarily approved the first round of settlements with JAL, Air

3   France, Malaysian Air, Vietnam Airlines, Thai Airways, and Cathay Pacific on August 11,

4   2014.  ECF No. 924.  The Court preliminarily approved the second round of settlements with

5   Singapore Airlines and Qantas Airways on October 14, 2014.  ECF No. 951.

6   **NOTICE TO CLASS MEMBERS AND CLASS MEMBER RESPONSES**

7       66.    Class Counsel consulted with and engaged recognized experts in the class

8   action notice field, Kinsella Media, for purposes of providing the class with notice of the

9   proposed settlements.

10       67.    The Notice Program, developed in consultation with Kinsella Media, provided

11   for (1) multiple and targeted publications of the class notice in those domestic and international

12   paid media outlets most likely to inform potential class members about the settlements, (2)

13   press releases (*i.e.*, earned media) that were uniquely targeted to potential Class Members, (3)

14   the placement of the class notice on internet banner advertisements, including through the

15   social media outlet, Facebook; (4) the establishment of a settlement website that provided

16   notice of the settlements; and (5) a toll free telephone support line to service class members'

17   inquiries regarding the notice, which in turn, permitted them to request a copy of the notice

18   delivered via direct mail.  *See* ECF No. 948.

19       68.    In addition to applying to the Court for approval of Class Notice, Class

20   Counsel also designed and implemented the Plan of Allocation and Claim Forms.  ECF No.

21   948.

22       69.    On December 15, 2014, this Court approved both the Notice Program and the

23   Plan of Allocation.  ECF No. 968.

24       70.    Thus far, Plaintiffs have received no objections to any of the settlements, the

25   Notice Program, the Plan of Allocation, or to the request for attorneys' fees, which was

26   outlined in the notices.

27

28

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE
AWARDS

1

**TIME**

2

**A.      Class Counsel Made Efforts to Ensure that the Lodestar Figure is Accurate**

3            71.      Class Counsel have employed many measures to ensure that the lodestar figure

4    is not improperly inflated.  For example, Class Counsel have (1) capped the hourly rate for

5    initial document review to $300 per hour for initial document review and $375 per hour for

6    foreign language document review; (2) to avoid duplication of effort and achieve other

7    efficiencies, provided strict guidelines to Supporting Counsel that they were only to work on

8    the case at the direction of Co-Lead Class Counsel and that only time authorized would be

9    included in an application to the Court, (3) not included hours worked on this case prior to the

10   appointment of Class Counsel, thus eliminating any pre-complaint investigation, time spent on

11   service of process and time spent on the JPML proceedings, (4) required Supporting Counsel to

12   periodically submit contemporaneous time records to ensure compliance with Co-Lead Class

13   Counsel's guidelines, and (5) included hours only through February 20, 2015 for Supporting

14   Counsel (the "Supporting Counsel Relevant Period") and February 28, 2015 for Co-Lead Class

15   Counsel (the "Co-Lead Class Counsel Relevant Period").

16

**B.      Co-Lead Class Counsel and Supporting Counsel Time**

17           72.      Attached hereto as **Exhibit 2** is my firm's total hours and lodestar, computed

18   at historical rates, for the period of March 28, 2008 to February 28, 2015.  This period reflects

19   the time spent after appointment of Co-Lead Class Counsel in this litigation to February 28,

20   2015.  The total number of hours spent by CPM during this period was 17,608.1 with a

21   corresponding lodestar of $6,397,085.50.  This summary was prepared from contemporaneous,

22   daily time records regularly prepared and maintained by my firm.  The lodestar amount

23   reflected in Exhibit 2 is for worked performed by CPM for the benefit of the Class.

24           73.      The hourly rates for the attorneys, paralegals and law clerks at my firm

25   included in Exhibit 2 are the usual and customary hourly rates charged by CPM.

