IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS<br>_____ / | No. C 07-05634 CRB<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING MOTION FOR FEES** |

Now pending are (1) the Motion for Final Approval (dkt. 999) of the settlements between Plaintiffs and the "Settling Defendants" (Societe Air France, Cathay Pacific Airways Limited, Japan Airlines International Company, Ltd., Malaysian Airline System Berhad, Qantas Airways Limited, Singapore Airlines Limited, Thai Airways International Public Co., Ltd., and Vietnam Airlines Corporation),[1] and (2) Plaintiffs' Fees Motion (dkt. 986), filed in connection with the settlements. The Court preliminarily approved these settlements in two rounds—first in August 2014 and then in October 2014. See Orders Granting Prelim. Approval (dkts. 924, 951). At the motion hearing held Friday, May 22, 2015, the Court found the settlement fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2). The Court issues this Order to explain in greater detail its rulings on two particular issues: first, the amount of fees, and second, the objections.

---

[1] Not all Defendants in the case have settled; in fact, the non-settling Defendants, Philippine Airlines, Inc., Air New Zealand Ltd., China Airlines Ltd., All Nippon Airways Co., Ltd., and EVA Airways Corporation, wrote separately "to clarify that they are not party to the present settlement proceedings, and accordingly are not bound by any resolution of certain merits issues that have been raised in those proceedings." See Letter (dkt. 1005).

**1. Fees**

The Settling Defendants created a Settlement Fund of $39,502,000. Mot. for Final Approval at 1. Out of that Fund, Plaintiffs seek:

- $13,154,166 in attorneys' fees, Fees Mot. at 13;
- $3,829,582.01 in expenses, Supp. Williams Decl. (dkt. 1003) at 1;
- $3,000,000 "for future expenses to be used in ongoing litigation against the non-Settling Defendants," Fees Mot. at 1;
- and $7,500 for each of the fifteen Class Representatives (a total of $112,500), see Williams Decl. (dkt. 987) ¶¶ 82-84.[2]
- Plaintiffs would also deduct "approximately $2.4 million" from the Settlement Fund, "for costs associated with sending notice and administering the Settlements." See Mot. for Approval of Notice Program (dkt. 968) (granted December of 2014 (dkt. 968)).

At the motion hearing, the Court awarded Plaintiffs $9,000,000 in fees. The Court's reasoning is as follows.

While it is not an abuse of discretion to calculate fees based on the gross fund, see In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 953 (9th Cir. 2015); see also Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000) (no particular approach to determining fees mandated; "choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable"), Plaintiffs cite to no authority requiring the Court to use the gross. This Court has had a longstanding preference for using the net, and is not alone in that preference. See, e.g., Redman v. Radioshack Corp., 768 F.3d 622, 633 (7th Cir. 2014) ("the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation"); In re Wells Fargo Secs. Litig., 157 F.R.D. 467, 471 (N.D. Cal. 1994) ("If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses"); Miles v. AlliedBarton Security Svcs.,

---

[2] Plaintiffs informed the Court at the motion hearing that there are 15 representative class members.

2

1  LLC, No. 12-5761 JD, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014) ("the fees paid to
2  the settlement administrator—does not constitute a benefit to the class members").

3       The Court therefore subtracts the various expenses from the gross Settlement Fund.
4  The Court subtracts $2,807,699.73 in expenses,[3] $3,000,000 "for future expenses,"
5  $2,400,000 in notice costs, and $112,500 in individual awards to the Representative
6  Plaintiffs—a total of $8,320,199.73— from $39,502,000, leaving a net Settlement Fund of
7  $31,181,800.27. Plaintiffs' proposed fee award of $13,154,166 is not 33.3% of the Fund, as
8  they assert, see Fees Mot. at 1, but 42% of the net Fund. That $13,154,166 is reportedly less
9  than 35% of Plaintiffs' lodestar of $38,685,058.25, Fees Mot. at 13, is cold comfort.

10       In the Ninth Circuit, the benchmark is of course twenty-five percent. See Powers v.
11  Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent
12  of the recovery as a 'benchmark' for attorneys' fees calculations under the
13  percentage-of-recovery approach."). In some cases, however, the twenty-five percent
14  benchmark is "inappropriate." See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th
15  Cir. 2002). Courts must not arbitrarily apply a percentage but show why that percentage and
16  the award is appropriate based on the facts of the case. Id. Courts may consider "the extent
17  to which class counsel achieved exceptional results for the class, whether the case was risky
18  for class counsel, whether counsel's performance generated benefits beyond the cash
19  settlement fund," etc. See In re Online DVD-Rental Antitrust Litig., 779 F.3d at 954-55.
20  This case involved two rounds of motions to dismiss, filed by numerous defendants (one
21  round prompting a 47-page Order from the Court), a grueling discovery process (involving

---

[3] The Fees Motion, filed April 7, 2015, sought expenses of $2,807,699.73. Fees Mot. at 1. Plaintiffs then filed a supplemental declaration on May 15, 2015, requesting a total of $3,829,582.01 in expenses, Supp. Williams Decl. at 1 (explaining that the earlier amount "did not reflect two additional invoices that Class Counsel have incurred."). The Court notes that the far larger of the two additional invoices was dated February 27, 2015, and there is no apparent reason why Plaintiffs could not have included it in their earlier request. See id. Ex. A (2/27/15 invoice from Nathan Associates Inc. for $914,938.09). Moreover, as Objector Amy Yang noted at the motion hearing, class members were not able to assess the settlement in light of the additional one million dollars in expenses before they were required to either object or opt-out, and this is plainly improper under In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 993-95 (9th Cir. 2010) ("obligation of the district court to ensure that the class has an adequate opportunity to review and object to its counsel's fee motion"). Accordingly, the Court finds that the appropriate remedy is to award $2,807,699.73, rather than $3,829,582.01, in expenses.

3

65 depositions and almost 7 million pages in documents), and summary judgment (requiring a 60-page omnibus Opposition brief and resulting in an Order keeping the majority of claims in the case). Fees Mot. at 3-8. The settlement process, which began in late 2008, yielded a substantial recovery for the class and demanded of Plaintiffs' counsel risky, challenging, and as-yet uncompensated work. Id. at 8-9; 11-13. Plaintiffs note a study from 2008 showing that awards of thirty percent were given in 11 of 16 antitrust cases with recoveries of less than $100 million. Id. at 11 (citing Robert H. Lamde & Joshua P. Davis, Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases, 42 U.S.F. L. Rev. 879, 911 tbl. 7A (2008)). As the Court stated at the motion hearing, this was not a run-of-the-mill class action that settled relatively early; it was a heavily litigated, complicated case that was filed in 2007. Plaintiffs are therefore entitled to $9,000,000 in fees, which is roughly thirty percent of $31,181,800.27.

### 2. Objections

As for objections, there is just one, despite a class of hundreds of thousands. Mot. for Final Approval at 1. This alone suggests that the settlements are fair. See Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.. 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."). Objector Amy Yang, the wife of an attorney at the Center for Class Action Fairness, see Mot. for Final Approval at 1, raises a number of objections to the settlements. The Court held at the motion hearing that it was overruling Yang's objections, aside from her objection to the requested attorneys' fees, see Objection (dkt. 993) at 6-8, addressed above. The Court's reasoning is as follows.

First, Yang states that the settlements inappropriately treat all class members the same despite differences in the value of their claims. Objection at 2. Specifically, Yang believes that purchasers of US-originating flights and foreign-originating flights should be treated differently, and that direct and indirect purchasers should be treated differently. Id. at 3-5. The Court declines the opportunity to wade into the Illinois Brick issue at this time. See

Letter at 1 ("This motion is not the proper vehicle for this Court to adjudicate whether certain class members are indirect purchasers subject to an Illinois Brick defense"). Although the Court's 2011 Order on one of the rounds of motions to dismiss held that the FTAIA barred recovery for flights originating in Asia/Oceania, see generally Order on MTD (dkt. 467), Plaintiffs represent that the Japan Airlines settlement took place before that ruling, see Mot. for Final Approval at 9, and they noted at the motion hearing that they could still appeal that ruling. Ultimately the Court does not believe that its role is to "differentiat[e] within a class based on the strength or weakness of the theories of recovery." See Sullivan v. DB Investments, Inc., 667 F.3d 273, 328 (3d Cir. 2011). The Ninth Circuit explained in Lane v. Facebook that while some class members' claims might have been more valuable than others at trial, "that does not cast doubt on the district court's conclusion as to the fairness and adequacy of the overall settlement amount to the class as a whole." 696 F.3d 811, 824 (9th Cir. 2012) (emphasis in original). The court explained that class actions "necessarily reflect[] the parties' pre-trial assessment as to the potential recovery of the entire class, with all of its class members' varying claims." Id. So too here, while there might be differences in the values of individual class members' claims at trial (or following appeal), the Court finds that the settlement as a whole is substantial, and fair. The Court therefore rejects Yang's argument that there is a conflict between the class members necessitating either a different valuation of claims or subclasses.

Second, Yang argues that the $3 million "future litigation fund" is improper and should be denied. Objection at 8-9. The Court disagrees. See Alba Conte, 1 Attorney Fee Awards § 2:20 (3d ed. 2004) (courts have "permitted class plaintiffs who have settled with fewer than all defendants to expend class-settlement monies, or a portion thereof, for litigation expenses to prosecute the action against remaining, non-settling defendants") (collecting cases); In re TFT-LCD (Flat Panel) Antitrust Litig., No. 07-1827 SI, Order Granting Direct Purchaser Class Plaintiffs' Motion for the Advancement of Litigation Expenses From Settlement Funds (dkt. 2474) (N.D. Cal. Feb. 17, 2011) (granting $3 million in future litigation expenses, holding: "The advanced litigation funds will benefit direct

purchaser class members by assisting Class Counsel to prosecute this case effectively."). The Court has no reason to believe that Plaintiffs would misuse the funds.

Third, Yang complains that notice was inadequate because it did not include direct notice to individual class members. Objection at 10-12. But due process does not mandate individual notice—what it mandates is the "best notice that is practicable under the circumstances" and "through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); Silber v. Mabon, 18 F.3d 1449, 1453-54 (9th Cir. 1994). Plaintiffs have presented evidence that individual notice to all class members here was not possible. See Mot. For Final Approval at 5 (Qantas, Japan Airlines). Moreover, the notice program, which the Court already approved, reached 80.3% of the potential class members in the United States an average of 2.6 times and "at least 70%" of members of the Settlement Classes living in Japan. See Mot. for Final Approval at 4; Wheatman Decl. ¶¶ 8, 18. The notice also included paid media in 13 other countries. Id.; ¶ 25. There were 700,961 unique visits to the website, toll-free numbers in 15 countries received over 2,693 calls, and 1,015 packages were mailed to potential class members. Id. ¶¶ 6, 9, 10. It was therefore adequate. See In re Google Referrer Header Privacy Litig., No. 10-4809 EJD, 2015 WL 1520475, at *3 (N.D. Cal. March 31, 2015) ("individual notice is not always practical. When that is the case, publication or some similar mechanism can be sufficient to provide notice.").

Fourth, Yang contends that the Notice was inadequate because it did not include the identity of the potential cy pres recipient. Objection at 12-13. Again, the Court has already approved notice here. Moreover, in this case, payment to a Court-approved cy-pres would only take place for a "tiny fraction of funds if money remains after paying Class members." Mot. for Final Approval at 6; Objection at 12. Judge Illston recently approved a similar provision. See In re TFT-LCD (Flat Panel) Antitrust Litig., No. 07-1827 SI, 2013 WL 1365900, at *5 (N.D. Cal. Apr. 3, 2013) (granting final approval, notwithstanding Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012), where only provision in plan involving cy pres was provision for residual funds to be distributed in court's discretion). The Court is not troubled by the lack of a named cy-pres in this case.

1    Fifth, Yang asserts that the class definition lacks an end date.  Objection at 13-14.  She
2 is incorrect: the end date is defined in the settlement agreements and in the notice as the date
3 "(a) the Court has entered Judgment; and (b) the time for appeal has expired, or if an appeal
4 occurs, the Judgmenthas been affirmed and no further appeals are possible."  Mot. for Final
5 Approval at 13-14; Long Form Notice on website.  Moreover, Plaintiffs assert that they will
6 post the exact effective date on the website when the criteria are met.  Mot. for Final
7 Approval at 14.  This is adequate.

8    Finally, Yang maintains that the class definition should exclude potential appellate
9 judges.  Objection at 15.  This objection is meritless; appellate judges may always recuse
10 themselves if they are conflicted.

11    Accordingly, finding the settlements fair, reasonable, and adequate, and rejecting the
12 objections, the Court GRANTS both final approval and fees in the amount explained above.

13    **IT IS SO ORDERED.**

15 Dated: May 26, 2015

16                                     CHARLES R. BREYER
17                                     UNITED STATES DISTRICT JUDGE