Ankur Kapoor
Gary J. Malone
Harrison McAvoy
Yo W. Shiina
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Telephone:     (212) 350-2700
Facsimile:      (212) 350-2701
Email: akapoor@constantinecannon.com

Douglas E. Rosenthal
CONSTANTINE CANNON LLP
1001 Pennsylvania Avenue, N.W., Suite 1300N
Washington, DC 20004
Telephone:     (202) 204-3510
Facsimile:      (202) 204-3501
Email: drosenthal@constantinecannon.com

Jesse W. Markham, Jr.
1 Embarcadero Center, 5th Floor
San Francisco, CA 94111
Telephone: 415-422-4473
Email: jmarkhamlaw@gmail.com

*Counsel for Defendant All Nippon Airways Co., Ltd.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | **Master File No. C 07-5634 CRB** |
| | **MDL NO. 1913** |
| **This Document Relates To:** | **CLASS ACTION** |
| **ALL ACTIONS** | **DEFENDANT ALL NIPPON AIRWAYS CO., LTD'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Judge:      The Honorable Charles R. Breyer |

## REDACTED PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUE ................................................................................................ v

SUMMARY OF ARGUMENT ...................................................................................... v

ARGUMENT .................................................................................................................. 1

I.      Rule 23 Standard for Class Certification ........................................................... 1

II.     Plaintiffs Have Failed to Demonstrate Common Injury to the Japan Class ...................... 3

        A.      Plaintiffs' Proffered Methodology Fails to Account for the Functioning of
                Supply and Demand in Airfare Pricing Systems and Includes Large Numbers
                of "False Positives" ............................................................................. 4

        B.      Plaintiffs' Proffered Methodology Contains a Number of Additional Flaws ........ 9

III.    Plaintiffs Have Not Put Forward a Valid Measure of Class-wide Damages for the Japan
        Class .................................................................................................. 11

        A.      Dr. Mangum's Average Overcharge Calculation Is Not Limited to the Effects of
                Plaintiffs' Proffered Theory of Liability ................................................ 12

        B.      Dr. Mangum's Overcharge Model Ignores the Effect of Yield Management on
                Average Prices .................................................................................. 13

IV.     Plaintiffs Have Failed to Offer Any Methodology Demonstrating Impact to the Satogaeri
        Class .................................................................................................. 14

V.      Dr. Mangum's Opinions Regarding Damages to the Satogaeri Class Are Unreliable and
        Unpersuasive ....................................................................................... 16

VI.     Ascertaining Impact and Damages in This Case Requires Individualized Inquiry .......... 19

VII.    Plaintiffs' Proffered Japan Class Representatives Satisfy Neither of Rule 23(a)'s
        Typicality or Adequacy Requirements ..................................................... 20

CONCLUSION ............................................................................................................. 22

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

i

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Allied Orthopedics Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
   247 F.R.D. 156 (C.D. Cal. 2007) ................................................................. 12

*Am. Airlines, Inc. v. KLM Royal Dutch Airlines*,
   114 F.3d 107 (8th Cir. 1997) ..................................................................... 4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................... 1, 15, 21

*Bigelow v. RKO Radio Pictures*,
   327 U.S. 251 (1946) ............................................................................ 11

*Burke v. Local 710 Pension Fund*,
   No. 98C3723, 2000 WL 336518 (N.D. Ill. 2000) ............................................. 15

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..................................................................... passim

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
   773 F.2d 1506 (9th Cir. 1985) ................................................................ 11

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................... 1, 3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ......................................................................... 1-2

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................. 22-23

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ........................................................................... 15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ............................ 6

*In re Florida Cement & Concrete Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ................................................................. 8

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) ............................................................ 7, 9

*In re High-Tech Emp. Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013) ..................................................... vi, 1, 2, 3

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-cv-2509, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) .................................................. 2

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ................................................................................................... 2

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-md-2420, 2017 WL 1391492 (N.D. Cal. Apr. 12, 2017) ............................................. 2

*In re Methionine Antitrust Litig.*,
  204 F.R.D. 161 (N.D. Cal. 2001) .................................................................................. 16, 17, 19

*In re Optical Disk Drive Antitrust Litig.*,
  303 F.R.D. 311 (N.D. Cal. 2014) ................................................................................... vi, 2, 9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ....................................................................................... vi, 2, 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  No. 07-mc-489, 2017 WL 5311533 (D.D.C. Nov. 13, 2018) ........................................... passim

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .............................................................................................. 3

*LaFlamme v. Societe Air France*,
  702 F. Supp. 2d 136 (E.D.N.Y. 2010) ................................................................................. 13

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ................................................................................................ 3

*Mazur v. eBay Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009) ......................................................................................... 22

*Mendez v. U.S. Nonwovens Corp.*,
  213 F.R.D. 81 (E.D.N.Y. 2014) ........................................................................................... 13

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  476 F. Supp. 2d 1143 (N.D. Cal. 2007) ................................................................................. 7

*Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*,
  85 F.2d 1286 (8th Cir. 1988) ............................................................................................... 11

*Pecover v. Electronic Arts Inc.*,
  No. 08-2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................ 16

*Shaw v. United States*,
  371 F. Supp. 2d 265 (E.D.N.Y. 2005) .................................................................................. 2

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ...................................................................... 7

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016)..................................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 1, 3

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013)....................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 23.......................................................................... passim

Federal Rule of Evidence 702 ......................................................................................... 3

**Other Authorities**

*Agreements adopted by the Int'l Air Transp Assoc. relating to the conduct of Traffic Conferences*,
    Order 85-5-32, 1985 WL 58182 (Dep't of Transp. 1985).......................................... 13

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

**STATEMENT OF ISSUES**

1.   Whether Plaintiffs have sustained their burden under Federal Rule of Civil Procedure 23 to demonstrate entitlement to certification of the proposed Japan and Satogaeri Classes.

2.   Whether Cotchett, Pitre & McCarthy LLP and Hausfeld LLP should be appointed Co-Lead Counsel for the Classes.

3.   Whether Della Ewing-Chow, Nancy Kajiyama, Brandon Maloof, and Harley Oda should be appointed as Class Representatives on behalf of the Japan Class.

4.   Whether James Kawaguchi, Shinsuke Kobayashi, and Harley Oda should be appointed as Class Representatives on behalf of the Satogaeri Class.

**SUMMARY OF ARGUMENT**

Plaintiffs' motion for class certification suffers from a variety of flaws, any one of which prohibits the certification of either proffered class.  Plaintiff-passengers seek to certify two classes:  (1) a Japan Class, which seeks to recover damages for higher airfares they claim passengers paid as a result of alleged collusion on fuel surcharges; and (2) a Satogaeri Class, which claims damages for higher airfares they claim passengers paid as a result of alleged collusion on net fares paid by travel agents for certain discount fares.[1]  Plaintiffs have not demonstrated compliance with Rule 23's rigorous requirements with respect to either class, including the predominance requirement that Plaintiffs demonstrate the ability to measure both class-wide impact and damages using common proof.  Plaintiffs' motion must be denied.

Critical to any analysis of airline pricing is the effect of yield-management systems through which airlines, including All Nippon Airways (ANA) and Japan Airlines (JAL), automatically adjust airfare prices for individual flights in real-time and in response to customer demand and supply, *i.e.*, available seats on the airplane.  For example, if an airline initially sets prices too high given demand, fewer seats will sell.  Based on historical flight and price data, the airline's yield-management software will then offer lower-priced fare classes until a sufficient

---

[1] Plaintiffs do not assert class claims for any alleged collusion on passenger base fares.  Rather, Plaintiffs have only alleged collusion with respect to fuel surcharges and *satogaeri* net fares paid by travel agents.

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

number of seats are sold so as to maximize revenue given likely future bookings up until the flight departure, *e.g.*, by reserving seats for higher-priced last-minute business travel.  Inversely, if the airline sets prices too low given demand, seats will sell relatively quickly.  The yield-management software will then cease offering those lower-priced seats and sell higher-priced fare classes to meet expected future demand.  The yield-management process operates continuously, from the time the first booking is made until the flight departure date.

Because yield-management pricing results in significant variability in the prices offered for seats on a given flight based on changes in demand, any model purporting to determine prices in a hypothetical world, free of an alleged collusive effect, must incorporate the effect of yield-management pricing.  Plaintiffs' proffered methodology does not do so, rendering it useless for measuring impact and damages in this case.

In his report, ANA's expert, Edward A. Snyder, Ph.D., Dean of the Yale School of Management, analyzes the effects of the alleged conduct and highlights the importance of accounting for both ANA's and JAL's yield-management systems.  (*See* Expert Report of Edward A. Snyder ("Snyder Report"), Ex. 1 to Declaration of Harrison J. McAvoy ("McAvoy Decl.").)  Dean Snyder's analysis demonstrates that large numbers of purported Japan Class members likely were *not* harmed by the alleged conduct, *i.e.*, they paid *lower* prices during the alleged conspiracy than they would have paid for comparable fares in the periods before and after the alleged conduct.  In other words, "false positives" permeate the Japan Class and Plaintiffs' model.  Plaintiffs' proffered methodology thus cannot show that all or nearly all class members were harmed or by how much, as required to certify the Japan Class.  *See In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 319 (N.D. Cal. 2014); *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 566 (N.D. Cal. 2013); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013) ("Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact.").

Further, the methodology offered by Plaintiffs' expert, Russell W. Mangum III, Ph.D., Senior Vice President of Litigation Advisory Services at Nathan Associates and Associate Professor at Concordia University Irvine School of Business, fails to offer a damages calculation

CONSTANTINE CANNON LLP
335 MADISON AVE., FL 9
NEW YORK, NY 10017

vi

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

that isolates damages to those stemming from Plaintiffs' theory of the case, and instead includes the effects of changes to IATA-fare pricing, which have immunity under the antitrust laws. Dr. Mangum's methodology for estimating damages also fails to disaggregate the effects of other lawful conduct not challenged by Plaintiffs. Under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), the failure to isolate damages stemming from class plaintiffs' theory of their case requires denial of class certification where, as here, individualized questions of liability (impact) and damages predominate common questions.

Plaintiffs' proposed Japan Class representatives pose an additional problem for their motion: none of them possesses claims typical of the class, or is an adequate representative, because each of them purchased their tickets indirectly through travel agents and thus cannot properly represent a class of direct purchasers.

Plaintiffs' proposed Satogaeri Class is also patently un-certifiable. In addition to Dr. Mangum's failure to account for yield management, Plaintiffs' proffered methodology for measuring impact and damages for the Satogaeri Class does not analyze the prices paid by passengers *at all*. The proposed Satogaeri Class, by definition, is composed entirely of passengers who bought their tickets from a travel agent. ANA and JAL both offered *satogaeri* tickets to travel agents on a "net fare" basis, *i.e.*, the travel agent remits a net fare amount to the airline while the travel agent sets the ticket price paid by the passenger. (Mangum Report ¶ 191.) The passenger pays the price for the ticket to the travel agent, not to the airline. Plaintiffs claim that ANA and JAL colluded on the net fares paid by travel agents, not on the ticket prices paid by passengers to travel agents. (Mangum Dep. 205:14-206:7, McAvoy Decl., Ex. 2.) The Satogaeri Class thus consists entirely of indirect purchasers—neither Plaintiffs' nor their expert's methodology accounts for that fact—and Plaintiffs' expert only looks at the net fares, *not* the ticket prices paid by passengers. As a result, Plaintiffs' motion is flawed both legally, for failing to account for federal antitrust law's bar on indirect-purchaser suits, and from a methodological standpoint because Dr. Mangum offers no quantitative analysis to demonstrate impact and instead assumes, contrary to evidence in the record, that all increases in net fares resulting from the alleged conduct were passed on one-for-one to passengers.

Constantine Cannon LLP
335 Madison Ave., Fl. 9
New York, NY 10017

vii
DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

Dr. Mangum's Satogaeri Class methodology also relies entirely on his flawed selection of a benchmark fare and the flawed, apples-to-apple-pie comparison of that benchmark fare to *satogaeri* net fares—for only 5 percent of the volume on which Dr. Mangum purports to calculate impact and damages.  Dr. Mangum did not look at 95 percent of the *satogaeri* volume or prices. Had he done so, he would have seen that a large portion of Satogaeri Class members—including the proffered class representatives—may have paid prices *lower* than Dr. Mangum's own chosen benchmark and so would not have been harmed.

Because Plaintiffs have not sustained their burden with respect to either proffered class, their motion for class certification should be denied.

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1

## ARGUMENT

2

### I.      Rule 23 Standard for Class Certification

3           Rule 23 sets forth the requirements that a plaintiff must sustain in order to represent a

4   class of similarly situated persons.   "[C]ertification is proper only if the trial court is satisfied,

5   after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*

6   *Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations and citations omitted).  That

7   is, the Court may certify a class only if the requirements of numerosity, commonality, typicality,

8   and adequacy are satisfied.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir.

9   2011); *see also* Fed. R. Civ. P. 23(a).  Moreover, in a class action seeking money damages and

10  certification under Rule 23(b)(3), where "class-action treatment is not as clearly called for," Fed.

11  R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment, a plaintiff must also establish

12  the additional requirements of Rule 23(b)(3), namely predominance and superiority.  *Comcast*,

13  569 U.S. at 34 ("Rule 23(b)(3), as an adventuresome innovation, is designed for situations in

14  which class-action treatment is not as clearly called for." (internal quotations omitted)).

15          Under the predominance inquiry, a requirement "even more demanding than Rule 23(a),"

16  a class may only be certified if "questions of law or fact predominate over any questions affecting

17  only individual members." *Id.*; Fed. R. Civ. P. 23(b)(3).  The predominance requirement seeks to

18  ensure that the class action is an appropriate vehicle for a particular case or, conversely, if

19  individual questions make common treatment unmanageable.  *See Amchem Prods., Inc. v.*

20  *Windsor*, 521 U.S. 591, 615 (1997).  "If, to make a prima facie showing on a given question, the

21  members of a proposed class will need to present evidence that varies from member to member,

22  then it is an individual question.  If the same evidence will suffice for each member to make a

23  prima facie showing then it becomes a common question." *High-Tech Emp.*, 289 F.R.D. at 564

24  (internal quotation marks omitted).  In antitrust class actions, the predominance requirement

25  implicates *inter alia* the questions of liability, injury (or impact), and damages. *Id.* (quoting *Erica*

26  *P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether questions

27  of law or fact common to class members predominate begins, of course, with the elements of the

28  underlying cause of action.")).

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

While "[t]he main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues," *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545-46 (9th Cir. 2013) (internal quotation marks omitted), a plaintiff's failure to demonstrate the capability of common treatment of certain issues forecloses class certification.  For one, a plaintiff must demonstrate class-wide injury or "impact" in order to maintain class claims under Section 1 of the Sherman Act.  *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 319 (N.D. Cal. 2014) (a plaintiff "must be able to establish, predominantly with generalized evidence, that all (or nearly all) members of the class suffered damages as a result of the defendants' alleged anti-competitive conduct"); *High-Tech Emp.*, 289 F.R.D. at 566; *Rail Freight Fuel Surcharge*, 725 F.3d at 252-53 ("Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact.").  In evaluating the question of impact, courts require that a plaintiff demonstrate the ability to show impact to "all (or nearly all) members of the class." *Optical Disk Drive*, 303 F.R.D. at 319; *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2017 WL 1391491, at *8 (N.D. Cal. Apr. 12, 2017).

In establishing impact, it is not sufficient to rely on generalized proof of a conspiracy to presume impact as Plaintiffs suggest.  (Pls.' Br. 18, 20-21, ECF No. 1119.)  Rather, a plaintiff must affirmatively establish a class-wide method of impact consistent with Rule 23's rigorous standards.  *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-2509, 2014 WL 1351040, at *23 (N.D. Cal. Apr. 4, 2014); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 326 (3d Cir. 2008).  Nor does the existence of a guilty plea in a criminal antitrust action establish impact in support of class certification; impact on buyers is not an element of proof in a criminal antitrust violation.  *Shaw v. United States*, 371 F. Supp. 2d 265, 272 (E.D.N.Y. 2005) ("[A]ntitrust injury [is] not a required element[] to prove a criminal violation of Section 1 of the Sherman Act.").

Moreover, a class may not be certified unless a plaintiff's proffered damage calculation includes only those damages caused by the asserted theory of liability.  *Comcast*, 569 U.S at 35 ("[A] model purporting to serve as evidence of damages . . . must measure only those damages attributable to th[e] [asserted] theory [of liability].")  While a plaintiff "need not show that each [class] members' [sic] damages . . . are identical," *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120

CONSTANTINE CANNON LLP
335 MADISON AVE., FL 9
NEW YORK, NY 10017

2

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

(9th Cir. 2017) (citing *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)), "[i]f the plaintiffs cannot prove that damages resulted from the defendant's conduct," the predominance requirement is not met, and a class must not be certified. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) ("We have interpreted *Comcast* to mean that plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." (internal quotation marks omitted)).

In addition to meeting standards of admissibility under Federal Rule of Evidence 702, an expert opinion offered in support of a motion for class certification must additionally survive scrutiny and the "rigorous analysis" required by Rule 23. *See High-Tech Emp.*, 289 F.R.D at 567 (quoting *Ellis*, 657 F.3d at 982). Under that analysis, the Court must "judg[e] the persuasiveness of the evidence presented" and must "resolve any factual disputes necessary to" ensure that Rule 23's requirements have been satisfied. *Ellis*, 657 F.3d at 982-83 (citing *Wal-Mart*, 564 U.S. at 351, 353). For instance, if an expert's opinion fails to address an essential question based on lack of analysis or a misspecification, or if the Court is not persuaded by the evidence offered, it must resolve that factual issue for purposes of the motion. *See Wal-Mart*, 564 U.S. at 353-54 (rejecting expert evidence offered in support of common question as unpersuasive based on expert's failure to include calculation addressing central question of analysis).

## II.    Plaintiffs Have Failed to Demonstrate Common Injury to the Japan Class.

Plaintiffs' motion fails to demonstrate common injury to the Japan Class and thus should be denied. Plaintiffs' efforts to demonstrate common impact fail for two overarching reasons. First, Plaintiffs' expert finds injury to class members where none exists; in other words, his results are replete with "false positives" and so his model cannot identify whether all or nearly all class members have been injured. These false positives are the result of Dr. Mangum's failure to account for the functioning of supply and demand through airline yield-management systems, as well as the inclusion of specifications in his overcharge model that result in finding conspiratorial overcharges when the model is applied to time periods where no conspiracy is alleged. Second, Dr. Mangum's overcharge model is generally flawed and thus cannot identify class-wide impact for numerous other reasons, including because his overcharge estimate is based on less than one-

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

3
DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

fifth of the itineraries within the proposed Japan Class.  Based on these shortcomings, his

opinions cannot be considered persuasive evidence of impact or damages.

**A.      Plaintiffs' Proffered Methodology Fails to Account for the Functioning of Supply and Demand in Airfare Pricing Systems and Includes Large Numbers of "False Positives."**

Plaintiffs, in attempting to demonstrate common impact, have failed to account for the

effect of pricing systems employed by ANA and JAL on the prices paid by the proposed Japan

Class and on the prices those class members would have paid absent the alleged conduct.  The

airline industry has developed and widely employed sophisticated pricing systems, known as

yield-management systems, starting as early as the late 1970s.  *Am. Airlines, Inc. v. KLM Royal*

*Dutch Airlines*, 114 F.3d 108, 109 (8th Cir. 1997).  These systems determine the prices charged

for seats on individuals flights based on supply and demand factors, such as: for each flight, how

many seats have been sold, how many days are left before the flight, how many travelers are

likely to purchase a ticket leading up to the flight, how much those travelers are likely willing to

pay, and what alternative uses for the remaining seats exist.  (Snyder Report ¶¶ 65, 69, 71.)  The

effect of these supply and demand factors and the ultimate pricing determination of the system are

forecasted and derived from, *inter alia*, data concerning past purchases.  (*Id.* ¶¶ 69, 71.)  For

instance, if seats on a flight are not selling as quickly as anticipated, the pricing of the remaining

seats might be discounted to encourage additional sales.  (*Id.* ¶ 71.)  As a result, prices on any

given flight are often fluid, reacting to the influences of supply and demand, and are derived from

the individual preferences of prospective purchasers, which may result in two passengers on the

same flight sitting in comparable seats but paying two very different prices.  (*See id.* ¶¶ 68, 71-

72.)  For example, one passenger may have booked the flight relatively early when the plane was

empty, and so paid a discounted fare, while the other was a business traveler who had to book

last-minute and so paid a very high fare when the plane was almost full.  Both ANA and JAL,

although much later than U.S. carriers, began using yield-management systems (from different

vendors) during the relevant period, in 2002 and 2005 respectively.  (*Id.* ¶ 66.)

Incorporating yield-management pricing and its implications is necessary for any analysis

of airline pricing or methodology designed to model a hypothetical but-for world of airfare

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

4

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1   pricing absent the alleged collusion described in the Complaint.  (*Id.* ¶¶ 79(iii), 80-81.)  Dr.

2   Mangum, in his report and deposition testimony, expressly acknowledges that yield management

3   is an integral part of airline pricing.  (Mangum Report ¶ 29 (██████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████); Mangum Dep. 60:21-

7   62:22.)  This is so because, assuming that a conspiracy to increase prices occurred as alleged, the

8   potential impact, or overcharge, cannot be determined without understanding both: (a) how the

9   alleged higher price affected demand for seats in the actual world, including whether it caused

10  fewer sales and therefore caused the yield-management system to offer discounted fare classes;

11  and (b) how the non-collusive but-for price would affect the demand for tickets and thus the

12  allocation of fares.  (Snyder Report ¶¶ 27, 81.)

13      If a collusively set fuel surcharge increased the average fare for a flight, basic economic

14  principles dictate that the quantity of seats demanded would decrease; in response, an airline's

15  yield-management system would increase the allocation of seats to lower priced fare classes.  (*Id.*

16  ¶¶ 71-72.)  Any customer that purchased one of those discount fares during the alleged conspiracy

17  may have purchased a more expensive fare absent the alleged collusion, meaning that some

18  passengers may have been better off during the alleged collusion than without it.  (*Id.* ¶¶ 71-72,

19  80-81.)  A key implication of yield management is that "even as the average price of a broad fare

20  class rises, sub-groups of passengers may actually become better off as a result."  (*Id.* ¶¶ 72, 79.)

21  The point is that impact on all or nearly all passengers from alleged collusion cannot be presumed

22  simply because, on average, prices increased.  For some passengers, prices likely went up (when

23  compared to the but-for world), but for others prices would have been lower.  (*Id.* ¶¶ 79, 99.)

24  Class-wide impact must be tested, which Dr. Mangum fails to do.[1]

25  _____

26  [1] Merely incurring the surcharge is insufficient to establish impact; the relevant inquiry is
    "whether the plaintiff was overcharged on the total or 'all-in' price of a given transaction."  *In re*

27  *Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1175, 2014 WL 7882100, at *44 (E.D.N.Y.
    Oct. 15, 2014).

28

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

5

Dean Snyder's analysis, matching comparable itineraries from before or after the alleged conspiracy period to those affected by the alleged collusion, indicates that large shares of passengers on many routes would have paid more both during Dr. Mangum's benchmark period (before the alleged Japan Class conspiracy) and after the alleged conspiracy. (*Id.* ¶ 99 ("[W]hile some passengers in the but-for world may have paid more for their tickets, other passengers would have paid less.").) For instance, on JAL's route from New York City to Tokyo, nearly half of customers, 48 percent, paid a fare less expensive than the lowest comparable fare available during Dr. Mangum's benchmark period. (*Id.* ¶ 95.) Depending on the route analyzed, these results vary widely. (*Id.* ¶¶ 95-96.) But across ANA's and JAL's most frequently flown routes, there is always a substantial share of passengers who would have likely paid less during the alleged conspiracy than comparable itineraries in the period before or after the alleged conspiracy—ranging from 15 percent to 75 percent. (*Id.*, Exs. V.2A-V.2E, V.3A-V.3E, V.10A-V.10E, V.11A-V11E.) Dean Snyder's analysis demonstrates that Dr. Mangum's assumptions, that harm can be calculated uniformly and that impact can be demonstrated on a class-wide basis, are incorrect. (*Id.* ¶ 99.) A failure to demonstrate that "all or virtually all" class members were injured requires that class certification be denied. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-mc-489, 2017 WL 5311533, at *87 (D.D.C. Nov. 13, 2018) (stating that courts have held that the existence of more than 5 or 6% uninjured class members is too many). Here, where the evidence suggests that at least 15% of passengers on the most frequently flown flights were not injured—and in most cases, much more than 15%—Plaintiffs have failed to sustain their burden. *See id.* at *87-88 (denying class certification where 12.7%, or 2,037 members, of the class were uninjured).

While Dr. Mangum recognizes the importance of yield-management systems to airline pricing, he fails entirely to incorporate their effects into his methodology purporting to demonstrate class-wide impact. Dr. Mangum admitted in his deposition that █████████████████████████████████████████████████████████████████:

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

[REDACTED]

(Mangum Dep. 77:9-15.)  Dr. Mangum has thus not looked at what happens when higher prices result in fewer sold seats, namely, that ANA's and JAL's yield-management software will open lower-priced fare classes.

Dr. Mangum thereby wholly ignores fundamental economic principles of supply and demand in airline pricing—principles that he acknowledges are critical to airline pricing. (Mangum Report ¶ 29 ([REDACTED]).)  Courts routinely reject, as inadmissible, expert evidence that fails to account for basic, fundamental economic principles such as supply and demand. *See In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 496 (N.D. Cal. 2008) (rejecting expert evidence offered in support of class-wide impact that failed to consider "supply and demand factors" and denying class certification); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1155-56 (N.D. Cal. 2007) (holding expert opinion inadmissible where expert did "not account for supply and demand" and made "no allowance for the impact that increased prices would have had on demand" in proposing methodology for calculating hypothetical damages); *see also Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1210 (N.D. Cal. 2009) (recognizing that courts regularly reject as inadmissible expert evidence that "totally omitted to include supply and demand factors as part of the methodology").  For that reason alone, Dr. Mangum's methodology is fatally flawed and should be rejected as unreliable, unpersuasive evidence of impact.

Dr. Mangum's failure to incorporate the effects of yield-management pricing in his model impermissibly results in his finding impact and damages where none are likely to exist.  Where a damages model "detects injury where none could exist," or contains "false positives," the model cannot serve as a methodology demonstrating class-wide injury and cannot support class

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

certification.  *Rail Freight Fuel Surcharge*, 725 F.3d at 252-53, 254-55.  This is precisely what Dr. Mangum's model does.

A prior opinion of Dr. Mangum's has also been criticized for failing to account for an alleged conspiracy's effect on individual customers.  In *In re Florida Cement & Concrete Antitrust Litigation*, Dr. Mangum offered testimony in support of class certification in a case involving allegations of a conspiracy among Florida "cement companies to fix, raise, stabilize, or maintain prices of . . . ready-mix concrete." No. 09-23187, 2012 WL 27668, at *1 (S.D. Fla. Jan. 3, 2012).  The court denied plaintiffs' motion for class certification on the basis that Dr. Mangum's report failed to provide a methodology for assessing class-wide impact or damages. Specifically with respect to impact, the court held that, because certain of the defendants' customers did not pay more during the alleged conspiracy, common impact could not be demonstrated.  *Id.* at *9.  There, the record evidence, including the defendants' expert evidence, demonstrated that "numerous customers . . . paid no more, and often less," during the period of the alleged collusion, and that empirical analysis indicated "that some class members' prices increased, while many [c]lass members' prices stayed the same or decreased."  *Id.*  Because similar false positives are present in Dr. Mangum's methodology here, Plaintiffs have not demonstrated the capability to show common impact.

In addition to ignoring the effect of yield management on pricing, Dr. Mangum's methodology is afflicted with another source of false positives:  Dr. Mangum's overcharge model finds the highest overcharges outside of the alleged period of collusion and outside of the class period.  *See Rail Freight*, 2017 WL 5311533, at *88-89 (false positives in damages model where overcharges found for persons "unaffected by the alleged conspiracy").  A valid overcharge model should predict overcharges during the period of the alleged conspiracy but should predict no overcharges (or minimal overcharges) outside of the alleged conspiracy period. (Snyder Report ¶ 146.)  Dr. Mangum's model, however, predicts overcharges in 2004, 2008, and 2009, when no overcharges are alleged or claimed. (*Id.* ¶ 147.)  That suggests that Dr. Mangum's model is capturing changes in price unrelated to any claimed conspiratorial conduct, and instead is capturing changes related to economic factors he has failed to account for.  (*Id.* ¶¶ 147-148.)

Constantine Cannon LLP
335 Madison Ave., Fl 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

Dr. Mangum also offers an overview of the conditions of the industry surrounding fuel surcharges, suggesting they are conducive to common impact.  (Mangum Report ¶¶ 108-115.) But courts have repeatedly held that evidence regarding industry characteristics conducive to class-wide impact is insufficient to demonstrate class-wide impact.  *E.g.*, *Optical Disk Drive*, 303 F.R.D. at 320; *Graphics Processing*, 253 F.R.D. at 502.

Moreover, Dr. Mangum's own opinion undermines his assertion of impact.  Dr. Mangum is unaware of any communications between ANA and JAL concerning passenger base fares for travel from the U.S. to Japan (other than IATA fares which receive antitrust immunity). (Mangum Dep. 237:1-238:9.)  As he asserts, ██████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████  (Mangum Report ¶ 182.)  As can be inferred from Dean Snyder's analysis, substantial percentages of passengers paid lower prices (base fares plus fuel surcharges) during the alleged conspiracy period.  (Snyder Report ¶ 30.)  In other words, base fares were lower, ANA and JAL continued to compete, and there was no anticompetitive impact.[2]

### B.    Plaintiffs' Proffered Methodology Contains a Number of Additional Flaws.

In addition to picking up false positives, Dr. Mangum's model suffers from a litany of flaws and misspecifications that render his analyses unpersuasive for the purpose of evaluating Rule 23 predominance.  Each one of these flaws, standing alone, further calls into question Dr. Mangum's conclusion of class-wide impact to the Japan Class.

First and foremost, Dr. Mangum's overcharge estimate unnecessarily culls from the population of itineraries analyzed 83 percent of itineraries purchased by the proposed Japan Class. In other words, Dr. Mangum's overcharge estimate is based on less than one out of five, or 17 percent, of the proposed class itineraries or transactions.  (Snyder Report ¶ 117.)  Yet he applies his overcharge estimate to all the itineraries, *including the excluded 83 percent*.  Because the vast

---

[2] As demonstrated in ANA's Motion for Summary Judgment (filed May 7, 2018), ANA's and JAL's coordination on fuel surcharges was with their regulator, the Japan Civil Aviation Bureau, which required that ANA's and JAL's fuel surcharges be set only to recover higher fuel costs.

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

9
DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1   majority of the proposed class is not used to estimate the overcharge in Dr. Mangum's regression,

2   he cannot reliably conclude that all or nearly all class members have been harmed.  (*Id.*)  An

3   expert's methodology that excludes a large number of transactions from its analysis cannot be

4   relied on as persuasive evidence of impact.  *See Rail Freight*, 2017 WL 5311533, at *82 (rejecting

5   as unpersuasive evidence of impact expert's analysis excluding 68% of the subject transactions).

6      In fact, not even all of the named plaintiffs' itineraries are included among those analyzed

7   by Dr. Mangum: only two-thirds of the itineraries associated with the four named plaintiffs

8   included in the proposed Japan Class are included in Dr. Mangum's model.  The result of these

9   exclusions is that Dr. Mangum's model cannot be counted on to provide an accurate

10  understanding even of the impact to the named plaintiffs, much less the class at large.  (Snyder

11  Report ¶¶ 120-121.)

12     Second, even accepting Dr. Mangum's approach as an acceptable model for estimating

13  impact and overcharges—it is not—if applied to certain subsets of the Japan Class using his exact

14  specification, rather than averaged across the entire class, the model indicates that about one in

15  three of the proposed class did not suffer an overcharge—including the named plaintiffs.  If Dr.

16  Mangum's model is modified to look at each distinct combination of airline-route-itinerary fare

17  basis code, rather than averaging all combinations, his model predicts that a significant share of

18  itineraries have negative overcharge estimates, or those customers would have been better off as a

19  result of the alleged higher prices during the claimed conspiracy period.  (Snyder Report ¶¶ 118-

20  119.)  In other words, by using an average overcharge, Dr. Mangum masks the variability among

21  the proposed class members, many of which, even according to his own model's specifications,

22  did not suffer harm.  (*See id.*)

23     Third, Dr. Mangum, in constructing his model, ignored the fact that a very large number

24  of itineraries relied upon were purchased through travel agents at prices different than those

25  incorporated in his model.  Specifically, at least 37.5 percent of the proposed Japan Class

26  members purchased their tickets indirectly, either as Satogaeri discount fares or as part of an

27  inclusive tour package.  (*Id.* ¶ 160.)  Satogaeri fares were sold to travel agents on a "net fare"

28  basis, meaning that travel agents were free to mark-up the net fare price received from the airline

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

10
DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

and keep the difference; as a result, the prices analyzed by Dr. Mangum are not the actual prices paid by passengers. (*Id.* ¶¶ 179-181.) For those tickets bought as part an inclusive tour package, the passenger not only purchased a plane ticket to Japan, but also an inclusive tour package of which airfare was but one component. (*Id.* ¶ 182.) Because Dr. Mangum has not accounted for the actual prices paid by those in the proposed Japan Class that bought a ticket indirectly, his opinions cannot be considered persuasive evidence of class-wide impact. (*Id.* ¶¶ 106, 159.)

Fourth, Dr. Mangum himself admits that his overcharge model for the Japan Class is not designed to hypothesize a but-for world of competitive prices, casting doubt on its usefulness in assessing Plaintiffs' motion. "[A]n antitrust plaintiff's damages should reflect the difference between its performance in a hypothetical market free of all antitrust violations and its actual performance in the market infected by the anticompetitive conduct." *Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1306 (8th Cir. 1988) (citing *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946)); *Rail Freight Fuel Surcharge*, 2017 WL 5311533, at *23; *see also Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1512 (9th Cir. 1985) ("[T]he burden of anticipating [a] hypothetical [free] market is appropriately placed on antitrust plaintiffs."). But Dr. Mangum testified at his deposition that,

(Mangum Dep. 175:18-22.) This glaring admission casts doubt on the persuasive value of Dr. Mangum's overcharge model and is another reason the Court should not credit its conclusions.

## III.    Plaintiffs Have Not Put Forward a Valid Measure of Class-Wide Damages for the Japan Class.

Where a damages model is not capable of isolating the harm suffered by class members resulting from the alleged unlawful conduct, but instead includes other sources of conduct not attributable to the plaintiff's theory of harm, the methodology does not meet the standards required to show Rule 23(b)(3) predominance. "[A] model purporting to serve as evidence of

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

damages in [a] class action must measure only those damages attributable to [the] theory" underlying the claim asserted. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* Indeed, proof of class-wide damages may not be possible "when factors affecting pricing constantly vary in the industry involved." *Allied Orthopedics Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 175 (C.D. Cal. 2007).

Just as Plaintiffs and Dr. Mangum have ignored the effect of yield-management systems on the impact to the proposed Japan Class, they have also not offered a measure of damages that only accounts for the alleged unlawful conduct and that incorporates the effects of airline industry pricing. First, Plaintiffs and their expert have failed to account for the effect on prices resulting from IATA fare increases, price increases that are immune under the antitrust laws. Second, because yield management increases average prices and because JAL began using yield management during the alleged conspiracy period, any proposed methodology must account for the lawful increases in pricing experienced by proposed class members due to the implementation of yield management and must isolate the effects of the alleged conspiracy independent of that increased pricing. Dr. Mangum's damages model has not done so. Under *Comcast*, those failures render Dr. Mangum's damages model invalid, and thus Plaintiffs have failed to offer common proof of class-wide damages.

A. **Dr. Mangum's Average Overcharge Calculation Is Not Limited to the Effects of Plaintiffs' Proffered Theory of Liability.**

Dr. Mangum's average overcharge estimate does not account for the influence of IATA fare increases on the prices paid by individual members of the proposed class. Under DOT regulation, IATA fares for travel between the United States and Japan received antitrust immunity throughout the alleged conspiracy period (and continue to do so). *See LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 144 (E.D.N.Y. 2010); *Agreements adopted by the Int'l Air Transp Assoc. relating to the conduct of Traffic Conferences*, Order 85-5-32, 1985 WL 58182 (Dep't of Transp. 1985). Accordingly, any effect from changes to IATA fares must be disaggregated from

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

12

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

any proffered estimate of damages from the alleged unlawful conduct.  *See Comcast*, 569 U.S. at 35 (damages model must account for "the differences between supra-competitive prices in general and supra-competitive prices attributable to the" proffered theory of liability); *Mendez v. U.S. Nonwovens Corp.*, 312 F.R.D. 81, 100 (E.D.N.Y. 2014) (denying certification for failure to disaggregate effects of lawful employment policies).

IATA fare increases also lawfully affect non-IATA fares. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ (Declaration of M. Ishii ¶ 4 (May 7, 2018) ("Ishii Decl."); *see also* Snyder Report ¶¶ 149-150.)

Dr. Mangum admits that ████████████████████████

████████████████████████████████████ (*See* Mangum Dep. 167:15-21.) ████████████████████████

████████████████████████████ (*Id.* 237:01-238:09.)

Empirical analyses by ANA's expert, Dean Snyder, indicate that it is highly likely that increases in IATA fares can explain a substantial portion of price increases during the class period—and indicate that some portion of Dr. Mangum's average overcharge estimate for the Japan Class can be explained by increases to IATA fares.  (Snyder Report ¶¶ 150-151.)  Because some portion of Dr. Mangum's claimed average overcharge can be attributed to prices determined as a result of conduct that receives immunity under the antitrust laws, and it is unclear the degree to which that lawful effect influenced prices paid by individual proposed class members at various points during the class period, the estimate is insufficient common proof of damages under *Comcast*.

**B.      Dr. Mangum's Overcharge Model Ignores the Effect of Yield Management on Average Prices.**

As discussed above, yield management results in some passengers paying higher prices, given their individual demand and available supply of seats, and in other passengers paying lower prices.  On average, however, yield management may increase the revenue that airlines receive and therefore increases average prices.  (Snyder Report ¶ 125.)

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

1   JAL implemented yield management in 2005,[3] during the alleged conspiracy period.

2   Therefore, Dr. Mangum's average overcharge improperly includes the lawful increase on average

3   prices due to JAL's use of yield management.

4   **IV.   Plaintiffs Have Failed to Offer Any Methodology Demonstrating Impact to the**
        **Satogaeri Class.**

5

6   With respect to the Satogaeri Class, Plaintiffs' motion for class certification fails to

7   proffer a cognizable methodology to demonstrate class-wide impact.

8   The proposed Satogaeri Class, by definition, is composed entirely of passengers who

9   bought their tickets from travel agents who set the ultimate prices.  ANA and JAL both offered

10  *satogaeri* tickets to travel agents on a "net fare" basis, *i.e.*, the travel agent remits a net fare

11  amount to the airline while the travel agent sets the ticket price paid by the passenger.  (Mangum

12  Report ¶ 191.)  The passenger pays the ticket price to the travel agent, not to the airline.  Plaintiffs

13  claim that ANA and JAL colluded on the net fares paid by travel agents, not on the ticket prices

14  paid by passengers to travel agents.  (Mangum Dep. 205:14-206:7.)  The Satogaeri Class thus

15  consists entirely of indirect purchasers.

16  As an initial matter, because the Satogaeri Class is composed entirely of indirect

17  purchasers, Plaintiffs' motion for class certification can be denied without even reaching the Rule

18  23(b) requirements.  As a matter of longstanding federal antitrust law, claims of indirect

19  purchasers are barred.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Plaintiffs have not

20  asserted that the class's claims fall under an exception to that doctrine, nor offered any sort of

21  analysis in support, and thus those claims fail as a matter of law.  (*See* ANA's Motion for

22  Summary Judgment 1-2, 9-13, ECF No. __.)

23  Plaintiffs have also defined the Satogaeri Class as "[a]ll persons and entities that directly

24  purchased Satogaeri fares from JAL or ANA."  (Pls. Notice of Motion.)  As a result, Plaintiffs

---

25  [3] ANA-00329566, McAvoy Decl., Ex. 10; *see also* Press Release, Sabre Airline Solutions, JAL

26  Expected to Generate Additional Revenue Using Sabre Airline Solutions Revenue Management
    Technology, (Aug. 24, 2005), *available at* https://www.sabre.com/insights/releases/jal-expected-

27  to-generate-additional-revenue-using-sabre-airline-solutions-revenue-management-technology-
    worlds-third-largest-airline-group-chooses-airmax-for-managing-revenues-from-its-international/.

28

Constantine Cannon LLP
335 Madison Ave., Fl. 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

1    have defined a class that has zero members, and of which none of the proffered class

2    representatives are a member, meaning the class can neither satisfy the numerosity requirement

3    nor the typicality or adequacy requirements. *See Amchem Prods.*, 521 U.S. at 625-26 ("A class

4    representative must be part of the class and possess the same interest and suffer the same injury as

5    the class members."); *Burke v. Local 710 Pension Fund*, 2000 WL 336518, at *2 (N.D. Ill. 2000)

6    (numerosity lacking where "no members exists to make up" the class and denying certification).

7            Even if the indirect-purchaser bar were inapplicable, Plaintiffs have disregarded the actual

8    prices paid by purported Satogaeri Class members, have not offered any pass-through analysis,

9    and thus have not demonstrated the ability to measure class-wide impact. Dr. Mangum, in

10   offering an opinion on the impact to the Satogaeri Class, conducts no analysis or computation to

11   demonstrate impact based on the actual prices paid by the proposed class members to travel

12   agents. (Mangum Dep. 216:5-18.) Rather,

13

14

15

16

17

18   (Mangum Report ¶¶ 199-200.)[4] While questions of pass-through are typically most relevant

19   where a plaintiff asserts a state-law antitrust claim (Plaintiffs have not), because travel agents sold

20   *satogaeri* tickets with varying mark-ups over the net fare, some analysis is necessary to determine

21   prices paid by the proposed class. This Court has recognized the analysis required to demonstrate

22   impact in that scenario. *See In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal.

23   2001) ("In order for plaintiff to prove that each class member was actually injured by the antitrust

24   conspiracy plaintiff must prove that the 'overcharge' was passed on to each member and the

25   

26   [4] In their motion, Plaintiffs state that impact can be demonstrated through "an economic
     analysis," and then describe Dr. Mangum's choice of a benchmark and damages estimate based

27   on net fares—no additional analysis or evidence is offered in support of class-wide impact on
     passenger prices. (Pls.' Br. 20-21.)

28

CONSTANTINE CANNON LLP
335 MADISON AVE., FL 9
NEW YORK, NY 10017

15

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

member absorbed the overcharge or was otherwise harmed by having to pay a higher price . . . .").

████████████████████████████████████████████ is plainly insufficient.  Conclusions

supported "only by the *ipse dixit* of the expert," rather than a connection to data, are inadmissible,

*Pecover v. Electronic Arts Inc.*, No. 08-2820, 2010 WL 8742757, at *4 (N.D. Cal. Dec. 21, 2010),

much less persuasive evidence of class-wide impact.  Contrary to the naked conclusions in his

report, ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ (Mangum Dep. 217:15-218:6.)

Record evidence demonstrates that any alleged overcharge was not uniformly passed on to

passengers.  First, ██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████ (HIS Int'l Tours Dep. (Sueishi) 96:20-22, McAvoy Decl., Ex. 3.)  In addition, ██████

████████████████████████████████████████████████████

████████████████████████████████████ (*Id.* 92:24-93:8; Mangum Report ¶ 201.)

██████████████████████████████████████████████████████

██████████ (HIS Int'l Tours Dep. (Sueishi) 95:02-09, 98:01-20), and ████████████████

██████████████████████████████████ (*Id.* 95:13-16.)  As JAL informed Plaintiffs'

economist, ██████████████████████████████████████████████████

████████████████████████████ (JAL Responses to Nov. 2, 2017 Follow-up Questions #5 at

2, McAvoy Decl., Ex. 9.)  Where, as here, "the evidence demonstrates that resellers do not act

uniformly . . . [,] that is, that there is not a single pass-through rate for all" resellers, class

certification is inappropriate.  *Cf. Methionine*, 204 F.R.D. at 165.[5]

## V.    Dr. Mangum's Opinions Regarding Damages to the Satogaeri Class Are Unreliable and Unpersuasive.

Setting aside Plaintiffs' and their expert's decision to ignore their indirect-purchaser

---

[5] Further complicating any pass-through analysis of Satogaeri fares is the fact that over one-third of the passengers that bought a Satogaeri fare bought the ticket as part of an inclusive tour package of which airfare was only one component.  (Snyder Report ¶ 182.)

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

problem, Dr. Mangum's opinions and conclusions pertaining to Plaintiffs' proposed Satogaeri Class are ad-hoc and contrary to standard practices in antitrust economics, and are plainly not persuasive evidence of either impact or damages. (Snyder Report ¶¶ 189-192.) As a result, his opinions should be disregarded.

Dr. Mangum's method for assessing damages to the proposed class is overly simplistic, does not rely on econometrics, fails to select a competent benchmark, and is incapable of assessing impact or offering a reliable damages estimate. In order to conclude that the proposed class has been harmed and to provide a quantum of damages, ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████ (Snyder Report ¶¶ 165, 170-172, 174.) Dr. Mangum's choice of benchmarks is not supported by any theoretical justifications or economic analysis; rather, Dr. Mangum relies ████████████████████████████

████████████[6] (*Id.* ¶¶ 189-191 (citing Mangum Report ¶¶ 205-208).) His methodology makes no consideration for the impact of supply and demand on prices. (*Id.* ¶ 166.)

Taken together, the fare sheets considered by Dr. Mangum pertain to only 5 percent of his estimated volume of commerce, meaning that he has not even considered whether there is a price difference for nearly 95 percent of the proposed class. (*Id.* ¶ 173.) In fact, not one of the fares purchased by the named Satogaeri Class plaintiffs is represented in Dr. Mangum's comparison to his chosen benchmarks, meaning that Dr. Mangum has not even effectively demonstrated that the Satogaeri Class representatives have been impacted by the alleged conspiracy. (*Id.* ¶ 186.) Even assuming that Dr. Mangum's methodology and benchmark made economic sense, his own calculation would predict that two of the proposed Satogaeri Class representatives, Messrs. Oda

---

[6] For example, Dr. Mangum's ████████████████████████████████████

████████ (Snyder Report ¶ 191; Mangum Report ¶ 205.)

CONSTANTINE CANNON LLP
335 MADISON AVE , FL 9
NEW YORK, NY 10017

17

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

1  and Kobayashi, were *not* injured by the alleged conspiracy; based on Plaintiffs' expert's own

2  benchmarks, both would have purchased more expensive fares in the but-for world.  (*Id.*)

3          The calculated results of Dr. Mangum's methodology demonstrate that his choice of

4  benchmarks is altogether flawed.  Indeed, his own results, when examined closely, indicate that

5  for certain time periods and certain flights there were either no overcharges (*i.e.*, no impact or

6  damages), or that there were inconsistent overcharges depending on which airline one considers,

7  ANA and JAL. For example, ███████████████████████████████

8  ████████████████████████████████████████████

9  ████████████████████████████████████████████

10  ██████████████████  (*Id.* ¶ 185; *see also* Mangum Report, Table 19.)

11          Similar to the Japan Class, the results of Dr. Mangum's Satogaeri methodology suffer

12  from false positives.  Strikingly, Plaintiffs and their expert assert that passengers that purchased

13  Satogaeri tickets for flights on which ANA and JAL did not compete were impacted by price

14  increases stemming from the alleged conspiracy.  Specifically, during the entire class period,

15  ANA offered flights originating in Washington, D.C., while JAL did not; similarly, for nearly all

16  of the class period, JAL operated a flight out of Chicago, but ANA did not.  ███████████

17  ████████████████████████████████████████████

18  █████████████████████  (Snyder Report ¶¶ 187-188.)  In addition, record evidence

19  indicates that JAL personnel in its Chicago and Honolulu sales offices did not coordinate with

20  ANA on the prices or terms for Satogaeri flights originating in those cities. (*Id.* ¶ 192.)  Yet, Dr.

21  Mangum's methodology results in over $6 million of damages on these two routes.  (*Id.* & n.294.)

22          Finally, Dr. Mangum's oversimplified methodology completely ignores the fact that both

23  ANA and JAL offered a variety of Satogaeri net fares, some of which changed price throughout

24  the day in response to competition, and instead merely picks one form of Satogaeri net fare to

25  serve as the actual allegedly collusive price.  Specifically, ANA offered, in addition to the M-

26  Class net fare used by Dr. Mangum, a B-Class Satogaeri net fare, which was available for more of

27  the class period.  JAL, in addition to the K-Class net fare used by Dr. Mangum (available for less

28  than one-fifth of the class period), offered two other Satogaeri net fares, one of which was

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

18
DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER
FILE NO. C 07-5634 CRB/MDL NO. 1913

available for nearly the entire class period.  (*See id.* ¶ 178 & n.267.)  In addition, ANA and JAL

sporadically offered "Satogaeri Specials" which were offered on a case-by-case basis and which

changed price frequently, sometimes throughout the day.  (*Id.* ¶ 166 & n.249.)  Dr. Mangum does

not offer a principled basis for his selections.

## VI.     Ascertaining Impact and Damages in This Case Requires Individualized Inquiry.

As discussed in Section II.A, the use of yield-management systems in the airline industry

means that prices are highly variable, depending on passenger demand for each individual flight,

the number of seats sold on the flight in response to prior demand, the time remaining before the

flight, and the number of seats that the yield-management system subsequently expects to sell.

That results in pricing that is highly fluid and dependent on supply and demand factors discrete to

each flight being analyzed.  Therefore, a damages model for this industry must look at the actual

prices paid by passengers and must model the actual and but-for allocation of seats to different

fare classes.  But Dr. Mangum's fails to do so.  *See supra*, at II.A.

Dean Snyder's analysis shows substantial percentages of passengers on each route who

could have paid more, the same, or less during the alleged conspiracy than before or after it.

(Snyder Report, Exs. V.2A-V.2E, V.3A-V.3E, V.10A-V.10E, V.11A-V11E.)  Moreover, when

determining what fare a passenger would have paid absent the alleged conduct, the model must

account for that passenger's individual preferences, whether the yield-management system made

available a matching fare at the time or some other time the passenger was willing to travel, and

what the price of that matching fare was.  For example with a fare from San Francisco to Tokyo:

Did the passenger have to go to Tokyo for business?  Or was the passenger looking to take a

vacation anywhere in Asia or Southeast Asia?  Did the passenger have to take vacation at a

specific time?  Or was the passenger's schedule flexible?  Did the passenger want to fly on

weekends only?  Did the passenger dislike connecting flights?  Or was the passenger willing to

connect to save money or upgrade to business class?

Differences in passengers' individual preferences are evident from the deposition

testimony of the named plaintiffs.  Brenden Maloof, for example, was traveling on business under

a time constraint to attend a meeting, and decided to book a business-class ticket for his

September 2006 trip from New York to Tokyo.  (Maloof Dep. 63:17-64:02, McAvoy Decl., Ex.4.)  James Kawaguchi purchased an economy ticket but was willing to use frequent flyer miles to be upgraded to business class.  (Kawaguchi Dep. 69:14-69:25, McAvoy Decl., Ex. 5.)  Rachel Diller was constrained to flights on specific dates due to work obligations (Diller Dep. 76:08-76:18, McAvoy Decl., Ex. 6), while Nancy Kajiyama was willing to change her travel dates to obtain a better fare (Kajiyama Dep. 65:21-66:03, McAvoy Decl., Ex. 7).  Roy Onomura booked itineraries with lengthy layovers in order to get the best fare available.  (Onomura Dep. 53:09-54:15, McAvoy Decl., Ex. 8.)

Because Dr. Mangum's model does not incorporate how airline pricing actually works, it does not provide a class-wide methodology to address those individualized questions or to show impact or damages.  Without a model that incorporates yield management, the questions of impact and damages to the class will necessarily devolve into a series of highly individualized inquiries.  Class certification is therefore inappropriate.

## VII.    Plaintiffs' Proffered Japan Class Representatives Satisfy Neither of Rule 23(a)'s Typicality or Adequacy Requirements.

Plaintiffs' request to certify the Japan Class can be denied for yet another independent reason: none of the four proffered representatives satisfies the threshold requirements of Rule 23(a).  First, an examination of Dr. Mangum's own overcharge model indicates that each proffered representative was either excluded from the model or suffered a negative overcharge, meaning Plaintiffs have not demonstrated that any of their proffered representatives have been injured.  Second, all of the proffered class representatives are indirect purchasers and thus, by definition, are not members of the very class they purport to represent.

Dr. Mangum's model, when examined, does not support the fact of injury to the proffered Japan Class representatives.  As an initial matter, the model excludes the itineraries of two representatives, Ms. Chow and Mr. Oda, and is thus not persuasive evidence of their injury.  (Snyder Report ¶¶ 121-122 & n.182.)  In addition, when the itineraries of the two representatives, Ms. Kajiyama and Mr. Maloof, are isolated within Dr. Mangum's model, it generates *negative overcharges*, indicating that they were better off during the alleged conspiracy.  (*Id.* ¶ 121.)

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

An even more glaring deficiency, all of the class representatives offered for the Japan Class purchased their tickets indirectly (ANA's Motion for Summary Judgment 1-2, ECF No. __) and thus, by definition, are not members of the very class they purport to represent.  These characteristics of the Japan Class representatives implicate several Rule 23 requirements and make their certification as class representatives inappropriate.  In addition, because Plaintiffs have disregarded the fact of indirect purchasers in the proposed class, it is not clear whether Plaintiffs will be able to precisely identify which passengers purchased their tickets directly, and thus who is and who is not a class member, implicating ascertainability concerns.

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625-26.  The requirement that a class representative be a member of the class implicates both the typicality and adequacy requirements of Rule 23(a), which require that "the claims . . . of the representative parties [be] typical of the claims . . . of the class," and that "the representative parties . . . fairly and adequately protect the interests of the class," respectively.  Fed. R. Civ. P. 23(a)(3), (4).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Where a proposed class representative has a defense separate and apart from the class she purports to represent, her request to represent the class should be denied.  *Id.* ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." (quotations omitted)).

Here, because all of the proposed Japan Class representatives purchased their tickets from intermediary travel agents at a price different than that charged by ANA or JAL to the travel agents, the proposed representatives are indirect purchasers and barred from recovery.[7]  Because all of the class representatives are subject to the indirect-purchaser defense, which does not apply to the direct-purchaser class defined by the plaintiffs, they are inappropriate class representatives.

---

[7] *See* ANA's Motion for Summary Judgment 1-2, 9-13, ECF No. __, for additional detail regarding the proposed Japan Class representatives' statuses as indirect purchasers barred from asserting claim for damages.

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

Plaintiffs' failure to raise issues concerning indirect purchasers also implicates the ascertainability of the proposed Japan Class.  In addition to the explicit requirements of Rule 23, a "party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  Although "the class need not . . . identified at the commencement of the action," to obtain class certification, a plaintiff must put forth a class definition that is identifiable; class certification may be denied where the movant has not "suggested a method by which to determine how to identify" the class members.  *See id.* 567-68 (internal quotation marks omitted).  Plaintiffs have not even recognized that their proposed Japan Class representatives are indirect purchasers, much less proposed a method for identifying which passengers that bought airfare during the class period bought their tickets directly.  Without a proposed method for identifying the Japan Class members, the class definition is not sufficiently definite and it will not be administratively feasible for the court to identify them, much less order the delivery of notice and request opt-outs.  *See* Fed. Judicial Ctr., Manual for Complex Litig. § 21.222 (4th ed. 2004) ("Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs have not sustained the burden necessary to grant class certification.  ANA respectfully asserts that the motion should be denied.

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017

22

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

Dated:  May 7, 2018                      By:  */s/ Ankur Kapoor*
                                         Ankur Kapoor
                                         Gary J. Malone
                                         Harrison McAvoy
                                         Yo W. Shiina
                                         CONSTANTINE CANNON LLP
                                         335 Madison Avenue, 9th Floor
                                         New York, NY 10017
                                         Telephone:(212) 350-2700
                                         Facsimile: (212) 350-2701
                                         Email: akapoor@constantinecannon.com

                                         Douglas E. Rosenthal
                                         CONSTANTINE CANNON LLP
                                         1001 Pennsylvania Avenue, N.W., Suite 1300N
                                         Washington, DC 20004
                                         Telephone:(202) 204-3510
                                         Facsimile: (202) 204-3501
                                         Email: drosenthal@constantinecannon.com

                                         Jesse W. Markham, Jr.
                                         1 Embarcadero Center, 5th Floor
                                         San Francisco, CA 94111Telephone: 415-422-4473
                                         Email: jmarkhamlaw@gmail.com

                                         *Attorneys for Defendant*
                                         *All Nippon Airways Co., Ltd.*

DEFENDANT ALL NIPPON AIRWAYS CO., LTD OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – MASTER FILE NO. C 07-5634 CRB/MDL NO. 1913

Constantine Cannon LLP
335 Madison Ave , FL 9
New York, NY 10017