IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD WORTMAN, ET AL., <br> Plaintiffs, <br> v. <br> AIR NEW ZEALAND, et al., <br> Defendants. | Case No. 07-cv-05634-CRB <br><br> **ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

This is an antitrust suit alleging that price-fixing harmed two Rule 23(b)(3) classes of transpacific airline passengers. The Court hereby GRANTS Plaintiffs' motion to certify both classes. See Mot. Class Cert. (dkt. 1118–5).

## I. BACKGROUND

Plaintiffs filed this action in 2007, alleging that multiple international airlines fixed the prices of transpacific air travel in violation of the Sherman Antitrust Act. See generally Compl. (dkt. 1); First Am. Compl. (dkt. 493); Second Am. Compl. (dkt. 741). Since then, nearly all of the twenty-six defendants settled or were dismissed. Only All Nippon Airways ("ANA" or "Defendant") remains.

On November 22, 2013, Plaintiffs filed a Second Amended Complaint ("SAC"),

alleging that ANA, JAL,[1] and other airlines conspired to "artificially fix, raise, maintain, and/or stabilize the prices of passenger air transportation, including surcharges, for flights between the United States and Asia . . . in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1." SAC ¶ 405. This Court recently denied Defendant's motion for summary judgment. Order Den. Mot. Summ. J. (dkt. 1194).[2]

In the present motion, Plaintiffs propose two classes focusing on purported damages caused by price-fixing activities in two specific areas: (1) fuel surcharges and (2) special types of discounted tickets known as "satogaeri" fares. Compare Mot. Class Cert. at i with SAC ¶ 395.

## II. LEGAL STANDARD

Plaintiffs bear the burden of proving, by a preponderance of the evidence, that class certification is appropriate. See Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001). Certification is a three-step process.

First, plaintiffs must "demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay Inc., 237 F.R.D. 563, 567 (N.D. Cal. 2009).[3]

---

[1] JAL was originally a defendant in this suit, but settled in July, 2014. See Am. Settlement Agreement (dkt. 999–2). JAL remains relevant in this motion because a clause of its settlement reserved the right to hold other Defendants jointly and severally liable for JAL sales of passenger air transportation, "to the extent permitted and/or authorized by U.S. law." Id. ¶ 9.

[2] Plaintiffs also recently filed a motion to strike certain materials that ANA "submitted in connection with its memorandum in opposition to Plaintiffs' motion for class certification." Pls.' Mot. to Strike (dkt. 1188). It is not necessary to rely on any of the allegedly objectionable materials to answer the dispositive questions in the present motion. Therefore, the Court DENIES this motion as moot.

[3] This ascertainability requirement is not explicitly required by the Federal Rules of Civil Procedure, but courts in this district routinely require plaintiffs to demonstrate it as part of Rule 23 class certification motions. See, e.g., Astiana v. Ben & Jerry's Homemade, Inc., No. C 10–4387 PJH, 2014 U.S. Dist. LEXIS 1640, at *4 (N.D. Cal. Jan. 7, 2014) ("[A]part from the explicit requirements of Rule 23, the party seeking class certification must also demonstrate that an identifiable and ascertainable class exists."); Viet. Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211

Second, plaintiffs must meet the four explicit requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542–43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

Third, plaintiffs must show their proposed classes fulfill one of Rule 23(b)'s three requirements. In the present case, Plaintiffs seek to certify both of their proposed classes under Rule 23(b)(3). A court may certify a class under Rule 23(b)(3) when (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two requirements are often referred to as "predominance" and "superiority."

In analyzing a class certification motion, a court may consider merits questions "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013). Although this certification inquiry may involve substantive analysis, "[t]he court may not go so far . . . as to judge the validity" of a plaintiff's claims. Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003).

**III. DISCUSSION**

---

(N.D. Cal. 2012)) ("While it is not an enumerated requirement of Rule 23, courts have recognized that . . . 'to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970))).

In a recent opinion, the Ninth Circuit rejected instituting a "separate administrative feasibility prerequisite" for class certification. Briseno v. Conagra Foods Inc., 844 F3d 1121, 1123–24 (9th Cir. 2017). However, this is distinct from requiring that classes be clearly or objectively defined. See id. at 1124 n.3.

3

This order first reviews the certified class definitions, and then explains the Court's reasoning on whether Plaintiffs' proposed classes meet the ascertainability requirement, Rule 23(a)'s four requirements, and Rule 23(b)(3)'s two requirements in turn.

### A. Class Definitions

At a hearing before this Court on August 3, 2018, the parties discussed and agreed to several modifications to the class definitions as proposed in Plaintiffs' motion. The class definitions below reflect these modifications.

**Japan Class.** Adjusted definition as follows:

> All persons and entities that directly purchased tickets for passenger air transportation from Japan Airlines International Company, Ltd. ("JAL") or All Nippon Airways Corporation, Ltd. ("ANA"), or any predecessor, subsidiary or affiliate thereof, that originated in the United States and included at least one flight segment from the United States to Japan between the period beginning February 1, 2005 and ending December 31, 2007. Excluded from the class are any tickets that did not include a fuel surcharge. Excluded from the class are any antitrust immunized fares agreed upon at IATA 'Tariff Coordinating Conferences.' Excluded from the class are tickets exclusively acquired through award or reward travel or any tickets acquired for infant travel with a 90% discount. Also excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' or any other commercial airline's officers, directors, employees, agents, and immediate families ("Japan Class").

**Satogaeri Class.** Adjusted definition as follows:

> All persons and entities that directly purchased satogaeri fares from JAL or ANA or any predecessor, subsidiary or affiliate thereof that originated in the United States and included at least one flight segment to Japan and does not include travel to countries other than the United States and Japan between the period beginning January 1, 2000 and ending April 1, 2006. Excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families. Also excluded are purchases of "Satogaeri Special" and maerui satogaeri fares ("Satogaeri Class," and collectively with the Japan Class, the "Classes").

**Concurrent Classes.** These two classes are not mutually exclusive. Between February 2005 and March 2006, all satogaeri fares sold would have also included a fuel surcharge. Tr. Proceedings (dkt. 1192) at 9. Therefore all Satogaeri Class members purchasing a ticket during this period are also members of the proposed Japan Class, barring unusual circumstances in individual cases.

### B. Ascertainability

A class is not ascertainable unless membership can be established by means of objective, verifiable criteria. Xavier v. Philip Morris USA, Inc., 787 F. Supp. 2d 1075, 1088–90 (N.D. Cal. 2011). "Without an objective, reliable way to ascertain class membership, the class quickly would become unmanageable, and the preclusive effect of final judgment would be easy to evade." Id. at 1089. Nonetheless, "not all class members need to be ascertained prior to class certification." Mauto v. Gen. Motors Corp., No. 07–892, 2008 WL 2775004, at *4 (E.D. Cal. July 15, 2008) (citation omitted).

In this case, Plaintiffs can fulfill the ascertainability requirement for both of their proposed classes.

**Japan Class**. The proposed class is defined by objective, verifiable criteria: people who directly bought price-fixed tickets, and suffered as a result. Plaintiffs' expert showed that class members can be verified with the transaction data that ANA and JAL have already produced. See Mangum Rpt. (dkt. 1119–2) ¶ 19.

Defendant argues that the Japan Class is not ascertainable because Plaintiffs have not offered a method for separating class members who are direct purchasers from those

who are indirect purchasers under Illinois Brick.[4] This Court's recent order forecloses this argument. See Order Den. Mot. Summ. J.

**Satogaeri Class.** Similarly, Plaintiffs' expert demonstrated that Satogaeri Class members can be verified with the transaction data that ANA and JAL have already produced. See Mangum Rpt. ¶ 19.

Defendant does not dispute the ascertainability of the Satogaeri Class.

**C.    Rule 23(a) Factors**

**1.    Numerosity**

The class must be "so numerous that joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." Krzesniak v.Cendant Corp., No. C 05–05156 MEJ, 2007 U.S. Dist. LEXIS 47518, at *19 (N.D. Cal. June 20, 2007). The plaintiff does not need to allege a precise number of class members, but may make a reasonable estimate. See Whiteway v. FedEx Kinko's Office & Print Servs., No. C 05–2320 SBA, 2006 U.S. Dist. LEXIS 69193, at *11 (N.D. Cal. Sept. 13, 2006).

Plaintiffs' proposed classes have well over the required number of members, and they make reasonable estimates based on the transactional data produced by JAL and ANA. See Mot. Class Cert. at 14. Plaintiffs' proposed classes both satisfy the numerosity requirement.

---

[4] Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977) (barring indirect purchasers from recovering treble damages for overcharges resulting from a price-fixing conspiracy).

**Japan Class.** Plaintiffs demonstrate that there are approximately 1.1 million itineraries in the transactional data that meet the definition of the Japan Class. See id.; Mangum Rpt. ¶ 8. Defendant does not dispute the numerosity of the Japan Class.

**Satogaeri Class.** Plaintiffs assert there are more than 147,000 itineraries in the transactional data that meet the definition of the Satogaeri class. See Mot. Class Cert. at 14; Mangum Rpt. ¶ 8.

Defendant maintains that all purchasers in the Satogaeri Class are "indirect purchasers" under Illinois Brick, and therefore Plaintiffs have "defined a class that has zero members." Opp'n (dkt. 1157) at 16. This argument is foreclosed by this Court's recent order. See Order Den. Mot. Summ. J.

Accordingly, Plaintiffs' proposed classes meet the numerosity requirement.

### 2. Commonality

The commonality requirement demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where "claims . . . depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350.

Both of Plaintiffs' proposed classes easily satisfy this requirement. "Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" In re Dynamic Random Access Memory (DRAM) Antitrust Litig., No. M 02–1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) (quoting In re Rubber Chem.

Antitrust Litig., 232 F.R.D. 346, 351 (N.D. Cal. 2005)). That is the case here: both of the proposed classes allege harm resulting from an antitrust price-fixing conspiracy. Additionally, Defendant does not dispute the commonality of either proposed class. The commonality requirement is met.

### 3. Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Like commonality, "there is substantial legal authority holding in favor of a finding of typicality in price fixing conspiracy cases, even where differences exist between plaintiffs and absent class members with respect to pricing, products, and/or methods of purchasing products." See DRAM, 2006 WL 1530166, at *5.

In this case, Defendant's price-fixing conspiracy is the underlying course of conduct allegedly causing damages to both of Plaintiffs' proposed classes. Because the named Plaintiffs and all absent class members share these claims and this liability theory, these classes satisfy the typicality requirement.

**Japan Class.** The record expressly states that three of the four named Plaintiffs paid the fuel surcharge. See Mangum Rpt. ¶ 19. The record does not indicate if the remaining named Plaintiff (Della Ewing Chow) paid the surcharge,[5] but even if this

---

[5] Even without express evidence, it is likely that Della Chow did pay the surcharge: Plaintiffs note that that "ANA and JAL's fuel surcharge was applied to all passengers, in all booking classes, for

8

Plaintiff is omitted, the class would survive. See id.

Defendant disputes typicality on the grounds that the named Plaintiffs purchased their tickets through travel agents, and are therefore not representative of "direct purchasers." Opp'n at vii. This argument is no longer valid after this Court's recent order. See Order Den. Mot. Summ. J.

**Satogaeri Class.** The record explicitly shows that the three named Satogaeri Class Plaintiffs purchased satogaeri fares during the class period. See Mangum Rpt. ¶ 19.

Defendant does not dispute the typicality of Satogaeri Class representatives. Accordingly, the typicality requirement is met for both classes.

### 4. Adequacy

The adequacy requirement asks whether the class representatives "will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4). Courts determine whether the named plaintiffs and counsel will (1) have any conflicts of interest with other class members and (2) prosecute the action vigorously on behalf of the class. See Hanlon, 150 F.3d at 1020.

Plaintiffs' proposed classes satisfy this requirement. The named Plaintiffs and counsel have no discernable conflicts of interest with absent class members, as they seek the same relief and share an identical interest in proving Defendant's liability. See Mot. Class Cert. at 15. Each named Plaintiff has actively participated in the litigation, and Plaintiffs' counsel has vigorously pursued this litigation since 2007. See id. at 15–16; Compl. (filed Nov. 6, 2007).

---

all routes originating in the United States" during the proposed class period. Mot. Class Cert. at 3.

9

**Japan Class.** Defendant argues that the named Plaintiffs for the Japan Class are inadequate, again based on their indirect-purchaser theory. Opp'n at 20–22. Defendant asserts that since all the named Plaintiffs for the Japan Class purchased their tickets through travel agents, none of them are adequate representatives of class members who "directly purchased" their tickets. Mot. Class Cert. at i (emphasis added). This argument also fails in light of this Court's recent order. See Order Den. Mot. Summ. J.

**Satogaeri Class**. Defendant does not dispute the adequacy of the proposed Satogaeri Class representatives.

Accordingly, the adequacy requirement is met for both classes.

### C. Rule 23(b)(3)

Plaintiffs seek to certify both of their proposed classes under Rule 23(b)(3). To do so, Plaintiffs must satisfy Rule 23(b)(3)'s predominance and superiority requirements by showing that "[c]ommon questions . . . predominate over any questions only individual members; and class resolution is superior to other available methods for the fair the efficient adjudication of the controversy." See Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997).

#### 1. Predominance

Rule 23(b)(3)'s first test, predominance, itself consists of two parts. First, a plaintiff must show that common questions of law and fact predominate over individual questions. Second, a plaintiff must present a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is "susceptible of measurement across the entire class." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433–34 (2013).

10

### a. Individual Determinations

Rule 23(b)(3)'s predominance requirement is more stringent than Rule 23(a)(2)'s commonality requirement, and "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchen, 521 U.S. at 623.

Plaintiffs satisfy this part of the predominance inquiry due to the nature of Defendant's alleged antitrust violation. See, e.g., Amchen, 521 U.S. at 625 (showing this part of the predominance test is "readily met in certain cases alleging . . . violations of the antitrust laws."); DRAM, 2006 WL 1530166, at *3 ("Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" (quoting Rubber Chem., 232 F.R.D. at 351)); Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, 'courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present.'" (quoting In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 518 (S.D.N.Y. 1996))). Plaintiffs' proposed classes will "prevail or fail in unison" based on the common question of the Defendant's guilt. See Amgen, 568 U.S. at 460.

Plaintiffs present extensive evidence of Defendant's participation in collusive behavior, but even if they had not, certification would still be proper. Proof is not a prerequisite for class certification. See id. at 459 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

### b. Damages

To satisfy the second part of the predominance inquiry, a plaintiff must present a damages model that identifies damages that stem from the defendant's alleged wrongdoing and that is "susceptible of measurement across the entire class." Comcast, 133 S. Ct. at 1433–34. In antitrust cases, this requirement will be met "if the plaintiffs can prove . . . that there has been an antitrust violation and that each class member has suffered an antitrust injury." 6 Newberg on Class Actions § 20:52 (5th ed. 2018). "At class certification, plaintiff must present 'a likely method for determining class damages,' though it is not necessary to show that his method will work with certainty at this time." Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 379 (2010) (quoting In re Tableware Antitrust Litig., 241 F.R.D. 644, 652 (N.D. Cal. 2007)). The need for individualized damage calculations alone cannot defeat class certification. See Leyva v. Medline Indus., Inc., 716 F.3d 510, 513 (9th Cir. 2013) (citing Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010)).

This Order will first summarize Plaintiffs' proposed damage model for each class, and then briefly address Defendant's objections.

#### (1) Plaintiffs' Proposed Damage Models

**Japan Class.** Plaintiffs' expert created an econometric model using data produced by JAL and ANA demonstrating the class-wide impact of the Defendant's alleged conspiracy. Mot. Class Cert. at 19. This model aggregates the ticket pricing information during the alleged conspiracy period, and compares it with ticket pricing information from before the alleged conspiracy began. See id.; Mangum Rpt. ¶¶ 157–59. By comparing this information, Plaintiffs assert that their model can determine a "but for" price—i.e., the

price that Japan Class members would have paid for their tickets "but for" the alleged conspiracy. Mot. Class Cert. at 20. Their expert uses the model to estimate an average overcharge of 8.33% for itineraries purchased by the Japan Class. See id. This calculation applies to the total cost of the itinerary, not solely the fuel surcharge component of the itinerary. When applied class-wide, the model estimates that Japan Class members paid an aggregate of $94 million in overcharges. See id. at 21.

Plaintiffs calculate individual damages by comparing economic damages with the fuel surcharge paid by the passenger. The passenger would be eligible to recover either the amount of the fuel surcharge or the economic damages, whichever is lower. See Mangum Rpt. ¶ 183.

**Satogaeri Class.** Plaintiffs use a different methodology to estimate Satogaeri Class damages: instead of comparing pricing information to a different time period, they compare pricing information with the "closest alternative to Satogaeri fares."[6] Plaintiffs' expert uses this method to estimate that class members paid between 7.1% and 9.1% more for their base fares as a result of Defendant's collusion. Mangum Rpt. ¶¶ 207–09. This estimate applies to the base fare, not the total cost of the ticket. When applied class-wide, this model estimates that Satogaeri class members suffered aggregate damages of $22.5 million to $28.9 million in overcharges. Id. ¶ 211.

Individual damages would be calculated by multiplying the overcharge estimate

---

[6] Plaintiffs' expert selects two alternatives: a "Super Value Fare" and a maerui satogaeri fare. See Mangum Rpt. ¶¶ 203–11. Plaintiffs chose this method due to a lack of data, which prevented the use of same type of benchmark model used in the Japan Class analysis. See id. ¶ 203 ("The econometric methodology that I implement above to measure the overcharge for Japan class members cannot be used for the Satogaeri Class because the misconduct started as early as 1997 and I have no information based on the prices that were being charged for Satogaeri fares prior to the start of the alleged cartel behavior.").

13

(i.e., 7.1%-9.1%) to the base fare component of the overall ticket price.

### (2) Defendant's Challenges to "Predominance" Requirement

Arguing that Plaintiffs cannot demonstrate predominance, Defendant submits various theories, which fall into two overlapping categories: (1) challenges to Plaintiffs' method of calculating aggregate damages, and (2) challenges to Plaintiffs' ability to prove that individual class members suffered damages.

#### (a) Challenges to Plaintiffs' Aggregate Damages Model

Defendants assert that there are various deficiencies with Plaintiffs' expert's damages model, including: (1) failure to account for "yield-management" software systems; (2) exclusion of certain Japan Class itineraries; (3) the presence of "false positives;" (4) failure to account for individual consumer preferences, which may induce customers to make purchasing decisions based on factors other than price; and (5) the use of averages to mask variability among the proposed class members, "many of which . . . did not suffer harm." Opp'n at v, 3, 10.[7]

Some of these asserted deficiencies may be valid. However, "the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of

---

[7] Defendant also moves to strike the testimony of Plaintiffs' expert as inadmissible under Federal Rule of Evidence 702 and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Def.'s Mot. to Strike (dkt. 1206). Defendant's motion is based on objections to the expert's methodology similar to those made in its Opposition brief. See Opp'n at v, 3, 10. Daubert requires courts to "ensure the reliability and relevancy of expert testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151–52 (1999). This requirement is met here: Plaintiffs' expert employs widely-recognized and reliable methodologies. See 2A Phillip E. Areeda et al., Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶¶ 398–99 (4th ed. 2014). Accordingly, this Court DENIES Defendant's motion to strike.

14

[impact] through generalized proof." In re TFT-LCD (Flat Panel) Antitrust Litig., 267 F.R.D. 583, 604 (N.D. Cal. 2010), amended in part, No. M 07-1827 SI, 2011 WL 3268649 (N.D. Cal. July 28, 2011); see also In re Optical Disk Drive Antitrust Litig., No. 3:10-MD-2143 RS, 2016 WL 467444, at *7 (N.D. Cal. Feb. 8, 2016) (certifying antitrust class even though "Defendants and their expert advance a litany of supposed defects in [the plaintiff's expert's] analysis" of antitrust impact). Merits questions can be resolved at trial. See Comcast, 133 S. Ct. at 1433 (noting that "any model supporting a plaintiff's damages case must be consistent with its liability case," but "[c]alculations need not be exact" at the class certification stage); Amgen, 568 U.S. at 460 (noting that forcing plaintiffs to prove the merits of their case at the class certification stages would be "put[ting] the cart before the horse.").

Plaintiffs' proposed aggregate damages models are plausible and consistent with their theory of liability. Accordingly, they are sufficient to pass the class certification stage. Plaintiffs will have to prove the merits of their models at trial, when this Court will scrutinize them closely with the benefit of additional evidence and testimony.

### (b) Challenges to Proof of Individual Impact

Defendant next asserts that Plaintiffs fail to demonstrate that each proposed class member has suffered an antitrust injury. Defendant relies on three lines of argument. First, Defendant argues that Plaintiffs present no proof that class members who purchased their tickets from travel agents[8] suffered damages. Second, Defendant asserts that

---

[8] This includes all Satogaeri Class members, and some subset of Japan Class members who purchased their transpacific airfare from travel agents. Defendant estimates this subset to be at least 37.5% of the Japan Class. See Opp'n at 10.

15

Plaintiffs have not shown that higher fuel surcharges would necessarily result in higher ticket prices for Japan Class members. Third, Defendant argues that large segments of the Japan Class members paid lower prices as a result of the price-fixing conspiracy, and therefore did not suffer an antitrust injury.

Defendant's first line of argument is foreclosed by this Court's earlier order. See Order Den. Mot. Summ. J. Plaintiffs are not indirect purchasers under Illinois Brick, and therefore they suffered direct antitrust injury.

Defendant's second and third lines of argument both assert that large percentages of particular subsets of the Japan Class did not suffer an antitrust injury. Therefore, Defendant argues, the class should not be certified due to Plaintiffs' "failure to demonstrate that 'all or virtually all' class members were injured." Opp'n at 5 (quoting In re Rail Freight Fuel Surcharge Antitrust Litig., No. 07–MC–489, 2017 WL 5311533, at *87 (D.D.C. Nov. 13, 2018)).

Plaintiffs assert that fuel surcharge increases represent price increases to passengers. See Mangum Rpt. ¶ 37. This is partially based on a common-sense theory that "there would be no reason to collude on fuel surcharges if [ANA and JAL] were going to continue to compete on base fares." Id. ¶ 182. Plaintiffs also rebut Defendant's theoretical assertion with a practical examination of the data. Plaintiffs' expert purportedly found "no decline in base fares when fuel surcharges were implemented, indicating that there was no base fare offset for fuel surcharges." Mot. Class Cert. at 3; see also Mangum Rpt. ¶ 95. He ultimately determined that "95.7% of the Japan Class itineraries were impacted by ANA's allegedly anticompetitive conduct." Reply (dkt. 1190) at 5.

16

Plaintiffs proposed classes meet the predominance requirements. Even if a small number of customers of Japan Class members received discounted fares, it is not an obstacle to class certification. See Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1043 (2016) (affirming district court certification of a class of 3,344 members even though it was "undisputed that hundreds of class members suffered no injury in the case."); Ruiz Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1137 (9th Cir. 2016) (concluding that in cases where the defendant asserts "the potential for unlawful conduct in the absence of harm," the "fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class."); In re Rail Freight, 2017 WL 5311533, at *87 (suggesting that if more than 5% or 6% of class members are uninjured, the class is un-certifiable).

Defendant will have the opportunity to present evidence on the merits of Plaintiffs' approach during the trial. And the Court reserves the right, upon presentation of further evidence and testimony subject to cross-examination, to de-certify either or both classes. But for now, Plaintiffs have adequately demonstrated that "all or virtually all" of their proposed classes suffered an injury. See In re Rail Freight, 2017 WL 5311533, at *87. Accordingly, Plaintiffs' proposed classes satisfy the predominance requirement.

### 2. Superiority

To fulfill Rule 23(b)(3)'s superiority requirement, Plaintiffs must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A court must consider Rule 23(b)(3)'s four factors.[9] See Zinser v. Accufix

---

[9] These factors are: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy

17

Research Institute, Inc., 253 F3d 1180, 1190 (9th Cir. 2001).

Plaintiffs' proposed classes meet the superiority requirement. It would be inefficient and cost prohibitive to litigate hundreds of thousands of individual proceedings, rather than on a class-wide basis. Plaintiffs also correctly point out that "[t]he prosecution of separate actions by individual class members would . . . create the risk of inconsistent rulings, and could result in prejudice to the Plaintiffs and absent class members." See Mot. Class Cert. at 22.

It is administratively feasible to identify class members. See Briseno, 844 F.3d at 1128. Though the airline transaction data JAL and ANA have already produced in discovery does not allow one to match passenger names to the itineraries, Reply at 6, Plaintiffs demonstrate they are able to use this information to verify proposed class members' claims, Mangum Rpt. ¶ 19. Moreover, it should not be hard for class members to self-identify. International airline travel is a major expense, and potential class members would likely recall their purchase.[10] Many class members may have a record of their purchases, particularly if they paid by credit card. See Stone Decl. ¶ 38 (showing that since 2000, over 98% of airline ticket sales are paid by credit card). In the event that class members do not produce sufficient proof of their purchase, Defendant will have an

---

already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A–D).

[10] Although some courts have recognized difficulties in cases of low-cost consumer purchases that customers would have no reliable way of remembering, those concerns are not implicated here. See, e.g., Sethavanish v. ZonePerfect Nutrition Co., No. 12-2907, 2014 WL 580696, at *6 (N.D. Cal. Feb. 13, 2014); In re POM Wonderful LLC, No. 10-2199, 2014 WL 1225184, at *6 (C.D. Cal. Mar. 25, 2014) ("Few, if any, consumers are likely to have retained receipts during the class period" and "there is no way to reliably determine who purchased Defendant's [juice] products or when they did so.").

18

opportunity to "individually challenge the claims of absent class members if and when they file claims for damages." Briseno, 844 F.3d at 1131; see also Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 594 (3rd Cir. 2012) (stating that forcing the defendants to "accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.").

Defendant does not dispute the superiority requirement of either proposed class.

**Japan Class.** As stated in the 'numerosity' discussion, Plaintiffs assert that there are already 1.1 million itineraries within the transaction data produced by ANA and JAL. Mot. Class Cert. at 14. Under Plaintiffs' expert's proposed damages model, no single member of the Japan Class would be awarded more than $113. See Mangum Rpt. at ¶¶ 52, 183. This is clearly not a large enough sum to sustain individual proceedings, nor is the federal court system equipped to adjudicate hundreds of thousands of separate actions.

**Satogaeri Class.** Plaintiffs estimate that there are more than 147,000 itineraries that meet the definition of the Satogaeri Class. Mot. Class Cert. at 14. Plaintiffs' expert estimates that class-wide damages range between $22.5 and $28.9 million. Id. at 21. Even assuming the highest damages proposed by Plaintiffs' model, class members would still receive less than $200 on average. Again, this is clearly not a large enough sum to sustain individual proceedings, nor could the court system efficiently adjudicate 147,000 individual claims.

## IV. CONCLUSION

Plaintiffs' proposed classes meet the requirements for class certification. Merit questions will be resolved at the upcoming trial.

The Court hereby GRANTS Plaintiffs' class certification motion.

**IT IS SO ORDERED.**

Dated: August 8, 2018



CHARLES R. BREYER
United States District Judge