Joseph W. Cotchett (36324)
Niall P. McCarthy (160175)
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Interim Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>**All Actions** | **Civil Case No. 3:07-cv-05634-CRB**<br><br>**MDL No. 1913**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date: September 14, 2018**<br>**Time: 10 am**<br>**Courtroom: 6, 17th Floor** |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 am on September 14, 2018, in connection with a hearing on final approval of the settlements, Plaintiffs and their counsel ("Class Counsel") will move, and hereby do move, this Court before the Honorable Charles R. Breyer, United States District Judge, at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 6 (17th Floor), San Francisco, California, for an award of attorneys' fees of $14,416,680.56, totaling 30% of the Net Settlement Fund (defined *infra*), reimbursement of litigation expenses in the amount of $1,060,254.15, and an incentive payment to a Class Representative who had not previously received an incentive award of $2,500 for her time and effort representing the Class throughout this litigation. This motion is brought pursuant to Federal Rules of Civil Procedure ("Rule") 23(h), 54(b) and 54(d)(2).

The motion should be granted because (a) the requested attorneys' fees are fair and reasonable in light of Class Counsel's extensive and longstanding efforts to create a Net Settlement Fund of $48,055,547.70 for this round of settlements; (b) the requested fees comport with Ninth Circuit case law developed in similar common fund litigation, (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this Action; and (d) a reasonable incentive payment of $2,500 to the Class Representative who had not previously received an incentive award in this case is warranted and appropriate.

This motion is based upon this Memorandum of Points and Authorities; the Declarations of Christopher L. Lebsock and Adam J. Zapala; the Declarations of Supporting Class Counsel; the [proposed] order submitted herewith; and such other records, pleadings, and papers filed in this action; and upon such argument and further pleadings as may be presented to the Court at the hearing on this Motion.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................4

    A.    Litigation History ...................................................................................4

        1.    Pre-Complaint Investigation, Early Complaints, Service of Process, and the Judicial Panel on Multidistrict Litigation ("JPML") ...........................4

        2.    Appointment of Leadership ...........................................................4

        3.    The Consolidated Complaints and Two Rounds of Motions to Dismiss....4

        4.    The Discovery Process...................................................................6

        5.    Summary Judgment Proceedings Regarding the Filed-Rate Doctrine .......8

    B.    Settlement History .................................................................................9

III.  ARGUMENT ...................................................................................................10

    A.    The Ninth Circuit Recognizes the Common Fund Doctrine and a Percentage-of-the-Recovery as the Predominant Method for Determining Attorneys' Fees in Class Action Cases...............................................................................10

    B.    Application of the Pertinent Factors Demonstrates that an Upward Adjustment of the Benchmark is Justified ...................................................................11

        1.    Class Counsel Achieved an Excellent Recovery for the Class................12

        2.    A High Level of Skill Was Required to Prosecute This Case .................12

        3.    The Risks of this Litigation...........................................................13

        4.    Contingent Nature of the Fee ........................................................14

        5.    The High Quality of the Work Performed ........................................14

        6.    The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee........................................................................................14

    C.    Class Counsel Are Entitled to Reimbursement of Their Reasonable Litigation Expenses ............................................................................................14

    D.    Payments to the Class Representatives Are Appropriate................................15

IV.   CONCLUSION.................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................12

*In re Air Cargo Shipping Services Antitrust Litigation*,
  No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ............................................................6

*Arenson v. Board of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ....................................................................13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................10

*Central R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) ............................................................................................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  M-02-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) .......................12

*In re Flash Memory Antitrust Litig.*,
  No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ....................13

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D. 478 (N.D. Cal. 2008) ........................................................................13

*Hawaii v. Standard Oil Co.*,
  405 U.S. 251 (1972) ............................................................................................10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................12

*In re Heritage Bond Litig.*,
  02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................12

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976) ......................................................................13

*In re Linerboard Antitrust Litig.*,
  No. Civ. A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .....................13

*Mark v. Valley Ins. Co.*,
  No. CV 01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004) ........................12

*In re McKesson HBOC, Inc. ERISA Litig.*,
  391 F. Supp. 2d 844 (N.D. Cal. 2005) ................................................................15

*Meijer v. Abbott Laboratories*,
  C 07-05985 CW (N.D. Cal. Aug. 11, 2011) ........................................................11

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)..................................................................................................10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................13

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................12, 15

*In re Online DVD-Rental Antitrust Litig.*,
   No. 12-15705, 2015 WL 846008 (9th Cir. Feb. 27, 2015) .............................*passim*

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .....................................................................................12

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983)..................................................................................................10

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...................14

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)..................................................................................................10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................15

*In re Sorbates Direct Purchaser Antitrust Litig.*,
   No. 99-1358MMC, 2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) ....................15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   Case No. 07-md-1819 CW (N.D. Cal. June 30, 2011) ...........................................11

*In re Superior Beverage/Glass Container Consol. Pretrial*,
   133 F.R.D. 119 (N.D. Ill. 1990).................................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ........................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013)...........................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013)....................11, 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .....................................................................................11

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
   No. C 07-05634 CRB, 2014 WL 4744512 (N.D. Cal., Sept. 23, 2014) .............7, 9

*Vincent v. Hughes Air West,*
    557 F.2d 759 (9th Cir. 1977) ...............................................................................15

*Vizcaino v. Microsoft Corp.,*
    142 F. Supp. 2d 1299 (W.D. Wash. 2001).....................................................12, 13

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ...........................................................10, 11, 12, 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) .................................................................10, 11, 14

*Wortman v. All Nippon Airways,*
    854 F.3d 606 (9th Cir. 2017) ...............................................................................9

**Other Authorities**

1 Alba Conte, *Attorney Fee Awards* § 2.19 (3d ed. 2004) ........................................15

*Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases,*
    Robert H. Lande & Joshua P. Davis, 42 U.S.F. L. Rev. 879 (2008) ......................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After over eleven years of hard-fought litigation, Plaintiffs have obtained settlements with four[1] of the remaining five airlines named as Defendants in this case. Class Counsel's efforts have resulted in $50,650,000 in settlements, including notice costs, from the four Settling Defendants for which final approval is now being sought. This settlement fund is in addition to the $39,502,000 in settlements Class Counsel obtained from defendants who previously settled.[2] Thus, to date, Class Counsel have obtained more than $90 million in settlements. As reflected in the attached declarations and the earlier Motion for Award of Attorneys' Fees, ECF No. 986, Class Counsel have invested a total of 103,903.91 hours in time with a corresponding lodestar of $41,961,815.00 and $3,868,008.03 in out-of-pocket expenses since this case began in 2007. As reflected in the detailed declarations accompanying this Motion, between February 21, 2015, the cut-off date for fees and expenses for the first round of settlements, and May 16, 2018, when preliminary approval was granted for this round of settlements, *see* ECF No. 1161, Class counsel have invested an additional 5,539.55 hours in time and $1,060,308.30 in out-of-pocket expenses.[3] Class Counsel also seek an incentive award of $2,500 for the Class Representative who did not previously receive an incentive award for her service in this case.[4] Subtracting the out-of-pocket

---

[1] Relevant to this round of settlements, Plaintiffs have reached settlements with Philippine Airlines, Inc. ("PAL"), Air New Zealand Limited ("ANZ"), China Airlines, Ltd. ("CAL"), and EVA Airways Corporation ("EVA") (collectively, the "Settling Defendants").

[2] On May 26, 2015, the Court granted final approval of settlements with Societe Air France, Cathay Pacific Airways Limited, Japan Airlines International Company, Ltd., Malaysian Airline System Berhad, Qantas Airways Limited, Singapore Airlines Limited, Thai Airways International Public Co., Ltd. and Vietnam Airlines Corporation. *See* ECF No. 1009. Those airlines were dismissed from the case with prejudice on June 15, 2015. *See* ECF Nos. 1014-1021.

[3] These expenses include the $1,021,882.28 in expenses that were not previously reimbursed because the expenses were submitted after Plaintiffs' Counsel filed their initial motion for fees and costs. *See* ECF No. 1009 at 3 n.3.

[4] In their first request for fees and expenses, Class Counsel sought—and the Court granted—an incentive award of $7,500 for class representatives. *See* ECF No. 1009. During the course of litigation, however, Class Counsel added an additional class representative for the EVA settlement—Sharon Christian. Ms. Christian was retained as a client while preparing a class certification motion against EVA, which became unnecessary when EVA settled. The work Ms. Christian did in preparing to participate in the case was important and worthy of recognition.

expenses, costs for notice,[5] and the incentive award, the settlement fund for the Settling Defendants is $48,055,547.70 ("Net Settlement Fund").

Through this Motion, Class Counsel seek an interim award of attorneys' fees in an amount equal to 30% of the Net Settlement Fund, as well as reimbursement of their litigation expenses. Class Counsel have prosecuted this case on a purely contingent basis. The settlements have been achieved without the support of parallel criminal government investigations or guilty pleas for the vast majority of Plaintiffs' claims and in the face of an immensely hard fought defense by some of the most sophisticated and respected defense firms in the country. The fees Class Counsel seek are eminently fair in light of the extraordinary investment of time and money they have made and the substantial risks that the litigation presented.

To date, among many other services, Class Counsel have:

- Conducted an initial investigation to develop the theories of liability and the facts that formed the basis of the allegations against Defendants. This research included a review of publicly available information regarding the Transpacific airline industry and consultation with industry experts and economists;

- Drafted two comprehensive consolidated amended complaints detailing Defendants' alleged violations of the antitrust laws, ECF Nos. 200, 493;

- Conducted exhaustive legal research regarding the Class's claims and the defenses thereto;

- Defended and, on the whole, prevailed after two extensive rounds of hard-fought motions to dismiss, totaling 18 motions by Defendants with arguments covering such complex regulatory areas as the filed-rate doctrine, the act of state doctrine, the state action doctrine, implied preclusion, federal preemption and the sufficiency of the conspiracy allegations under *Twombly* and *Iqbal*, amongst several other attacks on the pleadings, ECF No. 467. Defended and defeated attempts by some of the Defendants to appeal this Court's rulings on the aforementioned motions;

- Propounded several sets of discovery that – after extensive meet and confers and negotiations with Defendants, including significant motion practice before this Court and Magistrate Judge Ryu – resulted in the identification of over 374 document custodians and the production of almost seven million pages of documents, in addition to voluminous electronic transactional data. Reviewed, searched and extensively coded and analyzed these documents – many of which were in foreign language and required translation;

---

[5] Notice and claims administration costs are $1,531,644. *See* ECF No. 1130 at 7.

- Engaged in extensive third-party discovery, including obtaining access to and reviewing the Airline Tariff Publishing Company's ("ATPCO") database for information concerning fares, itineraries and other data pertinent to this litigation;

- Organized and attended several proffer sessions with Settling Defendants to obtain cooperation and learn additional liability, class certification and damages information relevant to the non-settling Defendants;

- Propounded several sets of Interrogatories and Requests for Admission and issued Rule 30(b)(6) deposition notices;

- Answered several sets of discovery propounded by Defendants, including Requests for Production of Documents, Interrogatories and Requests for Admission, as well as answering extensive contention interrogatories concerning liability;

- Contended with near-constant discovery disputes and motions to compel;

- Prepared for and took the **depositions of 62 fact and 30(b)(6) witnesses** from Defendants and three third-party witnesses. Prepared for and defended the depositions of all of the Class Representatives – totaling 15 depositions in all. Prepared for and defended the depositions of three expert witnesses in relation to Defendants' summary judgment motions regarding the filed-rate doctrine;

- Engaged and consulted extensively with experts and economists on issues pertaining to electronic discovery, liability, summary judgment, class certification and damages throughout the course of the Action;

- Prepared briefs for, and substantially prevailed on, Defendants' Motions for Summary Judgment Based on the Filed Rate Doctrine, as well as appeal to the Ninth Circuit, which affirmed this Court's decision, and the Defendants' petition for certiorari, which the Supreme Court denied;

- Prepared briefs for final approval of the first round of settlements, defended the Court's May 26, 2015 final approval order concerning those settlements in the Ninth Circuit, which affirmed the final approval order, and successfully defeated an objector's petition for *certiorari* to the Supreme Court;

- Engaged in protracted settlement discussions and mediations with the Settling Defendants, *see, e.g.*, ECF Nos. 1112-1 (Lebsock Decl. in Support of Motion for Preliminary Approval), 1129-1 (Lebsock Decl. in Support of Motion for Preliminary Approval);

- Documented the settlements with the Settling Defendants, briefed motions for preliminary approval, and engaged experts noted in the field of class action notice for the purpose of developing a robust notice program to inform the Class regarding the pending settlements.

*See* Declaration of Christopher L. Lebsock in Support of Plaintiffs' Motion ¶ 7 ("Lebsock Decl.").

All along this eleven-year timeline, as reflected in the Lebsock Declaration, Plaintiffs faced substantial risks. *Id* ¶ 8. In light of the foregoing and in this context, Plaintiffs' request for

an interim fee award of 30% of the Net Settlement Fund is fair and reasonable, amounting to less than 45% of Class Counsel's unreimbursed lodestar of $32,961,815.00. While the benchmark for attorneys' fees in the Ninth Circuit is 25%, a higher award is warranted here, as the Court recognized in awarding nearly 30% of the Net Settlement Fund for the first round of settlements. *See* ECF No. 1009 at 3-4.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY
### A.   Litigation History

#### 1.   Pre-Complaint Investigation, Early Complaints, Service of Process, and the Judicial Panel on Multidistrict Litigation ("JPML")

The first complaint in this Action was filed by the law firm of Cotchett, Pitre & McCarthy, LLP on November 6, 2007 in the Northern District of California – nearly eleven years ago. ECF No. 1. For seven of the initially-named Defendants, Plaintiffs were required to effectuate service through the Hague Convention. *See* ECF Nos. 29-48. Class Counsel also participated in proceedings before the JPML, arguing that all related actions should be transferred to the Northern District of California. The JPML transferred all cases to this Court, finding centralization to be appropriate pursuant to 28 U.S.C. § 1407. Lebsock Decl. ¶ 11.

#### 2.   Appointment of Leadership

On March 28, 2008, this Court appointed the law firms of Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP (through its predecessor firm) as interim Co-Lead Class Counsel on behalf of the putative class pursuant to Fed. R. Civ. Proc. 23(g). ECF Nos. 130, 175.

#### 3.   The Consolidated Complaints and Two Rounds of Motions to Dismiss

On August 6, 2009, Plaintiffs filed a 111-page, factually-detailed Consolidated Class Action Complaint ("CCAC"). ECF No. 200. In response to the CCAC, Defendants filed 14 motions to dismiss, asserting a number of different attacks on the complaint. *See, e.g.,* ECF Nos. 243, 287, 288, 290, 293, 294, 295, 299, 300, 303, 304, 310, 311, and 312. Defendants, either collectively or individually (and, in some instances, both), argued (1) that Plaintiffs had failed to allege a plausible conspiracy under *Twombly* and *Iqbal*, (2) that the filed-rate doctrine barred Plaintiffs' claims, (3) that the claims were preempted through the doctrine of implied preclusion, (4) that foreign treaties or "Air Services Agreements" among the various national governments

provided the exclusive remedy and precluded Plaintiffs' claims, (5) that the Foreign Trade Antitrust Improvement Act ("FTAIA") barred the claims, (6) that the complaint failed to adequately allege fraudulent concealment for purposes of tolling the statute of limitations, (7) that the CCAC did not relate back to the filing of the original complaints, (8) that the federal aviation statutory scheme preempted Plaintiffs' claims, (9) that the state action doctrine barred the claims, and (10) that the act of state doctrine barred the claims, amongst other more nuanced arguments. *See id.*

On May 9, 2011, this Court issued a detailed Order largely sustaining Plaintiffs' allegations and rejecting all of Defendants' arguments except for two. ECF No. 467. The Court found that, (1) the FTAIA barred flight segments originating in Asia/Oceania, and (2) Plaintiffs failed to adequately allege "fraudulent concealment." *See generally*, Lebsock Decl. ¶¶ 13-22.

On July 14, 2011, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("1st CAC"). ECF No. 493. The 1st CAC expanded to 149-pages and added significant detail regarding Defendants' concealment of the price-fixing scheme. *See id.* Another round of motions to dismiss ensued. *See, e.g.,* ECF Nos. 516, 518, 519, 520. On September 30, 2011, by minute order, this Court found that Plaintiffs had sufficiently tolled the statute of limitations. ECF No. 553.

Plaintiffs were also forced to defend against several Defendants' attempts to appeal this Court's orders on the motions to dismiss. ANA, China Airlines and the European Carriers[6] requested permission to appeal pursuant to 28 U.S.C. § 1292. ECF Nos. 473, 496. After opposition from Plaintiffs, this Court denied the requests. ECF Nos. 488, 510. Thai Airways and Vietnam Airlines also filed notices of appeal in response to this Court's orders. ECF Nos. 479, 484. Plaintiffs filed motions to dismiss these appeals in the Ninth Circuit, arguing that they were procedurally improper. On August 22, 2011, the Ninth Circuit agreed and dismissed the appeals. ECF Nos. 524-25.

---

[6] Air France, KLM and SAS.

### 4.     The Discovery Process

Mirroring, and in fact in most cases surpassing, the vigorous litigation over the pleadings, Plaintiffs have had to fight for every ounce of discovery that has been produced or that has occurred in this case. Lebsock Decl. ¶ 23. As recounted in the Lebsock Declaration, Plaintiffs propounded several sets of written discovery designed at eliciting information pertinent to this complex case. *Id.* ¶¶ 24, 26. Subsequent to the service of this discovery and multiple rounds of objections from Defendants, the parties held extensive meet and confer negotiations over the scope of the requests, document custodians, a search term protocol, an ESI protocol, a discovery limitations/plan protocol, interim deadlines for the production of documents, and a deposition protocol. In many cases, these negotiations required the intervention of Magistrate Judge Ryu through motions to compel. *Id.* ¶ 30.

On June 14, 2010, Plaintiffs filed a motion to compel the production of information residing with third-party, ATPCO. ECF No. 392. Obtaining information from the ATPCO database was critical to Plaintiffs' prosecution of the case. Lebsock Decl. ¶ 31. The motion resulted in an extensive stipulation between all parties concerning the production of information residing on the ATPCO database. ECF No. 396.

On September 16, 2011, Plaintiffs filed a motion to compel ANA and China Airlines to provide further documents and discovery responsive to conspiracy-related information and transactional data. ECF No. 546. After proceedings before Magistrate Judge Ryu, the parties reached an agreement for searching for and producing relevant documents. *See, e.g.*, ECF No. 583. Plaintiffs similarly filed a motion to compel Defendants to produce documents related to the *Air Cargo* litigation[7] (ECF No. 601), resulting in a protocol to provide Plaintiffs with access to Defendants' *Air Cargo* productions. *See* ECF No. 630-631. Several Defendants also asserted that "foreign-blocking statutes" prohibited them from providing otherwise responsive discovery. Lebsock Decl. ¶¶ 32-33. Magistrate Judge Ryu issued orders largely sustaining Plaintiffs' motions. ECF Nos. 642, 655, 658, 660.

---

[7] *See In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("*Air Cargo*").

Due to the difficulty in actually obtaining a substantive production from the Defendants, Plaintiffs filed discovery letters with Magistrate Judge Ryu regarding interim discovery and production deadlines. ECF No. 668. This process resulted in a Stipulated Order requiring Defendants to make substantial productions by dates certain. *See* ECF No. 683. This process also resulted in a Stipulated Order concerning deposition limits. *See* ECF No. 691. On February 21, 2013, Plaintiffs submitted a discovery status report to Magistrate Judge Ryu reporting on the progress they had made with the various Defendants concerning search terms, custodians, transactional data, and other discovery. ECF No. 693. On March 21, 2014, Plaintiffs and ANA filed another joint letter brief concerning ANA's refusal to produce its CEO, Osamu Shinobe for deposition. ECF No. 881. Magistrate Judge Ryu compelled Mr. Shinobe's deposition. ECF No. 867. During the same proceeding, Magistrate Judge Ryu denied Defendants' request that Plaintiffs produce their experts' searches in the ATPCO database. ECF No. 864.

In connection with Defendants' summary judgment motions regarding the filed-rate doctrine, Plaintiffs were also forced to file motions to compel further discovery responses demonstrating the level of supervision, or lack thereof, from the Department of Transportation over Defendants' fares and fuel surcharges. *See, e.g.*, ECF Nos. 819, 820. Magistrate Judge Ryu granted the motions. ECF No. 862. Defendants' answers to that discovery were cited by this Court in denying Defendants' summary judgment motions based on the filed rate doctrine. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-05634 CRB, 2014 WL 4744512, at *n.4, *958, *961, *n.34 (N.D. Cal., Sept. 23, 2014).

Despite the vigorous opposition of defense counsel, Plaintiffs obtained 1.7 million documents, totaling almost seven million pages. Lebsock Decl. ¶ 37. This documentary evidence was thoroughly reviewed, analyzed, coded and organized by a team of lawyers through an electronic review platform. Through the use of targeted searches and other search devices and protocols, counsel reviewed close to a million pages of documents. This process identified the important evidence in this case. Foreign language documents required review by attorneys fluent in those foreign languages, who then had to determine which documents were sufficiently

1    relevant to the litigation to require full English translations and, in certain cases, certified

2    translations for use in depositions. *Id.* ¶ 38.

3         Class Counsel and Supporting Counsel also spent significant time preparing for and taking

4    the depositions of Defendants' employees and former employees. All told, Plaintiffs took 62

5    depositions of Defendants' employees or former employees in either their Rule 30(b)(1) or

6    30(b)(6) capacity. *Id.* ¶¶ 43-45. Of these 62 depositions, 36 required an interpreter, thus

7    substantially prolonging the length of the deposition. Plaintiffs also took three third-party

8    depositions. *Id.* In many cases, Defendants refused to bring their deponents to the United States

9    for deposition, thus requiring several trips to foreign countries, such as Australia, Japan, Hong

10   Kong, Taiwan and Singapore. *Id.* Deponents in Japan are precluded from appearing voluntarily.

11   Class Counsel, therefore, was required to file motions with the Court, obtain deposition rooms at

12   the U.S. Consulate or Embassy, and procure a deposition visa after a diplomatic exchange

13   between the United States and Japan. ECF Nos. 737, 889. Additionally, some former employees

14   refused to appear voluntarily, thus requiring Plaintiffs to utilize the time-consuming and

15   inefficient Hague Process to compel their attendance at important depositions. ECF Nos. 796,

16   803-805, 891.

17        In addition to the offensive discovery outlined above, Plaintiffs were required to respond

18   to discovery and to produce relevant documents. Lebsock Decl. ¶ 42. In addition to responding

19   to document requests and Interrogatories, Class Counsel prepared for and defended the

20   depositions of the Class Representatives—requiring a defense of fifteen such depositions. *Id.* ¶

21   47. Similarly, in connection with Plaintiffs' Opposition to Defendants' summary judgment

22   motions regarding the filed-rate doctrine, Class Counsel had to prepare for and defend three

23   expert depositions. *Id.*

24        **5.    Summary Judgment Proceedings Regarding the Filed-Rate Doctrine**

25        Between September 10, 2013 and December 17, 2013, ANA, Air New Zealand, Cathay

26   Pacific, China Airlines, EVA Airways, Philippine Airlines, Qantas, Singapore Airlines, and Thai

27   Airways filed summary judgment motions regarding the filed-rate doctrine. In addition to

28

individual motions, these Defendants—with the exception of ANA—joined in a joint summary judgment motion regarding the filed-rate doctrine. *See* ECF Nos. 724, 725, 728, 731, 753, 763, 792.

As noted previously, in anticipation of these motions, Plaintiffs engaged in extensive discovery and motion practice before Magistrate Judge Ryu, which was resolved in favor of Plaintiffs. Lebsock Decl. ¶ 49. In opposing the summary judgment motions, Plaintiffs exhaustively researched the filed-rate doctrine and federal preemption case law, as well as the statutory and regulatory underpinnings of United States' aviation law and policy. In support of its Opposition, Plaintiffs also retained three experts to provide expert testimony. *See* ECF Nos. 872, 873, 874; Lebsock Decl. ¶ 51. In response to Defendants' motions, Class Counsel submitted one omnibus Opposition totaling 60-pages. ECF No. 869. On September 23, 2014, the Court granted in part and denied in part Defendants' motions, keeping the vast majority of the claims in the case against Defendants. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2014 WL 4744512; Lebsock Decl. ¶ 54.

Defendants, including Settling Defendants, sought permission to appeal the Court's summary judgement decision, which the Court granted. *See* ECF No. 961. The Ninth Circuit then agreed to hear the appeal. *See* ECF 977. Plaintiffs prevailed on appeal, however, with the Ninth Circuit endorsing this Court's reasoning that the filed rate doctrine did not preclude the majority of Plaintiffs' claims. *Wortman v. All Nippon Airways*, 854 F.3d 606 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 1281 (2018). Defendants, including Settling Defendants EVA and CAL (Settling Defendants PAL and ANZ had reached settlements with Plaintiffs prior to the Ninth Circuit decision), petitioned for a rehearing *en banc* with the Ninth Circuit, which was denied. *See* ECF 1086. Defendants, including Settling Defendant EVA, filed a petition for certiorari with the Supreme Court (Settling Defendant China Airlines reached settlement with Plaintiffs before the certiorari petition was filed), which was also denied shortly after Settling Defendant EVA agreed to a settlement with Plaintiffs. *See* ECF No. 1133.

**B.    Settlement History**

In or around mid-2016, Class Counsel began settlement negotiations with counsel for

1    ANZ. These negotiations resulted in cooperation and a payment of $400,000 for the Class, plus

2    an additional $250,000 towards the cost of class notice. Lebsock Decl. ¶ 73. At approximately

3    the same time, Class Counsel began settlement discussions with PAL that resulted in cooperation

4    and a payment of $9,000,000 to the Class. The PAL settlement was reached in principle

5    immediately prior to the Ninth Circuit hearing on the summary judgment motion. *Id.*

6        In or around August 2017, Class Counsel and CAL participated in a two-day mediation

7    before the Honorable Judge Vaughn Walker, Ret., United States District Court for the Northern

8    District of California, resulting in cooperation and a payment of $19,500,000 for the Class, plus

9    an additional $250,000 towards the cost of class notice. *Id.* ¶ 74. Similarly, Class Counsel and

10   EVA engaged experienced mediator Robert A. Meyer, culminating in cooperation and a payment

11   of $21,000,000, plus an additional $250,000 towards the cost of class notice. *Id.* ¶ 75.

12       This Court preliminarily approved the settlements with the four Settling Defendants on

13   May 16, 2018. *See* ECF No. 1161.

14   **III.   ARGUMENT**

15       **A.    The Ninth Circuit Recognizes the Common Fund Doctrine and a
16              Percentage-of-the-Recovery as the Predominant Method for Determining
               Attorneys' Fees in Class Action Cases**

17        As the Supreme Court has explained, "this Court has recognized consistently that a litigant

18   or a lawyer who recovers a common fund for the benefit of persons other than himself or his client

19   is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*,

20   444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392–93 (1970); *Central

21   R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 123 (1885); *In re Wash. Pub. Power Supply Sys.*

22   *Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

23        The Supreme Court has repeatedly recognized that private antitrust litigation is essential

24   to the effective enforcement of the antitrust laws. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248,

25   262–63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co.*,

26   405 U.S. 251, 266 (1972). The district court has discretion in a common fund case to choose either

27   the "percentage-of-the-fund" or the "lodestar" method in calculating fees. *Vizcaino v. Microsoft*

28   *Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("*Vizcaino II*"); *In re Online DVD-Rental Antitrust*

1   *Litig.*, No. 12-15705, 2015 WL 846008, at \*9 (9th Cir. Feb. 27, 2015) ("*Online DVD*"); *WPPSS*,

2   19 F.3d at 1296. Most district courts in the Ninth Circuit have exhibited a clear preference for the

3   percentage-of-the-fund method, with virtually all of the major recent antitrust class actions in the

4   Northern District of California applying this approach. *See, e.g.*, *In re TFT-LCD (Flat Panel)*

5   *Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 7575003, at \*1 (N.D. Cal. Dec. 27, 2011) (30%);

6   *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 149692, at \*1-2 (N.D.

7   Cal. Jan. 14, 2013) ("*LCD II*") (30%); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-

8   1827 SI, 2013 WL 1365900, at \*7-8 (N.D. Cal. Apr. 3, 2013) (28.6%); *In re Static Random*

9   *Access Memory (SRAM) Antitrust Litig.*, Case No. 07-md-1819 CW (N.D. Cal. June 30, 2011)

10  (ECF No. 1370) (30%); *Meijer v. Abbott Laboratories*, C 07-05985 CW (N.D. Cal. Aug. 11,

11  2011) (ECF No. 514) (33⅓%). Indeed, the Court followed the percentage-of-the-fund approach

12  in awarding fees for the first round of settlements. *See* ECF No. 1009.

13       Here, Class Counsel's efforts have created a Net Settlement Fund of $48,055,547.70,

14  exclusive of litigation expenses, from this round of settlements. Under either a "percentage-of-

15  the-fund" or "lodestar" method, Class Counsel's requested fees are warranted in light of the value

16  of the extensive work performed, the difficulty and risk of the case, and the results achieved.

17       **B.    Application of the Pertinent Factors Demonstrates that an Upward**
18           **Adjustment of the Benchmark is Justified**

19       "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in

20  some cases." *Vizcaino II*, 290 F.3d at 1048. *Vizcaino II* makes clear that it is not sufficient to

21  arbitrarily apply a percentage; rather the district court must show why that percentage and the

22  ultimate award are appropriate based on the facts of the case. *Id.*; *see also Torrisi v. Tucson Elec.*

23  *Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In considering whether an award of 30% of the

24  Net Settlement Fund is fair, several factors may be considered, including:

25       the extent to which class counsel 'achieved exceptional results for the class,'
         whether the case was risky for class counsel, whether counsel's performance
26       'generated benefits beyond the cash settlement fund,' the market rate for the
         particular field of law (in some circumstances), the burdens class counsel
27       experienced while litigating the case (e.g., cost, duration, foregoing other work), and
         whether the case was handled on a contingency basis.
28

*Online DVD*, 2015 WL 846008, at *14 (citations omitted). The Court may also consider the volume of work performed, counsel's skill and experience, the complexity of the issues faced, and the reaction of the class. *See, e.g.*, *In re Heritage Bond Litig.*, 02-ML-1475 DT, 2005 WL 1594403, at *18-23 (C.D. Cal. June 10, 2005) ("*Heritage Bond*").

As a practical matter, fee awards tend to be approximately 30% or higher. *See, In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("[T]his court finds that in most recent cases the benchmark is closer to 30%."). A 2008 study of the effectiveness of private antitrust enforcement reviewed "forty of the largest recent successful private antitrust cases." Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L. Rev. 879 (2008). In cases with recoveries of less than $100 million, eleven of sixteen cases involved fee awards of at least 30%, with seven awards of 33.3%. *Id.* at 911 tbl.7A. Finally, fee awards of less than 30%, unlike this case, often involve substantial multipliers. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M-02-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) (multiplier of 2.3). By the same token, fees in excess of 30% often involve cases presenting substantial risk, as here. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% justified because of complexity and risk). Here, consideration of the *Vizcaino II* factors confirms the appropriateness of the fee requested.

### 1. Class Counsel Achieved an Excellent Recovery for the Class

Courts emphasize that the recovery is an important factor to be considered in determining an appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001) *aff'd*, 290 F.3d 1043 (9th Cir. 2002) ("*Vizcaino I*"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("*Omnivision*"). Here, Plaintiffs obtained settlements that confer a substantial benefit to Class Members, especially in light of the many risks involved in the action.

### 2. A High Level of Skill Was Required to Prosecute This Case

The skill and quality of legal counsel also support the requested fee award. *See Mark v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004). Class

1   Counsel are among the nation's most experienced and skilled practitioners in the antitrust

2   litigation field, and each firm has successfully litigated these types of cases—including within

3   this Circuit.

4          Courts have recognized that the novelty and difficulty of issues in a case are significant

5   factors to be considered in awarding fees. *See*, *e.g.*, *Vizcaino I*, 142 F. Supp. 2d at 1303, 1306.

6   Antitrust price-fixing conspiracy cases are notoriously complex and difficult to litigate. *See*, *e.g.*,

7   *In re Linerboard Antitrust Litig.*, No. Civ. A. 98-5055, 2004 WL 1221350, at *10 (E.D. Pa. June

8   2, 2004). Not only did Class Counsel effectively manage the logistics of litigating such a complex

9   case, but as described in detail, they successfully tackled many difficult legal and factual issues

10   presented by this case.

11          The caliber of opposing counsel is another important factor in assessing the quality of Class

12   Counsel's work. *Vizcaino I*, 142 F. Supp. 2d at 1303; *In re King Res. Co. Sec. Litig.*, 420 F. Supp.

13   610, 634 (D. Colo. 1976); *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).

14   Here, Plaintiffs were opposed by attorneys from some of the best and largest firms in the country

15   with near limitless resources at their disposal.

16                    **3.      The Risks of this Litigation**

17          Risk is an important factor in determining a fair fee award. *Online DVD*, 2015 WL 846008,

18   at *14; *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill.

19   1990). Ninth Circuit courts have recognized that risk is a reason to increase a fee award above the

20   25% benchmark. *Vizcaino I*, 142 F. Supp. 2d at 1303–04. Moreover, "[a]ntitrust litigation in

21   general, and class action litigation in particular, is unpredictable." *In re NASDAQ Mkt.-Makers*

22   *Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998). There is always the risk that the law may

23   change in unfavorable ways. Furthermore, given recent changes in the law, there was always a

24   risk that a class would not have been certified. Some large antitrust class actions have been denied

25   certification in recent years. *See*, *e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D.

26   478, 508 (N.D. Cal. 2008); *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL

27   2332081, at *19 (N.D. Cal. June 9, 2010).

28

### 4.     Contingent Nature of the Fee

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g., Vizcaino II*, 290 F.3d at 1050. It is well established that attorneys who take on the risk of a contingency case should be compensated for that risk. *WPPSS*, 19 F.3d at 1299. This factor strongly supports the requested fee.

### 5.     The High Quality of the Work Performed

Class Counsel respectfully submit that the work performed has been of the highest quality and of great benefit to the Class. The Court is familiar with the case history, having presided over nearly eleven years of contentious litigation represented by over 1220 docket entries.

### 6.     The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Finally, a cross-check of the requested fee with Class Counsel's lodestar demonstrates that the proposed fee is more than reasonable. *See Online DVD*, 2015 WL 846008, at *15; *Vizcaino II*, 290 F.3d at 1048-50. As summarized in the Lebsock Declaration, Class Counsel have spent 103,804.11 hours prosecuting this Action since inception. All of this time was reasonable and necessary for the prosecution of this Action. *Online DVD*, 2015 WL 846008, at *9. Class Counsel also took meaningful steps to ensure that their work was efficient. *See* Lebsock Decl. ¶ 83. Plaintiffs' fee request of $14,416,664.31 amounts to less than 45% of Class Counsel's unreimbursed lodestar of $32,961,815.00.[8] This confirms the reasonableness of the fee request beyond question. *See Online DVD*, 2015 WL 846008, at *15 (fact that fee sought is less than the lodestar suggests fairness of award); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007); *LCD II*, 2013 WL 149692, at *1.

### C.     Class Counsel Are Entitled to Reimbursement of Their Reasonable Litigation Expenses

Class Counsel also request reimbursement of litigation costs and expenses they incurred on behalf of the Class in the amount of $1,060,308.30. Lebsock Decl. ¶ 91. Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are

---

[8] This is the difference between Class Counsel's total lodestar in the case to date of $41,876,345.50 and the previously awarded fees of $9,000,000.

1    reasonable, necessary and directly related to the prosecution of the Action. *Vincent v. Hughes*

2    *Air West*, 557 F.2d 759, 769 (9th Cir. 1977); *OmniVision*, 559 F. Supp. 2d at 1048; *see also* 1

3    Alba Conte, *Attorney Fee Awards* § 2.19 (3d ed. 2004). Here, Class Counsel's expenses are

4    detailed in the Lebsock Declaration and exhibits. Lebsock Decl. ¶¶ 91-93. These expenses were

5    reasonable and necessary for the prosecution of this action and are customarily approved by

6    courts as proper litigation expenses.

7          **D.**      **Payments to the Class Representatives Are Appropriate**

8          Courts often approve incentive awards to class representatives for their service to the Class.

9    *See, e.g.*, *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards

10   are intended to compensate class representatives for work done on behalf of the Class, to make up

11   for financial or reputational risk undertaken in bringing the action, and to recognize their

12   willingness to act as private attorneys general. *Rodriguez*, 563 F.3d at 958-59. Plaintiffs seek an

13   award of $2,500 for the Class Representative that did not previously receive an award in the

14   earlier round of settlements. This modest award is well within the amounts Ninth Circuit courts

15   find acceptable. *See, e.g.*, *Online DVD*, 2015 WL 846008, at *8; *In re McKesson HBOC, Inc.*

16   *ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005); *In re Sorbates Direct Purchaser*

17   *Antitrust Litig.*, No. 99-1358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002).

18         Here, the Class Representative expended substantial time and effort as a named plaintiff.

19   Among other things, she collected responsive documents and consulted with Class Counsel

20   regarding litigation strategy, settlement negotiations, and other matters. Lebsock Decl. ¶¶ 94-97.

21   In light of the benefits conferred by the settlements reached in this case, the important role of the

22   Class Representative should be acknowledged with a reasonable payment to compensate her for

23   her time and expenses associated with actively participating in this litigation.

24   **IV.**    **CONCLUSION**

25         For the foregoing reasons, this Court should award $14,416,664.31 in attorneys' fees, or

26   30% of the Net Settlement Fund. The Court should also permit the payment of litigation expenses

27   in the amount of $1,060,308.30, and provide for an incentive award to the Class Representative

28   in the amount of $2,500.00.

1    Dated: August 10, 2018                        Respectfully submitted,

2    /s/ *Adam J. Zapala*                           /s/ *Christopher L. Lebsock*
     Adam J. Zapala (245748)                        Michael D. Hausfeld
3    azapala@cpmlegal.com                           mhausfeld@hausfeld.com
     Elizabeth Castillo (280502)                    Michaela Spero (310070)
4    ecastillo@cpmlegal.com                         mspero@hausfeld.com
     **COTCHETT, PITRE & McCARTHY**                 **HAUSFELD LLP**
5    San Francisco Airport Office Center            1700 K Street, Suite 650
     840 Malcolm Road, Suite 200                    Washington, D.C. 20006
6    Burlingame, CA 94010                           Telephone: (202) 540-7200
     Telephone: (650) 697-6000                      Facsimile: (202) 540-7201
7    Facsimile: (650) 697-0577

8                                                   Michael P. Lehmann (77152)
                                                    mlehmann@hausfeld.com
9                                                   Christopher Lebsock (184546)
                                                    clebsock@hausfeld.com
10                                                  Seth R. Gassman (311702)
                                                    sgassman@hausfeld.com
11                                                  **HAUSFELD LLP**
                                                    600 Montgomery Street, Suite 3200
12                                                  San Francisco, CA 94111
                                                    Telephone: (415) 633-1908
13                                                  Facsimile: (415) 358-4980

14                                                  *Interim Co-Lead Counsel for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28