IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 07-cv-05634-CRB<br><br>**ORDER GRANTING MOTION FOR FEES** |

Now pending is Plaintiffs' Fees Motion ("Fees Mot. II") (dkt. 1227), filed in connection with the Motion for Final Approval of the settlements between Plaintiffs and the "Settling Defendants" (Philippine Airlines, Inc., Air New Zealand Limited, China Airlines, Ltd., and EVA Airways Corporation), see Mot. for Final Approval (dkt. 1234).[1] The Court preliminarily approved these settlements on May 16, 2018. See Order Granting Prelim. Approval (dkt. 1161). At the motion hearing held on Friday, September 14, 2018, the Court found the settlements fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2). The Court also granted fees and costs. The Court issues this Order to explain in greater detail its rulings on two particular issues: first, the amount of fees and expenses, and second, the objections and opt-outs.

**1.   Fee Motion**

For this round of settlements, the Settling Defendants created a Settlement Fund of

---

[1] The only Defendant that has not settled in this case is All Nippon Airways Co., Ltd. On May 25, 2015, the Court granted final approval of settlements with Societe Air France, Cathay Pacific Airways Limited, Japan Airlines International Company, Ltd., Malaysian Airline System Berhad, Qantas Airways Limited, Singapore Airlines Limited, Thai Airways International Public Co., Ltd., and Vietnam Airlines Corporation. See Order Entering Final Judgment (dkt. 1013) at 1, 4.

1    $50,650,000.  Mot. for Final Approval at 1.  From the Fund, Plaintiffs seek:

2    • $14,416,664.31 in attorneys' fees, Supp. Lebsock Decl. (dkt. 1242) ¶ 3;

3    • $1,060,308.30 in expenses, id. ¶ 4;

4    • $2,500 for one Class Representative; Fees Mot. II at 1; and

5    • $1,531,644 for costs associated with sending notice and administering the

6    settlements.  See id. at 2 n.5.

7    At the motion hearing, the Court awarded Plaintiffs $11,038,071.51 in attorneys'

8    fees, $145,370.21 in expenses, $2,500 for the Class Representative, and $1,531,644 for

9    costs associated with sending notice.  The Court's reasoning is as follows.

10   As an initial matter, the Court finds Plaintiffs' request of $1,060,308.30 in expenses

11   to be inappropriate.  See Supp. Lebsock Decl. ¶ 6.  Instead, for reasons discussed below,

12   the Court will grant Plaintiffs $145,370.21 for reimbursement of expenses.  Then, to

13   calculate the net Settlement Fund, the Court subtracts the various expenses from the gross

14   Settlement Fund.  The Court subtracts $145,370.21 in expenses, $1,531,644 for costs

15   associated with sending notice, and $2,500 for the individual award to the Class

16   Representative, leaving $48,970,485.79 for the net Settlement Fund.  See id. ¶ 4.  Since the

17   last round of settlements resulted in a net Settlement Fund of $31,181,800.27, the total net

18   Settlement Fund for both rounds of settlements is $80,152,286.06.  See id.; May 26, 2015

19   Order Granting Settlement at 4.  Twenty-five percent of the total net Settlement is

20   approximately  $20,038,071.51.  See May 26, 2015 Order Granting Settlement at 4.

21   Because the Court has already granted Plaintiffs $9,000,000 in attorneys' fees in the last

22   round of settlements, the Court will grant $11,038,071.51 in attorneys' fees now.  See id.

23                             **a.    Expenses**

24   Plaintiffs' requested expenses include (1) $38,426.02 in out-of-pocket incurred by

25   all Plaintiffs' counsel (including Co-Lead Class Counsel and Supporting Counsel) between

26   February 21, 2015 and May 16, 2018; and (2) $1,021,882.28 in Litigation Fund expenses

27   that were incurred in February 2015 and May 2015, but were not included in the last round

28   of settlements.  See id. at ¶ 6.  While the Court understands that some of the out-of-pocket

1   expenses necessarily include expenses incurred before the previous Fee Motion was filed,
2   because calculating those required retrieving expense reports from various law firms,
3   Plaintiffs should have been able to include the February 27, 2015 invoice from Nathan
4   Associates Inc. for $914,938.09 in the previous Fees Motion, filed on Apr. 7, 2015.  See
5   Fees Mot. for Settlements Granted on May 26, 2015 ("Fees Mot. I") (dkt. 986).  As the
6   Court previously noted:

> The far larger of the two additional invoices was dated February 27, 2015, and there is no apparent reason why Plaintiffs could not have included it in their [April 7, 2015] request.  See [Supplemental Williams Decl. (dkt. 1003),] Ex. A (2/27/15 invoice from Nathan Associates Inc. for $914,938.09).

See May 26, 2015 Order Granting Settlement at 3 n.3.  Because  Plaintiffs could have reasonably requested that the invoice be reimbursed in the first round of settlements, the Court will not allow Plaintiffs to recover now.  See id.

Plaintiffs hypothesize that the $3,000,000 set aside for "future expenses" in the previous round of settlement will most likely be used before the trial date because Plaintiffs anticipate using at least $1,000,000 in additional Litigation Fund expenses between now and the conclusion of the trial involving ANA.  See Supp. Lebsock Decl. ¶ 11.  Thus, Plaintiffs urge the Court to reimburse the previous Nathan Associates Inc. invoice in lieu of asking the Court for additional funds for "future expenses."  See id.  ¶ 12.  However, in making this request, Plaintiffs failed to separate the expense incurred before the previous round of settlements from the expenses incurred after the previous round of settlements.  See generally id.  If Plaintiffs, at the very minimum, disregarded the February 27, 2015 from the "future expenses" fund, Plaintiffs would still have $1,147,324.60 in the Litigation Fund (this is the sum of the current balance in the Litigation Fund, $232,386.51, and the February 27, 2015 invoice, $914,938.09).  See id. ¶¶ 6 n.1, 12.  Even considering the most recent Nathan Associate Inc. invoice from July 30, 2018, the Litigation Fund

3

would have $717,211.94.[2]  Accordingly, the Court will grant expense reimbursement of $145,370.21, which includes (1) the $38,429.02 in out-of-pocket expenses and (2) the $106,944.19 for the May 8, 2015 Epid invoice.  See Supp. Lebsock Decl. ¶¶ 6, 6 n.1.

### b. Attorneys' Fees Award

In the Ninth Circuit, the benchmark when using the percentage of recovery method for calculating attorneys' fees is twenty-five percent.  See Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach.").  Here, after considering (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by Plaintiffs; and (5) awards made in similar cases, the Court considers 25 percent of the total net Settlement Fund appropriate.[3]  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002).  As Plaintiffs have indicated that all funds recovered will be distributed to Class Members at the conclusion of the case against all Defendants, the Court believes that it is reasonable to evaluate attorneys' fees using a combination of the funds from the two rounds of Settlements.  See Apr. 27, 2018 Mot. for Preliminary Approval Hearing Tr. (dkt. 1149) at 5:6–9.  In the first round of settlements, Plaintiffs recovered a gross Settlement Fund of $39,502,000.  See May 26, 2015 Order Granting Settlement at 3.  After expenses, notice costs, and incentive payments to Class Representatives were deducted, the net Settlement Fund equaled $31,181,800.27.  See id. at 4.  In this round of settlements, Plaintiffs recovered $50,650,000 from Settling Defendants.  See Fees Mot. II at 1.  Here, after deducting the expenses, notice costs, and the incentive payment, the net Settlement Fund contains $48,970,485.79.  See Supp. Lebsock Decl. ¶ 4.  Combining the two numbers, the total gross Settlement Fund is

---

[2] The Nathan Associates Inc. invoice from July 30, 2018 equaled $430,112.66.  See Lebsock Decl. ¶ 11.
[3] This calculation includes the $31,181,800.27 from the net Settlement Fund of the first round of settlements and the $48,970,485.79 from the net Settlement Fund of the present round of settlements.  See May 26, 2015 Order Granting Settlement at 4.

$90,152,000 and the total net Settlement Fund is $80,152,286.06.  See id.; May 26, 2015 Order Granting Settlement at 3–4.

Plaintiffs' Counsel have dedicated a significant amount of time in this 11-year litigation.  See Fees Mot. II at 2–3.  Plaintiffs prevailed through two rounds of numerous defendants' motions to dismiss (one prompting a 47-page order from the Court), a grueling discovery process (involving 62 depositions and almost 7 million pages in documents), and summary judgment (requiring a 60 page omnibus opposition brief and resulting in an Order keeping the majority of claims in the case), among other things.  Id.  Plaintiffs have also succeeded in obtaining a substantial recovery for the class in the first round of settlements.  Id. at 3.

However, the Court already considered most of these tasks in awarding Plaintiffs thirty percent of the net Settlement Fund in the first round of settlements.  See May 26, 2015 Order at 3–4.  Since the first round of settlements, Plaintiffs have defended this Court's denial of summary judgment in the Ninth Circuit after ANA sought interlocutory appeal, briefed and argued for final approval of the first round of settlements, and engaged in settlement discussions and mediations with the current Settling Defendants.  See Fees Mot. II at 2–3.  While this work was difficult and important, especially considering that success on the interlocutory appeal was crucial to the success of the case, it required far fewer hours than the work that came before it.  See Fees Mot. I at 1; Fees Mot. II at 1.  Before the first round of settlements, Plaintiffs spent 98,364.36 hours on the litigation.  See Fees Mot. I at 1.  Since then, Plaintiffs' Counsel have only performed an additional 5,539.55 hours of work.  See Fees Mot. II at 1.  Further, unlike the period before the first round of settlements, when Plaintiffs had to contribute $2,252,790, collectively, to the Litigation Fund, and face the possibility of incurring a huge loss if settlements did not occur or if trial ended unfavorably, Plaintiffs have not had to contribute any additional funds since the Court granted $3,000,000 "for future expenses" during the last round of settlements.  See Williams Decl. in Support of Plaintiffs' Fees Mot. I (dkt. 987-4), Ex. 4 at 2; May 26, 2015 Order Granting Settlement at 3.

Additionally, empirical data have shown that courts are less willing to go above the twenty-five percent benchmark when using the percentage of recovery method in larger settlements. See Rodman v. Safeway Inc., No. 11–CV–03003–JST, 2018 WL 4030558, at *5 (N.D. Cal. Aug. 23, 2018) (finding that in a study of 688 reported and unreported federal class action settlements between 2006 and 2007, the median percentage of attorneys' fees granted for settlements between $750,000 to $1,750,000 was 30 percent, while the median percentage of attorneys' fees granted for settlements between $72,000,000 to $6,000,000,000 was only 19 percent) (citing Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 837–39 (2010)). Since the total gross Settlement Fund has increased from $39,502,000 to $90,152,000, the Court finds that the benchmark twenty-five percent of the total net Settlement Fund is appropriate. While a twenty-five percent award for the combined settlement has the effect of decreasing the percentage awarded in the first settlement, the court, in its judgment, looks at the overall settlement in determining the appropriate award. The Court concludes that Plaintiffs are entitled to recover twenty-five percent of the total net Settlement Fund of $80,152,286.06,[4] which equals approximately $20,038,071.51. Accordingly, since the Court has previously granted Plaintiffs $9,000,000, see May 26, 2015 Order Granting Settlement at 4, the Court now GRANTS attorneys' fees in the amount of $11,038,071.51.

Moreover, the lodestar amount for the time period between the first round of settlements and the second round of settlements is only $3,276,756.75. See Fees Mot. I at 13; Fees Mot. II at 1.[5] Thus, by granting $11,038,071.51, the Court is still granting more

---

[4] The total gross Settlement Fund from both rounds of settlements is $90,152,000. See May 26, 2015 Order Granting Settlement at 2; Fees Mot. II at 1. After deducting fees, the net Settlement Fund from the first round of settlements is $31,181,800.27, see May 26, 2015 Order Granting Settlement at 4, and the net Settlement Fund from the second round of settlements is $48,970,485.79. The total net Settlement Fund is the sum of those two numbers.

[5] Plaintiffs stated in the first round of settlements that their lodestar was $38,685,058.25. See Fees Mot. I at 13. In this round of settlements, while Plaintiffs do not present what their lodestar is for the extra 5,539.55 hours spent. See generally Fees Mot. II. However, Plaintiffs do state that their corresponding lodestar for the total 103,903.91 hours invested

6

than 330% of the lodestar amount.  See Fees Mot. I at 13; Fees Mot. II at 1.

### 2. Objection and Opt-out

There has only been one objection and one-opt out, despite a class of hundreds of thousands.  Mot. for Final Approval at 1.  This alone suggests that the settlements are fair.  See In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members") (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004)); see also In re Volkwagen "Clean Diesel" Mktg., Sales Practice, and Prods. Liab. Litig., 229 F.Supp.3d 1052, 1068 (N.D. Cal. 2017) (finding that low opt-out and objection rates tend to mean that the reaction of the Class Members are generally favorable, which supports final approval of the Settlement).

As of August 29, 2018, the Claims Administrator received only one request for exclusion from potential Class Members.  See Mot. for Final Approval at 1; Botzet Decl. (dkt. 1234–3) ¶ 11.  Elaine K. Gano, who filed a claim in connection with the previous settlement, requested to exclude herself from this round of settlements on July 26, 2018.  Mot. for Final Approval at 1, 11.  This low opt-out rate strongly suggests that almost all Class Members are satisfied with the Settlement.  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004)) (finding that class members generally had positive reactions where there were only 500 opt-outs out of the approximately 90,000 notified class members); Chun–Hoon v. McKee Foods Corp., 716 F.Supp.2d 848, 852 (N.D. Cal. 2010) (granting final approval of settlement where 16 out of 329 class members requested exclusion because the absence of a negative reaction strongly supports settlement).

Additionally, the sole objection is a one page objection filed by Bruce Wheatley,

---

is $41,961,815.00. See id. at 1.  Accordingly, the Court calculates the lodestar for the time period after the previous round of settlement by subtracting the lodestar presented in the previous round of settlements from the total lodestar given, which equals $3,276,756.75.  See id.; Fees Mot. I at 13.

pro per.  See Wheatley Objections (dkt. 1203) at 1.  The Court overruled Wheatley's objections at the motion hearing.  The Court's reasoning is as follows.

First, Wheatley states that this case does not present any valid claims because each potential passenger had the ultimate power to accept or decline the ticket price as presented by the respective airline.  See id.  Specifically, Wheatley believes that because passengers "were willing and did readily accept the prices quoted by the defendant airlines," these passengers do not have "good conscious claims about the price they willingly paid for their tickets."  See id.  But to establish a criminal violation of Section 1 of the Sherman Act, the victim does not need to have knowledge of the conspiracy.  See 15 U.S.C. § 1.  The Court therefore rejects Wheatley's argument.

Second, Wheatley raises concerns that the case was brought to create "multi-million dollar legal fees."  See Wheatley Objections at 1.  As discussed above, Plaintiffs have prevailed after 11years of contentious litigation.  See Mot. for Final Approval at 12.  Although Plaintiffs' Counsel will receive "multi-million dollar legal fees" associated with the litigation, this alone does not warrant denial of the settlement.  The Court has granted Plaintiffs' Counsel attorneys' fees which properly reflect the quality and amount of work performed for this case.

Wheatley's objections also fail on procedural grounds.  When approving the Notice Program, the Court stated that any member of a Settlement Class who objects must "comply with the requirements set forth in the long form notice provided on the [Settlement Website]."  See June 1, 2018 Order Granting Approval of Notice Program (dkt. 1172) ¶ 5.  The long form notice explicitly includes a requirement that objectors must include documents that show proof of membership in the Settlement Class.  See Mot. for Final Approval at 11.  Despite this, Wheatley fails to attach any documents showing proof of his purchases of transpacific passenger air transportation.  See id.

Accordingly, finding the settlements fair, reasonable, and adequate, and rejecting //

the objections, the Court GRANTS fees in the amount explained above.

**IT IS SO ORDERED.**

Dated: September 24, 2018



CHARLES R. BREYER
United States District Judge