HAUSFELD

MICHAEL P. LEHMANN
Partner

600 Montgomery Street
Suite 3200
San Francisco, CA 94111

415-314-4737 Direct
415-633-1908 Main
415-358-4980 Fax

mlehmann@hausfeld.com

November 5, 2018

**VIA ELECTRONIC MAIL**

Charles E. Enloe
Office of Litigation and Enforcement
Office of the General Counsel
U.S. Department of Transportation
1200 New Jersey Avenue SE, Room W94-205
Washington, DC 20590
charles.enloe@dot.gov

> Re:   *Request for Declaration from the U.S. Department of Transportation Pursuant to 49 CRF Part 9*

Dear Mr. Enloe:

The undersigned counsel represent the certified Classes in *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-5634 CRB (N.D. Cal.) ("*Transpacific*"). We write in response to the request for a declaration submitted on October 29, 2018 by the last remaining defendant in that case—All Nippon Airways ("ANA")—to the Department of Transportation ("DOT") concerning issues that allegedly need to be resolved with respect to the application of the filed rate doctrine in the above entitled litigation.

To begin with, ANA's request for a declaration is unconscionably tardy. Discovery in *Transpacific* has been closed since January 31, 2014. A trial is scheduled to commence on March 4, 2019. The opinion in *Wortman v. All Nippon Airways*, 854 F.3d 606, 609 (9th Cir. 2017) ("*Wortman*") to which ANA cites, was issued on April 14, 2017. A petition for *certiorari* was denied on March 19, 2018. *All Nippon Airways v. Wortman*, 138 S.Ct. 1281 (2018). Plaintiffs in *Transpacific* would be prejudiced if DOT issued some declaration now without any opportunity for cross-examination.

Moreover, ANA is asking for guidance on issues not in dispute. It asks how DOT treated Category C countries like Japan or what the filing regime was for fuel surcharges. But the Ninth Circuit in *Wortman* said that "[a]irlines headquartered in or traveling between the United States and a Category C country must file all fares." 854 F.3d at 609. It further said that "the parties do not contest that the DOT had authority to regulate fuel surcharges, but only whether it actually did so." *Id*. at 615. It also noted that "[t]he record reflects that some of the airlines involved in this appeal did, or at least attempted to, file fuel surcharges during the class period." *Id*. The question for the Ninth Circuit was not whether DOT required surcharges to be filed, but whether the "agency lacks the ability to 'effectively monitor' fuel surcharges." *Id*. at 616. It concluded: "[i]n the context of fuel surcharges, the DOT may have intended to exercise some regulatory authority,

insofar as it required surcharges to be filed….However, the evidence on record created a genuine issue of material fact as to whether the DOT retained the practical ability to do so. Inability to regulate, just as much as willful abdication, constitutes a 'failure by [an agency] to exercise its statutory authority.' In accordance with the DOT's expression of its inability to regulate fuel surcharges, we decline to apply the filed rate doctrine to preclude Plaintiffs' claims regarding those surcharges." *Id*. None of ANA's "nine points" contained in its request squarely addresses this issue.

Moreover, 49 C.F.R. §9.15 only permits submission of a declaration by an employee of DOT "concerning facts within the employee's personal knowledge with regard to matters arising out of the employee's official duties." Plaintiffs respectfully submit that it is unlikely that any employee now at the agency would have personal knowledge of its policies during the period from February 1, 2005 through December 31, 2007, when ANA is alleged to have participated in a conspiracy to fix fuel surcharges on passenger flights from the United States to Japan.

Further, Section 9.15(a)(5) requires the requesting party to provide "[a] certification with support, that the information desired is not reasonably available from other sources, including Departmental documents." And yet all of the documents upon which the Ninth Circuit relied to reach its correct decision were official policy statements made by the DOT itself. Moreover, since the request was made, Plaintiffs have filed on the public docket in *Transpacific* a declaration and expert report by Paul Gretch, who was in charge of the DOT's Office of International Aviation from 1986 to 2016 and who was one of the chief architects of the United States' "Open Skies" policy, and who oversaw all international negotiations concerning international air passenger transportation, resulting in over 100 "Open Skies" agreements. A copy of that declaration is attached hereto for your convenience. Mr. Gretch has personal knowledge of all of the issues raised by ANA in its request and indeed: (a) wrote a pivotal letter on October 14, 2004 advising airlines that they were then permitted to impose separate fuel surcharges, which is attached as Exhibit B to his declaration; and (b) "was involved in reviewing and approving" the DOT statement of policy (published in 69 Fed. Reg. 65676 (Nov. 15, 2004)) stating that airlines could not advertise fuel surcharges as "government-approved" because DOT "cannot effectively monitor" them (Gretch Decl., ¶ 34). He will be testifying (and subject to cross-examination) at the upcoming trial in *Transpacific*. Consequently, the need for a declaration by a current employee of DOT on these topics no longer exists.

For all of the foregoing reasons, it is respectfully requested that ANA's request for a declaration be denied.

Sincerely,

Michael P. Lehmann
Hausfeld LLP

Adam J. Zapala
Cotchett, Pitre & McCarthy, LLP

HAUSFELD

PAGE 3
November 5, 2018

cc:     Gary J. Malone (gmalone@constantinecannon.com)

BERLIN  BOSTON  BRUSSELS  LONDON  NEW YORK  PHILADELPHIA  SAN FRANCISCO  WASHINGTON, DC     www.hausfeld.com