

Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

**VIA OVERNIGHT COURIER**

January 10, 2021

Honorable Charles R. Breyer
Senior District Judge
United States District Court
    for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

*In re Transpacific Passenger Air Transportation Antitrust Litigation*,
Civil Action No. 3:07-CV-05634-CRB, MDL No. 1913 (N.D. Cal.)

Objection of Financial Recovery Services, LLC
to
Plaintiffs' Motion for Authorization to Distribute Net Settlement Funds

Dear Judge Breyer:

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, FRS, on behalf of 82 of its clients, objects to Plaintiffs' Motion for Authorization to Distribute Net Settlement Funds, Doc. 1322 ("Pls.' Mot.").[1] Specifically, and as set forth in FRS's Initial Letter, FRS's objections are as follows:

---

[1] Settlement Class Counsel have conceded that the appropriate time for FRS to object to the treatment of its clients was when the motion for distribution was filed:

> [I]t is 'common practice' for those who seek to object to a proposed distribution of settlement funds to do so in response to a motion for distribution. … Here, [Settlement] Class Counsel have not moved for distribution of the settlements yet. They intend to do so after Rust has completed its audit and provided a final claim determination and calculation, which Class Counsel anticipate occurring in or around November 2020."

Settlement Class Counsel's September 21, 2020 letter to the Court ("Settlement Class Counsel's Letter") at 3 (quoting FRS's September 10, 2020 letter to the Court ("FRS's Initial Letter")). *Accord* Fed. R. Civ. P. 23(d)(1) (granting district court authority to "issue orders that," among other things, "protect class members" by allowing them an "opportunity to … intervene … or to otherwise come into the action"); *see, e.g.*, *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 499 (3d Cir. 1982) ("[P]urported members of the



FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
January 10, 2021
Page 2

- Even though all Settlement Funds have been in *custodia legis* and on deposit in QSF escrow accounts beginning in 2014, and even though the administration of Phase 2 and Phase 3 proofs of claim remained ongoing until the end of December 2021, proofs of claim filed after a Phase 1 or the Phase 2 claims filing deadlines will not participate in the recoveries provided by those Settlements; and

- Even though at least certain Settlement Class Members did not receive deficiency notices in connection with their Phase 2 and certain Phase 1 proofs of claim, and, therefore, were not provided with an opportunity to cure those deficiencies, their responses to Phase 3 deficiency notices, which have been applied to cure their Phase 3 proofs of claim, are not being applied to cure identical deficiencies in their Phase 1 and Phase 2 proofs of claim.

FRS does not dispute that the proofs of claim and deficiency cures that are the subject of this objection (the "Excluded Submissions") were submitted after the Phase 1 and Phase 2 deadlines. However, and as explained below, that fact alone is irrelevant to whether, under the circumstances of the Settlements, they should be included in those Phases. Of particular significance to that determination is that *none* of the Excluded Submissions were filed *after* Phase 3 deadlines, and, of equal importance, because the Excluded Submissions are included in Phase 3, there can be no dispute that the data that FRS submitted establish that each of the affected claimants is a bona fide Settlement Class Member that is entitled to the relief requested herein.

---

class" need not intervene in the class proceeding to "request … that the court interpret the class order so as to include [them] and on that basis direct the payment of [their] claims."); *Knowles v. Butz*, 358 F. Supp. 228, 230 (N.D. Cal. 1973) ("There is, therefore, no need for these new class members to formally intervene."); 3 *Newberg on Class Actions* § 9:37 (5th ed. Dec. 2021) (in order to ascertain its rights, a class member need not "go[] the full length of becoming a party through intervention"). All terms with initial capitalization that are not defined herein have the meanings ascribed to them in FRS's Initial Letter. To avoid redundancy, FRS's Initial Letter and the September 24, 2020 letter to the Court that FRS submitted ("FRS's Reply Letter") in response to Settlement Class Counsel's Letter are incorporated by reference as if fully set forth herein. Because they were not docketed, they are attached. FRS respectfully requests that this objection be entered on the docket.



Honorable Charles R. Breyer
January 10, 2021
Page 3

Although Settlement Class Counsel attempt to justify their inequitable treatment of the Excluded Submissions and of all other untimely Phase 1 and Phase 2 proofs of claim and deficiency cures that were filed on or before Phase 3 deadlines (collectively, the "Excluded Phase 1 & 2 Submissions") by asserting that the three Phases are separate, the facts establish that all three Phases were administered together. For example:

- Rust, the claims administrator, did not begin its "audit" process for *any* claims – Rust did not audit any claim submitted in any Phase – until September 11, 2020, which was *after* the Phase 3 proof of claim deadline. *See* Decl. Joel K. Botzet re: Claims Admin. & Distrib. Net Settle. Fund, Doc. 1322-1 ("Botzet Decl.") at ¶¶12-19 (6:16-8:21). In other words, claims submitted in all three Phases were "audited" together, not individually in each Phase. As a result, while Rust *accepted* during Phase 3 *audit* responses submitted in connection with Phase 1 and Phase 2 claims, Rust *rejected deficiency cures* for Phase 1 and Phase 2 claims that were submitted in connection with Phase 3 claims and that also cured Phase 1 or Phase 2 deficiencies. *Compare id.* and *id.* at ¶9 (5:9-12) ("To be *equitable* to all Class Members that timely responded [to Requests for Information], responses postmarked after the 90-day deadline were not considered for correcting a deficient Proof of Claim form.") (emphasis added).

- It is not surprising, therefore, that, rather than provide separate results for each Phase, the "Final Claim Totals" that Rust reported to the Court are *cumulative* for all three Phases together. *See* Botzet Decl. at ¶21 (9:5-21) (final notices were sent to 66,395 claimants); ¶22 (9:22-10:4) (4,602 class members submitted ineligible claims because, *inter alia*, "[n]o timely response was received for requests for additional information"); ¶23 (10:5-9) (61,768 class members are authorized for payment for a total of 29,929,759 qualifying tickets).

- But, most importantly, Settlement Class Counsel have conducted *no* distributions for either Phase 1 or Phase 2; rather, all three Phases will be distributed *together* in one single distribution. *See, e.g.*, Pls.' Mot. at 1:7-21.[2]

---

[2] *Compare, e.g.*, *In re Automotive Parts Antitrust Litig.*, Master File No. 12-md-02311 (E.D. Mich.). In the Dealership Actions of the *Automotive Parts* MDL, each of the four rounds of settlements had a separate claim process and separate corresponding distribution; a proof of claim submitted in an earlier round either could be relied upon in later rounds or could be updated, but a claim submitted in a later settlement



Honorable Charles R. Breyer
January 10, 2021
Page 4

It would appear, then, that the only claims administration components that *were* done separately for each Phase were the setting of deadlines for claim filing and deficiency cures. Under Settlement Class Counsel's piecemeal approach, any Phase 1 deficiency cures that were submitted to Rust 91 days after March 7, 2016, the date on which Rust mailed Phase 1 "Requests for Information," *see* Botzet Decl. at ¶8 (4:21-5:5), have been ignored for the last 5½ years even though Phase 2 and Phase 3 deficiency cures were still being processed, *see id.* at ¶9 ("responses postmarked after the 90-day deadline were not considered for correcting a deficient Proof of Claim form."). Those interim deadlines are thus arbitrary because they provided no benefit to the Settlement Classes—that is, because "auditing" for *all* claims was performed cumulatively *after* the Phase 3 deadline, and because, for example, no separate Phase 1 distribution was conducted in 2018, Phase 1 Settlement Class Members are still waiting for their distributions and, therefore, are no better off. Those arbitrary deadlines had no purpose and serve only to create artificial conflict among members of the Settlement Classes.

Settlement Class Counsel also argue, contrary to the law in this Circuit and everywhere else in the U.S., that the Excluded Phase 1 & 2 Submissions were rejected because "deadlines are deadlines":

> [T]here have been longstanding Court-ordered deadlines for claims in this case. The class has been on notice of them for years. Other putative class members have also been told that *deadlines are deadlines*.

---

round was not included in an earlier round that had not yet distributed. In the End-Payor Actions of that MDL, in contrast, there was only one claim process conducted for all four rounds of settlement together even though claim forms were disseminated in connection with earlier settlement rounds and settlement proceeds were deposited into escrow.



Honorable Charles R. Breyer
January 10, 2021
Page 5

FRS Initial Letter, Ex. 6 at 1 (emphasis added).[3] That "per se" position has not been the law in this Circuit since the Ninth Circuit's opinion in *Pincay v. Andrews*, in which the en banc majority instructed district courts to consider deadlines "within the context of the particular case," and cautioned that, "the correct approach is to avoid any per se rule." 389 F.3d 853, 859-860 (9th Cir. 2004) (en banc). Nor has it been the law anywhere in the U.S. since the Supreme Court's landmark decision in *Pioneer*.[4] Although the Excluded Phase 1 & 2 Submissions were submitted after interim deadlines, "all of the relevant circumstances" here –*no distributions* were conducted for Phases 1 and 2; *all* Excluded Phase 1 & 2 Submissions were filed *before* the "final" Phase 3 deadlines; *no* legally cognizable prejudice to timely claimants will result from the inclusion of the Excluded Phase 1 & 2 Submissions;[5] and the delay in conducting the cumulative distribution for

---

[3] The same reasoning was provided by Settlement Class Counsel on October 17, 2019. *See id.*, Ex. 2 at 1 ("The deadlines to make claims for the various rounds of settlements were established and approved by the Court and have been in effect for a long time now.").

[4] *Pioneer Inv. Svces. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 391-95 (1993) ("[W]e conclude that the determination [of excusable neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."). *Accord, e.g.*, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 323 (3d Cir. 2001) ("We cannot agree with the District Court that Sambolin should be excluded from the settlement class simply because he failed to meet the May 15, 1997 registration deadline.").

[5] In connection with allocating and distributing non-reversionary common funds like those provided by the Settlements—that is, where the defendant's liability is capped and every dollar distributed to one class member is one dollar less available to be distributed to other class members, the reduction in recovery for timely claimants that would be caused by allowing untimely claimants to participate is not, and, as far as FRS has been able to determine, never has been, held to be legally cognizable prejudice. As the court held in *Authentidate*, for example:

> Lead Plaintiff argues that the inclusion of the late claims would prejudice those who filed timely claims by reducing the pro-rata distribution of the Net Settlement Fund from 40% to 24% of each Authorized Claimant's Recognized Claim. That prejudice does not flow from Late Claimants' untimely filing of their claims; it flows from the conceded fact that the Late Claimants suffered substantial compensable losses. Such prejudice resulting from payout reductions attributable to a more equitable distribution among a larger group of injured parties is not a form of prejudice that warrants denial of recovery to the Late Claimants under the circumstances of this case.



Honorable Charles R. Breyer
January 10, 2021
Page 6

all three Phases is *not* attributable to the Excluded Phase 1 & 2 Submissions – both law and equity require the Excluded Phase 1 & 2 Submissions to be included in that cumulative distribution.

Settlement Class Counsel's rejection of Excluded Phase 1 & 2 Submissions also treats Settlement Class Members inequitably relative to each other, and, therefore, violates recently amended Rule 23, as well as precedent prior to the 2018 amendments to that Rule. *See* Fed. R. Civ. P. 23(e)(2)(D) (effective Dec. 1, 2018).[6] It is indisputable here that the substantive claims

---

*In re Authentidate Hldg. Corp. Sec. Litig.*, Master File No. 05 Civ. 5323, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013); *accord, e.g.*, *Orthopedic Bone Screw*, 246 F.3d 315 at 324 ("By excluding [the late claimant] and other similarly situated late registrants from the class, the timely registrants would receive what is essentially a "windfall," comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants. As noted in *Cendant PRIDES II*, the loss of a windfall is not prejudicial.") (citing *In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 184 (3d Cir. 2000) (reversing as "not act[ing] in the sound exercise of its discretion" the district court's misapplication of the *Pioneer* factors to a claimed mailroom misadventure)); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 297 F.R.D. 90, 96 (S.D.N.Y. 2013) (Sweet, J.) ("[C]lass members are not prejudiced since they are obligated to share a fixed recovery with other equally entitled claimants and timely-filed claimants have no justifiable expectation of any particular payout."); *CME Grp. Inc. v. Chicago Bd. Op. Exch., Inc.*, CIV.A. 2369, 2009 WL 1856693, at *3 (Del. Ch. June 25, 2009) (Noble, V.C.) ("Even though other Group A Members' distributions will be diminished somewhat ..., the additional proceeds from the settlement pool they would receive if late filers were excluded is simply a windfall. Accordingly, they suffer no prejudice"); *In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp.2d 144, 156 (D.N.J. 2007) ("The Court cannot find prejudice merely because, contrary to the facts of this case and the law of this Circuit, the parties assumed qualified late claimants ... would not have access to the settlement."); *Dahingo v. Royal Carib. Cruises, Ltd.*, 312 F. Supp.2d 440, 446 (S.D.N.Y. 2004) (Allowing late-filed claims to participate in a settlement does not prejudice those who filed timely because "the plaintiffs who had filed timely claims had no justifiable expectation in any particular pay-out."); *In re Cendant Corp. PRIDES Litig.*, 189 F.R.D. 321, 324-25 (D.N.J. 1999) (in claims made settlement, no prejudice to defendant caused by extending claims filing date), *aff'd*, 233 F.3d 188, 196-97 (3d Cir. 2000); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 844-45 (E.D.N.Y. 1995) (in claims made settlement, no prejudice to defendants caused by allowing valid late claims); *In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988) (Weinstein, J.) (Because "no payments have yet been made to any claimants, earlier estimates of possible payment amounts did not confer on the early claimants any right to those particular amounts.").

[6] *See* Fed. R. Civ. P. 23 Adv. Comm. Notes 2018 Amend., Subd. (e)(2) &¶¶ (C) & (D) ("Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims ... ."); *accord* 4 William B. Rubenstein, Newberg on Class Actions ("Newberg") §13:56 (5th ed.) (Westlaw Dec. 2021) ("A distribution of relief that favors some class



Honorable Charles R. Breyer
January 10, 2021
Page 7

asserted on behalf of Settlement Class Members that made timely submissions and those asserted on behalf of Settlement Class Members that provided the Excluded Phase 1 & 2 Submissions are identical. And it is inarguable that timely claimants have no better right to recover from a class action settlement than do untimely claimants. *See, e.g.*, *Bear Stearns*, 297 F.R.D. at 96 (timely claimants and late claimants are "equally entitled" to "share in a fixed recovery"). And as the *Elec. Carbon* court held, "the Court has an obligation not to elevate the claims of any class member over the claims of other class members, no matter how large a class member's stake in the case might be. All legitimate class members should, if equitable, be permitted to share in the settlement." 622 F. Supp.2d at 156. Contrary to Settlement Class Counsel's "equity-based" argument, therefore, Settlement Class Members that provided the Excluded Phase 1 & 2 Submissions may not, on that basis alone, be treated less favorably than Settlement Class Members that made timely submissions. *See, e.g.*, *Radcliffe v. Hernandez*, 794 Fed. Appx. 605, 607 (9th Cir. 2019) ("Rule 23's flexible standard allows for the unequal distribution of settlement funds so long as the distribution formula takes account of *legitimate considerations* and the settlement remains 'fair, reasonable, and adequate.'") (emphasis added).[7] As the court in *True* explained well-before the 2018 amendments to Rule 23, making among class members arbitrary distinctions – that is, distinctions not based on substantive differences in the nature of their claims or in sustaining them through trial – is fatal to settlement approval:

---

members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others.").

[7] *Accord Gaffney v. City of Santa Clara*, No. 18-cv-06500, 2020 WL 12182761, at *6 (N.D. Cal. Apr. 13, 2020) (Tigar, J.) ("Courts generally are wary of settlement agreements where some class members are treated differently than others.") (quotations omitted); *Elder v. Hilton Worldwide Hldgs., Inc.*, No. 16-cv-00278, 2020 WL 11762284, at *8 (N.D. Cal. Apr. 29, 2020) (Tigar, J.) (Preferential treatment raises concern when a settlement "may be trading the claims of the latter group away in order to enrich the former group.") (quotation and citations omitted).



> ("[T]he settlement here draws an arbitrary distinction among class members with identical legal claims and injuries … . This is patently unfair, and counsels against approval of the proposed settlement."

*True v. Am. Honda Motor Co.*, 749 F. Supp.2d 1052, 1069 (C.D. Cal. 2010) (rejecting settlement as not fair, reasonable and adequate because "[p]laintiffs do not suggest that those in the 'Option C' sub-group have any different legal claims than the other class members, or that they suffered any greater damages.") (citing cases), *quoted in, e.g.*, *Elder*, 2020 WL 11762284 at *8; *Gaffney*, 2020 WL 12182761, at *6.[8]

Unlike Settlement Class Counsel here, class counsel almost never attempt to treat untimely claimants less favorably than timely ones. Instead, they affirmatively recommend that courts *include* untimely claims – FRS has never encountered a circumstance in which class counsel attempted to reject untimely deficiency cure responses that were submitted while deficiency cures were still being processed – because doing so is the only way to treat all claimants equitably. A recent example in this district is provided by class counsel's recommendation that the court in the >$1 billion *LCD Indirect* settlements accept untimely claims:

> The distribution has not been delayed as a result of any late-filed claims. Moreover, those claimants, like all other claimants, have been injured as a result of the same alleged wrongful conduct. … Additionally, because all claimants are similarly situated, none of them has a better right to recover than any other claimant; in other words, because no distribution delay has been occasioned by

---

[8] *Accord Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 300-01 (M.D. Pa. 1995) ("[T]he same type of injury was purportedly sustained by all class members, and all class members have the same right of recovery against Moyer. Thus, while disparate treatment of class members may be justified by a demonstration that the favored class members have different claims or greater damages, no such demonstration has been made here.") (citation omitted); *cf. In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) ("[i]f one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement … in favor of plaintiffs whose claims comprise the set' that was more likely to succeed.") (quotations and citations omitted), *aff'd in part & rev'd in part on other grounds*, *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179 (2d Cir. 1987).



> the processing of [late] claims, the first-filed claim is no more entitled to recover or to recover more per unit than the last claim received and processed before the distribution motion is filed.

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. CV-07-5944, IPP's & Settling States' Jt. … Mot. to … Distrib., Doc. 9217, at 7:17-24 (N.D. Cal. Sep. 12, 2014). And in the *DRAM* settlements, also in this district, class counsel made a similar recommendation:

> Although the initial claims deadline was August 1, 2014, the distribution has not been delayed by the additional claims filed between August 1, 2014 and July 1, 2015, and considerations of overall fairness to the Settlement Class outweigh any prejudice to those class members who filed in the 'first wave' of claims by August 1, 2014.

*In re Dynamic Random Memory (DRAM) Antitrust Litig.*, MDL No. 1486 ("*DRAM*"), Jt. Mot. Distrib. Settle. Funds, Doc. 2273, at 11:4-17 (N.D. Cal. May 4, 2016). Even though the circumstances of the Settlements are at least as, if not more, compelling than those present in these and other settlements cited here, Settlement Class Counsel argue that rejecting Excluded Phase 1 & 2 Submissions is nevertheless "equitable" because they rejected *all* of them and thus treated *all* class members that submitted them the same way.[9] But merely applying to all Excluded Phase 1 & 2 Submissions the same inequitable treatment relative to timely claimants does not, given the years that the Settlement Funds have been on deposit and given that Phase 1 and

---

[9] *See, e.g.,* Settlement Class Counsel's Letter at 2-3 ("Rust and Class Counsel have adhered to all Court-ordered deadlines and have not deviated from the Court-ordered deadlines for *any* claimant to date. … Rust and Class Counsel remain mindful that they must take a consistent position with respect to all potential claimants so that no potential claimant is treated differently than any other. … Arbitrarily altering deadlines for some (or many) late-filers raises potential questions about fairness to all claimants if special accommodations are granted on an individualized, claimant by claimant basis outside of the distribution framework established for the class as a whole."). Settlement Class Counsel also misstate FRS's request as seeking special treatment for its clients. *See* Pls.' Mot. at 1:21-2:2. But as previously pointed out in FRS's Reply Letter (at 2-3), "while FRS may only speak on behalf of its clients, what we seek is equitable treatment for all Settlement Class Members. Any relief that the Court grants from Settlement Class Counsel's unfair treatment should be applied equally to all similarly situated Settlement Class Members."



Honorable Charles R. Breyer
January 10, 2021
Page 10

Phase 2 deficiency responses were ignored while Phase 3 deficiency cures were being processed,

justify treating Excluded Phase 1 & 2 Submissions less favorably than timely submissions.

Settlement Class Counsel's rejection of Excluded Phase 1 & 2 Submissions also ignores

their obligation to include in the distribution as many eligible class members as possible. *See,*

*e.g., In re LIBOR-Based Fin. Instr. Antitrust Litig.,* 327 F.R.D. 483, 496 (S.D.N.Y. 2018) ("The goal of

any distribution method is to get as much of the available damages remedy to class members as

possible and in as simple and expedient a manner as possible.") (quoting Newberg §12:15 (5th

ed.) (Westlaw 2018).[10] The recognition of class counsel's obligation to include in distributions as

many class members as possible is exemplified by the recommendation to the court made by

class counsel in *Bank of America*:

> GCG and Co-Lead Counsel believe that the interest of compensating as many Class
> Members as possible … would best be served by permitting the acceptance of all
> Late Claims received through August 31, 2016, a cut-off date selected so that
> finalization of this motion could occur, to the extent these Claims are otherwise
> eligible to receive payment under the Court-approved Plan of Allocation.

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.,* Master File No. 09 MD 2058, Mem. Supp. of

Lead Pls' Mot. for … Mod. of Distrib. Ord. …, Doc. 1024, at 5 n.7 (S.D.N.Y. Nov. 14, 2016).[11]

---

[10] *Accord, e.g., Krakauer v. Dish Network, LLC,* Case No. 1:14-CV-333, 2017 WL 3206324, at *7 (M.D.N.C. July 27, 2017) (citing Newberg §12.15 (5th ed. 2017)); *Rubio-Delgado v. Aerotek, Inc.,* No. 13-cv-03105, 2015 WL 3623627, at *7 (N.D. Cal. June 10, 2015) ("[T]he goal [of a class action settlement] should be to distribute settlement payments to as many class members as possible."); *Park v. The Thomson Corp.,* No. 05 Civ. 2931, 2008 WL 4684232, at *5 (S.D.N.Y. Oct. 22, 2008) ("Because the Amended Settlement enables as many Class Members as possible to receive a fair share of the settlement amount, the allocation plan is approved, and final approval is granted to the Amended Settlement."); *In re Currency Conv. Fee Antitrust Litig.,* 263 F.R.D. 110, 126 (S.D.N.Y. 2009) (same), *aff'd sub nom. Priceline.com, Inc. v. Silberman,* 405 F. App'x 532 (2d Cir. 2010).

[11] *See, e.g., In re Lithium-Ion Batteries Antitrust Litig.,* No. 13-MD-02420, 2d Rpt. Claims Status & Req. Ext. Claims Deadline, Doc. 2120, at 2:4-10 (N.D. Cal. Jan. 5, 2018) (As a result of the pendency of multiple appeals, class counsel requested serial claims filing deadline extensions "to maximize the number of claims": "The distribution of the settlement corpus will be impossible while the appeals remain pending



The importance of increasing class member participation in settlements, which necessarily will occur when Excluded Phase 1 & 2 Submissions are included, was codified in the 2018 amendments to Rule 23(e)(2)C. *See* 4 Newberg §13:53, *Final approval criteria— Rule 23(e)(2)(C)(ii)* (Westlaw 2021), *quoted in, e.g., Moreno v. Beacon Roofing Supply, Inc.*, No. 19cv185, 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020). Those amendments "require[ ] courts to examine 'the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp.3d 686, 694 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(2)(C)(ii)). And according to the Rule 23 Advisory Committee, it "[o]ften will be important" for courts "to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims," and that it also "may be important" to require the parties to provide "actual claims experience" in connection with a court's evaluation of whether a settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23 Adv. Comm. Notes 2018 Amend., Subd. (e)(2) &¶¶ (C) & (D). Under amended Rule 23(e)(2)(C)(ii), therefore, courts, when evaluating whether a settlement is fair, reasonable and adequate must consider the level of class member participation in it. Here, however, Settlement Class Counsel have adopted and then refused to modify a claims submission process with shifting deadlines and difficult to understand requirements. Compounding matters, they then refused to allow the participation of inarguably legitimate class members even though their untimely submissions, both because they were filed before the Phase 3 deadlines and because Settlement Class Counsel have had years in which to address them, would have had absolutely no impact on the timing of the cumulative distribution. This approach is thus contrary to Settlement Class Counsel's duties

---

… . Consequently, no purpose is served by ending the claims period while the appeals are pending."); *accord In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143, IPPs' Mot. Prelim. App. Settle. with Defs. Samsung Elec. Co., Ltd., …, Doc. 2852, at 5:3-5 (N.D. Cal. Aug. 23, 2018) (class counsel requested that court reopen claims filing period for the prior seven settlements).



Honorable Charles R. Breyer
January 10, 2021
Page 12

to those class members, and is exactly what in the 2018 amendments to Rule 23 Congress and the Supreme Court sought to redress.

Settlement Class Counsel have offered no rational, legal or equitable bases for ignoring for years the Excluded Phase 1 & 2 Submissions, nor do any exist.[12] That additional time will now be needed to process the Excluded Phase 1 & 2 Submissions—filings that properly should have been processed years ago, which necessarily will extend the timing of the distribution, should not bear on the outcome of this objection. The harm to timely claimants that will result from having to wait while Rust, as a result of Settlement Class Counsel's refusal properly to address Excluded Phase 1 & 2 Submissions, does what it should have done years ago, would pale in comparison to the harm that rejecting the Excluded Phase 1 & 2 Submissions would cause the claimants that submitted them.[13] Settlement Class Counsel have had years to remedy this issue by seeking leave of this Court;[14] they have chosen not to do so. As a result, Phase 1 and Phase 2 deficiency cures have sat for years unprocessed by Rust while Phase 3 deficiency cures were being processed and while all Settlement Funds have remained in escrow.

---

[12] *See, e.g.*, *Bear Stearns*, 297 F.R.D. at 95 ("Counsel argued that 'it would be unfair to deny payment of an otherwise eligible claim received while claims were still being processed because it was submitted after the Court-approved claims filing deadline.'").

[13] Settlement Class Counsel argued that the Court should not consider FRS's Initial Letter because the appropriate time for challenging the rejection of the Excluded Phase 1 & 2 Submissions would be in connection with the motion for distribution. *See* Settlement Class Counsel's Letter at 3 (Section II, "The Court May Address Late-Filed Claims at the Motion for Distribution"). Addressing this issue now rather than when, in FRS's Initial Letter (Sept. 10, 2020), FRS brought it to the Court's attention, is what Settlement Class Counsel desired.

[14] FRS brough this issue Settlement Class Counsel's attention no later than September 16, 2019, over two years ago. *See* FRS's Initial Letter, Ex. 1.



Honorable Charles R. Breyer
January 10, 2021
Page 13

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in FRS's Initial Letter and in FRS's

Reply Letter, Excluded Phase 1 & 2 Submissions should participate in all thirteen Settlements.

Respectfully submitted,

Jeffrey N. Leibell

Enclosures

Copies (via email) to:  Adam J. Zapala, Esq. (AZapala@cpmlegal.com)
                        Christopher L. Lebsock, Esq. (clebsock@hausfeld.com)
Copy (via overnight courier) to: Clerk of the Court

# FRS'S INITIAL LETTER

# FRS

# FINANCIAL
# RECOVERY
# STRATEGIES

Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

**VIA OVERNIGHT COURIER**

September 10, 2020

Honorable Charles R. Breyer
Senior District Judge
United States District Court
    for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

*In re Transpacific Passenger Air Transportation Antitrust Litigation*,
        Civil Action No. 3:07-CV-05634-CRB, MDL No. 1913 (N.D. Cal.)

Dear Judge Breyer:

Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") has been retained by certain members of the several classes ("Settlement Class Members") that this Court certified for settlement purposes (the "Settlement Classes") in connection with the thirteen settlements (the "Settlements") obtained in the above captioned multidistrict class action litigation.[1] On behalf of eighty-two of its Settlement Class Member-clients, FRS is compelled to bring to the Court's attention fatal flaws in Settlement Class Counsel's planned approach (the "Distribution Approach") for the eventual distribution to Settlement Class Members of the funds

---

[1] FRS's clients have determined that, rather than manage their own claims, it is more cost effective to retain FRS so that they may focus on operating their own businesses. Since its founding in 2008, FRS has adhered to the highest ethical and professional standards (for FRS's "Code of Conduct & Professional Ethics," *see* www.frsco.com/about/code-of-ethics) to provide its clients, which number in excess of 18,000 and include "Fortune" household-name multinational conglomerates, with superior class action claims consulting services, which include enhancing the likelihood that all eligible business units are included; advising on required data; developing innovative alternatives for unavailable documents; and addressing administrator or counsel questions (for case studies, *see* www.frsco.com/about/success). FRS's professionals include seven attorneys and fifteen former claims administrators (for brief biographies, *see* www.frsco.com/teams) that together have spent decades prosecuting and settling class actions, administering class action settlements, and managing class action claims. FRS is contractually required to send clients their distributions within thirty days (FRS audits all distributions); until then, funds are deposited in a segregated non-interest-bearing distribution account.



Honorable Charles R. Breyer
September 10, 2020
Page 2

recovered in the Settlements (the "Settlement Funds").[2] Given the circumstances peculiar to the Settlements and their administration, all otherwise eligible proofs of claim that were filed while Rust continued (and continues) to process Phase 2 and Phase 3 proofs of claim should participate equally in the recoveries provided by all thirteen Settlements, and the data submitted to cure deficient proofs of claim in later Settlements should be applied to cure the identical deficiencies in proofs of claim filed in earlier Settlements. FRS brings these issues to the Court's attention now, before Settlement Class Counsel submit their distribution motion and while Rust is still processing Phase 2 and Phase 3 proofs of claim, to avoid unnecessary further delay in the distribution of Settlement Funds once Rust has completed its administration.[3]

**PRELIMINARY STATEMENT**

Settlement Class Counsel's Distribution Approach, as it has evolved and been implemented since the first Phase 1 notice was published and disseminated, is not fair, reasonable or adequate because, rather than consider the particular circumstances of these Settlements to maximize the recovery to as many Settlement Classes Members as possible and treat them evenhandedly, it treats dissimilarly Settlement Class Members that were harmed in exactly the same way by the alleged antitrust violations that were resolved by the Settlements,

---

[2] "Settlement Class Counsel" are Cotchett, Pitre & McCarthy and Hausfeld LLP. The Distribution Approach includes the manner in which Rust Consulting, Inc. ("Rust"), the claims administrator, has been directed by Settlement Class Counsel to administer the Settlements.

[3] The Court has retained continuing jurisdiction over "any distribution to members of the Settlement Class pursuant to further orders of this Court." *E.g.*, Final Judgement of Dismissal with Prejudice as to Def. Japan Airlines Company, Ltd., ECF No. 1023, at ¶13 (3:20-26). None of the Settlement Agreements include any provisions concerning the timing of any distribution or any agreement among the parties thereto concerning whether claims submitted after a claim filing deadline could or should be permitted to participate in the recovery provided by that Settlement. Several of those Settlement Agreements explicitly state that the defendants "shall not have any responsibility … whatsoever with respect to … distribution, or administration of the Settlement Fund." *E.g.*, Settlement Agreement between Plaintiffs and Qantas Airways Limited, ¶12 (at 16:3-6).

**FRS** **FINANCIAL**
**RECOVERY**
**STRATEGIES**

Honorable Charles R. Breyer
September 10, 2020
Page 3

and precludes many Settlement Class Members from obtaining their fair shares – or, for some, any share – of those recoveries:

- Even though all Settlement Funds remain on deposit in QSF escrow accounts and have been on deposit in *custodia legis* beginning in 2014, and even though the administration of Phase 2 and Phase 3 proofs of claim remains ongoing, proofs of claim filed after a Phase 1 or the Phase 2 claims filing deadlines will not participate in the recoveries provided by those Settlements; and

- Even though at least certain Settlement Class Members did not receive deficiency notices in connection with their Phase 2 and certain Phase 1 proofs of claim, and, therefore, were not provided with an opportunity to cure those deficiencies, their responses to Phase 3 deficiency notices, which are being applied to cure their Phase 3 proofs of claim, are not being applied to cure identical deficiencies in their Phase 1 proofs of claim, and, it appears, not being applied to cure the identical deficiencies in their Phase 2 proofs of claim.

Although common practice for objecting to proposed class action settlement distributions is to wait until after a distribution motion is filed and to determine from it whether any objection is warranted, there is no reason to postpone until Settlement Class Counsel file their distribution motion addressing these issues. FRS already has brought them to the attention of Settlement Class Counsel and, at their direction, to the attention of Rust, only to have them rejected out of hand: Rust rejected them without addressing their merits because, according to Rust, it is "required to implement the terms of the settlement, including the deadlines for all individuals and third-party filers that submitted claims, as directed by counsel and approved by the Court";[4]

---

[4] **Exhibit 5** at 4. True and correct copies of the email correspondence between FRS and Settlement Class Counsel and between FRS and Rust are submitted herewith in chronological order, as follows:

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 4

and Settlement Class Counsel twice summarily rejected FRS's concerns, also without comment

on their merits, most recently on August 19, 2020:

> [T]here have been longstanding Court-ordered deadlines for claims in this case.
> The class has been on notice of them for years. Other putative class members have
> also been told that deadlines are deadlines. Class Counsel does not have the ability
> or authority to simply alter Court-ordered deadlines.[5]

Contrary to Settlement Class Counsel's response, they have the ability – and, in FRS's view of

their duties, the obligation – to consider in their Distribution Approach the facts and

circumstances of *these* Settlements and *their* administration, most notably the over six years

since the Phase 1 Settlements were reached and the corresponding Settlement Funds were

| Exhibit | Description |
|---|---|
| 1 | September 18, 2019 email from Rust responding to FRS's September 16, 2019 email inquiring about inclusion in all Settlements. |
| 2 | October 17, 2019 email from Settlement Class Counsel responding to FRS's October 10, 2019 email inquiring about inclusion in all Settlements. |
| 3 | May 19, 2020 email from Rust responding to FRS's May 18, 2020 email inquiring about application of deficiency cures. |
| 4 | July 28, 2020 email from Settlement Class Counsel directing FRS to raise with Rust the distribution and deficiency cure issues raised in FRS's July 28, 2020 email to Settlement Class Counsel. |
| 5 | August 14, 2020 email and attached letter from Rust responding to August 10, 2020 email that, at the direction of Settlement Class Counsel, FRS sent to Rust. |
| 6 | August 19, 2020 email from Settlement Class Counsel rejecting FRS's request, as set forth in FRS's July 28, 2020 email, that Settlement Class Counsel reconsider its approach to distribution and deficiency cures and to then seek relief from the Court. |

[5] **Exhibit 6** at 1. The same dismissive rejection was previously provided by Settlement Class Counsel on October 17, 2019. *See* **Exhibit 2** at 1 ("The deadlines to make claims for the various rounds of settlements were established and approved by the Court and have been in effect for a long time now.").

**FRS**  FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 5

deposited into QSF escrow accounts for the benefit of Settlement Class Members. In the context
of *these* Settlements, therefore, they must seek from the Court relief from the Court-ordered
claim deadlines so that all proofs of claim filed while Phase 2 and Phase 3 proofs of claim continue
to be processed participate equally in all of the Settlements.[6]

Given the intractable position Settlement Class Counsel and Rust, Settlement Class
Members' interests are best served by resolving these issues now, rather than after the
distribution motion, so that, should the Court agree that all Settlement Class Members that
submitted to Rust legitimate proofs of claim while Phase 2 and Phase 3 proofs of claim continue
to be processed should participate equally in all thirteen Settlements, Rust may efficiently comply
with the Court's direction without the delay that inevitably would occur if FRS waited to object
until after Settlement Class Counsel filed their distribution motion.

---

[6] Settlement Class Counsel's and Rust's responses also make clear that FRS's clients are not the only
Settlement Class Members to express concerns about Settlement Class Counsel's Distribution Approach.
According to Rust:

> [W]e are not able to "reconsider [our] planned approach to the distribution and deficiency
> cure responses" as requested. We are required to implement the terms of the settlement,
> including the deadlines for all individuals and third-party filers that submitted claims, ***as
> directed by counsel*** and approved by the Court. ***We note that we have received similar
> requests from other potential claimants over time, and we have provided them with a
> similar response.***

**Exhibit 5** at 4 (emphasis added); *accord* **Exhibit 6** at 1 (Settlement Class Counsel's above-quoted
response).

FRS **FINANCIAL
RECOVERY
STRATEGIES**

Honorable Charles R. Breyer
September 10, 2020
Page 6

**RELEVANT FACTS**

**The Settlements**

Beginning in 2014, as set forth in the respective Settlement Agreements, the following thirteen Settlements were reached:

| Phase | Defendant | Settlement Amount | Settlement Date | Date Funds Deposited[7] |
|---|---|---|---|---|
| 1 | Cathay Pacific | $7,500,000 | July 22, 2014 | Due August 22, 2014 |
| | Japan Airlines | $10,000,000 | July 9, 2014 | Paid by July 9, 2014 |
| | Malaysian Airlines | $950,000 | July 9, 2014 | Due October 24, 2014 |
| | Qantas Airlines | $550,000 | August 8, 2014 | Due September 7, 2014 |
| | Singapore Airlines | $9,200,000 | August 13, 2014 | Due October 12, 2014 |
| | Societe Air France | $867,000 | April 15, 2014 | Due April 27, 2014 |
| | Thai Airways | $9,700,000 | July 9, 2014 | Due August 31, 2014 |
| | Vietnam Airways | $735,000 | July 9, 2014 | Due June 15, 2014 |
| | **Subtotal** | $39,502,000 | | |
| 2 | Air New Zealand | $400,000 | January 9, 2017 | Due January 30, 2017 |
| | China Airlines | $19,500,000 | December 11, 2017 | Due June 30, 2020 |
| | EVA Airways | $21,000,000 | February 27, 2018 | Due June 30, 2020 |
| | Philippine Airlines | $9,000,000 | January 3, 2017 | Due November 30, 2019 |
| | **Subtotal** | $49,900,000 | | |
| 3 | All Nippon Airways | $58,000,000 | February 8, 2019 | Due March 11, 2019 |
| | **Subtotal** | $58,000,000 | | |
| | **TOTAL** | $147,402,000 | | |

**Filing Proofs of Claim**

**The Phase 1 Settlements**

Phase 1 was comprised of eight Settlements that included "eight of the Defendant airlines," as disclosed in the Phase 1 notice, from among twenty-seven named "Defendants and

---

[7] The Settlements with China Airlines, EVA Airways and Philippine Airlines provided for installment payments. The dates set forth in the table are the dates on which the first installments were due.



Co-Conspirators"; those eight Settlements fit into five Settlement Classes that included purchases of qualifying tickets "between January 1, 2000 and the Effective Date." That "Effective Date" was not disclosed. As later disclosed in the January 22, 2018 "Status Update" to the Settlement website, there were two Effective Dates for the Phase 1 Settlements: the Effective Date for the Qantas, Cathay Pacific and Thai Airways Settlements (the "Phase 1A Settlements") was June 15, 2015, and the Effective Date for the other five Phase 1 Settlements (the "Phase 1B Settlements") was December 4, 2017. Accordingly, the class periods for those two sets of Phase 1 Settlements ended on two different dates.

To obtain a recovery from any of the Phase 1 Settlements, Settlement Class Members were advised in the Phase 1 notice that they must submit proof of claim forms on or before the Court-approved deadlines. Rather than one such deadline for all Phase 1 Settlements, there were two: One, which applied only to Phase 1A Settlements, was October 13, 2015; the other, which applied to the Phase 1B Settlements, was, because of a then-pending appeal, adjourned to an as yet unspecified date 120 days after the Effective Date for those five Phase 1B Settlements.[8]

---

[8] An earlier disseminated Phase 1 notice identified for all Phase 1 Settlements an earlier date – September 19, 2015 – as "[t]he earliest deadline to submit a Claim," and that Settlement Class Members would "have 120 days after the Settlements become final and effective to file [their] claim[s]." That deadline was later updated via the July 6, 2015 "Status Update" to the Settlement website, which stated as follows:

> The Effective Date for the Qantas, Cathay Pacific Airways and Thai Airways Settlements is June 15, 2015. The claims closing date for these Settlements is October 13, 2015. An appeal is pending for the JAL, Air France, Singapore Airlines, Vietnam Airlines, and Malaysian Air Settlements. Please visit this website for updates.

The October 2, 2015 "Status Update" to the Settlement website then provided a disclosure similar to that set forth in the later-used Phase 1 notice:

> The claims closing date for the Qantas, Cathay Pacific Airways and Thai Airways Settlements is October 13, 2015. An appeal is pending for the JAL, Air France, Singapore Airlines, Vietnam Airlines, and Malaysian Air Settlements. You will have up to 120 days after the Effective Date for these Settlements to file your claim.

A later disclosure on the Settlement website disclosed that the Phase 1B claims deadline was April 3, 2018.

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 8

Although the Phase 1 notice described the October 13, 2015 deadline as the "claims closing date"
for the Phase 1A Settlements, and stated that Settlement Class Members would "have up to 120
days after the Effective Date" for the Phase 1B Settlements to file their Phase 1B proofs of claim,
the Phase 1 notice did not state, nor could it, that the failure to submit a proof of claim by those
disclosed and as yet undisclosed deadlines would operate as an ironclad bar to recovery from
any or all of the Phase 1 Settlements.

**The Phase 2 Settlements**

Phase 2 was comprised of four Settlements that included four "Settling Defendants," as
defined in the Phase 2 notice; the Phase 2 notice also identified fourteen "alleged Defendants
and Co-Conspirators," as well as the eight airlines that "previously agreed to settlements," and
the one remaining "Non-Settling Defendant." The four Phase 2 Settlements fit into three
Settlement Classes that included purchases of qualifying tickets "between January 1, 2000 and
December 1, 2016." The class period for each of the Phase 2 Settlements thus ended later than
the class periods for each of the Phase 1A Settlements (which ended on June 15, 2015) and earlier
than the class periods for each of the Phase 1B Settlements (which ended on December 4, 2017).

To obtain a recovery from any of the Phase 2 Settlements, Settlement Class Members
were advised in the Phase 2 notice that they must submit proof of claim forms on or before the
December 31, 2018 Court-approved Phase 2 deadline. The Phase 2 notice also advised
Settlement Class Members that, if they filed a proof of claim in connection with any of the Phase 1
Settlements, they need not file another proof of claim in connection with the Phase 2 Settlements
– that is, their proof of claim would "roll over" to Phase 2 – unless they wanted to supplement
their Phase 1 proof of claim with an updated number of tickets. Although the Phase 2 notice did
disclose that "[t]he deadline to submit a Claim Form" was December 31, 2018, it, like the Phase 1
notices, did not and, under relevant law, could not, state that the failure to submit a proof of
claim by that deadline would operate as an ironclad bar to recovery from the Phase 2
Settlements. And rather than advising Settlement Class Members that had filed proofs of claim

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 9

after the applicable claims filing deadlines for Phase 1A and Phase 1B that they could not under
any circumstances participate in any of the corresponding Phase 1 Settlements, the Phase 2
notice included a disclosure that, by coordinating the recovery for proofs of claim filed in Phase 1
and Phase 2, implies otherwise.[9]

### The Phase 3 Settlement

Phase 3 was comprised of one Settlement with one Defendant, ANA, but it included three
Settlement Classes: The "Japan Settlement Class" started on February 1, 2005, which is later than
the beginning date of any of the Settlement Classes in Phase 1 or Phase 2, and ended on
December 31, 2007, which is earlier than the ending date of any of the Settlement Classes in
Phase 1 or Phase 2; another Phase 3 Settlement Class; the "*Satogaeri* Settlement Class" ended
on April 1, 2006, which also is earlier than the ending date of any of the Settlement Classes in
Phase 1 or Phase 2, and is earlier than the ending date of the Japan Settlement Class; and the
"Settlement Class III" ended on December 1, 2016, which is the same as the ending date for the
Phase 2 Settlements, but later than the ending date for the Phase 1A Settlement Classes, earlier
the ending date for the Phase 1B Settlement Classes, and later than the ending dates for the two
other Phase 3 Settlement Classes.

---

[9] The Phase 2 notice includes, under the heading "How much money will I receive?," the following
disclosure:

> Pursuant to the proposed plan of allocation, eligible claims will receive a pro rata share of
> the applicable settlement funds for each class in which the claim(s) qualify. However,
> based on the claims that have already been filed, it is estimated that the average payment
> could be in the range of $8.50 per eligible ticket claimed. This does not include amounts
> that will be paid on any future settlement or judgment involving ANA. The claims
> administrator received a large number of claims just before a claims deadline concerning
> an earlier round of settlements, and these claims have not yet been subjected to audit.
> As a result, the number of claimed tickets that are determined to be eligible may be
> reduced, and the corresponding amount of compensation to be allocated among the
> remaining eligible claims will increase. …

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 10

To obtain a recovery from the Phase 3 Settlement, Settlement Class Members were advised in the Phase 3 notice that they must submit a new proof of claim form on or before the Court-approved Phase 3 deadline: "Even if you filed a claim in the previous settlements," a supplemental proof of claim was required so that Rust could "determine [their] eligibility to participate in the *Satogaeri* Class and the Japan Class," and that, because the class period for Settlement Class III is longer than the class period "for some of the earlier settlement classes," Settlement Class Members would need to supplement their earlier-filed proofs of claim for flights that, though not included on their prior proofs of claim, qualified for participation in Settlement Class III. The Phase 3 notice also disclosed that the "earliest deadline to submit a Claim Form" was February 15, 2020, but that Settlement Class Members would "have until 120 days after the Settlements become final and effective to file [a] claim." That later date, April 1, 2020, though not disclosed in the Phase 3 notice, is disclosed on the Settlement website. Also, and like the notices disseminated for Phase 1 and Phase 2, the Phase 3 notice did not and could not state that the failure to submit a proof of claim by the Phase 3 deadline would operate as an ironclad bar to recovery from the Phase 3 Settlement. And rather than advising Settlement Class Members that filed proofs of claim after the applicable claims filing deadlines for Phase 1A, Phase 1B or Phase 2 that they would not under any circumstances participate in those Settlements, the Phase 3 notice includes a disclosure that, by coordinating the recovery for proofs of claim filed in Phase 2 and Phase 3, if not all three Phases, implies otherwise.[10]

---

[10] The Phase 3 notice includes, under the heading "How much money will I receive?," the following disclosure:

> Pursuant to the proposed plan of allocation, eligible claims will receive a *pro rata* share of the applicable settlement funds for each class in which the claim(s) qualify. However, based on the claims that have already been filed, it is estimated that the average payment of prior settlements in this matter, which had classes similar to Settlement Class III, could be in the range of $5 per eligible ticket claimed. Because there is no prior claims history for the *Satogaeri* and Japan Classes, a per ticket estimate is not possible for those classes. The claims administrator received a large number of claims just before a claims deadline concerning the previous round of settlements, and these claims have not yet been

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 11

## Settlement Administration

### The Phase 1 Settlements

As part of its administration of the Phase 1 Settlements, Rust sent to FRS deficiency notices concerning the fifteen proofs of claim that, by the October 13, 2015 Phase 1A deadline, FRS submitted for its Settlement Class Member clients. At that time, only three of FRS's clients were able to provide the information necessary to cure their Phase 1A deficiencies; twelve were not. Even though all Phase 1A proofs of claim, including the twelve Phase 1A proofs of claim that had not been cured and, therefore, were still deficient, "rolled over" to the Phase 1B Settlements, Rust did not send to FRS for those twelve still deficient Phase 1A proofs of claim any deficiency notices for Phase 1B, nor did Rust send to FRS Phase 1B deficiency notices for any of the twenty-seven Phase 1B proofs of claim that FRS filed after the Phase 1A deadline but before the April 3, 2018 Phase 1B deadline. Accordingly, Rust did not provide to thirty-nine of FRS's forty-two Phase 1B clients (*i.e.*, all but the three that timely had cured their Phase 1A deficiencies) any opportunity to cure their Phase 1B deficiencies. FRS, in connection with its responses to Phase 3 deficiency notices, submitted to Rust by the Phase 3 deficiency cure deadline the data needed to cure all deficiencies for each of the twelve Phase 1A proofs of claim and for each of the thirty-nine Phase 1B proofs of claim.

### The Phase 2 Settlements

FRS submitted a total of forty-seven Phase 2 proofs of claim on or before the December 31, 2018 Phase 2 deadline; forty-two "rolled over" from Phase 1A and Phase 1B, and five were new proofs of claim submitted after the Phase 1B deadline but before the Phase 2 deadline. Rust sent to FRS only one Phase 2 deficiency notice for those Phase 2 proofs of claim; no deficiency notices were sent to FRS for the other forty-three Phase 2 proofs of claim (*i.e.*, the

---

subjected to audit. As a result, the number of claimed tickets that are determined to be eligible may be reduced, and the corresponding amount of compensation to be allocated among the remaining eligible claims may increase. …



Honorable Charles R. Breyer
September 10, 2020
Page 12

remaining forty-six Phase 2 proofs of claim other than the three that had cured their Phase 1A deficiencies and, therefore, were not deficient in Phase 2). As with its clients' Phase 1A and Phase 1B deficient proofs of claim, FRS, in connection with its responses to Phase 3 deficiency notices, submitted to Rust by the Phase 3 deficiency cure deadline the data needed to cure all deficiencies for each of the five Phase 2 proofs of claim that did not "roll over" from Phase 1B (*i.e.*, those that were submitted after the Phase 1B deadline but before the Phase 2 deadline).

FRS also submitted twenty Phase 2 proofs of claim after the Phase 3 deadline; eleven were filed on April 22, 2020 and nine were filed on April 24, 2020. Those proofs of claim were filed at the same time that FRS filed Phase 3 proofs of claim for those twenty Settlement Class Members. Rust sent to FRS Phase 2 deficiency notices for eight of the proofs of claim filed on April 22, 2020; no explanation was provided for why the other three proofs of claim filed on that date or the nine proofs of claim that were filed two days later were treated differently than the other Phase 2 proofs of claim that were filed after the Phase 3 deadline. FRS, in connection with its responses to Phase 2 and Phase 3 deficiency notices, submitted to Rust by the Phase 2 and Phase 3 deficiency cure deadline the data for each of those twenty Phase 2 proofs of claim needed to cure all of their Phase 1, Phase 2 and Phase 3 deficiencies.

### The Phase 3 Settlement

FRS received deficiency notices for eighty of the Phase 3 claims that it filed on behalf of its clients, as follows:

- forty-six proofs of claim for which Phase 1 and Phase 2 proofs of claim were filed on or before the applicable Phase 1 and Phase 2 deadlines and for which new Phase 3 proofs of claim were filed on or before the April 1, 2020 Phase 3 deadline;

- fifteen proofs of claim for which Phase 1 and Phase 2 proofs of claim were not filed by the applicable Phase 1 and Phase 2 deadlines and for which new

**FRS** **FINANCIAL**
**RECOVERY**
**STRATEGIES**

Honorable Charles R. Breyer
September 10, 2020
Page 13

Phase 3 proofs of claim were filed on or before the April 1, 2020 Phase 3
deadline; and

- nineteen proofs of claim for which Phase 1 and Phase 2 proofs of claim were
not filed by the applicable Phase 1 and Phase 2 deadlines and for which new
Phase 3 proofs of claim were not filed on or before the April 1, 2020 Phase 3
deadline.[11]

FRS submitted to Rust by the Phase 3 cure deficiency deadline data for each of FRS's eighty-two
Settlement Class Member clients – the eighty for which Phase 3 deficiency notices were received
and the two for which they were not – the data needed to cure all of the deficiencies in their
Phase 1, Phase 2 and Phase 3 proofs of claim.

FRS had thus submitted by the Phase 3 deficiency cure deadline data that completely
cured the deficiencies in each of the eighty-two proofs of claim, including proofs of claim in
Phase 1B and Phase 2 for which no deficiency notices were sent, that FRS filed in all three Phases.
As a result, FRS asked Rust whether that data also would be applied to resolve the identical
deficiencies in the proofs of claim that FRS filed for those same claimants in Phase 1A, Phase 1B
and Phase 2.[12] In response, Rust advised that those Phase 3 cures, even though they completely

---

[11] Those nineteen proofs of claim are included among the twenty Phase 2 proofs of claim described in the
text above that were filed after the Phase 3 deadline. FRS did not receive Phase 3 deficiency notices for
two clients for which FRS did not filed Phase 3 proofs of claim on or before the Phase 3 deadline. For one
of those clients, Phase 1 and Phase 2 proofs of claim were not filed on or before the applicable Phase 1
and Phase 2 deadlines; that proof of claim also is included among the twenty Phase 2 proofs of claim
described in the text above that were filed after the Phase 3 deadline. For the other Phase 3 proof of claim
for which no Phase 3 deficiency notice was received, FRS had submitted Phase 1 and Phase 2 proofs of
claim on or before the applicable Phase 1 and Phase 2 deadlines. No explanation was provided for why
these two proofs of claim were treated differently than the other proofs of claim filed after the Phase 3
deadline.

[12] *See* **Exhibit 3** at 1-2. Claim Nos. 1411 and 1490 each were filed on October 9, 2015. Neither client was
able to provide data for FRS timely to respond to the Phase 1A deficiency notices that FRS received in
March of 2016. No deficiency notices were received by FRS in connection with Phase 1B or Phase 2, even
though the same deficiencies existed in those clients' "rolled over" Phase 1B and Phase 2 proofs of claim.

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 14

resolved the same deficiencies in the Phase 1A, Phase 1B and Phase 2 proofs of claim, and even
though Rust did not provide an opportunity to cure those Settlement Class Members' Phase 1B
and Phase 2 deficiencies, would not be applied to cure Phase 1 proofs of claim and may not be
applied to cure Phase 2 proofs of claim:

> Since deficiencies for Phase 1 Settlement were mailed, processed and completed
> in 2016 we will not be able to accept any additional purchase information for these
> claims. We will only be able to accept data pertaining to the deficiencies for
> Phase 2 and 3 Settlement claims which were mailed on April 28 with a response
> deadline of May 28, 2020.[13]

Settlement Class Counsel did not contradict Rust's position.[14]

FRS believes that when (a) Settlement Funds have been on deposit for as many years as
they have been for the Settlements; (b) the delay in distribution was not caused by Settlement
Class Members that submitted late claims or later deficiency cures; (c) the Settlement terms
relevant to submitting proofs of claim are complex and include, for example, multiple classes
with different eligibility requirements, different class periods and different claims deadlines that
changed over time and had to be interpreted; and (d) proofs of claim continue to be processed
in connection with those Settlements, it is unjust and inequitable to bar legitimate Settlement

---

FRS filed on January 24, 2020 proofs of claim for each client in connection with Phase 3. Deficiency notices
were received for each Phase 3 proof of claim. FRS provided on June 10, 2020 data that cured not just the
Phase 3 deficient conditions, but also the identical deficient conditions identified in connection with each
claimant's proof of claim for Phase 1A (and presumably) Phase 1B and Phase 2.

[13] **Exhibit 3** at 1. Rust's response is vague concerning cures for Phase 2 proofs of claim. If Rust intends to
apply to Phase 2 proofs of claim for which no Phase 2 deficiency notices were sent the cures that FRS
provided in connection with Phase 3 proofs of claim, FRS has no concerns. However, if Rust is being literal
– that is, it will apply cures only to those Phase 2 proofs of claim for which Rust sent Phase 2 deficiency
notices and will not apply cures to those Phase 2 for which Rust did not send Phase 2 deficiency notices
even when those cures resolve all Phase 2 deficiencies – then FRS has the same concerns with respect to
curing Phase 2 proofs of claim that we have concerning curing Phase 1 proofs of claim.

[14] *See* **Exhibit 6** at 1 (no reference to the deficiency response issue).

**FRS** **F**INANCIAL
**R**ECOVERY
**S**TRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 15

Class Members from participating on an equal basis in those recoveries solely because their proofs of claim or because their deficiency cures were filed after deadlines.

## POINTS AND AUTHORITIES

Plaintiffs "bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate."[15] In that connection, and "[a]ll else equal, the goal [of a class action settlement] should be to distribute settlement payments to as many class members as possible." [16] Indeed, courts justifiably express concern about "maximizing the amount of the Settlement Fund distributed to aggrieved victims of … alleged antitrust violations,"[17] and approve class action allocation plans, in substantial part, "[b]ecause [they] enable[] as many Class Members as possible to receive a fair share of the settlement amount."[18] But rather than provide as much benefit to as many Settlement Class Members as possible, Settlement Class Counsel's Distribution Approach, including their deficiency cure methodology, formulaically enforces deadlines and thus fails to consider the facts and circumstances of *these*

---

[15] *E.g.*, *Carter v. Forjas Taurus, S.A.*, 701 Fed. Appx. 759, 764-65, No. 16-15277 (11th Cir. June 29, 2017); *accord Faught v. American Home Shield*, 668 F.3d 1233, 1239 (11th Cir. 2012); *see also In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) ("'The burden of proving the fairness of the settlement is on the proponents.'") (quoting 4 Newberg on Class Actions §11:42 (4th ed.)); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010) ("[T]he burden is on the settlement proponents to persuade the court that the agreement is fair, reasonable, and adequate for the absent class members who are to be bound by the settlement.").

[16] *Rubio-Delgado v. Aerotek, Inc.*, Case No. 13-cv-03105-SC, 2015 WL 3623627, at *7 (N.D. Cal. June 10, 2015) (Conti, J.); *accord Jamie S. v. Milwaukee Pub. Schs.*, No. 01-C-928, 2009 WL 2225419, at *2 (E.D. Wis. July 22, 2009) ("The aim of this litigation is to ensure that all reasonable steps are taken to ensure that as many class members as possible are provided with the remedy to which they are entitled."); *see Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *9 (Feb. 3, 2016) (Court cited goal of "allowing as many class members as possible to claim benefits"); *Hamilton v. SunTrust Mort. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (same); *Adderley v. N.F.L Players Assoc.*, No. C 07-00943 WHA, 2010 WL 11575008, at *1 (N.D. Cal. Oct. 12, 2010) (Alsup, J.) (Court ordered "extra efforts" to "ensure that as many class members as possible were given the opportunity to participate in the settlement before the remaining funds were distributed.").

[17] *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 126 (S.D.N.Y. 2009).

[18] *Park v. The Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *5 (S.D.N.Y. Oct. 22, 2008).

**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 16

Settlements and *their* administration, and, therefore, it is anathema to the goals of class action settlements and violates the law in this and every other circuit that prohibits "'erecting a rigid barrier against late filings attributable in any degree to the movant's negligence.'"[19]

**All Legitimate Proofs of Claim that Were Filed While**
**Phase 2 and Phase 3 Proofs of Claim Continue to Be Processed Should**
**Participate Equally in the Recoveries Provided by All Thirteen Settlements.**

Under Settlement Class Counsel's Distribution Approach, no legitimate proof of claim filed after the two operative claim filing deadlines for Phase 1 will participate in the over $39.5 million recovered in those eight Settlements. In other words, no proof of claim filed after October 13, 2015 will receive a distribution from the $17,750,000 recovered in the three Phase 1A Settlements, and no proof of claim filed after April 3, 2018 will receive a distribution from the five $21,752,000 recovered in the Phase 1B Settlements. And no legitimate proof of claim filed after the December 31, 2018 claim filing deadline for Phase 2 will participate in the over $49.9 million recovered in those four Settlements. FRS, to try to avoid that inequitable outcome and the necessity of objecting to Settlement Class Counsel's eventual distribution motion, asked Settlement Class Counsel to reconsider and to explain "*__why__* [they] would not want to include all legitimate claimants in one comprehensive distribution," and "*__why__* [they] would seek to exclude rather than include all of the class members that [they] represent and to maximize their claim values."[20] And in that connection, FRS posited that "even assuming that there is some support

---

[19] *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) (en banc) (quoting *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 n.14 (1993)); *see, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 316-17 (3d Cir. 2001) ("[R]igid and unquestioned adherence to [deadlines] belies principles of equity and the court's role as a fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the conduct of the proceedings and does not significantly prejudice the interests of the parties.") (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977)).

[20] **Exhibit 4** at 1-2 (first emphasis in original; second emphasis added).



Honorable Charles R. Breyer
September 10, 2020
Page 17

for your approach and that you **_could_** exclude legitimate class members and their cures[,] the question is why you **_should_**."[21]

In response, the sole reason provided by Settlement Class Counsel for paying short shrift to the equitable treatment of the Settlement Class Members that they are dutybound to represent is that the deadlines are "longstanding" and that "[t]he class has been on notice of them for years."[22] Settlement Class Counsel's Distribution Approach thus gives absolutely no consideration to the following indisputable, and, in FRS's view, dispositive, facts:

- The eight settlements that comprise Phase 1 and total over $39.5 million were reached over six years ago between April 15, 2014 and August 13, 2014, and, through no fault of Settlement Class Members that filed late claims or later cures, the corresponding Settlement Funds have been in escrow for almost six years;

- The four settlements that comprise Phase 2 and total $49.9 million were reached in 2017 and 2018, and, also through no fault of Settlement Class Members that filed late claims or later cures, the corresponding Settlement Funds have been on deposit for between two and three years; and

- Proofs of claim for Phase 2 and Phase 3 are still being processed. In fact, Settlement Class Counsel have themselves adopted for the Settlements a position concerning Phase 2 and Phase 3 proofs of claim that directly contradicts the Distribution Approach described in their and Rust's responses to FRS's inquiries. As described above, Settlement Class Counsel has directed Rust to send to Settlement Class Members Phase 2 and Phase 3 deficiency notices in connection with Phase 2 and Phase 3 proofs of claim that were filed

---

[21] *Id.* at 2 (emphasis in original).

[22] **Exhibit 6** at 1.

**F R S** **FINANCIAL**
**RECOVERY**
**STRATEGIES**

Honorable Charles R. Breyer
September 10, 2020
Page 18

> *after* the corresponding Phase 2 and Phase 3 claims filing deadlines.
> Settlement Class Counsel surely would not have burdened Settlement Class
> Members by asking them to devote time and money to cure their late-filed
> proofs of claim unless Settlement Class Counsel intended, as is customary in
> substantially all non-reversionary common fund settlements, to recommend
> that the Court accept all legitimate late claims the processing of which did not
> unduly delay the distribution.[23]

---

[23] For example, in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, class counsel advocated for the acceptance of otherwise eligible late claims:

> The distribution has not been delayed as a result of any late-filed claims. Moreover, those claimants, like all other claimants, have been injured as a result of the same alleged wrongful conduct. … Additionally, because all claimants are similarly situated, none of them has a better right to recover than any other claimant; in other words, because no distribution delay has been occasioned by the processing of those claims, the first-filed claim is no more entitled to recover or to recover more per unit than the last claim received and processed before the distribution motion is filed.

> The whole point of these actions was to compensate as many injured claimants as possible. Class Counsel have already recommended, and the Court indicated its agreement, that claims submitted after the December 6, 2012 claims deadline be included in the distribution. (*See* Apr. 3, 2013 Order, Dkt. No. 7697, at 6 n.4). …

MDL No. 1827, No. M 07-1827, IPP's & Settling States' Jt. … Mot. … Dist. Settle. Fund, ECF No. 9217, at 7:25-8:1 (N.D. Cal. Sept. 12, 2014). The district court approved class counsel's recommendation. *See* ECF No. 9273 (Oct. 20, 2014) (Illston, J.). Class counsel in *In re Dynamic Random Memory (DRAM) Antitrust Litigation*, made the same recommendation:

> This distribution has not been delayed by the additional claims filed between August 1, 2014 and July 1, 2015, and Settling Plaintiffs believe that considerations of overall fairness to the Settlement Class outweigh any prejudice to those class members who filed by August 1, 2014. Anticipating that the Court would agree, Settling Plaintiffs instructed Rust to process and audit all claims filed by July 1, 2015.

MDL No. 1486, No. M-02-1486, Decl. of Josef D. Cooper Supp. Mot. to Dist. Settle. Funds, ECF No. 2273-1, at ¶13 (N.D. Cal. May 4, 2016). That recommendation, too, was approved by the district court. *See* Order Grant'g Mot. Dist. Settle. Funds, ECF No. 2283, at ¶11 (May 19, 2016) (Hamilton, J.); *see also, e.g., In re Nuvelo, Inc. Sec. Litig.*, Master File No. 07-CV-04056, 2012 WL 12920613, at *1 (N.D. Cal. Sept. 16, 2012) (Breyer, J.) (approving class action settlement distribution to include "late-filed but otherwise valid claims").



Honorable Charles R. Breyer
September 10, 2020
Page 19

Settlement Class Counsel's statement that Settlement Class Members have "been on notice of [those deadlines] for years" also ignores, among other things and in addition to the requirements of *Pincay*, that neither the Phase 2 notice nor the Phase 3 notice advised Settlement Class Members that their failure to have filed proofs of claim on or before the deadlines for Phase 1A, Phase 1B and Phase 2 was an absolute and unappealable bar to their participation in the recoveries provided by those Settlements. Settlement Class Counsel, in commenting on Settlement Class Members' knowledge of the deadlines, also disregard that, while FRS (and likely other firms that specialize in class action claims management) is adept at addressing the complexities of class action settlements, many Settlement Class Members, even sophisticated ones, likely will suffer substantial confusion as a result of the complexities present here:

- having to coordinate the eligibility requirements of multiple Settlement Classes with the same and different defendants and with differing class definitions and class periods;

- having to understand the impact of several Effective Dates—some disclosed in the notices and other not;

- having to stay abreast of multiple evolving claims filing deadlines even within the same Phase;

- having to address differing claims filing requirements—such as whether in later settlements and under what conditions supplemental claims are required, necessary, optional or disfavored; and

- having to synthesize disclosures, like those quoted above from the Phase 2 and Phase 3 notices, that coordinate recoveries among Phases.

Settlement Class Counsel's reliance solely on the existence of those deadlines, without any consideration of the relevant facts and circumstances that bear on the fairness and



Honorable Charles R. Breyer
September 10, 2020
Page 20

reasonableness of their enforcement – facts and circumstances that, at the time that those deadlines were set by the Court, likely were not contemplated by Settlement Class Counsel, Rust or the Court; indeed, it is doubtful that anyone anticipated in July of 2014 that Phase 1 Settlement Funds would still not be distributed over six years later[24] – is not only inequitable, but contrary to the Ninth Circuit's en banc opinion in *Pincay*, which interpreted the Supreme Court's landmark decision in *Pioneer* as instructing district courts to consider deadlines "within the context of the particular case,"[25] and also cautioned that, "under *Pioneer,* the correct approach is to avoid any per se rule."[26]

Settlement Class Counsel also stated that they "do[] not have the ability or authority to simply alter Court-ordered deadlines."[27] But FRS did not ask Settlement Class Counsel unilaterally to alter this Court's deadlines; rather, FRS, after explaining why Settlement Class Counsel should seek judicial relief, which reasoning was entirely ignored in Settlement Class Counsel's response, requested that they "determine[] whether sufficient cause exists to seek relief from the Court."[28]

---

[24] Settlement Class Counsel knew that extensive delays would ensue once the Phase 1 appeal was filed, and, therefore, that the division of Phase 1 into two phases, each with its own changing Effective Date and corresponding claim filing deadlines, would be required. At that point, there simply was no appreciable benefit to Settlement Class Members – not in the time it would take to administer the Settlements and not in the cost to do so – by continuing with piecemeal deadlines for Phase 1 or for continuing to establish piecemeal deadlines for subsequent Phases. Settlement Class Counsel, by including under the heading "How much money will I receive?" in each of the Phase 1 and Phase 2 notices the disclosure that, "[t]o save time and money, payments will be made at the conclusion of the case," appear implicitly to recognize that the differing claim filing requirements in Phases 2 and 3 likely would make a piecemeal approach extremely confusing to Settlement Class Members that had not engaged class action claims management professionals.

[25] *Pincay*, 389 F.3d at 859 (referring to *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993)).

[26] *Id.* at 860 (quoting *Pioneer*, 507 U.S. at 395 n.14).

[27] **Exhibit 6** at 1.

[28] **Exhibit 6** at 3.

FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
September 10, 2020
Page 21

As this Court's appointed Settlement Class Counsel,[29] they are "responsible for protecting the interests of the class as a whole," and, in so doing, "must act in the best interests of the class as a whole."[30] As such, Settlement Class Counsel have both the "ability and authority," and, most importantly, the obligation, to evaluate whether good cause exists to seek from the Court a modification of the Court-approved deadlines, and, if they so find, to make that application. Given the above-described changed circumstances since the Court ordered the Phase 1 and Phase 2 claims filing deadlines,[31] as well as the complexities and resulting confusion that likely resulted from the differing compositions and eligibility requirements of the Settlements and the Settlement Classes, from the differing parameters of the class periods, from the different Effective Dates and the bearing that each had on the several claims filing deadlines and requirements, justice requires that all legitimate proofs of claim filed while Rust continues to process Phase 2 and Phase 3 proofs of claim be permitted to participate equally in the recoveries provided by all thirteen Settlements. This is especially the case when: (a) the Settlement Funds remain in escrow, where most have been for years; (b) the delay in distribution has not been the result of processing legitimate claims that were filed while Phase 2 and Phase 3 proofs of claim continue to be processed; (c) no delay of the distribution or burden on the administration will result, and (d) no prejudice to any Settlement Class Member will occur.[32]

---

[29] *See, e.g.*, Order Grant'g Prelim. App. Settles. with Defs. Japan Airlines Int'l Co., …, Dkt No. 924, at ¶6 (p.3:19-20).

[30] Ann. Manual Complex Lit. §21.641 (4th ed. May 2020 update).

[31] *See, e.g.*, *Nuvelo*, 2012 WL 12920613 at *2 ("If any valid claims are filed between the date of this Order and the date of Distribution, or any adjustments to already-filed Proofs of Claim are made prior to the date of Distribution, Plaintiffs' Lead Counsel may request the Court to amend the Order to permit such adjustment or additional distribution."); *Fallay v. San Francisco City and County*, No. C 08-2261-CRB, 2016 WL 889152, at *1 (N.D. Cal. Mar. 8, 2016) (Breyer, J.) (granting leave to file motion for reconsideration).

[32] *See, e.g. Orthopedic Bone Screw*, 246 F.3d at 324 ("It cannot be maintained that timely registrants are more deserving of remedy. … By excluding … late registrants from the class, the timely registrants would receive what is essentially a 'windfall,' comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants … [T]he loss of a windfall is not prejudicial.); *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 297 F.R.D. 90, 96 (S.D.N.Y. 2013) (Sweet, J.) ("In this circumstance, the

**F R S** | **FINANCIAL**
**RECOVERY**
**STRATEGIES**

Honorable Charles R. Breyer
September 10, 2020
Page 22

**Cures for Deficient Phase 3 Conditions Should be**
**Applied to Cure the Same Deficient Conditions in the**
**Same Claimants' Phase 1 and Phase 2 Proofs of Claim.**

It is blackletter law that, "[i]f the goal of the settlement is to get the relief into the hands

of the class, then the process that requires the least of the class members should be the first

priority."[33] In that same vein, "[c]ompletion and documentation of the claims forms should be no

more burdensome than necessary."[34] Here, however, Rust, at the direction of Settlement Class

Counsel, has engaged in administrative short-sheeting: Each Settlement Class Member that did

not receive a Phase 1B or Phase 2 deficiency notice was deprived by Rust of the opportunity to

cure their deficient Phase 1B and Phase 2 proofs of claim, and Rust has refused to apply to

Phase 1A and Phase 1B deficiencies, and perhaps to Phase 2 deficiencies, Settlement Class

Members' timely Phase 3 deficiency responses that would completely cure those Phase 1 and

Phase 2 deficiencies. Rather than simplify an already unnecessarily complicated claims

administration process, Rust has exacerbated it and thus has deprived bona fide victims of

receiving the compensation to which they are entitled. Settlement Class Counsel's deficiency

---

class members are not prejudiced since they are obligated to share a fixed recovery with other equally
entitled claimants and timely-filed claimants have no justifiable expectation of any particular payout."); 
*In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp.2d 144, 156-57 (D.N.J. 2007) ("despite the significant
value of the late claims, there is no fatal prejudice … with regard to the mere diminution of the expected
recovery of the earlier claimants. … [T]he Court has an obligation not to elevate the claims of any class
member over [others], no matter how large a class member's stake in the case might be."); *In re "Agent
Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988) (Weinstein, J.) ("There can, therefore,
be little prejudice to the claimants whose claims were timely filed by admission of [late] claimants to the
class for consideration on an equal footing. Moreover, since no payments have yet been made to any
claimants, earlier estimates of possible payment amounts did not confer on the early claimants any right
to those particular amounts.").

[33] William B. Rubenstein, 4 Newberg on Class Actions §12:18 (5th ed. June 2020 update).

[34] Ann. Manual Complex Lit. §21.66 (4th ed. May 2020 update); *see also id.* at §21.62 (directing judges to
consider "the fairness and reasonableness of the procedure for processing individual claims under the
settlement"); *Rubio-Delgado*, 2015 WL 3623627 at *7 ("Intentionally reducing the number of class
members who receive a payment by requiring them to jump through unnecessary hoops, however, is a
highly dubious means of reducing costs.").



Honorable Charles R. Breyer
September 10, 2020
Page 23

cure approach deters Settlement Class Members from filing and perfecting their proofs of claim, and, therefore, causes the Settlements to "have less value to the class than the parties assert."[35]

The data that FRS timely provided in connection with curing its clients' Phase 3 proofs of claim, as is the case with all responses to deficient Phase 3 proofs of claim, must be processed by Rust before the administration of the Phase 3 Settlement may be completed. No additional processing of that data is required for it to be applied to Phase 1A, Phase 1B and Phase 2 proofs of claim. Based on FRS's extensive class action settlement experience, which its professionals have gained over decades as class action lead counsel, as claims administrators and as claims consultants, it is a relatively simple and inexpensive task to apply to earlier filed proofs of claim that same data. Yet, and even though both Settlement Class Counsel and Rust are dutybound to protect the interests of all Settlement Class Members and, in that regard, to maximize the recovery to as many of them as possible, Settlement Class Counsel and Rust are using self-imposed – that is, not Court-ordered – deadlines as a mechanism to preclude Settlement Class Members that submitted legitimate proofs of claim from obtaining the full measure of their recoveries.

## CONCLUSION

For the foregoing reasons, justice and equity require the equal participation in all thirteen Settlements of all proofs of claim submitted while Rust continued (and continues) to process Phase 2 and Phase 3 proofs of claim.

Respectfully submitted,

Jeffrey N. Leibell

Enclosures

---

[35] Barbara J. Rothstein & Thomas E. Willging, FEDERAL JUDICIAL CENTER, Managing Class Action Litigation: A Pocket Guide for Judges, 30 (3d ed. 2010).



Honorable Charles R. Breyer
September 10, 2020
Page 24

Copies (via email) to:  Adam J. Zapala, Esq.
                        AZapala@cpmlegal.com
                        Christopher L. Lebsock, Esq.
                        clebsock@hausfeld.com

# EXHIBIT 1

**Jeffrey N. Leibell**

---

**From:** airlinesettlement <info@airlinesettlement.com>
**Sent:** Wednesday, September 18, 2019 9:52 AM
**To:** Angela Rivera <arivera@frsco.com>
**Subject:** RE: Transpacific Questions

Thank you for your inquiry.

Please below.

1. If a claim is filed in only the most recent claim filing (February deadline), will those claims be retroactively be put in the earlier rounds? No, they will not. The deadlines to submit claims for the earlier rounds has passed.

2. Will class members who have only filed in the most recent round, receive a recovery from the earlier rounds? No they will not. They will only be potentially eligible for this final round's funds.

3. Will all rounds be paying together or will each one be paid separately? That is to say, will class members who filed claims during all 3 claim filings receive 1 check for all 3 claims, or will they receive separate checks? This is subject to change, but the current distribution plan is to issue one check that includes all eligible settlement payments per claimant at the conclusion of the case.

Settlement Administrator
Transpacific Air Settlement
P.O.Box 2209
Faribault, MN 55021
info@airlinesettlement.com

---

**From:** Angela Rivera [mailto:arivera@frsco.com]
**Sent:** Monday, September 16, 2019 8:00 AM
**To:** airlinesettlement
**Cc:** Transpacific
**Subject:** Transpacific Questions
**Importance:** High

Dear Settlement Administrator:

I have a few questions regarding the Transpacific Settlement.

1. If a claim is filed in only the most recent claim filing (February deadline), will those claims be retroactively be put in the earlier rounds?
2. Will class members who have only filed in the most recent round, receive a recovery from the earlier rounds?
3. Will all rounds be paying together or will each one be paid separately? That is to say, will class members who filed claims during all 3 claim filings receive 1 check for all 3 claims, or will they receive separate checks?

Thank you in advance for your prompt attention to this matter.

Regards,

**Angela Rivera**
Project Manager
561.231.5339 | arivera@frsco.com | **LinkedIn** [linkedin.com]

---



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

EXTERNAL EMAIL: This email was sent to Rust Consulting from an external source. Please be vigilant when opening attachments, clicking links or sharing information.

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

# EXHIBIT 2

**Jeffrey N. Leibell**

---

**From:** Adam Zapala <AZapala@cpmlegal.com>
**Sent:** Thursday, October 17, 2019 1:38 PM
**To:** Richard Maron <rmaron@frsco.com>; clebsock@hausfeld.com
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Angela Rivera <arivera@frsco.com>
**Subject:** RE: In Re Transpacific Passenger Air Transportation Antitrust Litigation

Richard:

Thank you for your email.  Apologies for the slight delay in response, as I was traveling.  Your understanding of the claims process, as you have articulated in your initial email below, is correct. The deadlines to make claims for the various rounds of settlements were established and approved by the Court and have been in effect for a long time now.   Please let us know if you have further questions about the claims process.  Thank you.


Adam J. Zapala (Bio)
**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK**
840 Malcolm Road, Suite 200  |  Burlingame, CA 94010
Tel: (650) 697-6000  |  Fax:  (650) 697-0577  |  Email: azapala@cpmlegal.com

**CONFIDENTIALITY NOTICE**:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.   The information is intended only for the use of the individual or entity named above.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

---

**From:** Richard Maron <rmaron@frsco.com>
**Sent:** Thursday, October 17, 2019 10:00 AM
**To:** Adam Zapala <AZapala@cpmlegal.com>; clebsock@hausfeld.com
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Angela Rivera <arivera@frsco.com>
**Subject:** RE: In Re Transpacific Passenger Air Transportation Antitrust Litigation

Mr. Lebsock and Mr. Zapala –

This is to follow up on my email from last week in connection with the *In Re Transpacific Passenger Air Transportation Antitrust Litigation*. See below.

Please advise if I should forward the email to other counsel for the class or if you will be replying to my email.

Thank you again for your time,

Rich Maron

**Richard Maron**
Deputy General Counsel
201.853.1237 | rmaron@frsco.com | **LinkedIn**

---

 **Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*
*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*
*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

---

**From:** Richard Maron
**Sent:** Thursday, October 10, 2019 4:54 PM
**To:** azapala@cpmlegal.com; clebsock@hausfeld.com
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Angela Rivera <arivera@frsco.com>
**Subject:** In Re Transpacific Passenger Air Transportation Antitrust Litigation

Mr. Zapala and Mr. Lebsock –

By way of introduction, I am the Deputy General Counsel of Financial Recovery Strategies ("FRS"). FRS was hired by numerous companies to submit and manage their proof of claim forms to recover from the settlements obtained in the *In Re Transpacific Passenger Air Transportation Antitrust Litigation*. I am writing to you in your capacity as Class Counsel for this litigation.

The Claims Administrator recently informed us that if an eligible claimant filed a proof of claim form in the Fourth Round of settlements, but not in the earlier rounds of settlements, that claimant, even though it made purchases that satisfy the requirements of the earlier rounds of settlements, will only be eligible to recover from the Fourth Round of Settlements funds. The same holds true for claims filed in the Second and Third Rounds of Settlements. The Claims Administrator also informed us that, as of today, the plan is to "issue one check that includes all eligible settlement payments per claimant at the conclusion of the case."

The claims process for this action began over 4 years ago and is still ongoing. As such, wouldn't it be more equitable to allow all eligible claimants to recover from the totality of the combined settlements funds rather than just from the funds of the individual rounds of settlements? At the end of the day, isn't it the goal of this class action litigation to provide as much relief as possible to those entities that were harmed by the Defendants' alleged illegal activities?

Is what the Claims Administrator informed us the actual plan of action for this case?

Thank you,

Rich Maron

**Richard Maron**

Deputy General Counsel
201.853.1237 | rmaron@frsco.com | **LinkedIn**



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

# EXHIBIT 3

**Jeffrey N. Leibell**

---

**Subject:**        RE: FRS Clients in Transpacific


**From:** Ernste, Patricia <pernste@rustconsulting.com>
**Sent:** Tuesday, May 19, 2020 1:45 PM
**To:** Angela Rivera <arivera@frsco.com>
**Cc:** Sandy Peters <speters@frsco.com>; Robin Niemiec <rniemiec@frsco.com>; airlinesettlement <info@airlinesettlement.com>; Ernste, Patricia <pernste@rustconsulting.com>
**Subject:** RE: FRS Clients in Transpacific


Angela,

Since deficiencies for Phase 1 Settlement were mailed, processed and completed in 2016  we will not be able to accept any additional purchase information for these claims.  We will only be able to accept data pertaining to the deficiencies for Phase 2 and 3 Settlement claims which were mailed on April 28 with a response deadline of May 28, 2020.

As always, feel free to contact me if you have any questions.

Kind regards,

Patti

**Patti Ernste, Senior Project Manager**
**Rust Consulting, an Exela Technologies Brand**
E: pernste@rustconsulting.com
O: +1 612.359.2811
625 Marquette Avenue, Suite 900 | Minneapolis, MN 55402

**Sign up to ensure you receive *Insights* from Rust Consulting and Kinsella Media.**
www.RustConsulting.com | Rust Twitter | Rust LinkedIn

---

**From:** Angela Rivera [mailto:arivera@frsco.com]
**Sent:** Monday, May 18, 2020 5:14 PM
**To:** Ernste, Patricia <pernste@rustconsulting.com>
**Cc:** Sandy Peters <speters@frsco.com>; Robin Niemiec <rniemiec@frsco.com>; airlinesettlement <info@airlinesettlement.com>
**Subject:** RE: FRS Clients in Transpacific
**Importance:** High

EXTERNAL EMAIL: This email was sent to Rust Consulting from an external source. Please be vigilant when opening attachments, clicking links or sharing information.

---

Patti:

I'm hoping you can clear something up for me regarding the deficiency responses.

We have clients where a timely claim was filed in the first round, data has not yet been provided and we received a deficiency letter for them for the current round. If the data provided to cure the round 3 deficiency **also** cures the

deficiencies on the earlier rounds, are you saying they will not be paid for the earlier rounds? Forgive me for asking this again, I'm just confused on the response in your e-mail below, because honestly, it doesn't make much sense to me.

Below are some examples of the situation I outlined above.

- Everburn Manufacturing (Claim No. 1411) filed on 10/9/15, data was not previously provided and we have now received data from our client that pertains to all rounds of the Transpacific Settlement; and
- Romaine Electric Corporation (Claim No. 1490) filed on 10/6/15, data was not previously provided and we have now received data from our client that pertains to all rounds of the Transpacific Settlement

As always, thank you for your help.

Regards,


**Angela Rivera**
Project Manager
561.231.5339 | arivera@frsco.com | **LinkedIn** [linkedin.com]

---


[frsco.com]

**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*
*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*
*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

---

**From:** Ernste, Patricia <pernste@rustconsulting.com>
**Sent:** Friday, May 8, 2020 2:06 PM
**To:** Angela Rivera <arivera@frsco.com>
**Cc:** Sandy Peters <speters@frsco.com>; Robin Niemiec <rniemiec@frsco.com>; Ernste, Patricia <pernste@rustconsulting.com>; airlinesettlement <info@airlinesettlement.com>
**Subject:** RE: FRS Clients in Transpacific

Angela,

Deficiencies for Phase 1 Settlement were mailed, processed and completed in 2016 and deficiencies for Phase 2 and 3 Settlements were mailed on April 28 with a response deadline of May 28, 2020. We are currently working on an extract of all claims filed by FRS which will provide detail regarding the claims submitted for each phase. Following the deficiency process there will be an audit of all phases, and to save time and money, payments will be made at the conclusion of the case.

Also, we've noticed that some of the claims you filed have a NJ address, is it acceptable for us to update the addresses on file under FRS to your FL address?

Have a great weekend – Be Safe!

As always, feel free to contact me if you have any questions.

Kind regards,

Patti

**Patti Ernste, Senior Project Manager**
**Rust Consulting, an Exela Technologies Brand**
E: pernste@rustconsulting.com
O: +1 612.359.2811
625 Marquette Avenue, Suite 900 | Minneapolis, MN 55402

**Sign up to ensure you receive *Insights* from Rust Consulting and Kinsella Media.**
**[nam12.safelinks.protection.outlook.com]**
www.RustConsulting.com [nam12.safelinks.protection.outlook.com] | Rust Twitter
[nam12.safelinks.protection.outlook.com] | Rust LinkedIn [nam12.safelinks.protection.outlook.com]

---

**From:** Angela Rivera [mailto:arivera@frsco.com]
**Sent:** Tuesday, May 5, 2020 9:00 AM
**To:** Ernste, Patricia <pernste@rustconsulting.com>
**Cc:** Sandy Peters <speters@frsco.com>; Robin Niemiec <rniemiec@frsco.com>
**Subject:** FRS Clients in Transpacific
**Importance:** High

Hi Patti:

Hope all is well.

I have some additional questions regarding our claims in Transpacific.

1. For Phase 1 and 2, we have 177 clients where no deficiency letter was ever received. Can you please tell me why deficiency letters were never received for these clients?
2. For Phase 3, we have 20 clients where no deficiency letter was received. Can you please tell me why deficiency letters weren't received for these clients?
3. With our responses to the current deficiency deadline, will our claims in the earlier phases be cured as well? If not, what do we need to do to cure those claims?

I have attached a spreadsheet that shows the client name, claim number (when available) and date the claim form was submitted for the clients referenced in numbers 1 & 2 above. Clients for Phase 1 & 2 are on Tab 1 of the spreadsheet and clients for Phase 3 are on Tab 2.

Please let me know if you need any additional information to complete this request.

Thank you.

**Angela Rivera**
Project Manager
561.231.5339 | arivera@frsco.com | **LinkedIn** [linkedin.com] [nam12.safelinks.protection.outlook.com]

---

**FRS** [frsco.com]
[nam12.safelinks.protection.outlook.com]

**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com
[nam12.safelinks.protection.outlook.com]

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

# EXHIBIT 4

## Jeffrey N. Leibell

| | |
|---|---|
| **Subject:** | RE: In Re Transpacific Passenger Air Transportation Antitrust Litigation - Deficiency Response Deadline |

**From:** Christopher L. Lebsock <clebsock@hausfeld.com>
**Sent:** Tuesday, July 28, 2020 4:56 PM
**To:** Jeffrey N. Leibell <jleibell@frsco.com>; azapala@cpmlegal.com
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: In Re Transpacific Passenger Air Transportation Antitrust Litigation - Deficiency Response Deadline


Dear Jeff,


Thank you for your email. Please raise these matters directly with the claims administrator since they are coordinating all of open issues raised by claimants. We have advised them that they can expect to be hearing from you.


Best Regards,


Chris

---

**From:** Jeffrey N. Leibell <jleibell@frsco.com>
**Sent:** Tuesday, July 28, 2020 9:58 AM
**To:** Christopher L. Lebsock <clebsock@hausfeld.com>; azapala@cpmlegal.com
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: In Re Transpacific Passenger Air Transportation Antitrust Litigation - Deficiency Response Deadline


Chris & Adam,

I'm writing in the spirit of cooperation concerning your plans for distribution.

In your last communication with my colleague, Rich Maron, you advised that you intended to enforce the claim filing deadline for each Phase such that a timely claim filed in a later Phase would not participate in the distribution provided by earlier Phases. As an explanation, you stated that those deadlines "were established and approved by the Court and have been in effect for a long time now." While we do not dispute those facts, we do not understand them to require excluding from earlier settlements legitimate claims filed in later ones. And under the particular circumstances of these settlements, we do not believe that it is in the interests of the class as a whole to adhere to your planned approach. To be clear, we are not seeking an extension of the final deadline; we are, however, seeking to have all legitimate claims submitted before that deadline participate in the recoveries provided by all settlements.

We will not insult you by citing the precedent concerning fairness to all class members; paying late claims that are received while timely claims are being processed and, therefore do not delay the distribution; and the design and implementation of a claims process that gets relief into the hands of the class with the least burden on them as practicable. But given our obligation to represent our clients' interests, we are seeking from you an explanation of ***why*** you would not want to

include all legitimate claimants in one comprehensive distribution. Under the approach that we understand you intend to take, for example, every legitimate claim filed after the October 13, 2015 claim filing deadline for Phase I will not participate in the $39.5 million recovered in that Phase. In other words, no claim filed after October 13, 2015 will recover from the Phase I settlements even though the 8 settlements that comprise that Phase were reached between April 15, 2014 and August 13, 2014, and even though the settlement funds have been in escrow for over 5 years. To us, that seems unfair, as is the manner in which deficiencies are being addressed: We have been advised by the claims administrator that any cure provided in a later Phase will not be applied to the identical deficiency in a claim filed in an earlier Phase even when no deficiency notification was received for the claim filed in the earlier Phase.

We have substantial experience in class action settlements and distributions, both as class counsel and as claims administrators. And because we consider you to be highly experienced and well-respected class counsel, we do not understand why you would seek to exclude rather than include all of the class members that you represent and to maximize their claim values. Even putting to the side the relevant precedent – that is, even assuming that there is some support for your approach and that you **_could_** exclude legitimate class members and their cures – the question is why you **_should_**.

We hope that, once you fairly consider these circumstances, you will reconsider your approach to the distribution and deficiency cure responses.

We would be happy to discuss this further with you.

Best regards,
Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn**

---



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

# EXHIBIT 5

**Jeffrey N. Leibell**

---

**Subject:**          RE: Transpacific Distribution


**From:** airlinesettlement <info@airlinesettlement.com>
**Sent:** Friday, August 14, 2020 2:40 PM
**To:** Jeffrey N. Leibell <jleibell@frsco.com>
**Cc:** airlinesettlement <info@airlinesettlement.com>; Robin Niemiec <rniemiec@frsco.com>; Richard Maron
<rmaron@frsco.com>; Christopher L. Lebsock <clebsock@hausfeld.com>; azapala@cpmlegal.com; Seth R. Gassman
<sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo
<ecastillo@cpmlegal.com>
**Subject:** RE: Transpacific Distribution


****This Email Originated Outside of FRS. Use Caution When Clicking Links or Opening Attachments.****
Dear Jeffrey Leibell,


Please see Rust's attached response to your email.  If you have any questions or would like to discuss further, please e-
mail info@airlinesettlement.com.

Sincerely,


Transpacific Air Transportation Settlement

---

**From:** Jeffrey N. Leibell [mailto:jleibell@frsco.com]
**Sent:** Monday, August 10, 2020 11:56 AM
**To:** Ernste, Patricia <pernste@rustconsulting.com>
**Cc:** airlinesettlement <info@airlinesettlement.com>; Robin Niemiec <rniemiec@frsco.com>; Richard Maron
<rmaron@frsco.com>; Christopher L. Lebsock <clebsock@hausfeld.com>; azapala@cpmlegal.com; Seth R. Gassman
<sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo
<ecastillo@cpmlegal.com>
**Subject:** Transpacific Distribution

---

EXTERNAL EMAIL: This email was sent to Rust Consulting from an external source. Please be vigilant when opening
attachments, clicking links or sharing information.

---

Patti,

I am the Chief Legal & Financial Officer of FRS. FRS has submitted claims on behalf of its clients to participate in the
recoveries provided by the several settlements in this class action. I am writing in the spirit of cooperation concerning
Rust's plans for distribution.

In past communications with my colleague, Angela Rivera, you advised that Rust intended to enforce the claim filing
deadline for each Phase such that a timely claim filed in a later Phase would not participate in the distribution provided
by earlier Phases. *See* Rust Deadline Email (2019-09-18). Rich Maron, FRS's Deputy General Counsel, then took the issue
up with class counsel, who explained that those deadlines "were established and approved by the Court and have been in
effect for a long time now." *See* Counsel Email (2019-10-17). I next communicated concerning this issue by email to class
counsel on July 28. In addition to the distribution matter, I also raised the manner in which deficiencies are being
addressed, that is, any cure provided in a later Phase will not be applied to the identical deficiency in a claim filed in an
earlier Phase even when no deficiency notification was received for the claim filed in the earlier Phase. *See* Rust Deficiency

Email (2020-05-19). Class counsel advised that FRS should bring these matters directly to Rust, and that they had advised Rust to expect my email.

As we explained to class counsel, while FRS does not dispute that the claims filing deadlines have passed, we do not understand that circumstance to require excluding from earlier settlements legitimate claims filed in later ones. We also advised that, under the particular circumstances of these settlements, we do not believe that it is in the interests of the class as a whole to adhere to the planned approach. To be clear, we are not seeking an extension of the final deadline; we are, however, seeking to have all legitimate claims submitted before that deadline participate in the recoveries provided by all settlements. FRS is sure that, as class counsel, Rust is well-aware of the overwhelming precedent requiring fairness to all class members; paying late claims that are received while timely claims are being processed and, therefore do not delay the distribution (*LCD Indirect* and *DRAM* come to mind); and requiring the design and implementation of a claims process that gets relief into the hands of the class with the least burden on them as practicable. But given our obligation to represent our clients' interests, we sought from class counsel and, at their direction, are seeking from Rust, an explanation of *__why__* class counsel and Rust would not want to include all legitimate claimants in one comprehensive distribution. Under the approach that we understand that Rust intends to take, for example, every legitimate claim filed after the October 13, 2015 claim filing deadline for Phase I will not participate in the $39.5 million recovered in that Phase. In other words, no claim filed after October 13, 2015 will recover from the Phase I settlements even though the 8 settlements that comprise that Phase were reached between April 15, 2014 and August 13, 2014, and even though the settlement funds have been in escrow for over 5 years. To FRS, that seems grossly unfair, as is the manner in which Rust is addressing deficiencies.

As you know, FRS has substantial experience in class action settlements and distributions, both as class counsel and as claims administrators. And because we consider class counsel to be highly experienced and well-respected, and we also consider Rust to be similarly experienced and prominent, we do not understand why you both would seek to exclude rather than include all of the class members that class counsel and Rust represent and to maximize their claim values. Even putting to the side the relevant precedent – that is, even assuming that there is some support for the planned approach and that Rust *__could__* exclude legitimate class members and their cures – the question is why Rust *__should__*.

We hope that, once Rust fairly consider these circumstances, it will reconsider its planned approach to the distribution and deficiency cure responses.

We would be happy to discuss this further with you.

Very truly yours,
Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn** [linkedin.com]



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*
*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*
*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as

information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.



*Via Email*

Jeffrey N. Leibell
Chief Legal & Financial Officer
Financial Recovery Strategies
80 Wesley Street, South Hackensack, NJ 07606
jleibell@frsco.com

August 14, 2020

Re: *In re Transpacific Passenger Air Transportation Antitrust Litigation*, MDL No. 1913 (N.D. Cal.).

Dear Mr. Leibell,

Rust Consulting, Inc. ("Rust") is in receipt of your email dated August 10, 2020, concerning the distribution and deficiency cure processes in the above-cited class action settlement ("*In re Transpacific*").

Rust has been engaged in this matter as a neutral third party and does not have the authority to act outside the terms of the *In re Transpacific* settlement agreement. This is why we are not able to "reconsider [our] planned approach to the distribution and deficiency cure responses" as requested. We are required to implement the terms of the settlement, including the deadlines for all individuals and third-party filers that submitted claims, as directed by counsel and approved by the Court. We note that we have received similar requests from other potential claimants over time, and we have provided them with a similar response.

Sincerely,

Ann Haan
Senior Project Manager
Rust Consulting, Inc.
625 Marquette Avenue, Suite 900
Minneapolis, MN 55402
612.359.2881
ahaan@rustconsulting.com

# EXHIBIT 6

**Jeffrey N. Leibell**

**Subject:**              RE: Transpacific Distribution


**From:** Adam Zapala <AZapala@cpmlegal.com>
**Sent:** Wednesday, August 19, 2020 1:32 PM
**To:** Jeffrey N. Leibell <jleibell@frsco.com>; Christopher L. Lebsock <clebsock@hausfeld.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; airlinesettlement
<info@airlinesettlement.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann
<mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: Transpacific Distribution


Dear Jeff,

Thanks for your email and for attaching the previous email.  In reading through the correspondence, it seems as
though you would like an explanation as to why the claims administrator will not accept late claims in the
*Transpacific* matter.  But, the reasoning for that determination is clear: as the claims administrator stated in its
correspondence, it does not have the authority or ability to alter Court-ordered deadlines.  You have now asked
Class Counsel to comment further on this matter, but as the previous email makes clear, we have already addressed
your inquiry about late filed claims.  To reiterate, there have been longstanding Court-ordered deadlines for claims
in this case.  The class has been on notice of them for years.  Other putative class members have also been told
that deadlines are deadlines.  Class Counsel does not have the ability or authority to simply alter Court-ordered
deadlines. Thanks.


Adam J. Zapala (Bio)
**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK**
840 Malcolm Road, Suite 200  |  Burlingame, CA 94010
Tel: (650) 697-6000  |  Fax:  (650) 697-0577  |  Email: azapala@cpmlegal.com


**CONFIDENTIALITY NOTICE**:  This email is covered by the Electronic Communications Privacy Act, 18
U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged
and confidential information belonging to the sender.   The information is intended only for the use of the
individual or entity named above.   If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email
communication is strictly prohibited.  If you have received this email in error, please notify us immediately by
telephone or email and permanently delete the email, any attachments, and all copies thereof from any
networks, drives, cloud, or other storage media and please destroy any printed copies of the email or
attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client
relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client
relationship shall be created unless established in a separate, written retainer agreement or by court order.


**From:** Jeffrey N. Leibell <jleibell@frsco.com>
**Sent:** Tuesday, August 18, 2020 10:26 AM
**To:** Adam Zapala <AZapala@cpmlegal.com>; Christopher L. Lebsock <clebsock@hausfeld.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; airlinesettlement
<info@airlinesettlement.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann

<mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: Transpacific Distribution


My email and Chris' email response are attached.



**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn**

---

 **Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

---

**From:** Adam Zapala <AZapala@cpmlegal.com>
**Sent:** Tuesday, August 18, 2020 12:53 PM
**To:** Jeffrey N. Leibell <jleibell@frsco.com>; Christopher L. Lebsock <clebsock@hausfeld.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; airlinesettlement <info@airlinesettlement.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: Transpacific Distribution


Jeff,

Thanks for your email.  Sorry if I missed it, but your email asks class counsel to "provide a prompt and substantive response to the requests that FRS proposed."  What requests did FRS propose?


Adam J. Zapala (Bio)
**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK**
840 Malcolm Road, Suite 200  |  Burlingame, CA 94010
Tel: (650) 697-6000  |  Fax:  (650) 697-0577  |  Email: azapala@cpmlegal.com

**CONFIDENTIALITY NOTICE**:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.   The information is intended only for the use of the individual or entity named above.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client

relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

---

**From:** Jeffrey N. Leibell <jleibell@frsco.com>
**Sent:** Monday, August 17, 2020 6:08 AM
**To:** Christopher L. Lebsock <clebsock@hausfeld.com>; Adam Zapala <AZapala@cpmlegal.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; airlinesettlement <info@airlinesettlement.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: Transpacific Distribution

Chris & Adam:

As you know, FRS received from Rust the below response to our inquiries. Given the substantive – that is, non-administrative – nature of those inquires, Rust's response was entirely expected; after all, it is counsel, not the claims administrator, that determines whether sufficient cause exists to seek relief from the Court. What is apparent from Rust's letter, though, is that "similar requests" have been passed on to Rust, which means that FRS does not stand alone in believing that good cause exists to seek modifications.

We do not understand why you directed us to pose our requests to Rust, but, now that the exercise is over, we would appreciate from you a prompt and substantive response to the requests that FRS posed.

Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn**

---

 **Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*
*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*
*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

---

**From:** airlinesettlement <info@airlinesettlement.com>
**Sent:** Friday, August 14, 2020 2:40 PM
**To:** Jeffrey N. Leibell <jleibell@frsco.com>
**Cc:** airlinesettlement <info@airlinesettlement.com>; Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; Christopher L. Lebsock <clebsock@hausfeld.com>; azapala@cpmlegal.com; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: Transpacific Distribution

****This Email Originated Outside of FRS. Use Caution When Clicking Links or Opening Attachments.****
Dear Jeffrey Leibell,

Please see Rust's attached response to your email.  If you have any questions or would like to discuss further, please e-mail info@airlinesettlement.com.

Sincerely,


Transpacific Air Transportation Settlement

---

**From:** Jeffrey N. Leibell [mailto:jleibell@frsco.com]
**Sent:** Monday, August 10, 2020 11:56 AM
**To:** Ernste, Patricia <pernste@rustconsulting.com>
**Cc:** airlinesettlement <info@airlinesettlement.com>; Robin Niemiec <rniemiec@frsco.com>; Richard Maron <rmaron@frsco.com>; Christopher L. Lebsock <clebsock@hausfeld.com>; azapala@cpmlegal.com; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** Transpacific Distribution

EXTERNAL EMAIL: This email was sent to Rust Consulting from an external source. Please be vigilant when opening attachments, clicking links or sharing information.

---

Patti,

I am the Chief Legal & Financial Officer of FRS. FRS has submitted claims on behalf of its clients to participate in the recoveries provided by the several settlements in this class action. I am writing in the spirit of cooperation concerning Rust's plans for distribution.

In past communications with my colleague, Angela Rivera, you advised that Rust intended to enforce the claim filing deadline for each Phase such that a timely claim filed in a later Phase would not participate in the distribution provided by earlier Phases. *See* Rust Deadline Email (2019-09-18). Rich Maron, FRS's Deputy General Counsel, then took the issue up with class counsel, who explained that those deadlines "were established and approved by the Court and have been in effect for a long time now." *See* Counsel Email (2019-10-17). I next communicated concerning this issue by email to class counsel on July 28. In addition to the distribution matter, I also raised the manner in which deficiencies are being addressed, that is, any cure provided in a later Phase will not be applied to the identical deficiency in a claim filed in an earlier Phase even when no deficiency notification was received for the claim filed in the earlier Phase. *See* Rust Deficiency Email (2020-05-19). Class counsel advised that FRS should bring these matters directly to Rust, and that they had advised Rust to expect my email.

As we explained to class counsel, while FRS does not dispute that the claims filing deadlines have passed, we do not understand that circumstance to require excluding from earlier settlements legitimate claims filed in later ones. We also advised that, under the particular circumstances of these settlements, we do not believe that it is in the interests of the class as a whole to adhere to the planned approach. To be clear, we are not seeking an extension of the planned deadline; we are, however, seeking to have all legitimate claims submitted before that deadline participate in the recoveries provided by all settlements. FRS is sure that, as are class counsel, Rust is well-aware of the overwhelming precedent requiring fairness to all class members; paying late claims that are received while timely claims are being processed and, therefore do not delay the distribution (*LCD Indirect* and *DRAM* come to mind); and requiring the design and implementation of a claims process that gets relief into the hands of the class with the least burden on them as practicable. But given our obligation to represent our clients' interests, we sought from class counsel and, at their direction, are seeking from Rust, an explanation of ***why*** class counsel and Rust would not want to include all legitimate claimants in one comprehensive distribution. Under the approach that we understand that Rust intends to take, for example, every legitimate claim filed after the October 13, 2015 claim filing deadline for Phase I will not participate in the $39.5 million recovered in that Phase. In other words, no claim filed after October 13, 2015 will recover from the Phase I settlements even though the 8 settlements that comprise that Phase were reached between April 15, 2014 and August 13, 2014, and even though the

4

settlement funds have been in escrow for over 5 years. To FRS, that seems grossly unfair, as is the manner in which Rust is addressing deficiencies.

As you know, FRS has substantial experience in class action settlements and distributions, both as class counsel and as claims administrators. And because we consider class counsel to be highly experienced and well-respected, and we also consider Rust to be similarly experienced and prominent, we do not understand why you both would seek to exclude rather than include all of the class members that class counsel and Rust represent and to maximize their claim values. Even putting to the side the relevant precedent – that is, even assuming that there is some support for the planned approach and that Rust **_could_** exclude legitimate class members and their cures – the question is why Rust **_should_**.

We hope that, once Rust fairly consider these circumstances, it will reconsider its planned approach to the distribution and deficiency cure responses.

We would be happy to discuss this further with you.

Very truly yours,
Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn** [linkedin.com]

 [frsco.com]

**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*
*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*
*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

# FRS'S REPLY LETTER

# FRS

**FINANCIAL RECOVERY STRATEGIES**

Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

**VIA OVERNIGHT COURIER**

September 24, 2020

Honorable Charles R. Breyer
Senior District Judge
United States District Court
   for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

*In re Transpacific Passenger Air Transportation Antitrust Litigation*,
  Civil Action No. 3:07-CV-05634-CRB, MDL No. 1913 (N.D. Cal.)

Dear Judge Breyer:

FRS provides this brief reply to Settlement Class Counsel's September 21, 2020 letter to the Court ("Settlement Class Counsel's Letter").[1]

## FRS Is Not Seeking Special Treatment for Its Clients

Contrary to Settlement Class Counsel's characterization, FRS is not seeking special treatment for its clients.[2] FRS has been retained only by those Settlement Class Members referenced in FRS's Initial Letter. Accordingly, while FRS may only speak on behalf of its clients, what we seek is equitable treatment for all Settlement Class Members. Any relief that the Court grants from Settlement Class Counsel's unfair treatment should be applied equally to all similarly situated Settlement Class Members.

Settlement Class Counsel, though they do not address the merits of FRS's complaints, continue to argue that deadlines are deadlines no matter the equities or the changed circumstances.[3] According to Settlement Class Counsel, they may violate longstanding precedent

---

[1] All terms with initial capitalization that are not defined herein shall have the meanings ascribed to them in FRS's September 10, 2020 letter to the Court ("FRS's Initial Letter").

[2] *See* Settlement Class Counsel's Letter at 1.

[3] *See, e.g.,* Settlement Class Counsel's Letter at 2-3 ("Rust and Class Counsel have adhered to all Court-ordered deadlines and have not deviated from the Court-ordered deadlines for *any* claimant to date. …



Honorable Charles R. Breyer
September 24, 2020
Page 2

that mandates the consideration of the facts and circumstances of these Settlements and their

administration,[4] as long as they "take a consistent position with respect to all potential

claimants."[5] Settlement Class Counsel were appointed by the Court to represent the interests of

all Settlement Class Members and thus owe to all of them fiduciary and ethical duties to act in

their best interests.[6] By enforcing deadlines without considering the impact on the Settlement

Class, however, Settlement Class Counsel are violating both established Ninth Circuit precedent

and their duties to the Settlement Class as a whole.

**Settlement Class Counsel Seek to Postpone the Inevitable**

As FRS has acknowledged, the customary manner in which to address these issues is in

connection with a motion to distribute.[7] As we explained, however, this situation is not

"customary," especially given that Settlement Class Counsel have clearly expressed their

---

Rust and Class Counsel remain mindful that they must take a consistent position with respect to all potential claimants so that no potential claimant is treated differently than any other. … Arbitrarily altering deadlines for some (or many) late-filers raises potential questions about fairness to all claimants if special accommodations are granted on an individualized, claimant by claimant basis outside of the distribution framework established for the class as a whole.").

[4] *See, e.g.,* FRS's Initial Letter at 15-23 (and cases cited therein).

[5] Settlement Class Counsel's Letter at 2.

[6] *See, e.g.,* FRS's Initial Letter at 21; *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("class counsel's fiduciary duty is to the class as a whole"), *cited in In re Google LLC Street View Elec. Comm's Litig.*, Case No. 10-md-02184-CRB, 2020 WL 1288377, at *12 (N.D. Cal. Mar. 18, 2020) (Breyer, J.) ("Class Counsel have an obligation to the class as a whole—not just to the 1% of the class that is able to file a claim."); *accord* FED. R. CIV. P. 23(g)(1)(B) (In appointing class counsel, court must consider, among other things, "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."); *id.* at 23(g)(2) ("If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class."). Contrary to Settlement Class Counsel's assertion, therefore, it was not FRS's responsibility to object sooner, *see* Settlement Class Counsel's Letter at 3; rather, it was and is Settlement Class Counsel's universally held responsibility to represent the best interests of the Settlement Class as a whole, which interests, as explained in FRS's Initial Letter, require Settlement Class Counsel's consideration, whether or not FRS or anyone else objects, of the facts and circumstances and the changes therein of these Settlements and their administration.

[7] Settlement Class Counsel's Letter at 3 (quoting FRS's Initial Letter at 3).



Honorable Charles R. Breyer
September 24, 2020
Page 3

intentions. And as Settlement Class Counsel concede, these issues may not be avoided: Every claimant has the due process right – without the need to intervene – to challenge the determination of its proof of claim.[8] Accordingly, the most efficient and practical approach is to resolve these issues while Rust is still auditing proofs of claim. Postponing their resolution will only further delay distribution to Settlement Class Members that have already waited long enough to receive their recoveries.

<u>**CONCLUSION**</u>

For the foregoing reasons and those set forth in FRS's Initial Letter, justice and equity require the equal participation in all thirteen Settlements of all proofs of claim submitted while Rust continued (and continues) to process Phase 2 and Phase 3 proofs of claim.

Respectfully submitted,

Jeffrey N. Leibell

Enclosures

Copies (via email) to:  Adam J. Zapala, Esq.
AZapala@cpmlegal.com
Christopher L. Lebsock, Esq.
clebsock@hausfeld.com

---

[8] Settlement Class Counsel argue that, absent intervention, class members may not communicate with the Court about the violation of their rights by class counsel. *See* Settlement Class Counsel's Letter at 3. In their effort to bar the courthouse doors to the Settlement Class Members that they are dutybound to represent, they cite as support only two cases that have nothing to do with class members' rights. In *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933, (2009), which was a qui tam action not a class action, the Court defined the term "party"; it did not address whether and how a class member may communicate with a court. And in *NAACP v. N.Y.*, 413 U.S. 345, 365 (1973), which was a declaratory action brought by New York State, not a class action, the Court was silent on matters relevant to class member rights to communicate with a court. FRS is not aware of any case in which a court held that, to challenge the determination of its proof of claim, a class member must become an intervenor.