Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | Case No. 3:07-cv-05634-CRB |
| | MDL No. 1913 |
| This Document Relates To: | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUNDS** |
| ALL ACTIONS | Hearing Date: February 11, 2022 |
| | Judge: Hon. Charles R. Breyer |
| | Time: 10 a.m. |
| | Courtroom: 6, 17th Floor |

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds; MDL No. 1913; Case No. 3:07-cv-05634-CRB**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND ........................................................................................................1

III.    ARGUMENT ........................................................................................................3

    A.    Legal Standard ........................................................................................3

    B.    FRS's Objection Is Procedurally Invalid. ........................................................4

    C.    FRS Failed to Show Excusable Neglect. ........................................................6

        1.    FRS Does Not Offer Any Reason for Its Failure to Submit Claims and Deficiency Cures in Connection with Phases 1 and 2 Before the Court-Approved Phases 1 and 2 Deadlines. ........................................6

        2.    Class Members Who Submitted Timely and Valid Claims Will Suffer Prejudice from the Relief FRS Seeks. ........................................7

IV.    CONCLUSION ........................................................................................................9

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Table of Authorities**

**Page(s)**

**Cases**

*Blank v. Jacobs,*
No. 03-CV-2111(JS)(WDW), 2012 WL 13034912 (E.D.N.Y. Nov. 29, 2012) ..........................3

*In re Crazy Eddie Securities Litig.,*
906 F. Supp. 840 (E.D. N.Y. 1995) ...................................................................................4

*In re Gypsum Antitrust Cases,*
565 F.2d 1123 (9th Cir. 1977) .........................................................................................7

*In re Homestore.com Inc.,*
225 F.R.D. 252 (C.D. 2004).............................................................................................6

*Krakauer v. Dish Network LLC,*
2019 WL 3002883 (M.D. N.C. 2019) ..............................................................................7

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
246 F.3d 315 (3d Cir. 2001).....................................................................................3, 4, 7

*In re Oxford Health Plans, Inc.,*
383 Fed. Appx. 43 (2d Cir. 2010) ..............................................................................4, 7

*Palazzo v. Gulf Oil Corp.,*
764 F.2d 1381 (11th Cir. 1985) .......................................................................................4

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,*
507 U.S. 380 (1993)..........................................................................................................3

*Rowland v. California Men's Colony, Unit II Men's Advisory Council,*
506 U.S. 194 (1993)..........................................................................................................4

*S.E.C. v. Hardy,*
803 F.2d 1034 (9th Cir. 1986) .........................................................................................6

*Udoinyion v. The Guardian Sec.,*
440 F. App'x 731 (11th Cir. 2011) ..................................................................................4

*United States v. Hagerman,*
545 F.3d 579 (7th Cir. 2008) ...........................................................................................4

*In re Valdez,*
289 F. App'x. 204 (9th Cir. 2008) (unpublished) ..........................................................6

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*,
      895 F.3d 597 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen,*
      *AG*, 139 S. Ct. 2645 (2019)..................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure

      16...............................................................................................................4, 6

      23...............................................................................................................3, 6

      24...............................................................................................................6

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

## I.     INTRODUCTION

After 12 years of hard-fought litigation and multiple years of processing claims, conducting deficiency reviews, and auditing claims—all of which culminated in the Court-appointed claims administrator, Rust Consulting, Inc. ("Rust"), sending final determination letters in August 2021—Co-Lead Class Counsel ("Class Counsel") moved for distribution of the net settlement funds last month in the amount of $104,387,133.10 in connection with 61,768 timely and valid claims totaling 29,929,759 qualifying tickets. Pls.' Notice of Mot. and Mot. for Order Authorization to Distribute Net Settlement Funds at 6 (ECF No. 1322) ("Mot.").

Financial Recovery Strategies ("FRS"), a third-party claims filer, which appears here without counsel, now seeks to derail this carefully designed distribution process on behalf of unidentified class members that it purportedly represents—all in an effort to force its admittedly late claims and late deficiency cures into the claims administration process. *See* Obj. of FRS to Mot. at 2 (ECF No. 1323) ("Obj.") ("FRS does not dispute that the proofs of claim and deficiency cures that are the subject of this objection . . . were submitted ***after*** the Phase 1 and Phase 2 deadlines.") (emphasis added). The Court should overrule FRS's objection because it is procedurally invalid, FRS has not articulated ***any*** explanation for its failure to comply with Court-ordered claims-filing deadlines, and the relief that FRS seeks will prejudice ***all*** class members who filed timely and valid claims, among other reasons.

## II.    BACKGROUND

Plaintiffs filed this case in 2007 and disseminated the first settlement notice seven years ago in 2015. Rust, the Court-appointed claims administrator, also began processing the first claims in 2015. In designing a notice plan and claims administration protocol for each of the three phases of settlements ("Phases"), Rust and Class Counsel proposed schedules with deadlines for each Phase, which the Court considered and adopted. The Court granted final approval of Phase 1A Settlements[1] and 1B Settlements[2] on May 26, 2015 (ECF No. 1009). The Court set an October 13,

---

[1] "Phase 1A Settlements" collectively refer to Plaintiffs' settlements with Cathay Pacific Airways, Qantas Airways, and Thai Airways.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

2015 claims-filing deadline for the Phase 1A Settlements and an April 3, 2018 claims-filing deadline for the Phase 1B Settlements (ECF No. 968). The Court granted final approval of the Phase 2 Settlements[3] on October 11, 2018 (ECF No. 1259) and set a claims-filing deadline of December 31, 2018 for the Phase 2 Settlements (ECF No. 1165 at ¶ 8). Finally, the Court granted final approval of the Phase 3 Settlement[4] on December 3, 2019 (ECF No. 1318) and set a claims-filing deadline of April 1, 2020 for the Phase 3 Settlement (ECF No. 1306).

Pursuant to the established claims-filing deadlines ordered by the Court for each Phase, *supra*, Rust declined to accept claims for each Phase from **all** claimants after the claims-filing deadline for each Phase—not just FRS's clients. Supplemental – Declaration of Joel K. Botzet ("Botzet Decl.") (Ex. 1), ¶ 7. Rust has adhered to all Court-ordered deadlines and has notified all late claimants that they do not qualify for a payment from the net settlement funds. *Id.* Additionally, as Rust completed the deficiency review for each Phase after that Phase's claims-filing deadline, Rust has not retroactively applied **any** deficiency cures submitted in connection with the Phase 3 Settlements to deficient claims submitted in connection with Phases 1 and 2 Settlements. *Id.*, ¶ 13.

FRS now opposes distribution of the net settlement funds because Rust and Class Counsel have not made an exception for FRS to Court-ordered deadlines from years ago that that would allow FRS to submit claims to the Phase 1A Settlements after October 13, 2015, the Phase 1B Settlements after April 3, 2018, or the Phase 2 Settlements after December 31, 2018. Obj. at 2. Additionally, Rust and Class Counsel have not made an exception for FRS to the Court-ordered deadlines and claims administration protocol that would enable FRS to retroactively apply its Phase 3 deficiency cures to deficient Phases 1 and 2 claims. *Id.*

---

[2] "Phase 1B Settlements" collectively refer to Plaintiffs' settlements with Air France, Japan Airlines, Malaysian Airlines, Singapore Airlines, and Vietnam Airlines.
[3] "Phase 2 Settlements" collectively refer to Plaintiffs' settlements with Air New Zealand, China Airlines, EVA Air, and Philippine Airlines.
[4] "Phase 3 Settlement" refers to Plaintiffs' settlement with All Nippon Airways.

Rust and Class Counsel declined to make exceptions for FRS during claims administration because they endeavored to take consistent positions with respect to all potential claimants to ensure that no potential claimant would be treated differently than any other. Botzet Decl.*,* ¶ 7. Notably, other late filers have inquired about the availability of the same relief sought by FRS, and Rust has provided them with the same response that it provided to FRS, where no good cause or extenuating circumstances were shown. *Id.* In limited circumstances, Rust and Class Counsel made narrow exceptions for certain class members who showed good cause or extenuating circumstances. *Id.,* ¶ 8. For example, Rust allowed late responses to audit letters from certain class members in Puerto Rico and Central America in light of international mailing issues that occurred (and were documented) during the COVID-19 pandemic. *Id.* But arbitrarily altering deadlines for some (or many) late filers, as FRS proposes, raises potential questions about fairness to all claimants if special accommodations are granted on an individualized, claimant-by-claimant basis outside of the claims administration protocol established for the class as a whole. Moreover, arbitrarily altering deadlines now would substantially delay distribution for an estimated ***six to nine months*** and result in additional claims administration expenses of at least $435,000 on top of the sum that the Court has approved in connection with the three Phases. *Id.*, ¶ 17.

## III.   ARGUMENT

### A.   Legal Standard

Settlement administration in a complex class action often requires courts to use their equitable powers under Federal Rule of Civil Procedure 23. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("*Bone Screw*"). This is particularly so when determining whether to include untimely claims in the settlement. *Blank v. Jacobs*, No. 03-CV-2111(JS)(WDW), 2012 WL 13034912, at *3 (E.D.N.Y. Nov. 29, 2012). To determine whether to allow late claims, courts consider four factors bearing on whether the lateness constituted "excusable neglect":[5] (1) the danger of prejudice to the non-movant; (2) the length of the delay and

---

[5] The Supreme Court established this "excusable neglect" standard in the bankruptcy context. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993)

1    its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was

2    within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Bone*

3    *Screw*, 246 F.3d at 322-23 (citing *Pioneer*, 507 U.S. at 395). The third factor—whether delay was

4    within the movant's control—is typically most important. *In re Oxford Health Plans, Inc.*, 383

5    Fed. Appx. 43, 45 (2d Cir. 2010) ("*Oxford*").

6         **B.**      **FRS's Objection Is Procedurally Invalid.**

7         As a threshold issue, FRS's objection is procedurally invalid for multiple reasons. *First*,

8    FRS is an entity that is unrepresented by counsel and, therefore, cannot appear before this Court.

9    *Second*, FRS failed to provide any information about the class members it purports to represent.

10   *Third*, FRS, failed to provide any support for the claim that it has the authority to act on behalf of

11   the class members it purportedly represents. *Fourth*, FRS has failed to intervene in this litigation,

12   wherein it is essentially seeking the alteration of Court-ordered Rule 16 deadlines.

13        Pursuant to well-settled law, a corporation or other artificial entity cannot appear in federal

14   court unless it is represented by counsel. *Rowland v. California Men's Colony, Unit II Men's*

15   *Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two

16   centuries … that a corporation may appear in the federal courts only through licensed counsel.");

17   *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that

18   a corporation is an artificial entity that … cannot appear *pro se*, and must be represented by

19   counsel."); *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) ("A corporation is not

20   permitted to litigate in federal court unless it is represented by a lawyer licensed to practice in that

21   court."); *Udoinyion v. The Guardian Sec.*, 440 F. App'x 731, 735 (11th Cir. 2011) ("A corporation

22   is an artificial entity that cannot appear *pro se* and must be represented by counsel.").

23

24

---

25   ("*Pioneer*"). Courts have adopted it for assessing late claims in class actions, finding the context
    similar. *See, e.g., In re Crazy Eddie Securities Litig.*, 906 F. Supp. 840, 844 (E.D. N.Y. 1995).
26   Some courts reject the "excusable neglect" label but nonetheless apply the same standard. *See*
    *Bone Screw*, 246 F.3d at 316 (finding the label "excusable neglect" to be "unnecessarily
27   pejorative" but noting that its "principles are nonetheless relevant").

28

**LAW OFFICES**
**COTCHETT, PITRE &**
**MCCARTHY, LLP**

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**      4
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**

Here, FRS is a class action recovery firm and third-party claims filer (*i.e.*, a company that solicits potential class action members and files claims on their behalf). *See*, *e.g.*, "Frequently Asked Questions," FINANCIAL RECOVERY STRATEGIES, *available at* https://www.frsco.com/faqs/ (last visited Jan. 18, 2022) ("[Q:] What are some the services that FRS provides? [A:] FRS is a leading class action claims management consulting firm that prepares and submits our Clients' claims to participate in the recoveries provided by settlement or other resolutions of class actions that have value for our clients."). By its own admission, FRS is not a law firm and not practicing law. Declaration of Adam J. Zapala ("Zapala Decl.") (Ex. 2), ¶ 1. FRS's Objection was not submitted by an attorney, and no lawyer appears to be representing FRS. *See*, *generally*, Obj. When Class Counsel sought clarification on FRS's request that Class Counsel file its Objection— despite making a number of "filings" in this Court (and others)—FRS stated that "FRS is not a law firm. We are not practicing law. A person may 'represent' the interest of another person without being their lawyer." Zapala Decl., ¶ 1; Ex. A. FRS did not elaborate on what it meant by this, nor did it provide any authority for the remarkable statement that persons can be represented in court proceedings by persons that are not lawyers or law firms.

Furthermore, as provided in the long form notice for each Phase in this litigation, class members who object to or comment on settlements must provide, *inter alia*, their contact information and proof of settlement class membership. *See*, *e.g.*, ECF No. 1301-1 at 8 ("If you have objections to **any aspect** of the Settlement, you may express your views to the Court by writing to the address below. It must include your: • Name, address, and telephone number; . . . • Proof of membership in at least one Settlement Class" (emphasis added). FRS objects to an aspect of settlement—the distribution of the net settlement funds. FRS represents that the objection is on behalf of "82 of its clients[.]" Obj. at 1. FRS did not, however, provide, the contact information or proof of membership for any of these class members that it purportedly represents in its Objection. *See*, *generally*, Obj. Accordingly, Class Counsel cannot ascertain which class members are objecting to distribution of the net settlement funds.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;
MDL No. 1913; Case No. 3:07-cv-05634-CRB**                    5

Relatedly, FRS did not provide any support for the claim that it has the authority to act on behalf of the 82 class members it purportedly "represents." Putting aside for the moment the dubious proposition whether any entity can "represent" what it refers to as "clients" in a court proceeding without being lawyers, FRS could have (but did not) attach—to its 68 pages of Objection and exhibits—agreements with class members demonstrating that it is authorized to act on their behalf. In the absence of providing such information in its Objection, as a non-party, FRS should have retained counsel and then moved to intervene pursuant to Federal Rule of Civil Procedure 24, which it has failed to do thus far in the litigation.[6]

Notwithstanding the procedural invalidity of FRS's Objection, Plaintiffs will address its merits *infra*.

**C.     FRS Failed to Show Excusable Neglect.**

As discussed below, FRS has failed to show excusable neglect meriting permission to file late claims and apply late deficiency cures.

**1.     FRS Does Not Offer Any Reason for Its Failure to Submit Claims and Deficiency Cures in Connection with Phases 1 and 2 Before the Court-Approved Phases 1 and 2 Deadlines.**

The Court should overrule FRS's Objection because FRS makes it without a showing of good cause. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 895 F.3d 597, 619 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*, 139 S. Ct. 2645 (2019) (holding the district court did not abuse its discretion in denying a late motion to opt-out where there was no excusable neglect); *In re Valdez*, 289 F. App'x. 204, 206 (9th Cir. 2008) (unpublished) (holding it was not an abuse of discretion to deny a late claim where there was "no plausible excuse"); *S.E.C. v. Hardy*, 803 F.2d 1034, 1039 (9th Cir. 1986) (confirming a district

---

[6] As set forth in Federal Rule of Civil Procedure 23, the right to object to a proposed class action settlement is a limited right and does not grant or authorize objectors to engage in free-ranging motion practice in district courts, such as seeking to alter what is effectively a Federal Rule of Civil Procedure 16 case scheduling order. *See In re Homestore.com Inc.*, 225 F.R.D. 252, 254 (C.D. 2004) ("Objectors are not even considered parties to the litigation unless and until they have successfully moved to intervene in the lawsuit.").

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;
MDL No. 1913; Case No. 3:07-cv-05634-CRB                                                        6

court's authority to "establish deadlines for filing claims, and to bar untimely claims"). In *Oxford*, the Second Circuit held the district court did not abuse its discretion in declining to allow a late-submitted claim, in part, given the importance of the claims-filing deadline and that "it was entirely within [the late claimant's] 'reasonable control' to file a timely claim[.]" *Oxford*, 383 Fed. App'x. at 45-46. In another case, a district court similarly invalidated claims submitted after the deadline in part because there was no showing "that any delay was due to excusable neglect such that the Court should exercise its equitable powers to accept late claims." *Krakauer v. Dish Network LLC*, 2019 WL 3002883, at *2 (M.D. N.C. 2019).

FRS concedes that "the proofs of claim and deficiency cures that are the subject of this objection . . . were submitted after the Phase 1 and Phase 2 deadlines." Obj. at 2. It contends, however, that Rust and Class Counsel have not provided a reason for ignoring FRS's late claims. Obj. at 12 ("Settlement Class Counsel have offered no rational, legal or equitable bases for ignoring for years the Excluded Phase 1 & 2 Submissions, nor do any exist."). This argument misplaces the burden, which falls on late claimants to show the reason for the delay and whether it was within their reasonable control. *Bone Screw*, 246 F.3d at 322-23; *Oxford*, 383 Fed. App'x. at 45. FRS does not offer any reason for failing to submit claims and deficiency cures in connection with Phases 1 and 2 before the Court-approved Phase 1 and 2 claims-filing deadlines. *See, generally*, Obj. Relatedly, FRS did not identify a single factor beyond its control that caused the delay. *Id.*

### 2. Class Members Who Submitted Timely and Valid Claims Will Suffer Prejudice from the Relief FRS Seeks.

"There is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977). In *Oxford*, the Second Circuit acknowledged "the legal system relies on deadlines to function" and ruled there was "at least some prejudice to claimants who had timely filed by diminishing those claimants' pro rata share of the settlement funds." *Oxford*, 383 Fed. App'x. at 46. Here, the claims-filing deadlines for the various Phases that

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

7

1    Plaintiffs proposed and the Court ordered were intended to streamline claims administration.

2    Heeding those Court-ordered deadlines, Rust rejected claims filed after the claims-filing deadline

3    for each Phase. Botzet Decl., ¶ 7. Rust also did not apply Phase 3 deficiency cures to Phase 1 and 2

4    deficient claims because that was never part of the claims administration protocol. *Id.*, ¶¶ 9-16.

5            Through its Objection, FRS seeks to submit late claims to the Phases 1 and 2 Settlements

6    and retroactively apply Phase 3 deficiency cures to deficient claims submitted in Phases 1 and 2

7    Settlements. Obj. at 2. The relief FRS seeks not only diminishes qualified claimants' pro rata share

8    of the net settlement funds by FRS's clients pro rata share, it would effectively render meaningless

9    all interim deadlines approved by the Court, published in class notices, and followed by tens of

10   thousands of timely claimants. Moreover, it now reopens claims administration, delays

11   distribution, and further reduces payments to qualified claimants due to the additional claims

12   administration expenses. Botzet Decl., ¶¶ 17-20.

13           By allowing FRS and other potential claimants to file late claims and deficiency cures, Rust

14   will have to restart claims processing and apply proof of claim documentation, both of which have

15   been done for years. *Id.* Rust must also likely conduct a second audit if any late claimant's claimed

16   tickets exceed certain thresholds, if any late claimant submitted a claim form from the same

17   address or email of another claimant, or if the putative claim triggers any other fraud prevention

18   protocols by Rust. *Id.*, ¶ 17. Furthermore, Rust must notify all potential claimants of this claims

19   administration protocol change given that Rust adhered to all Court-ordered deadlines and has

20   already issued final determination letters to all claimants, including all late filers, in August 2021.

21   *Id.*, ¶ 18. Rust must also recalculate all payments to qualified claimants again. *Id.*

22           Rust anticipates that if the Court sustains FRS's position, the additional claims

23   administration that will be required will delay distribution for an estimated six to nine months and

24   result in additional claims administration expenses of at least $435,000 on top of the amounts that

25   the Court has approved in connection with the three Phases. *Id.*, ¶ 17. With Court approval, these

26   expenses would come out of the net settlement funds—further reducing qualified claimants'

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1    payments pro rata share—for the sake of simply processing late claims and late deficiency cures

2    that FRS could have submitted in a timely manner but failed to do so in good faith.

3            Given FRS's failure to articulate any reason for its delay, and the financial and temporal

4    prejudice that will inure to qualified claimants from the relief it seeks, FRS's lateness does not

5    constitute excusable neglect.

6    **IV.    CONCLUSION**

7            For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for

8    authorization to distribute the net settlement funds and overrule FRS's objection thereto.

9

10   Dated: January 18, 2022                          Respectfully Submitted,

11                                                    /s/ *Adam J. Zapala*
                                                      Adam J. Zapala (245748)
12                                                    Elizabeth T. Castillo (280502)
13                                                    **COTCHETT, PITRE & McCARTHY, LLP**
                                                      840 Malcolm Road
14                                                    Burlingame, CA 94010
                                                      Phone: (650) 697-6000
15                                                    Fax: (650) 697-0577
                                                      azapala@cpmlegal.com
16                                                    ecastillo@cpmlegal.com

17                                                    Michael P. Lehmann (77152)
18                                                    Christopher L. Lebsock (184546)
                                                      Seth R. Gassman (311702)
19                                                    **HAUSFELD LLP**
20                                                    600 Montgomery Street, Suite 3200
                                                      San Francisco, CA 94111
21                                                    Phone: (415) 633-1908
                                                      Fax: (415) 358-4980
22                                                    mlehmann@hausfeld.com
23                                                    clebsock@hausfeld.com
                                                      sgassman@hausfeld.com
24
                                                      *Co-Lead Class Counsel for Plaintiffs*
25

26

27

28

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**     9
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**