IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document relates to:<br>ALL ACTIONS | Case No.  07-cv-05634-CRB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO DISTRIBUTE SETTLEMENT FUNDS AND OVERRULING THE OBJECTION** |

This Court previously granted final approval of class action settlements against 13 airline defendants, finding that the notice plan for each settlement was fair, adequate, and reasonable, satisfied due process and Rule 23(c)(2) and 23(e)(l), and was the best practicable under the circumstances.  See Dkts. 1009, 1259-1, 1318.  The settlements involved three separate "Phases," depending on which airline a claimant had purchased her ticket(s) from and during which time period.  Phase 1 had a claims closing date of either October 13, 2015 or April 3, 2018; Phase 2 had a claims closing date of December 31, 2018; and Phase 3 had a claims closing date of April 1, 2020.  Botzet Decl. (dkt. 1322-1) ¶ 6.  The total settlement fund available is $104 million.  Id. ¶ 24.  61,768 individuals and entities have been authorized for payment.  Id. ¶ 23.  Plaintiffs now move for authorization to distribute the net settlement funds.  Mot. (dkt. 1322).  Plaintiffs have submitted a detailed declaration by Joel K. Botzet, a Program Manager for Rust Consulting, Inc., the court-appointed claims administrator.  See Botzet Decl.

Financial Recovery Services (FRS), a corporation that purports to represent 82 claimants excluded from the distribution, objects.  See Obj. (dkt. 1323).  FRS does not dispute that its clients' Phase 1 and Phase 2 claims were "submitted after the Phase 1 and

Phase 2 deadlines" and were therefore untimely.  Id. at 2.  But FRS argues that the Court should use its inherent equitable powers to include these claimants in the distribution. Although FRS does not explain why its clients failed to file timely Phase 1 and Phase 2 claims, FRS insists that these earlier deadlines were "arbitrary" because all auditing and distribution was to happen later anyway.  Id. at 3–4.

Plaintiffs argue that processing untimely claims now will prejudice timely claimants because it will require "six to nine months and result in additional claims administration expenses of at least $435,000."  Reply (dkt. 1324) at 8 (citing Supp. Botzet Decl. (dkt. 1324-1) ¶ 19-20).  FRS argues that this overstates the delay, and that any delay falls on class counsel, who have known of FRS' objection since September 16, 2019 but neither processed the untimely claims nor brought the issue to the Court's attention.  Obj. at 12, Supp. Obj. (dkt. 1325) at 7-8.

In determining whether to include untimely claims in a class action settlement, courts use their equitable powers under Federal Rule of Civil Procedure 23.  See In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 321 (3d Cir. 2001).  In doing so, courts balance four factors to determine whether a claimant engaged in "excusable neglect": (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  Id. at 322-23 (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).  The third factor—whether delay was within the movant's control—is typically most important.  In re Oxford Health Plans, Inc., 383 Fed. Appx. 43, 45 (2d Cir. 2010).  Although the burden is on the untimely claimant to show excusable neglect, this burden is not especially demanding.  See Late Claims, 4 William B. Rubenstein, Newberg on Class Actions § 12:23 (5th ed.).

Assuming without deciding that FRS' objections are properly before the Court,[1] the

_____

[1] Plaintiffs make several arguments as to why FRS' objection is procedurally invalid, but the Court expresses no view on those in today's order.

Court concludes that FRS has not made a showing of excusable neglect that would justify its clients' inclusion in the settlement fund. FRS does not appear to contest (1) that its clients had notice of the dates on which Phases 1 and 2 concluded; or (2) that its clients missed those deadlines. Yet FRS offers no excuse for its clients' delay and does not argue it was outside their reasonable control. See Bone Screw, 246 F.3d at 322; Oxford, 383 Fed. Appx. at 45 (noting that this third factor is most important); see 4 Newberg on Class Actions § 12:23. The Court also credits the claims administrator's statement that including untimely claimants would result in an additional six to nine month delay to timely claimants. See Supp. Botzet Decl. ¶ 19-20. On these facts, the Court finds that there was no excusable neglect.

Reframing the issue, FRS insists that the question is "not whether FRS' clients have shown good cause for not meeting the interim Phase 1 and 2 deadlines, but, rather, whether those deadlines should be enforced." See Supp. Obj. at 4. This is not a real distinction. The Court does not enforce deadlines mindlessly, but it enforces them when claimants who are aware of the deadlines miss them without an explanation.

The Court therefore GRANTS the motion to authorize distribution of the net settlement funds, consistent with the process outlined in the declaration. The claims administrator, in consultation with class counsel, shall distribute the net settlement funds pro rata. Pursuant to this district's Procedural Guidance on Class Action Settlements, within 21 days of this order, class counsel will submit a Post-Distribution Accounting detailing the status of distribution.

**IT IS SO ORDERED.**

Dated: February 3, 2022

CHARLES R. BREYER
United States District Judge