Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**ALL ACTIONS** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913<br><br>**PLAINTIFFS' RESPONSE TO MOTION TO ALLOW CLAIM OF MICHAEL CHEKIAN (ECF NO. 1334)** |

Plaintiffs' Response to Motion to Allow Claim of Michael Chekian (ECF No. 1334);
MDL No. 1913; Case No. 3:07-cv-05634-CRB

I.  INTRODUCTION

Plaintiffs submit this response to the Motion to Allow Claim of Michael Chekian submitted by Pro Se Claimant Michael F. Chekian (ECF No. 1334) ("Mot.") along with the Declaration of Joel K. Botzet of Rust Consulting, Inc. ("Botzet Decl.") in support hereof. Plaintiffs and the claims administrator, Rust Consulting, Inc. ("Rust"), have investigated Mr. Chekian's assertions. Mr. Chekian alleges that he did not receive an audit letter from Rust and therefore could not respond with documentation supporting his claims. Without taking a position on the validity of Mr. Chekian's claims at this time, Plaintiffs made the following proposal to Mr. Chekian: In exchange for withdrawing his Motion, Plaintiffs would pay Mr. Chekian's claims if: (1) Mr. Chekian explains why his Phase 3 claim included significantly more tickets than his Phase 1 claim; (2) Mr. Chekian provides documentation supporting his claims; (3) Rust determines that Mr. Chekian's claims are valid; and (4) there are sufficient funds remaining in the net settlement funds after the check void date to pay Mr. Chekian's claims. Plaintiffs requested Mr. Chekian respond to the proposal by 5 p.m. on April 20, 2022. Plaintiffs have not received any response from Mr. Chekian as of this filing and conclude that he rejected the proposal.

II.  BACKGROUND

A.  The Phase 3 Claim

In his Motion, Mr. Chekian asserts that he filed a claim to the Phase 3 Settlement on July 8, 2019. *See* Mot. at 2. The claim reference number is Y5GQC76S. *Id.* The contact information associated with this claim is:

First and Last Name: Michael Chekian

Email: mike@cheklaw.com

Phone: (310) 390-5529

Address: 445 South Figueroa Street, 31st Floor, Los Angeles, CA 90071

*Id.* As part of his Phase 3 claim, Mr. Chekian claimed 346 tickets: 256 Settlement Class III tickets, 32 Japan Fuel Surcharge Settlement Class tickets, and 58 Satogaeri Settlement Class tickets. *Id.*,

Declaration of Michael Chekian ("Chekian Decl."), Ex. A. Rust's records confirm the foregoing information. Botzet Decl. ¶¶ 6-7.

### B. The Phase 1 Claim

According to Rust's records, Mr. Chekian also submitted a claim to the Phase 1 Settlements years ago on March 15, 2015. Botzet Decl. ¶¶ 4-5. The claim reference number is I7B9RTO6. *Id.*, ¶ 4. The contact information associated with this earlier claim is:

First and Last Name: Michael Chekian

Email: mike@cheklaw.com

Phone: (310) 709-2643

Address: 11400 W. Olympic Blvd. Ste. 200, Los Angeles, CA 90064

*Id.*, ¶ 5. As part of his Phase 1 claim, Mr. Chekian claimed 16 tickets to each of the following four Settlement Classes for a total of 64 tickets: Air France/Singapore Airlines/Vietnam Settlement Class, Malaysian Air Settlement Class, ANZ Settlement Class, and PAL Settlement Class. *Id.* Mr. Chekian does not deny that he submitted a claim to the Phase 1 Settlements in his Motion. *See*, *generally*, Mot. He also does not deny that the email, phone, or address associated with the initial claim are his own. *Id.* Mr. Chekian merely states that he has "no record of submitting any Phase 1 claim in or around 2015 in this case or of any response by the Administrator to this alleged Phase 1 claim." *Id.* at 3.

### C. Claims Administration

After the final claim filing deadline of April 1, 2020, Rust consolidated multiple claims submitted by the same individual to streamline the audit and distribution processes. Botzet Decl., ¶ 8. Rust consolidated subsequent claim(s) submitted by the same individual with his or her initial claim. *Id.* Rust did so by matching the name and at least one piece of contact information associated with the claims (*e.g.*, email, phone number, or mailing address). *Id.* The contact information for the initial claim then became the operative contact information for the consolidated claim of the individual unless the individual notified Rust of a change in contact information. *Id.*

Plaintiffs' Response to Motion to Allow Claim of Michael Chekian (ECF No. 1334);   2
MDL No. 1913; Case No. 3:07-cv-05634-CRB

1  Regarding Mr. Chekian, the name and email on his Phase 3 claim matched the name and email on his Phase 1 claim. *Compare* Chekian Decl., Ex. A, *with* Botzet Decl. ¶ 4. Rust therefore consolidated Mr. Chekian's Phase 3 claim with his Phase 1 claim. *Id.*, ¶ 9. Although the phone and address on his Phase 3 claim did not match with the phone and address on his Phase 1 claim, the email match was sufficient for claim consolidation purposes. *Id.*

On September 11, 2020, Rust sent audit letters to individual claimants whose claimed ticket counts exceeded 125 tickets overall and/or 50 Japan Fuel Surcharge Settlement Class tickets and/or 50 Satogaeri Settlement Class tickets. *Id.*, ¶ 10. Mr. Chekian's Phase 3 claim alone exceeded the threshold of 125 tickets overall *and* the Satogaeri Settlement Class threshold of 50 tickets. *See*, *supra*, § II(A). His Phase 3 claim also included significantly more tickets than his Phase 1 claim (346 versus 64 tickets). *See*, *supra*, § II(A)-(B). Consequently, Rust sent an audit letter (and later, a final determination letter) to Mr. Chekian at 11400 West Olympic Boulevard, Suite 200, Los Angeles, California 90064, the address associated with his consolidated claim. Botzet Decl., ¶¶ 11, 13. The United States Post Office (USPS) did not return either the audit letter or the final determination letter as undeliverable. *Id.*

Other than his Phases 1 and 3 claim forms, Rust did not receive any communication from Mr. Chekian until he sent an email inquiring about his Phase 3 claim on March 24, 2022, one week after Plaintiffs and Rust distributed the net settlement funds pursuant to the Court's order (ECF No. 1329). Botzet Decl., ¶ 14. Rust also did not receive any notification from Mr. Chekian regarding his change of address at any point between March 15, 2015 when he filed the Phase 1 claim and March 17, 2022 when Plaintiffs and Rust distributed the net settlement funds to class members. *Id.* Furthermore, despite now being aware that he was subject to an audit, and despite Plaintiffs making a reasonable proposal to him, Mr. Chekian has not provided any documentation supporting his Phase 1 or 3 claims to date. *Id.*, ¶¶ 14, 16. Assuming his Phase 1 and 3 claims are valid, however, Rust calculates that Mr. Chekian would be entitled to a payment of around $46,000. *Id.*, ¶ 16.

### D. Status of Settlement Distribution

As discussed in the Notice of Post-Distribution Accounting, Plaintiffs distributed $104,387,320.59 of the net settlement funds totaling $104,388,254.38 on March 17, 2022 (ECF No. 1333 at 1).[1] As of April 15, 2022, class members have "cashed" approximately $90,500,000 through wire transfers or check deposits. Botzet Decl., ¶ 15. About 25,109 checks remain uncashed and have a check void date of June 15, 2022. *Id.* At this point, Plaintiffs cannot recover settlement payments they have already distributed. Assuming Mr. Chekian's Phase 1 and 3 claims are valid, Plaintiffs also would not have sufficient funds to pay Mr. Chekian if class members cash all $104,387,320.59 that Plaintiffs distributed. At this time, however, neither Plaintiffs nor Rust can speculate as to whether there will be uncashed checks after the check void date and, if so, the monetary value thereof. *Id.*

## III. ARGUMENT

Mr. Chekian argues that the Court show allow his claim and suggests that Plaintiffs failed to meet settlement class notice requirements under Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B). Mot. at 3-4. Rule 23(c)(2)(B) only requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously found Plaintiffs met Rule 23(c)(2)(B)'s settlement class notice requirements.[2] Indeed, tens of thousands of class members received notice of the settlements in this action and filed claims, including Mr. Chekian. Any suggestion by Mr. Chekian that Plaintiffs failed to satisfy Rule 23(c)(2)(B)'s settlement class notice requirements, therefore, is meritless.

---

[1] The amount of the initial distribution was $104,387,320.59 due to rounding to the nearest cent when calculating the *pro rata* share per qualified claim.

[2] *See, e.g.*, Second Amended Order Granting Preliminary Approval of Class Action Settlement at 3 (ECF No. 1306) ("The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.").

Mr. Chekian also contends that he received "no notice of the alleged 2016 audit" and "no response to his 2019 Claim." Mot. at 4. As stated, *supra*, Rust conducted a review and/or audit of all claims and sent audit letters. Botzet Decl., ¶ 10. Rust's mailing included an audit letter to Mr. Chekian at 11400 West Olympic Boulevard, Suite 200, Los Angeles, California 90064, the address Mr. Chekian listed in his initial claim form. *Id.* Rust never received a response to the audit letter by Mr. Chekian. *Id.*, ¶ 11. Rust then sent final determination letters to all claimants on August 24, 2021. *Id.*, ¶ 12. Rust's mailing included a final determination letter to Mr. Chekian at the same address. *Id.*, ¶ 13. Rust never received a response to the final determination letter by Mr. Chekian. *Id.* The USPS did not return either the audit letter or the final determination letter as undeliverable to Mr. Chekian at 11400 West Olympic Boulevard, Suite 200, Los Angeles, California 90064. *Id.* Besides the two claim forms, Rust did not receive any communication, including notice of a change of address, from Mr. Chekian between March 15, 2015 when he filed his Phase 1 claim and March 17, 2022 when Plaintiffs distributed the net settlement funds. *Id.*, ¶ 14. Plaintiffs and Rust have both satisfied their obligations with respect to claims administration.

In the interest of resolving this issue and conserving the resources of the parties, their counsel, and the judiciary, Plaintiffs asked Mr. Chekian to withdraw his Motion. *Id.*, ¶ 16. In exchange, Plaintiffs proposed paying his claims if (1) Mr. Chekian explains why his Phase 3 claim included significantly more tickets than his Phase 1 claim (346 tickets v. 64 tickets); (2) Mr. Chekian provides documentation supporting his claims (which he would have had to provide in response to the audit letter to be eligible for a payment); (3) Rust determines that Mr. Chekian's claims are valid; and (4) there are sufficient funds remaining in the net settlement funds after the check void date of June 15, 2022 to pay Mr. Chekian's claims. *Id.* Assuming Mr. Chekian's claims are valid, and assuming there will be uncashed checks after the check void date that equal or exceed the monetary value of Mr. Chekian's claims, Plaintiffs would pay Mr. Chekian from the remaining net settlement funds. If his claims are invalid and/or there are insufficient uncashed checks after the check void to pay Mr. Chekian, Plaintiffs would simply not be able to pay him. The proposal represented a fair and reasonable resolution, though Plaintiffs never received a

1  response from Mr. Chekian by 5 p.m. on April 20, 2022 as requested or any response for that
2  matter. *Id.*

3  **IV.   CONCLUSION**

4      Plaintiffs respectfully request that the Court deny Mr. Chekian's Motion because he failed
5  to provide a response to the audit letter and, more specifically, any documentation supporting his
6  claims to date.

8  Dated: April 22, 2022      Respectfully submitted,

9  */s/ Adam J. Zapala*      */s/ Christopher L. Lebsock*
   Adam J. Zapala (245748)      Michael P. Lehmann (77152)
10 Elizabeth T. Castillo (280502)      Christopher L. Lebsock (184546)
   **COTCHETT, PITRE & McCARTHY, LLP**      Seth R. Gassman (311702)
11 840 Malcolm Road      **HAUSFELD LLP**
12 Burlingame, CA 94010      600 Montgomery Street, Suite 3200
   Phone: (650) 697-6000      San Francisco, CA 94111
13 Fax: (650) 697-0577      Phone: (415) 633-1908
14 azapala@cpmlegal.com      Fax: (415) 358-4980
   ecastillo@cpmlegal.com      mlehmann@hausfeld.com
15      clebsock@hausfeld.com
        sgassman@hausfeld.com
16 *Co-Lead Counsel for Plaintiffs*