John Allen Roth, Esq.
Law Office of J. Allen Roth
805 Alexandria Street S.
Latrobe PA  15650
jroth@jarothlaw.com
(724) 686-8003

*Counsel for Objectors David
Gould and Xanadu Corp.
APPEARING PRO HAC VICE*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | ) Case No. 07-cv-05634-CRB<br>)<br>) MDL No. 1913<br>)<br>) **OBJECTIONS TO THE MOTION**<br>) **FOR SECONDARY DISTRIBUTION**<br>) **OF REMAINING SETTLEMENT**<br>) **FUNDS AND REQUEST FOR**<br>) **ATTORNEY FEES AND**<br>) **REIMBURSEMENT OF EXPENSES**<br>) **(DOCKET ENTRY 1347)** |

Xanadu Corp. ("Xanadu") and David Gould ("Gould"), collectively "Objectors,", by and through their undersigned counsel,*pro hac vice,* objects to the Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorney Fees and Reimbursement of Expenses.

**BACKGROUND FACTS:**

As this Court is aware, the present litigation relates to airline tickets purchased for travel to destinations in Asia and Oceanic locations.  After making an initial distribution to claimants, Class Counsel now seeks to have the claims administrator, Rust Consulting, redistribute remaining funds to the class members, but wants to keep fifty-five percent (55%) of the funds to reward itself.  *See* Entry 1347.

According to Class Counsel, 44,893 checks were cashed, but 16,216 checks were not.  In other words, over twenty-five percent (25%) of payments never reached the claimants.  *Id.*  Class Counsel does not elaborate on how many of these checks were returned and how many were simply too burdensome to the claimants to cash.[1]

Despite the claimants having lodged their claims between 2015 and 2019, neither Rust Consulting nor Class Counsel made any effort to notify claimants that checks issued to them were not delivered, were returned, or simply went uncashed.  Of course, unless the claimants were actively checking the website published for this case, they would have had no knowledge to be on the lookout for checks.

Based on information from Class Counsel, instead of contacting the claimants at the email they provided, Rust Consulting simply ran the addresses through something called a "TRACE" Database.  Common sense would be that the claimants would know their updated address better than a cryptic database.  Email costs nothing, but notification to claimants that their funds never reached them most probably would eviscerate the fund leaving no attorney fees left for Class Counsel to take.

As to the motion for attorney fees, despite having all of the email addresses of the persons who submitted claims in this case, the only notice of the pending motion was a post on the English version of  litigation website dated August 9, 2022.  Neither Rust Consulting nor Class Counsel posted a notice on the Chinese or Japanese version of the website.  The language

---

[1] Considering that this case involved Asia and Oceania destinations, many claimants reside overseas. Banks in international locations often charge a clearing fee for foreign checks.  Unlike more modern litigations, Rust Consulting offered no electronic payment for these claimants unless they wrote in and asked.

issue probably would not have changed the outcome because its unlikely that class members, especially foreign claimants with small claims, check the website often.  An email, however, would provide fair notice.

A final problem exists, also apparently to avoid paying approved claims which would lower the amount of money reasonably earmarked for Class Counsel's desire to convert the fund to its own property as attorney fees:  Class Counsel are attempting to relitigate the final determination of approved claims.

### **OBJECTORS**

Objector Gould is an individual resident in Taiwan, with a business address in Costa Rica.  He travels throughout Asia frequently.  Gould filed a claim in this case based on his personal, family, and business travel.  Gould received his payment from the First Distribution.  Gould's payment on the second distribution would be affected by the Class

Objector Xanadu is an enterprise.  It filed a timely claim.  Its claim was approved.  The Post Office returned Xanadu's check..  However, Rust Consulting did not reach out to Xanadu.  Xanadu had to complain to Rust Consulting, and the check was purportedly reissued.  However, the Post Office returned the check as well.  When Xanadu inquired again, Rust Consulting ignored it.  Xanadu retained counsel and when the issue fell upon Class Counsel, they decided to attempt to relitigate the claim.  They want to depose the claimant, have explanations for the travel given, and receive corporate records.  This may have all been appropriate during the claims auditing process; however, now it appears to be a ruse to increase the amount of money available to Class Counsel.  Specifically, when Class

Counsel looked at the claim, they noticed that Xanadu claimed 800 tickets in the Japan Settlement Class which, unlike the $.05 per ticket paid to ANZ claimants, Xanadu's approved claim provided over $700 per ticket. This is not the fault of Xanadu, it is the fault of Class Counsel's poor noticing to Class Members and attrition during the Third Round of this litigation. If Xanadu is paid, the numbers Class Counsel submitted to this Court change and its request for attorney fees would seem even more outrageous considering the large number of claimants who never received their checks.

**<u>DISCUSSION</u>**

I.   **CLASS COUNSEL AND RUST CONSULTING BREACHED THEIR FIDUCIARY DUTY BY NOT NOTIFYING APPROVED CLAIMANTS THAT: (1) CHECKS WOULD BE DISBURSED; (2) CHECKS WERE RETURNED; and (3) CHECKS WERE NOT CASHED.**

In this case, class members lodged their claims from 2015 through 2019. Years passed without class members hearing anything. In 2022, Class Counsel filed its motion to distribute funds. While a notice along with the motion was placed on the website, emails were not sent to class members suggesting they be on the lookout for their payment or that they should update their address if it changed.

As a result of the lack of communication with class members, 16,216 checks either did not reach their destination or were not cashed. That is a fail rate in excess of 25%.

In most litigations, the claims administrator notifies the claimants when a check is returned or not cashed. However, in this case, Class Counsel did not direct Rust Consulting to send a simple email to the 16,216 people who did not receive their money.

With all due respect, the reason appears obvious:  Class Counsel seeks approval to take over 30% of the remaining funds as attorney fees without giving the class members any notification of their request.  There simply exists no incentive to disperse the remaining funds to their rightful owner when Class Counsel want the money for themselves.

For this reason alone, Class Counsel's motion should be denied. Rather than allow Class Counsel to redistribute the funds, the claims administrator must be directed to notify the claimants who did not receive payment how to update their address.

## II.     CLASS COUNSEL AND RUST CONSULTING NEED TO ESCHEAT UNCLAIMED FUNDS

Regardless of the terms and conditions of the prior distribution orders and the settlement agreements, any redistribution of funds without escheating domestic claimants' money violates public policy and is unlawful. Every state maintains a requirement that abandoned or uncashed checks be escheated if they exceed a certain amount, usually $25.00. *See* Table B. Those statutory schemes also have requirements that the stakeholder attempt to contact the person who did not cash their check.  Rust Consulting and Class Counsel maintain a fiduciary duty to comply with these laws with respect to claimants in the United States.

## III.    CLASS COUNSEL MUST PROVIDE REASONABLE NOTICE TO ALL KNOWN CLASS MEMBERS OF ITS REQUEST FOR ATTORNEY FEES

Class Counsel seeks $3,000,000 of $5,448,087, which is 55% of the remaining funds.  As stated above, these are not simply leftover funds, but funds that never reached the claimants who were approved.

Rule 23(h) governs requests for attorney fees.  There exists a strict notification process when Class Counsel seeks fees.  Rule 23(h)(1) explains, "Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." *See also Stair v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008).

Rule 23(h)(2) explains that, "A class member, or a party from whom payment is sought, may object to the motion."  Of course, without being aware of the motion, class members cannot object.

Simply put, Class Counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010).  Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." Id. at 993-94.

 Posting notice of the motion less than two weeks before objections are due on a website that class members have not checked for years– and not providing any update on the Japanese or Chinese versions of the website simply does not constitute a "reasonable manner.".  On the contrary. in a case like this one, where the claims administrator has the email and postal address of every class member who filed a claim, the "reasonable manner" would be at least by email to the majority of members who provided it, and postal mail to the few members who did not.

Because Class Counsel violated Rule 23(h)(1) and (2), this Court should deny the motion for attorney fees without prejudice until:  (1) All

persons whose checks were returned or uncashed are notified and given an opportunity to claim their funds; (2) All domestic claimants that cannot be reached, over $25, have their funds escheated to the appropriate state agency; and (3) Class Counsel provides a notice of its motion for attorney fees to class members who filed a claim by email, and in the case that no email exists in the records, via postal mail.

## IV.   CLASS COUNSEL CANNOT RELITIGATE APPROVED CLAIMS

In the case of objector Xanadu, it has an approved claim.[2]  *See* Exhibit A.  As explained in the *Declaration of Joel K. Botzet*, Entry 1322-1, paragraph 15, business that filed claims of less than 1,000 tickets were not audited.  In Xanadu's case, the claims administrator indeed audited the claim.  "Rust reviewed all responses supplied by the claimants from the 'Request for More Information' letters and determined responses to be acceptable support for the number of tickets claimed if any of the following documentation was provided:  a. Receipts showing ticket purchases; b. Cancelled checks; c. Credit card statements; d. Travel itineraries; e. Email confirmation of ticket purchases; and/or f. Affidavit or declaration attesting that the number of tickets claimed is accurate."  *Id.* at 18.  Rust then passed the responses through a "Quality Assurance" review.  *Id* at 20.

Now, decades after the ticket purchases occurred, years after the claims were submitted, and over one year since the issuance of Xanadu's *Notice of Claim Final Determination*, Class Counsel wants to completely audit and relitigate the approved claim because the claimant's postal mail was returned and the claimant wanted the check reissued.

---

[2] This is different than the case of the *Chekian* claim, which was a denied claim, but the claimant asked Rust to accept an audit response because he did not receive notice of the audit.  This objection is based on *approved* claims that Class Counsel seeks to relitigate.

Class Counsel would not be requesting to audit the claimant's approved claim if it was a different ticket class, valued a small amount of money. However, Class Counsel obviously sees that the claimant submitted his claim under the class of tickets that paid over $200 or over $700 per ticket on a *pro rata* basis resulting in a large claim that will eat into the requested attorney fees.

In this case, strict deadlines existed to submit claims. Financial Recovery Services, a corporation that purchased 82 claims that were excluded from the distribution, objected and sought to have its clients' claims reviewed and approved. *See* Entry 1323. Class Counsel vehemently objected based on the time involved, the cost to the class, and the amount of money to litigate the matter. Class Counsel argued that "a cutoff date is essential and at some point the matter must be terminated." *See* Entry 1324, page 11. Class Counsel argued that "the legal system relies on deadlines to function." *Id.* This Court agreed and would not allow the late litigation of the claims. *See* Entry 1327. This Court concurred that the time of "six to nine months" required to administer review would be prejudicial. In this case, relitigating the approved claim will result in longer time periods because the imminent appeal will take more than that time.

The same factors that apply to a late claimant should apply to any attempt by class counsel to relitigate its own final determination. That is, the factors in *In re: Orthopaedic Bone Screw Prods. Liab. Litig.*, 246 F3d 315, 321 (3d Cir. 2001), cited at page 2 of this Court's opinion at Entry 1327, should apply. First, there exists prejudice to the claimant of which Class Counsel is determined to relitigate and deny the claim. It is extremely

difficult, if not impossible, to provide any form of evidence decades later that will convince Class Counsel to pay claimants instead of themselves. Second, the length of the delay is unreasonable.  Claimant submitted his claim four years ago, it was approved over one year ago in a "final determination."  There is no reason for the delay except that Class Counsel saw a threat to their attorney fees motion.  Finally, Class Counsel did not act in good faith. They wrote the policies that Rust used to accept the claims and now they simply want to treat claimants who did not receive their checks differently.

In the present case, Class Counsel alleged no extrinsic fraud that prevented an audit earlier.  On the contrary, business claimants with less than 1,000 tickets at all received no audit– even if they were high value tickets.  There exists no reason that the claimant should have to relitigate the approved claim at this juncture.[3]

There exists no reason to treat the objector-claimant differently than the other claimants who went through Rust Consulting's process. Rust did not ask for this additional information, but Class Counsel did since it could affect their attorney fees.

In the present case, there is nothing that can be submitted that will satisfy Class Counsel.   While the claim was approved pursuant to the policies set up by Rust Consulting and Class Counsel, now Class Counsel has a financial interest in the outcome of the claim. They want to disprove the claim to increase the pot of funds available for attorney fees and justify a second distribution.  Claimants, on the other hand, after receiving the Notice

---

[3] The claimant will provide this Court, under seal, a copy of his identification to demonstrate that he is the person who submitted the claim.  In addition, the payment can be made by wire transfer to the company name so that there is no question that the recipient will receive the funds.

of Final Determination, have no reason to keep their records.  These
companies are mostly defunct as the ticket purchases occurred decades ago.
Nothing new can be submitted

 Class counsel must demonstrate that "they would prosecute the case
in the interest of the class...rather than just in their interests as lawyers who
if successful will obtain a share of any judgment or settlement as
compensation for their efforts." *Creative Montessori Learning Ctrs. v. Ashford
Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011).  Here, the incentive is 55%
attorney fees that might have to be altered as a result of claims that class
counsel seeks to relitigate at this late stage.

 There exists no assertion that some form of extrinsic fraud occurred.
Class Counsel and Rust Consulting had no interest in litigating the claim
prior to it being approved in a "final" determination. They had the
opportunity to fully and fairly litigate the assertions provided in response to
the audit.  They chose not to.  Now, a year and a half after they approved the
claim, they wish to reopen the matter at this late stage.

 This Court should not allow any relitigation of approved claims for
class members at this late stage.

 **<u>CONCLUSION</u>**

 Based on the above, the motion for second distribution and attorney
fees must be denied.  Rather, several things need to happen.  First, all
approved claimants who submitted claims but did not receive or cash their
check must be contacted via email by Rust Consulting and given an
opportunity to update their address or receive an electronic payment.
Second, any domestic claims that are subject to escheat laws that still are

not distributed must be turned over to the appropriate state authority.

Third, Class Counsel can resubmit their motion for attorney fees after

notifying all class members who submitted a claim via email, with a postal

mail notice to the few class members that did not provide an email, and

providing an opportunity to object pursuant to Rule 23(h)(1) and (2).  Finally,

Class Counsel should not relitigate approved claims.


Respectfully submitted,

*/s/ J. Allen Roth, Esq.*

_____

J. Allen Roth, Esq.

COUNSEL FOR OBJECTORS
DAVID GOULD AND XANADU
*PRO HAC VICE)*

## *EXHIBIT A*

NOTICE OF CLAIM FINAL DETERMINATION for Class Member ID 146338

 We have received and processed the Claim Form(s) that you filed in
the Transpacific Airline Settlement along with any supporting
documentation you may have provided at our request. Upon reviewing the
claim and purchase information provided below are the ticket counts
that qualify for each of the settlement classes:

Settlement  Class
        Qualified        Ticket  Count

JAL Settlement Class:
 72
 Air France/Singapore Airlines/Vietnam Airlines Settlement Class:
 537
 Thai Airways Settlement Class:
 537
 Malaysian Air Settlement Class:
 72
 Cathay Pacific Airways/Qantas Settlement Class:
 72
 ANZ Settlement Class:
 1874
 EVA/China Airlines Settlement Class:
 944
 PAL Settlement Class:
 1874
Settlement Class III (passenger air transportation originating in the
U.S. that included at least one segment to Asia/Oceania from a
Defendant between January 1, 2000 and December 1, 2016):
 1816
Japan Settlement Class (Fuel Surcharge):
  800
 _Satogaeri _Settlement Class:

 This  letter  is for    informational  purposes      only and you
do not need to do anything in response. The ticket totals are the
basis for calculating the settlement benefits for which you are
entitled.  More information including the Settlement Class definitions
is located on the website www.airlinesettlement.com [1].

Sincerely,
Settlement Administrator
Transpacific Air Settlement
PO Box 2209
Faribault, MN 55021-1609

EXHIBIT B – ESCHEAT STATUTES GOVERNING UNCASHED CHECKS

| State | Statutory Citation for Unclaimed Property | Statutory Citation for General Presumption of Abandoned Property | Statutory Citation for Escheat Provisions |
|---|---|---|---|
| Alabama | Ala Code §35-12-70 et seq. | Ala Code §35-12-72 | Ala Code §43-6-2 et seq. |
| Alaska | Alaska Stat. §34.45.010 et seq. | Alaska Stat. §34.45.110 | Alaska Stat. §13.12.105 |
| Arizona | Ariz. Rev. Stat. Ann. §44-301 et seq. | Ariz. Rev. Stat. Ann. §44-302 | Ariz. Rev. Stat. Ann. §14-2105 |
| Arkansas | Ark. Stat. Ann. §18-28-201 et seq. | Ark. Stat. Ann. §18-28-202 | Ark. Stat. Ann. §28-13-101 et seq. |
| California | Cal. Civ. Proc. Code §1500 et seq. | Cal. Civ. Proc. Code §1511 et seq. | Cal. Civ. Proc. Code §1410 et seq. and §1440 et seq. |

| State | | | |
|---|---|---|---|
| Colorado | Colo. Rev. Stat. §38-13-101 et seq. | Colo. Rev. Stat. §38-13-103 | Colo. Rev. Stat. §15-12-914 |
| Connecticut | Conn. Gen. Stat. §3-56a et seq. | Conn. Gen. Stat. §3-57a – §3-64a | Conn. Gen. Stat. §3-63a |
| Delaware | Del. Code Ann. tit. 12, §1130 et seq. | Del. Code Ann. tit. 12, §1170 | Del. Code Ann. tit. 12, §1101 et seq. |
| District of Columbia | D.C. Code Ann. §41-101 et seq. | D.C. Code Ann. §41-103 | D.C. Code Ann. §19-701 |
| Florida | Fla. Stat. §717.001 et seq. | Fla. Stat. §717.102 | Fla. Stat. §716.01 et seq. |
| Georgia | Ga. Code §44-12-190 et seq. | Ga. Code §44-12-193 – §44-12-209 | Ga. Code §52-3-50 et seq. |

| | | | |
|---|---|---|---|
| Guam | | | Guam Code Ann. tit. 15, §1201 et seq. |
| Hawaii | Hawaii Rev. Stat. §523A-1 et seq. | Hawaii Rev. Stat. §523A-3 | Hawaii Rev. Stat. §532-14 |
| Idaho | Idaho Code §14-501 et seq. | Idaho Code §14-502 | Idaho Code §14-113 |
| Illinois | Ill. Rev. Stat. ch. 765, §1026/15-101 et seq. | Ill. Rev. Stat. ch. 765, §1026/15-201 | Ill. Rev. Stat. ch. 755, §20/0.01 et seq. |
| Indiana | Ind. Code §32-34-1-1 et seq. | Ind. Code §32-34-1-20 | Ind. Code §29-1-17-12 |
| Iowa | Iowa Code §556.1 et seq. | Iowa Code §556.2 – 556.9 | Iowa Code §633.543 et seq. |

| | | | |
|---|---|---|---|
| Kansas | Kan. Stat. Ann. §58-3934 et seq. | Kan. Stat. Ann. §58-3935 | Kan. Stat. Ann. §59-901 et seq. |
| Kentucky | Ky. Rev. Stat. §393A.010 et seq. | Ky. Rev. Stat. §393A.040 et seq. | Ky. Rev. Stat. §393.010 et seq. |
| Louisiana | La. Rev. Stat. Ann. §9:151 et seq. | La. Rev. Stat. Ann. §9:154 | La. Civil Code Art. 902 |
| Maine | Me. Rev. Stat. Ann. tit. 33, §1951 et seq. | Me. Rev. Stat. Ann. tit. 33, §1953 | Me. Rev. Stat. Ann. tit. 18A, §2-105 |
| Maryland | Md. Commercial Law Ann. §17-101 | Md. Commercial Law Ann. §17-301 – 17-308 | Md. Estates and Trusts §3-105 |
| Massachusetts | Mass. Gen. Laws. Ann. ch. 200A, §1 et seq. | Mass. Gen. Laws. Ann. ch. 200A, §1A – 6C | Mass. Gen. Laws. Ann. ch. 200A, §1 et seq. |

| | | | |
|---|---|---|---|
| Michigan | Mich. Comp. Laws §567.221 et seq. | Mich. Comp. Laws §567.223 – §567.237 | Mich. Comp. Laws §700.2105 |
| Minnesota | Minn. Stat. §345.01 et seq. | Minn. Stat. §345.31 – §345.39 | Minn. Stat. §524.2-105 |
| Mississippi | Miss. Code Ann. §89-12-1 et seq. | Miss. Code Ann. §89-12-5 – §89-12-19 | Miss. Code Ann. §89-11-1 et seq. |
| Missouri | Mo. Rev. Stat. §447.010 et seq. | Mo. Rev. Stat. §447.505 – §447.536 | Mo. Rev. Stat. §470.010 et seq. |
| Montana | Mont. Code Ann. §70-9-801 et seq. | Mont. Code Ann. §70-9-803 | Mont. Code Ann. §72-14-101 et seq. |
| Nebraska | Neb. Rev. Stat. §69-1301 et seq. | Neb. Rev. Stat. §69-1302 – §69-1309 | Neb. Rev. Stat. §30-2305 |

| | | | |
|---|---|---|---|
| Nevada | Nev. Rev. Stat. §120A.010 et seq. | Nev. Rev. Stat. §120A.500 | Nev. Rev. Stat. §154.010 et seq. |
| New Hampshire | N.H. Rev. Stat. Ann. §471:C-1 et seq. | N.H. Rev. Stat. Ann. §471:C-2 – 471:C-18 | N.H. Rev. Stat. Ann. §561:10 |
| New Jersey | N.J. Rev. Stat. §46:30B-1 et seq. | N.J. Rev. Stat. §46:30B-7 | N.J. Rev. Stat. §3B:22-25 et seq. |
| New Mexico | N.M. Stat. Ann. §7-8A-1 et seq. | N.M. Stat. Ann. §7-8A-2 | N.M. Stat. Ann. §45-2-105 |
| New York | N.Y. Abandoned Property Law §101 et seq. | N.Y. Abandoned Property Law §300 – §1317 | N.Y. Abandoned Property Law §200 et seq. |
| | | N.C. Gen. Stat. §116B-53 | N.C. Gen. Stat. §116B-1 et seq. |

| | | | |
|---|---|---|---|
| North Carolina | N.C. Gen. Stat. §116B-51 et seq. | | |
| North Dakota | N.D. Cent. Code §47-30.1-01 et seq. | N.D. Cent. Code §47-30.1-02 | N.D. Cent. Code §30.1-04-05 |
| Ohio | Ohio Rev. Code Ann. §169.01 et seq. | Ohio Rev. Code Ann. §169.02 | Ohio Rev. Code Ann. §2105.07 |
| Oklahoma | Okla. Stat. tit. 60, §651 et seq. | Okla. Stat. tit. 60, §651.1 – §659 | Okla. Stat. tit. 87, §271 et seq. |
| Oregon | Or. Rev. Stat. §98.005 et seq. | Or. Rev. Stat. §98.308 – §98.342 | Or. Rev. Stat. §112.055 |
| Pennsylvania | Pa. Stat. tit. 72, §1301.1 et seq. | Pa. Stat. tit. 72, §1301.2 – §1301.10 | Pa. Stat. tit. 27, §11 et seq. |
| | | P.R. Code tit. 7, §2103 | |

| | | | |
|---|---|---|---|
| Puerto Rico | P.R. Code tit. 7, §2101 et seq. | | P.R. Code tit. 7, §2104 |
| Rhode Island | R.I. Gen. Laws §33-21-1 et seq.<br><br>R.I. Gen. Laws §33-21.1-1 et seq. | R.I. Gen. Laws §33-21.1-2 | R.I. Gen. Laws §33-21.1-1 et seq. |
| South Carolina | S.C. Code Ann. §27-18-10 et seq. | S.C. Code Ann. §27-18-30 – §27-18-175 | S.C. Code Ann. §27-19-10 et seq. |
| South Dakota | S.D. Codified Laws Ann. §43-41B-1 et seq. | S.D. Codified Laws Ann. §43-41B-2 | S.D. Codified Laws Ann. §29A-2-105 |
| Tennessee | Tenn. Code Ann. §66-29-101 et seq. | Tenn. Code Ann. §66-29-104 – §66-29-112 | Tenn. Code Ann. §31-6-101 et seq. |
| Texas | | Tex. Property Code Ann. §72.101 | Tex. Property Code Ann. §71.001 et seq. |

| | | | |
|---|---|---|---|
| | Tex. Property Code Ann. §72.001 et seq. | Tex. Property Code Ann. §73.101 | |
| Utah | Utah Code Ann. §67-4a-101 et seq. | Utah Code Ann. §67-4a-201 | Utah Code Ann. §75-2-105 |
| Vermont | Vt. Stat. Ann. tit. 27, §1241 et seq. | Vt. Stat. Ann. tit. 27, §1242 | Vt. Stat. Ann. tit. 14, §681 et seq. |
| Virginia | Va. Code §55.1-2500 et seq. | Va. Code §55.1-2501 | Va. Code §55.1-2400 et seq. |
| Virgin Islands | V.I. Code §28, §651 et seq. | V.I. Code §28, §653 | V.I. Code §15, §121 et seq. |
| Washington | Wash. Rev. Code §63.29.010 et seq. | Wash. Rev. Code §63.29.20 | Wash. Rev. Code §11.08.101 et seq. |
| | | W. Va. Code §36-8-2 | W. Va. Code §42-1-3c |

| West Virginia | W. Va. Code §36-8-1 et seq. | | |
|---|---|---|---|
| Wisconsin | Wis. Stat. §177.01 et seq. | Wis. Stat. §177.02 | Wis. Stat. §863.39 |
| Wyoming | Wyo. Stat. §34-24-101 et seq. | Wyo. Stat. §34-24-103 – §34-24-117 | Wyo. Stat. §2-4-101 |