Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF THE FACTS ............................................................................ 2

        A.      Objector Corp Xanadu ........................................................................... 2

        B.      Objector David Gould .............................................................................. 6

        C.      Objector Kelly Overvold ......................................................................... 6

        D.      Rust's Claims Administration and Settlement Distribution ................. 7

III.    ARGUMENT ....................................................................................................... 8

        A.      Plaintiffs Provided the Best Notice of the Secondary Distribution Practicable
                Under the Circumstances ....................................................................... 8

        B.      The Objections to Plaintiffs' Request for Attorneys' Fees and Reimbursement
                of Expenses Based on An Alleged Lack of Notice Fails ..................... 10

        C.      Uncashed Settlement Funds Should Be Redistributed to Settlement Class
                Members, Not Escheated to States ..................................................... 12

        D.      Class Counsel Have an Obligation to Screen for Fraudulent Claims and to
                Only Pay Qualified Claimants ............................................................. 13

                1.      Corp Xanadu's Claim and Affidavit Raises Red Flags and Concerns
                        Regarding Fraudulent Conduct ............................................... 14

                2.      Corp Xanadu's Refusal to Provide Additional Information as Part
                        of the Claims Process Furthers Concerns Regarding Fraud ........ 15

IV.     CONCLUSION .................................................................................................. 15

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement          i
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Inc. Sec. Litig.*,
 No. 5:06-cv-05208-JF (HRL), 2011 WL 1877988 (N.D. Cal. May 17, 2011) ........................14

*Camberis v. Ocwen Loan Servicing LLC*,
 No. 14-CV-02970-EMC, 2018 WL 6068999 (N.D. Cal. Nov. 20, 2018) ...............................8

*Glasser v. Volkswagen of Am., Inc.*,
 645 F.3d 1084 (9th Cir. 2011) ............................................................................................14

*Hester v. Vision Airlines, Inc.*,
 No. 2:09-CV-00117-RLH, 2017 WL 4227928 (D. Nev. Sept. 22, 2017) .......................12, 13

*Keepseagle v. Vilsack*,
 118 F. Supp. 3d 98 (D.D.C. 2015) .........................................................................................8

*Klier v. Elf Atochem N. Am., Inc.*,
 658 F.3d 468 (5th Cir. 2011) ...............................................................................................13

*In re Korean Air Lines Co., Ltd. Antitrust Litigation*,
 MDL No. 1891, No. 2:07-cv-05107-SJO-AGR (C.D. Cal.) ....................................................10

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) .............................................................................................13

*State of California v. Levi Strauss & Co.*,
 41 Cal. 3d 460 (1986) ..........................................................................................................13

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
 No. 20-CV-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ...................................14

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions*,
 § 12:30 (5th ed.) ..................................................................................................................13

**Rules**

Northern District of California
 Local Rule 7-3 .....................................................................................................................11

Federal Rules of Civil Procedure
 Rule 23 ...............................................................................................................................8, 9
 Rule 23(c)(2)(B) ..................................................................................................................8, 9

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

ii

## I.    INTRODUCTION

Plaintiffs submit this Reply in support of their Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses (ECF No. 1347) ("Mot.") and in response to objections by Corp Xanadu,[1] David Gould, and Kelly Overvold (together, "Objs.").[2] The Declaration of Joel K. Botzet of Rust Consulting, Inc. ("Botzet Decl.") and the Declaration of Elizabeth T. Castillo ("Castillo Decl.") support this reply.

The Court should overrule the Objections for several reasons. *First*, the Objectors received notice and filed the Objections, directly contradicting their argument that Plaintiffs and Rust failed to provide reasonable notice of the settlement distribution. *See*, *generally*, Objs. Indeed, Rust mailed a check to Corp Xanadu on March 17, 2022 after Corp Xanadu had confirmed in an October 11, 2021 email that its post office box address remained active; Mr. Gould received and cashed a check for $6,733.21 on May 31, 2022; and Rust mailed a check for $139.24 to Ms. Overvold at the address on her claim form on March 17, 2022 and reissued and remailed another check to her updated address on July 27, 2022. Botzet Decl. ¶¶ 11, 19, 22-23.

*Second*, given the amount of the remaining uncashed settlement funds (*i.e.*, $5,448,087.41), Corp Xanadu and Mr. Gould's contention that such funds should escheat to the states is unsupported in the Ninth Circuit and in class actions generally—and is nowhere to be found in any of the settlement agreements at issue. *See*, *infra*, at § III(C).

*Finally*, as to Corp Xanadu and the claims administration process generally, it is axiomatic that Class Counsel have a duty to the Court and Settlement Classes to ensure that the net

---

[1] The Objections refer to Corp Xanadu alternatively (and contradictorily) as "Xanadu Corp." *See*, *e.g.*, Objs. at 1. Rust has only received communications from Corp Xanadu represented as the entity name. Botzet Decl. ¶¶ 4-16.

[2] Attorney John Allen Roth filed the Objections on behalf of Corp Xanadu and Mr. Gould on September 7, 2022 (ECF No. 1353). Separately, an individual by the name of Scott Zaban (szaban@gmail.com) emailed Ms. Overvold's Objection to the Court and Class Counsel on September 14, 2022, a week after the extended deadline for objections to the Motion (ECF No. 1351). The Court has not yet docketed Ms. Overvold's Objection. Despite Ms. Overvold's untimely Objection, Plaintiffs address her arguments herein.

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

1

settlement funds are only paid to qualified claimants. Several facts have since arisen that have led to concerns over the validity of Corp Xanadu's alleged claimed purchases.[3] Class Counsel have expressed some of these concerns to Corp Xanadu, and with Rust's support, have requested that Corp Xanadu provide additional information verifying its claimed purchases. Castillo Decl. ¶ 9. To date, through its counsel, Corp Xanadu has flatly refused. *Id.* ¶ 10.  At this time, without the requested information, Class Counsel cannot recommend to the Court that Corp Xanadu's claim be approved given its significant and substantial red flags. *Id.* ¶ 12.

## II.     SUMMARY OF THE FACTS

### A.     Objector Corp Xanadu

Corp Xanadu (claim number 0000144970) filed a claim to each of the three rounds of Settlements in this action online through the settlement website (www.airlinesettlement.com). Botzet Decl. ¶ 4. Corp Xanadu's contact information is:

> First and Last Name: Corp Xanadu
> Email: corpxanadu@phreakmail.com
> Phone: (801) 823-1320
> Address: 5042 Wilshire Boulevard #35581, Los Angeles, California 90036

*Id.* Corp Xanadu's claim included 1,337 tickets. *Id.* ¶ 5. Rust audited Corp Xanadu's claim because the audit threshold for businesses was 1,000 or more tickets. *Id.* ¶ 6. Corp Xanadu did not verify any of its alleged purchases with actual invoices or other corporate records; instead, Corp Xanadu's alleged 1,337 claimed tickets are exclusively supported by a one-page Affidavit,

---

[3] Since Plaintiffs moved for secondary distribution of the remaining settlement funds on August 8, 2022, Class Counsel and the claims administrator, Rust, have received 16 e-mails from potentially fraudulent claimants requesting the reissuance of checks. Botzet Decl. ¶ 36. They request that Rust reissue a check for under $10,000. *Id.* Each of these claimants list their address as different units in various apartment complexes on West Duarte Road in Arcadia, California, or as post office boxes in Southern California. *Id.* To verify the legitimacy of these claims, Rust is in the process of seeking interviews from each of these claimants regarding (1) why they all have similar addresses or post office box addresses, (2) why they have substantively identical emails, and (3) why they disclosed attempts to circumvent federal law requiring banks to report cash transactions of $10,000 or more pursuant to the Currency and Foreign Transactions Reporting Act. *Id.* Rust will conduct the interviews and evaluate the results of the interviews and reissue requests with Class Counsel as needed. *Id.*

executed by the alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's September 20, 2020 audit letter. *Id.* Consistent with its audit protocol, best practices, and attempts to pay as many legitimate claimants as possible, Rust initially approved the claim based on the signed Affidavit. *Id.*

On August 24, 2021, Rust sent a determination letter by USPS to Corp Xanadu's Wilshire Boulevard address, which USPS returned as undeliverable with no forwarding address on September 22, 2021. *Id.* ¶ 9. On October 11, 2021, Corp Xanadu emailed Rust indicating that it did not receive the determination letter and stating that the Wilshire Boulevard address is correct. *Id.* ¶ 10. Rust replied to the email and attached the determination letter. *Id.*

On March 17, 2022, Rust mailed a check in the amount of $603,831.08 by USPS to Corp Xanadu's Wilshire Boulevard address, which USPS again returned as undeliverable with no forwarding address on April 11, 2022. *Id.* ¶ 11. On April 25, 2022, Rust sent the claimant names and addresses of all checks returned as undeliverable, including those of Corp Xanadu, to a vendor to obtain an updated address through an automated process called "batch trace," which did not return a better or updated address for Corp Xanadu. *Id.* ¶ 12.[4]

On July 26, 2022, consistent with this Court's order at the July 6, 2022 hearing, Class Counsel advised Rust to stop reissuing checks immediately and proceed with voiding uncashed original checks as of July 31, 2022 and uncashed reissued checks as of August 30, 2022 because they intended on filing a motion for secondary distribution of the remaining uncashed settlement funds shortly and needed to calculate the exact amount of the available funds. Castillo Decl. ¶ 3. On July 30, 2022, Mr. Suica emailed Rust indicating that Corp Xanadu did not receive a check and provided a new mailing address: 8605 Santa Monica Boulevard #10287, West Hollywood, California 90069. Botzet Decl. ¶ 14; Castillo Decl., Ex. A (Correspondence Between Class Counsel and Corp Xanadu) at 9-10. Mr. Suica's email also noted:

---

[4] Class action administrators, including Rust, commonly use vendors to return a better or updated address for claimants whose checks are returned as undeliverable. *Id.* ¶ 38.

. . . please see that the settlement check is payable ONLY to the name of the company: CORP XANADU -- and that no company officer's name is included on the check. Including a company officer's name will make it a 2-party check and will make it much more complicated for the company to negotiate the payment.

Castillo Decl., Ex. A at 10. On August 24, 2022, Corp Xanadu emailed Rust inquiring about reissuance of the check. Botzet Decl. ¶ 15.

On the morning of August 26, 2022, a Nicaragua-based attorney, Karla Corea, who purportedly represents Corp Xanadu, emailed Class Counsel threatening legal action because Corp Xanadu did not receive the check that Rust sent to it on March 17, 2022. Castillo Decl., Ex. A at 4-5. On the same day, a Pennsylvania-based attorney, John Allen Roth, who claims to represent Corp Xanadu and filed the Objections on behalf of Corp Xanadu and David Gould, moved for leave to appear *pro hac vice* in the Action, which the Court granted (ECF No. 1352).

Upon receiving Ms. Corea's email, Class Counsel immediately contacted Rust to gather any relevant facts. Castillo Decl. ¶ 5. After learning that Corp Xanadu did not provide *any* documentation to support its 1,337 claimed tickets except for Mr. Suica's one-page Affidavit, Class Counsel began investigating Corp Xanadu's claims and Corp Xanadu itself given the number of questionable, potentially fraudulent claimants requesting reissuance of checks since the filing of the Motion on August 8, 2022. *Id.* ¶ 6; *see also*, *supra*, at fn. 3.

Regarding Corp Xanadu's alleged purchases, Class Counsel found them to be highly suspicious. For example:

- Corp Xanadu did not provide *any* receipt showing a ticket purchase, *any* canceled check, *any* credit card statement, *any* travel itinerary, or *any* email confirmation of ticket purchases for its claimed 1,337 tickets, which is highly unusual for a business, particularly one that purportedly purchased tickets the tickets for its own use. Castillo Decl. ¶ 7); and

- Corp Xanadu failed to provide origin or destination airports or travel dates for *any* of its alleged ticket purchases. Castillo Decl. ¶ 7.

Regarding Corp Xanadu itself, Class Counsel also found it to be highly suspicious:

- Class Counsel could not find *any* online presence whatsoever, including on the California Secretary of State's California Business Search website. *Id.* ¶ 8.;

- Class Counsel could find no records of actual employees employed by it. No one appears to have worked for Corp Xanadu, which raises the question of how it could have had over 1,000 claimed tickets over the relevant period. *Id.*;

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

4

- that Corp Xanadu's Wilshire Boulevard address is not associated with any actually operating business but is instead a private rental mailbox inside "Wilshire Mailbox," which appears to be a generic notary and shipping center in Los Angeles. *Id.*;

- Corp Xanadu's Santa Monica Boulevard address is associated with a virtual mailbox provider, "Earth Class Mail." *Id.*;

- Alleged representatives or agents (including alleged counsel) have alternatively (and contradictorily) referred to the company as Xanadu Corp. *Id.*;

- Corp Xanadu appears to lack a true corporate email system, which would be unusual for an entity that had the capacity to make over a 1,000 transpacific travel purchases over the relevant period. For example, the email provided with Corp Xanadu's claim is "corpxanadu@phreakmail.com." This is highly unusual by itself. *Id.*;

- Corp Xanadu's phone number is associated with a landline in Ogden, Utah. *Id.*;

- Corp Xanadu "use" of a Nicaragua-based foreign attorney is unusual. *Id.*; and

- The fact that Corp Xanadu's determination letter and check were both returned, along with the request for a reissued check to be sent elsewhere is itself worthy of investigation. *Id.*

Given its lack of an online presence and its inability to show that it has actual employees or a true mailing address, its large claim raises further red flags and fraud prevention concerns. Accordingly, on the evening of August 26, 2022, Class Counsel replied to Ms. Corea's email and included Mr. Roth, stating that they were investigating Corp Xanadu's claims. Castillo Decl. ¶ 9. To facilitate validation of the claims, Class Counsel requested Ms. Corea and Mr. Roth provide Corp Xanadu's company formation documents showing that it is a bona fide company and Mr. Suica's availability by Zoom to discuss Corp Xanadu's business and alleged purchases in this action. *Id.* Class Counsel also followed up in this request on September 2, 2022. *Id.*

On September 6, 2022, Mr. Roth declined to make a representative from his ostensible client available and did not address Class Counsel's request for Corp Xanadu's company formation documents. *Id.* While Corp Xanadu offered to provide the Court "under seal, a copy of his identification to demonstrate that he is the person who submitted the claim" (Objs. at fn. 3), this does not facilitate Class Counsel and Rust's validation of Corp Xanadu's claims or their duty to prevent fraudulent claims. Class Counsel and Rust's concerns are with the legitimacy of Corp Xanadu and its claim to the settlements in this action—not with the identification of the

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

5

person who filed the claim. Castillo Decl. ¶ 10. In sum, neither Class Counsel nor Rust can verify Corp Xanadu's alleged purchases, let alone verify that such a company even exists. *Id.* ¶¶ 7-10. If Corp Xanadu does not provide further information validating its alleged purchases, Class Counsel recommend denying the claim in full. *Id.* ¶ 12. To be clear, it is certainly possible that its claims are legitimate, but until Corp Xanadu can provide additional information, neither Class Counsel nor Rust can recommend approving and paying this claim. *Id.*

**B.      Objector David Gould**

Like Corp Xanadu, David Gould (claim number 0000139761) filed a claim to each of the three rounds of Settlements in this action online through the settlement website. Botzet Decl. ¶ 17. Mr. Gould's claim included 96 tickets on various airlines, including eight *Satogaeri* tickets. *Id.* The audit threshold established for individuals is 125 tickets or more and/or 50 or more tickets for each of the Japan (Fuel Surcharge) and/or *Satogaeri* Settlement Classes. *Id.* ¶ 18. As Mr. Gould's claimed tickets fell under the audit threshold, and Rust therefore did not audit him. *Id.*

On August 24, 2021, Rust mailed Mr. Gould a determination letter. Botzet Decl. ¶ 19. On March 17, 2022, Rust mailed Mr. Gould a check for $6,733.21, which he cashed on May 31, 2022. *Id.* There is no additional correspondence between Mr. Gould and Rust. *Id.* Given the foregoing, Class Counsel were surprised by Mr. Gould's objection given that he received his payment from the First Distribution[,]" (Objs. at 3), appears to have had no difficulty with receiving or cashing his check, and had no other communication with Rust. Botzet Decl. ¶ 19.

**C.      Objector Kelly Overvold**

Kelly Overvold (claim number 0000105324) filed a claim to rounds one and two of the Settlements in this action online through the settlement website. Botzet Decl. ¶ 20. Ms. Overvold's claim included 64 tickets on various airlines. *Id.* As Ms. Overvold's claimed tickets fell under the audit threshold discussed *supra*, Rust did not audit her. *Id.*

On August 24, 2021, Rust mailed Ms. Overvold a determination letter. *Id.* ¶ 22. On March 17, 2022, Rust mailed her a check for $139.24 to the address provided on Ms. Overvold's claim

form. *Id.* On May 31, 2022, Ms. Overvold emailed Rust providing a change of address and requesting a check reissue. *Id.* ¶ 23. On June 1, 2022, Rust replied to her confirming that it had updated her address and submitted her request for a check reissue. *Id.* In the reply, Rust stated, "You should allow a minimum of 4 – 8 weeks for the reissued check to be mailed." *Id.* On July 27, 2022, Rust mailed the reissued check to Ms. Overvold's updated address; the check had a void date of August 30, 2022. *Id.* On August 30, 2022, Rust determined that this reissued check remained uncashed and voided it. *Id.*

On September 14, 2022, Ms. Overvold emailed Rust requesting a check reissue. *Id.* ¶ 24. On the same day, Rust replied to Ms. Overvold stating that the deadline to request a check reissue had passed. *Id.* If the Court authorizes a secondary distribution of the remaining uncashed settlement funds, Plaintiffs and Rust are amenable to reissuing and remailing Ms. Overvold's check again. However, they cannot do so at this time while the Motion is pending.

### D.   Rust's Claims Administration and Settlement Distribution

Rust began administering claims in this action in 2015, before the common use of electronic payments in class action settlements. Botzet Decl. ¶ 27. Electronic payment information was therefore not part of the claim filing or settlement distribution processes in this action. *Id.* Rust conducted all outreach to claimants by mail during the claims administration process. *Id.* ¶ 31. Rust does not provide regular claim status updates to Settlement Class Members by email but does respond to Settlement Class Members' requests for claim status updates by email, phone, and mail upon request. *Id.* ¶ 33.[5] For example, between 2015 and February 28, 2022, 1,289 claimants contacted Rust with a change of address, and Rust updated those addresses in its settlement database for this action. *Id.* ¶ 37.

After distribution occurred on March 17, 2022, USPS returned 5,444 checks as undeliverable to Rust. *Id.* ¶ 39. As part of its normal practices, Rust sent the claimant names and addresses of all checks returned as undeliverable to a vendor to obtain updated addresses through

---

[5] Not all claimants provided an email address. *Id.*

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

7

the "batch trace" automated process. *Id.* ¶ 26(c). The vendor returned 3,391 updated addresses, and Rust re-mailed checks to these addresses. *Id.* ¶ 39. Claimants cashed 2,314 checks of these re-mailed checks. *Id.* As of August 8, 2022, the number and value of checks cashed or assumed cashed were 44,893 and $98,939,233.18, respectively. Mot. at 2. The number and value of uncashed checks were 16,216 and $5,448,087.41, respectively. *Id.* Of the uncashed checks, 3,337 checks do not have mailable addresses. *Id.* ¶ 40.

## III.   ARGUMENT

### A.   Plaintiffs Provided the Best Notice of the Secondary Distribution Practicable Under the Circumstances

Corp Xanadu and Mr. Gould argue that Plaintiffs failed to meet settlement class notice requirements under Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B) in notifying Settlement Class Members of the proposed secondary distribution. Objs. at 4-5. But Class Counsel *already* provided notice of each of the three rounds of settlements, which the Court approved. ECF Nos. 1009, 1259-1, 1318. There is no authority for the proposition that a comprehensive notice program pursuant to Rule 23 is required when Class Counsel and the Court are simply seeking to redistribute uncashed settlement funds as part of the claims administration process. *See*, *e.g.*, *Camberis v. Ocwen Loan Servicing LLC*, No. 14-CV-02970-EMC, 2018 WL 6068999, at *3 (N.D. Cal. Nov. 20, 2018); *see also Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (noting that "as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'").

Further, even if Rule 23(c)(2)(B) was properly invoked, it only requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously found Plaintiffs met Rule 23(c)(2)(B)'s settlement class notice requirements.[6] Indeed, tens of thousands

---

[6] *See*, *e.g.*, Second Amended Order Granting Preliminary Approval of Class Action Settlement at 3 (ECF No. 1306) ("The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all

of class members received notice of the settlements in this action and filed claims, including Objectors. Botzet Decl. ¶ 28. Any suggestion by Objectors that Plaintiffs failed to satisfy Rule 23(c)(2)(B)'s settlement class notice requirements is therefore meritless and undermined by the fact that they received notice themselves and objected.

Specifically, Objectors argue that Rust's notice to Settlement Class Members regarding settlement distribution and undeliverable/uncashed checks, and Class Counsel's notice to Settlement Class Members of the Motion, were deficient. Objs. at 4-5. They submit that Rust should have emailed Settlement Class Members about settlement distribution and the status of undeliverable/uncashed checks and that Class Counsel should have emailed Settlement Class Members about the Motion. *Id.* at 4.

But Rust sent determination letters by USPS to all claimants and answered all inquiries from claimants inquiring about their claim status before July 26, 2022, when Class Counsel advised Rust to stop reissuing checks immediately and proceed with voiding uncashed original checks as of July 31, 2022 and uncashed reissued checks as of August 30, 2022. Botzet Decl. ¶ 13. Indeed, Rust emailed the determination letter to Corp Xanadu upon request and answered Corp Xanadu's multiple emails. *Id.* ¶¶ 10, 16. Rust determined there is no efficiency or precedent for emailing or mailing motions to claimants when they are available on the settlement website.[7] *Id.* ¶ 35. Even assuming Rust did so here, this would not have changed the fact that USPS returned the check sent to Corp Xanadu's Wilshire Boulevard address as undeliverable with no forwarding address. *Id.* ¶ 11. Indeed, it was Corp Xanadu *itself* that identified a new mailing

---

persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.").

[7] The Objectors' assumption that Rust has "all of the email addresses of the persons who submitted claims in this case" is simply wrong. Opp. at 2. Not all claimants provided email addresses. *Id.* ¶ 33. Furthermore, the objectors' assertion that "an email [] would provide fair notice" is highly speculative. Objs. at 3. Regardless, it is of no moment. The Objectors cannot (and are not) seeking to present the claims of other absent Settlement Class Members. They are seeking to obtain payment of their own claims. But they indisputably did obtain notice of the claims process and settlement distribution. Their speculation that other Settlement Class Members may have been harmed by inadequate notice, therefore, is irrelevant.

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

9

address to Rust on July 30, 2022. *Id.* ¶ 14. Similarly, Mr. Gould received and cashed his check without e-mail notice of distribution. *Id.* ¶ 19; Objs. at 3.

Rust posted each motion and notice filed with the Court on the settlement website within 24 hours. *See*, *e.g.*, Botzet Decl. ¶¶ 42-43. The motions and notices can be downloaded on the Court Documents page, which is linked to the English, Chinese, and Japanese pages of the website. *Id.* ¶ 44.[8] Moreover, the settlement notice materials, including the Long-Form Notice, direct Settlement Class Members to visit the website for "additional information, important documents, and case updates[.]" *See*, *e.g.*, Long-Form Notice (ECF No. 1297-3). The Long-Form Notice also provides that "[s]pecific details on the distribution are available at the website" and references the website in the footer of every page. *See*, *generally*, Long-Form Notice.

Rust's claims administration here followed those in similar cases, such as *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891, No. 2:07-cv-05107-SJO-AGR (C.D. Cal.) ("*Korean Air*"). Botzet Decl. ¶ 45. Rust is not required to email each of the 96,133 claimants in this action every time a motion is filed. Botzet Decl. ¶ 35. Neither the Court's orders nor the Rules require such notice, Rust's extensive experience in class action matters do not recommend it, and Rust did not do so in similar cases like *Korean Air. Id.* ¶ 45.[9]

## B. The Objections to Plaintiffs' Request for Attorneys' Fees and Reimbursement of Expenses Based on An Alleged Lack of Notice Fails

The Objectors suggest that Class Counsel did not provide reasonable notice to Settlement Class Members of their request for attorneys' fees and reimbursement of expenses. Objs. at 4-5. This position overlooks two facts: *First*, Class Counsel already provided reasonable notice to Settlement Class Members of their fee requests in connection with each of the three rounds of

---

[8] The Objectors argue Rust should have provided status updates in the Chinese and Japanese versions of the settlement website. Objs. at 6. Rust provided status updates through the initial distribution on March 17, 2022 in the English, Chinese, and Japanese webpages of the website. Botzet Decl. ¶ 41.

[9] The Objectors contend, "In most litigations, the claims administrator notifies the claimants when a check is returned or not cashed." Opp. at 4. This contention is completely unsupported.

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

10

settlements (ECF Nos. 986, 1227, 1307). The deadline to object to these requests have long passed.[10] The pending request for attorneys' fees and reimbursement of expenses relates to Class Counsel's lodestar and expenses in connection with settlement administration between August 1, 2019 and July 31, 2022. Mot. at 3-5.

*Second*, this Court invited Class Counsel to submit a further fee request given the extensive work performed in connection with settlement administration and other matters in this action. Hr'g Tr. at 9:12-16 (Jul. 6, 2022). Plaintiffs did so and provided reasonable notice of their request through filing the Motion with the Court on August 8, 2022 and posting said Motion on the settlement website (airlinesettlement.com) the next day. Botzet Decl. ¶ 43. Settlement Class Members had a full and fair opportunity to object, if they even have that right to begin with: Pursuant to Local Rule 7-3, the original deadline to oppose the Motion was August 22, 2022, which the Court extended to September 7, 2022 (ECF No. 1351), providing a full 30 days for Settlement Class Members to weigh in on the Motion. Even then, Ms. Overvold's submitted her Objection a week late. *See*, *supra*, at fn. 2. Corp Xanadu, Mr. Gould, and Ms. Overvold's Objections based on their alleged lack of notice is undermined by the fact that they received notice of Plaintiffs' request and filed Objections thereto. *See*, *generally*, Objs.

The Objectors state Class Counsel should have provided notice of their request "to class members who filed a claim by email, and in the case that no email exists in the records, via postal mail." Objs. at 7. As stated, *supra*, the settlement notice materials direct potential Settlement Class Members to visit the settlement website (airlinesettlement.com) for additional information, important documents, and case updates (ECF No. 1297-3). The Motion and exhibits thereto were posted to the settlement website within 24 hours of filing. Botzet Decl. ¶ 43. There is no

---

[10] Class Counsel notes that they requested attorneys' fees of 33%, and the Court granted 25%, in connection with the third and final round net settlement fund (ECF Nos. 1307 at 1 (motion), ECF No. 1314 at 14 (order)). Even if the Court grants further attorneys' fees of $1 million, or 18.355%, from the remaining settlement funds of $5,448,087.41, this would only result in a fee award of 26.77% in connection with third and final round net settlement fund (*i.e.*, far less than the 33% noticed). Castillo Decl. ¶ 13.

efficiency or precedent for emailing or mailing the Motion to the 96,133 individuals and companies that submitted claims when the Motion is readily available online. *Id.* ¶ 35. And, of course, this would expend much of the remaining uncashed settlement funds. *Id.*

While Corp Xanadu, Mr. Gould, and Ms. Overvold object to the notice provided in connection with the request for attorneys' fees, they do not appear to oppose the amount of the request. *See*, *generally*, Objs. They do, however, misstate and overstate the amount of the request throughout their Objections. *See*, *e.g.*, Corp Xanadu/Gould Objs. at 1 (alleging incorrectly that Class Counsel seeks 55% of the remaining settlement funds), 5 (alleging incorrectly that Class Counsel seeks over 30% of the remaining settlement funds), 5 (alleging incorrectly that Class Counsel seeks $3 million of the remaining settlement funds); Overvold Obj. at 3 ("Class Counsel stands to receive 30% of the remaining funds as attorney fees if this motion is approved.").

To avoid any confusion, Class Counsel are seeking $1 million, or 18.355% of the remaining settlement funds of $5,448,087.41 in connection with their motion practice and settlement administration work since August 1, 2019. Mot. at 11-12. As stated in the Motion, the additional $1 million would result in a cumulative negative multiplier of -0.77 based on work performed through July 31, 2022—and less than that if the Court takes into consideration Class Counsel's anticipated work through the end of settlement administration. *Id.* at 11. The figures cited by the Objectors are nowhere to be found in the Motion.

## C.    Uncashed Settlement Funds Should Be Redistributed to Settlement Class Members, Not Escheated to States

The Court should authorize a secondary distribution of the remaining settlement funds to settlement class members who cashed their checks and who would receive a minimum payment of $10 from the secondary distribution as proposed in the Motion. Mot. at 6-7. "[R]edistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members" and because "class settlements rarely 'pay individual class members the full value of their claims[.]'" *Hester*

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement       12
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

*v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017) (citation omitted). "Redistribution is more likely to bring the class members closer to that value rather than to be a windfall." William B. Rubenstein, *Newberg on Class Actions*, § 12:30 (5th ed.). If it is logistically feasible and economically viable to make additional *pro rata* distributions, the district court should do so. *Hester*, 2017 WL 4227928, at *2 (citation omitted).

Corp Xanadu and Mr. Gould's argument that the remaining settlement funds should escheat to the states is unsupported in the Ninth Circuit and in class actions generally. Objs. at 5, Ex. B (Escheat Statutes Governing Uncashed Checks). The case law above is conclusive in that a secondary distribution to Settlement Class Members is appropriate if it is feasible. *See supra.*[11] The Ninth Circuit has expressed that the next best alternative to a direct secondary distribution to settlement class members is a *cy pres* distribution by providing an indirect benefit to the class. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Moreover, settlement funds should only escheat if the district court is unable to develop an appropriate *cy pres* distribution, or finds *cy pres* no longer appropriate. *Id.* at 1309. To compel the use of escheatment would cripple the "substantial compensatory function" of the private class action. *State of California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 478 (1986) (citation omitted). The Court should therefore not order the escheatment of the remaining settlement funds to the states, as such a remedy makes no sense when there are qualified claimants who could receive additional funds.

### D.   Class Counsel Have an Obligation to Screen for Fraudulent Claims and to Only Pay Qualified Claimants

Finally, Class Counsel, Rust, and ultimately the Court have an obligation to only pay those claimants that actually have qualifying purchases. They are not required to put on blinders and blindly pay Corp Xanadu's claim given the attendant red flags associated with its claim. In fact,

---

[11] *See also Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) ("Each class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves. The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.")

Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement       13
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

it is not at all clear that Corp Xanadu even has standing to assert this objection in the first instance. Castillo Decl. ¶ 11. Plaintiffs have sought verification of Corp Xanadu's proof of membership in at least one Settlement Class and have been repeatedly stymied. *Id.* ¶¶ 9-11.

### 1. Corp Xanadu's Claim and Affidavit Raises Red Flags and Concerns Regarding Fraudulent Conduct

An objector must provide, *inter alia*, "[p]roof of membership in at least one Settlement Class[.]" *See, e.g.*, Long Form Notice (ECF No. 1297-3) at § 14 (How do I object to or comment on the Settlement?). Objectors lack standing to object if they do not explain the basis on which they claim to be settlement class members. *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, No. 20-CV-02155-LB, 2022 WL 1593389, at *7 (N.D. Cal. Apr. 21, 2022); *see also In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF (HRL), 2011 WL 1877988, at *3 n.4 (N.D. Cal. May 17, 2011) (objector lacks standing to object where "he did not provide evidence to show that he is a class member as required by this Court's order"); *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) (objector must be an aggrieved class member to have standing to object).

Beyond Mr. Suica's cursory Affidavit, Corp Xanadu has provided **no** proof of membership in any Settlement Class—not a single receipt showing a ticket purchase, cancelled check, credit card statement, travel itinerary, or email confirmation of ticket purchase. Castillo Decl. ¶ 7. This is very unusual for a business, particularly one that purportedly purchased 1,337 tickets for its own use. *Id.*; *see also* Botzet Decl., Ex. 1 at 7.

While Corp Xanadu provided a one-page Affidavit executed by Carlos Suica, alleged Secretary of Corp Xanadu, on October 2, 2020 in response to Rust's September 20, 2020 audit letter, and while Rust determined that Mr. Suica's Affidavit constituted acceptable support for the 1,337 tickets claimed and approved the claim valued at $603,831.08 in its entirety, Class Counsel's subsequent investigation into the validity of Corp Xanadu's claims and Corp Xanadu itself—conducted after USPS returned Rust's check to Corp Xanadu as undeliverable with no forwarding address and upon receiving Ms. Corea's email threatening legal action—reveals that Corp Xanadu may not be a bona fide company and that Mr. Suica's Affidavit may be false.

Castillo Decl. ¶ 11. Indeed, Corp Xanadu has no online presence and Class Counsel cannot verify the existence of any employees, including on the California Secretary of State's California Business Search website. *Id.* ¶ 8. Corp Xanadu's previous Wilshire Boulevard address is associated with a private rental mailbox inside Wilshire Mailbox and current Santa Monica Boulevard address is associated with a virtual mailbox provider, Earth Class Mail. *Id.* Corp Xanadu's email address (corpxanadu@phreakmail.com) does not appear to be associated with a valid domain name or known email service provider. *Id.* Corp Xanadu's phone number ((801) 823-1320) is associated with a landline in Ogden, Utah. *Id.*

For all these reasons, Plaintiffs are reasonably concerned that Corp Xanadu is not a member of any Settlement Class and may lack standing to object altogether. Of course, if Corp Xanadu can verify its purchases to the satisfaction of Class Counsel and Rust, as well as the Court, Class Counsel are happy to pay the claim as they are committed to getting settlement funds into Settlement Class Members' hands. But Class Counsel will not blindly pay claims, especially when the claims raise the unusual red flags that Corp Xanadu's claim does.

### 2.      Corp Xanadu's Refusal to Provide Additional Information as Part of the Claims Process Furthers Concerns Regarding Fraud

In the interest of resolving this issue and conserving the resources of the parties and the Court, Class Counsel requested that Corp Xanadu provide its company formation documents showing that it is a bona fide company along with Mr. Suica's availability by Zoom to discuss Corp Xanadu's business and claims to the settlements in this action. Castillo Decl. ¶ 9. Corp Xanadu's refusal to do so suggests that Corp Xanadu's Objection is unwarranted and its claim to the settlements, unsupported. *Id.* ¶¶ 10-11.

## IV.      CONCLUSION

Plaintiffs respectfully request that the Court deny overrule Corp Xanadu, Mr. Gould, and Ms. Overvold's Objections and grant all relief requested in Plaintiffs' Motion.

1    Dated: September 15, 2022                Respectfully submitted,

2    */s/ Elizabeth T. Castillo*              */s/ Christopher L. Lebsock*

3    Adam J. Zapala                           Michael P. Lehmann
     Elizabeth T. Castillo                    Christopher L. Lebsock
4    **COTCHETT, PITRE & McCARTHY, LLP**      Seth R. Gassman
     840 Malcolm Road                         **HAUSFELD LLP**
5    Burlingame, CA 94010                     600 Montgomery Street, Suite 3200
     Phone: (650) 697-6000                    San Francisco, CA 94111
6    Fax: (650) 697-0577                      Phone: (415) 633-1908
                                              Fax: (415) 358-4980
7

8

9                        *Co-Lead Counsel for Plaintiffs and the Classes*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement     16
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB