**Pages 1 - 20**

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge


IN RE:  TRANSPACIFIC              )
PASSENGER AIR TRANSPORTATION      )  **NO. C 07-05634 CRB**
ANTITRUST LITIGATION.             )
_____)

                                       San Francisco, California
                                       Friday, November 4, 2022

     **TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                    COTCHETT, PITRE & McCARTHY LLP
                    San Francisco Airport Office Center
                    840 Malcolm Road
                    Burlingame, California 94010
              **BY: ELIZABETH T. CASTILLO, ATTORNEY AT LAW**

                    HAUSFELD LLP
                    600 Montgomery Street, Suite 3200
                    San Francisco, California 94111
              **BY: CHRISTOPHER L. LEBSOCK, ATTORNEY AT LAW**

For Claimant in Pro Se:
                    CHEKIAN LAW OFFICE, INC.
                    445 South Figueroa Street, 31st Floor
                    Los Angeles, California 90071
              **BY: MICHAEL F. CHEKIAN, ATTORNEY AT LAW**

For Defendants Xanadu Corporation and David Gold:

                    LAW OFFICE OF J. ALLEN ROTH
                    805 South Alexandra Street
                    Latrobe, Pennsylvania 15650
              **BY: JOHN ALLEN ROTH, ATTORNEY AT LAW**

REPORTED REMOTELY BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
                       CSR No. 7445, Official U.S. Reporter

|    |    |
|----|----|
| 1  | **Friday - November 4, 2022**                                    **10:06 a.m.** |
| 2  | P R O C E E D I N G S |
| 3  | ---o0o--- |
| 4  | **THE CLERK:** Calling Civil Action C 07-5634, In Re |
| 5  | Transpacific Passenger Air Transportation Antitrust Litigation. |
| 6  | Counsel, please state your appearances for the record, and |
| 7  | claimant. Thank you. |
| 8  | **MS. CASTILLO:** Good morning, Your Honor. Elizabeth |
| 9  | Castillo with Cotchett, Pitre & McCarthy for the plaintiffs. |
| 10 | And I'm joined by my colleague, Mr. Christopher Lebsock, with |
| 11 | Hausfeld. |
| 12 | **MR. LEBSOCK:** Good morning. |
| 13 | **THE COURT:** Good morning. |
| 14 | **MR. CHEKIAN:** Good morning, Your Honor. Michael Chekian, |
| 15 | pro se claimant. |
| 16 | **THE COURT:** All right. Good morning. |
| 17 | Do I have anyone else? Is there anyone else? |
| 18 | **THE CLERK:** We have one more participant. |
| 19 | **THE COURT:** Yeah. |
| 20 | **THE CLERK:** I think it's just taking a while for them just |
| 21 | to log in. |
| 22 | **THE COURT:** Mr. Roth, Allen Roth? Is that it? |
| 23 | **THE CLERK:** Yes. |
| 24 | **THE COURT:** All right. Yes, I see Mr. Roth. |
| 25 | Good morning, Mr. Roth. |

1        **MR. ROTH:**  Good morning.

2        **THE COURT:**  And what is your participation in this?

3                        (No response.)

4        **THE COURT:**  Sorry.  Who do you represent, Mr. Roth?

5        **MR. ROTH:**  I have -- I have two different people.  I've

6   got the Xanadu Corporation, and I have David Gold.

7        **THE COURT:**  Well, I don't have -- I don't think I have

8   anything involving -- any papers involving Mr. Gold.  Is that

9   right, or do I and I just have overlooked them?

10       You say you represent Mr. Gold.

11       **MR. ROTH:**  Correct.

12       **THE COURT:**  Could you elaborate on that?  Has he filed?

13  Is he --

14       **MR. ROTH:**  Well, I believe he has filed, and he -- he had

15  a claim for $7,000.

16       **THE COURT:**  Yeah.

17       **MR. ROTH:**  And David Gold filed objections to what's going

18  on here.

19       **THE COURT:**  Ms. Castillo or Mr. Lebsock, can you

20  address -- can you address that?

21       **MS. CASTILLO:**  I think Mr. Gold filed the same objection

22  as Xanadu Corporation, Your Honor.  It was one submission on

23  behalf of both.

24       **THE COURT:**  All right.  I see.  Okay.  So let's take care

25  of the Xanadu objection.

1       My understanding is Xanadu has filed a notice of appeal to
2  the Ninth Circuit.
3       **MS. CASTILLO:** That's correct.  Plaintiffs have filed a
4  motion to dismiss the appeal because it relates to an order
5  that is non-final.
6       **THE COURT:** Well, with a filing of a notice of appeal, I'm
7  not sure I have jurisdiction over that claim.  Do I?
8       **MS. CASTILLO:** You do have jurisdiction, Your Honor.  You
9  still have jurisdiction.  The seminal case here is *Ruby vs.*
10 *Secretary of U.S. Navy*.  That's 365 F.2d 385 Ninth Circuit
11 1966.
12      And that case basically says, where there's a deficiency
13 in a notice of appeal by reference to a non-appealable order,
14 when that's clear to the district court, the district court may
15 disregard the purported notice of appeal and proceed with the
16 case, knowing that it has not been deprived of jurisdiction.
17 And the pincite is 389.
18      **THE COURT:** Okay.  All right.  So I do have -- then I can
19 consider Xanadu's objections?
20      **MS. CASTILLO:** Correct.
21      **THE COURT:** Okay.  Now, Mr. Roth, do you have anything you
22 want to add to what has been filed in connection with your
23 clients' objections?
24      **MR. ROTH:** Was that directed to me?
25      **THE COURT:** Yes.  I think you're the only Allen Roth that

1  I have on this docket.
2       **MR. ROTH:**  Okay.  All right.
3       **THE COURT:**  My question is:  Do you -- maybe you're having
4  difficulty hearing me.
5       **MR. ROTH:**  Yes.
6       **THE COURT:**  Yeah.  My question is:  Do you have anything
7  you want to add to your objections on behalf of your clients?
8  And that would include David Gold -- I've now reviewed it --
9  and Xanadu.  Is there anything you want to add to what has
10 already been presented to the Court?
11      **MR. ROTH:**  Well, our objections are in writing,
12 Your Honor.
13      **THE COURT:**  Right.  And my question to you is:  Is there
14 anything else that you want to add?
15      **MR. ROTH:**  No.  I believe that the writing was sufficient
16 to say everything what I thought our position was.
17      **THE COURT:**  Okay.  All right.  That's fine.
18      **MR. ROTH:**  We can rest on what we've written.
19      **THE COURT:**  Okay.  That's fine.  I have them in mind.
20      I am overruling your objections, and I will issue a
21 written opinion setting forth my reasons for my conclusion.
22 Okay.
23      So now let me turn to Mr. Chekian.  As I understand,
24 Mr. Chekian, the present status has been that you have been
25 able to submit some documentation on some of the claims; but

1    since you are a third party, in a sense, you are awaiting
2    further information from the airlines as to the remaining
3    claims or the claims that you wish to proceed on in terms of
4    being compensated and that that will take some period of time.
5    And there's no way to compel them at this point to move faster
6    but that you anticipate -- since you've made the request, you
7    anticipate at some point getting the information necessary for
8    you to substantiate the claims.
9         And I understand your objection, which I've already dealt
10   with, I think, in terms of that you shouldn't be required to do
11   so, but that's another matter.  That's another matter.  And you
12   preserved that.
13        So the question I have, because I don't have -- I don't
14   think I've been informed, is, first, am I correct in saying
15   that the totality of your claims is somewhere in the
16   neighborhood of 40- to 50,000 dollars?  Is that correct?
17        **MR. CHEKIAN:**  That's correct.
18        **THE COURT:**  All right.  So my question is:  In terms of
19   what you've already submitted as to proof of these claims, does
20   that -- what's the dollar value on those?
21        **MS. CASTILLO:**  Sure.  So based on my conversation with
22   Russ, Mr. Chekian has supplemented his claim since the July 6th
23   hearing.  Unfortunately, it's just an additional three
24   China Airlines tickets.  So the amount of his claim that he's
25   able to prove up at this point is $96.79.

1  **THE COURT:** So that would leave almost the entirety of the
2  claims unresolved --
3  **MS. CASTILLO:** That's correct.
4  **THE COURT:** -- at this point?
5  When I say "unresolved," I'm simply saying from the
6  plaintiffs' point of view, they have been resolved; but from
7  the claimant's point of view, they either, one, haven't been
8  resolved successfully or that he's unwilling to accept that
9  resolution and he maintains that there is further documentation
10 supporting his claims.  Is that right?
11 So we're talking about almost all the claims, and we're
12 talking about somewhere in the neighborhood of $45,000; is that
13 right?  43?  I forget what the figure is.
14 **MS. CASTILLO:** That's correct.
15 **THE COURT:** Okay.  Now, so, Mr. Chekian, do you have any
16 information on the subject of when you think you'll have the
17 documentation on the remaining claims?
18 Putting it another way, how many airlines are involved,
19 travel agencies are involved, and do you have any indication
20 when that information will be forthcoming?
21 **MR. CHEKIAN:** Right.  Yes, Your Honor.  I think we've
22 narrowed it down to All Nippon Airways and the time frame being
23 approximately 2000 to 2007.
24 We've written them many times in many different ways:
25 snail mail, FedEx, fax, e-mail.  They've indicated that

1  they -- they haven't said "no" yet to my request, but I do feel
2  like I'm getting somewhat of a runaround.  But that's why I'm
3  requesting more time.  I think that's -- that's the key to all
4  of this.
5      It is somewhat encouraging, though, just to prove up in
6  general that I was traveling frequently during that time, is
7  that the U.S. Department of State, in request to my passport
8  records, although they didn't have records of my travel during
9  that period, they did submit what I submitted to them in or
10 around the relevant time frame of the early 2000s of my request
11 for an expedited passport which was my itinerary for that
12 China Air flight that Ms. Castillo was referring to.
13     So anyway, that's where we are.  I guess I'm requesting
14 30 to 60 days to try to get those records from All Nippon.
15 We'll follow it up with -- I'll personally follow it up with
16 some phone calls to their customer service number in
17 North America and see what else I can find.
18     I'm basically keeping Ms. Castillo informed of my efforts.
19     **MS. CASTILLO:**  May I, Your Honor?
20     **THE COURT:**  Go ahead, Ms. Castillo.
21     **MS. CASTILLO:**  So Mr. Chekian has been on notice that he
22 was subject to an audit for seven months now, and he's had
23 seven months to obtain the supporting documentation.  He
24 hasn't.
25     Your Honor gave him a month from the, I believe, May 20th

```
 1  hearing; and then at the July 6 hearing, Your Honor gave him
 2  till September 30th.
 3      So at this point, he's had notice that he needed to prove
 4  up his claims for seven months now.  We're doubtful that he'll
 5  be able to do it, given the time period at issue here for these
 6  records is 15-plus years ago.
 7      So we'd like to bring closure to this case ASAP.  And,
 8  you know, I'm not sure that giving Mr. Chekian an additional
 9  30 to 60 days is going to allow him to prove up the full worth
10  of his claim just based on the experience of the last few
11  months.
12      **THE COURT:**  So let me get a little bit more context here.
13      There is a corpus of how much more money to be
14  distributed?
15      **MS. CASTILLO:**  Correct.
16      **THE COURT:**  Yeah.  How much is it?  How much is it?  5.4?
17  What is it?
18      **MS. CASTILLO:**  It's $5.4 million.
19      **THE COURT:**  5.4.  Okay.  And there is 5.4 million, and
20  there's also a request for attorneys' fees.
21      **MS. CASTILLO:**  Yes.
22      **THE COURT:**  And administrative costs.
23      **MS. CASTILLO:**  Correct.
24      **THE COURT:**  All right.  So the proposal would be to
25  distribute the entire corpus, less anticipated administrative
```

1  costs and attorneys' fees.
2      **MS. CASTILLO:** Correct.
3      **THE COURT:** All right. So I then have to figure out --
4  well, I have to figure out the attorneys' fees.
5      And did you put in a proposal for administrative costs?
6  Do I know what that would be?
7      **MS. CASTILLO:** Yes. It's 125- -- $126,000 approximately.
8      **THE COURT:** And that contemplates one further
9  distribution; right?
10     **MS. CASTILLO:** One further distribution, a cy près
11 distribution after that, if necessary, and post-distribution
12 accounting work and also responding to claimant questions.
13     **THE COURT:** All right. But is the hundred thousand
14 dollars or so, does that contemplate the things that you've
15 just mentioned, save and except for attorneys' fees --
16     **MS. CASTILLO:** Yes.
17     **THE COURT:** -- or is it extra?
18     Is that in addition to it?
19     **MS. CASTILLO:** So in the motion we filed, the attorneys'
20 fees are separate from the fees and costs that are associated
21 with claims administration.
22     **THE COURT:** I understand that. But are the fees and costs
23 associated with claims administration contemplating the various
24 things that you've just said?
25     **MS. CASTILLO:** Yes. Correct.

1    **THE COURT:** It's all encompassing that.

2    Okay. All right. So what I will do is issue an order.

3    I'm trying to figure out whether there should be any
4    holdback for Mr. Chekian's claim.

5    **MS. CASTILLO:** So at the July 6th hearing, you asked us to
6    hold back, I think it was, 46,000, 47,000 for Mr. Chekian,
7    which we have done. We can continue to hold back that amount.
8    Of course, if we continue to do so, we wouldn't be able to
9    distribute that money to other class members. I'm afraid it
10   would be too small for a potential third redistribution; so it
11   would end up being cy près'd likely.

12   **THE COURT:** It would be likely for cy près.

13   And I don't have to make that determination, the cy près
14   determination, until after there's been a response to the
15   mailing of the -- do you mail checks, or do you -- how do you
16   do the distribution, the one that you're contemplating?

17   **MS. CASTILLO:** Sure. Previously, we've mailed checks, and
18   we're planning to do so again.

19   **THE COURT:** And what was the -- what was the percentage
20   response? I don't know whether you want to give it to me --
21   don't give it to me in numbers. I guess -- I mean, in the
22   numbers of respondents. I guess in terms of dollar figures --

23   **MS. CASTILLO:** Sure. I think we -- I understand your
24   question.

25   We've distributed around 98 or 99 million dollars.

1    **THE COURT:** Yeah. So, but you distributed 98 or 99, but
2 does that mean you sent out 98 million or does it mean that the
3 checks were cashed for 98 million?
4    **MS. CASTILLO:** That's how much was cashed.
5    **THE COURT:** Okay. What did you send out?
6    **MS. CASTILLO:** We sent out -- let me just --
7    **THE COURT:** What I'm really looking at, I'm trying to
8 figure out what is the monetary value of the non-response.
9    **MS. CASTILLO:** Sure. We sent out $104.3 million.
10    **THE COURT:** So it just strikes me, it just strikes me that
11 if you send out -- if you send out -- let's say you don't have
12 a holdback; you send it all out. There will be some return.
13    **MS. CASTILLO:** Of course.
14    **THE COURT:** And I think it's fair to say that that return
15 will encompass -- will be at least 45,000.
16    **MR. LEBSOCK:** Let me, if I may.
17    **THE COURT:** Yes. Go ahead, Mr. Lebsock.
18    I'm doing the mechanics, and I want to bring this to a
19 close. I want attorneys' fees to be paid. I want money to be
20 redistributed. And then I want to see -- I know at some point
21 I can say to Mr. Chekian "It's too late." But I want to,
22 again, try to give him the opportunity of getting those
23 documents, if he can. May or may not.
24    But I don't think -- it just struck me that I can say to
25 you people: Don't hold anything back. Send it all out, less

1  attorneys' fees, less the cost of administration.
2         And then in 30 days, 60 days, 90 days, we'll all get
3  together because there will be a pot of money.  The pot of
4  money will be the non-cashed distributions, and that will be
5  certainly more than 40,000.
6         So if Mr. Chekian comes in and has satisfied you, by the
7  way, satisfied you that he has a valid claim, we can pay him at
8  that time.  I mean, you write checks to cy près.  Why couldn't
9  we write a check to Mr. Chekian?  Seems to me that that's
10  all right.
11         **MR. LEBSOCK:**  Yeah.  And we don't disagree at all with
12  that.
13         **THE COURT:**  Yeah.
14         **MR. LEBSOCK:**  The one thing I would say -- and I don't
15  know how this will all play out because, obviously, we'll have
16  to send the money out and then we'll see -- but the
17  second-round distribution will go to class members who cashed
18  their first check.  So there may be a higher, you know, take-up
19  of the money --
20         **THE COURT:**  Oh, I see.
21         **MR. LEBSOCK:**  -- that gets sent the second time.
22         **THE COURT:**  Oh, so it doesn't go to everybody.  It doesn't
23  go to everybody.  It just goes to the people who cashed their
24  first check.  So it'll be higher, but how much higher, I don't
25  know.

1   **MR. LEBSOCK:**  Right.

2   **MS. CASTILLO:**  I just want to add to that.

3   And we're also only distributing to those who not only
4   cashed their checks the first time around, but whose claim --
5   who the payout the second time around would be over $10, which
6   further incentivizes the cashing of checks.

7   **THE COURT:**  Okay.  But -- okay.  Right.  Right.

8   Well, how comfortable are you in believing that at the end
9   of the day, there will be more than $40,000 -- there'll be at
10  least $40,000 to give to a cy près?  How comfortable are you in
11  that assertion?

12  **MR. LEBSOCK:**  I'm not sure that I'm comfortable,
13  Your Honor, given that the people who cashed the checks the
14  first time around, they probably will do it the second time.

15  If we're contemplating some holdback, I think we should
16  just hold back some amount and --

17  **THE COURT:**  And that will be -- either it will go to
18  Mr. Chekian or it'll be part of the cy près.

19  **MR. LEBSOCK:**  Yes.

20  **THE COURT:**  I think that's -- I think that's reasonable.
21  I think that's reasonable.  Okay.  I think I see -- I think I
22  see a way forward.

23  And so you're getting nothing out of me right now other
24  than I'll write an order dealing with the objections and
25  dealing with how you can go forward on this and dealing with

1  attorneys' fees.
2      **MR. LEBSOCK:**  Thank you, Your Honor.
3      **THE COURT:**  Okay?  Is everybody equally unhappy?  That's
4  fine.  Okay.
5      **MR. CHEKIAN:**  So excuse me, Your Honor.  Will your order
6  include the specific holdback for my claim?
7      **THE COURT:**  It is my contemplation that it will.  But the
8  clock you're running against now, Mr. Chekian -- you can do
9  whatever you want to do, but I'm not, quote, giving you more
10 time.  But by operation of the order, you'll have more time
11 because they have to send out the checks; they have to see what
12 are cashed; they have to see what returns are made and so
13 forth.  And they're going to come back to me, I would guess,
14 somewhere between 30 days and 90 days.  I can't imagine it
15 could be done quicker than 30 days.
16      You won't be in a position in 30 days to give the
17 accounting, would you be?
18     **MR. LEBSOCK:**  No.
19     **THE COURT:**  I mean, you've got to do all that.
20     **MR. LEBSOCK:**  We've got to send the checks out.  We've got
21 to wait to let them be cashed.
22     **THE COURT:**  Yeah, that's right.  That's right.  So
23 somewhere in the neighborhood of 30 to 120 days -- I don't know
24 the outer limit because I have no control over it, but at some
25 point you'll feel comfortable coming back to me and saying:  We

1  have in the pot today X dollars; X dollars.  And I will order
2  them, as part of this, to hold back, my guess is, 50,000 or
3  something like that, simply hold it back.
4       And so they'll maximize, in a sense, not quite fully
5  maximize, distributing.  They're distributing $5 million,
6  right, roughly?  4 1/2, 5, somewhere in that neighborhood.  So
7  the 50,000 is not a big percentage of that.
8       Now, so that would be, in my view, an appropriate cy près
9  too.
10          **MS. CASTILLO:**  That's fine with us, Your Honor.
11          **THE COURT:**  I just want to get this thing going.
12       So, Mr. Chekian, you won't be faced with a situation of
13  "I'm sorry there's no money in the pot," which is a concern you
14  had.  You will be faced with the situation of "Well, today is
15  whatever day it is, and I either do have the papers or I've
16  satisfied the paper -- satisfied the claims, or I still need
17  more time."
18       And at that time, of course, I'll address it; but my
19  inclination -- no, I'm not going to address it.  At that point,
20  that's too bad.  That's too bad for you.
21       You're asking for 30 to 60 days, and effectively, I'm
22  giving you that because the money is there.  It's not going to
23  be distributed.  So the money sits there.  It won't be mooted
24  by that -- mooted by the distribution.  Yet all those people
25  who are, in my view -- and I'm not commenting on your claims --

1  but in my view are deserving people, they have their money;
2  they finally have their money, all their money out of the
3  settlement.
4      And I also believe lawyers should get paid.  I was a
5  lawyer once.  And so they should get paid, and the
6  administrator should get paid.
7      We want to -- this is -- this is 2007.  Fortunately, I
8  was -- this is from the early days of my judicial career.
9      Okay.  Thank you very much, everybody, and I'll issue an
10 order.
11     **MR. CHEKIAN:**  Excuse me, Your Honor.  Will there be a
12 further hearing set on this matter?
13     **THE COURT:**  I have no idea.  I don't know yet.
14     **MR. CHEKIAN:**  And you're saying conceivably, if I submit
15 more proof to the Russ settlement, that that will be
16 considered?
17     **THE COURT:**  Yes.
18     **MR. CHEKIAN:**  Possibly increase the amount of my claim?
19     **THE COURT:**  Yes, if they approve it.  If they approve it.
20     **MR. CHEKIAN:**  And will the distribution that plaintiffs'
21 counsel is talking about, the additional distribution to the
22 claimants that have cashed their checks so far, will that
23 potentially exceed the previous unaudited amount, which
24 I believe was $10,000?
25     In other words, claimants that maybe submitted a $9,000

1  claim and were paid for that could potentially, without having
2  to prove up their claim through documentation like I'm forced
3  to do, will potentially receive more than $10,000 without
4  having submitted any proof of their flights.  Is that correct?
5  I mean, maybe that's --
6      **THE COURT:**  I think what is correct is that they can
7  continue with their plan of distribution as originally set
8  forth.  In other words, whatever their -- the manner in which
9  they conducted the distribution, which I approved of years ago,
10 can be continued.  They don't have to do something new.
11 However they did it, that's fine with me.
12     **MR. CHEKIAN:**  But it means, in effect, that someone, a
13 claimant, without submitting any proof, can get more than
14 $10,000 on their --
15     **THE COURT:**  Well, now you're going back to your argument
16 that you didn't -- that this whole thing was improperly
17 administered and that you should have been recognized on a sort
18 of an equal protection basis with them.  That's your argument.
19     You made that argument months ago.  And if I haven't
20 denied it, then I deny it.  I don't think that that's a valid
21 basis for your argument for all the circumstances and the state
22 of the record.
23     So I'm going to allow them to continue with their
24 distribution plan as they contemplated their distribution.  As
25 they executed the distribution with respect to the first

1  distribution, they may do so now.
2      And I guess I'm asking, Ms. Castillo, is that your
3  understanding?
4      **MS. CASTILLO:**  Yes, Your Honor.
5      **THE COURT:**  Without discussing the merits of the
6  distribution plan, how you did it or whether it was fair or so
7  forth, your plan is to continue with that plan; is that right?
8      **MS. CASTILLO:**  That's correct, Your Honor.
9      **THE COURT:**  Go ahead, as soon as you get my order.
10     **MS. CASTILLO:**  That's what we're planning to do.
11     **THE COURT:**  Okay.  Thank you very much.
12     **MR. CHEKIAN:**  One other thing, Your Honor.  I would --
13     **THE COURT:**  Yes.
14     **MR. CHEKIAN:**  Unless the Court is not inclined to do this,
15 then I'll file my own motion.  I'd respectfully request a final
16 hearing on my claim so that I can get an order one way or the
17 other, allowing it, denying it, partially allowing it.
18     **THE COURT:**  Well, this is what I will give you.  I
19 understand your request.
20     They will come back to the Court after they've made their
21 distribution, and they will ask for authorization for either a
22 distribution with cy près or -- and/or -- and/or, depending on
23 the volume and the money, payment of your claim.
24     I mean, they may say -- and I'm now looking forward to 30,
25 60, 90 days.  They will have to notice me, and I will -- and I

1  will rule.
2       Whether I'll have a hearing, I don't know that I'll have a
3  hearing.  I don't have to have a hearing.  I may have a
4  hearing; may not have a hearing.  But you'll get an order out
5  of me, and that's what you want.  You'll get that.  Okay.
6       Thank you.
7       **MS. CASTILLO:**  Thank you, Your Honor.
8       **MR. LEBSOCK:**  Thank you, Your Honor.
9       **MR. ROTH:**  Thank you.
10              (Proceedings adjourned at 10:34 a.m.)
11                           ---o0o---
12
13                   **CERTIFICATE OF REPORTER**
14       I certify that the foregoing is a correct transcript
15  from the record of proceedings in the above-entitled matter.
16
17  DATE:  Tuesday, November 8, 2022
18
19                    *[signature: Ana Dub]*
20  _____
21      Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                    Official United States Reporter
22
23
24
25