# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **DECLARATION OF JOEL K. BOTZET IN SUPPORT OF PLAINTIFFS' FURTHER NOTICE REGARDING CORP XANADU'S CLAIM** |

I, JOEL K. BOTZET, declares and states that:

1. I am a Program Manager for Rust Consulting, Inc. ("Rust"), the Court-appointed Claims Administrator for the class action Settlements in this case. My business address is 920 Second Avenue South, Suite 400, Minneapolis, Minnesota 55402. My business telephone number is 612-359-2035. I am authorized to make this declaration on behalf of Rust.

2. Rust has extensive experience in class action matters, having provided settlement administration services in class action lawsuits affecting millions of class members in cases involving antitrust, employment, consumers, banking and financial services, property, insurance, securities, and products liability, among its more than 8,000 projects.

3. Except as otherwise stated, I am fully familiar with and have personal knowledge of the matters stated in this declaration and am competent to testify about them if called upon to do so. I submit this declaration to provide the Court and the parties to the above-captioned action with information supporting Plaintiffs' Further Notice Regarding Corp Xanadu's Claim as well as Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses ("Secondary Distribution Mot.") (ECF No. 1347).

4. This declaration supplements my previous declarations in support of the Secondary Distribution Motion and Reply thereto (ECF Nos. 1347-1, 1356-1).

### A. Background on Objector Corp Xanadu's Claim

5. Corp Xanadu (claim number 0000144970) filed a claim to each of the three rounds of Settlements in this action online through the settlement website (www.airlinesettlement.com). Corp Xanadu's contact information is:

    First and Last Name: Corp Xanadu

    Email: corpxanadu@phreakmail.com

    Phone: (801) 823-1320

    Address: 5042 Wilshire Boulevard #35581, Los Angeles, California 90036

6. Corp Xanadu's claim includes the following tickets:

| Airline | Route | Date | Number of Tickets |
|---|---|---|---|
| American Airlines | USA to Tokyo | 2004 | 150 |
| Cathay Pacific Airways | USA to Tokyo | 2004 | 62 |
| | USA to Tokyo | 01/01/2005 – 01/31/2005 | 10 |
| Delta Airlines | USA to Tokyo | 2008 | 90 |
| Japan Airlines | USA to Tokyo | 02/01/2005 – 12/31/2005 | 260 |
| | USA to Tokyo | 2006 | 270 |
| | USA to Tokyo | 2007 | 270 |
| United Airlines | USA to Tokyo | 2003 | 35 |
| | USA to Tokyo | 2003 | 190 |
| **Total** | | | 1,337 |

7. Rust audited Corp Xanadu's claim because the audit threshold established for businesses was 1,000 or more tickets. Corp Xanadu did not support any of its claimed ticket purchases with actual invoices or other corporate records. Instead, Corp Xanadu's alleged 1,337 claimed tickets are supported by a one-page Affidavit, executed by the alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's September 20, 2020 audit letter. Rust initially approved the claim based on the signed Affidavit.

8. Attached hereto as **Exhibit 1** is a true and correct copy of Corp Xanadu's Audit Response that includes Mr. Suica's Affidavit.

9. On August 24, 2021, Rust sent a determination letter by USPS to Corp Xanadu's alleged Wilshire Boulevard address initially approving the claim, which USPS returned as undeliverable with no forwarding address on September 22, 2021.

10. Attached hereto as **Exhibit 2** is a true and correct copy of USPS undeliverable letter.

11. On October 11, 2021, Corp Xanadu emailed Rust indicating that it did not receive the determination letter and stating that the Wilshire Boulevard address was correct. Rust replied to the email and attached the determination letter attached hereto as **Exhibit 3**.

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

12. On March 17, 2022, Rust mailed a check in the amount of $603,831.08 by USPS to Corp Xanadu's alleged Wilshire Boulevard address, which USPS again returned as undeliverable with no forwarding address on April 11, 2022. Attached hereto as **Exhibit 4** is a true and correct copy of USPS undeliverable check.

13. On April 25, 2022, Rust sent the claimant names and addresses of all checks returned as undeliverable, including the check to Corp Xanadu, to a vendor to obtain an updated address through an automated process called "batch trace," which did not return a better or updated address for Corp Xanadu.

14. On July 26, 2022, consistent with this Court's order at the July 6, 2022 hearing, Class Counsel advised Rust to stop reissuing checks immediately and proceed with voiding uncashed original checks as of July 31, 2022 and uncashed reissued checks as of August 30, 2022.

15. On July 30, 2022, Mr. Suica emailed Rust indicating that Corp Xanadu did not receive a check and provided a new mailing address: 8605 Santa Monica Boulevard #10287, West Hollywood, California 90069. Rust did not process this request because it came after Class Counsel's request to stop reissuing checks on July 26, 2022.

16. On August 24, 2022, Mr. Suica emailed Rust inquiring about reissuance of the check.

17. With the exception of Mr. Suica's July 30, 2022 email, Rust answered Corp Xanadu's multiple emails regarding its claim status.

   **B.  Rust's Examination of Corp Xanadu's Claim**

18. On September 30, 2022, at the direction of the Court[1] and the request of Class Counsel, Rust requested additional documentation or information to establish the legitimacy of Corp Xanadu and its claim given that USPS returned both the August 2021 determination letter to Corp Xanadu (*see* ¶ 9, *supra*) and the March 2022 settlement check to Corp Xanadu (*see* ¶

---

[1] On September 27, 2022, the Court entered the Order Setting Hearing, which provided that ". . . Class Counsel and Rust may audit/re-examine Corp. Xanadu's claim, consistent with their obligation to pay only qualified claimants" (ECF No. 1358).

12, *supra*) as undeliverable with no forwarding address and given the spike in potentially fraudulent claimants requesting the reissuance of checks right after Plaintiffs filed the Second Distribution Motion.[2] As noted, *supra* at ¶ 7, Corp Xanadu's alleged 1,337 claimed tickets are supported by a one-page Affidavit, executed by the alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020.

19.  On October 18, 2022, Corp Xanadu provided the following documents, which are attached hereto as **Exhibit 5**:

   a. The Declaration of Richard Sutton (undated);

   b. Statement of Foreign Entity Authority filed with the Colorado Secretary of State on February 24, 2013;

   c. Resolution of Trust Services S.A. and Trust Services Inc. executed by Carlos Suica, Secretary of Trust Services S.A. and Trust Services Inc., on February 26, 2013;

   d. Xanadu Corp.'s Articles of Incorporation for a Profit Corporation filed with the Colorado Secretary of State on February 27, 2013;

   e. A compilation of America Airlines tickets from July 2015 through August 2015 with payor and passenger information redacted; and

   f. Xanadu Corp. Certificate of Fact of Good Standing issued by the Colorado Secretary of State on October 17, 2022.

---

[2] In the weeks after filing the Secondary Distribution Motion on August 8, 2022, Class Counsel and Rust received 16 e-mails from potentially fraudulent claimants requesting the reissuance of checks. They request that Rust reissue a check for under $10,000. Each of these claimants list their address as different units in various apartment complexes on West Duarte Road in Arcadia, California, or as post office boxes in Southern California. To verify the legitimacy of these claims, Rust sought interviews from each of these claimants regarding (1) why they all have similar addresses or post office box addresses, (2) why they have substantively identical emails, and (3) why they disclosed attempts to circumvent federal law requiring banks to report cash transactions of $10,000 or more pursuant to the Currency and Foreign Transactions Reporting Act. To date, none of these potentially fraudulent claimants have responded to Rust's request for an interview.

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

20. Instead of confirming the legitimacy of Corp Xanadu and its claims, the documentation that Corp Xanadu provided raised more questions. Consequently, on November 1, 2022, Rust and Class Counsel conducted an interview of Rich Sutton, Corp Xanadu's CEO, regarding the documentation provided. During this interview, to answer the questions raised, Rust requested Corp Xanadu provide additional documentation or information by November 30, 2022.[3]

21. On November 30, 2022, Corp Xanadu provided some but not all of the additional documentation and/or information requested. Specifically, Corp Xanadu provided the following documents, which are attached hereto as **Exhibit 6**:

    a. List of Xanadu Corp.'s Directors (undated); and

    b. Trust Services S.A.'s Purchase Authorization of August 1, 2010 relating to Corp Xanadu's claim filed to the indirect purchaser plaintiff settlements in *In re: Parking Heaters Antitrust Litigation*, Case No.1:15-mc-00940-DLI-JO (E.D.N.Y.), which Rust administered.[4]

22. On December 27, 2022, Rust sent the final determination letter, attached hereto as **Exhibit 7**, which stated that after further review of Corp Xanadu's claim, including the additional documentation submitted by Corp Xanadu on October 18, 2022 and December 1, 2022, Rust determined Corp Xanadu did not provide the documentation needed to support its claim and is therefore due $0 in settlement benefits. Rust communicated this determination, including a list of the factors supporting the determination, to Mr. Sutton, with copy to Corp Xanadu's attorney, John Allen Roth, by email. Rust also communicated this determination by mail to Corp Xanadu, 8605 Santa Monica Blvd #10287, West Hollywood, CA 90069, on the same day.

---

[3] Rust requested that Corp Xanadu provide: (1) Any marketing material and/or magazine ads for Corp Xanadu's services; (2) a list of its Directors and Officers; (3) banking records to document that the American Airline tickets provided were paid by Corp Xanadu; (4) confirmation from Mr. Suica of the date when documents used for determining the number of tickets claimed were destroyed; (5) confirmation from Mr. Suica of the name of employee(s) that maintained the records for 2002 – 2008 and 2009 – 2015; and (6) information regarding the claim to the indirect purchaser plaintiff settlements in *In re: Parking Heaters Antitrust Litigation* that Corp Xanadu submitted in 2019.

[4] Corp Xanadu therefore did not provide items (1), (3), (4), and (5) in footnote 3, *supra*.

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

23. The foregoing determination based on a number of factors, including, but not limited, to the following:

   a. The 144 American Airlines itineraries provided for claimed ticket purchases between the dates of July 2015 and August 2015 did not verify that Corp Xanadu was the payor of the foregoing claimed ticket purchases. Thus, even though those purchases fell within a qualifying period for the settlement classes, Corp Xanadu provided no documentation (*e.g.*, bank statements) that it paid for such purchases;

   b. During an interview with Rich Sutton, Corp Xanadu's CEO, he informed us that the documents used to determine the number of tickets claimed for American Airlines and the other airlines were destroyed. Without this information the Rust is unable to verify the methodology used to determine the number of ticket purchases claimed;

   c. Additionally, Rust requested the date when the foregoing documents were destroyed and information to explain the difference in the records maintained for the years 2002 – 2008 and 2009 – 2015, including the names of the employees that maintained the records for these two time periods. The requested information was never provided. Accordingly, the Rust was not able to verify that the documentation ever existed to substantiate the ticket purchases claimed;

   d. Aside from the claimed purchases on American Airlines, Corp Xanadu provided no documentation of purchases for any travel on other qualifying airlines to substantiate its claim;

   e. Rust also asked Corp Xanadu to provide any marketing material and/or magazine ads for Xanadu Corp services to confirm the nature of Corp Xanadu's business, which Corp Xanadu has not provided;

   f. Finally, after Mr. Sutton represented that Corp Xanadu never owned any property in the United States, including vehicles, Rust asked Corp Xanadu to explain why

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

it filed a claim and received a settlement payment in the *In re: Parking Heaters Antitrust Litigation* in 2019 (this indirect purchaser plaintiff settlement paid monies to those who purchased an aftermarket parking heater for their commercial vehicles between October 1, 2007 and December 31, 2012). Corp Xanadu did not provide any explanation.

24. The December 27, 2022 determination letter concludes Rust's examination of Corp Xanadu's claim.

25. On January 9, 2023, Rich Sutton of Corp Xanadu responded to the December 27, 2022 determination letter. Attached hereto as **Exhibit 8** is a true and correct copy of this letter.

C. **Scope of Rust's Claims Administration Work Generally**

26. For ease of reference, Rust provides an overview of the scope of its claims administration work in this litigation below.

27. As the Claims Administrator, Rust is required to follow the terms of the Settlement Agreements and the claims administration process approved by the Court. The Distribution Plan approved by the Court ordered Rust to prepare and mail checks to qualified claimants in the amounts equal to their *pro rata* share of the Settlement Funds.

28. During the distribution phase, the scope of Rust's services included the following:

    a. Calculate and distribute the initial payment distribution to Settlement Class Members that were determined to have approved claims;

    b. Remail payments returned as undeliverable with forwarding addresses. Payments returned by the U.S. Postal Service with forwarding addresses were flagged and the addresses were updated in Rust's database. Rust then reissued payments and mailed them to the updated addresses;

    c. Trace and remail payments returned as undeliverable with no forwarding addresses. Payments returned by the U.S. Postal Service with no forwarding addresses were flagged in Rust's database with this

designation. As part of its normal practices, Rust then performed a batch trace through a vendor to locate updated addresses, as it did with Corp Xanadu without success. Alternative mailing addresses returned from trace were updated in Rust's database. Rust then reissued payments and mailed them to the updated addresses returned from trace; and

  d. Reissue payments upon request. Rust worked with Settlement Class Members who requested reissue payment requests, including assisting Settlement Class Members and financial institutions with the check cashing process.

29. The claims administration of the Settlements began in 2015, prior to the common use of email addresses and electronic payments in class action settlements. Therefore, settlement communications via email were not part of the Settlement Class Member notification process and electronic payment information was not part of the claim filing or settlement distribution processes in this action.

30. Tens of thousands of Settlement Class Members received notice of the settlements in this action and filed claims, including Corp Xanadu.

31. Rust sent determination letters by USPS to all claimants, including Corp Xanadu, and answered emails from claimants inquiring about their claim status.

32. After the initial distribution on March 17, 2022, Rust received inquiries from claimants primarily residing outside of the United States who were experiencing difficulty cashing or depositing their checks. Rust, in consultation with Class Counsel, established a process for claimants who contacted Rust because they were unable to cash a physical check. For these claimants, Rust made payments via PayPal.

33. During the claims administration process, Rust conducted all outreach to claimants by mail. This included mailing Request for Information letters to claimants with claims determined to be deficient or ineligible; Request for More Information letters in the audit process;

1  and Notice of Determination Letters to all individuals and entities who filed claims and whose
2  claims were not withdrawn. These letters were mailed to the most current address in the settlement
3  database, whether provided on the claim form, by the claimant through email, phone, or mail, or
4  through address trace.

5       34. At the start of claims administration, before notices were mailed, Rust established
6  an email address, info@airlinesettlement.com, for claimant inquiries. The email address was
7  provided on all outbound communications to Settlement Class Members and available on the
8  settlement website, www.airlinesettlement.com.

9       35. Rust does not provide regular claim status updates to Settlement Class Members
10  by email but does respond to Settlement Class Members' requests for claim status updates by
11  email, phone, and mail upon request. Not all claimants provided an email address.

12       36. As an experienced class action settlement claims administrator, Rust determined
13  the best way to handle undeliverable checks is to utilize a "batch trace" process with a vendor as
14  outlined in this declaration. Rust's email communications with Settlement Class Members were
15  limited to receiving and responding to email inquiries directed to Rust by Settlement Class
16  Members.

17       37. Neither the Court's orders regarding settlement distribution nor the Federal Rules
18  of Civil Procedure require Rust to email each of the 96,133 individuals and companies that
19  submitted claims in this action every time Plaintiffs file a motion. There is no efficiency or
20  precedent for emailing or mailing motions to claimants when they are readily available on the
21  settlement website. Furthermore, this would expend much of the remaining uncashed settlement
22  funds.

23       38. Since Plaintiffs moved for secondary distribution of the remaining settlement
24  funds on August 8, 2022, Rust has received 16 e-mails with questionable, potentially fraudulent,
25  requests for reissuance of checks. Each of these emails are in substantially the same form and
26  same language. They request that Rust reissue a check for under $10,000 and "split the check into

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

two checks or issue a check in the amount for $9,500" because the claimant "cannot cash a check and walk out of the bank with more than $10,000 in cash." Each of these claimants list their address as different units in various apartment complexes on West Duarte Road in Arcadia, California, or as post office boxes in Southern California. Accordingly, Rust has been carefully reviewing these check reissue requests and verifying the legitimacy of the claimants and their claims. To verify the legitimacy of these claims, Rust is in the process of seeking interviews from each of these claimants in connection with their requests for reissuance of checks. These interviews will seek explanations from these claimants regarding their alleged purchases and will seek to understand (1) why they all have similar addresses or post office box addresses, (2) why they have substantively identical emails, and (3) why they disclosed the appearance of attempts to circumvent federal law requiring banks to report cash transactions of $10,000 or more pursuant to the Currency and Foreign Transactions Reporting Act, among other fraud prevention inquiries. Rust will conduct the interviews and evaluate the results of the interviews and reissue requests with Class Counsel as needed.

### D. Rust's Process for Undeliverable Checks

39. Between 2015 and February 28, 2022, 1,289 claimants contacted Rust with a change of address. Rust updated those addresses in the settlement database.

40. After the distribution as some checks were returned as undeliverable, Rust used the unique barcode printed on each check to identify the claimant record in the settlement database. Rust imaged the returned checks and flagged them as undeliverable in the settlement database. Rust included a code that indicated whether the Post Office had included a forwarding address, and if so, keyed the indicated address in the settlement database. For checks returned as undeliverable without forwarding addresses, Rust created files of names and last known addresses that were sent to a vendor to obtain an updated address through the automated "batch trace" process describe above. Rust uses vendors commonly used by class action administrators to return

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

a better or updated address for those whose checks were returned as undeliverable. A check was re-mailed if an updated address was obtained.

41. During the distribution phase, Rust traced 5,444 undeliverable checks. For those, 3,391 alternative addresses were returned and checks were remailed. Of these remailed checks, 2,314 were cashed.

42. As of August 3, 2022, 16,216 checks in the amount of $5,448,087.41 or 5% of the initial amount distributed remain uncashed. Of those, 3,337 checks do not have mailable addresses.

### E. Settlement Website

43. At the start of the claims administration, Rust established the settlement website, www.airlinesettlement.com, in 10 languages. Prior to sending notice for Phase 2 in June 2018, the website was changed to provide information in four languages: English, Japanese, Traditional Chinese, and Simplified Chinese. Prior to sending notice for Phase 3 in July 2019, the website was changed to provide information in three languages: English, Japanese, and Traditional Chinese. Rust provided status updates through the initial distribution on March 17, 2022 in these languages on the website.

44. On April 8, 2022, Rust posted the Notice of Post-Distribution Accounting to the Court Documents page of the settlement website.

45. On August 9, 2022, Rust posted the documents related to the Motion for Secondary Distribution to the Court Documents page of the settlement website.

46. On August 16, 2022, Rust posted the documents related to the Reply in Support of the Motion for Secondary Distribution to the Court Documents page of the settlement website.

47. The Court Documents page is linked to the English, Chinese, and Japanese pages of the settlement website. Rust updated the settlement status on the English home page of the website when these documents were posted. The home pages for other languages were not updated when there were no changes to the Commonly Asked Questions.

### F. Rust's Experience in Similar Actions

48. In a similar airline antitrust litigation matter, such as *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891, No. 2:07-cv-05107-SJO-AGR (C.D. Cal.), Rust followed a similar distribution plan that did not include sending reminder notifications to Settlement Class Members who did not cash their settlement payments.

49. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of January 2023 in Minneapolis, Minnesota.

*/s/ Joel K. Botzet*
Joel K. Botzet