# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB <br><br> MDL No. 1913 |
| **This Document Relates To:** <br><br> **ALL ACTIONS** | **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

This litigation has been completely settled since December 2019 when the Court granted final approval of the last settlement (ECF No. 1318) and entered a final judgment as to the last Defendant (ECF No. 1319). In the approximately two years after that, the claims administrator, Rust Consulting, Inc. ("Rust"), processed settlement class members' claims to the settlements and made an initial distribution of the net settlement funds on March 17, 2022. Plaintiffs now seek entry of an order authorizing a secondary distribution of the remaining uncashed net settlement funds, additional claims administration expenses, and further attorneys' fees and reimbursement of expenses in connection with settlement administration.

The Court, having reviewed Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses ("Motion") (ECF No. 1347), the objections by Corp Xanadu, David Gould, and Kelly Overvold (together, "Objectors") (ECF Nos. 1353, 1357), Plaintiffs' reply in support of the Motion (ECF No. 1356), Plaintiffs' notices regarding Corp Xanadu's claim, including Rust's final determination as to Corp Xanadu's claim (ECF Nos. 1370, 1371, 1374), and the Court's files and records in this matter, hereby finds that the relief requested is appropriate.

Accordingly, it is hereby ORDERED and DECREED that:

1. The Court authorizes a holdback of $50,000 for Claimant Michael Chekian;[1]

2. The Court overrules the objections by Objector Corp Xanadu because Corp Xanadu did not establish that it had any qualifying purchases. In failing to do so, therefore, not only has it failed to establish that it is entitled to share in the settlement proceeds, but it has also failed to establish that it is a settlement class member. Courts considering class action settlements must verify that every class member has standing, and it is the class member's burden to establish standing. *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *1 (N.D. Cal. Nov. 9, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021)). Non-class members have no standing to object to the settlement of a class action. *Clean

---

[1] *See* Tr. of Remote Zoom Video Conference Proceedings 14:17-18, 16:1-3 (Nov. 4, 2022) (ECF No. 1347).

*Diesel*, 2016 WL 6248426, at *22 (N.D. Cal. Oct. 25, 2016), *aff'd sub nom. Clean Diesel*, 895 F.3d 597 (9th Cir. 2018), and *aff'd sub nom. Clean Diesel*, 741 F. App'x 367 (9th Cir. 2018).

3. Corp Xanadu (claim number 0000144970) filed a claim to the settlements in this litigation. Rust audited Corp Xanadu's claim because the audit threshold established for businesses was 1,000 or more tickets. Corp Xanadu did not support any of its claimed ticket purchases with actual invoices or other corporate records. Instead, Corp Xanadu's alleged 1,337 claimed tickets are supported by a one-page Affidavit, executed by the alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's September 20, 2020 audit letter. On September 30, 2022, at the direction of the Court (ECF No. 1358) and the request of Class Counsel, Rust requested additional documentation or information from Corp Xanadu to establish the legitimacy of its claim.

4. Rust has now completed reviewing the documents and information that Corp Xanadu provided by November 30, 2022 and has made a determination on Corp Xanadu's claim (ECF No. 1374). Specifically, Rust determined "there is $0 due in settlement benefits" to Corp Xanadu based on numerous factors, including, but not limited to:

    (a) The 144 American Airlines itineraries that Corp Xanadu provided for claimed ticket purchases between the dates of July 2015 and August 2015 did not verify that Corp Xanadu was the payor of the foregoing claimed ticket purchases. Thus, even though those purchases fell within a qualifying period for the settlement classes, Corp Xanadu provided no documentation (*e.g.*, bank statements) that it paid for such purchases[2];

---

[2] Rust noted that Corp Xanadu redacted the name of the payor from all itineraries that it provided to Rust, which the Court finds to be inconsistent with Corp Xanadu's obligation to demonstrate that it was the purchaser of these tickets. *See Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) (holding that three objectors lacked standing to challenge settlement because none had purchased the defendant's product and suffered injury).

[Proposed] Order Granting Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; Case No. 3:07-cv-05634 CRB

2

(b) During an interview with Rich Sutton, Corp Xanadu's CEO, he informed Rust that the documents used to determine the number of tickets claimed for American Airlines and the other airlines were destroyed. Without this information, Rust was unable to verify the methodology used to determine the number of ticket purchases claimed;

(c) Rust requested, but Corp Xanadu did not provide, the date when the foregoing documents were destroyed and information to explain the difference in the records maintained for the years 2002 – 2008 and 2009 – 2015, including the names of the employees that maintained the records for these two time periods. Accordingly, Rust was not able to verify that the documentation ever existed to substantiate the ticket purchases claimed;

(d) Aside from the claimed purchases on American Airlines, Corp Xanadu provided no documentation of purchases for any travel on other qualifying airlines to substantiate its claim;

(e) Rust also asked Corp Xanadu to provide any marketing material and/or magazine ads for Corp Xanadu services to confirm the nature of Corp Xanadu's business, which Corp Xanadu never provided; and

(f) After Mr. Sutton represented that Corp Xanadu never owned any property in the United States, including vehicles, Rust asked Corp Xanadu to explain why it filed a claim and received a settlement payment in *In re: Parking Heaters Antitrust Litigation* in 2019 (this indirect purchaser plaintiff settlement, which Rust administered, paid monies to those who purchased an aftermarket parking heater for their commercial vehicles between October 1, 2007 and December 31, 2012). Corp Xanadu did not provide any explanation.

[Proposed] Order Granting Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; Case No. 3:07-cv-05634 CRB

3

5. In summary, Rust determined that Corp Xanadu is not a settlement class member because it does not have any valid claim to the net settlement funds. As Corp Xanadu is not a settlement class member, the Court need not consider its objections.

6. The Court will nevertheless address the merits of all objections raised. The Court overrules the objections by Objectors Corp Xanadu, David Gould, and Kelly Overvold for several reasons:

    (a) First, the Objectors received notice of the proposed secondary distribution and filed objections, directly contradicting their argument that Plaintiffs and Rust failed to provide reasonable notice of such distribution. Furthermore, Class Counsel already provided notice of each of the three rounds of settlements, which the Court approved (ECF Nos. 1009, 1259-1, 1318). There is no authority for the proposition that a comprehensive notice program pursuant to Federal Rule of Civil Procedure 23 is required when Class Counsel and the Court are simply seeking to redistribute uncashed settlement funds as part of the claims administration process. *See*, *e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds."); *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (noting that "as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'");

    (b) Second, the Objectors received notice of Plaintiffs' request for attorneys' fees and reimbursement of expenses and filed objections, directly contradicting their argument that Plaintiffs failed to provide reasonable notice of such request. Moreover, Class Counsel already provided

[Proposed] Order Granting Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; Case No. 3:07-cv-05634 CRB

4

reasonable notice to settlement class members of their fee requests in connection with each of the three rounds of settlements (ECF Nos. 986, 1227, 1307), and the deadlines to object to these requests have long passed. The pending request for attorneys' fees and reimbursement of expenses relates to Class Counsel's lodestar and expenses in connection with settlement administration between August 1, 2019 and July 31, 2022. Additionally, this Court invited Class Counsel to submit this request. Hr'g Tr. at 9:12-16 (Jul. 6, 2022). The amount of fees requested fall below the amount described in the settlement notice for the prior settlement round;[3]

(c) Third, given the amount of the remaining uncashed settlement funds (*i.e.*, $5,448,087.41), the Objectors' contention that such funds should escheat to the states is unsupported in the Ninth Circuit and in class actions generally—and is nowhere to be found in any of the settlement agreements at issue. *See Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017) ("[r]edistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members" and because "class settlements rarely 'pay individual class members the full value of their claims'"); William B. Rubenstein, Newberg on Class Actions, § 12:30 (5th ed.) ("Redistribution is more likely to bring the class members closer to that value rather than to be a windfall.").

---

[3] Class Counsel requested attorneys' fees of 33%, and the Court granted 25%, in connection with the third and final round net settlement fund (ECF Nos. 1307 at 1 (motion), ECF No. 1314 at 14 (order)). The Court's award here of additional attorneys' fees of $1 million, or 18.355%, from the remaining settlement funds of $5,448,087.41, results in a fee award of 26.77% in connection with third and final round net settlement fund (*i.e.*, less than the 33% noticed).

7. Having addressed the holdback for Mr. Chekian and the objections by Corp Xanadu, David Gould, and Kelly Overvold, the Court grants the Motion.

8. The Court authorizes reimbursement of additional claims administration expenses totaling $125,921.00 in connection with Rust's anticipated work through the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation.

9. The Court authorizes reimbursement of incurred litigation expenses totaling $4,876.85 in connection with Class Counsel's settlement administration work from August 1, 2019 through July 31, 2022.

10. The Court awards attorneys' fees totaling $1 million in connection with Class Counsel's settlement administration work from August 1, 2019 through the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation.

11. The Court directs Plaintiffs to pay the awarded fees and expenses from the remaining settlement funds of $5,448,087.41.

12. The Court authorizes a secondary distribution of the remaining settlement funds of $5,448,087.41 less the holdback of $50,000 for Mr. Michael Chekian, less the additional claims administration expenses of $125,921.00 for Rust and reimbursement of litigation expenses of $4,876.85 for Class Counsel authorized by the Court above, and less the attorneys' fees of $1 million for Class Counsel awarded by the Court above.

13. If there are any further remaining settlement funds after the secondary distribution, assuming such funds will be economically infeasible to distribute, Plaintiffs shall propose an appropriate *cy pres* recipient with approval from the Court after the check void date for this secondary distribution. At that time, Class Counsel will also provide an update to the Court regarding the final resolution of Mr. Chekian's claims.

**IT IS SO ORDERED.**

Dated: _____      _____
                                                            HON. CHARLES R. BREYER
                                                            UNITED STATES DISTRICT JUDGE