David Gould
Apartado 201-6151
Unit 12C
Santa Ana, San Jose
10901
Costa Rica
dgould@protectedmail.net
+506-7007-1386

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | ) ) ) ) . ) ) ) ) ) ) ) ) | Case No. 07-cv-05634-CRB<br><br>MDL No. 1913<br><br>**MOTION TO COMPEL STRICT COMPLIANCE WITH SECOND DISTRIBUTION ORDER; MOTION TO COMPLY WITH MANDATE; MOTION FOR RECONSIDERATION; AND, OBJECTIONS** |

**Objector[1],** Claimant, and Class Member David Gould moves this Court pursuant to 28 USC 1651 and Rule 59 and 60 to compel Class Counsel to strictly comply with Second Distribution Order and for this Court to reconsider its prior Order denying Gould's motion to compel prompt compliance:

1. The affirmed second distribution Order authorized a second *pro rata* payment to persons who were approved and cashed their first check.  *See* Entry 1378.

_____

[1] As required by Rule 23, Objector states that these objections apply to the entire class.

2. Class Counsel filed a document at Entry 1397, page 3, stating "Rust and Class Counsel will also re-issue checks to four settlement class members who did not receive their initial distribution checks due to exceptional circumstances." No information was provided to this Court about the amounts, what the exceptional circumstances were, or whether other class members were similarly affected but did not receive notice of the problem. (Recall that Class Counsel represented that the erroneously check addressing problem with Xanadu was some isolated incident).

3. This Court neither approved, adopted, nor issued an Order modifying the second distribution Order to allow the unilateral payment to these unknown four class members.

4. Now, at Entry 1397, page 4, Class Counsel clarifies that the circumstances alleged to be outside of their control was a belated examination of previously approved claims. Class Counsel averred, "These circumstances caused Rust and Class Counsel to re-examine 17 previously approved."

5. Again, Class Counsel provides the Class Members and this Court with no information about these "circumstances," and this Court never authorized additional re-examinations at this stage.

6. Both the payments to the four class members and the re-examination of the seventeen claims violate the affirmed Second Distribution Order and no deviation has been authorized by this Court.

7. Indeed, this Court could not have authorized it because Class Counsel never sought authorization, but acted as if they are the claims administrator.

8. Class Counsel chose to do these re-examinations now instead of over the last two years during the appellate proceedings.

9. This added nine months to the second payout which harmed the class because each month costs tens of thousands of dollars in administration.  In case 23-15118, Entry 45-1, Class Counsel  represented that the delays of 18 months incurred $100,000 in costs, so this re-examination and delays since October, 2024, until July 1, 2025, the new proposed date, would cost about $50,000.  *Id* (""Plaintiffs have also incurred over $100,000 in costs in connection with the Objectors' frivolous appeal. ***These costs mainly relate to extended settlement administration costs while the appeal was pending for a year and a half***").

10. In addition to the administrative costs related to mere delay, Class Counsel provides no information about the actual costs of their re-examination.

11. The mandate of the Ninth Circuit in affirming the simple terms of the secondary distribution constitute the law of the case.  Class Counsel must comply with this distribution plan.

12. Approval of a plan of allocation of a settlement fund in a class action is "governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Oracle*

*Sec. Litig.,* [1994–1995 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,355 at 90,446 (N.D.Cal. 18 Jun. 1994); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284–85 (9th Cir.), *cert. denied sub nom* 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992).

13. In this case, the Court approved a distribution plan, providing a second payment to those who cashed their first checks.  The distribution plan was affirmed and the appellate court rendered a mandate.[2]  Now, Class Counsel deviated from the plan, wanting to pay four claimants that did not cash their first check and to re-examine seventeen claimants who actually did cash their checks.

14. Class Members have a right to review the new plan, to know exactly what occurred, and to object and appeal from this new plan and deviation from the approved second distribution Order.

15. Class Counsel showed no extraordinary basis to deviate from the distribution Order and only provide vague descriptions of the four people now being paid and the seventeen people not being paid.  This is not fair, adequate, and violates Rule 23 and creates a disparity among the treatment of claimants and does not treat class members relative to each other.

---

[2] The appellate court affirmed the second distribution Order and issued a mandate.  The district court's compliance with a mandate is assessed by the rule of mandate. See United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995). We have described the rule of mandate as similar to, but broader than, the law of the case doctrine. See id. (citing Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)). Under this rule, "[a] district court, upon receiving the mandate of an appellate court`cannot vary it or examine it for any other purpose than execution.'" Id. (quoting In re Sanford Fork Tool Co., 160 U.S. 247, 255 (1895)).

WHEREFORE, this Court needs to Compel Class Counsel to comply with the Second Distribution Order and disallow the deviation (payments to people who did not cash their check and re-examination of people who did.

David Gould