26           74.      Attached hereto as **Exhibit 5** is a summary of the total hours, lodestar and

27   expenses of all Plaintiffs' counsel – Co-Lead Class Counsel and Supporting Counsel – that

28

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE
AWARDS

participated in the joint prosecution of this litigation.  The total number of hours spent by all Plaintiffs' Counsel, including Class Counsel and Supporting Counsel is 98,364.36, with a corresponding lodestar of $38,685,058.25.  All firms were instructed to only submit time and lodestar for work done during the Relevant Period as well as capping certain services (*i.e.,* document review) at particular hourly rates.

75.    Attached hereto as **Exhibits 6 through 43** are detailed declarations with attached exhibits from all Supporting Counsel setting forth the time and costs they have incurred in this litigation.

## **EXPENSES**

76.    Attached hereto as **Exhibit 3** is a chart outlining the itemized costs and expenses incurred by CPM.  My firm expended $251,731.52 in unreimbursed costs and expenses in connection with the prosecution of this litigation.  They were incurred by my firm on behalf of the Class on a contingent basis, and have not been reimbursed.  The expenses incurred in this Action are reflected in the books and records of my firm.

77.    CPM contributed a total of $263,750.00 in assessments to the Litigation Fund.

78.    **Exhibit 5**, attached hereto, contains a compilation of each firm's unreimbursed costs and expenses in the amount of $930,039.61.  These costs and expenses are supported by each firm's separate declaration in support of fees and costs.

79.    As noted, Co-Lead Class Counsel established a Litigation Fund to finance the joint prosecution of this litigation against the Defendants.  Plaintiffs' counsel, including Co-Lead Class Counsel and Supporting Counsel, have contributed a total of $2,252,790.00 in assessments to the Litigation Fund.  A total of $1,877,660.12 in necessary litigation costs and expenses were paid from the Litigation Fund.  Attached hereto as **Exhibit 4** is an accounting of these costs and expenses.  None of these expenditures have been included for reimbursement in any of the individual fee and expense declarations of any Supporting Counsel.

80.    Total expenses incurred by Plaintiffs for the prosecution of this case are $2,807,699.73.  These expenses are calculated from the total of: (1) $930,039.61 of expenses

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

and costs incurred by each firm, as reflected in the exhibits to each declaration; and (2) $1,877,660.12 in Litigation Fund expenses.

81.     In relation to preliminary approval, this Court also provisionally approved the establishment of a $3,000,000 expense fund to reimburse Plaintiffs for future expenses incurred in carrying out the litigation against the remaining Defendants.  These amounts are not reflected in the attached charts or summaries.

### INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

82.     The Class Representatives in this action devoted substantial time and resources to assisting in the prosecution of this matter. Their help was essential to the success of this case. None of the Class Representatives conditioned, or were asked to condition, their participation in the litigation upon receiving an incentive award. None of the Class Representatives conditioned, or were asked to condition, their approval of any of the settlements upon the promise or expectation that they would receive any benefit greater than the rest of the Class Members.

83.     Class Counsel is seeking incentive payments in the amount of $7,500 to each Class Representative.  The Class Representatives each expended substantial time and effort as named plaintiffs. Among other things, they spent time reviewing and responding to multiple sets of document requests and interrogatories, including collecting responsive documents, preparing for and sitting for depositions, and consulting with Class Counsel regarding litigation strategy, settlement negotiations, and other matters.

84.     By shouldering the burdens associated with this litigation, each Class Representative has made a significant contribution to the recovery obtained for the Class. In light of the benefits conferred by the settlements reached in this case, the important role of the Class Representatives should be acknowledged with a reasonable payment to compensate them for their time and expenses associated with actively participating in this litigation.

/ / /

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

1          I declare under penalty of perjury under the laws of the United States that the foregoing

2    is true and correct.  Executed this 7th day of April, 2015 at Burlingame, California.

3

4                                */s/Steven N. Williams*

5                                Steven N. Williams

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURESMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS